UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term

Grand Jury Sworn in on May 11, 2006

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. |
| | : | |
| | : | GRAND JURY ORIGINAL |
| v. | : | |
| | : | VIOLATIONS: |
| | : | |
| DEBORAH JEANE PALFREY, | : | 18 U.S.C. § 1962(c) |
| *also known as* "Jeane Palfrey," | : | (Racketeer Influenced and Corrupt |
| *also known as* "Julia," | : | Organizations) |
| *also know as* "Pamela Martin," | : | |
| | : | 18 U.S.C. § 1952(a)(3) |
| Defendant. | : | (Travel in Interstate Commerce in |
| | : | Aid of Racketeering Enterprises) |
| | : | |
| | : | 18 U.S.C. § 1956(h) |
| | : | (Conspiracy to Commit Money Laundering) |
| | : | |
| | : | 18 U.S.C. §§ 982(a)(1) and 1963 |
| | : | Fed.R.Crim.P. 32.2 |
| | : | (Criminal Forfeiture Allegations) |

**INDICTMENT**

The Grand Jury charges that:

**COUNT ONE –**
**RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ("RICO")**

    A. <u>The Racketeering Enterprise and the Defendant</u>

At all times relevant and material to this Indictment:

  1. Defendant Deborah Jeane Palfrey, also known as Jeane Palfrey, also know as Julia, also known as Pamela Martin (hereafter "PALFREY"), was the owner of Pamela Martin and Associates.

  2. Pamela Martin and Associates was a sole proprietorship for which defendant PALFREY

managed the operations primarily from her home in Vallejo, California.

3. Pamela Martin and Associates operated in several States, including, but not limited to, Virginia, Maryland and in the District of Columbia, where it was advertised as a full-service escort service.

4. Pamela Martin and Associates hired female employees, through defendant PALREY, for the purpose of engaging in prostitution activity with male clients, including sexual intercourse and oral sex in exchange for money.

5. Pamela Martin and Associates, through defendant PALFREY, placed advertisements seeking escorts in the Washington City Paper and the University of Maryland Diamondback newspaper.

6. Pamela Martin and Associates, through defendant PALFREY, advertised the services offered by it in the Washington City Paper, the District of Columbia Yellow Pages, the Northern Virginia SuperPages, and online at www.2xtreme.net/pm and www.pamelamartin.com.

7. Defendant PALFREY together with others known and unknown to the Grand Jury, doing business as Pamela Martin and Associates, constituted an enterprise as defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. The enterprise was engaged in, and its activities affected, interstate commerce.

B. The Purpose of the Enterprise

8. The purpose of the enterprise included the following:

a. Enriching the members and associates of the enterprise though the operation of a prostitution business; and

b. promoting and enhancing the enterprise and its members' and associates' activities.

### C.  Applicable State Laws

9.  At all times relevant and material to this Indictment, the following State laws regarding prostitution offenses were in effect:

a.  Title 22, District of Columbia Code, Section 2707, which makes it a crime to procure, receive money, or other valuable thing for arranging assignation;

b.  Title 11, Maryland Criminal Code, Section 306, which makes it a crime to procure or solicit or offer to procure or solicit for prostitution or assignation; and

c.  Title 18.2, Virginia Code, Section 356, which makes it a crime to receive money or other valuable thing for procuring a person or causing a person to engage in unlawful sexual intercourse.

### D.  Means and Methods of the Enterprise

10.  Among the means and methods by which the defendant and her associates conducted and participated in the conduct of the affairs of the enterprise were the following:

a.  Starting in or about 1993, defendant PALFREY managed the enterprise, a large scale prostitution ring known as Pamela Martin and Associates, that operated in several States, including, but not limited to, Virginia, Maryland and in the District of Columbia.

b.  Defendant PALFREY hired women from several States, including, but not limited to, Virginia, Maryland and from the District of Columbia, who agreed to perform prostitution activities for customers of Pamela Martin and Associates.

