# MONTGOMERY BLAIR SIBLEY, CHARTERED

1629 K STREET, SUITE 300
WASHINGTON, D.C. 20006

| | |
|---|---|
| MONTGOMERY BLAIR SIBLEY | ADMITTED TO PRACTICE: |
| 202-508-3699 | FLORIDA |
| 202-478-0371 (E-FAX) | NEW YORK |
| SIBLEY@CIVILFORFEITURE.COM | DISTRICT OF COLUMBIA |

April 23, 2007

*Via Hand-Delivery*
Judge Gladys Kessler
United States District Court for the District of Columbia
333 Constitution Avenue, N.W.
Washington, D.C. 20001

Re:    *United States v. Deborah Jeane Palfrey*
Criminal Case: 07-046 (GK)

Greetings:

Pursuant to this Court's order of April 12, 2007, in this matter, on behalf of Jeane Palfrey, I submit for approval prior to filing Defendant's *Pro Se* Motion for Replacement of Counsel. Copies of this motion are being provided to Mr. Kramer and AUSA Connelly as indicated below. Please note that Defendant's compliance with this order is not a waiver of objection to its terms. Also submitted *ex-parte* for *in camera* review pursuant to LCvR 5.1(j) are the declarations of (i) Deborah Jeane Palfrey and (ii) Montgomery Blair Sibley in support of the *Pro Se* Motion for Replacement of Counsel. These declarations are <u>not</u> being provided to Mr. Kramer and/or AUSA Connelly.

Time limitations forced the submission of these documents without an original signature by Defendant. However, the faxed signature will be supplemented with the original once those pages are received by the undersigned.

Yours,

cc:    A.J. Kramer - Via E-mail
Catherine Connelly - Via E-mail
Assistant United States Attorney

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

        PLAINTIFF,

VS.

DEBORAH JEANE PALFREY,

        DEFENDANT.

_____/

CRIMINAL CASE NUMBER: 07-046-GK

DEFENDANT'S *PRO SE* MOTION FOR
REPLACEMENT OF COUNSEL

COMES NOW Defendant Deborah Jeane Palfrey appearing *pro se* and upon her separately submitted and sealed declaration, the separately submitted and sealed declaration of Montgomery Blair Sibley, the attached affirmation of Herald Fahringer, the Sixth Amendment and 18 U.S.C. §3006A, and prays this Court to replace her Court-appointed counsel – A.J. Kramer of the Public Defender's office – with attorney Herald Fahringer, and for grounds in support thereof states:

I.    IRRECONCILABLE DIFFERENCES

As more fully detailed in the sealed declarations, there are and have been since last fall, irreconcilable differences between myself and Mr. Kramer. As such, this Court in order to give life to the Sixth Amendment and Federal Rules of Criminal Procedure, Rule 44, must replace Mr. Kramer and his entire office as my counsel in this matter. *Accord*: *United States v. Walker*, 915 F.2d 480, 482-85 (9th Cir.1990) (reversible error where defendant had requested new counsel in writing one week before trial, and where there were irreconcilable differences between counsel and defendant); *United States v. Moore*, 159 F.3d 1154, 1160 (9th Cir. 1998) (finding irreconcilable conflict where counsel told the court: "it seems to me that if Mr. Moore is forced to go to trial now with me as his attorney, that he will be denied a fundamental right; that is, to have counsel, effective,

-1-

a zealous counsel"); *United States v. Walker*, 915 F.2d 480, 483-84 (9th Cir. 1990)(finding irreconcilable conflict where counsel told the court: "I do believe that there is, given his refusal to confer with me, there is a [sic] irreconcilable difference that does prevent me from representing him"), overruled on other grounds, *United States v. Nordby*, 225 F.3d 1053, 1059 (9th Cir. 2000), in turn overruled, *United States v. Buckland*, 289 F.3d 558, 568 (9th Cir. 2002) (en banc).

## II.    INEFFECTIVE ASSISTANCE OF COUNSEL

Likewise, as more fully detailed in the sealed declarations, I believe I have suffered ineffective assistance of counsel from Mr. Kramer and his office.  *United States v. Decoster*, 624 F.2d 196, 219 (MacKinnon, J., concurring), *cert. denied*, 444 U.S. 944 (1979)("The Sixth Amendment, however, guarantees more than the appointment of competent counsel. By its terms, one has a right to 'Assistance of Counsel [for] his defense.' Assistance begins with the appointment of counsel, it does not end there. In some cases, the performance of counsel may be so inadequate that, in effect, no assistance of counsel is provided. Clearly, in such cases, the defendant's Sixth Amendment right to 'have Assistance of Counsel' is denied.");*United States v. Daly*, 974 F.2d 1215, 1218 (9th Cir.1992)(citations omitted)("Claims of ineffective assistance of counsel may be raised on direct appeal when the record is sufficiently developed to permit the reviewing court to resolve the issue, or when assistance is so inadequate that it obviously interferes with a defendant's Sixth Amendment right to counsel.").  Here, while Mr. Kramer is doubtlessly competent, in my particular case his assistance to me has been lacking.

