UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 07-046 (GK) |
| v. | : | |
| DEBORAH JEANE PALFREY, | : | UNDER SEAL |
| Defendant. | : | |

FILED
MAY 9 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

### GOVERNMENT'S SUPPLEMENT TO ITS *EX-PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND A PROTECTIVE ORDER, AND REQUEST FOR A HEARING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this supplement to its prior *ex-parte* application for temporary restraining orders, and a protective order, and request for a hearing which was filed on March 19, 2007. In the resulting prior protective Order, the Court found "that there are reasonable grounds to believe that harassment of an identified witness exists or that such order is necessary to prevent such harassment and to restrain an offense under 18 U.S.C. § 1512." March 22, 2007 Order at 1. Defendant's civil attorney, Montgomery Blair Sibley, has advised the government that he intends to take steps on defendant's behalf, the primary – if not only – purpose of which appears to be harassment of potential witnesses. Accordingly, the government requests that the Cour modify it prior Order to explicitly preclude any further production of the defendant's phone records. In support of this Motion, the United States relies on the following points and authorities and such other points and authorities as may be cited at a hearing on this matter.

### I. Background

On March 1, 2007, a federal grand jury in the District of Columbia returned an indictment against defendant charging her with numerous federal violations, including RICO, interstate

transportation in aid of racketeering and conspiracy to commit money laundering, as well as forfeiture allegations. Prior to the indictment, defendant obtained representation by the Federal Public Defender, A.J. Kramer. On April 30, 2007, this Court granted defendant's Motion for New Counsel, and on May 7, 2007, Preston Burton was appointed. In a related, now-stayed civil forfeiture case, defendant is represented by Montgomery Blair Sibley.

Throughout the course of the criminal matter, this Court has made it very clear that Mr. Sibley does not represent the defendant in the criminal matter, and Mr. Sibley himself has admitted that he is not qualified to do so.[1] Despite this admission, Mr. Sibley has continued to file pleadings in this matter for the defendant, and admitted to assisting the defendant in the preparation of such pleadings, while noting that he does not represent the defendant as attorney of record in the criminal case.[2]

On March 9, 2007, this Court ordered a six month stay in the civil forfeiture case. On the same day, Mr. Sibley filed another civil lawsuit against one of the defendant's alleged former employees. See Palfrey v. Neble, Civil Action No. 1:07-cv-0461 (GK). This suit is signed by Mr. Sibley. On March 22, 2007, this Court issued an order after determining that there were "reasonable grounds to believe that harassment of an identified witness exists or that such an order is necessary to prevent such harassment." As such, the Court ordered that the defendant, *"and her*

---

[1] In a pleading filed with the United States Court of Appeals for the District of Columbia Circuit, Mr. Sibley states "[I] cannot appear in the Criminal Case as [I do] not possess the requisite expertise to make a LcrR 44.5(b) certification." Petition for Writs of Mandamus, Procedendum Ad Justicium, Certiorari and Prohibition at 10.

[2] This has not prevented Mr. Sibley from filing appeals on defendant's behalf to both the United States Court of Appeals for the District of Columbia, and the United States Supreme Court.

*agents and attorneys* shall not act, or cause any act to be done, to further the civil action . . . and *shall not engage in any other similar acts or actions against Government witnesses*, agents and investigators." (Emphasis added.).

Despite this order, on May 6, 2007, Mr. Sibley sent a letter to Attorney General Alberto Gonzalez (sic) ("May 6, 2007 letter"). Mr. Sibley also e-mailed the May 6, 2007 letter to the Assistant United States Attorneys assigned to this case, and a copy of the letter is attached hereto as Exhibit A. By May 7, 2007, the letter was published on the defendant's website. In the letter, Mr. Sibley threatens the large scale disbursement of the defendant's telephone records, noting:

> the reporting will be much more extensive as all of the years of the escort service telephone records will be released and . . . the "standards and practices" committees of the recipient organizations, journalists and internet bloggers who will receive these records have decidedly different professional standards than that of ABC News.

