UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> DEBORAH JEANE PALFREY : <br> : <br> Defendant. : <br> : | Criminal No. 07-46 (GK) <br> Status Hearing: May 21, 2007 |

### DEBORAH JEANE PALFREY'S MEMORANDUM
### IN OPPOSITION TO THE MARCH 22, 2007, PROTECTIVE ORDER,
### AND THE SUPPLEMENTAL PROTECTIVE ORDER ISSUED ON MAY 10, 2007

Defendant Deborah Jeane Palfrey (hereinafter "Ms. Palfrey"), through undersigned counsel, respectfully submits this Memorandum in support of her opposition to the Court's March 22, 2007, Protective Order, as clarified in the May 10, 2007, Order, granting the government's May 9, 2007, *Ex Parte* Supplement. As indicated in the May 10, 2007, Order, the Court indicated that counsel for Ms. Palfrey would have the opportunity to address this issue at the status hearing set for May 21, 2007.

On March 22, 2007, the Court ordered Ms. Palfrey and her agents and attorneys to refrain from undertaking any actions to further the stayed civil action, Palfrey v. Neble, et al., Civil Action No. 1:07-cv-0461 (GK). March 22, 2007, Order at 1. Additionally, the Court ordered Ms. Palfrey and these same agents and attorneys to not "engage in any other similar acts or actions against Government witnesses, agents and investigators." Id. This Order was supplemented on May 10, 2007, to prevent explicitly Ms. Palfrey and her agents and attorneys from releasing, distributing, or otherwise providing to any person Ms. Palfrey's personal and business phone records. May 10, 2007, Order at 3. We respectfully submit that the government's applications and the resulting Orders are not appropriate under the limited authority for protective orders set forth in 18 U.S.C. §

OHS East:160227396.1

1514 and that the Orders should be vacated or clarified to permit Ms. Palfrey and her counsel to utilize the records to defend this case. Notwithstanding its zeal to further protect the apparently fragile witnesses on whom it has conferred immunity or otherwise declined to prosecute, the government's conclusory assertions fail to meet its burden of establishing that Ms. Palfrey's release of her own business telephone records falls within the ambit of 18 U.S.C. § 1514 or the criminal forfeiture provisions of 21 U.S.C. § 853. Further, pursuant to 18 U.S.C. § 1514(a)(2)(E), 18 U.S.C. § 1514(b)(1), and 21 U.S.C. § 853(e), Ms. Palfrey respectfully requests a hearing on these issues.

## INTRODUCTION

On March 1, 2007, a federal grand jury returned an indictment charging Ms. Palfrey with violations of 18 U.S.C. § 1962(c) (Racketeer Influenced and Corrupt Organizations (RICO); 18 U.S.C. § 1952(a)(3) (Travel in Interstate Commerce in Aid of Racketeering Enterprises); and 18 U.S.C. § 1952(h) (Conspiracy to Commit Money Laundering), essentially alleging that she ran an adult escort service which provided illegal prostitution services to its clientele. The Indictment also included two criminal forfeiture allegations, invoking 18 U.S.C. §§ 982(a)(1) & 1963. On March 9, 2007, Ms. Palfrey was arraigned, at which time the Court ordered that her civil forfeiture case be stayed for six months. That same day, Ms. Palfrey filed a civil lawsuit seeking damages from her former independent contractors for breach of contract. See Palfrey v. Neble, et al., Civil Action No. 1:07-cv-0461 (GK). On March 13, 2007, Ms. Palfrey provided her telephone records to an investigative journalist.

On March 19, 2007, the government filed an *Ex Parte* Application for a Temporary Restraining Order and a Protective Order, and Request for a Hearing. On March 22, 2007, the Court granted the application and issued a protective order requiring that Ms. Palfrey and her agents or attorneys not engage in or cause any act in furtherance of the civil action, nor engage in any similar actions against Government witnesses, agents or investigators. March 22, 2007, Order at 1.

