UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 07-046 (GK) |
| | : | |
| v. | : | |
| | : | |
| DEBORAH JEANE PALFREY | : | |
| aka "Jeane Palfrey," | : | |
| aka "Julia," | : | |
| aka "Pamela Martin," | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

GOVERNMENT'S SUPPLEMENTAL AUTHORITY
IN SUPPORT OF ITS REQUEST FOR CONTINUATION
OF THE POST-INDICTMENT RESTRAINING ORDER

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits the following supplemental authority in response to the Court's inquiry at today's hearing regarding disposition of the phone records of Pamela Martin and Associates.

At today's hearing, the Court inquired whether there existed any definition of "proceeds" that would apply to the phone records. Section 981(a)(2)(A) of Title 18 provides that "in cases involving illegal goods, illegal services, unlawful activities, and telemarketing and health care fraud schemes, the term 'proceeds' means property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto." Moreover, the statute goes on to say that "proceeds" is "not limited to the net gain or profit realized from the offense." Although this statutory definition is contained in a section of Title 18 made directly applicable to civil forfeiture cases, the statutory language is instructive because language in federal criminal forfeiture provisions generally tracks the language in the

civil provisions. Moreover, Congress intended to make sure that criminal forfeiture was no less broad than civil forfeiture when Congress enacted 28 U.S.C. § 2461(c) (which permits incorporation of civil forfeiture laws into criminal forfeiture cases).

This statutory definition of proceeds is also consistent with case law that adopts a but-for test for determining whether particular property (or a property interest) is subject to forfeiture. See United States v. DeFries, 129 F.3d 1293, 1313 (D.C. Cir. 1997) ("because the but-for test usefully articulates the requirement of a nexus between the targeted property and the racketeering activity, we adopt it"); United States v. Horak, 833 F.2d 1235, 1242-43 (7th Cir. 1987) ("in order to win a forfeiture order, the government must show…that [the defendant's] racketeering activities were a cause in fact of the acquisition or maintenance of" the property sought); United States v. Angiulo, 897 F.2d 1169, 1213 (1st Cir. 1990); United States v. Ofchinick, 883 F.2d 1172, 1183 (3d Cir. 1989); United States v. Porcelli, 865 F.2d 1352, 1365 (2d Cir. 1989); United States v. Reiner, 397 F. Supp.2d 101, 106 (D. Me. 2005) (all revenue of health club that was a front for a prostitution business was proceeds of the prostitution offense because the club would not have existed, and thus would have had no income at all, but for the illegal activity; that some of its revenue was for legal services is therefore irrelevant).

In this case, but for the business, which a grand jury has found to have been illegal, the phone records would not exist. Moreover, it was defendant who acknowledged a monetary value to the information contained in phone records she termed a surrogate for the black book she said she did not keep. See <http://www.deborahjeanepalfrey.com/Jeane3.html>.[1] There can be no

---

[1] In discussing the threat to make life miserable for government witnesses, defendant wrote on her web-site: "She has been forced into liquidating her only remaining asset – the client records of the escort service – in order to mount a defense to the criminal charges against her now that

question that, but for defendant's operation of Pamela Martin and Associates, these records and their "valuable" information would not exist. Likewise, there should be no dispute that to give the same information away for free would diminish whatever value exists in the information that defendant once intended to sell. Defendant has not challenged the Court's authority to restrain her from selling this information before a trial settles the issue of whether the property remains hers to sell, or, instead, became the government's property upon defendant's commission of the crimes that gave rise to the property's forfeitability. See e.g., 18 U.S.C. § 1963(c); 21 U.S.C. § 853(c). Yet, defendant insists that the same statutory authority cannot support the Court's prior Order proscribing her from dissipating whatever value the information may have by giving it away, for free.

    Nor should the Court accept defendant's argument that the Court should allow her to control how the phone records might be shared because they will have little monetary value to the government. The government is not, after all, likely to sell the records "on e-Bay." (Nor will the government use the records to try to leverage a settlement, as defendant did, or to try to secure a more lucrative book deal.) In short, the defendant appears to insinuate that the records are worth far more to her than to the government. But, Congress did not enact, and expand, forfeiture laws to maximize federal revenues. Nor did Congress condition the forfeitability of property on its value in the hands of the government. Rather, as the Supreme Court noted in Caplin & Drysdale v. United States, 491 U.S. 617, 630 (1989): "[A] major purpose motivating congressional adoption and continued refinement of the racketeer influenced and corrupt organizations (RICO) and CCE forfeiture provisions has been the desire to lessen the economic

---

the full weight of the United States Government is bearing down upon her."

