**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 07-046 (GK)** |
| | : | |
| **v.** | : | |
| | : | |
| **DEBORAH JEANE PALFREY,** | : | |
| *also known as* **"Jeane Palfrey,"** | : | |
| *also known as* **"Julia,"** | : | |
| *also known as* **"Pamela Martin,"** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S OMNIBUS RESPONSE IN OPPOSITION TO THE DEFENDANT'S MOTIONS TO DISMISS ALL OR PART OF THE INDICTMENT, AND FOR A BILL OF PARTICULARS (DOCUMENTS 61, 63-68)

The United States, by and through it attorney, the United States Attorney for the District of

Columbia, herewith files this omnibus response in opposition to defendant Deborah Jeane Palfrey's

numerous motions challenging the indictment.  The motions seek to dismiss the indictment

completely (for alleged selective prosecution, Document 63; and for alleged unconstitutional

application of the local prostitution statutes, Document 67), or in part (alleged surplusage, Document

61; motion to dismiss Count One, Document 64; Counts Two through Four, Document 66; and

Count Five, Document 65).  In addition, defendant filed a motion seeking a bill of particulars

(Document 68).  The government in this pleading addresses the issues defendant has raised, in the

order listed above.[1]  The government is filing this omnibus response in opposition because the

---

[1]  In the government's response set forth below to each of defendant's motions, the citations to the motion under discussion will be listed as "Def.'s Mot." and to the accompanying memorandum in support as "Def.'s Mem."  If more specific reference is needed, the government will put a specific reference to the subject of the motion in parentheses, such as "Def.'s Mot. (RICO)."

motions overlap in many areas.[2]

## **Table of Contents**

I.    GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS  . . . 4

    A.    Motions to Dismiss the Indictment  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        1.    Defendant Has Failed to Make Out a Showing of
Selective Prosecution and Has Not Made a Colorable
Showing Warranting Discovery on this Claim  . . . . . . . . . . . . . . . . . . . 5
            a.    Defendant Has Failed to Make Out a Showing
of Selective Prosecution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
                (1)    Defendant was not singled out . . . . . . . . . . . . . . . . . . . . . . 8
                (2)    Defendant's prosecution was
not improperly motivated . . . . . . . . . . . . . . . . . . . . . . . . . 11
            b.    Defendant Has Not Made a Colorable
Showing Warranting Discovery . . . . . . . . . . . . . . . . . . . . . . . . . 12

        2.    Defendant's Motion to Dismiss for Alleged Unconstitutional
Application of the Local Prostitution Statutes Should be Denied  . . . . . . 13
            a.    Defendant Has Failed to Meet Her Burden of Proving
the Prostitution Statutes Unconstitutional . . . . . . . . . . . . . . . . . 13
            b.    United States v. Lawrence Does
Not Apply to Defendant's Case . . . . . . . . . . . . . . . . . . . . . . . . . 14
                (1)    The Lawrence Court carved out an
exception for prostitution . . . . . . . . . . . . . . . . . . . . . . . . 14
                (2)    Defendant's case does not involve "private" conduct . . . 15
            c.    Defendant's Classification of Statutes as "Antiquated
Statutes Aimed at Regulating Morality" is Incorrect . . . . . . . . . 16

    B.    Motions to Strike or Dismiss Parts of the Indictment  . . . . . . . . . . . . . . . . . . . . 17

        1.    Defendant's Aliases or Nicknames Are
Appropriately Used in the Indictment  . . . . . . . . . . . . . . . . . . . . . . . . . 17
        2.    Defendant's Motion to Dismiss Count One –
the RICO Count – and its Attendant Forfeiture
Allegation Should Be Denied  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
            a.    General Considerations Relative to the Motion to Dismiss . . . . . 19

---

[2]  Defendant also filed a Praecipe Regarding Discovery and Request for Briefing Schedule (Document 62).  Since the subject matter of that pleading does not overlap with these motions, it will be addressed in a separate response.

        b.     Indictment Charges With Particularity
                a Pattern of Racketeering Activity . . . . . . . . . . . . . . . . . . . . . . . . 22
        c.     Indictment Charges a Person Distinct from the Enterprise,
                as Well as the Other Elements of an Enterprise; the
                Enterprise Does Not Have to be Distinct from
                the Pattern of Racketeering Activity . . . . . . . . . . . . . . . . . . . . . . 22
        d.     Indictment Adequately Pleads a Predicate Offense . . . . . . . . . . 27
        e.     Indictment Provides Adequate Notice of the
                Government's Intent to Seek Forfeiture
                Upon Defendant's Conviction . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

    3.     Defendant's Motion to Dismiss Counts Two Through Four
        – the ITAR Counts – Should Be Denied . . . . . . . . . . . . . . . . . . . . . . . . 31
        a.     Indictment Adequately Informs Defendant
                 of the Charges Against Her . . . . . . . . . . . . . . . . . . . . . . . . 31
        b.     Count Charged Falls Squarely Within
                 Prohibitions of the Statute . . . . . . . . . . . . . . . . . . . . . . . . 33
        c.     Indictment Properly Alleges Aiding and Abetting . . . . . . 35

    4.     Defendant's Motion to Dismiss Count Five –
        the Money Laundering Conspiracy Count –
        and its Attendant Forfeiture Allegation Should Be Denied . . . . . . . . . . 35
        a.     Indictment Adequately Informs Defendant
                 of the Charge Against Her . . . . . . . . . . . . . . . . . . . . . . . . 36
        b.     Indictment Adequately Pleads a Predicate Offense . . . . . 39
        c.     Indictment Provides Adequate Notice of the
                 Government's Intent to Seek Forfeiture
                 Upon Defendant's Conviction . . . . . . . . . . . . . . . . . . . . . 39

C.     The Government Should Not Be Required
       to Provide a Bill of Particulars . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

II.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

## I. <u>GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS</u>

On March 1, 2007, a federal grand jury for this District returned a multi-count indictment charging defendant with five felonies.  Count One of the indictment charges defendant with participation in a Racketeer Influenced Corrupt Organization ("RICO") in violation of 18 U.S.C. § 1962(c), and lists fourteen racketeering acts involving violations of 18 U.S.C. §§ 1953(a)(3) (interstate travel in aid of racketeering enterprises ("ITAR")) and 2.  The RICO count involves defendant managing the enterprise, a large scale prostitution ring known as Pamela Martin and Associates, that operated in several States, including, but not limited to, Virginia, Maryland and in the District of Columbia, from in or about 1993 until in or about August of 2006, that involved approximately 132 women, and generated over $2,000,000 in income through prostitution related activities.  Indictment at ¶ 10a and ¶ 10j.  The racketeering acts, based on ITAR violations, involved the prostitutes converting part of the money derived from prostitution into money orders, sending those money orders via the United States mail to defendant in California, and defendant depositing those proceeds in her own accounts in California and using these proceeds to support herself, the enterprise, and to acquire assets traceable to these proceeds.  *Id.* at ¶¶ 10h-i.  Counts Two through Four charge defendant with three substantive counts of violation of the ITAR statute, 18 U.S.C. §§ 1952(a)(3) and 2.  Count Five charges defendant with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).  The indictment also includes two criminal forfeiture allegations, invoking 18 U.S.C. §§ 1963 and 982(a)(1), the first one associated with Count One, and the second one associated with Count Five.

Defendant has filed several motions challenging the indictment in whole or in part.  Contesting the indictment in whole, defendant filed motions alleging selective prosecution and

unconstitutional application of the local prostitution statutes. Attacking parts of the indictment, defendant filed motions to strike as surplusage defendant's aliases or nicknames, and to dismiss, respectively, the RICO, ITAR, and the money laundering conspiracy counts. Finally, defendant also filed a motion for a bill of particulars. The government shall proceed through this collection of motions in sequence, and discuss why each motion lacks fundamental merit in light of the relevant law and the circumstances of this case.

### A.    Motions to Dismiss the Indictment

#### 1.    Defendant Has Failed to Make Out a Showing of Selective Prosecution and Has Not Made a Colorable Showing Warranting Discovery on this Claim

Defendant has moved to dismiss the indictment against her for alleged selective prosecution or, in the alternative, for an order for discovery on the issue. Def.'s Mot. at 1 (Document 63). Defendant's motion is without merit as to either request.

The United States Supreme Court decision in Wayte v. United States, 470 U.S. 598, 607-8 (1985), states a basic premise from which an analysis of an allegation of selective prosecution begins. In Wayte, the Court stated that:

> In our criminal justice system, the Government retains "broad discretion" as to whom to prosecute . . . . "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his [or her] discretion."  . . .  This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review. Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake. Judicial supervision in this area, moreover, entails systemic costs of particular concern. Examining the basis of prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting prosecutor's motives and decision making to outside inquiry, and may

5

undermine prosecutorial effectiveness by revealing the Government's enforcement policy. All these are substantial concerns that make the courts properly hesitant to examine the decision whether to prosecute.

As we have noted in a slightly different context, however, although prosecutorial discretion is broad, it is not "'unfettered.' Selectivity in the enforcement of criminal laws is . . . subject to constitutional constraints." . . . In particular, the decision to prosecute may not be "'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification,'" . . . including the exercise of protected statutory and constitutional rights, . . . .

*Id.* (citations omitted).

Accordingly, courts presume prosecutors have properly exercised their responsibilities unless there is clear evidence to the contrary. *See* United States v. Armstrong, 517 U.S. 456, 464 (1996). "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision of whether or not to prosecute, and what charges to file or bring before a grand jury, generally rests entirely in his [or her] discretion." *Id.* (internal quotation marks omitted); *see, e.g.*, Attorney General of the United States v. Irish People, Inc., 684 F.2d 928, 947 (D.C. Cir. 1982), *cert. denied*, 459 U.S. 1172 (1983); United States v. Edelin, 134 F. Supp. 2d 59, 87 (D.D.C. 2001).

An individual asserting a claim of selective prosecution bears the burden of demonstrating *prima facie* two factors. To establish such a claim, a defendant must

prove that (1) she was singled out for prosecution from others similarly situated and (2) that her prosecution was improperly motivated, *i.e.*, based upon race, religion or another arbitrary classification. . . . The mere exercise of selectivity is not enough, . . . , and even to initiate discovery to prove impermissible motives a defendant must make a colorable showing.

