# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 07-046 (GK)** |
| | : | |
| **v.** | : | |
| | : | |
| **DEBORAH JEANE PALFREY,** | : | |
| *also known as* **"Jeane Palfrey,"** | : | |
| *also known as* **"Julia,"** | : | |
| *also known as* **"Pamela Martin,"** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S SUPPLEMENTAL AUTHORITY TO ITS OMNIBUS RESPONSE IN OPPOSITION TO THE DEFENDANT'S MOTIONS TO DISMISS ALL OR PART OF THE INDICTMENT, AND FOR A BILL OF PARTICULARS (DOCUMENT 77)

The United States, by and through it attorney, the United States Attorney for the District of Columbia, herewith submits this supplemental authority to its omnibus response (Document 77) in opposition to defendant Deborah Jeane Palfrey's numerous motions challenging the indictment.

In United States v. Miguel Morrow, Crim. Case No. 04-355 (CKK) (copy attached as Exhibit #1), District Judge Colleen Kollar-Kotelly addressed some defense motions similar to those filed by defendant in this case. Specifically, the Court addressed and denied motions to dismiss Count One, which charged a RICO conspiracy violation, *see* Memorandum Order at 3-8 (indictment adequately alleged a RICO enterprise; issue of sufficiency of the evidence to prove factually the enterprise was best left to the government's proof at trial), and for a bill of particulars seeking, among other things, the identities of any unindicted person associated with the RICO enterprise. *Id.* at 23-25 (bill of particulars not required; indictment sufficiently set forth the violations and, with the discovery provided, gave defendant sufficient information concerning the charges against them).[1]

---

[1] The Court also denied a motion to strike alleged surplusage. *Id.* at 21-22. Although it did so in a somewhat different context than the motion in this case, the analysis is still helpful to the consideration of the government's opposition to defendant's motion to strike alleged

Those issues were addressed in this case, respectively, in the government's omnibus response filed yesterday at pages 19-29 and 39-45.  The United States respectfully submits the Court's Memorandum Opinion in <u>Morrow</u>, and the discussion therein, as additional authority for the government's arguments as to those issues.

<div style="margin-left: 40%;">

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY
D.C. Bar No. 498610

/ s /

_____

Daniel P. Butler
D.C.  Bar No. 417178
Catherine K. Connelly
Mass.  Bar No. 649430
William R. Cowden
D.C. Bar No. 426301
Assistant United States Attorneys
555 4th Street, N.W.
(202) 353-9431, 616-3384, 307-0258
Washington, D.C.  20530
Daniel.Butler@usdoj.gov
Catherine.Connelly2@usdoj.gov
William.Cowden@usdoj.gov

</div>

---

surplusage in this case.  *See* Government's Omnibus Response in Opposition at 17-19.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

MIQUEL MORROW, *et al.*,

Defendants.

Criminal Action No. 04-355 (CKK)

**MEMORANDUM OPINION**
(March 16, 2005)

Currently before the Court are (1) Defendant Lionel Stoddard's Motion to Dismiss Count I of the Indictment; (2) the Joint Defense Motion to Dismiss the Indictment due to Multiplicitous and Duplicitous Charging filed by Defendant Bryan Burwell; (3) Defendants' Joint Motion for *In Camera* Review of Grand Jury Testimony to Determine the Existence of a Racketeering Enterprise filed by Defendant Miquel Morrow; (4) Defendant Stoddard's Motion for Bill of Particulars; and (5) Defendant Aaron Perkins' Motion for a Bill of Particulars. The Government has filed an Omnibus Response that answers, *inter alia*, these specific motions made by Defendants, and Defendant Morrow has proffered an Omnibus Reply to the Government's Opposition on behalf of all Defendants. After reviewing the parties' briefing and the relevant caselaw, the Court shall deny these five motions filed by Defendants challenging the Indictment.

**I: BACKGROUND**

On November 9, 2004, the Grand Jury in the above-captioned case returned a twenty-one count Superseding Indictment against the six remaining defendants in this case -- Miquel Morrow, Lionel Stoddard, Carlos Aguiar, Bryan Burwell, Aaron Perkins, and Malvin Palmer

(collectively, "Defendants").[1]   Count I of the Indictment charges all six Defendants with a conspiracy to participate in a Racketeer Influenced Corrupt Organization ("RICO"), in violation of 18 U.S.C. § 1962(d), based upon alleged racketeering acts involving armed robberies of four banks in the District of Columbia (Acts 1-4) and two banks in the District of Maryland (Acts 5-6), as well as three acts involving murder (Acts 7-9).   Count II charges all six Defendants with a conspiracy to commit offenses against the United States.   Substantive charges involving armed bank robbery (Counts III, VIII, XII, and XVII), using or carrying a firearm during a crime of violence (Counts IV, IX, XIII, XVIII), unlawful possession of a firearm by a felon (Counts V-VII, X-XI, XIV-XVI, XIX), and assault with intent to kill (Counts XX-XXI), are charged against the specific defendants named in those counts.   The armed robberies were allegedly accomplished while the Defendants brandished weapons and wore body armor, hoods, masks, bandanas, and heavy clothing to avoid identification.   The assaults also involved the use of firearms.

## II:  DISCUSSION

Defendants have filed two major motions challenging the validity of the Superseding Indictment -- Defendant Stoddard's Motion to Dismiss Count I of the Indictment and the Joint Defense Motion to Dismiss the Indictment filed by Defendant Bryan Burwell.  Defendants have also filed a Joint Motion for *In Camera* Review of the Grand Jury Testimony to Determine the

---

[1] A substantially similar superseding indictment was returned on February 15, 2005, that deleted two of the previous counts, changing the numbering scheme.  However, many of the motions concerning the validity of the Indictment were filed prior to this February date, and both the Government and the Defendants refer to the numbering scheme employed by the November 9, 2004 Superseding Indictment in their filings.  As such, for purposes of clarity, the Court will refer to the numbering scheme used in the November 9, 2004 Indictment in this Opinion.

