## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,    :
                             :
        v.                   :    Criminal No. 07-46 (GK)
                             :
DEBORAH JEANE PALFREY,       :    **FILED**
                             :
        Defendant.           :    AUG 1 6 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

### MEMORANDUM OPINION

The Indictment in this case charges Defendant with violating three federal statutes through her operation of Pamela Martin and Associates, a business that allegedly offered prostitution services to clients in the District of Columbia, Maryland and Virginia. Defendant has filed seven motions,[1] seeking dismissal of all counts of the Indictment, asking the Court to strike certain terms in the Indictment, and requesting a Bill of Particulars. Upon consideration of the Motions, Omnibus Opposition, Supplemental Authority, Omnibus Reply, the applicable case law, and the entire record herein, and for the reasons stated below, the Court rules as follows:

1.  Defendant's Motion to Dismiss Indictment Due to Selective Prosecution [Dkt. No. 63] is **denied,**

2.  Defendant's Motion to Strike as Prejudicial Surplusage the Use of Aliases in the Indictment [Dkt. No. 61] is **denied,**

---

[1] Defendant has also filed a Motion to Suppress Evidence Obtained from her Home [Dkt. No. 85], which the Court will consider in a separate opinion after an evidentiary hearing scheduled for August 28, 2007.

3.    Defendant's Motion to Dismiss for Unconstitutional Application of the Local Prostitution Statutes [Dkt. No. 67] is **denied**,

4.    Defendant's Motion to Dismiss Count One of the Indictment and its Attendant Forfeiture Allegation [Dkt. No. 64] is **denied**,

5.    Defendant's Motion to Dismiss Counts Two Through Four of the Indictment [Dkt. No. 66] is **denied**,

6.    Defendant's Motion to Dismiss Count Five of the Indictment and its Attendant Forfeiture Allegation [Dkt. No. 65] is **denied**, and

7.    Defendant's Motion for a Bill of Particulars [Dkt. No. 68] is **granted in part and denied in part**.

I.    **BACKGROUND**

On March 1, 2007, a federal grand jury returned a five count Indictment against Defendant in this case.  Count I of the Indictment charges Defendant under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 <u>et seq.</u>, based upon her alleged interstate travel in aid of racketeering, 18 U.S.C. § 1952 ("Travel Act").  Counts II through IV charge Defendant with violations of the Travel Act, 18 U.S.C. § 1952.  Count V charges her with conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(h), and with aiding and abetting said conspiracy in violation of 18 U.S.C. § 2.  The Indictment also provides notice that the Government will seek forfeiture, pursuant to 18 U.S.C. §§ 982(a)(1) and 1963, of Defendant's property derived from proceeds obtained from her alleged RICO and money laundering activities.

Defendant has filed six Motions attacking the Indictment, and

-2-

one Motion seeking more facts about the Government's case.   She seeks dismissal of all Counts of the Indictment on the ground of selective prosecution and on the ground that each of the Counts alleges her intent to facilitate violations of prostitution statutes that are unconstitutional under <u>Lawrence v. Texas</u>, 539 U.S. 558 (2003).   She has filed three separate Motions seeking dismissal of Count I, Counts II through IV, and Count V, on the basis that the allegations are deficient.   She has also filed a Motion seeking to strike three aliases named in the Indictment. Finally, she requests a Bill of Particulars to provide her with additional information to assist in the preparation of her defense.

## II.   ANALYSIS

### A.   Motion to Dismiss Indictment Due to Selective Prosecution

Defendant moves to dismiss all Counts of the Indictment due to "the apparent selective motivation of the United States in seeking the Indictment."   Def.'s Mot. (Dkt. No. 63)[2] at 1.   She argues that she is the only one of many owners of escort services operating in the District of Columbia to be indicted.   She also claims that the timing of the Indictment raises an inference of improper motive. As a result of the Government's "apparent selective motivation," Defendant seeks dismissal of the Indictment or, in the alternative, discovery relating to the decision to prosecute her.

---

[2] To avoid confusion among the various motions before the Court at this time, the Court will cite to Defendant's Motions by reference to their docket numbers.

On October 3, 2006, the Government instituted civil forfeiture proceedings against Defendant, alleging that certain of her assets were acquired from criminal activity.  <u>United States v. 803 Capitol Street</u>, No. 06-1710 (D.D.C. filed Oct. 3, 2006).  During those proceedings, on February 26, 2007, Defendant's counsel in that case ("civil case counsel") sent an email to the Government raising the possibility of a conflict of interest in the Department of Justice, requesting appointment of a Special Counsel, and indicating Defendant's intent to release her telephone records.  Defendant does not dispute that the Government had notified her prior to February 26, 2007 that it was on the verge of presenting the Indictment to the grand jury for its approval.  Nor does she dispute that the Government agreed to delay presenting the Indictment in order to meet with her civil case and criminal case counsel to discuss possible pre-indictment resolution of the cases.  When that meeting proved unproductive, the Government charged Defendant under the five count Indictment in this case on March 1, 2007.

It is well-established that to sustain a dismissal for selective prosecution, a defendant must show both (1) that she was singled out for prosecution from others similarly situated; and (2) that her prosecution was motivated by a discriminatory purpose.  <u>See</u> Def.'s Mot. (Dkt. No. 63) at 5; <u>United States v. Armstrong</u>, 517 U.S. 456, 465 (1996).  The Supreme Court has noted that "the

-4-

standard is a demanding one." <u>Armstrong</u>, 517 U.S. at 463. To warrant dismissal, a defendant must present "clear evidence" that the decision to prosecute her had a discriminatory effect and was motivated by a discriminatory purpose. <u>Id.</u> at 464. To obtain discovery on a claim of selective prosecution, <u>Armstrong</u> requires the defendant to adduce "some evidence tending to show the essential elements of" a selective prosecution defense. <u>Id.</u> at 462-63. Defendant's Motion falls far short of any such showing.

Defendant first claims that the Government's decision to indict her, and not the many other escort service owners operating within the District of Columbia, constitutes disparate treatment of similarly situated individuals. She has not, however, offered a single piece of evidence to support that claim, or to demonstrate that other escort service or spa owners who have committed similar acts have not been indicted.

