UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

PLAINTIFF,

VS.

DEBORAH JEANE PALFREY,

DEFENDANT.

_____ /

CRIMINAL CASE NUMBER: 07-046-GK

DEFENDANT'S PRO SE MOTION FOR
REPLACEMENT OF HER COUNSEL,
PRESTON BURTON AND PERMITTING
HYBRID REPRESENTATION

FILED

AUG 2 2 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

COMES NOW Defendant Deborah Jeane Palfrey appearing *pro se* and upon her separately

submitted and sealed declaration, the separately submitted and sealed declaration of Montgomery

Blair Sibley, the Sixth Amendment and 18 U.S.C. §3006A,  and prays this Court to replace her

Court-appointed counsel –Preston Burton – with attorney Montgomery Blair Sibley and permit

Hybrid Representation, and for grounds in support thereof states:

I.    IRRECONCILABLE DIFFERENCES

As more fully detailed in the sealed declarations, there are and have been since late Spring,

irreconcilable differences between myself and Mr. Burton.[1]  As such, this Court in order to give life

to the Sixth Amendment and Federal Rules of Criminal Procedure, Rule 44, must replace Mr .Burton

as my counsel in this matter. *Accord*: *United States v. Walker*, 915 F.2d 480, 482-85 (9th Cir.1990)

(reversible error where defendant had requested new counsel in writing one week before trial, and

where there were irreconcilable differences between counsel and defendant); *United States v.*

*Moore*, 159 F.3d 1154, 1160 (9th Cir. 1998) (finding irreconcilable conflict where counsel told the

---

[1]    I truly appreciate the Court's efforts - likely considerable - to attain Mr. Burton's talents for my defense last May.

-1-

court: "it seems to me that if Mr. Moore is forced to go to trial now with me as his attorney, that he will be denied a fundamental right; that is, to have counsel, effective, a zealous counsel"); *United States v. Walker*, 915 F.2d 480, 483-84 (9th Cir. 1990)(finding irreconcilable conflict where counsel told the court: "I do believe that there is, given his refusal to confer with me, there is a [sic] irreconcilable difference that does prevent me from representing him"), overruled on other grounds, *United States v. Nordby*, 225 F.3d 1053, 1059 (9th Cir. 2000), in turn overruled, *United States v. Buckland*, 289 F.3d 558, 568 (9th Cir. 2002) (en banc).

## II.    APPOINTMENT OF MONTGOMERY BLAIR SIBLEY

As stated in *Griffin v. Illinois*, 351 U.S. 12, 19 (1956), "[t]here can be no equal justice where the kind of trial a man gets depends on the amount of money he has." *Id.*, at 19.    Here, I have been declared – and continue to be – indigent and am compelled to look to this Court for vindication of my right to counsel in this criminal matter.  Plainly, I will be denied equal justice if the miserly rate that Congress has set under §3006A is deployed to fund my defense.

Admittedly, in *Caplin & Drysdale v. United States*, 491 U.S. 617 (1989), a *mere* five-to four majority held:

> Petitioner does not, nor could it defensibly do so, assert that impecunious defendants have a Sixth Amendment right to choose their counsel. The Amendment guarantees defendants in criminal cases the right to adequate representation, **but those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys** appointed by the courts.  (Emphasis added).

In the eighteen (18) years since the bare-majority decision in *Caplin & Drysdale*, the effect of this case has been to prove as true the <u>significant</u> concerns raised by the four (4) justice dissent in that case which argue for abandoning this rule of *Caplin & Drysdale*.

-2-

That dissent stated: "That the majority implicitly finds the Sixth Amendment right to counsel of choice so insubstantial that it can be outweighed by a legal fiction demonstrates, still once again, its 'apparent unawareness of the function of the independent lawyer as a guardian of our freedom.' *Id.* at 644. As such, since the decision in *Caplin & Drysdale* "conditions which have supervened, and in the light of which the reasonableness of the exercise of the protective power of the State must be considered, make it not only appropriate, but we think imperative, that, in deciding the present case, the subject should receive fresh consideration." *West Coast Hotel Co. v. Parrish*, 300 U.S. 379, 390 (1937).

Accordingly, I specifically asked this Court to reconsider the holding of *Caplin & Drysdale* that defendants who do not have the "means to hire their own lawyers have no cognizable complaint so long as they are **adequately represented by attorneys** appointed by the courts".

As the dissent in *Caplin & Drysdale* noted:

> When the Government insists upon the right to choose the defendant's counsel for him, that relationship of trust is undermined: counsel is too readily perceived as the Government's agent rather than his own. . . .The Government can be expected to "spend vast sums of money ... to try defendants accused of crime," *Gideon v. Wainwright*, 372 U.S., at 344, 83 S.Ct., at 796, and of course will devote greater resources to complex cases in which the punitive stakes are high. Precisely for this reason, 'there are few defendants charged with crime, few indeed, who fail to hire the best lawyers they can get to prepare and present their defenses.' *Ibid.* But when the Government provides for appointed counsel, there is no guarantee that levels of compensation and staffing will be even average. Where cases are complex, trials long, and stakes high, that problem is exacerbated. 'Despite the legal profession's commitment to pro bono work,' *United States v. Bassett*, 632 F.Supp. 1308, 1316 (Md.1986), *aff'd on other grounds sub nom.  United States v. Harvey*, 814 F.2d 905 (CA4 1987), even the best intentioned of attorneys may have no choice but to decline the task of representing defendants in cases for which they will not receive adequate compensation. See, e.g., *United States v.*

> *Rogers*, 602 F.Supp. 1332, 1349 (Colo.1985).  Over the long haul, the result of lowered compensation levels will be that talented attorneys will 'decline to enter criminal practice'. . . This exodus of talented attorneys could devastate the criminal defense bar.. . .Without the defendant's right to retain private counsel, the Government too readily could defeat its adversaries simply by outspending them.

