# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.  07-046(GK)** |
| | : | |
| **v.** | : | |
| | : | |
| **DEBORAH JEANE PALFREY** | : | |
| | : | |
| **Defendant** | | |

## NOTICE OF FILING

The United States Attorney informs the Court  that filed  herewith is Exhibits 1, 2, and 3 relating to the Government's Opposition To Motion To Substitute Counsel For The Defendant (DKT. No. 105) that was submitted on September 21, 2007.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney
Bar No. 498610

_____

Catherine Connelly
Assistant United States Attorney
555 4th Street, N.W.  Room 4844
Washington, DC 20530
(202) 616-3384

# MONTGOMERY BLAIR SIBLEY, CHARTERED

50 WEST MONTGOMERY AVENUE
SUITE B-4
ROCKVILLE, MARYLAND 20850

| MONTGOMERY BLAIR SIBLEY | ADMITTED TO PRACTICE: |
|---|---|
| 301-251-5200 | FLORIDA |
| 202-478-0371 (E-FAX) | NEW YORK |
| SIBLEY@CIVILFORFEITURE.COM | DISTRICT OF COLUMBIA |

February 26, 2007

Via FedEx #8581-1680-3504
Alberto Gonzalez, Attorney General
Office of the Attorney General
425 New York Avenue, N.W.
Department of Justice
Washington, D.C. 20530-0001

Re:    *Request for Appointment of Special Counsel*

Greetings:

I represent Jeanne Palfrey who (i) is under criminal investigation by your office and (ii) has had all her assets seized in a civil forfeiture matter pending in the District of Columbia before Judge Kessler, Case No.:1:06-CV-01710-GK.

I write to request pursuant to 28 C.F.R. §600.1 the appointment of a Special Counsel for the above matters. As detailed below, it would be a conflict of interest for the Department to prosecute these matters. Additionally, other extraordinary circumstances and the public interest require such an appointment. Alternatively, under 28 C.F.R. §600.2, I request that you direct that appropriate steps be taken to mitigate any conflicts of interest, such as recusal of particular officials or creating a "Chinese wall" around this prosecution.

Ms. Palfrey has been operating an adult fantasy escort business in the Metropolitan District of Columbia area for the last thirteen years. During that time period she had over Ten Thousand (10,000) customers from every walk of life. Based upon her knowledge and belief, those customers necessarily included present and former employees of the Department. Moreover, her supposition can – and will – be confirm as the telephone records of every single call that came into and went out of the business have been preserved.

A simply reverse-telephone number look-up – we are using "ussearch.com" – permits the identification of the owner of a telephone number. While I cannot name a particular Department employee to you at this time as the identification undertaking has just begun, given the broad spectrum of customers it is a mathematical certainty that in time such Department employees will

Alberto Gonzalez, Attorney General
Office of the Attorney General
February 26, 2007
Page 2

be identified as customers of the service and subpoenaed in either the civil matter, the criminal matter, or both.

Accordingly, as prosecution by the Department of Ms. Palfrey when members of the Department were  customers of the service would be a clear conflict of interest, a Special Counsel appointment is appropriate.  This is doubly so as the nature of the services offered were for legal sexual activities which included sexual role-play in a wide variety of forms. Crucial to Ms. Palfrey's defense if this matter proceeds is the calling to the stand the customers – some of whom doubtlessly will be Department employees – to testify as to the type of legal sexual activities they engaged in with the staff of Ms. Palfrey's service.

I look forward to your prompt attention to this matter.


Yours,

# IN THE SUPREME COURT OF FLORIDA
## (Before a Referee)

THE FLORIDA BAR,

        Complainant,

vs.

MONTGOMERY BLAIR SIBLEY

        Respondent.

        Supreme Court Case
No. SC06-1387

The Florida Bar File
Nos. 2003-00,597(2B) and
2005-00,557(2B)

## REPORT OF REFEREE

I.   **SUMMARY OF PROCEEDINGS**:

    Pursuant to the undersigned being duly appointed as Referee for the Supreme

Court of Florida to conduct disciplinary proceedings as provided for by Rule 3-7.6 of

the Rules Regulating The Florida Bar, trial of this cause was undertaken on April 16,

2007. All of the pleadings, notices, motions, orders, and exhibits are forwarded with

this report and the foregoing constitute the record in this case.

    The following individuals appeared as for the parties:

On Behalf of The Florida Bar:  Barnaby L. Min
                           The Florida Bar
                           444 Brickell Avenue
                           Suite M-100
                           Miami, Florida 33131

On Behalf of the Respondent:  None. Mr. Sibley, representing himself, failed
                           to appear after properly being notice to appear.



PUBLIC RECORD

JUL 3 0 2007

1

II.  **FINDINGS OF FACT**:

    A.  Jurisdictional Statement:

The Respondent is, and was at all times material herein, a member of The Florida Bar, and subject to the jurisdiction and disciplinary rules of the Supreme Court of Florida.

    B.  Narrative Summary of Cases:

The undersigned attempted to schedule a mutually convenient time for the final hearing and left messages for the Respondent to determine what his schedule was. As of the filing of this report, none of those messages have been returned. Accordingly, on March 28, 2007, the undersigned sent out a Notice of Final Hearing and scheduled the final hearing for April 16, 2007. On April 11, 2007, the Respondent filed a Motion to Dismiss or, Alternatively, Fifth Affidavit and Motion to Disqualify, or, Alternatively, Motion to Continue Hearing which was denied. On the final hearing date of April 16, 2007, the Respondent failed to appear. The Respondent failed to contact the undersigned's chambers or counsel for The Florida Bar to indicate that he was unavailable or would not be appearing for the final hearing. The undersigned notes that in his motion filed on April 11, 2007, the Respondent stated that he would be available by telephone. Yet, as noted, the Respondent failed to contact either the undersigned or counsel for The Florida Bar by telephone, facsimile, or electronic mail.

2

Accordingly, the final hearing proceeded without the Respondent being present. *See The Florida Bar v. Catalano*, 685 So. 2d 1299 (Fla. 1996).

### COUNT I
### The Florida Bar File No. 2003-00,597(2B)

By order dated August 5, 2002, Judge Maxine Cohen Lando of the Eleventh Judicial Circuit found the Respondent in contempt of court for willfully failing to pay child support. In that order, Judge Lando determined that the Respondent owed child support in the amount of $100,000.00. Judge Lando further determined that the Respondent had the present financial ability to pay the child support but willfully failed to do so and, accordingly, willfully violated the trial court's order. Because the Respondent was in contempt of court for willfully failing to pay child support, Judge Lando sentenced the Respondent to 90 days in jail unless the Respondent paid the outstanding child support. Judge Lando further set a payment plan for the Respondent to pay his outstanding child support.

By order dated October 18, 2002, Judge Lando amended her contempt order to increase the incarceration period to an indefinite period of time until the Respondent fully paid the outstanding child support. As of November 22, 2002, the Respondent failed to pay any of the outstanding child support and failed to comply with Judge Lando's payment plan. Accordingly, on November 22, 2002, Judge Lando issued an Order of Contempt and Commitment to the Miami-Dade County Corrections

3

Department.  Respondent sought review of Judge Lando's various orders of contempt and they were upheld on appeal.

## COUNT II
### The Florida Bar File No. 2005-00,57(2B)

On November 3, 2004, the Third District Court of Appeal filed an opinion in the matter of *Sibley v. Sibley*, 885 So. 2d 980 (Fla. 3rd DCA 2004) affirming the lower court's child support and contempt orders, and directing that the Respondent was precluded from further self-representation in that court.  In that opinion, the Third District Court of Appeal found that the Respondent had initiated 25 self-represented appellate proceedings (24 of which were found to be of no merit); filed at least 12 federal court actions against various judges assigned to his case, the court system, and his former wife (all of which were dismissed); and had filed a federal action in Delaware against his former wife (which was dismissed).  The Third District Court of Appeal also found that the Respondent "has served as an unending source of vexatious and *meritless* litigation", and agreed that his appeals were without merit. (emphasis added).  The Respondent sought review of the Third District's opinion by the Supreme Court of Florida, which was denied at *Sibley v. Sibley*, 901 So. 2d 120 (Fla. 2005).

