# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 07-046 (GK)** |
| | : | |
| **v.** | : | |
| | : | |
| **DEBORAH JEANE PALFREY,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S *PRO SE* FIRST OMNIBUS MOTION AND SECOND MOTION TO BAR ASSISTANT U.S. ATTORNEYS FROM INVOLVEMENT IN THIS CASE (DKT. NOS. 106 AND 114)

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this opposition to defendant Deborah Jeane Palfrey's *pro se* first omnibus motion (Dkt. No. 106), which presents a number of arguments, as well as her second motion to bar the government attorneys from involvement in this matter (Dkt. No. 114) since that motion repeats an argument in her omnibus motion.[1]  In her motions, defendant said she filed these arguments instead of her criminal attorney because "her court-appointed counsel refuses to bring these matters to the Court's attention[.]"  See Dkt. No. 106 at 1, Dkt. No. 114 at 1.  It is understandable why defendant's experienced court-appointed attorney would not file these motions.  The arguments raised in them are not supported by controlling authority, but rather general, non-specific references to the Fifth, Sixth, Tenth and even Thirteenth Amendment to the constitution and case citations of a similar nature.  Moreover, the arguments are largely recycled ones that have

---

[1]  Although defendant's motion is denoted as *pro se*, it was prepared with the assistance of her civil attorney, Montgomery Blair Sibley.  See final page of both motions (Mr. Sibley's notice of assistance).  In this opposition, citations to the Omnibus Motion will be referenced as "Def.'s Mot." while citations to the Second Motion to Bar will be referenced as "Def's Mot. to Bar." The copy of defendant's omnibus motion that appears on ECF is only 10 pages long.  Mr. Sibley previously provided to the government a version, prior to clearance by the Court, that was 27 pages long.  It appears that ECF version simply left off the subsequent pages.  The government is operating on the assumption that it should respond to the entire 27-page pleading.

already been raised and rejected by the Court in this case.  Nevertheless, the government sets forth below its arguments in opposition to each of defendant's arguments, numbered as they are in defendant's omnibus pleading.

## Table of Contents

**A. Factual Background** ........................................................................................... 3

**B. Discussion** ........................................................................................................ 5

    1.    Motion to Expedite Consideration of Montgomery
           Blair Sibley's Notice of Appearance ...................................................... 5

    2.    Motion for Extension of Time to File New Motions ............................. 5

    3.    Motion to Dissolve the May 22, 2007 Discovery Order ....................... 6

    4.    Motions to Bar Assistant United States Attorneys Daniel Pearce Butler,
           Catherine K. Connelly, and William Rakestraw Cowden from
           Further Involvement in this Matter ....................................................... 7

           a.     Disclosure of Settlement Negotiations ...................................... 7

           b.     Local Criminal Rule 57.7 .......................................................... 8

    5.    Motion to Dismiss for Outrageous Government Conduct ..................... 9

    6.    Motion to Completely Dissolve the March 16, 2007 and
           March 22, 2007 Restraining Orders ..................................................... 12

    7.    Motion to Declare 18 U.S.C. § 3006A Unconstitutional ................... 14

    8.    Motion to Dismiss the Indictment as Violating the Tenth Amendment ............. 15

    9.    Petition to Disclose Grand Jury Material ........................................... 18

    10.    Motion to Disclose Un-Redacted Witness Statement .......................... 20

    11.    Motion for Pre-Trial Investigation Report .......................................... 22

    12.    Suppression Hearing Motions ............................................................. 23

           a.     Disclosure of Confidential Informants' Identities ................... 23

       b.      Production of the Personnel Files of All
               Law Enforcement Witnesses ................................................................ 25

       c.      *Brady* Request ....................................................................... 26

    13.     Motion to Set Pre-trial Evidentiary Hearing
           and Issue Subpoenas ........................................................................ 26

**C. Conclusion** ............................................................................................. 28

## A. <u>Factual Background</u>

1.  In June of 2004, the United States Postal Inspection Service and the Internal Revenue Service Criminal Investigation Division began an investigation into Pamela Martin and Associates. The defendant owned and operated Pamela Martin and Associates.

2.  On March 1, 2007, a federal grand jury in the District of Columbia returned an indictment against defendant charging her with numerous federal violations, including RICO, interstate transportation in aid of racketeering, and conspiracy to commit money laundering, along with related forfeiture allegations. These charges relate, as the Court is aware, to defendant's alleged operation of an interstate prostitution business, Pamela Martin and Associates, the proceeds of which were sent to defendant through the U.S. Mail.

3.  Prior to the indictment, defendant obtained court-appointed representation by the Federal Public Defender, A.J. Kramer.

4.  Thereafter, defendant filed a *pro se* motion in which she stated she had irreconcilable differences with her attorney, Mr. Kramer. In support of her position, she filed sealed *ex parte* declarations by herself and her civil attorney, Mr. Sibley.

5.  On May 7, 2007, the Court granted defendant's motion for replacement of counsel and appointed current counsel, Preston Burton. Dkt. No. 40.

6.  On August 23, 2007, defendant filed a *pro se* motion in which she stated she had irreconcilable differences with her current attorney, Mr. Burton.  Dkt. No. 93.  In support of her position, she again filed sealed *ex parte* declarations by herself and her civil attorney, Mr. Sibley. Id. at 1.  Mr. Burton has also filed under seal a motion to withdraw as counsel.  Dkt. Nos. 94 and 115.

7.  Prior to the above motions to replace Mr. Burton, as will be discussed below, the parties had agreed on a stipulated discovery order, much of the discovery was provided, and Mr. Burton filed numerous legal motions.  With one exception, all the motions have been addressed by the Court, and the majority of them were denied.

