RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

2007 OCT -9  AM 11: 37

NANCY M.
MAYER-WHITTINGTON
CLERK

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

          PLAINTIFF,

VS.

DEBORAH JEANE PALFREY,

          DEFENDANT.

_____/

**CRIMINAL CASE NUMBER: 07-046-GK**

**DEFENDANT'S REPLY TO GOVERNMENT'S
OPPOSITION TO FIRST OMNIBUS MOTION
AND SECOND MOTION TO BAR ASSISTANT
UNITED STATES ATTORNEYS**

RECEIVED
FILED
OCT 9 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

FILED
OCT 1 0 2007
NANCY MAYER WHITTINGTON, CLERK

Defendant Deborah Jeane Palfrey, appearing *pro se* as her court-appointed counsel refuses to bring these matters to the Court's attention, replies to the Government's Opposition to First Omnibus Motion and Second Motion to Bar Assistant United States Attorneys and states as follows:

1. **MOTION TO EXPEDITE CONSIDERATION OF MONTGOMERY BLAIR SIBLEY'S LCRR 44.5(A) NOTICE OF APPEARANCE**

    By invoking the judicial equivalent of a pocket-veto, the Court has rendered this motion now moot without determining its merits. Such behavior *de facto* if not *de jure* trespasses on Defendant's speedy trial rights.

2. **MOTION FOR EXTENSION OF TIME TO FILE NEW MOTIONS**

    What the government fails to acknowledge is that the reason Defendant is requesting an additional three weeks to file motions in this matter is that her prior and present legal counsel failed to raise significant issues to this Court. Indeed, while this Court has not wanted to tarnish the reputations of those counsel by addressing the ineffective assistance of counsel claims of Defendant, such claims must be addressed if this Court is intending to saddle Defendant with the decisions made by her present and prior counsel. Moreover, the government fails to address the legitimate need of

1

*Leave to file granted, Judge Gladys Kessler/cl*
*10/10/07*

Defendant to permit (i) review of the discovery material heretofore withheld from review by Mr.

Sibley by the "Stipulated" May 22nd, [D.E. #49] Discovery Order and (ii) to present motions which

prior and present counsel refused to file. Otherwise, pursuant to Rule 12(e), Defendant may have

been deemed to have waived a Rule 12(b)(3) defense, objection, or request not raised by the past-

deadline the court set under Rule 12(c).

3.    **MOTION TO DISSOLVE THE "STIPULATED" MAY 22ND, [D.E. #49] DISCOVERY ORDER**

The government maintains that "The Stipulated Order, which was signed by the parties and

filed with the Court (Dkt. No. 49), and then signed by the Court (Dkt. No. 51), has worked well since

its entry by the Court." (Gov. Opposition, p. 6). This assertion fails to recognized that (i) due to

the ineffective assistance of counsel claims which includes the fact that Defendant was <u>never</u>

apprized of the limitations of the "Stipulated" May 22nd, [D.E. #49] Discovery Order by her counsel

and (ii) the

entire one-way towards the government value of the Order, Defendant is suffering prejudice in the

preparation of her case. In particular, she is unable to solicit "crowd sharing" help in identifying

witnesses, she is deprived of the seasoned counsel of her attorney of choice and she is in a contempt

trap if she inadvertently reveals information covered by the Order.

Accordingly, Defendant requests that this Court enter its order vacating *in toto* the May 22nd,

[D.E. #49] Discovery Order.

4.    **MOTION TO BAR ASSISTANT UNITED STATES ATTORNEYS DANIEL PEARCE BUTLER, CATHERINE K. CONNELLY, WILLIAM RAKESTRAW COWDEN FROM FURTHER INVOLVEMENT IN THE MATTERS**

Defendant moved for an order barring the Assistant United States Attorneys assigned to

prosecute this matter – Daniel Pearce Butler, Catherine K. Connelly, William Rakestraw Cowden – given their outrageous conduct in (i) disclosing privileged settlement communications for a malicious and improper purpose and (ii) allegedly implicitly violating the April 12, 2007, "gag" order of this Court and explicitly violating LCrR 57.7.

In response the government proffers four arguments.

