**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

                PLAINTIFF,

VS.

DEBORAH JEANE PALFREY,

             DEFENDANT.

_____/

**CRIMINAL CASE NUMBER: 07-046-GK**

**DEFENDANT'S MOTION TO COMPEL DISCLOSURE AND RENEWED MOTION TO BAR AUSAS FROM PROSECUTING THIS ACTION**

Defendant Deborah Jeane Palfrey, by and through her undersigned counsel and pursuant to Federal Rules Criminal Procedure, Rules 16(d) and 26.2, hereby moves for Orders (i) compelling the government to permit discovery, and/or alternatively, enter such sanction against the government as is just and (ii) barring the Assistant United States Attorneys assigned from prosecuting this matter – Daniel Pearce Butler, Catherine K. Connelly, William Rakestraw Cowden – given their outrageous conduct described *infra*, and for grounds in support states:

I.     **BACKGROUND**

On or about March 9, 2007, the government permitted Defendant's then counsel A.J. Kramer to inspect the *originals* of the documents seized from Defendant's home and other documents subject to disclosure pursuant to Rule 16(a)(1). From that inspection, Mr. Kramer made three handwritten pages of notes which have been provided to Defendant's present undersigned counsel.

Thereafter, in or about May 2007, the government permitted Defendant's second counsel, Preston Burton and his private investigator to inspect the *originals* of the documents seized from Defendant's home and other documents subject to disclosure pursuant to Rule 16(a)(1). From that inspection, Mr. Burton orally transmitted information to Defendant's present counsel concerning the

1

sum and substance of the materials that he observed.

On October 30, 2007, Defendant's undersigned counsel wrote to Daniel Pearce Butler, Catherine K. Connelly, William Rakestraw Cowden, the three AUSAs assigned to prosecute the indigent Defendant whose sole resource is her undersigned counsel. That letter sought *inter alia* the opportunity to review the same originals that were viewed by Defendant's two prior counsels. A copy of that letter is attached hereto.

On November 9, 2007, on behalf of Jeffrey Taylor – the putative United States Attorney for the District of Columbia – Daniel Pearce Butler and Catherine K. Connelly responded. A copy of that letter is attached. In that letter, the AUSAs refused to permit Defendant's undersigned counsel to review the originals of the documents seized from the Defendant's home. Moreover, based upon what Messrs. Kramer and Burton have related, there is important evidence not otherwise provided in the discovery given to undersigned counsel that they observed when making their document review, including the criminal records of various escorts and customers.

## II.    THE GOVERNMENT'S FAILURE TO DISCLOSE RULE 16(A)(1)(E) DOCUMENTS

On May 8, 2007, Defendant's then counsel made a written request to inspect the documents subject to disclosure pursuant to Rule 16(a)(1)(E). A copy of that letter is attached.

Rule 16(a)(1)(E) provides in pertinent part: "Upon a defendant's request, the government **must** permit the defendant to inspect and to copy or photograph . . . documents . . . if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense . . . or, (iii) the item was obtained from or belongs to the defendant."

On May 24, 2007, the government wrote Defendant's then counsel and provided "two CDs" which it represented contained: "Documents seized from your client's home during the execution

2

of the October 2006 search warrant . . ."  A copy of that letter is attached.

During that search, some one hundred and thirty-two (132) originals of the executed contracts and security deposits Defendant had with each independent contractor/escort were seized from her residence by the government. ("Escort Contracts").  Each Escort Contract provided in pertinent part: "Individuals caught performing illegal activities will be terminated. . . being employed as an escort for Escort Service, the scope of said employment expressly does not encompass in any way shape or form sexual act, favors or other behavior prohibited by law. "  Clearly, the Escort Contracts fall within the definition set of Rule 16(a)(1)(E)  as "(i) the item is material to preparing the defense . . . or, (iii) the item was obtained from or belongs to the defendant."

However, ignoring the plain mandate of Rule 16(a)(1)(E) and *falsely* representing that it was making a full disclosure of the documents seized from Defendant, the government disclosed only two Escort Contracts – presumably by accident – to Defendant in its May 24th letter.

Accordingly, in Defendant's October 30th letter, Defendant demanded that the (i) government permit inspection of and (ii) allow copying of these Escort Contracts.

In response, the government in its November 9th letter stated: "Enclosed please find a third CD containing such [Escort] contracts, as well as additional documents."[1]  Thus, though the Escort Contracts were *mandated* by Rule 16(a)(1)(E) to be disclosed to Defendant, the government apparently believes that Rule 16(a)(1)(E) is aspirational as applied to Daniel Pearce Butler, Catherine K. Connelly and William Rakestraw Cowden and they can disclose at their leisure what and when they *ex cathedra* deem convenient.  Moreover, apparently the government sees no problem in making

---

[1]    Defendant has yet to receive this "third" CD and thus cannot yet determine the nature of the "other documents" heretofore not disclosed.

a material mis-statement of fact – that all the documents seized from Defendant were being provided – when in fact that was <u>not</u> true.  Defendant is left to wonder what other documents are being withheld.

Plainly – besides the affront to this Court's dignity – Defendant has suffered prejudice by this delaying and obfuscatory tactic by the government as Defendant's ability to locate and contact former Escorts to testify as to the legitimate nature of their relationship with Defendant has been severely hampered and truncated.  Indeed, this Court should note that the government delayed one hundred sixty nine (169) days in disclosing the Escort Contracts and that trial is now only one hundred (100) days from today.

Accordingly, a severe sanction must be imposed by this Court if the Department of Justice is going to learn to respect those Rule and this Court's authority.

## III.   FAILURE TO PERMIT INSPECTION

In the letter of October 30th, Defendant's counsel stated:  " I want to personally inspect all the documents that I am entitled to see pursuant to Rule 16."  In response, in its November 9th letter, the government stated:

> In terms of your request to "personally inspect all the documents [you are] entitled to see pursuant to Rule 16," you have already done so. Fed. R. Crim. P. 16(a)(1)(E) requires the government to permit you "to inspect . . . books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items . . . ." By providing you with scanned copies of items material to preparing your client's defense, items seized from the defendant, and items the government intends to use in its case-in-chief at trial, the government has fulfilled its Rule 16 obligations with respect to "documents" in the government's possession and "documents" seized from the defendant.

