**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 07-046 (GK)** |
| | : | |
| v. | : | |
| | : | |
| **DEBORAH JEANE PALFREY,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE INDICTMENT BASED OF ALLEGED BRADY VIOLATIONS OR, ALTERNATIVELY, SEEKING PRODUCTION OF ALL EXCULPATORY PORTIONS OF THE GRAND JURY TRANSCRIPTS (DKT. NO. 155)**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to defendant's motion to dismiss the indictment based on alleged <u>Brady</u> violations or, alternatively, for an order requiring the government to disclose all exculpatory portions of the grand jury transcripts. Dkt. No. 155. Defendant primarily argues that the government was required to disclose information under <u>Brady</u> and its progeny before entering into plea discussions with defendant. As will be discussed below, defendant's argument is contradicted by the United States Supreme Court's holding in <u>United States v. Ruiz</u>, 536 U.S. 622 (2002), especially since no plea was reached. As to defendant's alternative argument regarding production, the government is timely complying with its obligations under <u>Brady</u> and its progeny. Accordingly, the government respectfully submits that defendant's motion is without merit and should be denied.

**A. <u>Factual Background</u>**

1. In June of 2004, the United States Postal Inspection Service and the Internal Revenue Service Criminal Investigation Division began an investigation into Pamela Martin and Associates. The defendant owned and operated Pamela Martin and Associates.

2.Legal proceedings involving defendant began on October 1, 2006, when law enforcement officials executed a search warrant at defendant's house. Contemporaneously, law enforcement officials executed seizure warrants, and instituted a civil forfeiture proceeding against property that defendant acquired or maintained with criminal proceeds. United States v. 803 Capitol Street, et al., Civil Action No. 06-1710 (GK).

3.On February 24, 2007, the attorney for defendant on the civil matter, Montgomery Blair Sibley, her then-criminal attorney, A. J. Kramer, and the government attorneys met at the United States Attorney's Office. The purpose of this meeting was to discuss the possibility of a global resolution of the civil and soon-to-be-filed criminal matter against defendant. The meeting was unsuccessful in reaching a global resolution.

4.On March 1, 2007, a federal grand jury in the District of Columbia returned an indictment against defendant charging her with numerous federal violations, including RICO, interstate transportation in aid of racketeering, and conspiracy to commit money laundering, along with related forfeiture allegations. These charges relate, as the Court is aware, to defendant's alleged operation of an interstate prostitution business, Pamela Martin and Associates, the proceeds of which were sent to defendant through the U.S. Mail.

5.On September 6 and 7, 2007, government counsel turned over to defendant's then-criminal attorney Jencks material for the then-planned September 7, 2007, hearing on defendant's previously filed motion to suppress evidence taken during the search of defendant's house. The hearing on that motion is now scheduled for February 8, 2008.

6.On November 5, 2007, defendant filed this motion to dismiss the indictment based on the government's alleged failure to provide defense counsel with exculpatory evidence prior to

the discussions on February 24, 2007, of a potential global resolution of the civil and criminal matters. That is, defendant asserts that the Jencks material she received had in it "substantial evidence favorable to the guilt of the Defendant." Def.'s Mot. at 2.[1] She then speculates that the government has other such evidence in other grand jury transcripts. Id.

### B. Discussion

Defendant's primary argument is that, "for failing to disclose exculpatory information prior to entering into plea negotiations on February 10 [sic], 2007, the indictment must be dismissed." Def.'s Mot. at 4 (emphasis in original). Defendant's contention is without merit.

### 1. Defendant's Motion to Dismiss the Indictment is Contrary to the Law

Assuming solely for the sake of argument that defendant's factual contention is correct, that is, that the government failed to disclose exculpatory information prior to entering plea negotiations, her legal argument fails, that is, that the indictment must be dismissed. The United States Supreme Court, in United States v. Ruiz, 536 U.S. 622 (2002), held that the Constitution does not require the prosecution to disclose impeachment information relating to informants or any other witnesses before entering a binding plea agreement with a defendant. In this case, there was no plea entered into by defendant and the only information that defendant has received from the government under Brady and its progeny is potentially impeachment information. Even if there had been a plea reached, and the Court found that the government had withheld material exculpatory evidence, the remedy would be to allow the defendant to make a motion to withdraw her plea, not dismissal of the indictment. See, e.g., United States v. Evans, 888 F.2d 891, 897 n. 5 (D.C. Cir. 1989), cert. denied

---

[1] The government does not necessarily agree with defendant's characterization of the Jencks material, *i.e.*, that it contains "substantial evidence favorable to guilt of the defendant." Nevertheless, because she now has the material, she can use it as appropriate at the hearing and trial.

sub nom. Curren v. United States, 494 U.S. 1019 (1990) (defendant claimed he was entitled to a dismissal; Court found "that where a Brady violation requires a remedy, relief is afforded by mistrial rather than dismissal, Giglio v. United States, 405 U.S. 150, 154 . . . (1971)").