c.  As part of the hiring process discussed in paragraph 10b, above, defendant PALFREY had male "testers" who agreed to and did meet with women who wanted to work with Pamela Martin and Associates and determine the ability of those women to perform the appropriate prostitution activities.

    d. Defendant PALFREY and her associates scheduled appointments for the prostitutes with clients in several States, including, but not limited to, Virginia, Maryland and in the District of Columbia, who agreed to pay the prostitutes for engaging in sexual intercourse and/or oral sex.

    e. Defendant PALFREY maintained at least three phone numbers for use by clients and employees of Pamela Martin and Associates.  These phone numbers were:  202-737-4200; 301-231-5800; and 410-244-1818.  Clients used these numbers to schedule appointments, and prostitutes used these numbers to advise PALFREY of their weekly availability, to receive directions to appointments scheduled for them by PALFREY, and to check in and check out with PALFREY at the beginning and end of each appointment scheduled by PALFREY.

    f. Defendant PALFREY arranged for phone numbers 202-737-4200, 301-231-5800, and 410-244-1818 to be remote call forwarded to 707-648-1500, a California cellular phone number to which PALFREY subscribed.

    g. Defendant PALFREY maintained United States Post Office Box 1211, in Benicia, California 94510, for receipt of portions of the proceeds of the prostitution activities.

    h. Defendant PALFREY directed the prostitutes to keep a percentage of the money they earned at each appointment scheduled by PALFREY, and PALFREY further directed the prostitutes to convert the remaining funds into money orders and send them via the United States mail to PALFREY in California.

    i. As a result of the above-described actions, the enterprise received substantial income from the prostitution offenses.  Upon receipt by defendant PALFREY of the money orders from the prostitutes, PALFREY would deposit those proceeds in her own accounts in California and use these proceeds to support herself, the enterprise, and to acquire assets traceable to these proceeds.

j. The above-described enterprise, that is, the prostitution ring, existed from in or about 1993 until in or about August of 2006, involved the activities of approximately 132 women, and generated approximately $2,075,384 in income through prostitution related activities.

D. The Racketeering Violation

11. From in or about 1993 until in or about August of 2006, in the District of Columbia and elsewhere, defendant PALFREY and others known and unknown to the Grand Jury, being persons employed by and associated with the enterprise described in paragraphs 1-8 and 10, above, which was engaged in, and the activities of which affected, interstate commerce, unlawfully and knowingly did conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, that is, through the commission of racketeering acts one through fourteen as specified in paragraph 12, below.

E. The Pattern of Racketeering Activity

12. The pattern of racketeering activity, as that term is defined by Title 18, United States Code, Section 1961(1) and 1961(5), consisted of the following acts:

Racketeering Act Number One  (Interstate Transportation in
Aid of Racketeering Enterprise ("ITAR"))

Between in or about October 1998 and in or about November 1999, in the District of Columbia and elsewhere, defendant PALFREY, aided and abetted by another person known to the Grand Jury ("Individual #1") but not named herein, did use and cause to be used the United States mail and a facility in interstate commerce from the District of Columbia to the State of California, and from the State of California to the District of Columbia, with intent to promote, manage, establish, and carry on, and to facilitate the promotion, management, establishment and carrying on of an unlawful activity, that is, a business enterprise involving prostitution offenses in violation of

the State laws described in paragraph nine, and thereafter did perform and attempt to perform an act to promote, manage, establish, and carry on and to facilitate the promotion, management, establishment, and carrying on of said unlawful activity, in violation of Title 18, United States Code, Sections 1952(a)(3) and 2.

Racketeering Act Number Two  (ITAR)

Between in or about June 1999 and in or about December 2004, in the District of Columbia and elsewhere, defendant PALFREY, aided and abetted by another person known to the Grand Jury ("Individual #2") but not named herein, did use and cause to be used the United States mail and a facility in interstate commerce from the District of Columbia to the State of California, with intent to promote, manage, establish, and carry on, and to facilitate the promotion, management, establishment and carrying on of an unlawful activity, that is, a business enterprise involving prostitution offenses in violation of the State laws described in paragraph nine, and thereafter did perform and attempt to perform an act to promote, manage, establish, and carry on and to facilitate the promotion, management, establishment, and carrying on of said unlawful activity, in violation of Title 18, United States Code, Sections 1952(a)(3) and 2.