## III.    APPOINTMENT OF HERALD FAHRINGER

As stated in *Griffin v. Illinois*, 351 U.S. 12, 19 (1956), "[t]here can be no equal justice where the kind of trial a man gets depends on the amount of money he has." *Id.*, at 19.   Here, Defendant

has been declared indigent and is now compelled to look to this Court for vindication of her right to counsel in this criminal matter.  Plainly, I will be denied equal justice if the miserly rate that Congress has set under §3006A is deployed to fund my defense.

Admittedly, in *Caplin & Drysdale v. United States*, 491 U.S. 617 (1989), a *mere* five-to four majority held:

> Petitioner does not, nor could it defensibly do so, assert that impecunious defendants have a Sixth Amendment right to choose their counsel. The Amendment guarantees defendants in criminal cases the right to adequate representation, **but those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys** appointed by the courts.  (Emphasis added).

In the eighteen (18) years since the bare-majority decision in *Caplin & Drysdale*, the effect of this case has been to prove as true the <u>significant</u> concerns raised by the four (4) justice dissent in that case which argue for abandoning this rule of *Caplin & Drysdale.*

That dissent stated:  "That the majority implicitly finds the Sixth Amendment right to counsel of choice so insubstantial that it can be outweighed by a legal fiction demonstrates, still once again, its 'apparent unawareness of the function of the independent lawyer as a guardian of our freedom.' *Id.* at 644.  As such, since the decision in *Caplin & Drysdale* "conditions which have supervened, and in the light of which the reasonableness of the exercise of the protective power of the State must be considered, make it not only appropriate, but we think imperative, that, in deciding the present case, the subject should receive fresh consideration."  *West Coast Hotel Co. v. Parrish*,  300 U.S. 379, 390 (1937).

Accordingly, Defendant specifically asked this Court to reconsider the holding of *Caplin & Drysdale* that defendants who do not have the "means to hire their own lawyers have no cognizable

complaint so long as they are **adequately represented by attorneys** appointed by the courts".

As the dissent in *Caplin & Drysdale* noted:

> When the Government insists upon the right to choose the defendant's counsel for him, that relationship of trust is undermined:  counsel is too readily perceived as the Government's agent rather than his own. . . .The Government can be expected to "spend vast sums of money ... to try defendants accused of crime," *Gideon v. Wainwright*, 372 U.S., at 344, 83 S.Ct., at 796, and of course will devote greater resources to complex cases in which the punitive stakes are high. Precisely for this reason, 'there are few defendants charged with crime, few indeed, who fail to hire the best lawyers they can get to prepare and present their defenses.' *Ibid*.  But when the Government provides for appointed counsel, there is no guarantee that levels of compensation and staffing will be even average. Where cases are complex, trials long, and stakes high, that problem is exacerbated. 'Despite the legal profession's commitment to pro bono work,' *United States v. Bassett*, 632 F.Supp. 1308, 1316 (Md.1986), *aff'd on other grounds sub nom.  United States v. Harvey*, 814 F.2d 905 (CA4 1987), even the best intentioned of attorneys may have no choice but to decline the task of representing defendants in cases for which they will not receive adequate compensation.  See, e.g., *United States v. Rogers*, 602 F.Supp. 1332, 1349 (Colo.1985).  Over the long haul, the result of lowered compensation levels will be that talented attorneys will 'decline to enter criminal practice'. . . This exodus of talented attorneys could devastate the criminal defense bar.. . .Without the defendant's right to retain private counsel, the Government too readily could defeat its adversaries simply by outspending them.

Against this backdrop, this Court must reconcile why a defendant with sufficient funds  of one hundred fifty thousand dollars ($150,000) to retain an attorney the quality of a  Herald Fahringer will obviously receive a high quality of representation from an attorney chosen and trusted by a defendant when an indigent defendant must rely upon counsel who will not be nearly as qualified, willing to work for slave-wages of $40/hour and is **unilaterally** imposed upon the defendant. Simply stated, the Court *cannot* ignore the violation of "equal justice where the kind of trial a man

gets depends on the amount of money" available to a defendant.[1]

As such, the only fair approach to insure that (i) rich and poor are treated alike and (ii) the Court's adversion to attorneys whose style, while inconvenient and even offensive to the Court, accords with a defendant's wishes, is to have this Court determine the fair-market value of competent criminal counsel in this particular matter and then provide that sum to Defendants so that she – and not this Court – will determine who will represent her in this vital matter: A matter which is so obviously unique given that the witness list will reach into the highest ranks of (i) two separate Presidential administrations, (ii) the private sector, Beltway-bandit community and (iii) the Fourth Estate – that it will be difficult to gauge at this time the attorney fees necessary, let alone the investigatory fees that will be necessary, to insure that Defendant will receive "compulsory process for obtaining witnesses in her favor, and to have the assistance of counsel for her defense."