May 6, 2007 Letter at 2.[3]

## II. Discussion

It appears that neither the defendant nor Mr. Sibley have any intention of abiding by the Court's March 22, 2007 Order. In an e-mail to the Washington Post, the defendant stated: "[s]ince Mr. Sibley and I . . . do not know who the identities of the government witnesses [are], we in turn

---

[3] As the Court is likely aware, on May 4, 2007, ABC broadcast on its televison show "20/20" an interview with Ms. Palfrey. (A transcript of the interview is attached as Exhibit B). Prior to this show, Ms. Palfrey had provided to ABC copies of some of her phone records for Pamela Martin & Associates. Despite having these records and having researched the numbers contained on the list, the show's producers did not reveal any names of alleged clients of Pamela Martin & Associates other than those previously disclosed. In the interview, defendant discussed her understanding of the consequences of publicly exposing people. In discussing a woman who allegedly used to work for Pamela Martin & Associates who was recently arrested for prostitution, defendant said: "she was publicly outed, is a good way to put it, she was absolutely humiliated. Ah, she couldn't take the humiliation. Her whole life was destroyed. And she, she just, ah, ultimately committed suicide." Exhibit B at 5.

cannot abide by any court order." See Carol Leonnig, "Ex-Client of Alleged Madam Tries to Stop ABC From Airing His Name," Wash. Post, May 3, 2007 at B2 (attached hereto as Exhibit C). This statement evidences a lack of regard for the Court's prior protective order.

This attitude is further supported by the May 6, 2007 letter from Mr. Sibley, which, as noted above, contains thinly veiled threats regarding the use of the telephone list. Despite defendant's repeated prior claims that she and Mr. Sibley's purpose in disseminating the phone records was to assist the defendant in preparing her defense[4], the May 6, 2007 letter makes very clear that the primary, and likely only, purpose of the threatened future dissemination is to harass potential witnesses.

As such, it is the government's position that Mr. Sibley is threatening to violate this Court's March 22, 2007 Order, and should be prevented from doing so.[5] To the extent his threatened actions would not *explicitly* violate the Court's Order, the government seeks an amendment to the March 22, 2007 Order, such that the order will preclude the conduct threatened by Mr. Sibley in the May 6, 2007 letter. In its March 19, 2007 Application for Temporary Restraining Orders, and a Protective Order, the United States outlined the substance of 18 U.S.C. § 1512, which allows for a protective

---

[4] Such claims are entirely without merit, as this Court has ensured throughout the pendency of these proceedings that the defendant has been represented by able criminal counsel, who is competent to conduct an investigation without the assistance of the press. As such, any claim that publication of the phone bills is necessary to prepare defendant's defense is without support.

[5] In fact, Mr. Sibley may have already violated the Court's March 22, 2007 Order. According to Mr. Sibley, "a group of veteran investigative journalists associated with the *Washington Independent Writers Association*" have copies of the 1997 - 1999 telephone records of the "escort service." See May 6, 2007 letter at 2. If the aforementioned records were provided by Mr. Sibley (or the defendant) to this group after the Court's March 22, 2007 Order, the individual who provided these records is potentially in violation of the Court's order.

4

order to prevent and restrain an offense which constitutes intentionally harassing another person (or attempting to do so) and thus dissuading any person from assisting the institution of a criminal prosecution. The government hereby adopts the arguments made in that Application, as they apply equally to the situation now before the Court.