On May 9, 2007, the government filed an *Ex Parte* Supplement to its March 19, 2007, Application, seeking a temporary restraining order that would prevent Ms. Palfrey and her agents and attorneys from distributing her business telephone records at issue. On May 10, 2007, the Court granted the supplemental request, ordering Ms. Palfrey not to "release, further distribute, or otherwise provide to any person or organization the phone records of Pamela Martin & Associates and/or the phone records of Deborah Jeane Palfrey." May 10, 2007, Order at 3.

## ARGUMENT

I.  **THE MARCH 22, 2007, ORDER FAILS TO PROVIDE ADEQUATE GUIDANCE AS TO WHAT ACTIVITIES CONSTITUTE IMPROPER "SIMILAR ACTS OR ACTIONS AGAINST GOVERNMENT WITNESSES, AGENTS AND INVESTIGATORS"**

In its March 22, 2007, Order, the Court forbids Ms. Palfrey from furthering the Neble action and goes on to forbid her from engaging in similar acts against Government witnesses and agents. March 22, 2007, Order at 1. The Order fails, however, to provide guidance as to what constitutes "similar acts." While Ms. Palfrey does not believe the stay of the Neble action was proper, she certainly does not understand distributing copies of her own telephone records to constitute a "similar act" in terms of the Section 1514 standards regarding witness harassment. When it initially sought the protective order, the government argued in little more than a conclusory fashion that Ms. Palfrey engaged in such action to intimidate witnesses and manipulate the civil discovery process to harm the criminal proceeding. The government fails, however, to meet its burden, pursuant to 18 U.S.C. § 1514(b)(1), of establishing that Ms. Palfrey's actions, particularly with respect to the release of copies of the telephone records, constitute harassment within the purview of 18 U.S.C. § 1514. For the Court to grant a protective order pursuant to 18 U.S.C. § 1514(a), the government must establish by a preponderance of the evidence that Ms. Palfrey has engaged or is likely to engage in

(1) a course of conduct; (2) directed at a specific person (witness); (3) that causes substantial emotional distress; and (4) serves no legitimate purpose.  It has failed to meet this burden here.

### A. Release of telephone records does not constitute "witness harassment" as contemplated by § 1514.[1]

In cases where courts have validated protective orders restraining civil lawsuits under that provision, the courts concluded both that the lawsuit was an attempt to avoid restrictions on criminal discovery and to intimidate a witness.  See United States v. Tison, 780 F.2d 1569, 1573 (11th Cir.1986) (finding a threatened state civil action for slander was brought to circumvent the criminal discovery process and intimidate a witness to prevent him from cooperating with government agents in the criminal investigation); United States v. Lewis, 411 F.3d 838, 843 (7th Cir. 2005) (finding the civil action only attempted to abuse the discovery process and was a "veiled attempt to discourage [witness] participation in the government's criminal case").  However, the government here has not demonstrated beyond mere assertion that Ms. Palfrey's civil action or the release of the telephone records was designed to intimidate witnesses or circumvent the criminal discovery process.

---

[1] Indeed, neither does the filing of a civil suit constitute "witness harassment" as contemplated by § 1514, and, to that end, the cases cited by the government are inapposite.  The government principally relies on United States v. Tison, 780 F.2d 1569 (11th Cir. 1986).  Tison can be readily distinguished from the instant case.  First, the defendants in Tison manipulated the civil discovery process to circumvent the restrictions on the criminal discovery process.  By contrast, Ms. Palfrey was already in possession of her business telephone records.  Thus it cannot be argued that she is using the civil proceeding to acquire the telephone records at issue.  Moreover, the first prong of the 18 U.S.C. §1514(c)(1) harassment test was conceded in Tison; there was no dispute that the slander suit had already caused substantial emotional distress on the specific witness.  In the present case the government has not alleged any facts to suggest that any potential witnesses implicated in the civil lawsuit would face emotional stress in addition to that which would be inflicted as a result of being a witness in the criminal proceeding.   The stress is intertwined with the nature of the allegations—not the fact of a parallel civil lawsuit.  The government also relies on Laker Airways v. Pan American World Airways, 559 F. Supp. 1124 (D.D.C. 1983), aff'd sub nom. Laker Airways v. Sabena, Belgian World Airlines, 731 F.2d 909 (D.D.C. Cir. 1984) and United States v. Davis, 767 F.2d 1025 (2d Cir. 1985) to support its argument that it is appropriate to restrain parties from proceeding in civil actions that would harm ongoing criminal actions.  Both of these cases involve a civil action in a foreign jurisdiction that would prevent a federal court from continuing to adjudicate the parties' claims, and are thus inapposite to this case.