power of organized crime and drug enterprises." Likewise, in United States v. Ursery, 518 U.S. 267, 291 (1996), the Supreme Court said that the forfeiture of the proceeds of a crime "serves the additional nonpunitive goal of ensuring that persons do not profit from their illegal acts." As Congress and the Supreme Court have recognized, an incentive to engage in economic crime is certainly diminished if persons contemplating such activity understand that there is high likelihood that they will not be allowed to retain, use or benefit from any property that might flow, directly or indirectly, from any temporary success in evading justice. In this case, the government intends, consistent with the law, that defendant be precluded from benefitting in any way from her use of forfeitable property – whether that benefit comes from a sale of the records (as she once intended) or now, possibly, from engendering continued publicity in an apparent effort to increase the value of an agreement she might secure with a "literary agent" based on information contained in the records.[2] See <http://www.deborahjeanepalfrey.com> ("Jeane Signs with Marianne Strong Literary Agency"); <http://www.deborahjeanepalfrey.com/Jeane4.html> ("I have come to discover of late that the considerable press and subsequent attention shown me has had an ancillary benefit, in the form of various financial opportunities.").

      Finally, defendant's most recent pleadings demonstrate an apparent confusion as to the statutory basis for the government's request that the defendant be restrained from acting in a manner that would dissipate the value of the phone records she possesses. When the government applied for the order at issue, it requested a post-indictment temporary restraining order pursuant

---

[2] Before defendant was caught, her phone records may have had another value for her. Defendant tried to sell her business. She may have kept the records so that she could transfer them to any future proprietor and so that defendant could demand from a buyer a sales price consistent with documented evidence of how many customers her operation had.

to 18 U.S.C. § 982(b)(1) (incorporating 21 U.S.C. § 853(e)(1)) and pursuant to 18 U.S.C.

§ 1963(d)(1). <u>See</u> "Government's Ex-parte Application for Temporary Restraining Orders, and a

Protective Order" at 12-13.  In its Application, the government wrote:

> The proposed post-Indictment Restraining Order tracks the
> Indictment except that it specifically adds, in addition to the
> property specified in the Indictment, records that Ms. Palfrey, and
> the attorney representing her in the civil forfeiture case, have
> indicated Ms. Palfrey still possesses.  According to Ms. Palfrey and
> her counsel, these are the only remaining assets of Ms. Palfrey's
> business that the Government has not included as part of the civil
> forfeiture case.  At various times over the past several days, Ms.
> Palfrey and the attorney representing her in the civil forfeiture case
> have professed an intent to sell or otherwise dissipate this asset.
> Regardless of whether their recent solicitations were merely
> intended to intimidate or as threats, or were made as a means to
> increase the monetary value of the documents, the documents
> constitute property subject to forfeiture under the Indictment's first
> forfeiture allegation and the proposed dissipation of this asset, and
> any proceeds derived from this forfeitable asset, should therefore
> be restrained.  Moreover, a post-Indictment Restraining Order is
> appropriately issued even though assets may already be subject to a
> civil forfeiture case, and especially in a case such as this where, by
> defendant's admissions, there is reason to believe that the
> defendant still possesses, or has access to, some forfeitable
> property.  <u>See</u> <u>United States v. Wingerter</u>, 369 F. Supp.2d 799
> (E.D. Va. 2005) ("there is no discretion to permit a defendant to
> spend assets that are subject to forfeiture, including substitute
> assets.  They must be preserved for forfeiture.").

<u>See</u> Government's Application at 14-15.  Events may transpire that cause the Court to modify the

witness protection order or even to issue a gag order, but any effort to misname the section

983/1963 post-indictment restraint as a gag order that violates defendant's right to discuss the "adult fantasy sex" operation she says she ran should be rejected.[3]

        Respectfully submitted,

        JEFFREY A. TAYLOR
        UNITED STATES ATTORNEY

By: \_/s/_____
        DANIEL P. BUTLER
        DC Bar #417718
        CATHERINE K. CONNELLY
        MA Bar #649430
        WILLIAM R. COWDEN
        DC Bar #426301
        ASSISTANT UNITED STATES ATTORNEYS
        555 Fourth Street, N.W.
        Washington, DC 20530
        (202) 307-0258

---

[3] Contributing to the defendant's confusion about the statutory basis for the restraining order may be the fact that the government's Application still does not appear to have been entered properly on the Court's electronic docket, even though the Court ordered it unsealed at the first hearing on March 19, 2007, and even though the government submitted a redacted version to the Clerk's office for filing later that day. The government received the unsealed Application electronically (as docket entry "14-2", filed on March 19, 2007) but it was unable, today, to retrieve the same filing when it sought to access docketed material through the PACER system.