United States v. Washington, 705 F.2d 489, 494 (D.C. Cir. 1983) (citations omitted); *see* United States v. Serafino, 281 F.3d 327, 331 (1st Cir. 2002); United States v. Hastings, 126 F.3d 310, 316

(4th Cir. 1997) ("the government should neither be subjected to adjudication nor discovery burdens on a selective prosecution claim unless the defendant can show both discriminatory intent and discriminatory impact"); United States v. Greenwood, 796 F.2d 49, 52-53 (4th Cir. 1986); United States v. Edelin, 134 F. Supp. 2d at 87; United States Postal Service v. O'Brien, 644 F. Supp. 140, 145 (D.D.C. 1986); United States v. Napper, 574 F. Supp. 1521, 1525 (D.D.C. 1983).  If either prong of the selective prosecution test is not met, the whole defense fails.  Attorney General of the United States v. Irish People, Inc., 684 F.2d at 947; United States v. Napper, 574 F. Supp. at 1525.  A "colorable basis" has been defined as "the existence of 'some evidence tending to show the existence of the essential elements of the defense and that the documents in the government's possession would indeed be probative of these elements.'"  United States v. Napper, 574 F. Supp. at 1525 (citing United States v. Berrios, 501 F.2d 1207, 1211 (2nd Cir. 1974));[3] see United States v. Armstrong, 517 U.S. at 468 ("[t]he justification for a rigorous standard for the elements of a selective prosecution claim thus requires a correspondingly rigorous standard for discovery in aid of such a claim"); Wayte v. United States, 470 U.S. at 624 (Marshall, J., dissenting, citing United States v. Berrios, supra); United States v. Hedaithy, 392 F.3d 580, 607 (3rd Cir. 2004) (describing defendant's "substantial evidentiary threshold necessary to obtain discovery on his selective prosecution claim"); United States v. Edelin, 134 F. Supp. 2d at 87 (quoting Armstrong).  If the defendant fails to make the requisite showing as to either prong of the selective prosecution test, the Government should not be required to provide the discovery related to that defense.  United States v. Greenwood, 796 F.2d at

---

[3]  As the court stated in Napper, 574 F.Supp. at 1525 n. 8, "[n]ot to require at least a colorable entitlement to the defense would be to encourage the assertion of the defense, no matter how spurious, as a means of burdening criminal trials with massive discovery, completely irrelevant to the defendant's case."

52-53; <u>Attorney General of the United States v. Irish People, Inc.</u>, 684 F.2d at 947-48; <u>United States v. Napper</u>, 574 F. Supp. at 1525. Moreover, absent the requisite initial showing, there is no reason to have a hearing on the issue. <u>United States v. Greenwood</u>, 796 F.2d at 52-53. Finally, "the issue of selective prosecution is one to be determined by the court." <u>United States v. Washington</u>, 705 F.2d at 495. If a defendant fails to make the requisite showing to the court, selective prosecution is not an issue that goes to the jury and evidence in that regard should not be permitted at trial. <u>Id.</u>

        a.      <u>Defendant Has Failed to Make Out a Showing of Selective Prosecution</u>

Defendant has failed to make the requisite showing as to either of the two prongs of the above test. Accordingly, she is not entitled to the requested discovery.

        (1)      <u>Defendant was not singled out</u>

Defendant claims that "the government is disparately treating similarly situated individuals in that it has treated [defendant] differently from other escort service owners." Def.'s Mem. at 6. She bases this claim on two assertions, that is, that there are other escort services operating in this area that are not being prosecuted and that prostitution-related offenses are generally treated as misdemeanors. <u>Id.</u> at 7. Defendant's claim is without merit.

The only case defendant cites regarding improper selection, <u>United States v. Meyers</u>, 810 F.2d 1242, 1246 (D.C. Cir. 1987), is a vindictive prosecution case in which arrested protesters who were not willing to pay a fine had an additional charge added that they then would face at trial. That case is completely different from the present one. In <u>Meyers</u>, the disparate treatment between groups prosecuted was contained within the facts of the case. In the present case, the defendant is not being treated differently from other operators of prostitution businesses who have been prosecuted. Defendant is the person who managed this prostitution business. There are no similar culpable

individuals who are being treated differently. Moreover, defendant is being prosecuted based on the evidence. Defendant's theory that other escort businesses may be engaged in prostitution is based on her speculation.

Defendant's claim that prostitution-related offenses are usually treated as misdemeanors, *see* Def.'s Mem. at 7, is mistaken as to individuals in defendant's position. Prostitutes and "Johns," individuals at the "retail" level of prostitution-related offenses, are often charged with misdemeanors. Individuals like defendant, however, who are involved in pimping and pandering, that is, managing a prostitution business, the "wholesale" level of prostitution, are often charged with felonies, and often serious felonies, in District Court or Superior Court.[4]

By way of example, recently this office has prosecuted a number of such cases, including, but not limited to, the following: United States v. Leonard Taylor, 2007CF314142 (pending case in which defendant allegedly pimped/pandered two adults online); United States v. Curtis, 481 F.3d 836 (D.C. Cir. 2007) (defendant pimp sentenced to life in prison for transportation of minors for prostitution); United States v. Brice, 05-367 (RMC) (defendant pimp sentenced to 30 years in prison for pandering, Mann Act, and transportation of a minor for prostitution); United States v. Kevin Brown, 2005FEL006154 (defendant pimp sentenced to 10 years for pandering and procuring four adults, and obstruction of justice); United States v. David Wilson, 2005FEL003503 (defendant pimp sentenced to 9 years for pandering two adults, threats, and obstruction of justice); United States v. Dontae Reed, 2005FEL005648 (defendant pimp sentenced to 3 years for pandering and procuring

---

[4] In fact, the D.C. statute cited in the indictment, 22 D.C. Code § 2707, Procuring, receiving money or other valuable thing for arranging assignation, is a felony offense, carrying a sentence of up to five years for each offense, except when the person so arranged for is under 18 years old, when the potential sentence is up to 20 years.

two adults); United States v. Long, 328 F.3d 655 (D.C. Cir.), *cert. denied*, 540 U.S. 1075 (2003) (defendant pimp convicted of interstate transportation of minors for prostitution). *See also* United States v. Jones, 909 F.2d 533 (D.C. Cir. 1990) (defendants ran an escort business involved in prostitution; defendants convicted of ITAR and the Mann Act).

Another recent local example is a case in the District of Maryland where that office obtained felony convictions against a number of individuals for transporting a large number of women across state lines for the purpose of prostitution. *See* Exhibit #1 (attached press release from February 15, 2007).

Furthermore, those who have run prostitution businesses have often faced charges in other jurisdictions similar to those faced by defendant in this case, that is, RICO, ITAR, money laundering and forfeiture. *See* United States v. Pipkins, 378 F.3d 1281, 1288-94 (11th Cir. 2004), *sentencing rev'd on other grounds (Booker)*, 544 U.S. 902 (2005) (pimp convicted of RICO and other criminal statutes); United States v. Bennett, 95 F.3d 1158, 1996 WL 477048 (9th Cir. 1996) (unpublished opinion) (RICO, ITAR and money laundering convictions all arising out of defendant's ownership of escort service that served as a front for an organized prostitution ring); United States v. Griffith, 85 F.3d 284, 286 (7th Cir. 1996) (prostitution business run through massage parlors; defendant convicted of RICO, ITAR and money laundering); United States v. Campione, 942 F.2d 429 (7th Cir. 1991) (prostitution business run through nude dance club; defendants convicted of RICO and ITAR); United States v. Muskovsky, 863 F.2d 1319 (7th Cir. 1988) (similar situation to that in Campione immediately above); United States v. Stern, 858 F.2d 1241(7th Cir. 1988) (escort business owners convicted of RICO conspiracy and ITAR). Clearly, defendant has not shown that she has been improperly singled out for prosecution. *See* United States v. Bourque, 541 F.2d 290, 293 (1st Cir.

1979) ("defendant failed to allege, or make a substantial showing, that prosecutions are normally not instituted for the offenses for which he was charged. . . . [t]he charges against [defendant], taken as a whole . . . were serious ones for which prosecution, although not automatic, is a common result"). In fact, defendant herself was prosecuted for a felony in California for doing the same thing there in the early-1990s.

(2)     <u>Defendant's prosecution was not improperly motivated</u>

Defendant claims that her prosecution was improperly based on her exercise of her First Amendment rights. She bases this claim on her "alleg[ation] that the government sought an indictment against her in response to her petition for the appointment of Special Counsel and her declaration of intention to release her phone records to the public." Def.'s Mem. at 7-8.

Defendant's "petition" occurred on February 26, 2007, after defendant was notified by the government that it was on the verge of asking the grand jury to return an indictment against her, the charges being those that were thereafter returned. The investigation in this matter previously became public in October of 2006 when law enforcement agents searched defendant's property. Government's Reply to Defendant's Memorandum in Opposition to March 22, 2007 Protective Order and the Supplemental Protective Order Issued on May 10, 2007 (Document 53), at ¶ 1. The investigation and the development of the evidence, however, began long before that time. *See* Affidavit in Support of Search Warrant, at ¶ 12. After the government had presented its witnesses to the grand jury and prepared its indictment, and was on the verge of presenting the indictment to the grand jury for consideration, the civil and criminal attorneys for defendant suggested a meeting with the prosecutors to discuss the possibility of a pre-indictment resolution. *See* Document 53, at 4, ¶ 7. The government had previously agreed to delay its seeking action on the indictment when

defendant's first criminal defense attorney asked for such a delay in order to have this meeting. The discussions about a resolution of the matter, however, at and after the meeting were not fruitful, and the indictment was presented and returned shortly thereafter. *Id.* at 4-5, ¶ 9.

Thus, contrary to defendant's assertion that the sequence of events somehow support her burden of showing improper motivation, *see* Def.'s Mem. at 4, the sequence shows just the opposite. That is, the charges had already been selected and discussed with defendant's attorneys before the "petition" by defendant on February 26, 2007.[5] Nor do the other alleged "surrounding facts and circumstances," that is, alleged inflation of charges from the normal charges in this type of case, the government seeking protective orders, and comments in court about defendant's phone records, *see id.,* help defendant meet her burden here. As discussed above, the charges in this case are consistent with those in other cases. With regard to the protective orders, those have been submitted to the court and approved. They hardly can be considered part of an improper motive. Lastly, defendant's final point about government comments in court about defendant's phone records also cannot support her burden of showing some improper motive.

      b.    <u>Defendant Has Not Made a Colorable Showing Warranting Discovery</u>

As discussed above, defendant has not made the requisite showing as to either prong of the selective prosecution defense. Accordingly her motion should be denied. Defendant's alternative position, that is, that she is entitled to discovery on this motion should be denied because she has not made a colorable showing of selective prosecution as to both prongs.