Existence of a Racketeering Enterprise in order to provide the Court an opportunity outside of a mini-trial to review the substantive merits of Count I.  Finally, both Defendant Stoddard and Defendant Perkins have requested a Bill of Particulars in order to furnish the Defendants further information with respect to the charges stated in the Indictment, aid the preparation of their defense, and prevent prejudicial surprise at trial.  The Court shall proceed through this amalgamation of motions in sequence, and discuss why each motion lacks fundamental merit in light of the relevant law and the circumstances of this case.

       A.     *Defendant Stoddard's Motion to Dismiss Count I of the Indictment*

Defendant Stoddard proffers two major attacks vis-á-vis Count I of the Superseding Indictment.  First, Defendant Stoddard analyzes the structure of the Indictment, finding a myriad of faults with the Government's RICO allegation.  Second, Defendant Stoddard suggests that Racketeering Acts 7-9 ("Acts Involving Murder") should be stricken, and Counts XX and XXI (assault with intent to kill) must be dismissed given the contours of the RICO statute.  The Court shall examine each assertion in turn.

       1.     <u>Structure of the Indictment</u>

Defendant Stoddard contends that three major flaws exist in the structure of Count I of the Superseding Indictment -- Conspiracy to Participate in a Racketeer Influenced Corrupt Organization, in violation of 18 U.S.C. § 1962(d).  First, Defendant Stoddard asserts that Count I is "insufficient on its face." Def. Stoddard's Mot. to Dismiss Count I of the Indictment (Def. Stoddard's Mot.) at 2.  Defendant Stoddard posits that "Count One should be dismissed because the indictment, on its face, does [not] support the allegation that the defendants constituted an 'enterprise.'" *Id.* at 5.  Second, he claims that "there is insufficient evidence to support the RICO

allegation -- both as to the required existence of an enterprise and as to the requisite pattern of

racketeering activity." *Id.*  Third, Defendant Stoddard maintains that Count I should be

dismissed as "unconstitutionally vague, as applied to the facts of this case." *Id.* at 17.  Each

contention, while well argued, falters in the harsh light of RICO-related caselaw in this and other

Circuits.

> i.    The Enterprise, as Defined in the Indictment, is Facially Valid

Defendant Stoddard's first argument is that Count One is "insufficient on its face"

because the Indictment inadequately charges an "enterprise." *Id.* at 2-5.  Defendant Stoddard

warns of the prejudicial effects of a RICO allegation, as it allows the prosecution "an

immeasurable tactical advantage" by permitting the joinder of otherwise severable offenses and

provides a means to introduce evidence of possible offenses from outside of the relevant

jurisdiction. *Id.* at 3-4.  Defendant Stoddard concludes by asserting that because the Indictment

"does not allege the existence of a legal entity, and, without any supporting information, charges

that the defendants constituted the enterprise as a 'group of individuals associated in fact," *id.* at

4-5, the Indictment -- on its face -- fails to support the allegation that the Defendants constituted

an "enterprise," *id.* at 5.

The requirements that an indictment must meet to survive a pretrial challenge to its

sufficiency are well-established.  "[A]n indictment is sufficient if it, first, contains the elements

of the offense charged and fairly informs a defendant of the charge against which he must defend,

and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the

same offense." *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590,

(1974).  "An indictment need only track the language of the statute and, if necessary to apprise

4

the defendant of the nature of the accusation against him, . . . state time and place in approximate

terms." *United States v. Covino*, 837 F.2d 65, 69 (2d Cir. 1988) (internal quotations and citations

omitted). Importantly, in this case, the Indictment tracks the language of the RICO statute,

charging in relevant part:

> At times relevant to this Indictment, the defendants . . . together with others
> known and unknown to the Grand Jury, were members and associates of a
> criminal organization whose members and associates engaged in acts of violence,
> including attempted murders and robberies, and which operated principally in the
> District of Columbia. This organization constituted an "enterprise," as defined by
> Title 18, United States Code, Section 1961(4), that is, a group of individuals
> associated in fact. The enterprise constituted an ongoing organization whose
> members functioned as a continuing unit for a common purpose of achieving the
> objectives of the enterprise. The enterprise was engaged in, and its activities
> affected, interstate commerce.

Superseding Indictment, Count I (RICO Conspiracy). For the purposes of the RICO statute, the

term enterprise encompasses "any individual, partnership, corporation, association, or other legal

entity, and any union or *group of individuals associated in fact although not a legal entity*." 18

U.S.C. § 1961(4) (emphasis added). To prove the existence of such an enterprise, the

Government must establish "(1) a common purpose among participants, (2) organization, and (3)

continuity." *United States v. Perholtz*, 842 F.2d 343, 362 (D.C. Cir. 1988), *cert. denied*, 488

U.S. 821, 109 S.Ct. 65 (1988). In *Perholtz*, the D.C. Circuit held that "[a]lthough organization is

not *necessarily* established by proof of a pattern of racketeering activity, the existence of the

enterprise may be inferred from proof of the pattern." *Id.* at 362; *see also United States v. White*,

116 F.3d 903, 924, (D.C. Cir. 1997), *cert. denied*, 522 U.S. 960, 118 S.Ct. 390 (1997).

The Indictment notes, in detail, the pattern and purposes of the alleged enterprise. In part,

the Indictment focuses on "the purposes of the enterprise," which included:

(i) committing robberies, including bank robberies, in the District of Columbia, the District of Maryland and elsewhere for the purpose of obtaining money and other things of value; (ii) protecting members of the enterprise; (iii) maintaining in safe places the weapons, body armor, and money of the enterprise; and (iv) retaliating against persons who interfered with the operation of the enterprise, including the actual and perceived thefts of weapons by non-members of the enterprise.

Superseding Indictment, Count I (RICO Conspiracy). As such, because the Superseding Indictment clearly alleges a continuing organization with a common purpose among the participants, acting as an enterprise as seen by the proof of the pattern of Defendant's alleged offenses, the Court concludes that the Superseding Indictment is facially sufficient and has adequately alleges that Defendants constituted an "enterprise."

        ii.    The Issue of the Sufficiency of Evidence to Prove Factually the RICO Enterprise is Best Left Until After the Close of the Government's Case

Defendant Stoddard next contends that "there is insufficient evidence to support the RICO allegation -- both as to the required existence of an enterprise and to the requisite pattern of racketeering activity." Def. Stoddard's Mot. at 5. Defendant Stoddard requests that the Court "scrutinize the sufficiency of certain allegations in advance where the failure to do so would prejudice the defendant or waste judicial resources." *Id.* Defendant Stoddard contends that the Defendants will be unduly prejudiced if the Court waits until the conclusion of the Government's case to determine the sufficiency of the RICO allegations because Defendants will have faced numerous substantive offenses that could not have been tried together in the first instance without the RICO allegation. *Id.* at 5-8 (citing *United States v. Castellano*, 610 F. Supp. 1359 (S.D.N.Y. 1985)).