She argues that "[t]he government has revealed nothing to distinguish the operations of [her] service from that of any other escort service or spa." Def.'s Mot (Dkt. No. 63) at 7. It is Defendant who bears the burden of producing such evidence in the first instance, however, not the Government. In <u>Armstrong</u>, the Supreme Court expressly rejected the Ninth Circuit's view that "a defendant may establish a colorable basis for discriminatory effect without evidence that the Government has failed to prosecute others who are similarly situated to the defendant." 517 U.S. at 469.

-5-

Rather, the Court approved the position adopted by the majority of the Courts of Appeals, but not the Ninth Circuit, that the defendant must "produce some evidence that similarly situated defendants . . . could have been prosecuted, but were not." Id. Defendant's unsupported allegation that she has received disparate treatment simply cannot meet the demanding showing required by Armstrong.[3]

Moreover, even though the Indictment was filed just three days after her civil case counsel's email on February 26, 2007, the Government had been investigating Defendant for a substantial period of time. The Government's investigation became public on October 3, 2006 when the civil forfeiture case was filed--five months before her civil case counsel's email--and the investigation likely began well before that. The delay between the Government's preparation of the Indictment and presentation of it to the grand jury was, as the Government explains, caused by the fact that Defendant's first criminal case defense attorney quite appropriately requested such a delay in order to meet with the Government prior to issuance of the Indictment. The Government cannot be faulted for agreeing to suspend the Indictment until after discussions with Defendant and her counsel. Contrary to

---

[3] Nor has Defendant provided any evidence that other owners of escort services are similarly situated. The Government in this case has not charged Defendant with running an escort service, but rather with violating Federal statutes as a result of her taking action intended to facilitate violation of State prostitution laws.

Defendant's contention, there is no "suspicion inherent in this sequence." Def.'s Reply at 11.

In sum, the Motion to Dismiss for Selective Prosecution must be **denied** for lack of any evidentiary support.

## B.  Motion to Strike the Use of Aliases

The Indictment in this case names Defendant "Deborah Jeane Palfrey, also known as 'Jeane Palfrey,' also known as 'Julia,' also known as 'Pamela Martin.'" Defendant contends that the Government's listing of those three aliases after her name is prejudicial because it "inaccurately suggest[s] a sinister use of criminal aliases." Dkt. No. 61, at 1. She therefore requests that the Court exercise its discretion under Rule 7(d) of the Federal Rules of Criminal Procedure to strike those terms from the Indictment as surplusage.

"The scope of a district court's discretion to strike material from an indictment is narrow. . . . Material that can fairly be described as 'surplus' may only be stricken if it is irrelevant and prejudicial." United States v. Oakar, 111 F.3d 146, 157 (D.C. Cir. 1997) (internal citations omitted).

The three aliases named in the Indictment in this case are neither irrelevant nor prejudicial. As the Government has explained, the aliases are relevant because they are the only names by which some of the witnesses knew Defendant. See United States v. Brodie, 326 F. Supp. 2d 83, 90 (D.D.C. 2004) ("The general rule

regarding the use of aliases is that 'if the government intends to introduce evidence of an alias and the use of that alias is necessary to identify the defendant in connection with the acts charged in the indictment, the inclusion of the alias in the indictment is both relevant and permissible, and a pretrial motion to strike should not be granted.'") (internal citation omitted).

Nor are the names "Jeane Palfrey," "Julia," and "Pamela Martin" prejudicial.  They are proper names--indeed, the first alias is simply Defendant's middle name and surname--carrying no negative connotation in themselves.  Because the Government credibly asserts that these aliases are necessary to identify Defendant at trial, and because Defendant has shown no prejudice inherent in those aliases, the Motion to Strike is **denied**.

C.   **Motion to Dismiss for Unconstitutional Application of the Prostitution Statutes**

Although not charged in the Indictment, the offense of procuring prostitution underlies the RICO, Travel Act, and Conspiracy to Commit Money Laundering Counts in this case.  The RICO and money laundering Counts allege Travel Act offenses as underlying unlawful activity.  The Travel Act Counts in turn allege that Defendant intended to promote or facilitate the violation of the prostitution laws of the District of Columbia, Maryland and Virginia.

Defendant argues that the Indictment relies on an unconstitutional application of those prostitution laws.

-8-

Specifically, she contends that the Supreme Court's holding in Lawrence v. Texas, renders unconstitutional the laws criminalizing prostitution as applied in her case. Therefore, she argues, "since no underlying violation of state prostitution laws occurred, no federal criminal offenses can be pursued using the alchemy suggested by the government in this case." Def.'s Mot. (Dkt. No. 67) at 2.

Defendant stretches the holding in Lawrence beyond any recognition. In Lawrence, the Supreme Court held that laws imposing criminal penalties for private acts of consensual sodomy between adults are inconsistent with the protection of liberty under the Due Process Clause of the 14th Amendment.  539 U.S. at 578.  The Court expressly pointed out that its ruling "does not involve public conduct or prostitution."  Id.; see also United States v. Thompson, 458 F. Supp. 2d 730, 732 (N.D. Ind. 2006 ("Lawrence held only that a state cannot enact laws that criminalize homosexual sodomy; it did not address the constitutionality of prostitution statutes. . . . [I]t would be an untenable stretch to find that Lawrence necessarily renders (or even implies) laws prohibiting prostitution . . . unconstitutional.").

Moreover, the Court in Lawrence emphasized that its holding protected private sexual activity in the context of the right to enter and maintain a personal relationship without governmental

-9-

interference.    539 U.S. at 567.    The Constitution, the Court explained, protects the liberty interests of individuals to enter into personal relationships "in the confines of their homes and their own private lives and still retain their dignity as free persons. When sexuality finds overt expression in intimate conduct with another person, the conduct can be but one element in a personal bond that is more enduring." Id.