Against this backdrop, this Court must reconcile why a defendant with sufficient funds of one hundred fifty thousand dollars ($150,000) to retain an attorney the quality of a Herald Fahringer will obviously receive a high quality of representation from an attorney chosen and trusted by a defendant when an indigent defendant must rely upon counsel who will not be nearly as qualified, willing to work for slave-wages of $40/hour and is **unilaterally** imposed upon the defendant. Simply stated, the Court *cannot* ignore the violation of "equal justice where the kind of trial a man gets depends on the amount of money" available to a defendant.[2]

As such, the only fair approach to insure that rich and poor are treated alike is to have this Court determine the fair-market value of competent criminal counsel in this particular matter and then provide that sum to me so that I – and not this Court – will determine who will represent me in this vital matter:  A matter which is so obviously unique given that the witness list will reach into the highest ranks of (i) two separate Presidential administrations, (ii) the private sector, Beltway-bandit community and (iii) the Fourth Estate – that it will be difficult to gauge at this time the attorney fees necessary, let alone the investigatory fees that will be necessary, to insure that I will receive "compulsory process for obtaining witnesses in [my] favor, and to have the assistance of

---

[2]    While my civil counsel's style may be unorthodox, I ask this Court to reflect upon Justice Blackmun's dissent: "There is a place in our system of criminal justice for the maverick and the risk taker and for approaches that might not fit into the structured environment of a public defender's office, or that might displease a judge whose preference for nonconfrontational styles of advocacy might influence the judge's appointment decisions." *Caplin & Drysdale* at 647.

-4-

counsel for [my] defense."

To close: from the dissent in *Caplin & Drysdale*, " In my view, the Act as interpreted by the majority is inconsistent with the intent of Congress, and seriously undermines the basic fairness of our criminal-justice system." *Id*. at 655. Likewise, 18 U.S.C. §3006A "undermine the basic fairness of our criminal-justice system" and as such, Congress' attempt to limit the scope of the Sixth Amendment's right to counsel by action of §3006A cannot be recognized by this Court for it is axiomatic that Congress cannot pass a law that violates an express right guaranteed by the Constitution.

## III.    CRIMINAL JUSTICE ACT

Alternatively, 18 U.S.C. §3006A(b), states that "The United States magistrate judge or the court shall appoint separate counsel for persons having interests that cannot properly be represented by the same counsel, or when other good cause is shown."

Here, as the Court can take judicial notice of the notoriety of this case and upon the filed declarations, there is "good cause" for allowing me a reasonable fee from which I can retain private counsel to represent me. Simply put, the counsel list from which this Court would draw has too many connections either direct or indirect to the client list of my escort service to avoid potential conflicts of interest which could undermine the attorney-client relationship subsequently in this matter. As such, out-of-town counsel, such as Montgomery Blair Sibley, insures that this matter will not be de-railed by conflicts that appear only after a full sifting of the telephone records to reveal the names of each client of the escort service is accomplished.

## IV.    HYBRID REPRESENTATION

"A criminal defendant does not have an absolute right to both self-representation and the

assistance of counsel. . . . Whether to allow hybrid representation remains within the sound discretion of the trial judge. *United States v. Daniels*, 572 F.2d at 540; *United States v. Wilson*, 556 F.2d 1177, 1178 (4th Cir.), *cert. denied*, 434 U.S. 986 (1977); *United States v. Pinkey*, 548 F.2d 305, 310 (10th Cir. 1977); *United States v. Bennett*, 539 F.2d 45, 49 (10th Cir.), *cert. denied*, 429 U.S. 925 (1976)." *United States v. Halbert*, 640 F.2d 1000, 1009 (9th Cir.1981).

I propose a hybrid partnership to the Court, whereby Mr. Sibley acts in the role of court-appointed and paid legal researcher and writer. I would expect him to file all necessary documents and to speak and argue in open court. For my part, I anticipate being active behind the scenes strategizing and doing factual research. I too, from time to time would reserve the option to speak and argue in open court. Only one of us would examine and/or cross-examine a particular witness and would advise the Court before hand which would one of us would do so.

It is only in this manner that I believe the rights guaranteed to me under the Sixth Amendment can be given life in the highly complex and regulated arena of a federal criminal trial.

V.   CONCLUSION

WHEREFORE, I request that this Court (i) issue its order replacing Mr. Burton, (ii) recognize that 18 U.S.C. §3006A *de facto* if not *de jure* violates my constitutional rights and (iii) set aside an initial fund for me to retain private counsel in this matter.

Dated: 8/21/07

Deborah Jeane Palfrey

Montgomery Blair Sibley, upon the ethical constraints imposed upon him, hereby (i) gives notice of assistance to Defendant in the preparation of this pleading and (ii) notes that he is does not – at this time – represent Defendant as attorney of record in this matter.

-6-