4

III. **RECOMMENDATION AS TO GUILT**:

Based on the foregoing, I find that The Florida Bar has presented clear and convincing evidence of guilt to this Court and I make the following recommendations:

### AS TO CASE NUMBER 2003-00,597(2B)

I recommend that the Respondent be found guilty of violating Rule 4-8.4(h) (A lawyer shall not willfully refuse, as determined by a court of competent jurisdiction, to timely pay a child support obligation) of the Rules of Professional Conduct.

### AS TO CASE NUMBER 2004-70,036(11F)

I recommend that the Respondent be found guilty of violating Rule 4-3.1 (Meritorious Claims and Contentions) of the Rules of Professional Conduct.

IV. **RECOMMENDATION AS TO DISCIPLINARY MEASURES TO BE APPLIED**:

Based on the foregoing, I recommend that the Respondent be suspended from the practice of law in the State of Florida for a period of three (3) years.

My recommendation is based on the facts presented and found and the following applicable standards from **Florida Standards for Imposing Lawyer Sanctions**:

A.    5.14   Admonishment is appropriate when a lawyer engages in any other conduct that reflects adversely on the lawyer's fitness to practice law.

5

B.    6.21   Disbarment is appropriate when a lawyer knowingly violates a court order or rule with the intent to obtain a benefit for the lawyer or another, and causes serious injury or potentially serious injury to a party or causes serious or potentially serious interference with a legal proceeding.

C.    6.22   Suspension is appropriate when a lawyer knowingly violates a court order or rule and causes injury or potential injury to a client or a party, or causes interference or potential interference with a legal proceeding.

D.    7.1    Disbarment is appropriate when a lawyer intentionally engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system.

E.    7.2    Suspension is appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.

## V.   **PERSONAL   HISTORY,   PAST   DISCIPLINARY   RECORD, AGGRAVATING FACTORS, AND MITIGATING FATORS**:

Prior to recommending discipline pursuant to Rule 3-7.6(m) (1) (C) of the Rules Regulating The Florida Bar, I considered the following:

IN THE SUPREME COURT OF FLORIDA
(Before a Referee)


THE FLORIDA BAR,

     Complainant,                    Case No.

v.                                   TFB File No's. 2003-00,597(2B)
                                               2005-00,557(2B)

MONTGOMERY BLAIR SIBLEY,

     Respondent.

_____/

## COMPLAINT

    THE FLORIDA BAR, Complainant, files this complaint against MONTGOMERY BLAIR SIBLEY, Respondent, pursuant to Rule 3-3.2(b), Rules of Discipline, and alleges:

    1.    Respondent is, and at all times mentioned in the complaint was, a member of The Florida Bar, admitted on December 7, 1987, whose birth date is October 14, 1956, and who is subject to the jurisdiction of the Supreme Court of Florida.

### COUNT I
### TFB FILE NO. 2003-00,597(2B)

    Complainant, The Florida Bar, realleges the facts set forth in paragraph 1, above, and further alleges the following facts:

**PUBLIC RECORD**

2.     On November 3, 2005, the Second Judicial Circuit Grievance Committee "B" found probable cause to file this complaint pursuant to Rule 3-7.4, of the Rules Regulating The Florida Bar, and this complaint has been approved by the Chair of that committee.

3.     On November 22, 2002 The Florida Bar was notified by the Honorable Maxine Cohen Lando, Circuit Judge for the Eleventh Judicial Circuit, that she had found Respondent in contempt of a court order in the matter of <u>Sibley v. Sibley</u>, requiring him to pay child support, a violation of rule 4-8.4(h), Rules Regulating The Florida Bar, and had ordered that Respondent be incarcerated. A copy of Judge Lando's letter and order are attached hereto as Exhibit A, and incorporated by reference herein.

4.     By reason of the foregoing, Respondent violated Rules 4-8.4(h) of the Rules Regulating The Florida Bar.

**COUNT II**
**TFB FILE NO. 2005-00,557(2B)**

Complainant, The Florida Bar, realleges the facts set forth in paragraph 1, above, and further alleges the following facts:

5.     On December 1, 2005, the Second Judicial Circuit Grievance Committee "B" found probable cause to file this complaint pursuant to Rule 3-7.4, of the Rules

2

Regulating The Florida Bar, and this complaint has been approved by the Chair of that committee.

6.    On November 3, 2004, the Third District Court of Appeal filed an opinion in the matter of <u>Sibley v. Sibley</u>, 885 So. 2d 980 (Fla. 3rd DCA 2004) affirming the lower court's child support and contempt orders, and directing that Respondent was precluded from further self-representation in that court. A copy of the opinion, labeled Exhibit B, is attached hereto and incorporated by reference herein.

7.    In the aforesaid opinion the Third District Court of Appeal found that Respondent had initiated 25 self-represented appellate proceedings, 24 of which were found to be of no merit (Id. at p. 986) and had filed at least 12 federal court actions against various judges assigned to his case, the court system and his former wife (Id at p. 986, 987), all of which were dismissed, and had filed a federal action in Delaware against his former wife (Id at p. 988), which was dismissed.

8.    The Third District Court of Appeal also found, in said opinion, that "[Respondent] has served as an unending source of vexatious and meritless litigation." (Id at p. 988), a violation of rule 4-3.1, Rules Regulating The Florida Bar (Meritorious Claims).

8.    Respondent sought review of the aforesaid opinion by this Court, which was denied at <u>Sibley v. Sibley</u>, 901 So. 2d 120 (Fla. 2005).

3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the original of the foregoing Complaint regarding TFB File No's. 2003-00,597(2B) and 2005-00,557(2B), has been furnished by U.S. Mail to The Honorable Thomas D. Hall, Clerk, Supreme Court of Florida, 500 South Duval Street, Tallahassee, Florida 32399-1927, and that a true and correct copy of the complaint has been forwarded by certified mail #7005 1160 0003 8805 0644, return receipt requested, to Montgomery Blair Sibley, Respondent, whose record bar address is 50 West Montgomery Avenue, Suite B-4, Rockville, MD 20850-4216, on this 12 th day of July, 2006.

_____
Kenneth Lawrence Marvin, Staff Counsel

## NOTICE OF TRIAL COUNSEL

PLEASE TAKE NOTICE that the trial counsel in this matter is Arne Vanstrum, Bar Counsel, whose address is The Florida Bar, 651 E. Jefferson Street, Tallahassee, Florida 32399-2300. Prior to the appointment of a referee in this case, respondent need not address pleadings, correspondence, etc., in this matter to anyone other than trial counsel and to Staff Counsel, The Florida Bar, 651 E. Jefferson Street, Tallahassee, Florida 32399-2300. After a referee has been appointed to this case, respondent should refer to Rule 3-7.6(5)(b) of the Rules Regulating The Florida Bar regarding service of pleadings.

5

CIRCUIT COURT
ELEVENTH JUDICIAL CIRCUIT OF FLORIDA

**RECEIVED**

DEC 0 2 2002

THE FLORIDA BAR - MIA

MAXINE COHEN LANDO
CIRCUIT JUDGE

COURTHOUSE CENTER
175 N.W. FIRST AVENUE
MIAMI, FLORIDA 33128

November 22, 2002

Arlene Sankel, Chief Staff Disciplinary Counsel
The Florida Bar
444 Brickell Avenue M-100
Miami, Florida 33131

Re: Montgomery Blair Sibley, Esquire

Dear Ms. Sankel,

    I am writing this letter to inform The Florida Bar that I have found Montgomery Blair Sibley to be in Civil Contempt and have ordered him incarcerated on this day.

    If you should need further information, please call me at 305-349-5741.