8.  On September 10, 2007, Montgomery Blair Sibley, defendant's civil attorney, filed a motion to enter an appearance to represent defendant as retained counsel.  Dkt. No. 105.  The government filed an opposition, Dkt. No. 108, and Mr. Sibley filed a reply.  Dkt. No. 112.[2]

9.  On September 19, 2007, defendant, with the assistance of Mr. Sibley, filed her First Omnibus Motion, Dkt. No. 106, and, on September 27, 2007, filed a motion to bar the Assistant U.S. Attorneys assigned to this case from further involvement in it.  Dkt. No. 114.

---

[2]  In many ways proving the points raised in the government's opposition to his notice of appearance, the language used by Mr. Sibley in his attacks in his pleading shows that he cannot comply with the rules of civility required by attorneys practicing in this District.  See, e.g., Dkt. No. 112 at 1 ("Demonstrating the intellectual vacancy which has become so common from the Department of Justice, the government's 'Opposition . . .'"); at 7 ("The government's next specious complaint . . . "); at 8 ("this argument is asinine"); and 13 ("to silence me because I don't belong to the castrated federal criminal bar . . . ").

## B. <u>Discussion</u>

1.    <u>Motion to Expedite Consideration of Montgomery Blair Sibley's Notice of Appearance</u>

Defendant has moved to expedite consideration of her civil attorney's, Mr. Sibley's, motion to enter an appearance in the criminal case.[3]  Def's Mot. at 2.  She does not state any reason why this is necessary or why the Court's previously set schedule for briefing the appropriateness of Mr. Sibley's motion is not adequate.  Accordingly, defendant's request should be denied.

2.    <u>Motion for Extension of Time to File New Motions</u>

The defendant seeks an additional three weeks within which to file motions in this matter. The government opposes such an extension.  Criminal proceedings in this matter before the Court began with the defendant's indictment in March of 2007.  Shortly before the indictment was returned, the defendant obtained representation from Federal Public Defender A.J. Kramer.  During the pendency of this case (approximately seven months), the defendant has already claimed irreconcilable differences with two highly respected criminal defense attorneys, Mr. Kramer and Mr. Burton.  There is no guarantee that, assuming *arguendo*, that Mr. Sibley is permitted to appear as the defendant's criminal attorney, he will be her final attorney in this matter.  Neither the Court, nor the government, can be expected to re-open previously decided issues or past deadlines to accommodate the defendant's whims.  Such a position does not prejudice the defendant, as her previous criminal defense attorney, Mr. Burton, raised a number of challenges to the indictment, <u>see</u>

---

[3] Defendant requested a decision by the Court by September 14, 2007, but her pleading was not filed until September 19, 2007.  Def.'s Mot. at 2.

Motion to Dismiss Indictment Due to Selective Prosecution (Dkt. No. 63), Motion to Dismiss Count One of the Indictment and its Attendant Forfeiture Allegations for Failure to Allege the Essential Elements of the Charged Offense (Dkt. No. 64), Motion to Dismiss Count Five of the Indictment and its Attendant Forfeiture Allegation for Failure to Allege the Essential Elements of the Charged Offense (Dkt. No. 65),  Motion to Dismiss Counts Two through Four of the Indictment for Failure to Allege the Essential Elements (Dkt. No. 66), Motion to Dismiss the Indictment for Unconstitutional Application of the Local Prostitution Statutes (Dkt. No. 67), and Motion for Bill of Particulars (Dkt. No. 68).  Mr. Burton also filed a Motion to Suppress Evidence Seized from Defendant's Home (Dkt. No. 85).  Furthermore, Mr. Sibley has already filed numerous *pro se* motions on behalf of defendant, so it is hard to say defendant, in consultation with Mr. Sibley, has not already had the opportunity to add to the record any potentially relevant motions.  As this Court has noted on more than one occasion, this matter is moving very slowly, and defendant's request to re-open the filing deadlines in this case (in addition to being unwarranted), will only serve to further delay the proceedings, and the resolution of this matter.

      3.      <u>Motion to Dissolve the May 22, 2007 Discovery Order</u>

Defendant moved to "vacat[e] *in toto*" the Stipulated May 22, 2007 Discovery Order (Dkt. Nos. 49 and 51).  Def.'s Mot. at 2-3.  She made a generalized claim that the Order is too ambiguous and/or broad.  <u>Id.</u> at 3.

The Stipulated Order, which was signed by the parties and filed with the Court (Dkt. No. 49), and then signed by the Court (Dkt. No. 51), has worked well since its entry by the Court.  It reached an important balance between discovery obligations and interests protected by the Privacy Act,

5 U.S.C. § 552a.  To the extent defendant believes she needs some exception to it, the proper means of accomplishing that would be to seek that specific exception, not "vacating *in toto*" the order. Accordingly, the government opposes the action sought by defendant.

4.      <u>Motions to Bar Assistant United States Attorneys Daniel Pearce Butler, Catherine K. Connelly, and William Rakestraw Cowden from Further Involvement in this Matter</u>

Defendant seeks an order barring Assistant United States Attorneys Daniel Pearce Butler, Catherine K. Connelly, and William Rakestraw Cowden based upon what she deems "outrageous conduct." Def.'s Mot. At 3.; Def.'s Mot. to Bar at 1.  These motions are based upon the prosecutors' disclosure of what defendant classifies as "privileged settlement communications for a malicious and improper purpose," <u>id.</u>, and Dkt. No. 114 at 1, and their "allegedly implicitly violating the April 12, 2007, 'gag' order of this Court and explicitly violating LCrR 57.7."  Def.'s Mot. at 3. Defendant's motions (and allegations) are completely without merit and should be denied. Furthermore, defendant has cited no authority supporting her request for such an extraordinary sanction.

a.      <u>Disclosure of Settlement Negotiations</u>

Federal Rule of Evidence 408 is an exclusionary rule.  Its title alone makes it very clear that it applies to *evidence* that a party seeks to introduce at a hearing or trial.  In fact, the final sentence of the rule itself indicates that it "does not require exclusion when the evidence is offered for another purpose [beside those excluded], such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408.  In this case, the government has made no attempt to introduce any settlement or

plea negotiations at any evidentiary proceeding. The government has not sought to offer information about plea negotiations as evidence of the defendant's guilt, or as impeachment evidence. The government's references to the "settlement offers" presented by defendant and her counsel (probably more accurately classified as attempts to blackmail the government), do not violate Rule 408.[4] In fact, as is often the case with defendant's motions, she has cited not a single case supporting her claim that (1) reference to plea negotiations in pleadings constitutes a violation of Rule 408, and (2) that the appropriate sanction for a true violation of Rule 408 (which did not occur here anyway), is the removal of the prosecutors.