First, that "In this case, the government has made no attempt to introduce any settlement or plea negotiations at any evidentiary proceeding." (Gov. Opposition, p. 7-8). This, of course, is a bald prevarication. In support of the government's "Ex-parte Application for Temporary Restraining Orders, and a Protective Order, and Request for a Hearing" which was filed on March 19, 2007, the government partially and inaccurately disclosed the February 24, 2007, settlement meeting between Assistant United States Attorneys Daniel Pearce Butler, Catherine K. Connelly and William Rakestraw Cowden ("AUSAs"), Defendant's then-criminal counsel, A.J. Kramer, and her civil counsel. Clearly, that application for temporary restraining orders involved proffering evidence to the Court, evidence which was barred from use by Rule 408.[1]

Second, hoping that the Court will miss its omission, the government completely ignores

---

[1]    Additionally, after the Defendant's First Omnibus Motion was filed on September 10, 2007, the government on September 21, 2007, filed "Government's Opposition to Motion to Substitute Counsel for the Defendant". At page 14 of that Opposition, the government stated: "as evidenced by a September 10, 2007, letter to the government in which he threatens "if an agreement to settle this matter is not reached, the Rubicon will be crossed this month and I will be powerless to dissuade [the defendant] from pursuing rights she may have under 42 U.S.C. 1983 and *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971) against all involved." This selective quoting of that letter intentionally omits the initial paragraph of that letter which stated: "This letter is tendered for the sole purpose of settlement pursuant to Federal Rules of Criminal Procedure, Rule 11(f) and Federal Rules of Evidence, Rules 408 & 410."

Defendant's claim under Federal Rules of Criminal Procedure, Rule 11(f)[2] which points to Federal Rules of Evidence, Rule 410, which states: "evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions: . . .any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn." Where is the government's response to Defendant's allegations that the use by the AUSAs of those settlement statements in the sealed portion of the motion for temporary injunction was blatantly improper? There is none because the government has no response.

Third, the government points to the lack of cases cited by the Defendant regarding breaches of Rules 408 and 410. The lack of citation is due to the singular nature of the egregious breach of those rules by the government. Simply stated, apparently never before have government attorneys acted so recklessly. Motions directed to disclosure are typically addressed to suppressing the evidence from trial. Here, of course, the government has used the evidence of plea negotiations to advance its attempts to obtain a temporary injunction and improperly prejudice the court against Defendant and/or her chosen counsel.

Last, resorting to *ad hominem* arguments once again, the government argues that "Finally, it is difficult to take seriously any claim defendant makes about the privileged nature of plea and settlement negotiations, when she herself has told the press, on more than one occasion, about the content of these discussions. In fact, as recently as last week, defendant was interviewed by a local radio station, and provided information about plea discussions in this matter." (Gov. Opposition,

---

[2]    (f) Admissibility or Inadmissibility of a Plea, Plea Discussions, and Related Statements. The admissibility or inadmissibility of a plea, a plea discussion, and any related statement is governed by Federal Rule of Evidence 410.

p. 8). The one citation to the press report of late September fails to recognize that the fact of a settlement discussion is not privileged, only the substance. That press report did not reveal any substance. Moreover, it came _after_ the government had already inaccurately revealed the substance of those settlement negotiations.

**b.    LCrR 57.7**

Defendant also claimed that on August 22, 2007,_prior_ to the Court's ordering "Defendant's Pro Se Motion for Replacement of her Counsel, Preston Burton and Permitting Hybrid Representation" to be filed publically, New York Post columnist Cindy Adams printed a story indicating that Jeane had announced that she was set to "fire her Washington DC Legal team." As the government had been e-mailed a copy of that motion on August 21, 2007, and this Court did not receive the motion until later on in the day of August 22, 2007, according to the FedEx records, Defendant alleged that government "leaked" this information.

In response, the government notably did _not_ deny the allegation, but instead avoided addressing the claim by stating: "Defendant's allegation that the government is attempting to use the media to influence this matter is similarly meritless, and supremely hypocritical. . . .However, that party is not the government. In fact, there is no basis for the claim that the government has released any information to the media." (Gov. Opposition, p. 9). Where is the statement by the governemnt that the government did not release any information directly or indirectly to the New York Post?

Accordingly, these AUSAs must be removed from further contact with this case. Alternatively, Defendant requests a hearing to delve into the allegations regarding the government's improper use of media to influence this matter with the Court assisting Defendant by issuing subpoenas and arranging for travel for testimony of (i) Cindy Adams and (ii) Bill Bastone, the editor

5

of the TheSmokingGun.com.

5.    **THE GOVERNMENT MISUNDERSTANDS THE BASIS OF A MOTION TO DISMISS FOR OUTRAGEOUS GOVERNMENT CONDUCT**

The government first argues to this Court that "Blanche Palfrey is not a defendant, a claimant, or a party in any of her daughter's various legal proceedings, and Deborah Jeane Palfrey has no standing to seek to lift the stay or dismiss the pending civil case, based on an alleged violation of her mother's Sixth Amendment right to counsel." (Gov. Opposition, p. 10). Next, the government argues: "For such an extreme remedy as dismissal, the Supreme Court requires a showing of substantial prejudice, something entirely missing from the defendant's motion." (Gov. Opposition, p. 11).