This response is notable – and sanctionable – for several reasons.  First, the haphazardly

4

scanned documents provided on CD fail to permit a full and meaningful inspection. Practically, it is hard to fully comprehend a documents intrinsic information from a scanned copy. Moreover, there are many scanned documents where additional information is blocked from view due to the presence of "sticky notes" on the documents. Last, Defendant has <u>no</u> confidence that the government has fully and accurately scanned the documents given its behavior here-to-date with discovery materials.

Second,   Daniel Pearce Butler, Catherine K. Connelly and William Rakestraw Cowden are knowingly and explicitly <u>lying</u> to Defendant's counsel – and thus to this Court. Plainly, the May 24th CD did <u>not</u> contain "scanned copies of items material to preparing your client's defense, items seized from the defendant" as that CD intentionally did <u>not</u> contain the Escort Contracts as detailed *supra*.

Third – and the Court <u>must</u> take note of this – Defendant's prior counsels – A. J. Kramer and Preston Burton – <u>were</u> allowed permission to inspect the originals of these documents. However, now that the apparently despised undersigned counsel has made the same request, he is denied that opportunity. What does – and will – the Court make of this outrageous display of pettiness by Daniel Pearce Butler, Catherine K. Connelly and William Rakestraw Cowden? Failure to sanction – and sanction meaningfully – invites further unprofessional behavior by not only these three AUSAs, but the entire Department of Justice to the prejudice of Defendant.

## IV.   IMPROPER REDACTION OF DOCUMENTS

Notably in her letter of October 30th, Defendant wrote: "Third, throughout the materials seized from my client's home, there are redactions of the identification information of the escorts." In response, the government stated: "In fact, the Court has already addressed this issue in prior orders. See Dkt. No. 136 at 10 ("[t]he redacted material is the names and identifying information about confidential informants – material to which she is not entitled.")"

Again, this comment is remarkable – and sanctionable – for several reasons.  First, the government apparently is now claiming that it can redact the identification information from all 132 former Escorts because the are all "confidential informants".  Defendant demands that Daniel Pearce Butler, Catherine K. Connelly and William Rakestraw Cowden either (i) represent to the Court that all 132 former Escorts have acted and deserve the designation of "confidential informant" or (ii) immediately provide the information seized from Defendant's home in *un-redacted* form.

Second, the government's position is preposterous.  Seized from Defendant's home were her business records.  16(a)(1)(E) provides that the Defendant is *entitled* to inspect and copy any "item was obtained from or belongs to the defendant."  Here, the government has again delayed Defendant in preparing her defense by refusing her access to that which she is entitled to – and the government is obligated permit – review.

Accordingly, Defendant requests that she be permitted immediate access to all of the original, un-redacted copies of the documents seized from her home.

V.    **FAILURE TO RESPOND TO SPECIFIC REQUESTS**

In his letter of May 8th, Mr. Burton specifically requested eight categories of information from the government pursuant to Rule 16.  The government failed to respond to that request.  Accordingly, on October 30th, Defendant wrote: " Last, your letter of May 24 failed to address the seven specific categories of materials that Preston sought from you in his letter of May 8, 2007.   Accordingly, please review that letter and respond to each category and sub-category with a definitive answer so the issues raised in that letter can be clearly crystalized."

Notably, in its response of November 9th, the government failed to address this point continuing the pattern of believing that discovery is discretionary.

6

Accordingly, Defendant requests an order directing the government to specifically address each of the seven requests made by her through Mr. Burton.

## VI.    INCOMPLETE *JENKS* DISCLOSURE

On September 6 and 7, the government, pursuant to its obligations under Rule 26.2 and *Jencks V. United States*, 353 U.S. 657 (1957), disclosed certain statements in anticipation of the suppression hearing set for September 7.

Among the material produced was a May 20, 2002, report by Investigator Hines. The three appendixes referenced in the Report were not been provided. Defendant accordingly ask for those appendixes in her letter of October 30th. In response, the government wrote on November 9th, "The May 20, 2002 letter from Inspector Hines references five exhibits. However, the spreadsheets referenced by Inspector Hines constitute *Jenck*s. As such, they will be provided at the appropriate time."

This response merits consideration. First, the government admits they did <u>not</u> make a <u>full</u> and <u>complete</u> *Jenks Act* disclosure as required by the Rule and *Jenks* on September 7th . Patently, this is just one more example of the government's prevarication and infidelity to its plainly imposed obligations.

Moreover, the confusion between three or five "appendixes" is noteworthy as Defendant's copy of the Hines Report only lists three, while the government admits five. This difference is significant as it once again the government is not <u>fully</u> complying with its obligations towards Defendant and insuring that "justice is done."

## VII.   COURT ORDERED PRE-TRIAL DISCLOSURE

In Defendant's letter of October 30th, Defendant's counsel wrote "I calculate that December

21, 2007, is sixty (60) days before February 19, 2007, trial and hence triggers your obligations under the Court's order of August 16, 2007, [D.E. #89]." In response, the government wrote on November 9th: "Finally, as to your contention about the government's obligations 60 days before trial, the definite trial date the Court has identified is April 8, 2008, not February 19, 2008. Until that is modified by the Court, that is the date we will use for the obligations on the government."

Accordingly, the Defendant requests that this Court direct the government to comply with its Order of August 16, 2007, by providing the information on December 21, 2007, as otherwise the Defendant will be short-changed the extremely minimally allotted time to prepare for trial in this matter.

## VIII.    RENEWED MOTION TO BAR ASSISTANT UNITED STATES ATTORNEYS

Defendant once again moves for an order barring the Assistant United States Attorneys assigned to prosecute this matter – Daniel Pearce Butler, Catherine K. Connelly, William Rakestraw Cowden – given their outrageous conduct as detailed *supra* regarding discovery matters.

As this Court either sees this behavior as acceptable – and looks the other way – or it recognizes the abject level of professionalism these AUSAs have fallen to and therefore is compelled to impose the requested sanction, Defendant will not repeat the parade of horribles that heretofore these AUSAs have in this matter engaged. Defendant would note that at some point, the camel's back is broken and this allegations in this pleading are not just one more straw, but an entire bale.