Defendant, in her pleading, did not address Ruiz. Instead, other than the general citations to Brady, defendant as authority cites two Second Circuit cases, United States v. Avellino, 136 F.3d 249, 255 (2nd Cir.), reh'g denied, 136 F.3d 262 (2nd Cir. 1998); Tate v. Wood, 963 F.2d 20, 24 (2nd Cir. 1992), and quotes from United States v. Adamo, 742 F.2d 927 (6th Cir. 1984), cert. denied sub nom. Freeman v. United States, 469 U.S. 1193 (1985). Def.'s Mot. at 3-4. In the Second Circuit cases cited by defendant, both of which pre-date Ruiz, the court, however, did not find a Brady violation. In Avellino, the court found "there was no Brady violation" and affirmed the conviction 136 F.3d at 262. In Tate, the court of appeals simply remanded the case for an evidentiary hearing with respect to the effect of alleged non-disclosure of allegedly favorable material on the agreement to plead guilty. 963 F.2d at 24-25. The court did not invoke the remedy sought by defendant in this case, that is, dismissal.

As to Adamo, defendant quotes the first two sentences in a paragraph from that opinion, but leaves out the complete paragraph, which gives it its meaning. The complete quote is as follows:

> Finally, our approach does not render our Courts powerless against a prosecutor who abuses the office, for the power to exercise supervisory control over the prosecutor to protect the integrity of the judicial system remains. This power includes the authority to dismiss an indictment when appropriate. However, such supervisory power should be exercised, in the words of the [United States v.] Nembhard, 676 F.2d 193, 200 (6th Cir. 1982)] panel, sparingly, "and only on a showing of demonstrated and longstanding prosecutorial misconduct," 676 F.2d at 199, (citing decisions of both the Second and Ninth Circuits). Since [defendants] did not demonstrate longstanding prosecutorial misconduct, we hold that claims that the trial judge erred in failing to hold hearings on the motions to quash the indictment, April Grand Jury, 587 F.2d at 892, and to exercise supervisory control are unfounded.

742 F.2d at 942.[2]  Again, the court did not grant the remedy defendant seeks here.

### 2. The Government is Providing Materials Under Brady and it Progeny in a Timely Manner; Defendant's Motion to Disclose Earlier is Without Merit

Alternatively, defendant, without citing any authority, requests the Court to order the government to disclose all exculpatory portions of grand jury transcripts. Def.'s Mot. at 4-5. As stated above, whatever information the government has, at most, is covered under Giglio v. United States, 405 U.S. 150 (1972). With respect to disclosure required under Giglio, it is the government's intent to provide this information at the same time it discloses Jencks material, in advance of the respective witness' testimony so that such information may be used during cross-examination. See United States v. Phillips, 854 F.2d 273, 276 (7th Cir. 1988); United States v. Presser, 844 F.2d 1275, 1283 (6th Cir. 1988). It is the government's position, consistent with the law of this Circuit, that the government satisfies its discovery obligations where it provides impeachment-styled information concerning its witnesses in time for defendants to make use of it.[3]  United States v. Wilson, 160 F.3d 732, 742 (D.C. Cir. 1998), cert. denied, 528 U.S. 828 (1999); see United States v, Edelin, 128

---

[2]   The issue in Adamo involved alleged abuse by the prosecutors of the grand jury process, i.e., the prosecutors allegedly withheld exculpatory evidence and used perjured testimony to obtain the indictment. Id. at 935.

[3]   Most of the discussion by defendant in this portion of her motion involves her quoting a prior response by the government regarding the government's timing of provide information to the defendant as to the identity of confidential informants. Def.'s Mot. at 4, citing Gov.'s Dkt. No. 117 at 4. The Court previously addressed this argument and upheld the government's position. Dkt. No. 136 at 10. Accordingly, this argument by defendant is without merit.

F. Supp. 2d 23, 38-39 (D.D.C. 2001).  See also United States v. Morrow, 2005 WL 3163806, *6 (D.D.C. 2005) (although Morrow is an unpublished opinion, the analysis and logic as to similar arguments may be of assistance to the Court).[4]

### C. Conclusion

For the foregoing reasons, the government respectfully submits that defendant's motion is without merit and should be denied.

>
> Respectfully submitted,
>
> JEFFREY A. TAYLOR
> UNITED STATES ATTORNEY
> DC Bar No. 498610
>
> /s/   *Daniel P. Butler/Catherine K. Connelly*
> _____
> Daniel P. Butler
> DC  Bar No. 417178
> Catherine K. Connelly
> Mass.  Bar No. 649430
> Assistant United States Attorneys
> 555 4th Street, N.W.
> (202) 353-9431, 616-3384
> Washington, D.C.  20530
> Daniel.Butler@usdoj.gov
> Catherine.Connelly2@usdoj.gov

---

[4] In Edelin and Morrow, basically the government was required to turn over information under Giglio, e.g., impeaching information, including benefits to confidential informants, a minimum of three days before the witness testified.  The government in this case is willing to commit to that schedule for production of impeachment information for its witnesses.