Racketeering Act Number Three  (ITAR)

Between in or about August 2000 and in or about January 2001, in the District of Columbia and elsewhere, defendant PALFREY, aided and abetted by another person known to the Grand Jury ("Individual #3") but not named herein,  did use and cause to be used the United States mail and a facility in interstate commerce from the District of Columbia to the State of California, with intent to promote, manage, establish, and carry on, and to facilitate the promotion, management, establishment and carrying on of an unlawful activity, that is, a business enterprise involving prostitution offenses in violation of the State laws described in paragraph nine, and thereafter did

perform and attempt to perform an act to promote, manage, establish, and carry on and to facilitate the promotion, management, establishment, and carrying on of said unlawful activity, in violation of Title 18, United States Code, Sections 1952(a)(3) and 2.

### Racketeering Act Number Four (ITAR)

Between in or about February 2001 and in or about April 2002, in the District of Columbia and elsewhere, defendant PALFREY, aided and abetted by another person known to the Grand Jury ("Individual #4") but not named herein, did use and cause to be used the United States mail and a facility in interstate commerce from the District of Columbia to the State of California, with intent to promote, manage, establish, and carry on, and to facilitate the promotion, management, establishment and carrying on of an unlawful activity, that is, a business enterprise involving prostitution offenses in violation of the State laws described in paragraph nine, and thereafter did perform and attempt to perform an act to promote, manage, establish, and carry on and to facilitate the promotion, management, establishment, and carrying on of said unlawful activity, in violation of Title 18, United States Code, Sections 1952(a)(3) and 2.

### Racketeering Act Number Five (ITAR)

Between in or about April 2001 and in or about November 2001, in the District of Columbia and elsewhere, defendant PALFREY, aided and abetted by another person known to the Grand Jury ("Individual #5") but not named herein, did use and cause to be used the United States mail and a facility in interstate commerce from the District of Columbia to the State of California, with intent to promote, manage, establish, and carry on, and to facilitate the promotion, management, establishment and carrying on of an unlawful activity, that is, a business enterprise involving prostitution offenses in violation of the State laws described in paragraph nine, and thereafter did perform and attempt to perform an act to promote, manage, establish, and carry on and to facilitate

the promotion, management, establishment, and carrying on of said unlawful activity, in violation of Title 18, United States Code, Sections 1952(a)(3) and 2.

### Racketeering Act Number Six (ITAR)

Between in or about July 2001 and in or about August 2002, in the State of California and elsewhere, defendant PALFREY, aided and abetted by another person known to the Grand Jury ("Individual #6") but not named herein, did use and cause to be used the United States mail and a facility in interstate commerce from the State of California to the State of Maryland, with intent to promote, manage, establish, and carry on, and to facilitate the promotion, management, establishment and carrying on of an unlawful activity, that is, a business enterprise involving prostitution offenses in violation of the State laws described in paragraph nine, and thereafter did perform and attempt to perform an act to promote, manage, establish, and carry on and to facilitate the promotion, management, establishment, and carrying on of said unlawful activity, in violation of Title 18, United States Code, Sections 1952(a)(3) and 2.

### Racketeering Act Number Seven (ITAR)

Between in or about August 2001 and in or about September 2001, and in or about February 2002 and in or about March 2002, in the District of Columbia and elsewhere, defendant PALFREY, aided and abetted by another person known to the Grand Jury ("Individual #7") but not named herein, did use and cause to be used the United States mail and a facility in interstate commerce from the District of Columbia and the State of Virginia to the State of California, and from the State of California to the State of Virginia, with intent to promote, manage, establish, and carry on, and to facilitate the promotion, management, establishment and carrying on of an unlawful activity, that is, a business enterprise involving prostitution offenses in violation of the State laws described in paragraph nine, and thereafter did perform and attempt to perform an act to promote, manage,

establish, and carry on and to facilitate the promotion, management, establishment, and carrying on of said unlawful activity, in violation of Title 18, United States Code, Sections 1952(a)(3) and 2.