To close: from the dissent in *Caplin & Drysdale*, " In my view, the Act as interpreted by the majority is inconsistent with the intent of Congress, and seriously undermines the basic fairness of our criminal-justice system." *Id.* at 655. Likewise, 18 U.S.C. §3006A "undermine the basic fairness of our criminal-justice system" and as such, Congress' attempt to limit the scope of the Sixth Amendment's right to counsel by action of §3006A cannot be recognized by this Court for it is axiomatic that Congress cannot pass a law that violates an express right guaranteed by the

---

[1]    Indeed, while Defendant's civil counsel's style may annoy this Court, this Court should recollect Justice Blackmun's dissent: "There is a place in our system of criminal justice for the maverick and the risk taker and for approaches that might not fit into the structured environment of a public defender's office, or that might displease a judge whose preference for nonconfrontational styles of advocacy might influence the judge's appointment decisions." *Caplin & Drysdale* at 647. By unilaterally determining who will represent Jeane, this Court – which has demonstrated its refusal to follow a plain Congressional mandate – would appear unlikely to appoint counsel for Jeane that might cause the Court further consternation through zealous advocacy for her.

Constitution.

## IV.   CRIMINAL JUSTICE ACT

Alternatively, 18 U.S.C. §3006A(b), states that "The United States magistrate judge or the court shall appoint separate counsel for persons having interests that cannot properly be represented by the same counsel, or when other good cause is shown."

Here, as the Court can take judicial notice of the notoriety of this case and upon the filed declarations, there is "good cause" for allowing to Defendant a reasonable fee from which she can retain private counsel to represent her. Simply put, the counsel list from which this Court would draw has too many connections either direct or indirect to the client list of Defendant's escort service to avoid potential conflicts of interest which could undermine the attorney-client relationship subsequently in this matter. As such, out-of-town counsel, such as Herald Fahringer, insures that this matter will not be de-railed by conflicts that appear only after a full sifting of the telephone records to reveal the names of each client of the escort service is accomplished.

## V.   CONCLUSION

WHEREFORE, Defendant requests that this Court (i) issue its order replacing A.J. Kramer, (ii) recognize that 18 U.S.C. §3006A *de facto* if not *de jure* violates Defendant's constitutional rights and (iii) set aside an initial fund of $150,000 for Defendant to retain private counsel in this matter.

Dated: 4/23/07

_____
Deborah Jeane Palfrey

Montgomery Blair Sibley, upon the ethical constraints imposed upon him, hereby (i) gives notice of assistance to Defendant in the preparation of this pleading and (ii) notes that he is does not represent Defendant as attorney of record in this matter.

-6-

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

------------------------------
UNITED STATES OF AMERICA,        )
                                 )    Cr. No. 07-046 (GK)
        v.                       )
                                 )    AFFIRMATION OF
DEBORAH JEANE PALFREY,           )    HERALD PRICE FAHRINGER
                                 )
            Defendant.           )
------------------------------

HERALD PRICE FAHRINGER, an attorney duly admitted to
the practice of law in the State of New York and the
Southern District of New York, as well as the United States
Supreme Court, affirms under penalty of perjury the
following:

1.    I am a partner of the firm of Fahringer & Dubno,
with offices at 780 Third Avenue, 32nd Floor, New York, New
York.

2.    This affirmation is submitted in support of the
Defendant's application for release of funds to enable her
to obtain legal representation in the above-captioned
matter, and to ensure her right to the effective assistance
of counsel under the Sixth Amendment to the United States
Constitution.  The application is based on personal
knowledge, as well as information and belief.

3.    I have been practicing criminal law for the last 50 years. I have tried cases in 27 states -- including the District of Columbia where I was admitted pro hac vice -- and have briefed and/or argued more than 400 appeals, including 15 in the United States Supreme Court.

4.    I am a Fellow of the American College of Trial Lawyers, the American Academy of Appellate Lawyers, the International Society of Barristers and the American Board of Criminal Lawyers.

5.    In addition, I have received numerous awards in connection with my representation of defendants in criminal cases. For example, in 1999, I received the Outstanding Practitioner Award from the Criminal Justice Section of the New York State Bar Association. And, in 1995, I received the New York State Association of Criminal Defense Lawyer's Thurgood Marshall Award for outstanding contribution to the criminal law.

6.    Part of my practice has included an expertise in cases involving defendants charged with controversial subjects, such as prostitution and sexually related offenses. For example, I previously represented an alleged dominatrix, all the way to the United States Supreme Court,

2

in her prosecution for, among other things, lewdness. <u>See</u> <u>Von Cleef v. New Jersey</u>, 395 U.S. 814, 89 S. Ct. 2051 (1969).

7.   In addition, I have significant experience litigating issues involving defendants' right to the effective assistance of counsel. <u>See</u> <u>e.g.</u>, <u>Massaro v. United States</u>, 538 U.S. 500, 123 S. Ct. 1690 (2003).

8.   I have been advised that the trial of this high profile matter is expected to last for approximately four weeks. And, although I am not yet completely familiar with all of the issues presented by this case, it is my understanding that significant constitutional issues are implicated, which would have to be developed through extensive pretrial motions.

9.   I typically charge $500 per hour for my time in matters of this nature. I estimate that to competently brief the issues and try this case would require legal fees in the range of $125,000 to $150,000.

Dated:    New York, New York
          April 19 , 2007

                                    _____
                                    Herald Price Fahringer, Esq.

3