### III. Conclusion

For the foregoing reasons, the United States respectfully requests that this Court amend its March 22, 2007 Order to immediately restrain, prohibit, and enjoin Deborah Jeane Palfrey and Montgomery Blair Sibley, and their agents and attorneys, from distributing the defendant's phone records, and schedule a hearing for a Protective Order at its first opportunity. A proposed order is attached.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

_____
Daniel P. Butler
DC Bar No. 417178
Catherine K. Connelly
Mass. Bar No. 649430
William R. Cowden
DC Bar No. 426301
Assistant United States Attorneys
555 4th Street, N.W.
(202) 353-9431, 616-3384, 307-0258
Washington, D.C. 20530
Daniel.Butler@usdoj.gov
Catherine.Connelly2@usdoj.gov
William.Cowden@usdoj.gov

**EXHIBIT A**

Case 1:07-cr-00046-JR  Document 44  Filed 05/09/2007  Page 6 of 20

# CENTER FOR FORFEITURE LAW

1629 K Street, Suite 300
Washington, D.C. 20006

MONTGOMERY BLAIR SIBLEY
202-508-3699
202-478-0371 (E-FAX)
SIBLEY@CIVILFORFEITURE.COM

ADMITTED TO PRACTICE:
FLORIDA
NEW YORK
DISTRICT OF COLUMBIA

May 6, 2007

Via FedEx #8617-4631-8049
    and email c/o AUSAs Daniel Pearce Butler, Catherine K. Connelly, William Rakestraw Cowden

Alberto Gonzalez, Attorney General
Office of the Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

    Re:    *Second Request for Appointment of Special Counsel*

Greetings:

    I represent Deborah Jeanne Palfrey, a/k/a the "D.C. Madam" who (i) has been indicted by your office in a matter assigned Criminal Case Number: 07-046-GK and (ii) has had all her assets seized in a civil forfeiture matter in Case No.:1:06-CV-01710-GK.

    On March 1, 2007, FedEx delivered (Tracking #8581-1680-3504) to your office my request pursuant to 28 C.F.R. §600.1 for the appointment of a Special Counsel for the above matters. In that letter I indicated that "given the broad spectrum of customers [of the escort service] it is a mathematical certainty that in time [Justice] Department employees will be identified as customers of the service and subpoenaed in either the civil matter, the criminal matter, or both." To date, I have yet to receive a response to that letter.

    In the interim, approximately 20% of the telephone records of the escort service were turned over to Brian Ross of *ABC News*. As you are doubtlessly aware, last Friday, Brian Ross, in the publically available transcript of his *20/20* report, is quoted as stating: "The phone records trace back to thousands of men, *including a career Justice Department prosecutor*."

    Moreover, consider the math: If 20% of the telephone records produced one *"career Justice Department prosecutor"*, then 100% of the telephone records will very likely produce at least another four (4) *"career Justice Department prosecutor*s." Moreover, this discounts the possibility that if one *Akin/Gump* law firm employee was an escort for the service, it is as likely that your "law firm" has similarly situated employees who also worked as escorts for the service. Do not assume

Alberto Gonzalez, Attorney General
Office of the Attorney General
May 6, 2007
Page 2

that the records sezied from my client identified all of the women who worked for the service at one time or another.

Finally, please note that Brian Ross also reported that: "[t]here are NASA officials; at least five military officers, including the commander of an Air Force intelligence squadron" and "[t]he phone numbers also track back to Georgetown mansions and prominent CEOs, officials at the World Bank and the International Monetary Fund and **lobbyists both Republican and Democratic.**"

Given that the person who ordered an escort was not necessarily the person who received the services provided by the escort, the highlighted phrase ought to make you ponder the misogynist wisdom of prosecuting my client for a victimless crime when significant **men** of power are walking on crimes of much greater significance to the Republic. Moreover, given that pre-9/11, an appreciable part of the clientele of the service were Arabs, national security interests may also be at issue: *Profumo/Ivanov »Tobias/*?

As of present, (i) *ABC News* received copies of 75% of the 2002-2006 telephone records of the escort service and (ii) confirming the recent *Boston Globe* report – a group of veteran investigative journalists associated with the *Washington Independent Writers Association* are researching the 1997-1999 telephone records of the escort service.

This limited distribution will change in seven (7) days and when it does: (i) the reporting will be much more extensive as all of the years of the escort service telephone records will be released and (ii) the "standards and practices" committees of the recipient organizations, journalists and internet bloggers who will receive these records have decidedly different professional standards than that of *ABC News*.