The government has obtained an indictment presumably based on the cooperation of some subset of these same potential witnesses—its investigation is complete and was unimpaired by the civil suit. The government's justification for preventing Ms. Palfrey from disseminating her own business telephone records is that such a release will cause substantial emotional distress for specific witnesses. However, the government has failed to identify any of its witnesses much less allege any facts suggesting that Ms. Palfrey's civil action or the public release of her telephone records will result in substantial emotional injury to witnesses. The lone example it provides in its May 9, 2007, Supplement is a reference to an independent contractor for Pamela Martin & Associates, who committed suicide **after she was arrested and well before Ms. Palfrey was formally charged**—a decidedly poor example of someone humiliated by Ms. Palfrey. Those individuals whose names are identified in Ms. Palfrey's business records are persons who voluntarily provided, purchased or sought the services of the business. Thus, any emotional distress incurred as a result of public disclosure of their contact with Ms. Palfrey's business should have been contemplated by these apparently fragile potential witnesses prior to involving themselves with Pamela Martin & Associates. These individuals are apparently not being prosecuted for their participation in the alleged conduct here.

That these potential witnesses, who have apparently been given a pass from prosecution by the government, are now being further shielded from being exposed for their own, voluntary decisions to utilize or work for an escort service raises serious questions about the motivation and equities behind this prosecution. It is remarkable that the government, which has the ability to threaten prosecution if a potential witness is reluctant to cooperate, maintains now that simply releasing truthful business records to the public constitutes witness intimidation. To be sure, while that action may be ill-advised or unseemly, it is not illegal nor unethical and, indeed, has resulted in the beneficial identification of at least one witness who denies having engaged in any illegal

activities. That action has also resulted, from the resources and tenacity of the media, in the revelation of damaging evidence about the credibility of an expected government witness, Paula Neble—whose humiliation will likely derive from her reported fabrication of her educational and employment background. It is truly ironic that the government can publicly charge Ms. Palfrey with gravely serious offenses that immediately inflict damage on her reputation and credibility but at the same time strain mightily to prevent Ms. Palfrey from releasing copies of her own business records, further insulating their witnesses from any consequence whatsoever from having voluntarily purchased or provided the alleged services of Pamela Martin & Associates.

    **B.  The protective orders, as written, improperly restrain, counsel from confronting potential witnesses or their counsel with key documents.**

The government's May 9, 2007, *ex parte* pleading suggests that it interprets the Court's March 22, 2007, Order, as preventing counsel from actively using the records to investigate this matter. Even if the Court believes the Orders should remain in place, they must be modified to permit counsel to fully investigate this matter, including showing appropriate records to potential witnesses or their counsel. In reality, whatever humiliation the government conjures in support of its motion will exist months from now when these same individuals are subpoenaed for trial or when defense counsel is actively investigating their backgrounds—this entire issue is little more than a matter of methods and timing. Before arriving at the courthouse on the day of trial, Ms. Palfrey and her counsel should be afforded the opportunity to investigate fully and ultimately confront witnesses with any pertinent records without running afoul of the Court's restraining orders. See Washington v. Texas, 388 U.S. 14, 23 (1967). "Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.'" Taylor v. Illinois, 484 U.S. 400, 409 (1988) (quoting Washington, 388 U.S. at 19 (1967)). The government's assessment notwithstanding, Ms. Palfrey has indeed derived a benefit

OHS East:160227396.1          6

in preparing for her trial from the media's interest in providing a parallel investigation of these same people for free, based on the release of copies of her own records—records the government effectively abandoned when it failed to seize them while executing the illegal search of her home in California. That some of the government (and even defense) witnesses will be unmasked as a result of this process is no basis for the blanket protections sought by the United States.[2]