---

[5] The one substantive case defendant cites, Def.'s Mem. at 6, on the issue of improper motive is <u>United States v. Mangieri</u>, 694 F.2d 1270 (D.C. Cir. 1982). In that case, however, the court never reached the issue of improper motive because the defendant failed to show that he "was singled out – even at the investigatory stage – because of his whistleblowing." *Id.* at 1276.

2.    **Defendant's Motion to Dismiss for Alleged Unconstitutional Application of the Local Prostitution Statutes Should be Denied**

Defendant has filed a Motion to Dismiss for Unconstitutional Application of the Local Prostitution Statutes.  Def.'s Mot. at 1 (Document 67).  In her motion, defendant challenged the constitutionality of the prostitution statutes of the District of Columbia, Maryland, and Virginia, as they were applied to her specific case.[6]  *Id*.  This motion is without merit.

a.    Defendant Has Failed to Meet Her Burden of Proving the Prostitution Statutes Unconstitutional

In challenging the local prostitution statutes as unconstitutional, the defendant bears a heavy burden.  Statutes are presumed constitutional, and courts must construe a statute as constitutional if at all possible.  FCC v. Beach Communications, Inc., 508 U.S. 307, 314-15 (1993); United States v. Bland, 472 F.2d 1329, 1333-34 (D.C. Cir. 1972).  Furthermore, the party challenging the constitutionality of a statute has the burden of proving its unconstitutionality.  Beach Communications, Inc., 508 U.S. at 315; Bland, 472 F.2d at 1334.  A court must not construe a statute to violate the Constitution if another reasonable construction is available.  United States v. X-Citement Video, Inc., 513 U.S. 64, 68-69 (1994).   As shown below, defendant has failed to meet this heavy burden.

---

[6]  The indictment does not charge the defendant with violating any local statutes. However, Count One of the indictment, which alleges a violation of 18 U.S.C. § 1962(c), (RICO), is predicated upon violations of 18 U.S.C. § 1952(a)(3) (ITAR), which, in turn, are predicated upon the following local prostitution statutes: D.C. Code § 22-2707; Md. Code Ann., Criminal Law § 11-306, and Va. Code Ann. § 18.2-356.

b.    United States v. Lawrence Does Not Apply to Defendant's Case[7]

(1)    The Lawrence Court carved out an exception for
prostitution

Defendant's relies upon Lawrence v. Texas, 539 U.S. 558 (2003), to support her claim that

her case must be dismissed.  Def's Mem. at 1.  Defendant's reliance on Lawrence, is, however,

misplaced.[8]  In Lawrence, the Supreme Court held unconstitutional a Texas statute making it a crime

for two persons of the same sex to engage in consensual sodomy in the privacy of their own home.

539 U.S. 558.  The Court based this holding on the Due Process clause of the Fourteenth

Amendment to the Constitution.  Id.  However, Lawrence is a narrow holding, not just in its facts

and language, but also in its reasoning.  The Lawrence Court obviously recognized the potential

breadth of its decision, as evidenced by the steps it took to limit the scope of the ruling.  In limiting

the impact of Lawrence, the Court went so far as to note: "[the present case] does not involve

persons who might be injured or coerced or who are situated in relationships where consent might

not easily be refused.  It does not involve public conduct or prostitution."  Id. at 578 (emphasis

added).

Furthermore, defendant ignores the federal and state court rulings that have upheld the

constitutionality of prostitution statues post-Lawrence.  See, e.g., United States v. Thompson, 458

F. Supp. 2d 730, 732 (N.D. Ind. 2006) (upholding the constitutionality of the Mann Act, noting that

---

[7]  To the extent that defendant is relying on any other particular constitutional claim to attack the local prostitution statutes, she has not alleged with any specificity the nature of that constitutional challenge (which is her burden), and thus has waived any other constitutional claims.

[8]  It is telling that defendant cited no cases in which courts applied Lawrence to overturn the constitutionality of local prostitution statutes.

"<u>Lawrence</u> held only that a state cannot enact laws that criminalize homosexual sodomy; it did not address the constitutionality of prostitution statutes."); <u>State v. Romano</u>, 155 P.3d 1102 (Haw. 2007) (holding that <u>Lawrence</u> does not render Hawaii's prostitution statutes unconstitutional); <u>People v. Williams</u>, 811 N.E.2d 1197 (Ill. App. Ct. 2004) (finding that statute prohibiting prostitution did not violate defendant's Due Process rights under the Fourteenth Amendment); <u>State v. Thomas</u>, 891 So. 2d 1233 (La. 2005) (<u>Lawrence</u> does not impact Louisiana conviction involving solicitation to engage in unnatural carnal copulation); <u>State v. Pope</u>, 608 S.E.2d 114 (N.C. Ct. App. 2005) (statute criminalizing solicitation of a crime against nature is constitutional).

Even courts applying <u>Lawrence</u> to statutes which do not involve prostitution recognize the limitations of <u>Lawrence</u>. *See* <u>Muth v. Frank</u>, 412 F.3d 808, 817 (7th Cir. 2005) ("<u>Lawrence</u> did not announce . . . a fundamental right, protected by the Constitution, for adults to engage in all manner of consensual sexual conduct . . . .").

(2)    <u>Defendant's case does not involve "private" conduct</u>

Defendant claims that she "does not challenge the aspect of the prostitution laws that apply to public conduct . . . ." Def.'s Mot. at 3. If that is true, the defendant's challenge to the constitutionality of the local prostitution statutes as they apply to her situation must fail. The majority in <u>Lawrence</u> "was not commenting on, or concerned with, governmental regulation of sexual acts in the commercial marketplace. Surely, laws prohibiting the commercial acts of prostitution do not have the same far-reaching consequences as laws that regulate private sex acts of consenting adults in the home." <u>United States v. Thompson</u>, 458 F. Supp. 2d at 732. Defendant denies that her business was public, despite overwhelming evidence to the contrary.

The defendant is charged with criminal activity that was unquestionably public in nature.

15

Sex was contracted for, bought, and sold.  In addition to the fact that the commercial aspect of defendant's business necessarily moves it into the public realm, and therefore outside the scope of Lawrence, the indictment charges and the evidence presented by the government will establish that the defendant herself placed Pamela Martin and Associates squarely in the public realm.  The defendant placed advertisements soliciting escorts in local newspapers, including, but not limited to, the Washington City Paper, the Montgomery County Sentinel, and the University of Maryland Diamondback.  *See* Indictment at ¶ 5.  She also placed advertisements soliciting clients in, *inter alia*, the Washington City Paper, the Northern Virginia yellow pages, the Maryland yellow pages, and the District of Columbia yellow pages.  *Id.* at ¶ 6.  And, finally, she solicited both employees and clients on her internet website: www.pamelamartin.com and online at www.2xtreme.net/pm.  *Id.*  In short, defendant publicly advertised in telephone books, newspapers, and online, and engaged in commercial financial transactions.  It is difficult to imagine a more public enterprise.

> c.      Defendant's Classification of Statutes as "Antiquated Statutes Aimed at Regulating Morality" is Incorrect

In her motion, defendant accuses the government of "enforcing antiquated statutes aimed at regulating morality and lifestyle choices . . . ."  Def.'s Mem. at 3.  This statement is incorrect and unsupported, and ignores the respective roles of the Executive, Legislative, and Judicial Branches of government.

Prostitution has hardly fallen into desuetude.  As just two examples, in 2006, the District of Columbia strengthened its criminal laws prohibiting prostitution in the Omnibus Public Safety Emergency Act.  Furthermore, as noted in Section 1A(1) *supra*, prosecutors in the District of Columbia regularly prosecute prostitution cases.

Nor are statutes criminalizing prostitution aimed at regulating morality and lifestyle choices – the criminalization of prostitution is based upon the tangible harm prostitution brings to communities and individuals.[9]   Prostitution is rife with danger of physical injury, sexually transmitted diseases, and exploitation.  Furthermore, the "cash only" aspect of most prostitution rings leads to violations of money laundering and tax statutes.  Many courts have recognized the legitimate goals of such statutes.  *See*, *e.g.*, State v. Schultz, 582 N.W.2d 113, 117 (Wis. Ct. App.  1988) ("The [statute prohibiting prostitution] has a clear . . . purpose to protect public health and welfare, to prevent additional forms of prostitution, and to prevent criminal activity associated with prostitution."); Commonwealth v. DeStefanis, 658 A.2d 416, 419 n.2 (Pa. Super. Ct. 1995) ("Other evils aimed at being abolished by the criminalization of prostitution include the spread of sexually transmitted disease, the corruption of law enforcement agencies, the incentive to exploit women, and criminal organizations living on the proceeds of prostitution.") (citations omitted); People v. Mason, 642 P.2d 8, 12 (Colo. 1982) ("The health hazards posed by [prostitution] as well as the high incidence of other criminal conduct associated with it are legitimate considerations which by themselves support legislative intervention in this area.") (citations omitted).

**B.**     **Motions to Strike Parts of the Indictment**

> **1.**     **Defendant's Aliases or Nicknames Are Appropriately Used in the Indictment**

Defendant has moved under Fed.R.Crim.P. 7(d) to strike language from the Indictment.

---

[9]  For a review of the studies which support this assertion, see Melissa Farley and Vanessa Kelly, Prostitution: A Critical Review of the Medical and Social Sciences Literature, 11 Women and Criminal Justice 29 (2000) ("One of the myths about prostitution is that 'high-class' call-girl prostitution is vastly different, and much safer than street prostitution.  This has not been verified by research.")

Def.'s Mot. at 1 (Document 61).  Specifically, defendant moved to strike the aliases – Jeane Palfrey, Julia, and Pamela Martin – used in the Indictment, both in the case caption and paragraph one.  *Id.* Defendant claims that this language "inaccurately suggest[s] a sinister use of criminal aliases, and such modification should be stricken as prejudicial surplusage."  *Id.*  The defendant's claim is without merit.

An alias may be stricken from an indictment as surplusage under Fed. R. Crim. P. 7(d), *if it is irrelevant and prejudicial.*  United States v. Clark, 184 F.3d 858, 869 (D.C. Cir. 1999) (citing United States v. Oakar, 111 F. 3d 146, 157 (D.C. Cir. 1997) ("[m]aterial that can be fairly described as 'surplus' may only be stricken [from an Indictment] if it is irrelevant and prejudicial"); United States v. Edmond, 52 F.3d 1080, 1112 (D.C. Cir. 1995); United States v. Jordan, 626 F.2d 928, 931 (D.C. Cir. 1980).  Here, however, the aliases or nicknames used by the defendant are neither irrelevant nor prejudicial.