Should the Court use its discretion to conduct such scrutiny, Defendant Stoddard claims that the Court must conclude that the Government cannot establish (1) that the Defendants "had the type of organized existence necessary to constitute an enterprise, nor that they had any group identity separate from the crimes which they allegedly committed," *id.* at 13; and (2) that "the relatively short period during which the predicate acts were committed" was sufficient to "satisfy the continuity necessary to constitute a pattern of racketeering activity." *Id.*; *see also* Def. Morrow's Omnibus Reply to Gov'ts Opp'n to Defs.' Mots. ("Def. Morrow's Reply") at 4 ("The Indictment in this case fails to allege any ascertainable organizational or hierarchical structure to the purported entity which is separate and distinct from that conduct which inherently occurs in a pattern of criminal activity."). As such, Defendant Stoddard contends that dismissal of Count I is warranted.

Contrary to Defendant Stoddard's suggestion, "[i]f a pretrial claim is substantially founded upon and intertwined with 'evidence concerning the alleged offense, the motion falls within the province of the ultimate finder of fact and must be deferred.'" *United States v. Wilson*, 26 F.3d 142, 159 (D.C. Cir. 1994), *cert. denied sub nom*, *Briscoe v. United States*, 514 U.S. 1051, 115 S.Ct. 1430 (1995); *see also United States v. Fruchter*, 104 F. Supp. 2d 289, 298 (S.D.N.Y. 2000) (pretrial challenge to RICO indictment based on sufficiency of evidence denied as premature). Defendant Stoddard recognizes this general rule, noting that "determinations of the sufficiency of the evidence to support otherwise facially valid indictments normally must await motions for judgment of acquittal at the conclusion of the government's case," Def. Stoddard's Mot. at 5, but he suggests that the Court follow other authority permitting pre-trial scrutiny of the sufficiency of the RICO-related allegations, *id.* While a small minority of courts

7

have taken this step in the context of a RICO-related count, *see Castellano*, 610 F. Supp. at 1397,

the Court notes the majority approach as described in *United States v. Nabors*, 45 F.3d 238 (8th

Cir. 1995), which reversed a lower court's pre-trial determination that "the racketeering count

fails to describe 'an ascertainable structure' separate from the illegal acts listed as racketeering

offense." *Id.* at 241.  According to the Eighth Circuit, "[t]here being no equivalent in criminal

procedure to the motion for summary judgment that may be made in the civil case, *see* Fed. R.

Civ. P. 56(c), the government has no duty to reveal all of its proof before trial." *Id.* at 240.

Rather, it is up to the Government to prove at trial that Defendants' alleged actions amounted to

more than "sporadic crime." *Id.* at 241 (citing *United States v. Lemm*, 680 F.3d 1193, 1198 (8th

Cir. 1982), *cert. denied*, 495 U.S. 1110, 103 S.Ct. 739 (1983)); *see also United States v.*

*Paccione*, 738 F. Supp. 691, 696 (S.D.N.Y. 1990) ("the validity of the indictment is to be tested

by its allegations, not by defense counsel's forecast of the . . . evidence, so that a technically

sufficient indictment is not subject to dismissal on the basis of factual questions, the resolution of

which must await trial") (internal quotation marks and citations omitted); *United States v.*

*Shakur*, 560 F. Supp. 347, 349 (S.D.N.Y. 1983) ("[T]he basis for defendants' attack on the

indictment amounts to assertions that the government will not be able to prove the indictment's

allegations.  Obviously, such determinations are to be left until after trial."); *United States v.*

*Marchese*, Crim. No. 89-229, 1991 WL 60338, at *1-*3 (S.D.N.Y. Apr. 11, 1991) (denying a

pretrial defense motion to review factual sufficiency of RICO allegations).  As such, the Court

concludes that a test of the sufficiency of the Government's factual proof of the enterprise and

the pattern of racketeering acts is best left until after the Government has present its evidence at

trial.

    iii.    <u>The RICO Statute is Not Unconstitutionally Vague As Applied</u>

Taking Mr. Justice Antonin Scalia's concurring opinion in *H.J. Inc. v. Northwestern Bell Telephone*, 492 U.S. 229, 238-39, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (Scalia, J., concurring), as a jumping off point, Defendant Stoddard claims that "[b]ecause the [RICO] statute does not provide fair warning that the defendants somehow come within its enterprise provisions or that their conduct satisfied the 'continuity plus relationship' test necessary for a pattern of racketeering activity," Def. Stoddard's Mot. at 17, the RICO statute runs afoul of the "void for vagueness" doctrine propounded by Mr. Justice William O. Douglas in the seminal case of *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972).  Def. Stoddard's Mot. at 15.  As such, Defendant Stoddard contends that 18 U.S.C. §§ 1962(c) and (d) are unconstitutional as applied to this case, and warrant dismissal.  *Id.*

Despite Defendant Stoddard's best efforts, the Circuits have been uniform in rejecting vagueness challenges to the RICO statute in the wake of the Supreme Court's decision in *H.J. Inc.  See, e.g.*, *United States v. Bennett*, 984 F.2d 597, 606 (4th Cir. 1993) (rejecting vagueness challenge to RICO where the statute provided adequate notice that acts of arson, fraud, attempted murder and other acts or threats of violence, perjury, and obstruction of justice, committed with a purpose to allow the associated-in-fact enterprise to continue to defraud, fell within its ambit), *cert. denied*, 508 U.S. 945, 113 S.Ct. 2428 (1993); *United States v. Coiro*, 922 F.2d 1008, 1017 (2d Cir. 1991) ("We have previously found that RICO was not unconstitutionally vague in a variety of applications, and we so find here, notwithstanding the comments in the concurring opinion in *H.J. Inc.*") (citations omitted), *cert. denied*, 501 U.S. 1217, 111 S.Ct. 2826 (1991); *United States v. Glecier*, 923 F.2d 496, 497 n.1 (7th Cir. 1991) (joining the "flood" of courts