In contrast to the private, non-commercial activity at issue in Lawrence, the conduct alleged in the Indictment in this case concerns the sale of sexual acts in the commercial marketplace. The Indictment alleges that Defendant managed a substantial business enterprise employing 132 women for the purpose of engaging in prostitution activity with male clients, that she placed job advertisements in the Washington City Paper and the University of Maryland Diamondback newspaper, and that she advertised the services of the business enterprise to the public in the Washington City Paper, the District of Columbia Yellow Pages, the Northern Virginia SuperPages, and Internet websites.    This activity is unquestionably both public and commercial. It does not fall within the reasoning of Lawrence, and therefore the Motion to Dismiss for Unconstitutional Application of the Local Prostitution Statutes must be **denied.**

D.    **Motion to Dismiss Counts II Through IV (Travel Act)**

The Travel Act allegations in this case provide the foundation

-10-

for the Government's Indictment.    Counts II through IV charge

Defendant with violations of the Travel Act, 18 U.S.C. §

1952(a)(3).    The charges in Counts I and V are predicated on

violations of the Travel Act, and those violations are listed as

specified unlawful activity under the RICO and money laundering

statutes.

Section 1952(a)(3) of the Travel Act provides:

> Whoever travels in interstate or foreign commerce or uses
> the mail or any facility in interstate or foreign
> commerce, with intent to . . . otherwise promote, manage,
> establish, carry on, or facilitate the promotion,
> management, establishment, or carrying on, of any
> unlawful activity . . . and thereafter performs or
> attempts to perform any of the acts specified in
> subparagraphs (1), (2), and (3), shall be fined not more
> than $ 10,000 or imprisoned for not more than five years,
> or both.

"Unlawful activity" is defined to include, in relevant part, "any

business enterprise involving . . . prostitution offenses in

violation of the laws of the State in which they are committed ."

18 U.S.C. 1952(b)(1).

The Travel Act Counts in this case allege the "unlawful

activity" as "a business enterprise involving prostitution offenses

in violation of the laws of the District of Columbia, the State of

Maryland, and the State of Virginia as described in paragraph nine

of Count One."[4]    Indictment ¶ 14.    Counts II through IV also allege

_____

[4] Paragraph Nine of the Indictment alleges:

9.    At all times relevant and material to this
Indictment, the following state laws regarding

that Defendant violated the "aiding and abetting statute," 18
U.S.C. § 2.   That statute provides that whoever aids or abets
commission of an offense against the United States is punishable as
a principal.

Defendant argues that Counts II through IV track the exact
language of the Travel Act statute, but fail to adequately allege
an overt act, fail to allege the elements of the predicate state
offenses, and "fail[] to provide an adequate description of the
specific factual conduct in issue."  Def.'s Mot. (Dkt. No. 66) at
3.  She further argues that "these same skeletal paragraphs fail to
even recite the language of the aiding and abetting offense, or
identify the elements that must be satisfied under that provision."
Id. at 2-3.[5]

Defendant's aiding and abetting argument is clearly invalid.

_____

prostitution offenses were in effect:
     a.   Title 22, District of Columbia Code, Section
2707, which makes it a crime to procure, receive
money, or other valuable thing for arranging
assignation;
     b.   Title 11, Maryland Criminal Code, Section 306,
which makes it a crime to procure or solicit or
offer to procure or solicit for prostitution or
assignation; and
     c.   Title 18.2, Virginia Code, Section 356, which
makes it a crime to receive money or other valuable
thing for procuring a person or causing a person to
engage in unlawful sexual intercourse.

[5] Defendant also argues that by incorporating "purely local
crimes" into Counts II through IV, the Government has exceeded the
intended scope of the Travel Act.  Def.'s Mot. (Dkt. No. 66) at 12.
She cites no controlling authority for this public policy argument,
which is more appropriately directed to Congress.

It is well-established that aiding and abetting is a lesser-included offense that need not be separately charged. <u>United States v. Kegler</u>, 724 F.2d 190, 200-201 (D.C. Cir. 1984) ("The indictment need not specifically charge a violation of 18 U.S.C. § 2. An aiding and abetting instruction may be given in a case where the indictment does not allege violation of the aiding and abetting statute.").

Her challenge to the overt act allegation also fails.  The Indictment alleges that Defendant "used the United States mail and a facility in interstate commerce . . . with intent to promote . . . an unlawful activity . . . <u>and thereafter did perform and attempt to perform an act to promote, manage, establish, and carry on, and to facilitate the promotion, management, establishment, and carrying on of said unlawful activity</u>."  Indictment ¶ 14 (emphasis added).  This language clearly alleges that Defendant performed an overt act.

Defendant argues that the Government's use of conclusory allegations tracking the statutory language is insufficient.  She relies on <u>United States v. Wander</u>, 601 F.2d 1251, 1259 (3rd Cir. 1979), for the proposition that "the absence of an allegation of an overt act renders an indictment insufficient."  Def.'s Reply at 8. As she concedes, however, the indictment in <u>Wander</u> "failed completely to address this essential element."  Def.'s Mot. (Dkt. No. 66) at 10.  It made no mention at all of an overt act, and thus

-13-

"failed to alert the defense that the Government had to prove the third element of the crime; namely, an overt act subsequent to travel that furthered the illegal activity." United States v. Childress, 58 F.3d 693, 720 (D.C. Cir. 1995) (distinguishing Wander).

Unlike the indictment in Wander, the Indictment in this case tracks the statutory language to expressly allege an overt act. As our Court of Appeals stated in Childress, which considered an overt act allegation containing similar statute-tracking language, "at least four circuits have upheld Travel Act convictions based on virtually identical indictments." Id. (citing United States v. Muskovsky, 863 F.2d 1319, 1326-27 (7th Cir. 1988); United States v. Cerone, 830 F.2d 938, 951 (8th Cir. 1987); United States v. Stanley, 765 F.2d 1224, 1239-40 (5th Cir. 1985); United States v. Tavelman, 650 F.2d 1133, 1138 (9th Cir. 1981)). As the Fifth Circuit explained in Stanley, an indictment that tracks the language of the Travel Act is sufficient because the Act itself clearly sets out the essential elements of the offense. 765 F.2d at 1239-40. Defendant has provided no sound basis for departing from these cases.[6] Accordingly, the Court finds that the Indictment's tracking of the statutory language to allege an overt act in this case is sufficient.