Sincerely,

Maxine Cohen Lando

Encl.

MCL/rlw



IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN
AND FOR MIAMI-DADE COUNTY,
FLORIDA

FAMILY DIVISION

CASE NO. 94-18177 FC 19

IN RE: The Marriage of:

BARBARA SIBLEY,
    Petitioner,

and

MONTGOMERY BLAIR SIBLEY,
    Respondent,

_____/

## ORDER OF CONTEMPT AND COMMITMENT TO THE MIAMI-DADE COUNTY CORRECTIONS DEPARTMENT

    This cause has come on to be heard upon Mr. Sibley's counsel's Motion for an Emergency pre-incarceration hearing. The Court has previously conducted a pre-incarceration hearing in conformance with the requirements of the law and heard extensive testimony from Mr. Sibley himself at that time. The Court granted this hearing in order to give Mr. Sibley every opportunity to either purge the Contempt or to make a showing of a change in circumstances that would persuade the Court to stay the incarceration. To that end, the Court heard argument and a proffer from Mr. Sibley's counsel. The factual proffers from Counsel, stipulated to by Barbara Sibley, show that there has been absolutely no change in Mr. Sibley's financial sitiuation. Therefor, the Court, having been advised that all stays issued by Appellate Courts have expired as to the Court's prior findings of Contempt of Court for Non-Payment of Support, hereby reaffirms the prior findings, which are attached to and incorporated in this Order.

The Court has, by those previous factual and legal findings, found, and continues to find that Mr. Sibley has wilfully refused to pay any child support in this cause. He owes, at this time, over one hundred

thousand dollars. In its previous Order finding Mr. Sibley in contempt, the Court ordered a payment

plan. Mr. Sibley has not complied with the payment plan. Mr. Sibley has not paid even one penny of

child support since he left the State of Florida. His behavior is the essence of wilful refusal to obey a

Court order. He has substantial personal assets, jointly held with his present wife, which are easily

liquidated to cash, which he has refused to use to pay even a small portion of his child support

obligation. These assets include sterling silver and art, which could be sold and have not been. The

Court notes that Mr. Sibley has retained private counsel, ordered and paid for court reporters and

transcripts, transportation, and other litigation costs, including litigation that has been termed frivolous

in Federal Court. He has not presented any alternate payment plan.

Therefor, it is Ordered and Adjudged that the Respondent, Montgomery Blair Sibley is ordered

immediately committed into the custody of the Department of Corrections of Miami-Dade County. He

is to surrender to that authority and the Department of Corrections shall maintain him in custody for an

indefinite period, or until such time as he shall pay the **purge amount** of **One Hundred Thousand**

**Dollars**, for child support due and owing.

The Court has, additionally, held a hearing on Mr. Sibley's incarceration and finds that his present

financial status is unchanged and that he continues to 1) have the ability to pay the past due child

support, and 2) that he is willfully refusing to pay his child support obligation. The Court, therefor, will

not abate the finding of Contempt, nor stay the Order for Incarceration.

The Director of the Department of Corrections is Ordered to comply with the Court's Order to hold

Mr. Sibley in custody until such time as he shall purge his contempt with the aforementioned payment

to Barbara Sibley, or her attorney.

**Done and Ordered** this 22nd day of November, 2002.

MAXINE COHEN LANDO
CIRCUIT JUDGE

STATE OF FLORIDA, COUNTY OF D. DE
I HEREBY CERTIFY that the foregoing is a true and correct copy of the
original on file in this office. _____ AD 19_____
_____ CLERK, Circuit and County Courts
By _____
Deputy Clerk

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

IN RE:  The Marriage of

BARBARA SIBLEY,
      Petitioner/Former Wife,

and

MONTGOMERY BLAIR SIBLEY,
      Respondent/Former Husband.

FAMILY DIVISION

CASE NO.:  94-18177 FC 19

FILED FOR RECORD
02 OCT 18 PM 12: 54
CLERK CIRCUIT & COUNTY COURTS
DADE COUNTY, FLA.
CIVIL #17

## AMENDMENT TO COURT ORDER DATED AUGUST 5, 2002
## AS TO PERIOD OF INCARCERATION

THIS MATTER coming on to be heard on this Court's Order dated August 5, 2002, as to date for incarceration and period of incarceration, it is thereupon

ORDERED AND ADJUDGED:

1. The *Order on Former Wife's Motion for Contempt for Failure to Pay Child Support dated January 10, 2002 and Former Wife's Amended Motion for Contempt for Failure to Pay Child Support dated April 17, 2002* entered August 5, 2002 is hereby amended as to paragraph 4 to provide the sentence for contempt shall be for an indefinite term or until MONTGOMERY BLAIR SIBLEY purges himself of the contempt.

DONE AND ORDERED in Chambers, at Miami, Miami-Dade County, Florida, this ____ day of October, 2002.

_____
CIRCUIT COURT JUDGE

Copies furnished to:
Bette Ellen Quiat, Esq., 8525 SW 92nd Street, Suite B-5, Miami, FL  33156
Montgomery Blair Sibley, 14512 Lee Road, Suite H, Chantilly, VA  20151
Dirk Lorenzen, Esq., 44 West Flagler Street, Suite 1000, Miami, FL  33130

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

IN RE:  The Marriage of

BARBARA SIBLEY,

     Petitioner/Former Wife,

and

MONTGOMERY BLAIR SIBLEY,

     Respondent/Former Husband.

FAMILY DIVISION

CASE NO.:  94-18177 FC 19



FILED
AUG 0 9 2002
HARVEY RUVIN
CLERK CIRCUIT COURT
DADE CO. FLA.

RECORDED
SEP 6 – 2002
Clerk of Circuit
& County Courts

## ORDER ON FORMER WIFE'S MOTION FOR CONTEMPT FOR FAILURE TO PAY CHILD SUPPORT DATED JANUARY 10, 2002 AND FORMER WIFE'S AMENDED MOTION FOR CONTEMPT FOR FAILURE TO PAY CHILD SUPPORT DATED APRIL 17, 2002

THIS MATTER having come on to be heard on June 4, 5, 6, and 7, 2002 and July 1,

2002 upon the Former Wife's Motion for Contempt for Failure to Pay Child Support dated

January 10, 2002 and Former Wife's Amended Motion for Contempt for Failure to Pay Child

Support dated April 17, 2002, together with other motions, the Court finds as follows:

     A.     The parties were divorced by Final Judgment of Dissolution of Marriage entered

on September 20, 1994 which incorporated the Marital Settlement Agreement of the parties

dated September 20, 1994.

     B.     Pursuant to the Marital Settlement and Final Judgment, paragraph 12, if the

minor children's primary physical residence is with the Mother, and the Father should move

out of the South Florida area so that the Husband cannot share in the day-to-day care and

20636 PG 2670

parenting of the children, the Former Husband was to pay to the Former Wife not less than the sum of $4,000.00 per month for all three (3) children (or divided into thirds one-third for each child) until the completion of their individual college educations, as child support in addition to all of the Former Husband's other obligations set forth in the Marital Settlement Agreement.

C.    The Former Husband voluntarily chose to move out of the South Florida area in May, 2000, and has not shared in the day-to-day care and parenting of the children since said date.

D.    The Former Husband has not furnished any child support to the Former Wife since May, 2000.

E.    The Former Husband is in arrears in child support in the amount of $4,000.00 a month for twenty-five (25) months during which he has not been in South Florida and the children's primary physical residence has been with the Former Wife.

F.    The Court has reviewed the Former Husband's initial Financial Affidavit filed September 20, 1994 which reflects a gross income of $4,600.00 and a net income of $3,460.00 per month. It states monthly expenses of $9,232.00 per month. The Husband has filed subsequent affidavits in these proceedings including an affidavit dated June 10, 1999 showing a net income of $2,918.00 per month, living expenses of $5,351.00 per month and a negative net worth of $121,900.00. The Former Husband's supplemental financial affidavit filed on

October 19, 1998 shows a net income of negative $1,435.00 per month, monthly expenses of $6,000.00 per month and a negative net worth of $57,400.00.