Finally, it is difficult to take seriously any claim defendant makes about the privileged nature of plea and settlement negotiations, when she herself has told the press, on more than one occasion, about the content of these discussions. In fact, as recently as last week, defendant was interviewed by a local radio station, and provided information about plea discussions in this matter. See Neal Augenstein, "D.C. Madam Seeks Plea Deal," www.wtop.com/?sid=1256301&nd=25, September 26, 2007.

       b.    <u>Local Criminal Rule 57.7</u>

Defendant's allegation that the government is attempting to use the media to influence this matter is similarly meritless, and supremely hypocritical. There is no doubt that a party in this case

---

[4] Despite defendant's allegation that other defense attorneys will be unwilling to enter settlement negotiations with the United States Attorney's Office, dozens of defense attorneys have done just that during the pendency of this case, and, in fact, many have done so with the prosecutors assigned to this case. Furthermore, as recently as September 10, 2007, Mr. Sibley himself approached the government with what he deems to be a settlement offer.

has "release[d] or authorize[d] the release of information . . . in connection with pending . . . criminal litigation" and that there is a "reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice." However, that party is not the government. In fact, there is no basis for the claim that the government has released any information to the media. Indeed, it is remarkable that the defendant and her attorney are accusing the government of such behavior, when they themselves have held numerous press conferences and provided interviews and statements to virtually every possible press outlet, including network television, see http://abcnews.go.com/Blotter/2020/story?id=3141213&page=1; news radio, see Neal Augenstein, "D.C. Madam Seeks Plea Deal," www.wtop.com/?sid=1256301&nd=25, September 26, 2007; internet radio, see http://www.audible.com/madam and http://www.wsradio.com; internet bloggers, see http://radicalvixen.com/blog/interview-with-deborah-jeane-palfrey-aka-the-dc-madam/ and http://bigheaddc.com/category/interviews; the print media, see Carol Leonnig, "Ex-Client of Alleged Madam Tries to Stop ABC from Airing his Name," Wash. Post, May 3, 2007 at B2; and even provided an interview at a local restaurant, see http://www.img.tv/nathans/shows/dc_madam/.

5.    Motion to Dismiss for Outrageous Government Conduct

Defendant contends that federal agents behaved "outrageously" during a June 4, 2007 non-custodial interview of defendant's mother, Blanche Palfrey. The defendant's motion cites such seminal cases as Miranda v. Arizona, 384 U.S.436 (1966), and Brady v. Maryland, 373 U.S. 83 (1963). While both of these authorities represent landmark legal authority in their respective areas of law, none are even remotely relevant to the issue now before the Court. Despite defendant's

serious allegation, her motion offers no caselaw that is actually related to the legal issues she claims to put forth in her motion. Accordingly, the request in the motion is without merit, and should be summarily denied.

Furthermore, assuming purely for the sake of argument that Blanche Palfrey's right to an attorney was infringed, the defendant bases her demand that this case be dismissed on a right which is not hers to assert.[5] Blanche Palfrey is not a defendant, claimant, or party in any of her daughter's various legal proceedings, and defendant has no standing to seek to dismiss the pending criminal case, based on alleged violations of her mother's Sixth Amendment right to counsel. The Sixth Amendment right to counsel is a *personal* right, not one a daughter can assert on her mother's behalf. Faretta v. California, 422 U.S. 806, 837 (1975). See also United States v. LePera, 443 F.2d 810, 812 (9th Cir.), cert. denied, 404 U.S. 958 (1971) (defendant lacked standing to assert co-conspirator's constitutional privilege against self-incrimination); United States v. Sims, 845 F.2d 1564, 1568 (11th Cir. 1988) (Sixth Amendment right to counsel cannot be asserted by defendant to exclude evidence obtained in violation of co-conspirator's Sixth Amendment right to counsel because defendant's rights not violated and defendant may not benefit from alleged violation of others' rights). In similar circumstances, the Ninth Circuit rejected claims by a defendant based upon purportedly outrageous conduct by federal agents towards a co-defendant, holding that "even if we assume that [the co-defendant's] Sixth Amendment right to counsel was violated, *that right is a personal right*, and its violation as to [the co-defendant] does not give [the defendant] standing

---

[5] As discussed below, defendant's motion does not even allege facts that would show an intrusion of Blanche Palfrey's right to an attorney.

to challenge his conviction." United States v. Partin, 601 F.2d 1000, 1006 (9th Cir. 1979) (citations omitted) (emphasis added).

For such an extreme remedy as dismissal, the Supreme Court requires a showing of substantial prejudice, something entirely missing from the defendant's motion. See, e.g., United States v. Morrison, 449 U.S. 361, 365-67 (1981) (holding that dismissal of an indictment was an inappropriate remedy for an alleged Sixth Amendment violation that did not prejudice the defendant, even though the conduct of the government agents was "egregious"); id. at 365 ("[a]bsent demonstrable prejudice or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate." (footnote omitted)); Bank of Nova Scotia v. United States, 487 U.S. 250, 263 (1988), (a court has no authority to dismiss the indictment on the basis of prosecutorial misconduct absent a finding that petitioners were prejudiced by such misconduct.); cf. United States v. Payner, 447 U.S. 727, 733 (1980) (holding that district court cannot invoke its supervisory power to circumvent the Fourth Amendment standing rules by excluding evidence seized illegally and in bad faith by the government in violation of a third party's - but not the defendant's - constitutional rights).