Both arguments ground their authority upon a failure of Defendant to allege a Sixth Amendment violation. Here, however, it is Fifth Amendment due process concerns, <u>not</u> Sixth Amendment rights, that dictate that this Court dismiss this cause as a punishment of the government for its outrageous behavior. As noted before, in *United States v. Russell*, 411 U.S. 423 (1973), the Court noted that it might "some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *Id.* at 431-32.

Here, Defendant makes just such an allegation of outrageous conduct by law enforcement officials so as to bar the government from invoking judicial process to obtain a conviction or forfeiture. Notably, that "conduct" does not have to directly relate to a defendant in order to justify the sanction of dismissal of an indictment to "punish" the government for its outrageous behavior of intimidating a defendant's family member as part of the pattern and practice of the Department

6

of Justice in prosecuting defendants who assert their constitutional rights and demand the jury trial to which they are entitled. How else will this pattern and practice surface unless this Court gives the Sixth Amendment life by permitting the Defendant to prove this claim?

Most notably, the government did not deny any of the allegations of the affidavit nor proffer any evidence to refute those allegations. Moreover, Defendant has alleged – and the government did not deny – that there is pattern and practice of the Department of Justice to intimidate family members of those accused of criminal behavior when a plea is not promptly entered.

Simply put, this Court can condone this sort of behavior by ignoring these allegations of jack-booted tactics and refusing a full airing of the facts in this matter or it can, as its Article III obligations demand, act as the watch dog on executive excess clearly contemplated in the Constitution.

Based upon the forgoing, "fair play" is not being done in this matter. Accordingly, Defendant asks this Court for the relief – and to dismiss the indictment for prosecutorial misconduct, or, alternatively – to preserve the record for subsequent review if necessary – to order an evidentiary hearing to determine if the imposition of a stern rebuke and this repressive sanction is warranted.

6.     **MOTION TO COMPLETELY DISSOLVE THE MARCH 16 [D.E. #12] AND MARCH 22 [D.E.# 17] TEMPORARY RESTRAINING ORDERS**

The government's opposition to granting to Defendant her statutory right to a hearing on the temporary restraining order was stated as follows:

> In addition to its written submission, government counsel also explained, at a bench conference with Mr. Kramer, its perception of Mr. Sibley's threats to "out" and embarrass witnesses to the activities of the escort service if the government did not go away. At Mr. Kramer's request, the Court continued the hearing on the government's request for a protective order until March 22, 2007. On

7

> March 22, 2007, with no objection from Mr. Kramer, the Court
> granted the government's request for a Protective Order "after
> determining that there were 'reasonable grounds to believe that
> harassment of an identified witness exists or that such an order is
> necessary to prevent such harassment.'" See Dkt. No. 17 at 1.

(Gov. Opposition, p. 13).    Hence, the government is arguing that Defendant lost her right to a

hearing that the government concedes[3] she is entitled to because her then-counsel – without

consultation with Defendant and while a motion to change Defendant's counsel was pending and

ultimately granted based upon ineffective assistance of counsel grounds – has been permanently lost.

Even with that questionable consent,  Defendant always has the right to return to court to seek

modification of a restraining order.[4]

Accordingly, Defendant requests that this Court set the required hearing to expeditiously

determine the motion to dissolve the temporary restraining orders and protective orders.

7.    **MOTION TO DECLARE 18 U.S.C. §3006A UNCONSTITUTIONAL**

The government's first argument in opposition to the Defendant's request to declare the

scheme contained in 18 U.S.C. §3006A "Adequate Representation of Defendants" as violating both

Fifth and Sixth Amendment guarantees is that "in the present posture of the case, defendant has

notified the Court of her intent to proceed with retained counsel." (Gov. Opposition, p. 14).  This

---

[3]    "Section 1514(b)(1) requires a court to issue a protective order prohibiting harassment of a victim or witness in a Federal criminal case if the court, after a hearing, . . " (Gov. Opposition, p. 13).

[4]    18 U.S.C. §1514 states in pertinent part: "**If on two days notice to the attorney for the Government** or on such shorter notice as the court may prescribe, the adverse party appears and moves to dissolve or modify the temporary restraining order, the court **shall** **proceed to hear and determine such motion as expeditiously as the ends of justice require**."

argument fails as the notice to proceed with counsel followed the request for appointment of specific counsel which was denied. Hence, the request is not untimely.