## IX.    CONCLUSION

For the discovery abuses detailed herein, Defendant seeks from this Court an Order:

A.    Dismissing the indictment and sanctioning the Department of Justice in the amount of One Hundred Thousand Dollars ($100,000) payable to the Defendant to drive home the

seriousness of the government's breach of its obligation to see that "justice is done";

B.     Barring Daniel Pearce Butler, Catherine K. Connelly and William Rakestraw Cowden from further involvement in this matter given their outrageous conduct as detailed *supra* regarding discovery matters;

C.     Forthwith directing the government to provide access to the unredacted originals of the documents seized from the Defendant's home;

D.     Forthwith direct the government to respond to the  May 8th letter from  Mr. Burton specifically requesting seven categories of information;

E.     Forthwith make a complete *Jenks* disclosure;

F.     Requiring the government to make the ordered pre-trial disclosures by December 21, 2007; and

G.     For such other and further relief as the Court deems equitable and just.

### CERTIFICATE OF CONSULTATION AND  SERVICE

I hereby certify that (i) I have in good faith conferred with the government in an effort to secure the information or material without court action without success and (ii) a true and accurate copy of the foregoing was served pursuant to CM/ECF upon Daniel Pearce Butler, Catherine K. Connelly and William Rakestraw Cowden, Assistant United States Attorneys, Criminal Division, 555 4th St., N.W., Room 4818, Washington, D.C. 20530 this November 12, 2007.

MONTGOMERY BLAIR SIBLEY
Counsel for Defendant
1629 K Street, Suite 300
Washington, D.C. 20006
202-508-3699
202-478-0371 Fax

By:   /s/ Montgomery Blair Sibley
        Montgomery Blair Sibley
        D.C. Bar #464488

9

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

PLAINTIFF,

vs.

DEBORAH JEANE PALFREY,

DEFENDANT.

_____/

CRIMINAL CASE NUMBER: 07-046-GK

ORDER ON DEFENDANT'S MOTION TO
COMPEL DISCLOSURE

Upon consideration of the Defendant's Motion to Compel Disclosure, the government's response and the Defendant reply, the motion is granted and it is hereby ordered as follows:

A.     The Department of Justice is hereby sanctioned in the amount of One Hundred Thousand Dollars ($100,000) payable to the Defendant to drive home the seriousness of the government's breach of its obligation to see that "justice is done";

B.     Daniel Pearce Butler, Catherine K. Connelly and William Rakestraw Cowden are barred from further involvement in this matter given their outrageous conduct regarding discovery matters;

C.     Forthwith the government will provide access to the unredacted originals of the documents seized from the Defendant's home;

D.     Forthwith the government will respond to the  May 8th letter from  Mr. Burton specifically requesting seven categories of information;

E.     Forthwith the government will make a complete *Jenks* disclosure;

      F.      The government  will make the ordered pre-trial disclosures by December 21, 2007.

      DONE AND ORDERED in Chambers, Washington, D.C. this _____ day of _____, 2007.

By: _____
                   United States District Judge

Copies to:
Montgomery Blair Sibley
William R. Cowden.



**ORRICK**

ORRICK, HERRINGTON & SUTCLIFFE LLP
WASHINGTON HARBOUR
3050 K STREET, NW
WASHINGTON, DC 20007-5135

*tel 202-339-8400*
*fax 202-339-8500*
WWW.ORRICK.COM

Preston Burton
(202) 339-8456
pburton@orrick.com

May 8, 2007

***VIA HAND DELIVERY***

William R. Cowden, Esquire
Daniel P. Butler, Esquire
Catherine K. Connelly, Esquire
Assistant United States Attorneys
Office of the United States Attorney
    for the District of Columbia
555 Fourth Street, N.W.
Washington, DC 20001

> Re:    **United States v. Deborah Jeane Palfrey, Crim. No. 07-46 (GK)**

Dear Messrs. Cowden, Butler and Ms. Connelly:

As you are aware, I was appointed by Judge Kessler yesterday to represent Deborah Jeane Palfrey in the above-referenced case. Pursuant to Rule 16 of the Federal Rules of Criminal Procedure, Brady v. Maryland, 373 U.S. 83 (1963) and its progeny, and the Fifth and Sixth Amendments to the United States Constitution, I request the opportunity to inspect and copy the following materials in the possession, custody, or control of the government, the existence of which is known, or, by the exercise of due diligence, may become known to you or to any other attorneys or investigative agents for the government. In order to expedite my review of the materials produced, please indicate the discovery request to which each document is responsive.

This request is continuing in nature; if additional materials are discovered prior to or during trial, please produce those materials promptly in accordance with Fed. R. Crim. P. 16(c). For purposes of this request, "the government" includes the Department of Justice, the Federal Bureau of Investigation, the Internal Revenue Service, the Washington, D.C., Metropolitan Police Department, and any other participating federal, state, or local governmental agency. As I learn more about this case, I anticipate making supplemental requests.



**O R R I C K**

William R. Cowden, Esquire
Daniel P. Butler, Esquire
Catherine K. Connelly, Esquire
May 8, 2007
Page 2


Please provide the following materials:

I.    <u>Statements</u>

    1.    Any and all relevant written or recorded statements made by Deborah Jeane
Palfrey. Fed. R. Crim. P. 16(a)(1)(A). This request includes any letters,
memoranda or other documents written, signed, or adopted by Ms. Palfrey within
the possession, custody or control of the government, the existence of which is
known, or by the exercise of due diligence may become known to the
government.

    2.    The substance of any oral statements which the government intends to offer in
evidence at trial which were made by Ms. Palfrey, in response to interrogation by
any government agent. Provide all recordations of these statements, including,
but not limited to, reports, memoranda or notes prepared by government agents,
investigators or attorneys, and grand jury transcripts of testimony by third parties
recounting the statements. Fed. R. Crim. P. 16(a)(1)(A).

    3.    Identify the names, assignments, and locations of all agents and investigators
present at the time any oral statement referred to in request I. 2. was made.