Racketeering Act Number Eight (ITAR)

Between in or about October 2001 and in or about February 2002, in the District of Columbia and elsewhere, defendant PALFREY, aided and abetted by another person known to the Grand Jury ("Individual #8") but not named herein, did use and cause to be used the United States mail and a facility in interstate commerce from the District of Columbia to the State of California, with intent to promote, manage, establish, and carry on, and to facilitate the promotion, management, establishment and carrying on of an unlawful activity, that is, a business enterprise involving prostitution offenses in violation of the State laws described in paragraph nine, and thereafter did perform and attempt to perform an act to promote, manage, establish, and carry on and to facilitate the promotion, management, establishment, and carrying on of said unlawful activity, in violation of Title 18, United States Code, Sections 1952(a)(3) and 2.

Racketeering Act Number Nine (ITAR)

Between in or about February 2003 and in or about May 2003, in the State of Virginia and elsewhere, defendant PALFREY, aided and abetted by another person known to the Grand Jury ("Individual #9") but not named herein, did use and cause to be used the United States mail and a facility in interstate commerce from the State of Virginia to the State of California, with intent to promote, manage, establish, and carry on, and to facilitate the promotion, management, establishment and carrying on of an unlawful activity, said business enterprise involving prostitution offenses in violation of the State laws described in paragraph nine, and thereafter did perform and attempt to perform an act to promote, manage, establish, and carry on and to facilitate the promotion, management, establishment, and carrying on of said unlawful activity, in violation of Title 18,

United States Code, Sections 1952(a)(3) and 2.

Racketeering Act Number Ten (ITAR)

Between in or about February 2003 and in or about March 2003, and in or about February 2004 and in or about May 2004, in the State of Maryland and elsewhere, defendant PALFREY, aided and abetted by another person known to the Grand Jury ("Individual #10") but not named herein, did use and cause to be used the United States mail and a facility in interstate commerce from the State of Maryland to the State of California, with intent to promote, manage, establish, and carry on, and to facilitate the promotion, management, establishment and carrying on of an unlawful activity, that is, a business enterprise involving prostitution offenses in violation of the State laws described in paragraph nine, and thereafter did perform and attempt to perform an act to promote, manage, establish, and carry on and to facilitate the promotion, management, establishment, and carrying on of said unlawful activity, in violation of Title 18, United States Code, Sections 1952(a)(3) and 2.

Racketeering Act Number Eleven (ITAR)

Between in or about April 2003 and in or about July 2003, in the District of Columbia and elsewhere, defendant PALFREY, aided and abetted by another person known to the Grand Jury ("Individual #11"), but not named herein, did use and cause to be used the United States mail and a facility in interstate commerce from the District of Columbia, to the State of California, with intent to promote, manage, establish, and carry on, and to facilitate the promotion, management, establishment and carrying on of an unlawful activity, that is, a business enterprise involving prostitution offenses in violation of the State laws described in paragraph nine, and thereafter did perform and attempt to perform an act to promote, manage, establish, and carry on and to facilitate the promotion, management, establishment, and carrying on of said unlawful activity, in violation of Title 18, United States Code, Sections 1952(a)(3) and 2.

<u>Racketeering Act Number Twelve (ITAR)</u>

Between in or about April 2005 and in or about January 2006, in the State of Maryland and elsewhere, defendant PALFREY, aided and abetted by another person known to the Grand Jury ("Individual #12") but not named herein, did use and cause to be used the United States mail and a facility in interstate commerce from the State of Maryland to the State of California, and from the State of California to the State of Maryland, with intent to promote, manage, establish, and carry on, and to facilitate the promotion, management, establishment and carrying on of an unlawful activity, that is, a business enterprise involving prostitution offenses in violation of the State laws described in paragraph nine, and thereafter did perform and attempt to perform an act to promote, manage, establish, and carry on and to facilitate the promotion, management, establishment, and carrying on of said unlawful activity, in violation of Title 18, United States Code, Sections 1952(a)(3) and 2.