Thus, I must <u>insist</u> that you take the following steps:

1. To restore public confidence in your office, demand that Brian Ross identify to you that *"career Justice Department prosecutor"* and then you publically detail, what, if any, role that individual played in the investigation and prosecution of my client; and

2. Under 28 C.F.R. §600.1, undertake the <u>immediate</u> interview and appointment of a Special Counsel for the above matters.

My client is prepared to withhold further distribution of copies of the telephone records pending *confidential* settlement negotiations with yourself or your designee – other than the presently

Alberto Gonzalez, Attorney General
Office of the Attorney General
May 6, 2007
Page 3

assigned AUSAs who are demonstratively not trustworthy in this regard – <u>if</u> these steps are taken <u>and</u> communicated to me by May 11, 2007.

    In my mind, failure to do so will simply confirm to the world that your office wields its considerable power without thought or concern of the damaging consequences upon the public and the real public interests at issue.

Yours,

*[signature]*

**EXHIBIT B**



# Brian Ross Reports on the D.C. Madam: Read the Complete Transcript

**Read the Transcript of the "20/20" Report on Jeane Palfrey, Known as the D.C. Madam.**

May 4, 2007 —

**Jeane Palfrey:** Good evening. May I help you?

This is the voice men heard ...

**Jeane Palfrey:** We have wonderful young ladies on staff ...

... when they called the Washington escort service run by the woman now known as the D.C. Madam.

**Jeane Palfrey:** We charge a flat 275 for an hour and a half. Were you looking to perhaps book an appointment this evening? How may I help you? And then we would take it from there.

Her name is Jeane Palfrey and over the course of 13 years, she says she fielded thousands of calls from some of Washington's most prominent men.

Men who answered ads for what was known as Pamela Martin and Associates, offering sophisticated, college-educated, attractive women.

**Jeane Palfrey:** I always defined it as "the Ann Taylor look." I wanted to make sure that they had that certain look. That they could walk into the Hay-Adams, for example, and not be questioned.

It was as upscale as it could be, and the business thrived.

**Jeane Palfrey:** The Four Seasons, the Mayflower.

**Brian Ross:** And your gals, as you call them, could walk in there and not be spotted by hotel security as ...

**Jeane Palfrey:** Not at all, not at all. These were not cheap women. These are very nice women who just needed to make a few extra dollars.

One was a professor at the University of Maryland. There was a successful real estate agent, even a lieutenant commander in the Navy.

Sometimes when Palfrey was unavailable, a legal secretary at one of Washington's top law firms, Akin Gump, would handle the calls as well as go out on calls herself.

Using her e-mail account at Akin Gump, the secretary told Palfrey why she wanted to be an escort: "A day a week

would be fun and spa money."

**Brian Ross:** But were these women proud of what they did for you?

**Jeane Palfrey:** I don't think they were ashamed.

**Brian Ross:** You don't think so.

**Jeane Palfrey:** Oh, no. No, no, no, no.

The D.C. Madam actually ran her business across the country from Washington, out of her elegantly restored period home in Solano County, California.

The calls from Washington were forwarded to an extension in her laundry room.

**Jeane Palfrey:** Sometimes the washer and dryer were going, and if it was too loud, I'd leave and go into the other room.

**Brian Ross:** All from right here?

**Jeane Palfrey:** All from right here.

**Brian Ross:** This is all it takes to run an escort service?

**Jeane Palfrey:** Yeah, you need a phone. That's what you need.

Names of customers and their preferences were shredded every night, but Palfrey says she was doing nothing illegal because she was selling what she calls sexual fantasy, legal sex.

**Brian Ross:** And how do you define legal sex?

**Jeane Palfrey:** Well, illegal sex is prostitution, which is either intercourse of any type or oral sex. Anything else is considered basically legal.