    C. **Restraining Ms. Palfrey from releasing her business telephone records is a violation of her First Amendment Rights under the United States Constitution.**

The protective order that the government has obtained infringes on Ms. Palfrey's free-speech rights under the First Amendment. Ms. Palfrey's ability to discuss the contents of her telephone records, and her related ability to disseminate them, are presumptively protected by the First Amendment. Ashcroft v. Free Speech Coalition, 535 U.S. 234, 245 (2002). The burden is on the government to show that Ms. Palfrey's telephone records fall within a category of unprotected speech in order to establish that it is within the reach of Section 1512. The First Amendment does not prohibit embarrassment or public outings of the identities of clients; rather, it protects "vehement, caustic, and sometimes unpleasantly sharp attacks" as well as language that is "vituperative, abusive, and inexact." Watts v. United States, 394 U.S. 705, 708 (1969). Notably, "the First Amendment protects such speech even when it is designed to embarrass or otherwise coerce another into action. Thus, 'threats of vilification or social ostracism' are protected by the First Amendment and outside the reach of § 1512. It is only when speech crosses the line separating insults from 'true threats' that it loses its First Amendment protection." United States v.

---

[2] Similarly, the government is also seeking a Protective Order regarding the use of discovery and Brady materials it is obligated to provide to the defense. Brady v. Maryland, 373 U.S. 83 (1963). Counsel served a discovery request on the government the day after his appointment; however, the government is awaiting Ms. Palfey's agreement to a Protective Order that would restrict disclosure or use of the discovery materials, including those obtained from Ms. Palfrey's business and home, prior to complying with its constitutional and statutory obligations. Ms. Palfrey declines to agree to such an Order which unduly restricts her ability to use her own records for not only this matter but any other appropriate use she may identify. Should the government persist in conditioning the release of these materials on the entry of a Protective Order, Ms. Palfrey will file the appropriate motion to compel in due course.

Carmichael, 326 F.Supp.2d 1267, 1282 (M.D. Ala. 2004) (citing NAACP v. Claiborne Hardware Co., 458 U.S. 886, 910 (1982)).

### II. THE INTEGRITY AND AVAILABILITY OF MS. PALFREY'S BUSINESS TELEPHONE RECORDS ARE NOT AT RISK, AND SHOULD NOT BE SUBJECT TO PRE-TRIAL RESTRAINT PURSUANT TO 21 U.S.C. § 853(e)

The government also founds its attempt to obtain the pre-trial restraint of Ms. Palfrey's business telephone records on 21 U.S.C. § 853(e). However, Section 853(e) authorizes pretrial restraint only of property associated with the crime, and only where the availability of such property post-conviction is at risk. See United States v. Real Property in Waterboro, 64 F.3d 752, 756 (1st Cir. 1995) ("the purpose of a restraining order proceeding, after all, is to preserve at-risk property for trial"). As such, it is difficult to understand how the dissemination of *copies* of Ms. Palfrey's telephone records impacts adversely the integrity, value, and availability of the records, which will undoubtedly be trial evidence anyway. The original documents, which the government failed to seize when it executed the search warrant at Ms. Palfrey's home, are being preserved, mooting the government's ability to rely on this provision to restrain Ms. Palfrey's use of copies. Further, release of such copies either in relation to the criminal or civil proceedings does not compromise their availability or value for forfeiture if a conviction is secured.

## **CONCLUSION**

For the foregoing reasons and any others that the Court may deem reasonable and just, undersigned counsel respectfully requests that the Court quash the Temporary Restraining Orders, deny the government's request for a Protective Order, and/or schedule a hearing at a date convenient to the Court and the parties so that Ms. Palfrey may be appropriately heard on these issues.

                                             Respectfully submitted,

                                             _____/s/_____
                                             Preston Burton, DC Bar No. 426378
                                             Bree Nicolai Murphy, DC Bar No. 497418
                                             ORRICK, HERRINGTON & SUTCLIFFE LLP
                                             Washington Harbour
                                             3050 K Street, N.W.
                                             Washington, DC  20007
                                             202-339-8400

May 18, 2007                                    *Counsel for Deborah Jeane Palfrey*