First, they are relevant because the aliases or nicknames are the only names by which some of the witnesses knew the defendant.  "If the Government intends to introduce evidence of an alias and the use of that alias is necessary to identify the defendant in connection with the acts charged in the indictment, the inclusion of the alias in the indictment is both relevant and permissible, and a pretrial motion to strike should not be granted."  United States v. Clark, 541 F.2d 1016, 1018 (4th Cir. 1975) (citations omitted); United States v. Brodie, 326 F. Supp. 2d 83, 90 (D.D.C. 2004) (quoting language from Clark set forth immediately above).  Furthermore, the one case cited by defendant also supports the idea that an alias can be relevant where it is used to identify the defendant.  *See* United States v. Hsia, 24 F. Supp. 2d 14, 25 (D.D.C. 1998) ("alias should only be retained when 'the Government intends to introduce evidence of an alias and use of that alias is

necessary to identify the defendant in connection with the acts charged'").

Second, there is no prejudice to the defendant in proof of these aliases. As defendant acknowledges, Jeane Palfrey is a variation on her full name, "'Julia' was simply a nickname that [she] used as part of her escort service," and Pamela Martin is part of the name of her escort service, Pamela Martin & Associates. Def.'s Mem. at 2. The aliases or nicknames carry no negative value or prejudicial effect in them. Because these aliases are relevant in identifying defendant and non-prejudicial, there is no justification for striking them from the Indictment.

## 2. Defendant's Motion to Dismiss Count One – the RICO Count – and its Attendant Forfeiture Allegation Should Be Denied

Defendant moved to dismiss Count One of the indictment, the count charging a RICO violation. Def.s Mot. at 1 (Document 64). She did so on numerous grounds, including her claims that the indictment fails to: (1) allege with particularity a pattern of racketeering activity; (2) allege a person distinct from the enterprise; (3) allege an enterprise distinct from the pattern of racketeering activity; (4) adequately plead a predicate offense; and (5) allege a nexus between the alleged unlawful activity and the interests sought be forfeited. *Id.* Defendant's claims, which are without merit, will be addressed in order below.

### a. General Considerations Relative to the Motion to Dismiss

Pursuant to Fed.R.Crim.P. 7(c)(1), an "indictment . . . must be a plain, concise and definite written statement of the essential facts constituting the offense charged . . . ." The requirements that an indictment must meet to survive a pretrial challenge to its sufficiency are well-established. The Supreme Court has held that "[a]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which [s]he must defend, and

second, enables h[er] to plead an acquittal or conviction in bar of future prosecutions for the same

offense." Hamling v. United States, 418 U.S. 87, 117 (1974); *see* United States v. Fitzgerald, 1995

WL 495994 (D.D.C. 1995) (J. Kessler) ("It is well-settled in this Circuit that an indictment is

sufficient if it contains the elements of the offense in enough detail to apprise the defendant of the

offense with which [s]he is charged").  "An indictment need only track the language of the statute

and, if necessary to apprise the defendant of the nature of the accusation against h[er], . . . state time

and place in approximate terms."  United States v. Covino, 837 F.2d 65, 69 (2nd Cir. 1988) (internal

quotations and citations omitted).  Importantly, in this case, the indictment tracks the language of

the RICO statute.[10]  Moreover, each racketeering act relates to a different individual who aided and

---

[10]  In defendant's general legal discussion regarding this motion, *see* Def.'s Mem. at 4, as
well as her memoranda in support of the other motions to dismiss specific counts, *see* Def.'s
Mem. (ITAR) at 3-4; Def.'s Mem. (Money Laundering) at 3-4, defendant repeatedly cites Russell
v. United States, 369 U.S. 749 (1962), and United States v. Pickett, 353 F.3d 62 (D.C. Cir.
2004).  In United States v. Quinn, 401 F. Supp. 2d 80, 101-02 (D.D.C. 2005), District Judge John
Bates addressed similar arguments in a relevant manner as follows in rejecting motions to
dismiss counts in an indictment:

> With regard to whether an indictment "sufficiently apprises" defendants of
> the charges they face, the Court recognizes that "where the definition of the
> offense . . . 'includes generic terms, it is not sufficient that the indictment shall
> charge the offense in the same generic terms as in the definition . . . '"  Russell,
> 369 U.S. at 764 . . . .  But the Court also takes heed of the Supreme Court's
> subsequent declaration that '[i]t is generally sufficient that an indictment set forth
> the offense in the words of the statute itself," so long as those words leave no
> uncertainty or ambiguity about the elements of the offense.  Hamling v. United
> States, 418 U.S. 87, 117 . . . (1974).

> . . .

> . . . In Pickett, the D.C. Circuit said an indictment was insufficient where
> it "track[ed] *only part of* the statutory language," 353 F.3d at 67 (emphasis
> added), and omitted text of the statute that was essential to the definition of the
> offense.  In this case, the indictment precisely tracked the relevant *mens rea*
> language of the [applicable statute].

abetted defendant in the violation set forth therein, that is, ITAR, and gives the respective approximate time and place.

In a number of the arguments made in this motion to dismiss the RICO count, as well as the other motions to dismiss specific counts, it appears that defendant is really arguing about matters bound up with the factual proof in this case. Disposition of those matters, however, needs to await the evidence at trial. "If a pretrial claim is substantially founded upon and intertwined with 'evidence concerning the alleged offense, the motion falls within the province of the ultimate finder of fact and must be deferred.'" United States v. Wilson, 26 F.3d 142, 159 (D.C. Cir. 1994), *cert. denied sub nom* Briscoe v. United States, 514 U.S. 1051 (1995).

The RICO statute, 18 U.S.C. § 1962(c), requires proof of the following five essential elements for a conviction:

One:    An enterprise, as described in the indictment, existed on or about the time alleged in the indictment;

Two:    The enterprise affected interstate commerce;

Three: Defendant was employed by or was associated with the enterprise;

Four:   Defendant participated, either directly or indirectly, in the affairs of the enterprise; and

Five:   Defendant participated in the affairs of the enterprise through a pattern of racketeering activity, as described in the indictment, through the knowing commission of at least two racketeering acts within ten years of each other.

O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, Section 56.03 (5th Ed.). The indictment in this case addresses all five elements in Count One of the indictment, and gives defendant sufficient notice of that with which she is charged.

b.    Indictment Charges with Particularity a Pattern of Racketeering
Activity

Defendant alleges that the indictment fails to allege a pattern of racketeering activity with

particularity.  Def.'s Mem. at 5-7.  This claim is without merit.

In order to establish a "pattern of racketeering activity" as alleged in Count One of the

indictment, the government must prove beyond a reasonable doubt at trial that:

One:    At least two acts of racketeering, as detailed in the indictment, were committed
within ten (10) years of each other;

Two:    The racketeering acts had the same or similar purposes, results, participants, victims
or methods of commission, or are otherwise interrelated by distinguishing
characteristics and are not isolated events; and

Three:  The racketeering acts themselves constitute a threat of continued activity.  This threat
of continued activity may be established when the evidence shows that the
racketeering acts are part of a long-term association that exists for criminal purposes
or when the racketeering acts are shown to be a regular way of conducting a
defendant's ongoing enterprise.

O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, Section 56.07 (5th Ed.).  The

language in the indictment addresses all three of these elements of a pattern of racketeering activity

and gives an approximate time and place of the offense.  *See* Indictment at ¶ 11.  The indictment,

accordingly, alleges a pattern of racketeering activity with sufficient particularity.

c.    Indictment Charges a Person Distinct from the Enterprise, as
Well as the Other Elements of an Enterprise; the Enterprise
Does Not Have to be Distinct from the Pattern of Racketeering
Activity

Defendant alleged that the indictment does not charge a person distinct from the enterprise.

Def.'s Mem. at 7-9.  Defendant also alleged that the indictment fails to show continuity of the

alleged enterprise or common purpose of its members.  *Id.* at 9-12.  Finally, she claims that the

22

indictment fails to allege an enterprise distinct from the racketeering activity. *Id.* at 9.

To the contrary, the indictment clearly does charge an enterprise distinct from the defendant, as well as the other elements of an enterprise. An enterprise does not, on the other hand, have to be distinct from the pattern of racketeering activity. These issues will be addressed jointly below since they significantly overlap with each other.

The indictment, as defendant acknowledges, *see* Def.'s Mem. at 10, alleges that defendant and others constituted the enterprise and that the enterprise functioned as a continuing unit for a common purpose. Indictment at ¶ 7. These are the very elements defendant claimed the indictment did not have. Accordingly, defendant has been given appropriate notice of that with which she is charged.

In this case, the sufficiency of the government's factual proof of the enterprise and the pattern of racketeering acts are for the Court and the jury to determine after the government has presented its evidence at trial. Nevertheless, the government will address the issues raised by defendant. For purposes of the RICO statute, the term "enterprise" includes "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). In this case the enterprise charged is an "association-in- fact" comprised of defendant and others known and unknown to the Grand Jury, doing business as Pamela Martin and Associates. Indictment at ¶ 7. To prove the existence of such an enterprise, the government need only show "(1) a common purpose among participants, (2) organization, and (3) continuity." United States v. Perholtz, 842 F.2d 343, 362 (D.C. Cir.), *cert. denied*, 488 U.S. 821 (1988). In Perholtz, one of the seminal RICO cases out of this Circuit, the D.C. Circuit also held that the existence of the enterprise may be inferred from the proof establishing the racketeering acts, and specifically rejected a defense argument, *see* Def.'s

Mem. at 9, that "the organization cannot exist unless it does something other than commit predicate acts." *Id.* at 363. *See, e.g.*, United States v. White, 116 F.3d 903, 924 (D.C. Cir.) ("the existence of the enterprise may be inferred from proof of the pattern"), *cert. denied*, 522 U.S. 960 (1997); United States v. Morrow, 2005 WL 1389256, *6 (D.D.C. 2005) ("the D.C. Circuit has found that the government satisfies its burden if it proves the existence of the enterprise and of the pattern, and has refused to require the government to prove each by separate evidence") (internal quotation marks omitted).

The "organization" required for a RICO charge need not be a strictly structured unit. In Perholtz, 842 F.2d at 362, several corporations and individuals – including three current or former employees of the United States Postal Service – were convicted of participation in a RICO enterprise which engaged in bribery and mail fraud in the procurement of United States Postal Service and Small Business Administration contracts. The defendants challenged the conviction, in part, on the ground that this group of participants did not constitute a proper "association-in-fact" enterprise. Citing Congress's admonition that the RICO statute "shall be liberally construed to effectuate its remedial purposes," Pub.L. No. 91-452, § 904(a), 84 Stat. 922, 947 (1970) (reprinted in note following 18 U.S.C. §1961), *quoted in* United States v. Turkette, 452 U.S. 576, 587 (1981), the appellate court found that this collection of persons and corporations was an enterprise within the meaning of the statute. Although there was no strict hierarchy among its members, and the people and entities involved in the enterprise varied during its duration, the court found that "the existence of a continuing core of personnel motivated by a common interest [was] sufficient to constitute the association-in-fact enterprise." Perholtz, 842 F.2d at 355. *See also* United States v. Korando, 29 F.3d 1114, 1117-19 (7th Cir.) (small arson-for-profit ring constituted RICO enterprise, albeit a "loose

24

band of associates"), *cert. denied*, 513 U.S. 993 (1994).