9

reaffirming the constitutionality of the RICO statute), *cert. denied*, 502 U.S. 810, 112 S.Ct. 54 (1991); *United States v. Woods*, 915 F.2d 854, 862-64 (3d Cir. 1990) ("Whatever might be true in other cases, 18 U.S.C. § 1962(c) is not unconstitutional when applied in this ongoing hardcore political corruption case."), *cert. denied*, 499 U.S. 947, 111 S.Ct. 1413 (1991); *United States v. Angiulo*, 897 F.2d 1169, 1178-80 (1st Cir. 1990) (defendants did not "come close" to making the required showing that "the meaning and scope of RICO's 'pattern' element was unclear and vague as to *their* conduct at issue *here*") (emphasis in original), *cert. denied*, 498 U.S. 845, 111 S.Ct. 130 (1990).

Most commonly, these post-*H.J. Inc.* courts have held that a defendant's knowledge that his conduct comes within the RICO statute is immaterial as long as he was clearly aware that the predicate acts were unlawful. *See Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 57-58, 109 S.Ct. 916, 103 L.Ed.2d 34 (1989) (rejecting defendant's argument that RICO charge based on pattern of obscenity violations was unconstitutionally vague on ground that the obscenity law underlying the predicate acts was not vague); *United States v. Masters*, 924 F.2d 1362, 1367 (7th Cir. 1991) ("Provided the statutes criminalizing the predicate acts are not unconstitutionally vague . . . the defendants are on adequate notice that they are committing the crimes, and the fact that they may not be aware of the extent of their criminality and consequent exposure to punishment is a detail (the original conception of RICO as a sentence-enhancement provision is important here)."); *Paccione*, 738 F. Supp. at 698-99 (rejecting challenge to RICO indictment where defendants made no claim that predicate offense of mail and wire fraud were themselves unconstitutionally vague). Here, Defendants do not allege that the underlying predicate offenses such as armed bank robbery, possession of a firearm by a felon, using and carrying a firearm

during a crime of violence, and assault are unconstitutionally vague. As such, given the great

weight of precedent and the clarity of the underlying offenses charged, the Court concludes that a

person of ordinary intelligence would be on constructive notice that these offenses implicated the

RICO statute. Accordingly, the Court finds this argument for dismissal to be without merit.

2.    *Racketeering Acts 7-9 and Counts Twenty and Twenty-One*

Defendant Stoddard next asserts that Racketeering Acts 7-9 -- Acts Involving Murder --

are not appropriately charged in the Superseding Indictment. Def. Stoddard's Mot. at 18. As

part of the Count I RICO-related offense, the Indictment identifies Defendant Stoddard with three

specific racketeering acts outside of the context of armed robbery: (1) an April 23, 2004 assault

with intent to kill Ed Arrington; (2) a May 10, 2004, assault with intent to kill Police Officer

Katie Collins; and (3) a May 15, 2004, assault with intent to kill Ed Arrington. Superseding

Indictment, Count I (RICO Conspiracy). According to Defendant Stoddard, because "the offense

of assault with intent to commit murder is not a racketeering act within the meaning of 18 U.S.C.

§ 1961(1), it cannot be charged as part of the pattern of racketeering activity." Def. Stoddard's

Mot. at 18. As a result, Defendant Stoddard maintains that Counts 20 and 21 of the Superseding

Indictment, charging Assault with Intent to Kill while Armed, must be dismissed because they

are Superior Court charges that have been improperly joined to this Indictment. *Id.* at 25.

The Court finds Defendant Stoddard's argument to be unavailing given the contours of

the RICO statute and the clear weight of established precedent. RICO provides that

"racketeering activity" refers to any of a number of federal or state crimes. *See* 18 U.S.C. §

1961(1). The RICO statute's references to federal law are quite specific, citing to various

statutes by name or by United States Code title and section. *See id.* § 1961(1)(B)-(F). However,

11

its references to state law, *see id.* § 1961(A), are not to chapter and verse, but instead are

"generic," "serving to identify generally the kind of activity made illegal by the federal statute."

*United States v. Miller*, 116 F.3d 641, 675 (2d Cir. 1997) (citation and internal quotation marks

omitted), *cert. denied*, 524 U.S. 905, 118 S.Ct. 2063 (1998). "RICO was not intended to

incorporate the elements of the penal codes of the various states where acts of racketeering

occurred, but only to provide general substantive frames of references." *Id.* (internal citations

and quotation marks omitted).

Section 1961(1)(A), in relevant part, defines racketeering activity as: "any act or threat

*involving* murder . . . which is chargeable under State law and punishable by imprisonment for

more than one year." 18 U.S.C. § 1961(1)(A) (emphasis added). While Defendant Stoddard

notes that "attempted murder" and "assault with intent to commit murder" -- which are offenses

under state law -- do not fall within the exhaustive list of offenses listed in Section 1961(1),

numerous courts have found that, given the generalized wording of the state law offense

subsection and the intent of Congress that RICO be liberally construed to effectuate its remedial

purposes, the RICO defendant's act need not be murder, as long as it *concerns* murder. As such

acts that facilitate murder (e.g., conspiracy to commit, attempt) in violation of state law are

proper RICO predicates. *See, e.g.*, *Miller*, 116 F.3d at 674-75 (facilitation of murder falls within

the province of RICO as a racketeering act); *United States v. Ruggiero*, 726 F.2d 913, 919 (2d

Cir. 1984) (conspiracy to commit murder within language of "any offense involving"), *cert.*

*denied*, 469 U.S. 831, 105 S.Ct. 118 (1984); *United States v. Pungitore*, 910 F.2d 1084, 1134-35

(3d Cir. 1990) (attempted murder and conspiracy to commit murder within language of "any

offense involving"), *cert. denied*, 500 U.S. 915, 111 S.Ct. 2010 (1991); *United States v. Licavoli*,

725 F.2d 1040, 1044-45 (6th Cir. 1984) (conspiracy to commit murder may be a predicate act in

light of "involving" language), *cert. denied*, 467 U.S. 1252, 104 S.Ct. 3535 (1984); *United States*

*v. Brooklier*, 685 F.2d 1208, 1216 (9th Cir. 1982) (conspiracy to extort can be a predicate act and

attempted offense are also covered by "involving" language), *cert. denied*, 459 U.S. 1206, 103

S.Ct. 1194 (1983); *see also Pohlot v. Pohlot*, 664 F. Supp. 112, 116-17 (S.D.N.Y. 1987)

(criminal solicitation of murder constitutes proper RICO predicate).