---

[6] To the extent Defendant is arguing that the overt act allegation fails to meet the constitutional notice requirement, that argument is addressed in Part D.2., infra.

-14-

### 1.    Predicate State Offenses

Defendant further contends that the Travel Act Counts should be dismissed because they fail to "delineate the specific individual state law elements that [the Government] will need to prove to obtain a conviction under the Travel Act." Def.'s Mot. (Dkt. No. 66) at 7 (emphasis in original).

To the extent Defendant is arguing that the Government must prove each element of the predicate state offenses, it is well-settled that the Government bears no such burden in Travel Act cases based on § 1952(a)(3). United States v. Jones, 909 F.2d 533, 539 (D.C. Cir. 1990) ("While a defendant must have intended to facilitate each element of the offense, the Government does not have to show that he or she actually violated the state law."). The statute requires only that a defendant "inten[ded] to . . . promote . . . any unlawful activity," not that the defendant have completed such unlawful activity. 18 U.S.C. § 1952(a)(3).

Defendant's argument that Counts II through IV of the Indictment must allege the elements of the predicate state offenses is also incorrect. The Indictment must allege the essential elements of the offense with which Defendant is charged, namely, violations of the Travel Act. United States v. Pickett, 353 F.3d 62 (D.C. Cir. 2004). The elements of the predicate state offenses are not essential elements of the Travel Act violations.

The essential elements of a Travel Act charge, as articulated

-15-

by our Court of Appeals, are: "(1) interstate travel or use of a
facility in commerce (2) with the intent to promote an unlawful
activity and (3) that the defendant _thereafter_ performed or
attempted to perform or facilitated the performance of an overt act
in furtherance of the unlawful activity." Childress, 58 F.3d at
720 (emphasis in original). The elements of the predicate unlawful
activity are not themselves essential elements of the Travel Act
offense.

    Defendant's reliance on United States v. Jones is misguided.
In Jones, our Court of Appeals held that in this Circuit, in order
to make out a violation of the Travel Act based upon an underlying
violation of state law, the Government must prove _at trial_: (1)
"that the predicate activity falls within one of the categories
listed in § 1952(b) and that it is punishable under the law of the
state in which it occurred;" and (2) "that, in making use of the
facilities of interstate commerce, the defendant had the intent,
with respect to each element of the relevant state offense,
required in order to make out a violation of state law." 909 F.2d
at 538.

    "The Due Process Clauses of the Fifth and Fourteenth
Amendments . . . require that the Government prove 'beyond a
reasonable doubt . . . every fact necessary to constitute the crime
. . . charged.'" Jones, 909 F.2d at 538 (citing In re Winship, 397
U.S. 358, 364 (1970)). In contrast to what must be proved at

-16-

trial, which was the issue in <u>Jones</u>, as set forth above, an indictment is required to allege only the essential elements of the Travel Act offense. The holding in <u>Jones</u> focused on the showing required for the Government to prove its Travel Act charge at trial, rather than what needed to be included in the indictment. Accordingly, <u>Jones</u> in no way supports Defendant's argument that it was essential to include such elements in the Indictment in this case.

Other courts have also held that the elements of the predicate state offense are not essential elements of a Travel Act offense which are required to be spelled out in the indictment. <u>See United States v. Welch</u>, 327 F.3d 1081, 1092 (10th Cir. 2003); <u>United States v. Norberto</u>, 373 F. Supp. 2d 150, 160-61 (E.D.N.Y. 2005). In <u>Welch</u>, the court considered an indictment charging a Travel Act violation predicated on the Utah Commercial Bribery Statute. Reversing the district court's dismissal of the indictment, the court of appeals cited <u>Jones</u> with approval and held:

> The Travel Act proscribes not the unlawful activity per se, but the use of interstate facilities with the requisite intent to promote such unlawful activity. An actual violation of [the Utah Commercial Bribery Statute] is not an element of the alleged Travel Act violations in this case and need not have occurred to support the Government's § 1952 prosecution. Consistent with this view, <u>no court to our knowledge has ever held the underlying elements of the predicate offense need be alleged as part of a Travel Act charge.</u> For instance, an individual may violate the Travel Act simply by attempting to perform a specified "unlawful act" so long as that individual has the requisite intent required by the "unlawful act." <u>See Jones</u>, 909 F.2d at 539.

-17-

Welch, 327 F.3d at 1092 (emphasis added) (other internal citations omitted).

Moreover, the very case Defendant relies upon for her challenge to the overt act allegation supports the principle that the elements of the underlying offense are not required to be alleged in an indictment. In Wander, the Third Circuit considered whether the indictment's conspiracy charge was defective for failure to set forth all of the elements of the offense which the defendants allegedly conspired to commit. 601 F.2d at 1259. The court held that the indictment was not defective, reasoning that "[i]n a conspiracy indictment, the gist of the offense is the agreement and specific intent to commit an unlawful act, and when required by statute, an overt act. Conspiracy indictments need not allege all of the elements of the offense which the defendants are accused of conspiring to commit." Id. (citing Wong Tai v. United States, 273 U.S. 77 (1927)). As the Tenth Circuit held in Welch, the essence of a Travel Act charge is "the use of interstate facilities with the requisite intent to promote such unlawful activity," not the underlying unlawful activity itself. 327 F.3d at 1092.

Based on the reasoning in these cases, the Court concludes that the elements of the predicate state offenses are not essential elements of a Travel Act offense. Accordingly, the Indictment is not fatally defective for failure to allege each of those elements.

-18-

## 2.   Sufficiency of Allegations

Defendant also argues that Counts II through IV more generally fail to allege sufficient facts to provide notice as to the charges against her.  Rule 7(c) of the Federal Rules of Criminal Procedure requires that an indictment "be a plain, concise and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c); <u>Hamling v. United States</u>, 418 U.S. 87, 117 (1974).   The Supreme Court has held that "[a]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which [s]he must defend, and second, enables h[er] to plead an acquittal or conviction in bar of future prosecutions for the same offense."  <u>Hamling</u>, 418 U.S. at 117.