        The Former Husband testified that his present gross income was $37,500.00 annually from his employment (business owned by his father), and that his current wife's gross income was also in excess of $30,000.00. Additionally, the Former Husband continues to practice law and has taken in retainers of more than $17,000.00 so far this year. The Former Husband has not produced one check or bank statement. Instead he has produced computer generated ledger sheets allegedly from Alodus Corporation, no paycheck stubs for him or his wife, no credit card statements, no bank statements or tax returns.

        G.     The Former Husband is currently living in a home his father recently purchased and testified he is paying rent to his father of $2,500.00 per month which the Court notes, at times, has been paid by the corporation as shown on the Former Husband's Notice of Filing Documents dated June 24, 2002. He runs a company purchased by his father. The Former Husband has the use of a company credit card, for which he has refused to supply statements. The company has paid filing fees and costs in this proceeding. The company has paid rental cars for the Former Husband when he comes to Miami for hearings. His father furnishes him an apartment in Coconut Grove when he comes to Miami. His wife drives a BMW. His child, Sasha, is in private day care/school. His wife saves money for Sasha's future education.

H.     The $200,000.00 loan from his father, Harper Sibley, listed on the Former Husband's June 10, 1999 Financial Affidavit has been satisfied and no longer exists.

I.     The Former Husband claims he has given the sterling silver he received in the dissolution, which was valued at $15,900.00 according to the Memorandum of Understanding previously filed in the case, to his current wife.

J.     Despite showing deficits of $50,000.00-$100,000.00 annually to live, the Former Husband has no debt other than the court-ordered judgments arising out of litigation with his Former Wife.

K.     The Former Husband has not demonstrated any substantial change in circumstances in his income or lifestyle from the time he entered into the Marital Settlement Agreement to the present time.

L.     The Former Husband's ability to pay the child support agreed to by him at the time of the Marital Settlement Agreement and subsequently ratified and approved by him in the *Stipulation of Settlement between Barbara Sibley and Montgomery Blair Sibley* which incorporated all prior orders ratified by Court Order dated February 17, 2000 has not substantially changed and he has and has had the ability to pay said support.

WHEREFORE, IT IS ORDERED AND ADJUDGED as follows:

1.    The Former Husband, MONTGOMERY BLAIR SIBLEY, is in contempt of this Court for failure to pay child support of $4,000.00 per month for 25 months pursuant to the Final Judgment.

2.    The Former Husband owes to the Former Wife the sum of $100,000.00 as and for past due child support.

3.    The Former Husband at all times from May, 2000 had the present financial ability to pay but wilfully or intentionally failed and refused to do so and wilfully violated the Order of this Court.

4.    The Former Husband is hereby sentenced to ninety (90) days in the Dade County jail beginning January 1, 2003, unless prior to that time the Former Husband chooses to purge himself of contempt as follows:

        a.    Payment to the Former Wife of the sum of $30,000.00 on October 1, 2002, $30,000.00 on November 1, 2002 and $40,000.00 on December 1, 2002, and remaining current in his child support of $4,000.00 per month.

5.    Any Petition for Modification filed by the Former Husband is denied.

OFF. REC. 
20636 PG 2674

6.    The Former Wife is entitled to attorney's fees and costs.  The Court reserves jurisdiction as to the amount.

DONE AND ORDERED in Chambers, at Miami, Miami-Dade County, Florida, this

_5_ day of _August_ , 2002.

CIRCUIT COURT JUDGE

Copies furnished to:
Bette Ellen Quiat, Esq., 8525 SW 92nd Street, Suite B-5, Miami, FL  33156
Montgomery Blair Sibley, 14512 Lee Road, Suite H, Chantilly, VA  20151
Dirk Lorenzen, Esq., 44 West Flagler Street, Suite 1000, Miami, FL 33130



885 So.2d 980

885 So.2d 980, 29 Fla. L. Weekly D2449, 29 Fla. L. Weekly D2755

(Cite as: 885 So.2d 980)

Page 1

District Court of Appeal of Florida,
Third District.

Montgomery Blair SIBLEY, Appellant,
v.
Barbara SIBLEY, Appellee.

No. 3D03-2083.

Nov. 3, 2004.
Order Granting Rehearing in Part Dec. 8, 2004.

**Background:** Former husband, in post-dissolution proceeding, appealed from two orders of the Circuit Court, Miami-Dade County, Thomas S. Wilson, Jr., and Maxine Cohen Lando, JJ., compelling payment of attorney fees and tuition. Wife moved for sanctions.

**Holdings:** The District Court of Appeal held that:

(1) husband was precluded from relitigating award of attorney fees under res judicata doctrine;

(2) husband waived objection to attorney fee award order;

(3) husband was precluded from relitigating judge's refusal to approve statement of proceedings by res judicata doctrine; and

(4) sanctions against husband were warranted.

Affirmed and motion granted.

West Headnotes

**[1] Divorce** ⊜=287

134k287 Most Cited Cases

Former husband was precluded from contesting, on appeal, order for attorney fees awarded to wife in post-dissolution proceeding, under res judicata doctrine, even though husband asserted that application of res judicata would work manifest injustice: appellate court had previously affirmed attorney fee award, and failure of appellate court in prior appeal to issue written opinion explaining affirmance of attorney fee award was not manifest injustice.

**[2] Child Support** ⊜=539

76Ek539 Most Cited Cases

Former husband waived objection that order requiring him to reimburse children's trust for amounts paid on their behalf for school tuition was invalid as being made while motion for recusal of

judge in post-dissolution proceeding was still pending; husband attended hearing on tuition reimbursement motion and failed to object to proceedings on grounds of pending recusal motion.

**[3] Mandamus** ⊜=178

250k178 Most Cited Cases

Former husband was precluded from arguing trial court erred in refusing to approve husband's statement of proceedings for prior hearing and order regarding award of attorney fees to wife, under res judicata doctrine, in post-dissolution proceeding; husband previously filed appeal treated as petition for writ of mandamus to compel trial court to settle the statement of proceedings, which was denied. West's F.S.A. R.App.P.Rule 9.200(b)(4).

**[4] Divorce** ⊜=283

134k283 Most Cited Cases

Sanctions against former husband, who was attorney, in post-dissolution proceeding, requiring him to be represented by counsel as condition to acceptance of any future appeals, was warranted; husband had filed 25 appeals, husband prevailed in only one appeal, husband repeatedly tried to re-litigate matters previously decided without any legitimate basis to do so, and husband filed at least twelve actions in federal court against judges assigned to post-dissolution case, the court system, and his former wife.

**\*981** Montgomery Blair Sibley, in proper person.

Jay M. Levy; Bette E. Quiat, Miami, for appellee.

Before COPE, GERSTEN and GREEN, JJ.

PER CURIAM.

Montgomery Blair Sibley (the former husband) appeals two post-judgment orders entered after dissolution of marriage. Final judgment in the dissolution action was entered in 1994 and there have been numerous post-judgment proceedings since that time. In this proceeding, the former husband appeals orders compelling payment of attorney's fees and tuition. We affirm those orders.

The former wife requests an order precluding the former husband, an attorney, from representing himself in further appeals in this court. We grant the request.

I.



© 2005 Thom[son/West]    [No Claim to Orig.] U.S. Govt. Works.

885 So.2d 980                                                                                    Page 2
885 So.2d 980, 29 Fla. L. Weekly D2449, 29 Fla. L. Weekly D2755
(Cite as: 885 So.2d 980)

The former husband appeals an order entered on July 1, 2003 ("the July 1 order") which required the former husband to pay the former wife, Barbara Sibley, $33,119.70 in attorney's fees within sixty days. This order enforced earlier attorney's fee awards which had already been entered against the former husband in prior proceedings.