In defendant's motion, she makes no showing of prejudice. In fact, she fails to even make a claim or prejudice. Instead, she makes inflammatory allegations apparently designed to portray her as a victim in this case. Furthermore, the allegations in the defendant's motion, even if considered in the light most favorable to the defendant, establish nothing close to outrageous conduct. It is entirely appropriate for agents to interview potential witnesses. In fact, this is a well-established, and indeed, essential, part of investigating a case. Here, the affidavit presumably

prepared by Mr. Sibley and signed by the woman he characterizes as "in the beginning stages of forgetfulness" never states that Blanche Palfrey ever informed the agents that she was represented by Mr. Sibley. At most, it claims that she told the agents she had already spoken to Mr. Sibley. Of course, the government denies the allegations made by the defendant, but even if true, they offer nothing which would justify the remedy sought by the defendant, nor do they prejudice the defendant in any manner.

6.    <u>Motion to Completely Dissolve the March 16, 2007 and March 22, 2007 Restraining Orders</u>

Defendant seeks the dissolution of the March 16, 2007 and March 22, 2007 restraining orders, claiming that they do not comply with the "evidentiary requirements" of 18 U.S.C. § 1514. This allegation is without merit. Furthermore, the initial justification for the restraining orders still exists. As such, the March 22, 2007 restraining order should remain in place.

On March 9, 2007 (the day that this Court stayed the civil forfeiture case), Mr. Sibley filed another civil lawsuit, purportedly against Palfrey's former employees. <u>See</u> <u>Palfrey v. Neble</u>, Civil Action No. 1:07-cv-0461 (GK). In the lawsuit, which Mr. Sibley apparently authored, the defendant maintains that she should be entitled to damages payments from her former employees because she now faces criminal charges as a result of these others' violations of contracts they had with her. In response to this lawsuit, the government filed an *ex parte* application for a temporary restraining order. <u>See</u> Dkt. No. 14. In the government's application, which was later unsealed, the government requested that the defendant and her agents (meaning, primarily, Mr. Sibley) be ordered to stop acting to harass Paula Neble and any others who defendant (and her agents) had identified

12

as potential witnesses in the government's prosecution of defendant. The government also requested that the Court "schedule a hearing for a Protective Order." Dkt. No. 14 at 16. On March 16, 2007, the Court issued an Order granting the government's *ex parte* application for a temporary restraining order, and scheduled a hearing for March 19, 2007. <u>See</u> Dkt. No. 12.

On March 19, 2007, the Court held a hearing on the government's application. The government's application papers were unsealed and a copy was shared with defendant's attorney, Mr. Kramer. The application papers cited to matters of public record and to published statements from the defendant and Mr. Sibley that demonstrated the basis for the government's request. In addition to its written submission, government counsel also explained, at a bench conference with Mr. Kramer, its perception of Mr. Sibley's threats to "out" and embarrass witnesses to the activities of the escort service if the government did not go away. At Mr. Kramer's request, the Court continued the hearing on the government's request for a protective order until March 22, 2007.

On March 22, 2007, with no objection from Mr. Kramer, the Court granted the government's request for a Protective Order "after determining that there were 'reasonable grounds to believe that harassment of an identified witness exists or that such an order is necessary to prevent such harassment.'" <u>See</u> Dkt. No. 17 at 1. The restraint against witness intimidation and harassment, at that time directed toward Ms. Neble, was made pursuant to 18 U.S.C. §§ 1512 and 1514. Section 1514(b)(1) requires a court to issue a protective order prohibiting harassment of a victim or witness in a Federal criminal case if the court, after a hearing, finds by a preponderance of the evidence that harassment of an identified victim or witness in a Federal criminal case exists or that such order is necessary to prevent and restrain an offense under section 1512 [of Title 18.]" <u>See</u> Dkt. No. 13. In

this case, the Court did exactly that.  A hearing was held, the judge took notice of the fact that a lawsuit had been filed against a potential witness, defense counsel indicated that the defense had *no objection* to the protective order, and the order was issued by the Court.  Furthermore, defendant's current defense attorney has neither voiced, nor filed, any objection to the restraining order.

7.    Motion to Declare 18 U.S.C. § 3006A Unconstitutional

Defendant has moved the Court, without citing any authority other than general references to the Fifth, Sixth and even Thirteenth Amendment, to find unconstitutional the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A.  Def.'s Mot. at  13-15.[6]  She claims that the funds provided by the statute are unconstitutionally insufficient.    Id.  Defendant's motion should be denied for several reasons.

First, in the present posture of the case, defendant has notified the Court of her intent to proceed with retained counsel.  Accordingly, she does not have standing to challenge the system in place for court-appointed attorneys since that is not the system under which she is now proceeding.  In other words, the constitutional validity of that system is not something that has a direct effect upon the defendant.  See Warth v. Seldin, 422 U.S. 490 (1975) (person seeking to challenge exclusionary zoning practice must show specific injury as a result of such practices; it is not enough for him to show merely that the challenged zoning makes housing too expensive for him to buy); Parker v. District of Columbia, 478 F.3d 370, 374-76 (D.C. Cir. 2007) (citizens lacked standing to

---

[6]  The arguments made by defendant here are simply a recycling of arguments previously raised by her for $500,000 to be set aside by the Court so defendant could retain private counsel and ensure an adequate investigation.  Dkt. No. 20.  The Court found the arguments in that motion to be "patently without merit."  Dkt. No. 26 at 1.

bring action where they only expressed an intention to violate the District of Columbia's gun control laws, but had suffered no injury in fact).