Next, the government claims "the sufficiency of the funds provided by the CJA is a determination for the United States Congress, see 18 U.S.C. § 3006A(d)(2) (maximum amounts), not a District Court in a single case." (Gov. Opposition, p. 15). If this were so, then a court could never declare a Congressional statute unconstitutional, a patently absurd assertion.

Accordingly, Defendant asks this Court declare that §3006A violates in practice the Fifth Amendment right to due process and the Sixth Amendment right to counsel. Additionally, upon such ruling, accept Defendant's *ex parte* application for payment of representation and providing services other than counsel authorizing payment of those fees on a monthly basis.

## 8.    DEFENDANT'S MOTION TO DISMISS THE INDICTMENT UNDER THE TENTH AMENDMENT

The government commences it opposition to Defendant's Tenth Amendment argument by improperly stating "Defendant moved, again without any controlling authority, to dismiss the indictment under the Tenth Amendment." (Gov. Opposition, p. 15). First, Defendant did <u>not</u> raise a Tenth Amendment argument before to this Court has her court-appointed counsel <u>refused</u> to raise it without explanation. Second, Defendant cited numerous authorities[5], every <u>single</u> one of which the government ignored, presumably because it could not refute those cases' plain statements: "That the United States lacks the police power, and that this was reserved to the states by the Tenth

---

[5]    *Hamilton v. Kentucky Distilleries & Warehouse Company*, 251 U.S. 146 (1919); *Keller v. United States,* 213 U.S. 138 (1909); *Minor v. United States*, 396 U.S. 87, 99 (1969) ; *Nigro v. United States* ,276 U.S. 332 (1928); *Bailey, Collector v. Drexel Furniture Co.*, 259 U.S. 20, 37 (1922).

Amendment, is true." *Hamilton*.

In conclusion, the government maintains that "the Supreme Court and lower courts have recognized the constitutionality, under the Commerce Clause, of the Travel Act in the situation before this Court. Clearly, therefore, the indictment charges crimes clearly within the powers delegated to the United States Congress, and the Tenth Amendment is not applicable." (Gov. Opposition, p. 18).  This statement is notable for three reasons.

**a.    THE GOVERNMENT CONCEDES THE UNCONSTITUTIONALITY OF RICO AND MONEY LAUNDERING STATUTES**

First, the government does not object to Defendant's assertion that the Tenth Amendment renders unconstitutional the RICO and Money Laundering counts of the indictment. (Counts I & V). Instead, the government premises its <u>entire</u> argument upon the Travel Act.  (Counts II, III & IV).

**b.    THE COMMERCE CLAUSE HAS BEEN MINIMIZED**

Second, the government only cites three Supreme Court cases to support its contention regarding the constitutionality of the Travel Act.  The government first cites indirectly through *United States v. Barrow*, 363 F.2d 62, 65 (3rd Cir. 1966) the Supreme Court cases of *Fernandez v. Wiener*, 326 U.S. 340, 362 (1945) and *United States v. Darby,* 312 U.S. 100, 124 (1941).

In *Fernandez*, the question of police power was not even addressed, only the power to tax which was specifically delegated to the federal government.[6]  Likewise, in *Darby*[7], the question was

---

[6]    The Court held: "The Tenth Amendment does not operate as a limitation upon the powers, express or implied, delegated to the national government. *United States v. Darby*, 312 U.S. 100, 123-124. The amendment has clearly placed no restriction upon the power delegated to the national government to lay an excise tax qua tax."

[7]    "The means adopted by s 15(a)(2) for the protection of interstate commerce by the suppression of the production of the condemned goods for interstate commerce is so related to the

10

the constitutionality of the Fair Labor Standards Act of 1938 which prohibited shipment in interstate commerce of lumber manufactured by employees whose wages are less than a prescribed minimum. Again, *Darby* did not deal with the police power of the federal government, only its ability to regulate interstate commerce under Article 1, §8, clause 3.

Last, the government cites *Caminetti v. United States*, 242 U.S. 470, 491 (1917). In *Caminetti*, the Court held: "The transportation of passengers in interstate commerce, it has long been settled, is within the regulatory power of Congress under the commerce clause of the Constitution, and the authority of Congress to keep the channels of interstate commerce free from immoral and injurious uses has been frequently sustained, and is no longer open to question." However, the history of the use by Congress of the Commerce Clause is long and peppered with Supreme Court decisions that travel the spectrum. *See: United States v. Lopez*, 514 U.S. 549 (1995) and *United States v. Morrison*, 529 U.S. 598 (2000).