    4.    Any and all statements made by Ms. Palfrey to third parties, including unindicted
co-conspirator(s), relating to the facts alleged in the Indictment. This request
includes any and all recordations of such statements made by third parties,
including, but not limited to, grand jury testimony, written statements to the
United States Department of Justice, the Federal Bureau of Investigation, the
Internal Revenue Service, the Washington, D.C., Metropolitan Police Department,
or any other governmental agency, and reports or memoranda prepared by agents
or investigators regarding any oral statement by such third party. <u>See United
States v. Thevis</u>, 84 F.R.D. 47, 55 (N.D. Ga. 1979). This request encompasses
any statements made by any agents or employees of the defendant to government
officials or attorneys that the government considers to be statements made by
Ms. Palfrey.



**ORRICK**

William R. Cowden, Esquire
Daniel P. Butler, Esquire
Catherine K. Connelly, Esquire
May 8, 2007
Page 3

5. Provide the following statements:

(a) Any and all statements as to which Ms. Palfrey has manifested her adoption or belief in its truth regarding the matters under indictment. Fed. R. Evid. 801(d)(2)(B).

(b) Any statement made by another which was purportedly authorized by Ms. Palfrey or is deemed to be an admission of Ms. Palfrey. Fed. R. Evid. 801(d)(2)(A) and 801(d)(2)(C).

(c) Any statement by an agent of Ms. Palfrey concerning a matter within the scope of his/her agency or employment made during the existence of such a relationship. Fed. R. Evid. 801(d)(2)(D).

(d) Any statement by an indicted or unindicted co-conspirator made during the course of, and in furtherance of, the conspiracy alleged in the Indictment. Fed. R. Evid. 801(d)(2)(E). This request includes any and all recordations of such statements made by third parties, including, but not limited to, grand jury testimony, written statements to the United States Department of Justice, or any other governmental agency, and reports or memoranda prepared by investigators regarding any oral statement by such third party. See United States v. Thevis, 84 F.R.D. 47, 55 (N.D. Ga. 1979).

## II.    **Defendant's Prior Record**

A copy of any prior criminal record of Deborah Jeane Palfrey. Fed. R. Crim. P. 16(a)(1)(B). This request also includes criminal records from countries other than the United States.



ORRICK

William R. Cowden, Esquire
Daniel P. Butler, Esquire
Catherine K. Connelly, Esquire
May 8, 2007
Page 4


### III.    Documents and Tangible Objects

1.    All books, papers, documents, photographs, computers, PDA's or tangible objects, or copies or portions thereof (hereinafter referred to as "documents") which were obtained from, or belonged to Ms. Palfrey. This request includes any documents obtained from, or which were the property of, any alleged employee, agent, business associate, client, or professional consultant of Ms. Palfrey. Fed. R. Crim. P. 16(a)(1)(C).

2.    All documents which the government intends to use at trial as evidence in its case-in-chief. Fed. R. Crim. P. 16(a)(1)(C).

### IV.    Reports of Examinations and Tests

1.    All results or reports of physical or mental examinations, scientific tests, or experiments conducted in connection with any investigation of the charges contained in the Indictment, including, but not limited to: (a) all handwriting exemplars, opinions of handwriting experts, handwriting or document analyses, and all documents used in such analyses; (b) all voice identification analyses, opinions of voice identification experts; (c) all fingerprint and palm print exemplars, comparisons and opinions of fingerprint experts, and all documents relating to those opinions; (d) all psychological tests performed upon any government witness, and all documents referring or relating to such tests; (e) all polygraph examinations, psychological stress evaluations, hypnotic procedures, or any other scientific procedures devised to determine whether an individual is telling the truth or to refresh a witness' memory, and all documents referring or relating to such examinations; (f) all financial analyses, opinions of financial analysts, and all documents relating to those opinions and analyses. Fed. R. Crim. P. 16(a)(1)(D).

2.    Provide the name and address and curriculum vitae of any expert witness the government intends to call; identify the subject area of expertise; produce any reports provided by said witness; and produce copies of their testimony regarding the area of their proclaimed expertise.

O

ORRICK

William R. Cowden, Esquire
Daniel P. Butler, Esquire
Catherine K. Connelly, Esquire
May 8, 2007
Page 5

V.    **Exculpatory and Impeaching Material**

Any and all information, statements, tangible objects, records, documents or other evidence, not otherwise described above, which must be produced as tending to exculpate the defendant or aid in his defense, as required by Brady v. Maryland, 373 U.S. 83 (1963), and its progeny. See, e.g., United States v. Bagley, 473 U.S. 667 (1985); Giglio v. United States, 405 U.S. 150 (1972); Giles v. Maryland, 386 U.S. 66 (1967); and United States v. Agurs, 427 U.S. 97 (1976). Specifically:

1.    Any and all exculpatory material or evidence in the government's possession, custody, or control or otherwise known to the government.

2.    Any and all impeaching evidence as to an unindicted co-conspirator, or any other witness the government intends to call in its case-in-chief, including, but not limited to, each different account of the facts of this Indictment memorialized in any reports, memoranda, or notes prepared by any investigator or Assistant United States Attorney or any other individual involved in the investigation and prosecution of this matter, signed or unsigned statement, or sworn testimony in any proceeding.

3.    All records and information revealing prior criminal convictions, guilty verdicts or juvenile adjudications, including, but not limited to, relevant "rap sheets," of each unindicted co-conspirator, each individual identified in the Indictment, or any other witness the United States intends to call at trial. This request includes prior records and convictions from countries outside of the United States.

4.    All records and information revealing prior or subsequent misconduct, criminal acts, or bad acts of any unindicted co-conspirator, individual identified in the Indictment, or witness the United States intends to call at trial, including, but not limited to, allegations of criminal conduct of which the prosecution knows or, through reasonable diligence, should have reason to know, including arrests. This request specifically includes prior misconduct, criminal acts, or bad acts that may have occurred in countries outside of the United States.