<u>Racketeering Act Number Thirteen (ITAR)</u>

Between in or about October 2005 and in or about April 2006, in the State of Maryland and elsewhere, defendant PALFREY, aided and abetted by another person known to the Grand Jury ("Individual #13") but not named herein, did use and cause to be used the United States mail and a facility in interstate commerce from the State of Maryland to the State of California, with intent to promote, manage, establish, and carry on, and to facilitate the promotion, management, establishment and carrying on of an unlawful activity, said business enterprise involving prostitution offenses in violation of the State laws described in paragraph nine, and thereafter did perform and attempt to perform an act to promote, manage, establish, and carry on and to facilitate the promotion, management, establishment, and carrying on of said unlawful activity, in violation of Title 18, United States Code, Sections 1952(a)(3) and 2.

<u>Racketeering Act Number Fourteen (ITAR)</u>

Between in or about January 2006 and in or about July 2006, in the District of Columbia and elsewhere, defendant PALFREY, aided and abetted by another person known to the Grand Jury ("Individual #14") but not named herein, did use and cause to be used the United States mail and a facility in interstate commerce from the State of California to the District of Columbia, with intent to promote, manage, establish, and carry on, and to facilitate the promotion, management, establishment and carrying on of an unlawful activity, that is, a business enterprise involving prostitution offenses in violation of the State laws described in paragraph nine, and thereafter did perform and attempt to perform an act to promote, manage, establish, and carry on and to facilitate the promotion, management, establishment, and carrying on of said unlawful activity, in violation of Title 18, United States Code, Sections 1952(a)(3) and 2.

**(Racketeer Influenced and Corrupt Organization,
in violation of Title 18, United States Code, Section 1962(c))**

## COUNTS TWO THROUGH FOUR – TRAVEL IN INTERSTATE COMMERCE IN AID OF RACKETEERING ENTERPRISES

13. Paragraphs one through six and nine of Count One are incorporated by reference and realleged as if fully set forth herein.

14. On or about the dates set forth below for each individual Count, in the District of Columbia and elsewhere, defendant PALFREY did use and cause to be used the United States mail and a facility in interstate commerce from the District of Columbia to Benicia in the State of California, with intent to promote, manage, establish, and carry on, and to facilitate the promotion, management, establishment and carrying on of an unlawful activity, that is, a business enterprise involving prostitution offenses in violation of the laws of the District of Columbia, the State of Maryland, and the State of Virginia as described in paragraph nine of Count One, and thereafter did perform and attempt to perform an act to promote, manage, establish, and carry on, and to facilitate the promotion, management, establishment, and carrying on of said unlawful activity.

| Count Number | Date |
| --- | --- |
| Two | March 13, 2002 |
| Three | April 1, 2002 |
| Four | June 11, 2003 |

**(Travel in Interstate Commerce in Aid of Racketeering Enterprises, in violation of Title 18, United States Code, Sections 1952(a)(3) and 2 (Aiding and Abetting))**

## COUNT FIVE – CONSPIRACY TO LAUNDER MONETARY INSTRUMENTS

15. Paragraphs one through six, nine and ten of Count One are incorporated by reference and realleged as if fully set forth herein.

16. Between in or about 1993 and in or about August of 2006, within the District of Columbia and elsewhere, defendant PALFREY and other persons known and unknown to the Grand

Jury, willfully and knowingly did combine, conspire, confederate and agree together to commit offenses against the United States, that is: knowingly conduct, and attempt to conduct, financial transactions affecting interstate commerce which involved the proceeds of specified unlawful activity, that is, interstate travel or transportation in aid of racketeering enterprises, in violation of Title 18, United States Code, Section 1952(a)(3), with the intent to promote the carrying on of the specified unlawful activity, and that while conducting and attempting to conduct such financial transactions knew that the funds involved in the financial transactions represented the proceeds of some form of unlawful activity.