**Brian Ross:** And do you think your women went over the line?

**Jeane Palfrey:** I sure hope not. I sure hope not. Ah, they...

**Brian Ross:** Can you say that with a straight face?

**Jeane Palfrey:** I'm, I'm saying that with a straight ...

**Brian Ross:** Really?

**Jeane Palfrey:** I'm saying that with a straight face.

A savvy businesswoman with a year of law school, Palfrey actually had her women sign a contract saying they would be terminated if they did anything illegal.

**Jeane Palfrey:** We're not talking about selling their bodies. We're talking about selling services. You've got to get your hair cut -- you get a service. This is a service. You're not selling your soul, for God's sakes.

**Brian Ross:** You certainly are taking the romance out of it.

**Jeane Palfrey:** There is no romance in it. It's a service. I don't think there's any romance in any of this.

But if she thought her carefully worked out legal strategy would protect her profitable business and comfortable lifestyle in California, she was wrong.

Seven weeks ago, as part of a Bush administration crackdown on prostitution, a federal grand jury indicted Palfrey, accusing her of running a large-scale prostitution ring that brought in more than $2 million.

But instead of accepting a deal from prosecutors to spend a few months in prison, Palfrey showed up in court to plead not guilty and tell prosecutors she would call all of her prominent customers as witnesses.

**Jeane Palfrey:** I told them to go to hell. Absolutely, they could go to hell with their deal.

In the 1990s, Palfrey served 18 months in prison in San Diego on charges of attempted felony pimping and says she is not going back.

**Jeane Palfrey:** I sure as heck am not going to be going to federal prison for one day, let alone, you know, four to eight years here, because I'm shy about bringing in the deputy secretary of whatever. Not for a second. I'll bring every last one of them in if necessary.

To prove just how prominent her customers were, Palfrey and her lawyer, Blair Sibley, turned over four years worth of long-distance phone records to "20/20."

We did not pay for them nor did we promise to share the results of our research.

Palfrey says federal agents had no interest in the records and studiously avoided learning about her male customers, as usually happens in such cases, according to a leading academic expert on the subject Melissa Farley.

**Melissa Farley:** The women are arrested; the women are incarcerated; the women are taken out in handcuffs, and the men who buy and use women in prostitution slowly and quietly slink off, and they're pretty much socially and legally invisible.

But not in the case of the D.C. Madam. Most prominent of her customers was Deputy Secretary of State Randall Tobias, who was in charge of the Bush administration's efforts to crack down on prostitution worldwide.

This was Tobias at an AIDS conference in 2004.

**Randall Tobias:** Abstinence works. Be faithful works. Condoms work.

Tobias resigned 24 hours after confirming to "20/20" that he had been a customer, saying, "He had some gals over to the condo for massages."

Tobias said it was no different than ordering a pizza and denied there was any sex.

**Melissa Farley:** I don't see the Johns as a victim; I don't see their privacy rights being victimized so much as I see them

as predators.

The phone records trace back to thousands of men, including a career Justice Department prosecutor.

There are NASA officials; at least five military officers, including the commander of an Air Force intelligence squadron.

Also named by Palfrey is Harlan Ullman, a leading military analyst who wrote the book "Shock and Awe," a concept cited by the Pentagon in planning the war in Iraq.

Palfrey says she remembers Ullman as "Mr. U," -- remembers him well.

**Jeane Palfrey:** I think he was a disagreeable character. And there were some complaints about him, yes.

**Brian Ross:** From your women.

**Jeane Palfrey:** Yes.

**Brian Ross:** They didn't want to go?

**Jean Palfrey:** Because he was an unpleasant person.

In a statement to "20/20," Ullman's lawyer said any notion that Ullman's testimony would help Palfrey is incorrect.

Palfrey says Ullman and her other clients shouldn't blame her for their embarrassment.

**Jeane Palfrey:** This is on the head of the government. They looked at us and said we don't care about the clients. We just don't care.

The phone numbers also track back to Georgetown mansions and prominent CEOs, officials at the World Bank and the International Monetary Fund and lobbyists both Republican and Democratic.

But as usually is the case in Washington, much of it is dull. There were no members of Congress that we could find in these phone records, no White House officials.