This evidence of organized and concerted action places the defendant's group well within the Turkette definition of "enterprise" as "an ongoing organization, formal or informal, [whose] associates function[ed] as a continuing unit." Turkette, 452 U.S. at 583. Numerous courts have applied the Turkette definition to other "informal" criminal groups and found them sufficiently "organized" within the meaning of the RICO statute. In Perholtz, for example, there was no firm structure to the group of persons participating in the government contract fraud. Defendant Perholtz generally played the leadership role and was the creative force behind the fraudulent activity. Beyond that, there was no hierarchy among the participants. Nonetheless, the D.C. Circuit found that this group constituted an "association-in-fact enterprise."

In United States v. Richardson, 167 F.3d 621 (D.C. Cir.), *cert. denied*, 528 U.S. 895 (1999), the government charged three men with RICO crimes for their participation in a robbery and murder spree that lasted approximately four months. Defendant Richardson challenged his conviction on the grounds that the government failed to prove that he and his confederates were an "enterprise" under the RICO statute. In rejecting the appeal, the Circuit found that the three defining characteristics of an enterprise – common purpose, organization and continuity – had all been satisfied. The defendants' common purpose to obtain money by robbery was clearly demonstrated by their repeated robberies. The organization and continuity was evident, the court held, in the evidence that the defendants organized themselves hierarchically and planned their activities. *Id.* at 625. The hierarchy was simply that one of the defendants served as the leader and gave orders to the others during the robberies.

The required elements of common purpose, organization, and continuity, are all present in

25

this case.  First, as to common purpose, defendant contends that the indictment "lacks even the bare-bone declaration of a purpose found to have been alleged sufficiently in <u>Richardson</u>, 167 F.3d 621 at 625.  In that case, the common purpose 'to obtain money or other property' was found adequate. *Id.  See also* <u>United States v. Cooper</u>, 91 F. Supp. 2d 60, 67-69 (D.D.C. 2000) (finding that 'enrichment through robbery' satisfactorily alleged a common purpose . . .)."  Def.'s Mem. at 10-11. Actually, the cases defendant cites support the conclusion that the indictment appropriately alleges a common purpose.  *See* Indictment at ¶ 8 ("The purpose of the enterprise included . . . enriching the members and associates of the enterprise through the operation of a prostitution business").

Moreover, the organization was Pamela Martin and Associates.  Although the prostitutes and testers changed over time, there was a basic consistent organization, the manager and organizer of which was defendant.  *See* O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, Section 56.04 (5th Ed.) ("The term 'enterprise,' as used in these instructions, may include a group of people associated in fact, even thought the association is not recognized as a legal entity.  A group or association of people can be an 'enterprise' if these individuals have joined together for a purpose of engaging in a common course of conduct.  Such an association of persons may be established by evidence showing an ongoing organization, formal or informal, and by evidence that the people making up the association functioned as a continuing unit.  Such an association of individuals may retain its status as an 'enterprise' event though the membership of the association changed by adding or losing individuals during the course of its existence.").

Finally, there was continuity, especially with defendant remaining involved throughout the entire relevant time frame.  *See* <u>United States v. Pipkins</u>, 378 F.3d at 1288-94 (evidence found sufficient to show an association in fact in conviction of pimp who was chief executive of a juvenile

female enterprise that he and another individual organized, even in the absence of a formally structured group).  *See also* United States v. Panno, 1987 WL 11347, *1 (unpublished opinion)[11] (N.D. Ill. 1987) (indictment sufficient that "charge[d] that the enterprise, 'an association in fact operated under various names at various times, such 'Chicago Continental', 'Fantasies Unlimited', 'Playgirl's Escorts', and under the overall name of 'Butterfly Enterprises', and the enterprise operated as a business composed of different people who performed various roles.").  *See also* United States v. Morrow, *supra* at *8 ("While both the evidence introduced and the pattern of activity reveals that the organization was somewhat loose and informal, the testimony provided in the Government's case-in-chief did show that Defendants and their co-conspirators consisted of an ongoing collective functioning as a continuing cooperative for criminal gain.").

In this case, Pamela Martin and Associates was more than just "Pamela Martin," that is, defendant Palfrey.  Its function and profit generation required the involvement of the "Associates," that is, the prostitutes, as well as the Johns who did the testing of them.  Indictment at ¶¶ 10b-c. Moreover, there was the period from April 29, 2002, until November 12, 2002, when another woman, with the supervision of defendant, ran Pamela Martin and Associates.  Finally, the purpose of the enterprise was to obtain funds through acts of prostitution and laundering of the profits.  *Id.* at ¶ 8a.

d.    Indictment Adequately Pleads a Predicate Offense

Defendant also attacks the predicate acts, which are charged under the ITAR statute, 18 U.S.C. § 1952(a)(3), claiming the racketeering acts do not allege the necessary elements of ITAR.

---

[11] Although this is an unpublished opinion, defendant was convicted and his conviction affirmed.  *See* United States v. Stern, 858 F.2d 1241 (7th Cir. 1988).

Def.'s Mem. at 12-14.  This claim is unfounded.[12]

The statute, 18 U.S.C. § 1952(a)(3), requires the government prove the following four essential elements beyond a reasonable doubt at trial:

One:     Defendant used, or caused to be used, the U.S. Mail or facility in interstate commerce;

Two:     Defendant used the mail or facility in interstate commerce, or caused such use, with the intention to promote, manage, establish or carry on the activity described in the indictment;

Three:  The activity described in the indictment was illegal under the laws of the respective States of Maryland, Virginia, and the District of Columbia; and

Four:    After the use of the mail or facility in interstate commerce, defendant knowingly and deliberately, did an act, or attempted to do an act, in order to promote, manage, establish, or carry on the activity described in the indictment.

O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, Section 54.03 (5th Ed.).  *See* United States v. Jones, 909 F.2d 533 (D.C. Cir. 1990) (to obtain ITAR conviction for participation in alleged prostitution business, government must prove defendants used mails or facility of interstate commerce with intent to distribute proceeds of, or otherwise promote, unlawful activity and thereafter promoted or attempted to promote unlawful activity, but government is not required to prove completed violation of underlying state prostitution statute).[13]

_____

[12]  Again, this issue being tied together with the factual proof in this case, this motion, as discussed above, is premature until the evidence is presented at trial.  *See* Def.'s Mem. at 13 ("Indictment wholly fails to allege facts that would 'prove . . . '"; "No facts are alleged in support of the claim . . . ")

[13]  There are a number of cases in which  an escort or prostitution business was used to support an ITAR charge, both as a substantive charge and a RICO predicate act.  *See* United States v. Griffith, *supra* (substantive ITAR and RICO predicate); United States v. Campione, *supra* (ditto); United States v. Jones, *supra* (ITAR); United States v. Muskovsky, 863 F.2d at 1321, 1326-28 (substantive ITAR and RICO predicate); United States v. Stern, *supra* (ditto).

The racketeering acts in this case all make allegations that address each of these elements. Accordingly, defendant has been given sufficient notice of that with which she is charged. Defendant's challenges as to the sufficiency of the facts in support of the elements will have to await trial.

> e.    Indictment Provides Adequate Notice of the Government's Intent to Seek Forfeiture Upon Defendant's Conviction

Defendant also challenged the forfeiture allegation supported by the RICO count. Def.'s Mem at 15-16. In doing so, she selectively quotes from United States v. DeFries, 129 F.3d 1293 (D.C. Cir. 1997), to support her assertion that the indictment also is fatal because the forfeiture allegation "fails to allege a nexus between the unlawful activity and the interests to be forfeited." *Id.* at 15. But the language defendant culls from Defries concerns proof at trial, not pre-trial notice. The Court of Appeals discussed what "nexus" the government must establish at trial to support a forfeiture order at sentencing, not what must be set forth in an indictment.

Ironically, the sole case defendant quotes explicitly discusses the sufficiency of that indictment's forfeiture allegation. The D.C. Circuit indicated, in DeFries, that it was not necessary to specify in either the indictment or a bill of particulars that the government intended a forfeiture of a particular asset – there, a defendant's salary. Rather, to comply with Fed.R.Crim.P. 7(c), the government was only required to put a defendant on notice that it would seek to forfeit everything subject to forfeiture under the applicable statute, such as all property "acquired or maintained" as a result of the RICO violation the government had charged in that case. *Id.* at 1315 n.17.

Fed.R.Crim.P. 7(c) and 32.2(a) (the latter Rule took effect after DeFries, on December 1, 2000), make clear that there can be no criminal forfeiture without a forfeiture allegation in the

indictment.  United States v. Dolney, 2005 WL 1076269, at *4 (E.D.N.Y. 2005) (if the government

wishes to seek forfeiture, it must necessarily include forfeiture allegations in the indictment).  But

even an incorrect statutory citation is harmless if the allegation otherwise adequately informs the

defendant that his property will be subject to forfeiture.  United States v. Russo, 2007 WL 505056

(S.D. Ala. 2007) (indictment that improperly cited section 982(a)(2) instead of sections 981(a)(1)(C)

and 2461(c) was nevertheless sufficient to put defendants on notice that government was seeking

forfeiture of the proceeds of the mail and wire fraud offenses alleged in the indictment).

Moreover, the courts recognize that Fed.R.Crim.P. 7(a) and 32.2(a) are notice provisions;

thus, the property subject to forfeiture need not be itemized.  United States v. Iacaboni, 221 F. Supp.

2d 104, 110 (D. Mass. 2002) (Rule 32.2(a) makes clear that itemized list of property need not appear

in the indictment; tracking language of section 982(a)(1) was sufficient), aff'd, 363 F.3d 1 (1st Cir.