As such, because "assault with intent to kill" constitutes an act "involving" murder, the

Court concludes that Racketeering Acts 7-9 are properly charged as predicate acts under the

RICO statute.  Accordingly, the Court finds that these acts should not be stricken, and that

Counts XX and XXI should not be dismissed from the Indictment, as joinder is therefore proper.

      B.    *Joint Defense Motion to Dismiss the Indictment for Multiplicitous and Duplicitous*
             *Charging*

The Joint Defense Motion to Dismiss the Indictment for Multiplicitous and Duplicitous

Charging ("Joint Def. Mot.") brought by Defendant Bryan Burwell approaches the Indictment

from an angle different than the line of attack employed by Defendant Lionel Stoddard.

Essentially, the Joint Defense Motion first claims that three sets of counts are "multiplicitous"

and therefore in violation of the test for Double Jeopardy Clause violations identified in

*Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932).  Defendants

identify Counts I and II, Counts V and VII, and Count III as multiplicitous.  *See* Def.'s Mot. at 2-

5.  Second, Defendants contend that Counts III, IV, VIII, IX, XII, XIII, XVII, and XVIII are

duplicitous because they allegedly charge more than one statutory violation in each count.  *Id.* at

6.  Third, Defendants claim, without any discussion, that the language in these counts as to 18

U.S.C. § 2 (aiding and abetting) is surplusage that should be stricken. *Id.* at 7. Each of these arguments is without merit.

       1.     *The "Multiplicity" of the Indictment*

As noted above, Defendants claim that Counts I and II, Counts V and VII, and Count III are multiplicitous; as such, Defendants request that the Court either dismiss the counts in question or compel the Government to select upon which count it chooses to proceed. *Id.* at 1, 7. Multiplicitous charges "improperly prejudice a jury by suggesting that a defendant has committed not one but several crimes." *United States v. Reed*, 639 F.2d 896, 904 (2d Cir. 1981). "An indictment is multiplicitous, and thereby defective, if a single offense is alleged in a number of counts, unfairly increasing a defendant's exposure to criminal sanctions." *United States v. Anderson*, 39 F.3d 331, 353-54 (D.C. Cir. 1994), *cert. denied*, 516 U.S. 999, 116 S.Ct. 542 (1995). Under *Blockburger*, the relevant test for determining whether two counts of an indictment are multiplicitous is as follows: "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each [count] requires proof of an additional fact which the other does not." *Blockburger*, 284 U.S. at 304. Using this test, the Court concludes that each of the three sets of allegedly problematic counts identified by Defendants are permissible and do not endanger Defendants' protections under the Double Jeopardy Clause.

       i.     Counts I and II

Count I of the Superseding Indictment charges a RICO conspiracy in contravention of 18 U.S.C. § 1962(d), while Count II alleges a conspiracy to commit offenses against the United States in violation of 18 U.S.C. § 371. *See* Superseding Indictment. Contrary to Defendant's

assertions that "[t]here is no discernible difference between the elements contained in the two statutes or the wrongdoing that is prohibited," Joint Def. Mot. at 4, each conspiracy count contains one or more elements of proof that the other does not.  Count I charges racketeering acts that require the Government to establish an "enterprise" and the "continuing" commission of state offenses such as armed robbery and acts involving murder.  In contrast, Count II charges a conspiracy to commit violations against the United States, i.e., armed bank robbery in violation of 18 U.S.C. 2113(a) and (d), both of which require proof that a bank was federally insured.  As such, under the *Blockburger* test, each offense requires proof of different facts.  Because different facts are required to prove each offense, Count I and II are not multiplicitous in violation of the Double Jeopardy Clause of the Constitution.

Other courts have issued similar holdings, finding that two separate punishments for RICO and Section 371 conspiracies would be appropriate.  *See, e.g.*, *United States v. Marren*, 890 F.2d 924, 936-37 (7th Cir. 1989) ("It is evident that the legislature intended to allow multiple punishments under both § 1962(d) and § 371.  Accordingly, we hold that the government did not violate the Double Jeopardy Clause by charging and sentencing the defendant under both § 371 and § 1962(d)."); *United States v. Barton*, 647 F.2d 224, 236 (2d Cir. 1981) ("Applying the *Blockburger* test, we find that in the RICO provision, 18 U.S.C. § 1962(d), Congress created an offense different from the preexisting general conspiracy statute, 18 U.S.C. § 371, and intended to allow cumulative punishments."), *cert. denied*, 454 U.S. 857, 102 S.Ct. 307 (1981); *cf. United States v. White*, 116 F.3d 903, 930-31 (D.C. Cir. 1997) (finding that a drug conspiracy is a lesser-included offense of a RICO conspiracy, but finding that both counts were permissible because Congress intended that RICO supplement, not replace, existing criminal provisions, and the anti-

15

conspiracy statutes were aimed at deterring two different activities).  As such, the Court

concludes that based on both its analysis of Count I and II under the *Blockburger* test and

existing precedent, Counts I and II do not impinge upon the protections afforded by the Double

Jeopardy Clause.

<div align="center">

ii.    <u>Counts V and VII</u>

</div>

Defendants make similar arguments, with no analysis, with respect to Counts V and VII.

Joint Def. Mot. at 5.  Count V alleges that Defendant Morrow "[o]n or about January 22, 2004,"

violated 18 U.S.C. § 922(g)(1), by unlawfully possessing a firearm when he had previously been

convicted of a crime punishable by imprisonment for a term exceeding one year.  While not at all

explicit in the Joint Defense Motion, it appears that Defendants are asserting that this Count is

multiplicitous because Defendant Miquel Morrow is also charged with violations of 18 U.S.C. §

922(g)(1) in Counts X (March 5, 2004 violation), XIV (June 12, 2004 violation), and XIX (June

29, 2004 violation).  Count VII alleges that Defendant Malvin Palmer "[o]n or about January 22,

2004," violated 18 U.S.C. § 922(g)(1), while Count XI charges Defendant Palmer with a similar

offense "[o]n or about March 5, 2004."  *See* Superseding Indictment.