"In some cases, it is enough if the indictment puts the charge in the words of the statute but this is acceptable only where the statute itself fully, directly, and unambiguously sets forth all of the elements of the offense."  <u>United States v. Conlon</u>, 628 F.2d 150, 155 (D.C. Cir. 1980).   In many cases, in order to avoid ambiguity, the language of the statute "must be supplemented with enough detail to apprise the accused of the particular offense with which he is charged."  <u>Id.</u>  However, an indictment is not required to set forth all the evidence the Government plans to present.  <u>See</u> <u>United States v. Haldeman</u>, 559 F.2d 31, 123-25 (D.C. Cir. 1976) ("[I]t is not necessary for the indictment to include '(t)he

-19-

particularity of time, place, circumstances, causes, etc., in stating the manner and means of effecting the object of a conspiracy . . . .'") (quoting <u>Glasser v. United States</u>, 315 U.S. 60, 66 (1942)).[7]

In this case, as discussed <u>supra</u>, Counts II through IV of the Indictment set forth the essential elements of the Travel Act offense. Those Counts further identify three specific dates on which Defendant used the United States mail with intent to promote a business enterprise, Pamela Martin and Associates, involving prostitution offenses in violation of three specified District of Columbia, Maryland and Virginia statutes. Moreover, by describing at length the alleged enterprise and Defendant's role in operating that enterprise, the Indictment presents sufficient facts to adequately inform Defendant of the charges against her. Although the Government certainly could have been more specific in the Indictment, it is not required to give every fact upon which it will rely to prove its case. <u>Id.</u> at 121. The Court finds that the Indictment presents sufficient information to ensure that Defendant understands the charges and can prepare her defense.

**E.  Motion to Dismiss Count I (RICO)**

Count I alleges that Defendant violated the Racketeer Influenced and Corrupt Organization statute, which provides, in

---

[7] Our federal criminal justice system does not require full pretrial discovery of the Government's case. <u>See</u> Fed. R. Crim. P. 16(b).

-20-

relevant part:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

18 U.S.C. § 1962(c).

Defendant argues that Count I is deficient for failure to: (1) adequately allege a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c); (2) allege a person distinct from the enterprise; (3) allege an enterprise distinct from the pattern of racketeering activity; (4) adequately plead a predicate offense; and (5) allege a nexus between the alleged unlawful activity and the interests sought to be forfeited.

### 1.    Pattern of Racketeering Activity

As defined by the RICO statute, a pattern of racketeering activity "requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).   The Supreme Court has construed the "pattern of racketeering activity" element to require a showing of "continuity plus relationship," i.e. at least two racketeering acts plus some showing that the acts are related and "that they amount to or pose a threat of continued criminal activity." H.J., Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 239 (1989).

The latter concept, "continuity," refers "either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." Id. at 241.

The Indictment in this case alleges such a pattern. Count I alleges fourteen specific acts of racketeering between 1998 and 2006, nine of which allege activity in the District of Columbia. Indictment ¶ 12. It alleges that all of the racketeering acts had the related purpose or result of "enriching the members and associates . . . through the operation of a prostitution business." Id. at ¶ 8. These allegations satisfy the "continuity plus relationship" showing required to adequately allege a pattern of racketeering activity. H.J., 492 U.S. at 239.

### 2. Enterprise Distinct from Person and from Pattern of Racketeering Activity

To prove the existence of an enterprise, the Government must show "(1) a common purpose among participants, (2) organization, and (3) continuity." United States v. Perholtz, 842 F.2d 343, 362 (D.C. Cir. 1988). The allegations in the Indictment more than satisfy those requirements. Count I alleges (1) the common purpose of self-enrichment, Indictment ¶ 8; (2) the organization of Defendant, female employees, and male "testers" into Pamela Martin and Associates, id. at ¶¶ 4, 10; and (3) the continued existence of that organization, led by Defendant, over time, see id. at ¶¶ 10-12.

Defendant raises two challenges to the "enterprise"

-22-

allegations of the Indictment.   First, she argues that the Indictment fails to allege a distinction between Defendant and her company because Pamela Martin and Associates was a sole proprietorship, not a separate corporate legal entity.   Whatever the merits of that distinction in other contexts, the enterprise as alleged in the Indictment did not consist solely of Defendant and her sole proprietorship.   The very first section of Count I, titled "The Racketeering Enterprise and the Defendant," alleges that "Defendant Palfrey, together with others known and unknown to the Grand Jury, doing business as Pamela Martin and Associates, constituted an enterprise. . . ."   Indictment ¶ 7.  The Indictment further alleges that Pamela Martin and Associates hired female employees and utilized male "testers."   Id. at ¶¶ 4, 10.  Although Defendant was the sole owner of Pamela Martin and Associates, the Indictment properly charges that she, along with other individuals, i.e. the female employees and the male "testers," formed the enterprise in this case.   See Perholtz, 842 F.2d at 353.

Second, Defendant argues that the Indictment fails to distinguish between the alleged enterprise and the alleged pattern of racketeering activity.   Specifically, she argues that the Indictment fails to allege continuity of the enterprise and a common purpose of its members.   She contends that the enterprise "at all times remains a separate element [from the pattern of racketeering activity] which must be proved by the government."

-23-

Def.'s Mot. (Dkt. No. 64) at 9 (citing <u>United States v. Turkette</u>, 452 U.S. 576, 583 (1981); <u>United States v. White</u>, 116 F.3d 903, 924 (D.C. Cir. 1997)).

Defendant's arguments ignore the plain language of the Indictment. The "Purpose of the Enterprise" section of the Indictment expressly alleges the common purpose to be "[e]nriching the members and associates of the enterprise through the operation of a prostitution business." Indictment ¶ 8(a).

As to the continuity of the enterprise, the Indictment also expressly alleges that "[t]he enterprise constituted an ongoing organization whose members functioned as a continuing unit." <u>Id.</u> at ¶ 7. The Indictment further alleges that Defendant and the enterprise engaged in racketeering activities spanning more than a decade, i.e. from 1993 to 2006; it alleges fourteen particular racketeering activities; and it spells out how Defendant allegedly managed the enterprise over time, i.e. through an established system of scheduled appointments, business phone numbers, and a post office box for receipt of proceeds in the form of money orders. Indictment ¶ 10.