[1] On this appeal, the former husband argues that one of the underlying attorney's fee orders was entered in error and that the trial court erred in enforcing it. This argument is without merit.

The underlying attorney's fee order which the former husband is trying to attack was entered on March 4, 2003 ("the March 4 order"). [FN1] The former husband appealed the March 4 order to this court, arguing procedural error. This court affirmed without opinion. *Sibley v. Sibley,* 866 So.2d 1223 (Fla. 3d DCA 2003) (table), *cert. denied,* --- U.S. ----, 124 S.Ct. 2909, 159 L.Ed.2d 813 (2004). Since the former husband already appealed the March 4 order and this court already affirmed it, common sense and principles of res judicata dictate that the former husband cannot now mount a second appeal of the March 4 order.

> FN1. The order was signed on March 4 and filed on March 6, 2003. The former wife refers to it as the March 4, 2003 order and the former husband refers to it as the March 6, 2003 order. We will use the March 4, 2003 date.

*982 The former husband argues that a successive attack on the March 4 order is allowed as a result of the Florida Supreme Court's decision in *Florida Department of Transportation v. Juliano,* 801 So.2d 101 (Fla.2001). The former husband misunderstands the import of that decision. The *Juliano* case explains the law of the case doctrine, where there has been an interlocutory appeal followed by a later appeal from a final judgment. *See id.* at 106.

The *Juliano* decision does not apply here. The March 4 order was a final order awarding attorney's fees and it was appealed as a final order. The March 4 order is res judicata.

This court has explained that res judicata applies where, as here, there have been multiple final orders in post-dissolution proceedings.

> [I]t does not matter that the issue-preclusive effect of the earlier adjudication is asserted later in the

same case, rather than in separate, subsequent litigation. Probably because res judicata principles in general apply only to final, appealable determinations, see 33 Fla. Jur.2d Judgments & Decrees § 173 (1994), and successive final judgments in the same case are at least unusual, see *Del Castillo v. Ralor Pharmacy, Inc.,* 512 So.2d 315 (Fla. 3d DCA 1987), it is true that the principle is often broadly and imprecisely stated as applying in subsequent "suits" or "actions." See 32 Fla. Jur.2d Judgments and Decrees § 140. Nevertheless, when there is indeed a final earlier adjudication, its "effect ... as res judicata is not confined in its operation to subsequent independent proceedings, but also applies to all collateral proceedings in the same action."

*Utterback v. Starkey,* 669 So.2d 304, 305 (Fla. 3d DCA 1996) (footnotes and citations omitted).

The former husband argues that it would work a manifest injustice for this court to enforce the March 4 order. The Florida Supreme Court "has long recognized that *res judicata* will not be invoked where it would defeat the ends of justice." *State v. McBride,* 848 So.2d 287, 291 (Fla.2003) (citations omitted).

The former husband argues that it would be a manifest injustice to enforce the March 4 order because the prior panel which affirmed the March 4 order did not write an opinion explaining the panel's reasoning. In the former husband's view, the prior panel was mistaken and should have written an opinion to explain the ruling. This is not a legally sufficient showing of manifest injustice. The district courts of appeal are allowed to issue affirmances without opinion. *See R.J. Reynolds Tobacco Co. v. Kenyon,* 882 So.2d 986 (Fla.2004).

The former husband argues that the claimed procedural errors in the entry of the March 4 order render the March 4 order void. The former husband moved for relief from judgment under Florida Rule of Civil Procedure 1.540, with respect to the March 4 order and relief was denied by the successor judge, Judge Wilson. That order is one of the orders on appeal herein. However, the former husband has not demonstrated any error in the order denying Rule 1.540 relief.

II.

The former husband next appeals a July 17, 2003 order compelling him to reimburse tuition expenses for two of the parties' children.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

885 So.2d 980                                                                                        Page 3
885 So.2d 980, 29 Fla. L. Weekly D2449, 29 Fla. L. Weekly D2755
(Cite as: 885 So.2d 980)

Under the parties' marital settlement agreement, the former husband is responsible for payment of educational expenses through college. *See Sibley v. Sibley*, 816 So.2d 136 (Fla. 3d DCA 2002).

The children are also beneficiaries of trusts set up for their benefit. A guardian ad litem currently serves as the trustee of those trusts. When the former husband *983 has failed to pay tuition, the trusts have made those payments. However, where that has happened, the trustee has requested that the trusts be reimbursed. [FN2]

> FN2. In requesting reimbursement, the guardian ad litem (as trustee) reasons that where the former husband has undertaken responsibility to pay the educational expenses, the children's trusts should not be diminished for that purpose.

In February 2003 the former wife filed a motion entitled "Emergency Motion to Permit Payment of Deposit for Minor Child, Montgomery Blair Sibley, Jr., at Palmer Trinity [School] and Summer School Tuition for Margaret Harper Sibley and Emergency Motion for Contempt for Failure to Pay Life Insurance Premium" ("the Emergency Motion").

After conducting hearings on March 10 and April 7, 2003, the trial court granted the tuition-related requests. The trustee was authorized to pay the tuition amounts. That part of the order is not challenged on this appeal.

The July 17 order also required former husband to reimburse two of the trusts, in the amounts of $18,130 and $7,207.50, respectively.

The former husband argues that the trial court should not have heard the motion because at that time of the hearing the former husband's seventh motion to disqualify the trial judge was pending.

[2] We reject the former husband's argument, as the point has been waived. The former husband correctly argues that when a motion for disqualification or recusal is pending, it is the court's duty to rule on that motion before ruling on anything else. *See Fuster-Escalona v. Wisotsky*, 781 So.2d 1063 (Fla.2000). Further, it is not necessary for the movant to request a hearing. *See id.*

However, disqualification motions cannot be used for "gotcha" litigation tactics. *See Salcedo v.*

*Asociacion Cubana, Inc.*, 368 So.2d 1337, 1339 (Fla. 3d DCA 1979). In this case, the former husband and his counsel personally attended the hearing on the Emergency Motion. Nowhere in the transcript did they object that the hearing could not proceed until the court ruled on the pending motion for disqualification.

A party cannot go to a hearing knowing that he has filed a motion for disqualification, make no mention of the pending motion, participate in the hearing, and then after receiving an unfavorable ruling, argue that the court must start over because there was a pending motion for disqualification.

"The well-settled proposition is that the law 'does not favor the substitution of a Judge or Justice in a cause after decision which essentially carries a benefit to the successful party.' " *Lawson v. Longo*, 547 So.2d 1279, 1281 (Fla. 3d DCA 1989) (quoting *Ball v. Yates*, 158 Fla. 521, 29 So.2d 729, 735 (1946)). In *Lawson*

> the seller waited, having knowledge of the alleged ground for recusal from the second day of trial, until well after final judgment, which was adverse to him. By doing nothing to affirmatively promote or protect the issue of the possible recusal, the seller can be said to have sat on his rocking chair, watching the trial meander by. It is now too late and he has shown no good cause for delay.

*Lawson*, 547 So.2d at 1281; *see also Fischer v. Knuck*, 497 So.2d 240, 243 (Fla.1986) ("A motion for recusal is considered untimely when delayed until after the moving party has suffered an adverse ruling unless good cause for the delay is shown.")

The former husband relies on *Fuster-Escalona v. Wisotsky*, 781 So.2d 1063 (Fla.2000), but that case is not on point. In *Fuster-Escalona* there was never a hearing on the motion for disqualification. That case addressed how to treat a disqualification motion for purposes of the *984 rule regarding dismissal for lack of prosecution. *Id.* at 1064-65. It did not involve a situation like the one now before us, where a party participated in a hearing without objecting that there was a pending disqualification motion.