Second, the sufficiency of the funds provided by the CJA is a determination for the United States Congress, see 18 U.S.C. § 3006A(d)(2) (maximum amounts), not a District Court in a single case. See, e.g., United States v. Bailey, 581 F.2d 984, 988 (D.C. Cir. 1978) ("the fairness of the amount allowed is to be measured in terms of the time-rates set by the Act, and not by those that counsel might ordinarily charge"); United States v. Harper, 311 F. Supp. 1072, 1074 (D.D.C. 1970) (Bazelon, C.J.) ("the Act was not designed to provide full compensation for counsel. . . . The legislative history makes it plain that Congress did not intend to provide full compensation to counsel and that the expectation for additional compensation was reserved for 'extraordinary' cases involving 'protracted representation.'"). The authority the District Court does have to address significant litigation costs is set forth, as the Court has already recognized, in the statute itself. See 18 U.S.C. § 3006A(d)(3) (waiving maximum amounts); Dkt. No. 26 ("[i]f a substantial budget is necessary for investigation of her case, it must be requested by whatever counsel is representing her"). There is no justification, or even any reason, why the Court here could not address significant litigation costs under the statute, rather than taking the drastic and unwarranted step of declaring the statute unconstitutional.

8.    Motion to Dismiss the Indictment as Violating the Tenth Amendment

Defendant moved, again without any controlling authority, to dismiss the indictment under the Tenth Amendment. Def.'s Mot. at 15-18. Although she acknowledges that Congress has the

power to regulate commerce, see Art. I, § 8, , cl. 3 (granting to Congress the power "[t]o regulate Commerce . . . among the several states"), defendant nevertheless contends that the indictment exceeds that power in some unspecified way. Def.'s Mot. at 17-18.

In United States v. Barrow, 363 F.2d 62, 65 (3rd Cir. 1966), the court addressed and rejected a similar argument. In Barrow, a Travel Act case involving gambling offense, the court found the following:

> The [defendants] contend that the statute, as applied to the facts in this case, is unconstitutional. This contention is predicated on the premise that the gambling enterprise here in question was a local activity beyond the reach of Congressional authority. It is argued that the federal enactment constituted an encroachment upon the powers reserved to the States under the Tenth Amendment. The question raised by this argument was fully discussed by the trial judge, 212 F. Supp. 837, and we agree with his well reasoned opinion. Moreover, there are other cases in which arguments similar to the one advanced here were rejected as without merit. United States v. Zizzo, 338 F.2d 577 (7th Cir. 1964), cert. den., 381 U.S. 915 . . . ; United States v. Ryan, 213 F. Supp. 763 (D. Colo. 1963); United States v. Smith, 209 F. Supp. 907, 915-916 (E.D. Ill. 1962). We add but one comment: The Tenth Amendment does not operate as a limitation upon the powers delegated to the Congress by the Commerce Clause, art. 1, 8, cl. 3. Fernandez v. Wiener, 326 U.S. 340, 362 . . . .(1945); United States v. Darby, 312 U.S. 100, 124 . . . (1941).

Id.; see, e.g., United States v. Lookretis, 422 F.2d 647, 651 (7th Cir.), cert. denied, 398 U.S. 904 (1970) ("[t]he attack on the constitutionality of § 1952 is similarly without merit in view of the many cases upholding the statute"); United States v. Compton, 365 F.2d 1, 3 (6th Cir.), cert. denied, 385 U.S. 956 (1966) (Travel Act constitutional). See also Caminetti v. United States, 242 U.S. 470, 491 (1917) ("the authority of Congress to keep the channels of interstate commerce free from immoral and injurious uses has been frequently sustained, and is no longer open to question"); United States v. Jones, 909 F.2d 533 (D.C. Cir. 1990) (Travel Act case based on defendants'

participation in prostitution business; convictions reversed due to proof/jury instructions problems).

Furthermore, in many ways the argument defendant now makes constitutes a rehashing of arguments previously raised by defendant's court-appointed attorney in attacking the Travel Act counts, Dkt. No. 66 at 12-14, arguments which were rejected by the Court. Dkt. No. 89 at 10-20, now reported at United States v. Palfrey, 499 F. Supp. 2d 34, 41-45 (D.D.C. 2007). In response, the government incorporates the argument it made previously in its Omnibus Response to defendant's motions. Dkt. No. 77. Although defendant focuses in her current motion on Congress allegedly regulating prostitution, what is actually charged in the indictment is interstate travel in aid of racketeering referencing the local prostitution statutes, and the Travel Act violations support the other counts as well. In an earlier motion to dismiss the Travel Act counts, defendant argued that the government exceeded the letter or spirit of the Travel Act, and cited United States v. Rewis, 401 U.S. 808, 812 (1971). Dkt. No. 66 at 12-14. In relevant part, the government responded as follows:

> The language to which defendant refers in United States v. Rewis, 401 U.S. 808, 812 (1971), pertains to Justice Marshall's concern about an overly expansive reading of the Travel Act. In that case the issue was whether the interstate element had been adequately demonstrated.[7] In Rewis, however, the Court noted that "there are cases in which federal courts have correctly applied § 1952 to those individuals whose agents or employees cross state lines in furtherance of illegal activity . . . ." Id. at 813 (citations omitted). Relevant to the present case, the Court also noted that the "[l]egislative history of the Act is limited, but does reveal that § 1952 was aimed

---

[7] In Rewis, the Court held that the defendants, who admittedly ran a lottery or numbers operation near a state line, but who were not shown to have crossed state lines at any time in connection with the operation of their lottery, could not be convicted of violation of Travel Act merely because their gambling operation was frequented by out-of-state bettors. Id. at 811-12.

primarily at organized crime and, more specifically at persons who reside in one State while operating or managing illegal activities located in another." Id. at 811. In the accompanying footnote, which sets forth a portion of the testimony of the Attorney General in support of the bill, the following relevant discussion is set forth: "'The travel that would be banned is travel 'in furtherance of a business enterprise' which involves gambling, liquor, narcotics, and prostitution offenses, or extortion or bribery. Obviously, we are not trying to curtail the sporadic, casual involvement in these offenses, but rather a continuous course of conduct sufficient for it to be termed a business enterprise.'" Id. at n.6 (quoting Robert F. Kennedy, Attorney General when the Act was proposed) (emphasis added); see United States v. Auerbach, 913 F.2d 407, 411 (7th Cir. 1990).