However, in sum, it is clear that the extent of the Commerce Clause's reach is presently in retraction which now gives cause to consider the continued vitality of *Caminetti*. As noted in *Lopez*:

> The Government admits, under its "costs of crime" reasoning, that Congress could regulate not only all violent crime, but all activities that might lead to violent crime, regardless of how tenuously they relate to interstate commerce. *See* Tr. of Oral Arg. 8-9. Similarly, under the Government's "national productivity" reasoning, Congress could regulate any activity that it found was related to the economic productivity of individual citizens: family law (including marriage, divorce, and child custody), for example. Under the theories that the Government presents in support of §922(q), **it is difficult to perceive any limitation on federal power, even in areas such as criminal law enforcement or education where States historically have been sovereign. Thus, if we were to accept the Government's arguments, we are hard pressed to posit any activity by an**

commerce and so affects it as to be within the reach of the commerce power."

11

> **individual that Congress is without power to regulate.** (Emphasis added).

*Id.* at 564. The Court then went on to conclude that "To uphold the Government's contentions here, we would have to pile inference upon inference in a manner that would bid fair to convert congressional authority under the Commerce Clause to a general police power of the sort retained by the States. . . . To do so would require us to conclude that the Constitution's enumeration of powers does not presuppose something not enumerated, *cf. Gibbons v. Ogden*, supra, at 195, and that there never will be a distinction between what is truly national and what is truly local, *cf. Jones & Laughlin Steel*, supra, at 30. This we are unwilling to do." *Id.* 567.

Hence, Defendant maintains that *Lopez* threw open the doors to re-consider the improper expansion of the *de facto* police power of the federal government from the limitations of (i) high seas felonies, (ii) counterfeiting or (iii) treason; the only areas the federal government has been delegated express police power to punish. Under the *Lopez* reasoning, it is valid to question *Caminetti* as a valid exercise of Commerce Clause power as in essence, *Caminetti* is nothing more than naked police power to restrain that which has consistently been recognized as a purely state issue.

The comments of Alexander Hamilton that federal power reflected the well-known truth that the new Government would have <u>only</u> the limited and enumerated powers found in the Constitution. *See, e.g* ., 2 *Debates* 267-268 (A. Hamilton at New York Convention) (noting that there would be just cause for rejecting the Constitution if it would enable the Federal Government to "alter, or abrogate . . . [a State's] civil and criminal institutions [or] penetrate the recesses of domestic life, and control, in all respects, the private conduct of individuals."); *The Federalist No. 45*, at 313 (J.

Madison).  This, of course, is what the federal government seeks to do by enacting the Travel Act.

Plainly, this Congress cannot do so both under the Tenth Amendment and the Constitution and

Article I, § 1[8] as those legislative powers were <u>never</u> granted to Congress to control the private

conduct of individuals.

### c.    CONGRESS HAS NOT "REGULATED" PROSTITUTION

Third, unlike the federal laws regulating opiates and other drugs which expressly provide for

"regulation" through taxation, *see Nigro v. United States*, 276 U.S. 332 (1928), Congress has made

**no** law "regulating" prostitution.  It simply has improperly exercised a "police power" to criminalize

and punish anyone who engages in "prostitution" if crossing state lines at some point in the alleged

activity occurs.    This reasoning runs afoul of the concern raised in *Lopez*, that would extend

"congressional authority under the Commerce Clause to a general police power of the sort retained

by the States."   As such, for failure to "regulate", Congress has not properly invoked its power to

"regulate" prostitution.  As such, the Travel Act is unconstitutional.

### d.    "REGULATE" DOES NOT INCLUDE CRIMINALIZATION

Finally, what Congress is "granted" is the power to "regulate commerce".  That power has

been understood to mean:

> The power to regulate that commerce, as well as commerce with
> foreign nations, vested in congress, is the power to prescribe the rules
> by which it shall be governed, that is, the conditions upon which it
> shall be conducted; to determine when it shall be free, and when
> subject to duties or other exactions. The power also embraces within
> its control all the instrumentalities by which that commerce may be
> carried on, and the means by which it may be aided and encouraged.
> The subjects, therefore, upon which the power may be exerted are of

---

[8]     "All legislative powers **herein granted** shall be vested in a Congress of the United
States, which shall consist of a Senate and House of Representatives."

13

infinite variety.