ORRICK

William R. Cowden, Esquire
Daniel P. Butler, Esquire
Catherine K. Connelly, Esquire
May 8, 2007
Page 6

5.  All oral or written considerations or promises of consideration given during the course of the investigation and preparation of this matter by any law enforcement official, including prosecutors, agents, police, or informers, to or on behalf of any witness the United States intends to call at trial, or any such consideration or promises expected or hoped for by any such witness at any future time. Such "considerations" refer to anything which arguably could be of value or use to a witness, including, but not limited to, formal or informal, direct or indirect, leniency, favorable treatment, recommendations or other assistance with respect to any pending or potential criminal, civil, administrative, parole, probation, pardon, or clemency matter, or other matter involving the local, state or federal government, any other authority, or other parties; civil, criminal, or tax immunity grants; relief from forfeiture; payments of money, rewards or fees, witness fees, or special witness fees; provisions of food, clothing, transportation, legal services, or other benefits; placement in a "witness protection" program; informer status of the witness; letters to anyone informing the recipient of the witness' cooperation; and anything else which arguably could reveal an interest, motive, or bias of the witness in favor of the prosecution or against any defendant, or act as an inducement to testify or to color his testimony. Giglio v. United States, 405 U.S. 150 (1972).

6.  All statements -- formal or informal, oral or written -- by the United States, its agents or representatives, to any person (including counsel for such person) whom the prosecution intends to call as a witness at trial pertaining in any way to the possibility, likelihood, course, or outcome of any government action -- local, state or federal, civil or criminal -- against the witness or anyone related by blood or marriage to the witness.

7.  All threats, express or implied, direct or indirect, or other coercion directed against any witness the United States intends to call at trial; criminal prosecutions, investigations, or potential prosecutions pending or which could be brought against any such witnesses; any probation, parole, deferred prosecution, or custodial status of any such witness.

# O
## ORRICK

William R. Cowden, Esquire
Daniel P. Butler, Esquire
Catherine K. Connelly, Esquire
May 8, 2007
Page 7

8.    A list of all requests, demands, or complaints made to the government by the witness for favorable governmental action on his behalf (regardless of whether or not the government has agreed to provide any favorable action).

9.    Any material not otherwise listed which reflects or evidences the motivation of the witness to cooperate with the government or reflects or evidences any bias or hostility of the witness against the defendant.

10.   Court records for judicial proceedings in any criminal case involving any person who is a potential prosecution witness at the trial in this action.

11.   Any statement of any potential government witness, or documents, including, but not limited to, grand jury testimony; written statements; oral statements memorialized in reports, memoranda or notes by investigators or prosecutors which the United States knows or, through reasonable diligence, should have reason to know is false.

12.   Federal, state and local tax returns made or executed by any potential government witness which the United States knows, or through reasonable diligence, should have reason to know contains false statements or material omissions.

13.   Records and information identifying each occasion on which an unindicted co-conspirator has met with government investigators or a prosecutor.

14.   All medical and psychiatric reports known to the prosecutor, or which can reasonably be known to the prosecutor, concerning any witness the prosecutor intends to call at trial which may effect the witness' credibility, ability to perceive, or to relate or recall events.

15.   Copies of any and all records of law enforcement agencies reflecting intra-departmental disciplinary action taken against any law enforcement official who will testify in this proceeding, including investigations of alleged fraud, dishonesty, or theft.



**O R R I C K**

William R. Cowden, Esquire
Daniel P. Butler, Esquire
Catherine K. Connelly, Esquire
May 8, 2007
Page 8

16. Copies of any and all records of law enforcement agencies reflecting any commendations, awards, or recognition of any kind, or requests therefore, for any of the agents or police involved in this case for their work on this case.

17. Any letters written by the government to prosecutors or defense lawyers in other jurisdictions or parole or prison authorities regarding any unindicted co-conspirator or government witness.

18. The substance of any verbal communications by the government to prosecutors or defense lawyers in other jurisdictions or parole or prison authorities regarding any unindicted co-conspirators or government witness.

19. All records of attempts to investigate the involvement of other individuals in this alleged conspiracy.

**VI.    Additional Materials**

1. All statements made by any person whom the government intends to call as a witness in the trial of this matter, including, but not limited to, grand jury testimony, written statements to government agents or attorneys, and witness interview notes prepared by government agents.

2. A list of all witnesses to be called by the government in the government's case-in-chief, including disclosure of the name of any confidential informant(s). <u>Roviaro v. United States</u>, 353 U.S. 53 (1957); <u>United States v. Price</u>, 783 F.2d 1132, 1139 (4th Cir. 1986).

3. A list of all persons who have been interviewed in connection with this case whom the government does not intend to call as witnesses, but who have knowledge of the events alleged in the Indictment, and the statements, testimony and memoranda of interviews of these persons.

4. All applications pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2521 (1988), for court orders for electronic or video surveillance and applications for extensions thereof; all court



**ORRICK**

William R. Cowden, Esquire
Daniel P. Butler, Esquire
Catherine K. Connelly, Esquire
May 8, 2007
Page 9

orders pertaining to electronic or video surveillance and renewal orders; all interim reports by the government to the court on such surveillance; logs of any such surveillance; all tapes resulting from such surveillance; all transcriptions resulting from such surveillance, including currently available transcriptions, even if in draft form; all applications for extending the date for notification of such surveillance; all court orders extending the date for such notification; all papers submitted to the Court concerning sealing of electronic or video surveillance tapes; all consensual tape recordings and transcriptions.

5.    Any Court-ordered mail covers and applications therefore obtained in this case, and any evidence in the government's possession, custody, or control obtained through a mail cover.

6.    Identify each and every unindicted co-conspirator, including those not indicated in the Indictment.

7.    All statements made by a prosecuting attorney during any grand jury session recorded pursuant to Fed. R. Crim. P. 6(e)(1), including, but not limited to, opening statements, reviews, explanations, assessments, or comments upon the testimony of any witness; and summaries or reviews of the evidence prior to voting by the grand jury on the Indictment.

8.    Identify and produce all grand jury testimony relevant to Ms. Palfrey's state of mind regarding intent and knowledge of racketeering, travel in aid thereof, or conspiring to launder funds.

## VII.    Other Crimes Evidence, Rule 404(b)

I request all evidence of other crimes, wrongs, or acts that the government seeks to introduce against Ms. Palfrey that could arguably be used as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or predisposition to commit the crimes charged.