### Objects of the Conspiracy

17. It was an object of the conspiracy that defendant PALFREY and the other persons would conduct or cause to be conducted financial transactions with the money obtained in exchange for sexual intercourse and/or oral sex with clients in several States, including, but not limited to, Virginia, Maryland and in the District of Columbia.

18. It was also an object of the conspiracy that defendant PALFREY and the other persons would conduct and cause to be conducted financial transactions with proceeds the business enterprise unlawfully obtained in exchange for sexual intercourse and/or oral sex with clients in several States, including, but not limited to, Virginia, Maryland and in the District of Columbia, for the purpose of moving funds to PALFREY for her use in promoting the unlawful activities of the business enterprise.

**(Conspiracy to Launder Monetary Instruments, in
violation of Title 18, United States Code, Section 1956(h))**

### FORFEITURE ALLEGATION:  COUNT ONE – RICO

A.     The allegations contained in Count One of this Indictment are realleged and

incorporated by reference herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 1963. Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section 1963, in the event of defendant's conviction under Count One of this Indictment.

B. The defendant,

DEBORAH JEANE PALFREY

i. has acquired and maintained interests in violation of Title 18, United States Code, Section 1962, which interests are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1);

ii. has an interest in, security of, claims against, and property and contractual rights which afford a source of influence over, the enterprise named and described herein which the defendant established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, Section 1962, which interests, securities, claims, and rights are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963 (a)(2);

iii. has property constituting and derived from proceeds obtained, directly and indirectly, from racketeering activity, in violation of Title 18, United States Code, Section 1962, which property is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(3).

C. The interests of the defendant subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1), (a)(2), and (a)(3), include but are not limited to:

at least $2,075,384, and all interest and proceeds traceable thereto, including but not

limited to the following assets:

a.  $276,645.97 in funds from Charles Schwab investment accounts 6884-3181, 6884-3186, and 6884-3192, and approximately $135,442.60 in stocks maintained in these accounts by Charles Schwab, a total amount of $11,396.35 from Wells Fargo accounts 6952-139217 and 005-9211417 (hereafter collectively "the Accounts").

The funds and stocks are more fully described as:

(1)  Charles Schwab Account 6884-3181 (funds $36,458.67);
(2)  Charles Schwab Account 6884-3186 (funds $188,403.71; stock approximately $125,432.60);
(3)  Charles Schwab Account 6884-3192 (funds $51,783.59; stock approximately $10,010.00);
(4)  Wells Fargo Account 6952-139217 (funds $2,055.68); and
(5)  Wells Fargo Account 005-9211417 (funds $9,340.67).

b.  Coins seized from 803 Capitol Street, Vallejo, California, and are more fully described as:

(1)  413 South African Gold Krugerrands;
(2)  81 U.S. Liberty $50 Gold Coins;
(3)  320 U.S. Liberty $1 Silver Coins; and
(4)  61 Canadian $50 Gold Coins.

c.  $182,529.59 of equity in the Real Property more fully described as:

803 Capitol Street, Vallejo, California 94590, more fully described as:

The North Seventy (70) Feet of Lot Nine (9) in block Three Hundred and Six (306), as the same is shown on the official map of the City of Vallejo, made by E.H. Rowe, C.S., and which map was filed for record in the Office of the County Recorder of Solano County, California, September 19, 1868, in Book 1 of Maps, Page 123; and,

d.  Real property more fully described as:

1441 Vaquero Glen, Escondido, California 92026, more fully

    described as:

    Lot 17 of Escondido Tract No. 350 in the City of Escondido, County of San Diego, State of California according to map thereof No. 9034, filed in the Office of the County Recorder of San Diego County on November 22, 1978.