Quite frankly, but for the few exceptions, most of the men on this list just aren't newsworthy, not even as customers of the D.C. Madam's escort service.

The most tragic aspect of this case is what happened to one of the women who worked for Jeane Palfrey.

Brandy Britton was a professor at the University of Maryland, with a Ph.D. in sociology when she started to work as a call girl for the D.C. Madam.

**Jeane Palfrey:** This is a woman who was divorced, who was trying to raise two, ah, high-school children, college-age children. Great job title, the great position, all the respect in the world, but she wasn't making enough money. So she decided to do a little moonlighting.

Last October, as the investigation into the D.C. Madam was gaining steam, Professor Britton was arrested by local police on prostitution charges, making big headlines in Baltimore.

**Jeane Palfrey:** And she was publicly outed, is a good way to put it, she was absolutely humiliated. Ah, she couldn't take the humiliation. Her whole life was destroyed. And she, she just, ah, ultimately committed suicide.

Jeane Palfrey says she's been humiliated too, but she won't let the government bring her down without a fight.

**Jeane Palfrey:** I just keep my head high. I guess I'm made of something that Brandy Britton wasn't made of. You know, I, I've got something in me. What that is, it's, it can't be defined, but there's something in me that won't let 'em get away with it. And I'm not going to let these bastards get away with it.

Copyright © 2007 ABC News Internet Ventures

**EXHIBIT C**

washingtonpost.com

# Ex-Client of Alleged Madam Tries to Stop ABC From Airing His Name

By Carol D. Leonnig
Washington Post Staff Writer
Thursday, May 3, 2007; B01



A former client of the woman accused of being the D.C. madam is trying to block his name from being aired on an ABC News program about her escort business and the men who patronized it, saying publicity would amount to witness intimidation, ABC said yesterday.

In a letter to ABC, Steven Salky, the man's attorney, wrote that he has "reason to believe" that his client could be named tomorrow in a "20/20" report about an alleged prostitution ring run by Deborah Jeane Palfrey, ABC said. Salky would not identify the man.

The client expects to be a prosecution witness in Palfrey's federal trial on racketeering charges, Salky told ABC. Identifying him would violate a court order barring harassment of potential witnesses, he said.

The client is a well-to-do private citizen, according to a source familiar with the investigation who is prohibited from discussing it publicly.

The letter hinted at how nervous some men in the Washington area are ahead of the highly promoted, sweeps month broadcast of "20/20," wondering who will be the next man to be publicized. A deputy secretary of state who was asked in a phone call by ABC last week about his dealings with her agency resigned the next day.

Palfrey's clients included government officials, lobbyists, military officers and private citizens.

A partial page from Palfrey's Sprint phone bill from 1996 is posted on her Web site. A review of those records by The Washington Post shows that Palfrey often called the Pentagon and the Ritz-Carlton at Pentagon City.

Montgomery Blair Sibley, Palfrey's attorney, said the Ritz-Carlton was a regular location for escort "dates." He said Palfrey returned calls from customers, instructing them to meet the escorts in rooms at the five-star hotel near the Pentagon.

Sources familiar with the investigation into Palfrey's business said her business phone also logged numerous calls from Georgetown University Hospital, and there are notebooks she kept on her escorts, with photographs and specialties.

Palfrey turned over a sizable portion of her business phone records, covering 2002 to 2006, to ABC News before a federal judge ordered last month that she not take steps to intimidate or harass witnesses. Since then, ABC has been tracking down and making calls to men connected to numbers on Palfrey's phone list.

Yesterday, Palfrey questioned whether the former client is willingly cooperating with prosecutors.

"It is simply ludicrous to imagine such a thing," she wrote in an e-mail to The Post. "Frankly, who [in] the world voluntarily would want to be a part of this mess even before [it] morphed into its current form; a mess certainly to reach nuclear proportions in time."

For 13 years, until her arrest last year, Palfrey ran Pamela Martin and Associates, providing escorts for men around Washington. She gave ABC four years of phone records to mine for customer identities, insisting that she acted out of desperation to find defense witnesses to testify that her escorts provided only $300-an-hour massages and erotic, role-playing fantasies.

Sibley said yesterday he estimates that ABC News has identified 1,000 customers and could publicly identity five to 10 people based on how their public roles or positions conflict with the hiring of escorts.

ABC News spokesman Jeffrey W. Schneider said yesterday that such estimates are premature. Although the program is being promoted with excerpts on ABC's Web site, he said "20/20" has not finished its reporting.

"I don't think anybody can tell you what we're going to do," Schneider said. He declined to comment on how ABC will determine whom to name, but he said it typically would consider the public interest and possible hypocrisy by public officials.

Palfrey said even she does not know whom "20/20" will ultimately identify.

"Mr. Sibley, I and the rest of America will know who will be named simultaneously," she wrote in her e-mail to The Post. She suggested that there was nothing to stop her from naming Salky's client publicly.

"Since Mr. Sibley and I, along with ABC News do not know who the identities of the government's witnesses [are], we in turn cannot abide by any court order," she wrote.

*Staff writer Sue Anne Pressley Montes and researchers Meg Smith and Julie Tate contributed to this report.*

© 2007 The Washington Post Company

**Ads by Google**

**Fear No Man**
Discover What The Martial Artists And The Army Don't Want You To Know
www.TopSecretTraining.com

**Secrets of Self Defense**
Learn how to stop any attacker. No previous training required.
www.SimpleSelfDefenceTactics.com

**Teach Self-Defense**
Make a difference as a Self-Defense Trainer. Excellent income potential
www.familysafetyinstitute.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 07-046 (GK) |
| | : | |
| v. | : | |
| | : | |
| DEBORAH JEANE PALFREY, | : | UNDER SEAL |
|    *aka* "Jeane Palfrey," | : | |
|    *aka* "Julia," | : | |
|    *aka* "Pamela Martin," | : | |
| | : | |
|       Defendant. | : | |

## ORDER

Based on the representations in the government's Motion to Seal Government's Supplement to its *Ex Parte* Application for a Temporary Restraining Order, and a Protective Order, and Request for a Hearing, this Court makes the following:

## FINDINGS OF FACT

Throughout the pendency of this criminal matter, the government has expressed concern regarding the possible intimidation or harassment of witnesses. The defendant's discovery of the Government's Supplement to its *Ex Parte* Application for a Temporary Restraining Order would create a substantial risk that potential witnesses might be subject to intimidation and harassment. This Order is necessary to protect the integrity of the ongoing criminal proceedings.

Based on the representations in the government's motion, see, e.g., The Washington Post v. Robinson, 935 F.2d 282, 289 n. 10 (D.C. Cir. 1991), this Court finds that there is a compelling governmental interest to seal the Government's Supplement to its *Ex Parte* Application for a Temporary Restraining Order, and a Protective Order, and Request for a Hearing, Motion to Seal, and the instant Order, and that an extraordinary situation exists which justifies a delay in the public

docketing of any notice that the government's motion and this Order have been filed with the Criminal Clerk's office under seal.

Based on the above, it is this ____ day of May 2007,

**IT IS HEREBY ORDERED** that this Order, and the attached government's Motion to Seal and Supplement to its *Ex Parte* Application for Temporary Restraining Order, and a Protective Order, and Request for a Hearing, shall be filed under seal in the Criminal Clerk's office until further order of this Court.

**IT IS FURTHER ORDERED** that the Criminal Clerk's office shall not make any entry on the public docket in this case of the government's motion to seal and the Order granting such motion, until further order of this Court

May ____, 2007

                                                      Gladys Kessler
                                                    United States District Court Judge

cc:     Daniel P. Butler
         Catherine K. Connelly
         William R. Cowden
         U.S. Attorney's Office
         555 Fourth Street, N.W.
         Washington, D.C. 20530
         (fax 202-514-8707)