2004); United States v. Lino, 2001 WL 8356, at *5-6 (S.D.N.Y. 2001) (under Rule 32.2(a),

government need not detail property subject to forfeiture in the indictment; to the extent that a bill

of particulars is required, government's agreement to provide particulars 60 days before trial is

sufficient); United States v. Davis, 177 F. Supp. 2d 470, 484-85 (E.D. Va. 2001) (approving

government's naming automobile as subject to forfeiture in a bill of particulars where indictment

used general language tracking the forfeiture statute), aff'd, 63 Fed. Appx. 76, 2003 WL 1871050

(4th Cir. 2003); United States v. Brown, 2006 WL 898043, at *6 (E.D.N.Y. 2006) (the government

is not required to identify the specific assets subject to forfeiture in the indictment; tracking the

language of the applicable forfeiture statutes is sufficient); United States v. Dolney, 2005 WL

1076269, at *9 (E.D.N.Y. 2005) (following the Advisory Committee Note; there is no need to

itemize the property subject to forfeiture; the government need only inform the defendant that it will

be seeking forfeiture in accordance with the statute); <u>Borich v. United States</u>, 2005 WL 1668411, at *2 (D. Minn. 2005) (forfeiture allegation stating that government would seek forfeiture of proceeds of defendant's drug trafficking activity was sufficient; it was not necessary to name two vehicles as subject to forfeiture). Indeed, because forfeiture is part of sentencing, modification of the amount the government seeks as money judgment has been held not to be an improper amendment to the indictment. <u>United States v. Descent</u>, 292 F.3d 703, 706 (11th Cir. 2002).

In this case, the indictment not only tracks the statutory language in announcing the government's intent to seek criminal forfeiture upon conviction, it also includes specific assets that the government has identified as having been acquired and maintained through the defendant's violation of the RICO statute. Thus, defendant has ample notice of what property the government seeks to forfeit, and notice sufficient for her to challenge the existence of any nexus between the property and the offense giving rise to forfeiture. Her allegation that "the government has not adequately provided notice of forfeitures it is entitled to seek," Def.'s Mot. at 16, is without merit.

### 3.    Defendant's Motion to Dismiss Counts Two through Four – the ITAR Counts – Should Be Denied

Defendant has also filed a motion to dismiss Counts Two through Four, claiming that "the allegations therein fail to set forth the necessary elements of the offense of travel in interstate commerce in aid of racketeering enterprises and the offense of aiding and abetting." Def.'s Mot. at 1 (Document 66). Defendant's claim is without merit.

a.    <u>Indictment Adequately Informs Defendant of the Charges Against Her</u>

The government incorporates here the discussion from above regarding the elements of ITAR and how the indictment appropriately alleged the elements of that statute. *See* discussion in Section

31

B2(d) above.  Accordingly, defendant has been appropriately notified of the charges against her.

Nevertheless, defendant cites <u>Jones v. United States</u>, 909 F.2d 533, 538 (D.C. Cir. 1990), in support of her motion.  Def.'s Mem. at 5-6.  But <u>Jones</u> is a case about improper jury instructions, not a flawed indictment.  <i>Id.</i> at 6; <i>see</i> <u>Jones</u>, at 536-40.  The indictment here cites the appropriate state laws regarding prostitution activity; thus, it is sufficient.  <i>See</i> <u>United States v. Quinn</u>, 401 F. Supp. 2d at 101-02 ("Rule 7(c)(1) of the Federal Rules of Criminal Procedure cannot be construed as demanding that an indictment provide the accused with more notice of the elements of the crime charged than the Due Process Clause of the Fifth Amendment demands that the underlying statute provide.").  The sufficiency of the evidence will be decided using the appropriate jury instructions after the presentation of the evidence at trial.[14]

Defendant likewise asserts that the indictment fails to specify an overt act.  Def.'s Mem. at 8-11.  As was discussed above, however, the indictment clearly alleges an overt act.

Moreover, the two cases cited by defendant do not support her claim.  In <u>United States v. Wander</u>, 601 F.2d 1251, 1258-59 (3rd Cir. 1979), as defendant acknowledged, "the indictment [in that case] failed completely to address this essential element[.]"  Def.'s Mem. at 9-10.  By way of contrast, as discussed above, in this case, the indictment clearly charges a subsequent overt act; that is, it has charged this essential element.

In <u>United States v. Childress</u>, 58 F.3d 693, 720 (D.C. Cir. 1995), defendants were convicted of ITAR and challenged the indictment on appeal.  The court found that the indictment, with

---

[14]  As defendant acknowledges, "the government need not prove an actual violation of the state statute, but it must prove that the defendant performed, or attempted to perform, an act with the intent that each element of the state offense be completed.  <u>Jones</u>, 909 F.2d at 539."  Def.'s Mem. at 7, n.6.  That is precisely what the government intends to prove at trial.

language similar to the one in this case, "charged an offense under the Travel Act because it set out the essential elements of the crime." *Id.* Likewise, in this case, the indictment set out the essential elements of the offense and defendant's motion should be denied.

b.    Count Charged Falls Squarely Within Prohibitions of the Statute

Defendant further argues that the government exceeded the letter or spirit of the Travel Act. Def.'s Mem. at 12-14. She cites, however, no controlling authority. The language to which defendant refers in United States v. Rewis, 401 U.S. 808, 812 (1971), pertains to Justice Marshall's concern about an overly expansive reading of the Travel Act. In that case the issue was whether the interstate element had been adequately demonstrated.[15] In Rewis, however, the Court noted that "there are cases in which federal courts have correctly applied § 1952 to those individuals whose agents or employees cross state lines in furtherance of illegal activity . . . ." *Id.* at 813 (citations omitted). Relevant to the present case, the Court also noted that the "[l]egislative history of the Act is limited, but does reveal that § 1952 was aimed primarily at organized crime and, more specifically at persons who reside in one State while operating or managing illegal activities located in another." *Id.* at 811. In the accompanying footnote, which sets forth a portion of the testimony of the Attorney General in support of the bill, the following relevant discussion is set forth: "'The travel that would be banned is travel 'in furtherance of a business enterprise' which involves gambling, liquor, narcotics, and *prostitution offenses*, or extortion or bribery. Obviously, we are not trying to curtail the sporadic, casual involvement in these offenses, but rather a continuous course of conduct

---

[15]    In Rewis, the Court held that the defendants, who admittedly ran a lottery or numbers operation near a state line, but who were not shown to have crossed state lines at any time in connection with the operation of their lottery, could not be convicted of violation of Travel Act merely because their gambling operation was frequented by out-of-state bettors. *Id.* at 811-12.

sufficient for it to be termed a business enterprise.'" *Id.* at n.6 (quoting Robert F. Kennedy, Attorney General when the Act was proposed) (emphasis added); *see* United States v. Auerbach, 913 F.2d 407, 411 (7th Cir. 1990).

The other authority provided by defendant is a cite to the concurring opinion in a Third Circuit opinion, United States v. Wander, *supra*. This opinion of one judge who was not in the majority and relies on Rewis also does not adequately support her contention.

Despite defendant's contention portraying this matter as a local matter, as set forth in the indictment, "the prostitution ring [supporting the ITAR counts] existed from in or about 1993 until in or about August of 2006, involved the activities of approximately 132 women, and generated approximately $2,075,384 in income through prostitution related activities [in D.C., Maryland, Virginia and California]." Indictment at ¶ 10j. That is the situation discussed in Rewis about those types of situations sought to be addressed by ITAR – a woman living in California operating or managing illegal, long-term activities involving prostitution in the metropolitan Washington, D.C., area. *See* United States v. Griffith, 85 F.3d at 286-88 (state prostitution offenses supported predicate acts for RICO, ITAR and money laundering charges; defendant, who lived in Colorado, managed massage parlors in Illinois). This matter is not the limited, local matter defendant tries to portray.[16]

---

[16] It seems ironic that when defendant deems it in her interest to downplay the extent and nature of her criminal activity, she does so, as she does here and in her selective prosecution motion. Def.'s Mem. (Selective Prosecution) at 7. On the other hand, when she finds it in her interest to make the criminal activity very expansive, as in her motion to dismiss the money laundering conspiracy count, she does not feel constrained by her other arguments from doing so, despite any inconsistency. Def.'s Mem. (Money Laundering) at 6 ("that illegal activity occurred sometime in a thirteen year period in Washington, D.C., Virginia, and Maryland, an area greater than 55, 000 square miles").

c.    Indictment Properly Alleges Aiding and Abetting

Finally, defendant contends that the indictment failed to allege the proper elements to support a charge under 18 U.S.C. § 2.  Def.'s Mem. at 14-15.  This contention is also without merit.

As discussed above, the citation of the statute is sufficient notice to defendant of that with which she is charged.  The defendant here, as she has previously, herself has set forth the elements of the statute, which shows she knows the requirements of the crimes with which she is charged.  Moreover, she clearly cannot claim she is not on notice since it is not even necessary to charge aiding and abetting in order for it to be appropriate for the Court to give an instruction to the jury on aiding and abetting.  *See, e.g.,* United States v. Kegler, 724 F.2d 190, 200-01 (D.C. Cir. 1984); United States v. Boone, 543 F.2d 412, 413 (D.C. Cir. 1976).   Accordingly, defendant's motion should be denied.

4.    **Defendant's Motion to Dismiss Count Five – the Money Laundering Conspiracy Count – and its Attendant Forfeiture Count Should Be Denied**

The final motion to dismiss filed by defendant is as to Count Five, the money laundering conspiracy, and its attendant forfeiture count.  (Document 65).  Many of the arguments raised in this motion are similar to the ones raised above, and the responses by the government are also similar.  As such, the government incorporates by reference its discussion relative to the RICO and ITAR counts.  As will be discussed below, this motion is also without merit.

Defendant raised three claims:  (1) that the count does not adequately inform her of the offense; (2) that it does not allege the essential elements of the predicate offense of ITAR; and (3) the forfeiture provision relevant to this count does not adequately allege a "substantial connection" with the assets listed in the money laundering conspiracy.  Def.'s Mot. at 1; Def.'s Mem. at 2.  The

government will address these issues in order below.

        a.    <u>Indictment Adequately Informs Defendant of the Charge Against Her</u>

Defendant is charged in Count Five with money laundering conspiracy under 18 U.S.C. § 1956(h). This law makes it an offense for anyone to conspire or agree with someone else to do something which, if actually carried out, would be a violation of 18 U.S.C. § 1956.

Title 18, United States Code, Section 1956(a)(1)(A)(i), makes it a crime knowingly to use the proceeds of specified unlawful activity to promote the carrying on of illegal activity. For a jury to find the defendant guilty of this crime, it would need to be convinced that the government proved each of the following beyond a reasonable doubt:

| | |
|---|---|
| First: | The defendant knowingly conducted or attempted to conduct a "financial transaction," as defined below; |
| Second: | The financial transaction involved the proceeds of specified unlawful activity, that is, interstate travel or transportation in aid of racketeering enterprise, in violation of Title 18, United States Code, Section 1952(a)(3); |
| Third: | The defendant knew that the property involved in the financial transaction or attempted financial transaction represented the proceeds of some form of specified unlawful activity, namely interstate travel or transportation in aid of racketeering enterprise; and |
| Fourth: | The defendant conducted or attempted to conduct the financial transaction with the intent to promote the carrying on of specified unlawful activity, namely interstate travel or transportation in aid of racketeering enterprise. |

Pattern Federal Criminal Jury Instructions for the Tenth Circuit, 2.73 (2006); *see* <u>United States v. Griffith</u>, 85 F.3d at 286-88 (state prostitution offenses supported predicate acts for RICO, ITAR and money laundering charges; defendant, who lived in Colorado, managed massage parlors in Illinois).

The term transaction includes a purchase, transfer, delivery, or other disposition. Pattern Federal Criminal Jury Instructions for the Tenth Circuit, 2.73 (2006) (using definition from 18

U.S.C. §1956(c)).  The term financial transaction means a transaction that in any way or degree

affects interstate commerce, and that involves the movement of funds by wire or other means.  *Id.*

"Proceeds" can be any kind of property, not just money.  *Id.*

Under the law, a "conspiracy" is an agreement or a kind of "partnership in criminal purposes"

in which each member becomes the agent or partner of every other member.  Pattern Federal

Criminal Jury Instructions for the Eleventh Circuit, OI 70.5 (2003).  In order to establish a

conspiracy offense it is not necessary for the government to prove that all of the people named in the

indictment were members of the scheme; or that those who were members had entered into any

formal type of agreement.  *Id.*  Also, because the essence of a conspiracy offense is the making of

the agreement itself, it is not necessary for the government to prove that the conspirators actually

succeeded in accomplishing their unlawful plan.  *Id.*  To find the defendant guilty of conspiracy, a

jury would need to be convinced that the government proved each of the following beyond a

reasonable doubt:

> First:    That two or more persons, in some way or manner, came to a mutual
> understanding to try to accomplish a common and unlawful plan to violate
> 18 U.S.C. Section 1956, as charged in the indictment; and
>
> Second:    That the Defendant, knowing the unlawful purpose of the plan, willfully
> joined in it.

*Id.*

The twenty-page indictment in this case gives defendant, consistent with Fed.R.Crim.P. 7(c),

"a plain, concise and definite written statement of the essential facts constituting the offense

charged."  Also consistent with the cases cited by defendant, the indictment sufficiently "apprise[s]

the accused of the particular offense with which [s]he is charged."  Def.'s Mem. at 6, *quoting* United

States v. Conlon, 628 F.2d 150, 155 (D.C. Cir. 1980) (court of appeals reversed district court dismissal of count charging conflict of interest violation).  Her complaint about the need for information to prepare for trial, *see* Def.'s Mem. at 6, should be addressed in the context of pre-trial discovery and pleadings, not in a motion to dismiss the indictment.

Defendant also complains that the indictment fails to adequately define "proceeds" so as to inform her of the nature of the charge against her.  Def.'s Mem. at 7-9.  She contends that the source of the indictment's "flaw" traces from the failure of the statute to define the term.  *Id.* at 7. Defendant then goes on to say that the definition of this term is "the focus of considerable debate" over "net" versus "gross income," that "[t]he D.C. Circuit has yet to set forth its view on the meaning of the term[,]" and that "this issue is pending before the United States Supreme Court[.]"  *Id.*

The short answer to this question is it will be addressed at trial by way of jury instructions. It is not a proper basis to dismiss the count and defendant cites no authority to the contrary.  In United States v. Quinn, 401 F. Supp. 2d at 101, the Court was faced with a similar contention by a defendant "that imprecision of language [on the *scienter* element] has rendered the charging instrument fatally defective."  The Court rejected this claim, holding that:

> Rule 7(c)(1) of the Federal Rules of Criminal Procedure cannot be construed as demanding that an indictment provide the accused with more notice of the elements of the crime charged than the Due Process Clause of the Fifth Amendment demands that the underlying statute provide.  And, as the Court stated in Hamling, "lack of precision is not itself offensive to the requirement of due process.  The Constitution does not require impossible standards; all that is required is that the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." . . . in the present case, the indictment does state a *mens rea* requirement; it merely fails to provide further explanation of the meaning of "willful."

*Id.* at 101-02 (citations omitted).  Accordingly, the Court denied the motion to dismiss the counts

for failure to state an offense.

Similarly, in this case, the indictment, in Count Five, charged "proceeds." Defendant's complaint is that it is not further defined. Since the indictment tracks the statutory language, defendant's claim must fail. Again, the appropriate time to address this issue is in jury instructions.

### b.    Indictment Adequately Pleads a Predicate Offense

Defendant also attacks the predicate acts, which are charged under the ITAR statute, 18 U.S.C. § 1953(a)(3). She maintains that the racketeering acts do not allege the necessary elements of ITAR. Def.'s Mem. at 10. In support of this argument, defendant incorporates her argument in her motion to dismiss the ITAR counts. For the reasons already discussed above relevant to that motion, *see* discussion in B2(d) above, this motion is unfounded.

### c.    Indictment Provides Adequate Notice of the Government's Intent to Seek Forfeiture Upon Defendant's Conviction

Defendant, as she did with her motion to dismiss the RICO count, argues that the indictment fails to allege a substantial connection between the unlawful activity and the interests to be forfeited. Def.'s Mem. at 11-12. Defendant raises here the same arguments raised in the RICO motion. The government incorporates by reference its discussion relative to RICO forfeiture counts. *See* discussion in B2(e) above.

### C.    The Government Should Not be Required to Provide a Bill of Particulars

Defendant has moved for a bill of particulars, requesting information about the respective counts in the indictment, as well as the forfeiture allegations, including theories of the prosecution and the identities of certain individuals referenced in the indictment. Def.'s Mot. at 1-3 (Document

68).  This motion should be denied.[17]

The purpose of a bill of particulars is "to ensure that the charges brought against a defendant are stated with enough precision to allow the defendant to understand the charges, to prepare a defense, and perhaps also to be protected against retrial on the same charges."  United States v. Butler, 822 F.2d 1191, 1193 (D.C. Cir. 1987); United States v. Bourdet, 447 F. Supp. 2d 164, 184 (D.D.C. 2007) (no bill of particulars required; indictment sufficiently set forth time period of conspiracy, at least three countries where defendants acted in furtherance of the conspiracy, object of the conspiracy, the statutes violated by the conspiracy, and the *mens rea* required by those statutes); United States v. Edelin, 128 F. Supp. 2d 23, 36 (D.D.C. 2001); United States v. Esquivel, 755 F. Supp. 434, 436 (D.C. 1990).  "It is not the function of a bill of particulars to provide a detailed disclosure of the government's evidence in advance of trial."  Overton v. United States, 403 F.2d 444, 446 (5th Cir. 1968);  *see, e.g.,*  United States v. Torres, 901 F.2d 205, 234 (2nd Cir.) ("[a]cquisition of evidentiary detail is not a function of a bill of particulars"), *cert. denied*, 498 U.S. 906 (1990); United States v. Armocida, 515 F.2d 49, 54 (3rd Cir.) (bill of particulars is not intended as a vehicle for "wholesale discovery of the Government's evidence"), *cert. denied*, 423 U.S. 858 (1975); Edelin, 128 F. Supp. 2d at 36 (*quoting* Torres); United States v. Whitehorn, 710 F. Supp. 803, 821 (D.D.C.1989), *overruled on other grounds by* United States v. Rosenberg, 888 F.2d 1406

---

[17]  In her motion, defendant requests numerous items relating to the government's theories of prosecution, *e.g.*, "Explain what common purposes and objectives are indicated"; "Explain how Ms. Palfrey had the 'intent to promote the carrying on of the specified unlawful activity."  Def.'s Mot. at 1-2.  In the accompanying Memorandum in Support, however, she makes three requests.  These will be discussed below.  The three requests include the identities of alleged co-conspirators, which co-conspirator engaged in each act alleged in Count One, and the nexus between the property charged in the forfeiture counts and Counts One and Five.  Def.'s Mem. at 2-6.  In other words, the memorandum does not even attempt to support most of the requests in her motion.

(D.C. Cir. 1989) ("It is not the function of a bill of particulars to provide detailed disclosure of the government's evidence"); United States v. Ramirez, 54 F. Supp. 2d 25, 29 (D.D.C. 1999) ("[a] bill of particulars is not a discovery tool or a device for allowing the defense to preview the government's theories of evidence. It properly includes clarification of the indictment, not the government's proof of its case"). Nor is it designed to force the government to reveal a theory of its case that the defendant could then use to limit the government's presentation of its case at trial. Torres, 901 F.2d at 234; United States v. Burgin, 621 F.2d 1352 (5th Cir.), *cert. denied*, 449 U.S. 1015 (1980). The defendant's constitutional right underlying a bill of particulars is "to know the offense with which he is charged, not to know the details of how it will be proved." United States v. Kendall, 665 F.2d 126, 135 (7th Cir. 1981), *cert. denied*, 455 U.S. 1021 (1982).

This objective has been more than met by the detail of the speaking indictment and by the voluminous discovery provided to date to defense counsel. The defendant has received exceptionally thorough discovery in this case. She has received thousands of pages of documents, including scanned versions of the documents seized during the execution of the search warrant at her home, the postal money orders she received from her employees, the express mail labels used to send the postal money orders and hundreds of pages of banking documents. Furthermore, the government will be providing additional discovery in the near future. Finally, the government has agreed, although not required to do so by statute, to turn over most of the Jencks Act a week before trial.

The government would suggest that its compliance with its Fed.R.Crim.P. 16 obligations and its voluntary disclosures of additional information have placed defense counsel in a better position than even the most detailed bill of particulars might afford. As such, there is no basis for the additional disclosures sought by this motion. *See, e.g.,* Butler 822 F.2d at 1193 (where "the

indictment is sufficiently specific or if the requested information is available in some other form, a bill of particulars is not required"); United States v. Glecier, 923 F.2d 496, 502 (7th Cir. 1991) (demand for a bill of particulars was denied where indictment and government's pretrial disclosures provided defendants with sufficient information concerning the charges against them), *cert. denied*, 502 U.S. 810 (1991); United States v. Marrero, 904 F.2d 251, 258 (5th Cir. 1990) ("when the information requested is provided in some other form, no bill of particulars is required"), *cert. denied*, 498 U.S. 1000 (1990); Bourdet, 477 F. Supp. 2d at 184; Edelin, 128 F. Supp. 2d at 36-37.

In light of the strict limitations placed on the proper scope of bills of particulars and the information already provided to defense counsel in this case, by way of detailed indictment and discovery, the government should not be required to provide a bill of particulars.  *See id*.

The government will address below the three specific requests addressed in defendant's memorandum in support of her motion for a bill of particulars.  First, defendant requests the identities of alleged co-conspirators.  Def.'s Mem. at 2-4.  She states that, "at the appellate level, no bright-line rule exists for when the identities of un-indicted co-conspirators should be disclosed[,]" citing United States v. Mejia, 448 F.3d 436, 445 (D.C. Cir. 2006), *cert. denied*, 127 S.Ct. 989 (2007) (which found no error in District Court's denial of a bill of particulars).   Def.'s Mem. at 2.

In this case, the indictment is sufficiently specific, as discussed above, and further detail has been provided to the defendant in the discovery provided to her.  Thus, the government respectfully submits that the Court should deny this motion.  *See, e.g.*, United States v. Torres, 901 F.2d at 233-34 (district court did not abuse discretion in denying bill of particulars identifying unindicted co-conspirators); United States v. Colson, 662 F.2d 1389, 1391 (11th Cir. 1981) (similar holding); United States v. Reinhold, 994 F. Supp. 194, 200-01 (S.D.N.Y. 1998) (district court denied request

for bill of particulars seeking identities of unindicted co-conspirators in fraud case).

Defendant, however, cites two cases from this district in which the court required a bill of particulars as to the names of alleged co-conspirators.  Def.'s Mem. at 2, *citing* United States v. Ramirez, 54 F. Supp. 2d 25, 30 (D.D.C. 1999), and United States v. Brodie, 326 F. Supp. 2d 83, 91 (D.D.C. 2004).  The opinion in Ramirez is distinguishable from this case and Brodie simply cited Ramirez without any further analysis set forth.[18]

In Ramirez, District Judge Paul L. Friedman stated that "[i]n these circumstances, the Court concludes that the defendants must be provided with certain information[,]" including "the names of all persons the government would claim at trial were co-conspirators[.]" The circumstances were listed, in relevant part, as follows:

> A bill of particulars is all the more important in a narcotics conspiracy case because the indictment itself provides so little detail.  Furthermore, while the conspiracy in this case is alleged to have begun in the spring of 1998, and to have lasted until on or about February 9, 1999, defendants . . . are not charged with any criminal conduct before February 4, 2999, only *six days* before the alleged conspiracy ended.

54 F. Supp. 2d at 30 (emphasis in original).

By contrast, in this case, defendant was involved in the conspiracy throughout the entire time of the conspiracy.  She owned Pamela Martin and Associates during the entirety of its operation, and she directly managed it for all but a few months.  She was involved, in a large way, in all aspects of the business.  Moreover, the indictment, as discussed above, provides sufficient detail for defendant to defend against these allegations.

---

[18]  The opinion in Brodie also cites, without further discussion or analysis, two other opinions authored by Judge Friedman, United States v. Trie, 21 F. Supp. 2d 7, 22 (D.D.C. 1999), and United States v. Hsia, 24 F. Supp. 2d 14, 30-31 (D.D.C. 1998).  Both of those cases were fairly wide-ranging matters involving offenses directed against the Federal Election Commission which were very different factually from the case before this Court.

Defendant also cites a case from the Southern District of New York for the proposition of what factors might be relevant to a court deciding a motion such as defendant's. Def.'s Mem. at 3. According to defendant, these factors include, among others, the complexity of the case, the sheer volume and nature of the evidence , and any justification for non-disclosure. *Id.* Despite the arguments of defendant, this matter is not complex. Despite the length of the activity and the number of people involved, the conduct charged is all very similar and repetitive, *i.e.*, defendant hired women to act as prostitutes, those women earned cash through prostitution, and then converted a portion of the cash into money orders and sent the money orders to defendant, by U.S. Mail, at her direction. Defendant deposited the money orders and used those proceeds to conduct and maintain her prostitution operation. Defendant has been advised of that with which she has been charged and, as is apparent from her motions and public statements about, among other things, her "adult fantasy sex," operation, she knows well what she is alleged to have done. She does not need the actual names of other witnesses now to prepare her defense. Defendant is demanding a witness list from the government – which Fed.R.Crim.P. 16 does not require.[19]

Defendant's second request is for the name of the person who engaged in each racketeering act in Count One of the Indictment. Def's Mem. at 4-5. This request should be denied for the same reasons as the first, as was discussed above.

Defendant's third and last request is for a bill of particulars regarding the forfeiture counts. Def.'s Mem. at 6. Defendant cites one case, <u>United States v. Rogers</u>, 617 F. Supp. 1024 (D. Colo.

---

[19]  As to the justification for non-disclosure, the harassment of potential witnesses was set forth in detail in the Government's Reply to Defendant's Memorandum in Opposition to the March 22, 2007 Protective Order and the Supplemental Protective Order Issued on May 10, 2007. (Document 53).

44

1985), in support of her request.  *Id.*  But, in Rogers, 617 F. Supp. at 1029-1030, the defendant apparently had a basis to question whether he had any interest in the entities identified for forfeiture and also to question how his interest, if any, was acquired or maintained in violation of RICO or otherwise constituted criminal proceeds.   The court, there, agreed that "[t]he indictment is insufficiently clear in that it does not detail any connection between many of the entities to be forfeited and the activities of the enterprise."  *Id.* at 1030.  In this case, in contrast, the indictment makes clear that all of the proceeds defendant secured while owning and operating Pamela Martin and Associates are subject to forfeiture (regardless of whether those proceeds still exist or have been dissipated or concealed).  Indeed, as previously discussed, although the indictment does not even need to identify any specific assets that are alleged to constitute proceeds, in this case it plainly does.

This request should be denied for the reasons discussed previously in this section regarding the purposes of a bill of particulars as well as those set forth regarding the sufficiency of the forfeiture counts.  *See* discussion in B2(e) above.  As to Rogers, that opinion is overly broad and beyond that which the applicable law requires, as discussed above in B2(e).  *See, e.g.*, United States v. Hughes, 817 F.2d 268, 272 (5th Cir. 1987); United States v. Reinhold, 994 F. Supp. at 201. Accordingly, this request should be denied.

## II.  <u>CONCLUSION</u>

For the reasons set forth above, the government respectfully requests that the Court deny the

defendant's motions.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY
D.C. Bar No. 498610


/ s /

_____
Daniel P. Butler
D.C.  Bar No. 417178
Catherine K. Connelly
Mass.  Bar No. 649430
William R. Cowden
D.C. Bar No. 426301
Assistant United States Attorneys
555 4th Street, N.W.
(202) 353-9431, 616-3384, 307-0258
Washington, D.C.  20530
Daniel.Butler@usdoj.gov
Catherine.Connelly2@usdoj.gov
William.Cowden@usdoj.gov

**FOR FURTHER INFORMATION CONTACT**
**AUSA VICKIE E. LEDUC or**
**MARCIA MURPHY at 410-209-4885**
**FEBRUARY 15, 2007**
**FOR IMMEDIATE RELEASE**
**http://www.usdoj.gov/usao/md**

---

GERMANTOWN WOMAN SENTENCED FOR CONSPIRACY TO TRANSPORT HUNDREDS OF
PROSTITUTES TO MONTGOMERY AND PRINCE GEORGE'S COUNTIES

Vast Majority Were Illegal Aliens Transported from New York and New
Jersey

Greenbelt, Maryland - Rosibel Aparicio Jandres, age 45, of
Germantown, Maryland, was sentenced today to 24 months in prison,
followed by three years of supervised release for conspiracy to
transport hundreds of prostitutes to Montgomery and Prince George's
counties, announced United States Attorney for the District of
Maryland Rod J. Rosenstein. U.S. District Judge Alexander Williams,
Jr. also ordered that Jandres forfeit $20,000 in proceeds from the
sale of 1207 Kirklynn Avenue in Takoma Park; the residence located at
19325 Frederick Road, Germantown, Maryland; and $8,185 in cash seized
on November 16, 2005.

According to the plea agreement presented to the court, from April
2003 to November 16, 2005 Rosibel Aparicio Jandres conspired with her
husband, Manuel Jandres, her sister Olinda Aparicio and Olinda's
daughters, Elsy Aparicio and Dorinalda Aparicio a/k/a "Dorinalda
Aparicio Gonzalez," and son Eliazor Aparicio and Jair Francis, to
transport hundreds of women from New York and New Jersey to Maryland
and employ them as prostitutes.

The conspirators communicated with the women by cellular telephone at
least a week prior to their travel to Maryland, and scheduled them to
work in at least 15 places of prostitution that they operated,
including apartments and houses in Gaithersburg, Germantown, Langley
Park and Wheaton. The conspirators picked the women up early on
Monday mornings at pre-arranged locations in New York and New Jersey
and dropped them off in Maryland where they worked as prostitutes for
a week at a time. A doorman collected money from customers and
provided security for the prostitutes. The conspirators provided the
prostitutes with food and supplies for a weekly fee. One of the
vehicles used to transport the women to and from the New York and New
Jersey area was purchased in the name of Jandres and her husband. The
vast majority of the women they employed as prostitutes were aliens
unlawfully present in the United States.

Olinda Aparicio pleaded guilty on November 13, 2006 and was sentenced last month to 15 months in prison. Elsy Aparicio, age 31, of Gaithersburg; Eliazor Aparicio, age 31, of Wheaton; Dorinalda Aparicio, age 36, of Gaithersburg; and Manuel Jandres, age 40, of Germantown, Maryland, pled guilty to the same charge and face a maximum sentence of five years in prison. Elsy Aparicio also faces a maximum sentence of 20 years in prison followed by five years of supervised release for money laundering conspiracy.

Jair Francis, age 33, of Wheaton, Maryland was convicted on December 19, 2006 of conspiracy to transport women for prostitution purposes, conspiracy to harbor illegal aliens and aggravated identity theft. Francis faces a maximum sentence of five years for the prostitution conspiracy; 10 years for conspiracy to harbor illegal aliens, and a mandatory two years in prison consecutive to any sentence on the charge of aggravated identity theft. He is scheduled to be sentenced on March 16, 2007 at 9:30 a.m.

United States Attorney Rod J. Rosenstein praised the investigative work performed by the Federal Bureau of Investigation; Immigration and Customs Enforcement; the Montgomery County Police Department; and Internal Revenue Service - Criminal Investigation. Mr. Rosenstein thanked Assistant U.S. Attorneys Chan Park and Gina Simms, who are prosecuting the case.