Under the *Blockburger* test, these counts allege different crimes or acts being committed

by each defendant at different times.  As such, they do not constitute "the same act or

transaction."  Accordingly, the Court concludes that Counts V and VII, acts committed by

different defendants, do not create Double Jeopardy concerns when compared to each other or

with Counts X, XIV, XIX, and XI.

<div align="center">

iii.    <u>Count III</u>

</div>

Finally, the Joint Defense Motion claims that Count III, which alleges that Defendants

<div align="center">16</div>

Miquel Morrow, Carlos Aguiar, and Malvin Palmer committed an armed bank robbery in

violation of 18 U.S.C. §§ 2113(a), (d), and 2  "[o]n or about January 22, 2004," is violative of

Double Jeopardy because it repeats the conduct charged in Counts I and II.  Joint Def. Mot. at 5.

Defendants' motion is meritless as to this claim, as Counts I and II charge Defendants with a

"conspiracy," while Count III represents a substantive bank robbery charge.  Therefore, no

Double Jeopardy concern exists.

## 2.    *The "Duplicity" of the Indictment*

Defendants further assert that Count III, IV, VIII, IX, XII, XIII, XVII, and XVIII are

duplicitous.  Joint Def. Mot. at 6.  "Duplicity is the joining in a single count of two or more

distinct and separate offenses."  *United States v. Hubbell*, 177 F.3d 11, 14 (D.C. Cir. 1999)

(citing *United States v. Mangieri*, 694 F.2d 1270, 1281 (D.C. Cir. 1982); Charles Alan Wright,

*1A Federal Practice and Procedure: Criminal* § 142, at 7 (3d ed. 1999)).  "The overall vice of

duplicity is that the jury cannot in a general verdict render its finding on each offense, making it

difficult to determine whether a conviction rests on only one of the offenses or on both."  *United*

*States v. Washington*, 127 F.3d 510, 513 (6th Cir. 1997), *cert. denied*, 524 U.S. 940, 118 S.Ct.

2348 (1998).  "A general verdict of guilty will not reveal whether the jury found the defendant

guilty of one crime and not guilty of the others, or guilty of all."  *Id.*

A district court must undertake a three-step analysis to determine whether a particular

count in an indictment is impermissibly duplicitous.  *United States v. Shorter*, 809 F.2d 54, 56

(D.C. Cir. 1987), *cert. denied*, 484 U.S. 817, 108 S.Ct. 71 (1987).  First, the court must

determine whether more than one violation of a criminal statute is alleged under a single count.

*Id.*  If the count in question alleges only a single violation, then the court's analysis ends.  *Id.*

However, if more than one violation is alleged in a single count, the court must then determine whether defendant's conduct, which resulted in the multiple violations, "may legitimately be regarded as a single course of conduct and hence a single offense." *Id.* This determination turns on (1) the language and legislative history of the statute under which defendant is being charged; and (2) the nature of the proscribed conduct. *See id.*; *see also United States v. Morse*, 785 F.2d 771, 774 (9th Cir. 1986), *cert. denied*, 476 U.S. 1186, 106 S.Ct. 2925 (1986). If the defendant's conduct can be reasonably construed as a single offense, the count will be considered impermissibly duplicitous only if a trial on a single-count basis would be unduly prejudicial to the defendant. *Id.* Under this relevant analysis, the Court concludes that the Superseding Indictment is not impermissibly duplicitous with respect to Counts III, VII, XII, and XVII ;while it could be considered impermissibly duplicitous with respect to Counts IV, IX, XIII, and XVIII, a curative instruction should satisfy Defendants' concerns.

i.      Counts III, VII, XII, and XVII

Counts III, VII, XII, and XVII of the Superseding Indictment charge various Defendants with armed bank robbery in violation of 18 U.S.C. §§ 2113(a), (d), and 2. *See* Superseding Indictment. Contrary to Defendants' arguments, 18 U.S.C. §§ 2113(a) and (d) are not duplicitous. Rather, 18 U.S.C. § 2113(d) is simply an aggravating factor referring back to Section 2113(a).[2] *United States v. Mares*, 409 F.2d 1083, 1085-86 (10th Cir. 1968), *cert. denied*, 394 U.S. 963, 89 S.Ct. 1314 (1969). "Because the intent of (d) is to charge an aggravation of (a),

---

[2] 18 U.S.C. § 2113(d) simply provides, "Whoever, in committing or attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined under this title or imprisoned not more than twenty-five years, or both."

an indictment which incorporates (a) and (d) in one count is not duplicitous . . . ."  *Id.* at 1086;

*see also United States v. McHugh*, Crim. No. 90-20016, 1991 WL 293098, at *2 (N.D. Ill. May

13, 1991) (same).  Accordingly, the armed robbery counts (Counts III, VII, XII, and XVII) in the

Superseding Indictment, which charge a violation of both (a) and (d) of 18 U.S.C. § 2113, are not

duplicitous.

### ii.    Counts IV, IX, XIII, and XVIII

Counts IV, IX, XIII, and XVIII charge that various defendants used and carried a firearm

during a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii), (B)(ii), and 2.  The new,

Superseding Indictment filed on February 15, 2005, adds an allegation that various defendants

violated 18 U.S.C. §§ 924(c)(1)(A)(i), (A)(iii), and (B)(i) as well.[3]  In short, these firearms

chargers under 18 U.S.C. § 924(c) are scattered across numerous counts of the Indictment and

charge that certain named defendants "used, carried and possessed a firearm, during and in

relation to and in furtherance of a crime of violence for which he may be prosecuted in a court of

the United States, specifically, armed bank robbery as charged in Count Three of this

Indictment."  *See, e.g.*, Superseding Indictment (Count IV).

Various courts have addressed the issue of whether the different alternatives under 18

U.S.C. § 924(c) -- e.g., use or carry, possess in furtherance of, brandish, or discharge a firearm --

are separate offenses, as the different alternatives carry different punishments.  *See, e.g.*, *United

States v. Davis*, 306 F.3d 398, 414-416 (6th Cir. 2002) (passing on the question and finding that

any duplicity problems could be cured by a careful, curative jury instruction), *cert. denied*, 537

---

[3] Specifically, the February 15, 2005, Indictment adds "brandished" to all four previous §
924(c) counts, and adds "discharged" to the counts involving Industrial Bank and SunTrust Bank.

U.S. 1208, 123 S.Ct. 1290 (2003); *United States v. Pleasant*, 125 F. Supp. 2d 173, 176 (E.D.Va.

2000) (finding that a single count charging both "using and carrying" and "possessing" in

violation of § 924(c) in a single count was duplicitous).  The Sixth Circuit, in its recent ruling in

*United States v. Combs*, 369 F.3d 925 (6th Cir. 2004), issued perhaps the definitive decision on

this matter, concluding that § 924(c) criminalizes two separate offenses -- (1) *using or carrying* a

firearm *during and in relation to* an applicable crime of violence, and (2) *possessing* a firearm *in

furtherance of* an applicable crime of violence.  *Id.* at 931, 933; *see also United States v. Lott*,

310 F.3d 1231, 1246 (10th Cir. 2002) (treating the statute as setting forth two different offenses);

*United States v. Timmons*, 283 F.3d 1246, 1250-53 (11th Cir. 2002) (same).

Given the newly-acquired girth of this line of precedent, this Court concludes that 18

U.S.C. § 924(c) sets forth and criminalizes two separate offenses.  As such, an Indictment

charging both distinct offenses in a single count, as does the Superseding Indictment in this case,

runs the risk of being found to be (1) duplicitous and (2) ultimately insufficient.  Taking the

approach suggested by the *Davis* court, the Government suggests that "in this case, to the extent

the 924(c) counts charge in the alternative, the court can protect defendants' rights with explicit

jury instructions."  Gov't Omnibus Response in Opp'n to Def.'s Mot. ("Gov't Omnibus

Response") at 31.  According to the Government, "a special verdict form[,] that the government

will propose, can ensure that the jury considers the different alternatives separately.  In this way,

the defendants' substantive rights can be protected from any alleged duplicity in the Indictment."

*Id.* at 31-32.  The Court, in line with *Davis*, 306 F.3d at 416, shall permit the Government to

proceed down this path.  *See also United States v. Blandford*, 33 F.3d 685, 699 & n.17 (6th Cir.

1994), *cert. denied*, 514 U.S. 1095, 115 S.Ct. 1821 (1995) (count of the indictment was

20

determined not to be duplicitous due to curative jury instruction).  However, the Court does note

that the Government's tactical choice on this matter creates potential risks for it in its quest to

maintain an ultimately sustainable conviction under the firearms counts, especially if the relevant

jury instructions are later held to be insufficient.   Nonetheless, Defendants' motion relating to

the duplicity of Counts IV, IX, XIII, and XVIII shall be denied without prejudice at this time.

> 3.    *18 U.S.C. § 2 and Possible Surplusage*

Defendants conclude their Joint Motion to Dismiss the Indictment by suggesting that the

Government's inclusion of language relating to 18 U.S.C. § 2 (aiding and abetting) in Counts III,

VII, XII, and XVII  and Counts IV, IX, XIII, and XVIII should be stricken as surplusage.  Joint

Def. Mot. at 7.  Defendants offer no analysis beyond this simple assertion for their proposition.

Motions to strike surplusage from an indictment are addressed to the sound discretion of

the court.  *See United States v. Rezaq*, 908 F. Supp. 6, 8 (D.D.C. 1995) (citing *Dranow v. United

States*, 307 F.2d 545 (8th Cir. 1992); Charles A. Wright, *Federal Practice and Procedure:

Criminal* § 127, at 426 (2d ed. 1982)).  Two principles emerge from relevant jurisprudence:  first,

the striking of surplusage from an indictment, although permissible, is by no means mandatory;

second, the standard that a district court applies to determine whether to strike language from an

indictment is rather exacting.  *Id.*  Moreover, motions to strike surplusage from an indictment are

highly disfavored in this Circuit.  *Id.*  As the D.C. Circuit noted in *United States v. Jordan*, "[t]he

standard under Rule 7(d) has been strictly construed against striking surplusage."  626 F.2d 928,

931 n.1 (D.C. Cir. 1980).  A motion to strike surplusage can be granted only if it is clear that the

surplusage is (1) not relevant to the charges; (2) inflammatory; *and* (3) prejudicial.  *Rezaq*, 908 F.

Supp. at 8 (citing Wright, *Federal Practice and Procedure: Criminal* § 127, at 426); *see also*

*United States v. Oakar*, 111 F.3d 146, 157 (D.C. Cir. 1997) ("Material that can fairly be described as 'surplus' may only be stricken if it is irrelevant and prejudicial."; "Words of description of what is legally essential to the charge in the indictment cannot be stricken as surplusage.") (citations omitted).

Here, according to the Government, "Section 2 [18 U.S.C. § 2] is charged to make it clear that the relevant counts are charged, in part, on an aiding and abetting theory."  Gov'ts Omnibus Response at 32.  As such, the Court concludes that the language relating to 18 U.S.C. § 2 is relevant to the charges, and Defendants have not made a showing of how such language is either inflammatory or prejudicial.  Given Defendants failure to satisfy the relevant test and this Circuit's general distaste for the striking of surplusage, the Court finds that Defendants' argument relating to 18 U.S.C. § 2 is meritless.

> C.    *Defendants' Joint Motion for In Camera Review of Grand Jury Testimony to Determine the Existence of a Racketeering Enterprise*

In addition to these two Motions to Dismiss the Indictment, Defendants have also entered a Joint Motion for *In Camera* Review of Grand Jury Testimony to Determine the Existence of a Racketeering Enterprise ("Joint Def. Mot. for *In Camera* Review"), filed by Defendant Miquel Morrow.  In this Joint Defense Motion, Defendants request that the Court "conduct an *In Camera* review of the Grand Jury Transcripts for the Indictment to determine pretrial the existence of a racketeering enterprise."  Joint Def. Mot. for *In Camera* Review at 1.  Defendants assert that such a step would be "[t]he most effective means of assessing the existence of a legally sustainable enterprise absent an evidentiary hearing."  *Id.* at 2, ¶ 5.  Defendants note that "[e]vidence of an enterprise must be present for this indictment to continue to be litigated jointly

in the United States District Court." *Id.* at 2, ¶ 4.  According to Defendants, the suggested

method of having the Court conduct an *in camera* review of the grand jury evidence would be in

the "best interests of judicial economy and due process of law." *Id.* at 2, ¶ 6.

As noted previously, *supra* Section II(A)(1)(ii), the Court is not inclined to either allow a

full-blown pre-trial "mini-trial" of the evidence with the parties present or conduct such a pre-

trial "mini-trial" itself *in camera*.  A demonstration of the existence of the alleged RICO

conspiracy would likely require a rendition of the whole case, as every piece of evidence in this

case relates to this enterprise.  Moreover, with nine separate racketeering acts and substantial

background evidence relating to the enterprise, such a hearing would be lengthy and

unnecessarily time-consuming.  Defendants' request is nothing more than a motion for a

judgment of acquittal *in limine* that attacks the sufficiency of the evidence.  It has long been

established that the court should defer the determination of a defense motion if it requires

"deciding issues of fact that are inevitably bound up with evidence of the alleged offense itself."

*Wilson*, 26 F.3d at 159; *see also United States v. Edelin*, 128 F. Supp. 2d 23, 45 (D.D.C. 2001).

Accordingly, the Court shall deny Defendant's Joint Motion for an *In Camera* Review of Grand

Jury Testimony to Determine the Existence of a Racketeering Enterprise.

D.    *Defendant Stoddard and Defendant Perkins' Motion for Bill of Particulars*

Finally, both Defendant Stoddard and Defendant Perkins have brought Motions for a Bill

of Particulars.  These motions request information ranging from specifics about the respective

defendant's alleged involvement in their charged crimes, as well as the RICO and Section 371

conspiracies; the makeup of the "enterprise"; and the identity of an unindicted persons.

"Under [Rule 7(f) of] the Federal Rules of Criminal Procedure, it is within the sound

discretion of the court to determine whether a bill of particulars should be provided," and the

Court should grant such motions when "necessary to prevent unfair surprise at trial." *United*

*States v. Espy*, 989 F. Supp. 17, 34 (D.D.C. 1997); *see United States v. Butler*, 822 F.2d 1191,

1192-93 (D.C. Cir. 1987).  The Court must strike a "prudent balance" between the legitimate

interests of the government and those of defendants.  *United States v. MacFarlane*, 759 F. Supp.

1163, 1169 (W.D.Pa. 1991).  Importantly, a bill of particulars is not a discovery tool or a devise

for allowing the defense to preview the government's theories; rather, it properly includes

clarification of the indictment, not the government's proof of the case.  *United States v. Ramirez*,

54 F. Supp. 2d 25, 29 (D.D.C. 1999) (citing *United States v. Smith*, 341 F. Supp. 687, 690

(N.D.Ga 1972)).  In sum, a bill of particulars may be ordered to "ensure that the charges brought

against a defendant are stated with enough precision to allow the defendant to understand the

charges, to prepare a defense, and perhaps also to be protected against retrial on the same

charges."  *Butler*, 822 F.2d at 1193.  However, "if the indictment is sufficiently specific, or if the

requested information is available in some other form, then a bill of particulars is not required."

*Id.*

Here, the Government asserts that these objectives have "been more than met by the

detail of the speaking Indictment and by the voluminous discovery provided to date to defense

counsel."  Gov'ts Omnibus Response at 34.  According to the Government, the defense has

received "exceptionally thorough" discovery in this matter, ranging from "numerous CDs full of

photographic discovery," "boxes of police reports," and "notice of the Fed. R. Evid. 404(b)

evidence the government may seek to introduce in this case and the related discovery material."

*Id.*  The Government concludes by suggesting that "its compliance with its Rule 16 obligations

and its voluntary disclosures of additional information have placed defense counsel in a better

position than even the most detailed bill of particulars might afford." *Id.*

The Court declines to exercise its discretion and concludes that a bill of particulars is not

necessary in this case.  The indictment sufficiently sets out each of the violations involved, the

dates of those violations, and the statutes involved.  *See United States v. Cooper*, 91 F. Supp. 2d

79, 84 (D.D.C. 2000).  In addition, most -- if not all -- of the information sought by Defendants

Stoddard and Perkins has been provided either in the Indictment, through the Government's

proffer of evidence submitted with its Rule 404(b) notices, and through the discovery provided to

date.  *Id.*  As such, the Court concludes that there is no basis for the additional disclosures sought

by this motion.  *See Butler*, 822 F.2d at 1193; *see also Glecier*, 923 F.2d at 502 (denying demand

for bill of particulars where indictment and the government's pre-trial disclosures provided

defendants with sufficient information concerning the charges against them); *United States v.*

*Marrero*, 904 F.2d 251, 258 (5th Cir. 1990) ("when the information requested is provided in

some other form, no bill of particulars is required"), *cert. denied*, 498 U.S. 1000, 111 S.Ct. 561

(1990).  Defendant Stoddard and Perkins' motions for a bill of particulars are therefore denied.

### III:  CONCLUSION

For the reasons set forth above, the Court shall deny (1) Defendant Lionel Stoddard's

Motion to Dismiss Count I of the Indictment; (2) the Joint Defense Motion to Dismiss the

Indictment due to Multiplicitous and Duplicitous Charging filed by Defendant Bryan Burwell;

(3) Defendants' Joint Motion for *In Camera* Review of Grand Jury Testimony to Determine the Existence of a Racketeering Enterprise filed by Defendant Miquel Morrow; (4) Defendant Stoddard's Motion for Bill of Particulars; and (5) Defendant Aaron Perkins' Motion for a Bill of Particulars.  An Order accompanies this Memorandum Opinion.


Date:   March 16, 2005

                                        _____/s/_____
                                        COLLEEN KOLLAR-KOTELLY
                                        United States District Judge