Moreover, as Defendant herself concedes, and as the cases she cites establish, "the existence of the enterprise may be inferred from the proof of the pattern [of racketeering activity]." Def.'s

Mot. (Dkt. No. 64) at 9 (citing Perholtz, 842 F.3d at 362).[8]
Accordingly, although the Indictment in this case certainly is bare
bones, as indictments often are, the Court finds that these
allegations are sufficient to put Defendant on notice of facts with
which the Government intends to prove continuity.

### 3.    Predicate Offense

The RICO charge in this case is predicated on fourteen alleged
violations of the Travel Act, 18 U.S.C. § 1952(a)(3).
Specifically, each of the alleged violations of the Travel Act in
Count I states that Defendant, aided and abetted by another person
known to the Grand Jury (but not identified in the Indictment),
used the United States mail during a specified time period with the

---

[8] As our Court of Appeals explained in Perholtz, the courts
that impose a strict requirement of separateness of the enterprise
from the pattern of racketeering activity "appear to be concerned
that RICO could be expanded to encompass even a 'sporadic and
temporary criminal alliance.'"  842 F.2d at 363.  That certainly
cannot be a concern here given the allegations that the criminal
activities occurred over a thirteen year period.  Moreover, the
cases Defendant relies upon for the separateness principle hold
only that the Government must ultimately prove both an enterprise
and a pattern of racketeering activity.  Turkette, 452 U.S. at 583;
White, 116 F.3d at 924.  They do not support Defendant's position
that the Government must prove enterprise and pattern with separate
allegations and separate evidence.  As the Perholtz court construed
the holding in Turkette, "the government is required to prove that
the associates are bound together by some form of organization so
that they function as a continuing unit, and thus constitute an
'enterprise.'"  Perholtz, 842 F.2d at 362.  As discussed in this
section, the Indictment in this case sufficiently alleges an
organization in the form of Pamela Martin and Associates, that
operated as a continuing unit under Defendant's management.
See United States v. Richardson, 167 F.3d 621, 625-26 (D.C. Cir.
1999).

-25-

intent to promote "an unlawful activity, that is, a business enterprise involving prostitution offenses in violation of the State laws described in paragraph nine [of the Indictment], and thereafter did perform . . . an act to promote . . . said unlawful activity, in violation of Title 18, United States Code, Sections 1952(a)(3) and 2."  Indictment ¶ 12.

Defendant contends that the Indictment does not properly allege the second and third elements of a Travel Act offense, i.e. the intent[9] to promote one of the statutorily defined unlawful activities, and an overt act. She argues that the Indictment fails to allege any facts "in support of the claim that the conduct of Ms. Palfrey or any associated individual violated the elements of the underlying D.C. statute. . . . [T]he elements of Title 22, D.C. Code § 2707 or the other State offenses are not even mentioned or articulated." Def.'s Mot. (Dkt. No. 64) at 13. She further argues that Count I does not properly allege facts supporting the overt act allegation.

Each of these arguments challenges the sufficiency of alleged

---

[9] Defendant conflates the second and third elements of a § 1952(a)(3) offense.  She maintains that "the Indictment must aver . . . (2) that she attempted to or did in fact promote, manage, establish, carry on . . . certain statutorily defined unlawful activities, and (3) that she committed a subsequent overt act in furtherance of the unlawful activity." Def.'s Mot. (Dkt. No. 64) at 13 (emphasis added) (citing Wander, 601 F.2d at 1258).  The second element of a Section 1952(a)(3) offense is "intent to promote," not attempt or actual promotion, as Wander itself states. 601 F.2d at 1258.

Travel Act offenses, and mirror the arguments Defendant raises in her Motion to Dismiss Counts II through IV.  They fail for the reasons stated in the Court's discussion of that Motion.

### 4.    Nexus Between the Alleged Unlawful Activity and Interests Sought to be Forfeited

Defendant, citing to United States v. DeFries, 129 F.3d 1293 (D.C. Cir. 1997), argues that Count I's criminal forfeiture allegation is deficient in its failure to allege a nexus between the unlawful activity alleged in that Count and the property allegedly forfeited.  Defendant misconstrues the holding in DeFries.  In that case, our Court of Appeals held that the RICO criminal forfeiture provision requires that, at trial, the Government establish "a causal link between the property forfeited and the RICO violation."  Id. at 1313.  It does not require, as Defendant argues, that the Indictment itself establish the nexus between the unlawful activity and the property.

In fact, DeFries supports the contrary principle that an indictment need not specify the particular assets sought to be seized.  The Court of Appeals held that "[t]he government is not required to list all forfeitable interests in the indictment, provided the indictment notifies defendants that the government will seek to forfeit all property acquired in violation of RICO." Id. at 1315 n.17.  Accordingly, the court expressly rejected the appellants' contention that the government's failure to list their salaries in the indictment or bill of particulars precluded post-

-27-

trial forfeiture.  Id.  If an indictment is not required to name specific property for later forfeiture, it would be manifestly illogical to require its allegations to specify the factual nexus between the unlawful conduct and the as-yet-unspecified property.

Moreover, as the Government points out, Federal Rules of Criminal Procedure 7(c)(2)[10] and 32.2(a) are notice provisions. They do not require that the property subject to forfeiture be itemized.  See Fed. R. Crim. P. 32.2(a) advisory committee's note ("As courts have held, subdivision (a) is not intended to require that an itemized list of the property to be forfeited appear in the indictment or information itself."); see also United States v. Iacaboni, 221 F. Supp. 2d 104, 110 (D. Mass. 2002) ("Defendant argues that [the defendant's house] may not be subject to forfeiture because it was not specifically listed under the forfeiture allegation in the indictment. Defendant is mistaken.") aff'd in part and rev'd in part on other grounds, 363 F.3d 1 (1st Cir. 2004).

F.   **Motion to Dismiss Count V (Conspiracy to Commit Money Laundering)**

Count V of the Indictment[11] charges Defendant with conspiracy

---

[10] The Government actually cites to Federal Rule of Criminal Procedure 7(a), which sets forth when an indictment and information should be used.  The Court will refer instead to Federal Rule of Criminal Procedure 7(c)(2), which sets forth the requirements for a criminal forfeiture proceeding.

[11] Count V alleges:

to commit money laundering in violation of 18 U.S.C. § 1956(h).[12] As objects of the purported conspiracy, the Indictment alleges that Defendant and other persons would "conduct . . . financial transactions with the money obtained in exchange for sexual intercourse and/or oral sex with clients," and "conduct . . . financial transactions with proceeds the business enterprise unlawfully obtained in exchange for sexual intercourse and/or oral sex with clients . . . for the purpose of moving funds to Palfrey

---

Between in or about 1993 and in or about August of 2006, within the District of Columbia and elsewhere, defendant Palfrey and other persons known and unknown to the Grand Jury, willfully and knowingly did combine, conspire, confederate and agree together to commit offenses against the United States, that is: knowingly conduct, and attempt to conduct, financial transactions affecting interstate commerce which involved the proceeds of specified unlawful activity, that is, interstate travel or transportation in aid of racketeering enterprises, in violation of Title 18, United States Code, Section 1952(a)(3), with the intent to promote the carrying on of the specified unlawful activity, and that while conducting and attempting to conduct such financial transactions knew that the funds involved in the financial transactions represented the proceeds of some form of unlawful activity.

Indictment ¶ 16.

[12] 18 U.S.C. § 1956(h) provides:

Any person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy.

Although Count V does not specify which offense Defendant allegedly conspired to violate, it incorporates the language of 18 U.S.C. § 1956(a)(1)(A)(i).

for her use in promoting the unlawful activities of the business enterprise."  Id. at ¶¶ 17-18.

Defendant argues that Count V should be dismissed in its entirety because it fails to clearly inform her of the offense and fails to plead adequately the predicate Travel Act offense.  She further argues that the attendant forfeiture allegation fails to allege a "substantial connection" between the assets listed and the alleged conspiracy.  As discussed, supra, an indictment is constitutionally adequate "if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."  Hamling, 418 U.S. at 117.

The Indictment in this case alleges facts that are more than sufficient to inform Defendant of the offense charged as required by Hamling.  Specifically, the Indictment alleges that Defendant hired women to perform prostitution activities for customers of Pamela Martin and Associates; that Defendant directed those women to convert a portion of the funds from those activities into money orders and send them via the United States mail to Defendant in California; that Defendant maintained United States Post Office Box 1211 in Benicia, California 94510 for receipt of portions of the proceeds of said prostitution activities; and that Defendant would receive the money orders and deposit them into her own accounts in

-30-

California and use them to support the enterprise. Indictment ¶¶
10, 17-18. As Defendant concedes, the Indictment "contain[s] a
modest description of the alleged organizational structure of Ms.
Palfrey's business." Def.'s Mot. (Dkt. No. 65) at 6. Although
modest, the Court finds that the description is constitutionally
sufficient.

Defendant further argues that ambiguity of the term
"proceeds," as evidenced by a circuit split on the precise
definition of that term, deprives her of constitutionally required
notice of the charge. Def.'s Mot (Dkt. No. 65) at 7-8; compare
United States v. Santos, 461 F.3d 886 (7th Cir. 2006), cert.
granted, 127 S. Ct. 2098 (2007) (defining "proceeds" as "gross
income") and United States v. Iacoboni, 363 F.3d 1, 4 (1st Cir.
2004) (same) with United States v. Scialabba, 282 F.3d 475 (7th
Cir. 2000) (defining "proceeds" as "net income"). Since "proceeds"
is not further defined in the Indictment, she argues, it is unclear
whether the Grand Jury considered her "net income" or her "gross
income" to return the Indictment in this case. She contends that
this ambiguity undercuts her ability to fight the charges against
her.

The Court is not persuaded. "Proceeds" is a term sufficiently
definite in meaning to give Defendant notice of the charge against
her. See Hamling, 418 U.S. at 111 ("[L]ack of precision is not
itself offensive to the requirements of due process. The

-31-

Constitution does not require impossible standards; all that is required is that the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices."). Whether the proceeds Defendant allegedly received extends beyond "net income" to encompass "gross income" is not an ambiguity that obstructs her ability to prepare her defense.

As to Defendant's argument that Count V fails to properly allege the predicate Travel Act offense, the Court has already rejected it. Supra, Part D. Defendant's further argument that Count V's forfeiture allegation fails to allege a "substantial connection" between the unlawful activity and the interests to be forfeited fails for the reasons already given in reference to Count I's forfeiture allegations.[13] Supra Part E.4.

### G. Motion for Bill of Particulars

Having denied Defendant's challenges to the sufficiency of the

---

[13] Defendant's Motion to Dismiss Count I relied on DeFries, while her Motion to Dismiss Count V relies on United States v. Funds from Prudential Securities, 362 F. Supp. 2d 75 (D.D.C. 2005). Prudential Securities is no more helpful to her position than DeFries. It is a civil case in which the Government moved for summary judgment on its civil forfeiture allegations. Considering the Government's motion for summary judgment on its civil forfeiture allegations, the court held that to be entitled to summary judgment in a civil forfeiture action, the Government must make the rebuttable showing that, inter alia, there is a "substantial connection" between the property and the alleged offense. Id. at 80-81. To prevail on a motion for summary judgment requires a more stringent showing than to survive a motion to dismiss an indictment; at the very least it requires that there are no material facts in dispute. See Fed. R. Civ. P. 56(c); Prudential Securities, 362 F. Supp. 2d at 78-79. That is obviously not the case here.

Indictment, the Court now turns to Defendant's Motion for a Bill of Particulars. Defendant seeks a bill of particulars as to: (1) the identities of the employees of Pamela Martin and Associates; (2) the common purpose of the alleged enterprise; (3) the specific "activities" of the members and associates that the enterprise intended to promote; (4) the identities of the fourteen "person[s] known to the Grand Jury" who allegedly aided and abetted the racketeering acts, the facilities in interstate commerce used in connection with those acts, the overt acts in furtherance of the fourteen alleged racketeering acts, and the dates of each use of the United States mail and each overt act; (5) the means by which Defendant used interstate commerce in connection with the Travel Act violation; (6) how Defendant violated the laws of the State or District of Columbia; (7) the individuals with whom Defendant conspired in the money laundering charge, as well as the dates, locations, proceeds, and nature of the conspiracy; (8) "how [Defendant] had the 'intent to promote'" the violation of the Travel Act; and (9) the nexus between the alleged RICO and money laundering offenses and the property sought in the forfeiture allegations.

"The determination of whether a bill of particulars is necessary 'rests within the sound discretion of the trial court' and will not be disturbed absent an abuse of that discretion." United States v. Mejia, 448 F.3d 436, 445 (D.C. Cir. 2006) (citing

-33-

United States v. Butler, 822 F.2d 1191, 1194 (D.C. Cir. 1987); Fed. R. Crim. P. 7(f) ("The court may direct the government to file a bill of particulars.") (emphasis in original)). "A bill of particulars can be used to ensure that the charges brought against a defendant are stated with enough precision to allow the defendant to understand the charges, to prepare a defense, and perhaps also to be protected against retrial on the same charges." Mejia, 448 F.3d at 445 (citing Butler, 822 F.2d at 1193). However, "[a] bill of particulars properly includes clarification of the indictment, not the Government's proof of its case." United States v. Hsia, 24 F. Supp. 2d. 14, 30 (D.D.C. 1998) (internal citation omitted). "The Court must strike a 'prudent balance' between the legitimate interests fo the government and those of the defendant[]." United States v. Ramirez, 54 F. Supp. 2d 25, 29 (D.D.C. 1999) (internal citation omitted).

With these principles in mind, it is apparent that Defendant's Motion for a Bill of Particulars is excessively broad and includes requests that are without merit or that seek information that the Government has already provided. Although Defendant is entitled to the names of the alleged co-conspirators, as discussed below, the Government is not required to disclose its evidence as to the details of the activities of those co-conspirators, nor is it required to disclose its theories, e.g. "how [Defendant] had the 'intent to promote the carrying on of the specified unlawful

-34-

activity.'"   Def.'s Mot. (Dkt. No. 68) at 2; <u>see</u> <u>Ramirez</u>, 54 F.
Supp. 2d at 29 ("A bill of particulars is not . . . a devi[ce] for
allowing the defense to preview the government's theories or
evidence.").    Moreover, there is no basis for disclosure of
particulars that need not be proven at trial, e.g. an articulation
of "how [Defendant] violated the laws of the State or District at
issue." Def.'s Mot. (Dkt. No. 68) at 2.

    Specifically, Defendant is not entitled to the following
particulars, listed according to their paragraph number in
Defendant's Motion: I.b., I.c., I.f. in part,[14] II.a., II.b.,
III.a., III.b., III.c., III.e., III.f., III.g., III.h., III.i., and
III.j. The information that Defendant requests in those paragraphs
either has been provided by the Government, e.g. the common purpose
and objectives of the alleged enterprise, or is denied on the
ground that "a bill of particulars is not a discovery tool or a
device for allowing the defense to preview the Government's
evidence." <u>United States v. Brodie</u>, 326 F. Supp. 2d 83, 91 (D.D.C.
2004) (internal citations omitted).

    As Defendant correctly points out, however, disclosure of the
names of alleged co-conspirators is not uncommon in conspiracy

---

[14] Paragraph I.f.'s request is granted as to identification of
the "person[s] known to the Grand Jury . . . but not named herein."
The requests for identification of the "facilit[ies] in interstate
commerce," the "act[s] to promote, manage, establish, and carry on
. . .," the dates of the use of the "United States mail and a
facility in interstate commerce," and the dates of the "act[s] to
promote, manage, establish, and carry on . . ." are denied.

cases, and particularly in cases alleging nonviolent offenses, brought in this jurisdiction. See, e.g., id. at 91; Ramirez, 54 F. Supp. 2d at 30 . Significantly, the Government has identified no prejudice to its case that would be caused by such disclosure.

Moreover, additional information regarding the property sought in the Indictment's forfeiture allegations, as well as the "proceeds" allegedly used in furtherance of the enterprise, is necessary to enable Defendant to conduct her investigation and trial preparation with sufficient direction. See United States v. Rogers, 617 F. Supp. 1024, 1030 (D. Colo. 1985). The Indictment alleges an enterprise that existed for over thirteen years and generated over two million dollars in income. Defendant should not have to waste precious pre-trial preparation time guessing what data among her thirteen years of financial information will be relevant to her defense. See United States v. Trie, 21 F. Supp. 2d 7, 21 (D.D.C. 1998).

Accordingly, the Court grants in part Defendant's Motion and orders the Government to disclose the following information no later than 30 days prior to trial: I.a., I.e., I.f. in part, IV.a., IV.b., V.a., V.b., and V.c. The information requested in those paragraphs includes the names of Defendant's alleged co-conspirators. It also includes details regarding the nexus between the property sought in the Indictment's forfeiture allegations and the alleged RICO and money laundering violations. In addition, the

-36-

Government shall, no later than 60 days prior to trial, identify the "proceeds of specified unlawful activity," as requested in paragraph III.d. of the Motion.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Indictment Due to Selective Prosecution [Dkt. No. 63] is **denied**, Defendant's Motion to Strike as Prejudicial Surplusage the Use of Aliases in the Indictment [Dkt. No. 61] is **denied**, Defendant's Motion to Dismiss for Unconstitutional Application of the Local Prostitution Statutes [Dkt. No. 67] is **denied**, Defendant's Motion to Dismiss Count One of the Indictment and its Attendant Forfeiture Allegation [Dkt. No. 64] is **denied**, Defendant's Motion to Dismiss Counts Two Through Four of the Indictment [Dkt. No. 66] is **denied**, Defendant's Motion to Dismiss Count Five of the Indictment and its Attendant Forfeiture Allegation [Dkt. No. 65] is **denied**, and Defendant's Motion for a Bill of Particulars [Dkt. No. 68] is **granted in part and denied in part**.

An Order will issue with this Memorandum Opinion.

_August 16, 2007_                    _Gladys Kessler_
                                     Gladys Kessler
                                     United States District Judge

**Copies via ECF to all counsel of record**

-37-