The former husband relies on the thirty-day rule established by *Tableau Fine Art Group, Inc. v. Jacoboni*, 853 So.2d 299 (Fla.2003), but reliance on that case is misplaced. In *Tableau* the Florida Supreme Court announced that a motion for disqualification must be ruled on by a trial court within thirty days. *Id.* at 303. If there is no ruling within thirty days, then disqualification is automatic.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

885 So.2d 980
885 So.2d 980, 29 Fla. L. Weekly D2449, 29 Fla. L. Weekly D2755
**(Cite as: 885 So.2d 980)**

Page 4

*See id.* at 301. The former husband argues that his seventh motion for disqualification was pending for more than thirty days and therefore Judge Lando should have been disqualified. However, the thirty-day rule of *Tableau* is prospective only, and came into effect only for motions for disqualification filed on or after August 20, 2003. *See City of Hollywood v. Witt, 868 So.2d 1214, 1218 n. 6 (Fla. 4th DCA 2004).* The seventh motion for disqualification had been filed prior to that date. Thus, the thirty-day rule is inapplicable to the former husband's seventh motion for disqualification. [FN3]

> FN3. For the same reason, the thirty-day rule does not apply to the former husband's subsequent motion to disqualify Judge Lando filed June 12, 2003. Further, even if that were not so, we would reject the former husband's argument on authority of *Fischer v. Knuck, 497 So.2d 240 (Fla.1986).* The *Fischer* decision states, "When a judge has heard the testimony and arguments and rendered an oral ruling in a proceeding, the judge retains the authority to perform the ministerial act of reducing that ruling to writing." *497 So.2d at 243* (citations omitted). The July 17 order accurately reflects the oral ruling at the April 7 hearing.

### III.

The former husband next argues that the July 17 order erroneously holds him in contempt when no motion for contempt was made. The former husband is incorrect. He was not held in contempt.

The former wife filed the Emergency Motion described previously. The court authorized (a) the guardian ad litem, as trustee, to pay the educational expenses for the two children; (b) ordered the former husband to reimburse the two trusts $18,130 and $7,207.50, respectively; and (c) reserved jurisdiction on the issues of contempt and attorney's fees for a subsequent hearing.

The reservation of jurisdiction on the issue of contempt apparently refers to the former wife's second request in her motion, which was never reached by the trial court: her request to hold the former husband in contempt for failure to pay a life insurance premium. [FN4]

> FN4. There is a scrivener's error in the title of the July 17 order. The order states that it is an "Order Granting Former Wife's Ore

Tenus and Emergency Motion for Contempt for Failure to Pay Educational Expenses ...." As the motion did not request the remedy of contempt for failure to pay educational expenses, the title of the order is incorrect to that extent. The body of the order, however, is correct and accurately reflects the trial court's ruling. The former husband may request that the trial court correct the title of the order.

The former husband complains that he was not provided a copy of the proposed order prior to its entry. Assuming that is so, that is not a basis for reversal. This order was preceded by at least two similar orders directing the former husband to reimburse educational expenses for earlier time periods. It was clear from the court's remarks at the April 7 hearing that the court intended to pattern the July 17 order after the orders entered previously, and the court did so.

### IV.

[3] The former husband argues that the trial court erred by refusing to approve *985 a statement of proceedings under Florida Rule of Appellate Procedure 9.200(b)(4). During the pendency of this appeal, the former husband prepared a proposed statement of the proceedings for the hearing which took place on August 27, 2002. This is the hearing which resulted in the order of March 4, 2003 awarding attorney's fees to the former wife. The guardian ad litem objected to the proposed statement of proceedings.

The trial court declined to approve the statement of proceedings. The former husband moved to compel Judge Lando (who conducted the August 27, 2002 hearing) to settle the statement of proceedings. *See Fla. R.App. P. 9.200(b)(4).* This court treated the former husband's motion to compel as a petition for writ of mandamus and, after receiving a response, denied it. The former husband has renewed the point in his brief.

As explained earlier in this opinion, the March 4, 2003 order has become final and is not subject to collateral attack in this appeal. The time to have submitted a statement of proceedings for the August 27, 2002 hearing would have been in connection with the earlier appeal of the March 4, 2003 order, not the present appeal.

### V.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

885 So.2d 980                                                                                                     Page 5
885 So.2d 980, 29 Fla. L. Weekly D2449, 29 Fla. L. Weekly D2755
(Cite as: 885 So.2d 980)

The former wife has filed a Motion for Sanctions in which she seeks to preclude the husband from any further self-representation in this court without being represented by counsel. The former wife contends that the husbands appeals have repeatedly been shown to be without merit and have constituted an abuse of the legal process. Upon consideration of the motion, the former husband's response filed January 5, 2004, and after review of this courts files, we agree. [FN5]

> FN5. The former wife requested oral argument of the motion and we granted the request.

The Florida Supreme Court has said:
> Abuse of the legal system is a serious matter, one that requires this Court to exercise its inherent authority to prevent. As we held in *Rivera v. State,* 728 So.2d 1165, 1166 (Fla.1998): "This Court has a responsibility to ensure every citizen's access to courts. To further that end, this Court has prevented abusive litigants from continuously filing frivolous petitions, thus enabling the Court to devote its finite resources to those who have not abused the system."

Although rare, we have not hesitated to sanction petitioners who abuse the legal process by requiring them to be represented by counsel in future actions. In *Jackson v. Florida Department of Corrections,* 790 So.2d 398 (Fla.2001), the sanction of requiring a member of The Florida Bar to sign all of petitioner's filings with this Court and dismissing all other pending cases was imposed on a litigious inmate who repeatedly filed frivolous lawsuits that disrupted the Court's proceedings. In *Martin v. State,* 747 So.2d 386, 389 (Fla.2000), the sanction was imposed against a petitioner who, like Lussy, repeatedly filed lawsuits that included personal attacks on judges, were "abusive," "malicious," "insulting," and demeaning to the judiciary. In *Attwood v. Singletary,* 661 So.2d 1216 (Fla.1995), the petitioner was sanctioned for filing numerous frivolous petitions, including one that was filed shortly after the Court's order to show cause was issued.

Like the individual in *Attwood,* Lussy has abused the processes of this Court with his constant filings. Accordingly, a limitation on Lussy's ability to file would further the constitutional right of access because it would permit this Court to devote its finite resources to the consideration*986 of legitimate claims filed by others. *See generally In re McDonald,* 489 U.S. 180, 184, 109 S.Ct. 993,

103 L.Ed.2d 158 (1989) (finding that "[e]very paper filed with the Clerk of this Court, no matter how repetitious or frivolous, requires some portion of the institution's limited resources").
*Lussy v. Fourth District Court of Appeal,* 828 So.2d 1026, 1027 (Fla.2002); *see Slizyk v. Smilack,* 734 So.2d 1166 (Fla. 5th DCA 1999); *Platel v. Maguire, Voorhis & Wells, P.A.,* 436 So.2d 303 (Fla. 5th DCA 1983); *Shotkin v. Cohen,* 163 So.2d 330 (Fla. 3d DCA 1964); *see also Safir v. United States Lines, Inc.,* 792 F.2d 19 (2d Cir.1986).

In *Safir* the court stated:
> [I]n determining whether or not to restrict a litigant's future access to the courts, [a court] should consider the following factors: (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g. does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties. 792 F.2d at 24.

The fact that the former husband is an attorney does not insulate him from this analysis. On a proper showing, an attorney may be barred from self-representation. *See Slizyk,* 734 So.2d at 1167.

[4] The parties were divorced in 1994. Several years later, post judgment disputes arose, leading to litigation of increasing intensity. The former husband was eventually incarcerated for civil contempt for failing to pay child support. *See Sibley v. Sibley,* 833 So.2d 847 (Fla. 3d DCA 2002), *review denied,* 854 So.2d 660 (Fla.2003), *cert. denied,* 124 S.Ct. 1074, 124 S.Ct. 1074, 157 L.Ed.2d 895 (2004). In correspondence between the former husband and the former wife, the former husband stated, "And if you want to attempt to squeeze me until I am dry, we will litigate until I am disbarred and bankrupt if necessary for you leave me no other choice."

The former husband, an attorney, has initiated twenty-five appellate proceedings in this court in which he has represented himself, and has filed two more in which he was represented by counsel. These are listed in the Appendix to this opinion. The former husband prevailed in an early appeal to this court. *See Sibley v. Sibley,* 710 So.2d 1017 (Fla. 3d

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

885 So.2d 980
885 So.2d 980, 29 Fla. L. Weekly D2449, 29 Fla. L. Weekly D2755
(Cite as: 885 So.2d 980)

Page 6

DCA 1998). However, the former husband's subsequent pro se proceedings in this court have been found to have no merit. As is shown by this appeal, the former husband has repeatedly tried to re-litigate matters decided in earlier proceedings, without any legitimate basis to do so.

In addition, the former husband has filed at least twelve actions in federal court against judges who have been assigned to his cases, the court system, and the former wife. In *Sibley v. Wilson,* No. 04-21000-CIV-MORENO, the federal court catalogued the former husband's federal litigation history as follows:

The Plaintiff's divorce case from ex-wife Barbara Sibley ... has been ongoing since 1994. The case appears to have been bitter, as evidenced by Plaintiff's numerous filings of separate actions related to issues in the divorce proceeding, including:

**987 1. *Sibley v. Judge Maxine Cohen Lando*
United States District Court, Southern District of Florida
Case No. 01-2940-CIV-UNGARO-BENAGES
Summary: allegations of constitutional violations by judge
Outcome: dismissed on basis of *Younger* abstention [*aff'd,* 37 Fed. Appx. 979 (11th Cir.2002) ].

2. *Sibley v. Judges David Gersten, Juan Ramirez, and Joseph Nesbitt*
United States District Court, Southern District of Florida
Case No. 00-3665-CIV-MORENO
Summary: allegations of constitutional violations by judges
Outcome: dismissed on basis of judicial immunity, lack of subject-matter jurisdiction [*aff'd,* 252 F.3d 443 (11th Cir.), *cert. denied,* 534 U.S. 827, 122 S.Ct. 67, 151 L.Ed.2d 34 (2001) ].

3. *Sibley v. Mark Martinez*
United States District Court, Southern District of Florida
Case No. 02-22931-CIV-HIGHSMITH
Summary: allegations of constitutional violations by Clerk's filing process
Outcome: dismissed for lack of constitutional violation.

4. *Sibley v. Judges Alan Schwartz, David Gersten, Mario Goderich, Gerald Cope, Robert Shevin, Maxine Cohen Lando, Victoria Platzer, and Barbara Sibley*
United States District Court, Southern District of Florida
Case No. 01-2746-CIV-KING
Summary: allegations of constitutional violations

by judges
Outcome: dismissed on basis of *Younger* abstention, lack of subject-matter jurisdiction. Rule 11 sanctions imposed against Plaintiff [*aff'd,* 45 Fed. Appx. 878 (11th Cir.2002) ].

5. *Sibley v. Sibley*
United States District Court, Southern District of Florida
Case No. 01-2770-CIV-HUCK
Summary: allegations of interference with parent-child relationship by ex-wife
Outcome: dismissed on basis of lack of subject-matter jurisdiction [*aff'd,* 34 Fed. Appx. 969 (11th Cir.2002) ].

6. *Sibley v. Sibley*
United States District Court, Southern District of Florida
Case No. 01-1349-CIV-GOLD
Summary: removal of divorce action from Judge Lando's court
Outcome: remanded on basis of lack of subject-matter jurisdiction.

7. *Sibley v. Spears*
United States District Court, Southern District of Florida
Case No. 02-22106-CIV-JORDAN
Summary: petition for habeas corpus regarding contempt orders
Outcome: dismissed for lack of subject-matter jurisdiction.

8. *Sibley v. Judge Maxine Cohen Lando*
United States District Court, Southern District of Florida
Case No. 03-20942-CIV-HUCK
Summary: allegations of violations of right of access to the courts
Outcome: dismissed on basis of *Rooker-Feldman* and *Younger* abstentions [*aff'd,* 99 Fed. Appx. 886 (11th Cir.2004) ].

9. *Sibley v. Florida Supreme Court, Harry Lee Anstead, Third District Court of Appeal, and Eleventh Judicial Circuit Court of Dade County*
**988 United States District Court, Southern District of Florida
Case No. 03-21199-CIV-LENARD
Summary: allegations of equal protection violations in decisions by Florida courts
Outcome: dismissed *sua sponte* for lack of subject-matter jurisdiction.

10. *Sibley v. Maxine Cohen Lando*
United States District Court, Southern District of Florida
Case No. 03-21885-CIV-HUCK
Summary: allegations of equal protection violations in divorce proceedings

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Outcome: dismissed on basis of *Rooker-Feldman* and *Younger* abstentions [*aff'd*, 97 Fed. Appx. 907 (11th Cir.), *cert. denied*, --- U.S. ----, 124 S.Ct. 2885, 159 L.Ed.2d 779 (2004) ].

The Plaintiff has also filed a lawsuit against his wife in federal court in Delaware which was dismissed for lack of subject matter jurisdiction (Case No. 8:00-cv-02997-JFM), and has filed a number of appeals and/or petitions before Florida state courts as well.

*Sibley v. Wilson*, No. 04-21000-CIV-MORENO, slip op. at 2-3 (S.D.Fla. July 7, 2004).

In dismissing *Sibley v. Wilson*, Judge Moreno said that it is "the court's recognized right and duty, in both Federal and Florida state courts, to protect their jurisdiction from vexatious litigants and abuse of the judicial system." *Id.* at 6 (citations omitted). We agree.

The former husband has served as an unending source of vexatious and meritless litigation. This has caused needless consumption of resources by the court system and needless expense to the former wife. Awards of attorney's fees have not served as a deterrent, as the former husband has not paid them.

We conclude that the standards of *Lussy* are met. We have considered the criteria set forth in the *Safir* decision and conclude that those are met as well. We therefore prohibit the former husband from further self-representation in this court.

We direct the clerk of this court to reject any further filings in this court on the former husband's behalf unless signed by a member of the Florida Bar (other than the former husband). Any other cases that are pending in this court in which the former husband is representing himself will be dismissed unless a notice of appearance signed by a member in good standing of the Florida Bar (other than the former husband) is filed in each case within thirty days of this opinion becoming final. *See Lussy, 828 So.2d at 1028.*

### VI.

For the stated reasons, the orders now under review are affirmed. The former wife's motion for sanctions is granted. The former husband is precluded from further self-representation in this court.

Affirmed; sanctions granted.

### *APPENDIX*
(*Sibley v. Sibley* Case No. 3D03-2083)

A. Completed proceedings in which the former husband has represented himself:

1) *Sibley v. Sibley*, 866 So.2d 1223 (Fla. 3d DCA 2003) *cert. denied*, --- U.S. ----, 124 S.Ct. 2909, 159 L.Ed.2d 813 (2004);

2) *Sibley v. Sibley*, No. 03-1392 (Fla. 3d DCA Aug. 6, 2003);

3) *Law Offices of Rodriguez & Sibley v. Sibley*, No. 03-3090 (Fla. 3d DCA Dec. 12, 2003);

4) *Sibley v. Sibley*, 835 So.2d 1140 (Fla. 3d DCA 2002) (01-3496);

5) *Sibley v. Sibley*, 833 So.2d 143 (Fla. 3d DCA 2002), *reh'g denied*, 835 So.2d 1140(Fla. 3d DCA 2002);

*989 6) *Sibley v. Sibley*, 831 So.2d 193 (Fla. 3d DCA 2002) (02-2764);

7) *Sibley v. Sibley*, 831 So.2d 193 (Fla. 3d DCA 2002) (02-2190), *reh'g denied*, 835 So.2d 1141 (Fla. 3d DCA 2002);

8) *Sibley v. Sibley*, 831 So.2d 192 (Fla. 3d DCA 2002) (02-412);

9) *Sibley v. Sibley*, 823 So.2d 785 (Fla. 3d DCA 2002);

10) *Sibley v. Sibley*, 816 So.2d 136 (Fla. 3d DCA 2002);

11) *Sibley v. Sibley*, 815 So.2d 673 (Fla. 3d DCA 2002), *rev. denied*, 833 So.2d 774 (Fla.2002);

12) *Sibley v. Sibley*, 814 So.2d 1054 (Fla. 3d DCA 2002);

13) *Sibley v. Sibley*, 803 So.2d 738 (Fla. 3d DCA 2001);

14) *Sibley v. Sibley*, 795 So.2d 71 (Fla. 3d DCA 2001);

15) *Sibley v. Sibley*, 793 So.2d 959 (Fla. 3d DCA 2001);

16) *Sibley v. Sibley*, 791 So.2d 481 (Fla. 3d DCA 2001);

17) *Sibley v. Sibley*, 771 So.2d 1175 (Fla. 3d DCA 2000);

18) *Sibley v. Sibley*, 751 So.2d 586 (Fla. 3d DCA 2000);

19) *Sibley v. Sibley*, 733 So.2d 529 (Fla. 3d DCA 1999);

20) *Sibley v. Sibley*, 732 So.2d 1079 (Fla. 3d DCA 1999);

21) *Sibley v. Sibley*, 725 So.2d 1273 (Fla. 3d DCA 1999);

22) *Sibley v. Sibley*, 710 So.2d 1017 (Fla. 3d DCA 1998).

B. Pending appellate proceedings in which the former husband represents himself:

23) *Sibley v. Sibley*, Case No. 3D04-294;

24) *Sibley v. Sibley*, Consolidated Case No. 3D04-

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

885 So.2d 980                                                                                                                      Page 8
885 So.2d 980, 29 Fla. L. Weekly D2449, 29 Fla. L. Weekly D2755
(Cite as: 885 So.2d 980)

1260/3D04-803;
25) *Sibley v. Sibley*, Case No. 3D04-1466.

C. Completed appellate proceedings in which the
former husband was represented by counsel:
26) *Sibley v. Spears*, 837 So.2d 988 (Fla. 3d DCA
2002) *cert. denied*, 540 U.S. 1016, 124 S.Ct. 567,
157 L.Ed.2d 429 (2003);
27) *Sibley v. Sibley*, 833 So.2d 847 (Fla. 3d DCA
2002), *review dismissed*, 854 So.2d 660(Fla.2003),
*cert. denied*, --- U.S. ----, 124 S.Ct. 2909, 159
L.Ed.2d 813 (2004).

Before COPE, GERSTEN and GREEN, JJ.

*On Motion for Rehearing*

PER CURIAM.

We grant the motion for rehearing in one respect,
and deny the remainder of the motion.

The former husband argues that under the terms of
this court's opinion dated November 3, he is
precluded from filing a pro se motion to invoke the
discretionary review jurisdiction of the Florida
Supreme Court. That is so because this court's
opinion directs "the clerk of this court to reject any
further filings in this court on the former husband's
behalf unless signed by a member of the Florida Bar
(other than the former husband)." Opinion at 988.

This court has permitted the former husband to file a
pro se motion for rehearing and rehearing en banc in
this case. Consistent with that procedure, we modify
our opinion of November 3, 2004 to permit the filing
of a pro se notice to invoke discretionary jurisdiction
of the Florida Supreme Court, should the former
husband choose to do so.

The former husband maintains that this court should
not have quoted his correspondence to his former
wife, arguing that the quoted correspondence is not in
the record of this appeal. That point is without *990
merit. We clearly stated in our opinion of November
3 that for purposes of part V of the opinion, this court
reviewed its files in all of the former husband's prior
appellate proceedings. The quoted letter is found in
*Sibley v. Sibley*, No. 3D02-3171, 833 So.2d 847 (Fla.
3d DCA 2002), Appendix to Appellee's Answer
Brief.

We deny rehearing on the remaining points without
further discussion.

Rehearing granted in part, denied in part.

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# MONTGOMERY BLAIR SIBLEY, CHARTERED

50 WEST MONTGOMERY AVENUE
SUITE B-4
ROCKVILLE, MARYLAND 20850

| | |
|---|---|
| MONTGOMERY BLAIR SIBLEY | ADMITTED TO PRACTICE: |
| 301-251-5200 | FLORIDA |
| 202-478-0371 (E-FAX) | NEW YORK |
| SIBLEY@CIVILFORFEITURE.COM | DISTRICT OF COLUMBIA |

November 13, 2006

Via USPS Delivery Confirmation #03041560000314755723
Director, Torts Branch
Civil Division
United States Department of Justice
Washington, D.C. 20530

      Re:    Claim of Jeane Palfrey against Troy A. Burrus, Special Agent, U.S.
              Internal Revenue Service under the Federal Tort Claim Act

Greetings:

      I represent Jeane Palfrey and make the following claim on her behalf as authorized by her in her letter to me, a copy of which is attached hereto.

      Jeane Palfrey is a United States citizen, whose date of birth is March 18, 1956 and she is presently unmarried. The date of the incident was in or about September 2006 and is ongoing.

      The basis of her claim is that (i) her financial records were improperly accessed and (ii) her personalty was seized by use of Federal search warrants and the information received thereby was subsequently utilized against her by at least one employee of the Department of Justice: Troy A. Burrus, Special Agent, U.S. Internal Revenue Service.

      The basis for this claim is Ms. Palfrey's rights under the Right to Financial Privacy Act, the Electronic Communications Privacy Act and both constitutional and common law rights to privacy and to be free of unreasonable searches and seizures which individually and collectively were violated by Mr. Burrus as aforesaid.

      The only known witness to this claim is Troy A. Burrus. If this information is not sufficient under 28 CFR §14.4 to substantiate the claim of Ms. Palfrey, please advise me promptly.

      Ms. Palfrey claims in total Two Million ($2,000,000) in damages for the breach of her aforesaid rights.

Director, Torts Branch
Civil Division
November 13, 2006
Page 2

I certify that the amount of the claim covers only damages and injures caused by the incident describe above and am authorized by my client, Jeane Palfrey, to accept said amounts for her in full satisfaction and final settlement of this claim.

Yours,

cc:    Via USPS Delivery Confirmation #03041560000314755186
       Office of Chief Counsel
       Internal Revenue Service
       1111 Constitution Ave NW
       Washington, D.C. 20224-0002

       Via USPS Delivery Confirmation #03041560000314755747
       Jeffrey A. Taylor, U.S. Attorney
       United States Attorney's Office
       555 4th Street, NW
       Washington, D.C. 20530

       Via USPS Delivery Confirmation #03041560000314755730
       Attorney General Alberto Gonzales
       The Department of Justice
       521 12th St N.W.
       Washington, D.C. 20530-0006

       Via E-Mail
       Judith A. Kidwell
       Assistant United States Attorney
       Asset Forfeiture Unit

       Kate Connelly
       Assistant United States Attorney

## AUTHORIZATION

Deborah Jeane Palfrey, pursuant to the authority of 28 U.S.C. §1746 and under penalty of perjury states that I hereby authorize Montgomery Blair Sibley, Chartered to file suit under the Federal Tort Claim Act on my behalf against the United States Government and/or its Agents for the violation of my rights arising out of the search and seizure of my real and personal property as identified in U.S. District Court, District of Columbia, Case No.:1:06-CV-01710.

**I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.**

Date: _10 / 18 / CV_         _____
                                    Deborah Jeane Palfrey

**A FALSE STATEMENT OR CLAIM MAY SUBJECT A PERSON TO PROSECUTION UNDER 18 U.S.C. §1001 AND/OR §1621 AND IS PUNISHABLE BY A FINE AND UP TO FIVE YEARS IMPRISONMENT.**