Dkt. No. 77 at 33-34.

As discussed above, the Supreme Court and lower courts have recognized the constitutionality, under the Commerce Clause, of the Travel Act in the situation before this Court. Clearly, therefore, the indictment charges crimes clearly within the powers delegated to the United States Congress, and the Tenth Amendment is not applicable.

9.    Petition to Disclose Grand Jury Material

Defendant, in her motion, makes two requests for grand jury material. First, she requests grand jury testimony that may be covered under Brady v. Maryland, 373 U.S. 83 (1963). Def.'s Mot. at 18-19. Second, without citing any controlling authority for such, defendant "demands disclosure of the testimony, law read, explanations given and vote of the grand jury[.]" Id. at 19. For the reasons discussed below, defendant's requests should be denied.

The first request is duplicative of a discovery request made by defendant's court-appointed attorney. By correspondence dated June 29, 2007, the government responded to that request by stating the following:

> [Y]ou asked for prompt production of <u>Brady</u> and <u>Giglio</u> material.  The government is well aware of its obligation to disclose all such information required by <u>Brady</u> . . . ; we have made timely disclosure of all such information and will continue to do so, if any such new information is discovered.  With respect to disclosure required under <u>Giglio v. United States</u>, 405 U.S. 150 (1972), it is our intention to provide this information at the same time we disclose <u>Jencks</u> material, in advance of the witness testimony so that such information may be used during cross-examination.  <u>See also</u> <u>United States v. Phillips</u>, 854 F.2d 273, 276 (7th Cir. 1988).  It is our position, consistent with the law in this Circuit, that the government satisfies its discovery obligations where it provides impeachment styled information concerning its witnesses in times for defendants to make use of it.  <u>United States v. Wilson</u>, 160 F.3d 732, 742 (D.C. Cir. 1998).  If you want to discuss specific requests, please let us know.

In other words, the government is complying with its obligations under <u>Brady</u> and <u>Giglio</u>, and intends to comply with its ongoing duty to do so.[8]

Second, defendant "demands" the grand jury "testimony, law read, explanations given and the vote[.]" Def.'s Mot. at 19.  She cites no authority for her "demand" other than Fed.R.Crim.P. 6(e)(3)(E)(ii), which states a court may authorize disclosure "at the request of a defendant <u>who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury</u>." <u>Id.</u> (emphasis added).

The highlighted portion of the Rule, above, shows why defendant's demand should be denied, that is, she has made no showing, nor even attempted to do so, that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury.  A presumption of

---

[8]  Defendant cites nothing to contradict the government's position, merely citing a WTOP news radio story about what the attorney for one of defendant's alleged escorts may have told radio personnel.  Def.'s Mot. at 19.

regularity attaches to grand jury proceedings, see In re Grand Jury Proceedings, 632 F.2d 1033, 1041 (3d Cir. 1980); United States v. DeVincent, 632 F.2d 147, 154 (1st Cir. 1980); United States v. West, 549 F.2d 545, 554 (8th Cir. 1977), and the party charging an abuse of the grand jury process carries a heavy burden even to get a hearing on the allegations.  See United States v. Al Mudarris, 695 F.2d 1182, 1185 (9th Cir. 1983); In re Special April 1977 Grand Jury, 587 F.2d 889, 892 (7th Cir. 1978).  Because defendant in this case has failed – or even attempted – to carry her burden to make the predicate showing under the Rule, her motion should be denied.

       10.    Motion to Disclose Un-Redacted Witness Statement

     Despite defendant's captioning of this request as a "Motion to Meaningfully Disclose Un-Redacted Witness Statement," the majority of this section of her motion is used to make false allegations regarding the government's disclosure of Jencks material prior to the suppression hearing initially scheduled for September 7, 2007.  Although the Federal Rules provide for the discovery of all relevant statements of the government's witnesses at the time of certain motions hearings and trial so that a defendant may use such statements in further of her defense, the Federal Rules prohibit the premature and unwarranted discovery of the witness' statements.  Indeed, the Federal Rules explicitly preclude the "discovery or inspection of . . . statements made by government witnesses or prospective government witnesses except as provided in 18 U.S.C. § 3500."  Fed. R. Crim P. 16(a)(2).  In fact, the government disclosed the bulk of the Jencks materials for the suppression hearing to defendant's criminal counsel of record *the day before* the hearing.  This disclosure included seven grand jury transcripts and five Memoranda of Interviews.  Additional documents

were turned over the morning of the hearing.[9]  The government turned over the transcripts prior to the hearing, despite the fact that it was under *no obligation* to do so at that time.  Indeed, by statute, Jencks material need not be produced before the witness has testified on direct examination. 18 U.S.C. § 3500(A); Fed.R.Crim.P. 26.2(a).  In this case, as noted above, Jencks material was produced before any witness testified, and counsel of record certainly had a reasonable opportunity to review the material before the hearing was scheduled.  Thus, there was nothing untimely about this production.  Furthermore, defendant's demand that the government "be ordered to provide Rule 26.2 material seventy-two (72) hours before any suppression hearing in this matter" see Dkt. No. 106 at 20, is not supported by the caselaw.  There have been instances where defendants have urged trial courts to exercise their discretion and order the government to turn over a witness' prior statements before trial has commenced.  Federal courts of appeals have held that such orders violate the Jencks Act.  See e.g., United States v. Algie, 667 F.2d 569 (6th Cir. 1982); United States v. Spagnuolo, 515 F.2d 818 (9th Cir. 1975).

Defendant further complains about the redactions in the disclosed materials.  The government intends to call one witness at the suppression hearing:  United States Postal Inspection Service Inspector Maria Couvillon.  In addition to disclosing her grand jury transcripts, the government also turned over documents and statements that Agent Couvillon relied upon in preparing the affidavit in support of the search warrant.  The names and identifying information

---

[9]  Noticeably, defendant's criminal counsel of record did not complain about this disclosure, and indicated that he was prepared to go forward with the hearing on September 7, 2007.

about the confidential informants were redacted from these documents.  As noted below in section 12a, such protection of confidential informants is entirely appropriate.

      11.    <u>Motion for Pre-Trial Investigation Report</u>

      In her motion, defendant alleges that the United States Sentencing Guidelines ("USSG") create an anomaly that prevents her from understanding the application of the guidelines.  Def.'s Mot. at 20-21.  The example she gives of this alleged anomaly is that the RICO guidelines have a base offense level of the greater of 19 or that for the underlying racketeering activity, which defendant contends is prostitution for which she says there is not a guidelines provision.  <u>Id.</u>  She then "requests that this Court direct the Probation Department to advise as to how they would resolve this anomaly in a Pre-Sentence Report if directed for each count of the indictment."  <u>Id.</u> at 21.  There are at least two reasons defendant's motion should be denied.

      First, because the Probation Office is an arm of the Court, what the defendant is requesting is an advisory opinion from the Court as to the application of the Sentencing Guidelines.  Such advisory opinions contradict the restrictions of the Constitution, Art. III, § 2, cl. 1.  <u>See</u> <u>United Public Workers v. Mitchell</u>, 330 U.S. 75, 89 (1947) ("the federal courts established pursuant to Article III of the Constitution do not render advisory opinions").

      Second, defendant's suggested anomaly is based on a misunderstanding of the sentencing guidelines.  The second alternative in the RICO guideline is to the "offense level applicable to the underlying racketeering activity."  USSG § 2E1.1(a)(2).  The underlying racketeering activity here is the Travel Act violations.  The potential sentence for that can be found in the next section,

USSG § 2E1.2.  That section also has two alternatives for the base offense level, that is, the greater of 6 or the offense level applicable to the unlawful activity to which the travel was undertaken.  As to the latter alternative, if the underlying conduct violates a state law, "the offense level corresponding to the most analogous federal offense is to be used."  USSG § 2E1.2, App. Note 2.  Here, that would be the guideline for 18 U.S.C. § 2442(a), that is, USSG § 2G1.1, titled "Promoting a Commercial Sex Act or Prohibited Sexual Conduct with an Individual Other than a Minor."  Accordingly, there is no anomaly for which defendant needs significant clarification under the Sentencing Guidelines, and her request should be denied for that reason as well.

12.    Suppression Hearing Motions

The defendant requests three things prior to any suppression hearing in this matter: the identities of the confidential informants referenced in the search warrant affidavit, the production of the personnel files of *all* law enforcement witnesses, and that the government be "interrogated" by the Court regarding its obligations pursuant to Brady v. Maryland, 373 U.S. 83 (1963).  Each of these requests is without merit, unsupported by caselaw, and should be summarily denied.

a.    Disclosure of Confidential Informants' Identities

In Roviaro v. United States, 353 U.S. 53, 62 (1957), the Supreme Court rejected adopting an inflexible rule that the identity of an informant must be disclosed whenever its testimony may be relevant and helpful to the accused.  Rather, the government enjoys a qualified though "time-honored privilege to withhold the identity of its informants from criminal defendants."  United States v. Brodie, 871 F.2d 125, 128 (D.C. Cir. 1989).  In making the determination whether

disclosure of a witness to a defendant is necessary, the Court must balance the public's interest in law enforcement and protecting the cooperating witness's identity against the defendant's right to prepare a defense. Roviaro, supra, 353 U.S. at 62; United States v. Warren, 42 F.3d 647, 654 (D.C. Cir. 1994). A defendant bears a "heavy burden" to "establish that the identity of an informant is necessary to his defense"; this burden is not met by "mere speculation that the informer might possibly be of some assistance." United States v. Skeens, 449 F.2d 1066, 1070 (D. C. Cir.1971) (internal quotations and citation omitted). See United States v. Mangum, 100 F.3d 164, 172 (D. C. Cir.1996). In this case, the government intends to call the confidential informants as a witnesses at trial. Disclosure of their identities at this time, therefore, is not required. See, e.g., United States v. Foster, 815 F.2d 1200, 1202-03 (8th Cir. 1987) (denial of defendant's motion to disclose informant's identity proper where informant testified at trial and was subject to cross-examination). This is particularly true in light of the fact that the Court has already ordered the government to disclose to the defendant 30 days before trial the names of the unindicted co-conspirators. See Dkt. No. 89 at 36. If, at a later date, the government decides not to call an informant at trial, the government will notify the Court at the commencement of trial. Should the defendant desire under such circumstances to speak with the informant, the name of the informant, or of the attorney that represents such informant will be provided. The defendant may then request an opportunity to speak with the witness. To the extent that an informant's presence is within the control of the government, the government will make the informant available to testify at trial on behalf of the defendant. See, e.g., United States v. Pelton, 578 F.2d 701 (8th Cir. 1978).

24

        b.      <u>Production of the Personnel Files of All Law Enforcement Witnesses</u>

Pursuant to <u>Brady</u>, 373 U.S. 87, the government is required to turn over exculpatory evidence known to be contained in the personnel files of law enforcement officers who are to appear as witnesses at trial. <u>See</u> <u>United States v. Herring</u>, 83 F.3d 1120, 1121 (9th Cir. 1996). While the government is obligated to review the personnel files for exculpatory evidence, a defendant's request for such materials does not mandate that the personnel file be turned over to the defendant for the defendant's general perusal. <u>See</u> <u>United States v. Henthorn</u>, 931 F.2d 29, 31 (9th Cir. 1991); <u>United States v. Bertoli</u>, 854 F. Supp. 975, 1040 (D. N.J.), <u>aff'd in part</u>, <u>vacated in part on other grounds</u>, 40 F.3d 1384 (3d Cir. 1994) (quoting <u>Henthorn</u>). Rather, it is sufficient for counsel for the government to either (1) arrange for the custodian of the personnel file to personally review the file and notify counsel for the government about the existence of any possible exculpatory evidence, or (2) submit the personnel file to the court for an *in camera* inspection for exculpatory evidence. <u>See</u> <u>United State v. Jennings</u>, 960 F.2d 1488, 1492 (9th Cir. 1992) (upholding the Department of Justice policy regarding the review of personnel files of law enforcement officers); <u>Bertoli</u>, 854 F. Supp. at 1039-41 (motion for personnel files was properly denied prior to trial where government complied with Department of Justice's procedure). <u>See</u> <u>also</u> <u>United States v. Brooks</u>, 966 F.2d 1500, 1504-05 (D.C. Cir.1992) (review of police department files by either police department or Assistant United States Attorney was sufficient and no *in camera* review was required).

Furthermore, the law is clear that motions for production of law enforcement witness' personnel files are properly denied where there is not "even a hint that impeaching material was

contained therein." United States v. Andrus, 775 F.2d 825, 843 (7th Cir. 1985); accord, United States v. Driscoll, 970 F.2d 1472, 1482 (6th Cir. 1992); United State v. Lafayette, 983 F.2d 1102, 1106 (D.C. Cir. 1993); United States v. Pitt, 717 F.2d 1334, 1339 (11th Cir. 1983); United States v. Bertoli, 854 F. Supp at 1039-41.  In the instant case, defendant offers not a shred of evidence that any exculpatory evidence is contained in the personnel files of any of the law enforcement witnesses.   In fact, defendant dedicates only one sentence to her request for this information, and provides no caselaw to support making such a request in circumstances such as these.

        c.    *Brady* Request

As discussed in Section 9 above, the government is well aware of its obligations pursuant to Brady, and will continue to meet such obligations at the appropriate time.

        13.    Motion to Set Pre-trial Evidentiary Hearing and Issue Subpoenas

Finally, defendant requests, pursuant to Fed.R.Crim.P. 17(b), for the Court to authorize and pay for subpoenas for testimony and documents.[10]  Def.'s Mot. at 23-26.  She allegedly needs these subpoenas to prove selective and political prosecution.  Id.  Defendant's motion should be denied for several reasons, discussed below.

Fed.R.Crim.P. 17(b) provides, in relevant part, that, "[upon a defendant's *ex parte* application, the court must order that a subpoena be issued for a named witness if the defendant shows . . . the necessity of the witness's presence for an adequate defense."  In other words, "this

---

[10]  Subpoenas under this rule, titled "Defendant Unable to Pay," are normally for indigent defendants.  Since defendant is now seeking to proceed with retained counsel, the government questions whether this subsection of the rule is applicable in her case.

rule does not create an absolute right of the defendant to have a witness produced at the government's expense; rather it is within the court's discretion whether the requested witness is necessary to an adequate defense." <u>United States v. Rogers</u>, 921 F.2d 1089, 1094 (10th Cir. 1990), <u>supplemented on other grounds on rehearing</u>, 925 F.2d 1285, <u>cert.</u> <u>denied</u>, 501 U.S. 1211 (1991). In this mater, defendant, in her *pro se* pleading, has not suggested facts showing the necessity for the subpoenas she requests.

As to selective prosecution, the Court has already denied defendant's selective prosecution motion. Dkt. No. 89 at 3-7. This included defendant's motion to dismiss the indictment and for "discovery relating to the decision to prosecute her." <u>Id.</u> at 3. Furthermore, as the government discussed in its Omnibus Response to Defendant's Motions, since this is a legal issue, not a factual issue for the jury, Dkt. No. 77 at 8, the issue has been resolved. Therefore, defendant has not shown the need for subpoenas on this issue.

Second, defendant claims she needs subpoenas to prove a "political prosecution." Def.'s Mot. at 24-26. She does not, however, cite any controlling caselaw for her contention. Rather, defendant states that "[t]he jurisprudence of the United States has yet to articulate the standard to be applied in a claim of political prosecution." <u>Id.</u> at 25. Actually, what defendant calls a claim of "political prosecution" is, at most, a form of selective prosecution, that is, "the decision to prosecute may not be 'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification,' . . . including the exercise of protected statutory and constitutional rights." <u>Wyatt v. United States</u>, 470 U.S. 598, 607-08 (1985). As stated above, the Court has already

rejected defendant's selective prosecution motion, including a request for discovery. This present motion does not change that prior conclusion. Accordingly, defendant's request for subpoenas should be denied.

### C. <u>Conclusion</u>

For the foregoing reasons, the United States respectfully submits that defendant's *pro se* motions should be denied.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY
DC Bar No. 498610

/ s  / *Daniel P. Butler/Catherine K. Connelly*
_____
Daniel P. Butler
DC  Bar No. 417178
Catherine K. Connelly
Mass.  Bar No. 649430
Assistant United States Attorneys
555 4th Street, NW
(202) 353-9431, 616-3384
Washington, D.C.  20530
Daniel.Butler@usdoj.gov
Catherine.Connelly2@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Government's Opposition has been served by ECF upon counsel for the defendant, Preston Burton, as well as by electronic-mail, at mbsibley@civilforfeiture.com, on the attorney who assisted in filing the *pro se* pleading, Montgomery Blair Sibley, this __1st__ day of October, 2007.

/ s / *Daniel P. Butler/Catherine K. Connelly*
_____
Daniel P. Butler
Catherine K. Connelly
Assistant United States Attorneys