*Gloucester Ferry Co. v. Com. of Pennsylvania*, 114 U.S. 196, 203 (1885). Hence, the genesis of the

Commerce Clause was "from apprehension of such conflicting and discriminating state legislation,

and to secure uniformity of regulation, that the power to regulate commerce with foreign nations and

among the states was vested in congress." *Id.* at 204.

No where is the power "granted" to Congress to criminalize commerce. Admittedly, in *Hoke*

*v. United States,* 227 U.S. 308, 323 (1913) the Court held constitutional the White Slave Traffic Act

stating: "that Congress has power over transportation 'among the several states;' that the power is

complete in itself, and that Congress, as an incident to it, may adopt not only means necessary but

convenient to its exercise, and the means may have the quality of police regulations. *Gloucester*

*Ferry Co. v. Pennsylvania*, 114 U.S. 196, 215."

However, a review of *Gloucester Ferry Co.* that assertion in *Hoke* that the Commerce Clause

gives "police power" to the federal government is misplaced by a court sitting at a very different

moment than today.[9]    In *Gloucester Ferry Co.*, the Court held, relying solely upon a legal

commentator:

> It was not intended, however, by the grant to congress to supersede or
> interfere with the power of the states to establish police regulations
> for the better protection and enjoyment of property. Sometimes,
> indeed, as remarked by Mr. COOLEY, the line of distinction between

---

[9]    That Court found nothing wrong with (i) anti-miscegenation laws (it was not until
1967 that such laws were overturned; *See*: *Loving v. Virginia* , 388 U.S. 1 (1967)) or (ii) intra-race
prohibitions, (*Pace v. Alabama*, 106 U.S. 583 (1883)( In that case, the Court upheld a conviction
under an Alabama statute forbidding adultery or fornication between a white person and a Negro
which imposed a greater penalty than that of a statute proscribing similar conduct by members of the
same race.) Hence, reliance on these turn-of-the-last-century cases is no longer a valid ground for
upholding the Travel Act particularly in light of the monumental change in mores reflected by
*Lawrence v. Texas,* 539 U.S. 558 (2003).

> what constitutes an interference with commerce and what is a legitimate police regulation is exceedingly dim and shadowy, and he adds: 'It is not doubted that congress has the power to go beyond the general regulations of commerce which it is accustomed to establish, and to descend to the most minute directions if it shall be deemed advisable, and that, to whatever extent ground shall be covered by those directions, the exercise of state power is excluded. Congress may establish police regulations as well as the states, confining their operations to the subjects over which it is given control by the constitution; but, as the general police power can better be exercised under the provisions of the local authority, and mischiefs are not likely to spring therefrom so long as the power to arrest collision resides in the national congress, the regulations which are made by congress do not often exclude the establishment of others by the state covering very many particulars.' Cooley, Const. Lim. 732.

Hence, the "police power" of the federal government is so thinly premised without reconciliation of the natural interpretation of the Constitution that limits federal "punishment" to three discrete areas that do not include prostitution that *Gloucester Ferry Co.* must be re-examined for vitality.

Thus: "It is the high duty and function of this court in cases regularly brought to its bar to decline to recognize or enforce seeming laws of Congress, dealing with subjects **not entrusted to Congress, but left or committed by the supreme law of the land to the control of the States..**" *Bailey, Collector v. Drexel Furniture Co.*, 259 U.S. 20, 37 (1922).

Criminalizing prostitution was not "entrusted to Congress" and the sleigh of hand of exponentially expanding the Commerce Clause must be recognized for the fraud it is by this Court in the exercise of its duty to "decline to recognize or enforce" the Travel Act.

9.    PETITION TO DISCLOSE GRAND JURY PROCEEDINGS PURSUANT TO RULE 6(E)

Defendant requested that the Grand Jury Minutes be disclosed pursuant to *Brady v. Maryland* and Rule 6(e). In response, the government argued that Defendant: "has made no showing, nor even attempted to do so, that a ground may exist to dismiss the indictment because of a matter that

15

occurred before the grand jury." (Gov. Opposition, p. 19).

This of course ignores Defendant's claim that one of the former escorts of the service is (i) a witness for the government and therefore presumably testified at the Grand Jury and (ii) according to her attorney is going to testify for the government that "while at times she did provide outcall escort services, 'she was not involved in prostitution. She did nothing wrong.'"  WTOP News, August 16, 2007 - 5:35am.

Notably, the government does <u>not</u> refute this assertion.  Hence, Defendant has made a showing that at least one witness before the grand jury provided exculpatory testimony which is due to be disclose under *Brady* which the government has <u>not</u> disclosed.

Additionally, under Rule 6(e)(3)(E)(i&ii), the Defendant sought disclosure of the testimony, law read, explanations given and the vote of the grand jury in this matter to allow consideration of a motion to dismiss the indictment due to lack of proof at the grand jury and/or upon the reading or explanation of the charged statutes to the Grand Jury.  Given the admittedly complex nature of the charges, this request if reasonable and should be granted by the Court.

10.    **MOTION TO MEANINGFULLY DISCLOSE UN-REDACTED WITNESS STATEMENT**

Given the inability of Defendant to disclose to her counsel the *Jenks*  material that was disclosed given the "Stipulated" May 22nd [D.E. #49] Discovery Order, Defendant is unable to respond to the government's opposition to Defendant's request to fully disclose witness' statements.

11.    **PRE-TRIAL PRE-SENTENCE INVESTIGATION REPORT GIVEN LACK OF PROSTITUTION OFFENSE IN FEDERAL STATUTES**

Clearly, vague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute. See *United States v.*

*Evans*, 333 U.S. 483 (1948); *United States v. Brown*, 333 U.S. 18 (1948); *cf. Giaccio v. Pennsylvania*, 382 U.S. 399 (1966).

Here, the government contends that alleged ambiguity of the RICO sentencing guidelines is resolved by resort to "Promoting a Commercial Sex Act or Prohibited Sexual Conduct with an Individual Other than a Minor." However, this section too is so vague as to fail to give proper notice.

As for, "Commercial Sex Act"[10], that term is defined at 18 U.S.C. § 1591(c)(1) as "any sex act, on account of which anything of value is given to or received by any person." What is a "sex act"? Does this criminalize kissing booths? See *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972) (criminal statute is void for vagueness if "it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute.")(quoting *United States v. Harris*, 347 U.S. 612, 617 (1954).

Thus the seminal question – and the sole basis for the claim of vagueness – is whether the phrase "Commercial Sex Act"" satisfies constitutional standards of precision. Defendant maintains it does not. *See, e.g., Lanzetta v. New Jersey*, 306 U.S. 451, 458 (1939) (statute making it illegal to be a "gangster" employs terms "so vague, indefinite and uncertain" that it violates due process); *Smith v. Goguen*, 415 U.S. 566, 573 (1974)(criminal statute barring "treat[ing] contemptuously the flag of the United States" held void for vagueness).

Notably, "Commercial Sex Act"" is not otherwise defined. Hence, reference must be had to

---

[10]    Clearly, "Prohibited Sexual Conduct" is not at issue as that relates to Criminal Sexual Abuse; Attempt to Commit Criminal Sexual Abuse.

the phrase's general understanding.[11]  Thus, under the test required by *United States v. Harris*, 347

U.S. at 617 the phrase is vague if: "it fails to give a person of ordinary intelligence fair notice that

his contemplated conduct is forbidden by the statute."

Thus what "Commercial Sex Act"" is forbidden?  Who can say with certainty?  Following

is a list of behavior which could or could not qualify under the questioned phrase.  Who is to say

which is prohibited and which is not?

  i.  Fellatio of a customer;
  ii.  Anal intercourse with the penis of a customer;
  iii.  Vaginal intercourse with the penis of a customer;
  iv.  Cunnilingus by a customer;
  v.  Insertion of any object in their anus by the customer;
  vi.  Insertion of any object in their vagina by a customer;
  v.  Handling or fondling the penis of a customer for the purposes of masturbation;
  vi.  Permitting the handling or fondling of her vagina by customer for the purposes of masturbation.
  vii.  Dance nude for a customer;
  viii.  Permit the customer to be nude;
  ix.  Give a massage while escort and customer are nude provided there is no handling or fondling of the sexual organs of either parties.
  x.  Verbal role playing while nude;
  xi.  Masturbation while nude by either the escort or the customer;
  xii.  Solo and/or joint use of sexual toys.  *Cf.* for example: www.adameve.com which advertises over 600 such sex toys.

Accordingly, Defendant requests that this Court direct the Probation Department to advise

as to how they would resolve this anomaly in a Pre-Sentence Report if directed for each of the

Counts of the Indictment.

---

[11]  *Perrin v. United States*, 444 U.S. 37, 42-45 (1979) (looking to ordinary meaning of term at time of enactment to interpret criminal statute.)

12.    SUPPRESSION HEARING MOTIONS

Prior to the Suppression Hearing in this matter, Defendant requested the following relief:

a.    DISCLOSURE OF CONFIDENTIAL INFORMANTS IDENTITIES

The government maintains that: "In this case, the government intends to call the confidential informants as a witnesses at trial." (Gov. Opposition, p. 24). However, given that one such confidential informant possesses exculpatory information which was not denied by the government, that disclosure should not wait until trial but is mediate to the issues at the suppression hearing.

Of course, then the government recedes and states "If, at a later date, the government decides not to call an informant at trial, the government will notify the Court at the commencement of trial." (Gov. Opposition, p. 24). Thus, the government reserves the right to self-suppress favorable witnesses by shortly before trial alerting that it will not call these obviously harmful-to-the-government witnesses and then "[t]o the extent that an informant's presence is within the control of the government, the government will make the informant available to testify at trial on behalf of the defendant." Plainly, the government plans to conveniently lose "control" over the witnesses to deny Defendant favorable evidence at trial and hide the government's *Brady* violations.

This is suppose to satisfy *Brady*'s requirement that "[s]ociety wins not only when the guilty are convicted but when criminals trials are fair"? *Id.* at 87.

b.    PRODUCTION OF THE PERSONNEL FILES OF ALL LAW ENFORCEMENT WITNESSES

Defendant moved the Court to order the prosecution to produce the state and federal personnel files of all law enforcement witnesses whom it, or the Defendant,[12] intends to call at the

_____

[12]    The Defendant has previously requested that (i) Joe Clark - USPS Inspector, Troy A. Burrus - Special Agent, United States Internal Revenue Service, Criminal Investigation and

19

suppression hearing "for evidence of perjurious conduct or other like dishonesty, *in camera*, to determine if those portions of the officers' personnel files ought to be made available to defense counsel for impeachment purposes." *United States v. Cadet*, 727 F.2d 1453 (9th Cir.1984).

Remarkably, the government responds noting that: "it is sufficient for counsel for the government to either (1) arrange for the custodian of the personnel file to personally review the file and notify counsel for the government about the existence of any possible exculpatory evidence, or (2) submit the personnel file to the court for an in camera inspection for exculpatory evidence." (Gov. Opposition, p. 26).    What is remarkable is that the "counsel for the government" did NEITHER!

Here, once again, the impotence of *Brady* is laid bare.  There simply is <u>no</u> mechanism to insure compliance.  Defendant expressly challenges the government to document how they performed their self-admitted duty to determine the existence of exculpatory evidence *prior* to the suppression hearing which was scheduled to commence on September 7, 2007.  The "government's counsel" won't because they didn't preform such duty.

Given the behavior of the government agents detailed in the above motion to dismiss for outrageous government conduct, there is ample reason to suppose that the personnel files of those agents contain exculpatory information.

**13.    MOTION TO ISSUE SET PRE-TRIAL EVIDENTIARY HEARING AND ISSUE SUBPOENAS**

First, Defendant reminds the Court  that under LCrR 17.1, the decision to make an application for an *ex parte* subpoena is discretionary.

---

Meredith Newman - USPS Inspector Supervisor be subpoenaed for the hearing.

20

Second, the government claims that "As to selective prosecution, the Court has already denied defendant's selective prosecution motion." (Gov. Opposition, p. 27). This of course ignores the true holding of this Court that: "She has not offered a single piece of evidence to support that claim or demonstrate that other escort services of spa owners who have committed similar acts have not been indicted." [D.E. #89, p. 5]. Such evidence was not offered as Defendant's Court-appointed counsel refused to proffer such despite Defendant's entreaties to do so.

Next, Defendant claimed that she had reason to believe their was an improper, political and/or discriminatory purpose in the prosecution of her.

In response, the government stated: "She does not, however, cite any controlling caselaw for her contention." (Gov. Opposition, p. 27). This, of course ignores as inconvenient, *United States v. Batchelder*, 442 U.S. 114, 125 (1979) and *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14 (1926) cited by the Defendant. Moreover, the government completely ignores the five (5) points expressly raised in support of the requests for subpoenas.

21

## CONCLUSION

Accordingly, Defendant respectfully requests that this Court enter its order granting

Defendant aforesaid motions.

### CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the served pursuant to LcvR §.4(d) upon William R. Cowden, Assistant United States Attorney, Criminal Division, Asset Forfeiture Unit, 555 4t1 St., N.W., Room 4818, Washington, D.C. 20530 this October 5, 2007

Dated: _10/15/07_                                      _____

                                                        Deborah Jeane Palfrey

> Montgomery Blair Sibley, upon the ethical constraints imposed upon him, hereby (i) gives notice of assistance to Defendant in the preparation of this pleading and (ii) notes that he does represent Defendant as her attorney in this matter but is presently barred by Court order from filing this pleading on her behalf.