# ORRICK

William R. Cowden, Esquire
Daniel P. Butler, Esquire
Catherine K. Connelly, Esquire
May 8, 2007
Page 10

I look forward to your response to these requests.

Sincerely,

Preston Burton

PB/maa

cc:     Deborah Jeane Palfrey (via e-mail)



**U.S. Department of Justice**

United States Attorney

*District of Columbia*

---

*Judiciary Center*
*555 Fourth St. N.W.*
*Washington, D.C. 20001*

May 24, 2007

**DELIVERED BY HAND**

Preston Burton, Esquire
Bree Murphy, Esquire
Orrick, Herring, and Sutcliffe, LLP
Washington Harbor
3050 K Street, NW
Washington, DC 20007-5135

      Re:    <u>United States v. Deborah Palfrey</u>,
               Criminal Case No. 07-46 (GK)

Dear Mr. Burton and Ms. Murphy:

      We are writing to provide you with certain information in response to your May 8, 2007 request for discovery. All discovery is provided pursuant to the May 22, 2007 Stipulated Protective Order. We have enclosed a copy of that Order as well.

**I.    Discovery**

    **A.  Documents**

    Copies of the following documents are enclosed with this letter:

- PD 163.
- January 18, 2007 Memo from Inspector Bame to Inspector Couvillion.
- Chart labeled "Files Changed on Q-1 During Imaging."
- Search Warrant, including Affidavit in Support of Search Warrant, Search Warrant Return, and Search Warrant Inventory Sheets.
- Court documents relating to your client's prior conviction.

**B.    Evidence**

**1.    Physical Evidence**

Please find enclosed two CDs. One CD contains scanned versions of documents, including, but not limited to:

- Documents seized from your client's home during the execution of the October 2006 search warrant, including appointment books, escort binders, calendars, and advertisements.
- Postal Money Orders received by your client.
- Account statements and information from Charles Schwab and Wells Fargo.

The second CD contains files found on your client's computer.

At trial the government may seek to introduce the physical evidence that is described on the attached reports and those items contained on the CDs.

**2.    Inspection**

Upon request, you are entitled to inspect and copy or photograph certain books, papers, documents, photographs, tangible objects, buildings or places that are within the possession, custody or control of the government. *See* Fed. R. Crim. Pro. 16(a)(1)(E). If you would like to view any of the evidence listed above or described on the attached police reports, please contact me immediately and we can make arrangements for you, or your certified investigator, to inspect the evidence. These arrangements will include a condition that you not raise any objection to the admissibility of such evidence at trial because of the break in the chain-of-custody occasioned by your inspection.

**3.    Reports of Examinations or Tests and Experts**

The government may call an expert witness at trial to testify about prostitution and the business of escort services. Per your request in your discovery letter, we will provide you with information about that expert, including his/her qualifications and a summary of his/her proposed areas of testimony at a later date.

**C.    Fed.R.Evid. 404(b) Evidence**

The government may file a motion in limine seeking admission of Fed.R.Evid. 404(b) evidence. Per your request in your discovery letter, we will provide you with a notice of proposed 404(b) evidence at a later date.

2

**D.    Defendant's Rule 16 Statements**

The government is unaware of any statements made by your client to law enforcement agents covered by Fed.R.Crim.P. 16. If any statements come to government counsel's attention after further discussions with witnesses, you will be informed of such in a reasonable time.

**E.    Criminal Record**

Please refer to the Pretrial Services Report provided at arraignment for information about your client's record. As noted above, documents pertaining to your client's prior criminal conviction are included with this letter. We will notify you in writing if the government learns of any additional convictions.

**F.    Government's Discovery Requests**

- notice of documents and tangible objects the defendant expects to introduce pursuant to Fed.R.Crim.P. 16(b)(1)(A);

- a Jencks request for all prior statements of any defense witness (excluding the defendant) pursuant to Fed.R.Crim.P. 26.2;

- a Lewis request (for which we request the name, date of birth, sex, and social security number of each defense witness prior to trial); and

- a request for information pertaining to any expert or scientific testimony or evidence pursuant to Fed.R.Crim.P. 16(b)(1)(B) and (C).

Pursuant to Fed.R.Crim.P. 16(b)(2), we note our continuing request to receive any material pursuant to Rule 16(b) as the case proceeds.

**II.    Other Information (Brady / Lewis / Giglio)**

The government is unaware of any specific Brady or Giglio information at this time, but is aware of its continuing duty to disclose such information should it become known. Lewis information for the government's witnesses will be provided to you at the time of trial.

3

If you have any questions about the information provided above, please contact us.

Sincerely,

Jeffrey A. Taylor
United States Attorney

Daniel Butler
Catherine K. Connelly
Assistant United States Attorneys
555 4th Street, N.W.
Washington, D.C.  20530

4

# MONTGOMERY BLAIR SIBLEY, CHARTERED

### 50 WEST MONTGOMERY AVENUE
### SUITE B-4
### ROCKVILLE, MARYLAND 20850

| MONTGOMERY BLAIR SIBLEY | ADMITTED TO PRACTICE: |
|---|---|
| 301-251-5200 | FLORIDA |
| 202-478-0371 (E-FAX) | NEW YORK |
| SIBLEY@CIVILFORFEITURE.COM | DISTRICT OF COLUMBIA |

October 30, 2007

*Via  E-Mail*
Daniel Butler
William Cowden
*Via U.S. Mail and E-Mail*
Catherine Connelly
Assistant United States Attorney
Criminal Division, Asset Forfeiture Unit
555 4th St., N.W., Room 4818
Washington, D.C. 20530

> Re:    *United States v. Deborah Jeane Palfrey*
>        Criminal Case: 07-046 (GK)

Greetings:

I write – as I must – to address a number of outstanding issue in hope of resolving them without Court action.

1.    **Hand-Delivery** - I confirm that I picked up the 34 post office security tapes yesterday. I trust my hand-delivered copy of Defendant's Notice of Filing Supplemental Material in Support of Claim of Selective Prosecution was received by you.

2.    ***Brady*** - You write in your June 29, 2007, letter to Preston Burton that "The government is well aware of its obligation to disclose all such information requited by *Brady* . . .; we have made timely disclosure of all such information and will continue to do so, if any such new information is discovered." This appears to be a false statement.

As a preliminary matter, your obligation to disclose *Brady* material was triggered – regardless of a demand by the Defendant – when you commenced settlement negotiation on February 24, 2007. *See*: *United States v. Persico*, 164 F.3d 796, 804 (2d Cir. 1999)("The Government's obligation to disclose *Brady* materials is pertinent to the accused's decision to plead guilty; the defendant is entitled to make that decision with full awareness of favorable (exculpatory and impeachment) evidence known to the Government. See *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir.), reh'g

Daniel Butler, Catherine Connelly, William Cowden
Assistant United States Attorneys
October 30, 2007
Page 2

denied, 136 F.3d 262 (2d Cir.1998)."  Accordingly, it is clear you have materially breached *Brady*
obligations by withholding that information at that time.

Second, your letter of May 24, 2007, to Preston Burton indicates that you are providing "two
CDs.  One CD contains scanned versions of documents . . .  The second CD contains files found on
your client's computer."  Preston had printed every document on the first CD and turned over those
documents to me.  My extensive review of those documents reveals that there are only two of some
one hundred and thirty-two copies of the contracts and security deposits Jeane had each independent
contractor/escort sign.  Plainly, these contracts which require each independent contractors to
provide solely legal sexual services to the customers of the escort service are exculpatory and the
non-production of them by you is an actionable *Brady* violation.  However, admitting the possibility
that there has been some mis-understanding, I seek your explanation for the non-production of these
documents prior to moving for sanctions.

3. **May 24, 2007 Document Production** - I have four issues in this regard.  First, the
first CD produced apparently has been damaged, as I am unable to read the contents though I have
tried now on three separate computers.  Accordingly, I request a duplicate.

Second, I want to personally inspect all the documents that I am entitled to see pursuant to
Rule 16.  I propose such inspection occur on November 14 or 15 starting in the morning as I expect
the inspection to take most of the day.  I will be making copies of those documents at that time with
a digital camera.

Third, throughout the materials seized from my client's home, there are redactions of the
identification information of the escorts.  I know of no basis for such an action and ask that the
documents be produced without such redaction.  Again, if I am in error, please advise, otherwise,
I will be seeking a Court order in this regard.

Fourth, in regard to statements by my client, I am advised that she did in fact speak to
Meredith Newman - USPS Inspector Supervisor, shortly after the search of her home.  Hence, I ask
you to confirm that there are no such statements known to Inspector Newman.

Last, your letter of May 24 failed to address the seven specific categories of materials that
Preston sought from you in his letter of May 8, 2007.   Accordingly, please review that letter and
respond to each category and sub-category with a definitive answer so the issues raised in that letter
can be clearly crystalized.

4. **October 22, 2007 Additional Information** - Your letter of that date encloses
"additional information" which plainly included *Jenks*-type material which should have been
disclosed on September 7, 2007, when the suppression hearing was suppose to commence.

Daniel Butler, Catherine Connelly, William Cowden
Assistant United States Attorneys
October 30, 2007
Page 3

Accordingly, please advise if you are done producing the requisite material or whether I must seek an order to prevent this "Chinese water torture" approach to discharging your obligations.

      5.   **September 6 & 7, 2007 *Jenks* Production** - I have reviewed the materials produced to Preston on these dates in advance of the scheduled suppression hearing and have the following issues:

      a.   **May 20, 2002 Hines Report** - The three appendixes referenced in the Report have not been provided. Please produce those appendixes.

      b.   **Maria Couvillon March 1, 2007 Grand Jury Testimony** - I noticed on page 10 that there is a twelve minute gap in the record. Please confirm that the stenographer remained in the grand jury room during that period and took notes of whatever discussion was had. Otherwise, Fed.R.Crim.P. 6(e)(1) may have been violated.

      c.   **December 19, 2005 Grand Jury Testimony** - I read testimony that sexual intercourse was not a condition of employment. This again is a clear *Brady* type statement which should have been disclosed on February 24, 2007, but most certainly was not. Again, I ask you to confirm that you have now turned over <u>every</u> similar statement.

      6.   **Order of October 18, 2007** - In that order [D.E #136], the Court directed "Defendant is entitled to know the name of that witness." Please provide that, and any other similarly situated witness name, promptly to avoid forcing me to file a motion to compel.

      Finally, I calculate that December 21, 2007, is sixty (60) days before February 19, 2007, trial and hence triggers your obligations under the Court's order of August 16, 2007, [D.E. #89].

      I look forward to your prompt response to these issues and, on my part, am available to speak about them like professionals do if you are so inclined.

Yours,



**U.S. Department of Justice**

United States Attorney

*District of Columbia*

---

*Judiciary Center*
*555 Fourth St. N.W.*
*Washington, D.C. 20001*

November 9, 2007

Montgomery Blair Sibley, Esquire
1717 K Street, NW
Suite 600
Washington, DC 20036

> Re:     United States v. Deborah Jeane Palfrey,
>             Criminal Case No. 07-46 (GK)

Dear Mr. Sibley:

This responds to your correspondence dated October 30, 2007. In your letter, you made several requests for certain documentation as discovery or what you believe might be Brady material. We respond as set forth below.

### 1. Documents delivered

We received your hand-delivered copy of Defendant's Notice of Filing Supplemental Material in Support of Claim of Selective Prosecution.

### 2. Brady allegations

As a preliminary matter, you classify testimony and documents as Brady which, in the government's opinion, do not, in fact, constitute Brady. Furthermore, your contentions regarding Brady and its progeny suggest that you consider those cases as providing a discovery device. However, as the Supreme Court held in Weatherford v. Bursey, 429 U.S. 545, 559 (1997), "[t]here is no general constitutional right to discovery in a criminal case, and Brady did not create one; as the Court wrote recently, 'the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded . . .'"; see United States v. Mejia, 448 F.3d 436, 444 (D.C. Cir. 2006), cert. denied, 127 S.Ct. 989 (2007). With respect to disclosure required under Giglio v. United States, 405 U.S. 150 (1972), it is our intention to provide this information at the same time we disclose Jencks material, in advance of the witnesses testimony so that such information may be used during cross-examination. See also United States v. Phillips, 854 F.2d 273, 276 (7th Cir. 1988). It is our position, consistent with the law of this Circuit, that the government satisfies its discovery obligations where it provides impeachment styled information concerning its witnesses in time for defendants to make use of it. United States v. Wilson, 160 F.3d 732, 742 (D.C. Cir. 1998), cert. denied, 528 U.S. 828 (1999).

Your first contention is that the government was required to provide all <u>Brady</u> material before having any plea discussions with defendant in the above-referenced matter. You cite two Second Circuit cases in support of your contention. Both those cases, whatever precedential value they might have had in this Circuit, predate the Supreme Court's decision in <u>United States v. Ruiz</u>, 536 U.S. 622 (2002). In <u>Ruiz</u>, the Court held that the Constitution does not require the prosecution to disclose impeachment information relating to informants or any other witnesses before entering a binding plea agreement with a defendant. In this case, there was no plea entered into by defendant and the only information that you have received under <u>Brady</u> and its progeny is impeachment information. Accordingly, your contention is without merit.

Next, you inquire as to whether we have any more, beyond the ones already provided to you, of the "contracts" between defendant and the escorts. Enclosed please find a third CD containing such "contracts," as well as additional documents. As to your contention that non-disclosure of other similar documents potentially is "an actionable <u>Brady</u> violation[,]" that assertion is incorrect. This is so because you clearly are aware, as shown by your letter, of the existence of such documents and can use that knowledge for whatever legitimate reason you choose. <u>See</u> <u>United States v. Iverson</u>, 648 F.2d 737, 738 (D.C. Cir. 1981) ("no violation of due process results from prosecutorial nondisclosure if defense counsel both knows of the information and is able to make use of it but still chooses, for tactical reasons, not to do so.").

3. <u>May 24, 2007 production</u>

Pursuant to your first request, enclosed please find a duplicate copy of the CD provided to Preston Burton on May 24, 2007.

In terms of your request to "personally inspect all the documents [you are] entitled to see pursuant to Rule 16," you have already done so. Fed. R. Crim. P. 16(a)(1)(E) requires the government to permit you "to inspect . . . books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items . . . ." By providing you with scanned copies of items material to preparing your client's defense, items seized from the defendant, and items the government intends to use in its case-in-chief at trial, the government has fulfilled its Rule 16 obligations with respect to "documents" in the government's possession and "documents" seized from the defendant. As such, the only "tangible objects" which are subject to the personal inspection you request are the gold coins seized from the defendant's home. If you would like to view those, please advise us in writing and we will make arrangements for you to do so on November 15, 2007, at 555 4ᵗʰ Street, NW, Washington, DC.

Your third point under this heading states that you are not aware of any basis for "redactions of the identification information of the escorts" and requests that we point out any error in your analysis on this point. In fact, the Court has already addressed this issue in prior orders. <u>See</u> Dkt. No. 136 at 10 ("[t]he redacted material is the names and identifying information about confidential informants – material to which she is not entitled. <u>See</u> <u>Rovario v. United States</u>, 353 U.S. 53, 62 (1957)"); <u>see</u> <u>United States v. Mejia</u>, 448 F.3d at 444 ("defendant contends that the government was required to disclose both the substance of the cooperating witnesses' prior statements and their

2

identities prior to trial.  We are perplexed by this claim, and not only because the law is generally to the contrary").

As to your fourth point, it is our understanding that there are no Rule 16 statements by your client to law enforcement, including to Inspector Newman.   Please note, however, that Inspector Newman is presently out of the office until the middle of the month.  Upon her return, we will speak with her and, if our understanding is incorrect, notify you of that at that time.

4.  October 22, 2007 information

You complain about additional information that you received on October 22, 2007, contending that you should have received it earlier.  In fact, the Jencks Act, 18 U.S.C. § 3500, by its language, only requires that materials covered by it be turned over after the witness has testified on direct examination.  We have provided materials earlier than that simply as a courtesy, but this courtesy should not construed as an obligation on our part or a privilege on defendant's.

5.  September 6 and 7, 2007 Jencks production

a.  Inspector Hines' May 20, 2002 report

You request the "three appendices referenced" in Inspector Hines' May 20, 2002 report.  We are unclear as to what this request refers.  The May 20, 2002 letter from Inspector Hines references five exhibits.  However, the spreadsheets referenced by Inspector Hines constitute Jencks.  As such, they will be provided at the appropriate time.  Furthermore, the December 27, 1990 search warrant affidavit referenced by Inspector Hines was provided to you via CD on October 22, 2007.

b.  Inspector Couvillon's March 1, 2007 testimony

You reference a twelve minute gap in the record during Inspector Couvillon's testimony and request confirmation that the stenographer remained in the grand jury room during that period.  The court reporter remains in the grand jury room any time a prosecutor is addressing the grand jurors on a case related matter.

c.  December 19, 2005 testimony

As to your Brady contention herein, please see the discussion above regarding the obligations of Brady and its progeny.

6.  Order of October 18, 2007, Dkt. No. 136

You request the name  of the witness referenced in the Court's October 18, 2007 Order.  As you are aware, on November 7, 2007, the witness' attorney filed an expedited Motion to Intervene and Motion for Protective Order.  (See Misc. Case No. 07-460).  The Court has not yet ruled on this Motion.  As such, the government believes the witness' expedited motion to intervene should be

heard and resolved before we provide any additional information about the witness. The government intends to file a motion asking the Court for authority to delay naming the witness until this issue is resolved.

You also request "any other similarly situated witness name." The Court's October 18, 2007 Order relates to only one witness. As such, the government will not be providing any additional names at this time. We do, however, intend to comply with our obligations under <u>Brady</u> and its progeny.

Finally, as to your contention about the government's obligations 60 days before trial, the definite trial date the Court has identified is April 8, 2008, not February 19, 2008. Until that is modified by the Court, that is the date we will use for the obligations on the government.

If you have any questions about the information provided above, please contact us in writing.

Sincerely,

Jeffrey A. Taylor
United States Attorney


/ s /
_____
Daniel P. Butler
Catherine K. Connelly
Assistant United States Attorneys
555 4th Street, N.W.
Washington, D.C. 20530


Enclosures

4