D.    If any of the property described above as being subject to forfeiture pursuant to Title 18, United States Code, Section 1963(a)(3), as a result of any act or omission of the defendant:

(1)    cannot be located upon the exercise of due diligence;
(2)    has been transferred or sold to, or deposited with, a third person;
(3)    has been placed beyond the jurisdiction of the Court;
(4)    has been substantially diminished in value; or
(5)    has been commingled with other property that cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of defendant up to the value of said property listed above as being subject to forfeiture.

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Section 1963; Fed. R. Crim. P. 32.2)**

**FORFEITURE ALLEGATION: COUNT FIVE –
CONSPIRACY TO LAUNDER MONETARY INSTRUMENTS**

  A. The violation alleged in Count Five of this Indictment is realleged and incorporated by reference herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 982(a)(1).

  B. As a direct or indirect result of the offense alleged in Count Five of this Indictment, defendant PALFREY shall forfeit to the United States property, real and personal, that was involved in the defendant's violation of Title 18, United States Code, Section 1956(h), or is traceable to such property, including, but not limited to, the following:

Money Judgment

$988,610, which is the sum of money constituting property involved in the offense, and which property includes, but is not limited to, the following property:

a.  $276,645.97 in funds from Charles Schwab investment accounts 6884-3181, 6884-3186, and 6884-3192, and approximately $135,442.60 in stocks maintained in these accounts by Charles Schwab, a total amount of $11,396.35 from Wells Fargo accounts 6952-139217 and 005-9211417 (hereafter collectively "the Accounts").

The funds and stocks are more fully described as:

(1) Charles Schwab Account 6884-3181 (funds $36,458.67);
(2) Charles Schwab Account 6884-3186 (funds $188,403.71; stock approximately $125,432.60);
(3) Charles Schwab Account 6884-3192 (funds $51,783.59; stock approximately $10,010.00);
(4) Wells Fargo Account 6952-139217 (funds $2,055.68); and
(5) Wells Fargo Account 005-9211417 (funds $9,340.67).

b.  Coins seized from 803 Capitol Street, Vallejo, California, and are more fully described as:

        (1)    413 South African Gold Krugerrands;
        (2)    81 U.S. Liberty $50 Gold Coins;
        (3)    320 U.S. Liberty $1 Silver Coins; and
        (4)    61 Canadian $50 Gold Coins.

    c.    $182,529.59 of equity in the Real Property more fully described as:

        803 Capitol Street, Vallejo, California 94590, more fully described as:

        The North Seventy (70) Feet of Lot Nine (9) in block Three Hundred and Six (306), as the same is shown on the official map of the City of Vallejo, made by E.H. Rowe, C.S., and which map was filed for record in the Office of the County Recorder of Solano County, California, September 19, 1868, in Book 1 of Maps, Page 123; and,

    d.    Real property more fully described as:

        1441 Vaquero Glen, Escondido, California 92026, more fully described as:

        Lot 17 of Escondido Tract No. 350 in the City of Escondido, County of San Diego, State of California according to map thereof No. 9034, filed in the Office of the County Recorder of San Diego County on November 22, 1978.

By virtue of the commission of the felony offense charged in Count Five of this Indictment by defendant PALFREY, any and all interest that the defendant has in the above-described property is vested in the United States and hereby forfeited to the United States pursuant to Title 18, United States Code, Section 982(a)(1).

    C.    If any of the property described above as being subject to forfeiture pursuant to Title 18, United States Code, Section 982(a), as a result of any act or omission of the defendant:

      (1)    cannot be located upon the exercise of due diligence;
      (2)    has been transferred or sold to, or deposited with, a third person;
      (3)    has been placed beyond the jurisdiction of the Court;
      (4)    has been substantially diminished in value; or
      (5)    has been commingled with other property that cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), incorporating by reference Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of defendant up to the value of said property listed above as being subject to forfeiture.

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Section 982(a)(1); Fed. R. Crim. P. 32.2)**

A TRUE BILL:


FOREPERSON


ATTORNEY OF THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA