UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 07-046 (GK) |
| | : | |
| v. | : | |
| | : | |
| DEBORAH JEANE PALFREY, | : | |
| | : | |
| Defendant. | : | |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO
COMPEL DISCLOSURE AND RENEWED MOTION TO BAR
AUSAS FROM PROSECUTING THIS MATTER (DKT. NO. 166)

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this opposition to defendant's Motion to Compel Disclosure and Renewed Motion to Bar AUSAs from Prosecuting this Matter. As discussed below, this motion is completely without merit and should be denied.

A. **Factual Background**

1. In June of 2004, the United States Postal Inspection Service and the Internal Revenue Service Criminal Investigation Division began an investigation into Pamela Martin and Associates. The defendant owned and operated Pamela Martin and Associates.

2. On March 1, 2007, a federal grand jury in the District of Columbia returned an indictment against defendant charging her with numerous federal violations, including RICO, interstate transportation in aid of racketeering, and conspiracy to commit money laundering, along with related forfeiture allegations. These charges relate, as the Court is aware, to defendant's alleged operation of an interstate prostitution business, Pamela Martin and Associates, the proceeds of which were sent to defendant through the U.S. mail.

3. On September 19, 2007, defendant filed a *pro se* motion to bar the AUSAs assigned to

this case from further involvement in this matter. Dkt. No. 106.

4. On September 27, 2007, before the Court had even ruled on defendant's first *pro se* motion, defendant filed a second, similar motion to bar the AUSAs assigned to this case from further involvement in this matter. Dkt. No. 114.

5. On October 1, 2007, the government filed its combined opposition to defendant's *pro se* motion to bar the AUSAs and defendant's second motion to bar the AUSAs. Dkt. No. 117 at 7-9.

6. On October 18, 2007, the Court denied defendant's first *pro se* motion for an order barring the AUSAs (Dkt. No. 106), finding defendant's position to be "without merit." Dkt. No. 136 at 3.

7. On October 29, 2007, defendant filed a motion to reconsider the Court's denial of defendant's motion to bar the AUSAs. Dkt. No. 147.

8. On November 6, 2007, the Court denied defendant's second motion to bar the AUSAs (Dkt. No. 114), again finding that defendant's motion "lack[ed] merit." Dkt. No. 158 at 1.

9. On November 9, 2007, the government filed its opposition to defendant's motion to reconsider the Court's denial of defendant's motion to bar the AUSAs. Dkt. No. 161.

10. On November 12, 2007, the defendant filed a motion to compel disclosure and renewed motion to bar AUSAs from prosecuting this matter. Dkt. No. 166.

### B. Discussion

Defendant has now filed four separate motions seeking an order barring AUSAs Daniel P. Butler, Catherine K. Connelly, and William R. Cowden, based upon what she deems "outrageous conduct." Dkt. No. 106 at 3, Dkt. No. 114 at 1, Dkt. No. 147 at 1, Dkt. No. 166 at 1.

These motions are based upon the prosecutors' alleged disclosure of what defendant classifies as "privileged settlement communications for a malicious and improper purpose," id.; their "allegedly implicitly violating the April 12, 2007, 'gag' order of this Court and explicitly violating LCrR 57.7," Dkt. No. 106 at 3; their requirement that all communications with defendant's counsel be in writing; Dkt. No. 147 at 3; their alleged failure to disclose documents pursuant to Fed. R. Crim. P. 16, Dkt. No. 166 at 2; their alleged "failure to permit inspection," id. at 4; their alleged "improper redaction of documents," id. at 5; their alleged "failure to respond to specific requests," id. at 6; and their alleged incomplete Jencks disclosure. id. at 7.[1] Defendant's motion also accuses the Court of being somehow complicit in the government's alleged malfeasance. See id. at 8.

In defendant's most recent motion she seeks not only to bar the AUSAs prosecuting her, but she also demands that the indictment be dismissed and that the Department of Justice be sanctioned "in the amount of One Hundred Thousand Dollars ($100,000) payable to the Defendant . . . ." Id. at 8-9. Defendant's motions (and allegations) are completely without merit and should again be denied.[2] Furthermore, despite having four "bites at the apple," defendant

---

[1] Indeed, it has now reached the point where the government cannot file a motion or respond to any of defendant's correspondence without being accused of some sort of malfeasance. Defense counsel's apparent solution when he does not obtain what he wants from the government is to make inflammatory statements in court filings, despite the fact that the government's actions are entirely supported by the federal rules and caselaw. He takes the same tack when he does not get what he wants from the Court, requesting first that the Court recuse itself, see Dkt. No. 113, then that pretrial matters be referred to a magistrate, see Dkt. No. 175, that the Court reconsider its rulings, see Dkt. No. 147, or, by simply requesting the same remedy again and again, despite the fact that his requests have been denied because the allegations upon which they are based were found meritless in the past, see Dkt. Nos. 106, 114, 136, 147, 158, 166.

[2] Even where there is a discovery violation (and the government is not conceding such here), "[a] trial judge should impose 'the least severe sanction that will accomplish the desired result – prompt

has yet to cite any authority in support of her request that the AUSAs be barred, nor does she provide any authority supporting her request for dismissal of the indictment, or for the extraordinary demand that the government pay her $100,000.

    1.    <u>The government has and is complying with Fed. R. Crim. P. 16, and intends to comply with its ongoing obligations</u>

Defendant accuses the government of treating Fed. R. Crim. P. 16 as "aspirational." Dkt. No. 166 at 3. As is often the case, defendant's inflammatory statement is completely without merit. The government has met, and continues to meet, its obligations pursuant to Rule 16. For evidence of the government's good faith efforts to comply with its discovery obligations, the Court need only review the letters appended to defendant's motion. Dkt. No. 166 at 22-25 and 29-32.[3] These letters clearly demonstrate the government's compliance with Rule 16, and memorialize the volume of documents already disclosed.[4]

---

and full compliance with the court's discovery order.'" United States v. Marshall, 132 F.3d 63, 69 (D.C. Cir. 1998) (citations omitted). Normally in criminal cases, as the Court is aware, if there is a discovery dispute, the issue crystallizes, one party files a motion, and the Court rules on the motion. In this case, defendant simply moves to dismiss the indictment when she does not get what she wants when she wants it and in the format she wants it.

[3] On November 19, 2007, the government provided defendant with another discovery letter.

[4] Defendant claims that the government's failure to disclose the so-called "escort contracts" with the first two document productions caused her to suffer prejudice. Dkt. No. 166 at 4. As a preliminary matter, the government notes that two "contracts" were in fact turned over with the initial round of discovery provided on May 24, 2007. Furthermore, the signed "contracts" located in the defendant's home do not contain the language cited by defendant in her motion. And finally, it is difficult to understand how defendant can make a claim of prejudice with a straight face, as she was clearly aware, as shown by her request for such documents, of the existence of such documents and was free to use that knowledge for whatever legitimate reason she chooses. See United States v. Iverson, 648 F.2d 737, 738 (D.C. Cir. 1981) ("[n]o violation of due process results from prosecutorial nondisclosure if defense counsel both knows of the information and is able to make use of it but still chooses, for tactical reasons, not to do so."). Indeed, the defendant made use of

Defendant next accuses the government of falsely representing that it made a full disclosure of documents seized from the defendant during the execution of the search warrant at her home. In fact, the government has never made any such representation.[5] A large volume of documents were seized from the defendant's home. Given the sensitive nature of this case, and the personal information contained in the documents seized, the government has limited those who have access to these documents, thus protracting the process of scanning in the documents. Furthermore, as the Court is well aware, this matter has been moving in fits and starts for over a year now. The majority of the responsibility for this pace lies with the defendant herself. She fired two well-respected criminal defense attorneys, thus causing delays in the proceedings. As a result of these delays, which caused legitimate questions as to who actually represented the defendant at different times, and concerns about the use of discovery to intimidate and harass witnesses, the government was unable to turn over discovery at various points in the proceedings.[6]

---

her knowledge of the "contracts" as early as March 9, 2007, when she filed suit against her former employees, claiming that they had violated these "contracts." See Palfrey v. Neble, Civil Action No. 1:07-cv-461 (GK).

[5] Defendant herself misrepresents and misquotes the government's representations, as evidenced by the May 24, 2007 letter which she appended to her motion. In her motion defendant alleges that the government provided "'two CDs' which [the government] represented contained: 'Documents seized from your client's home during the execution of the October 2006 search warrant . . . .'" Dkt. No. 166 at 2-3. In fact, the government's May 24, 2007 letter makes clear that only *one CD* contained documents seized from the defendant's home during the execution of the search warrant. The remaining CD "contain[ed] files found on [the defendant's] computer." Id. at 23. This misrepresentation may seem inconsequential, but it is indicative of defendant's cavalier attitude when it comes to her presentation of the "facts" to the Court.

[6] Consider, for example, the time between March 29, 2007, when defendant first moved to fire A.J. Kramer, see Dkt. No. 21, and May 7, 2007, when Preston Burton was appointed as counsel, see Dkt. No. 40, and the time between August 23, 2007, when defendant moved for replacement of

5

Despite these delays, the government has turned over the vast majority of the documents in this case. These include not only the documents seized from the defendant's home, but also thousands of pages of financial documents, postal money orders, and express mail labels, as well as a significant amount of <u>Jencks</u> material.[7] Rule 16 presents the government with a continuing obligation, and the government will continue to produce promptly any additional materials that come within the rule's ambit.

2.  <u>Defendant's counsel is being permitted to inspect all pertinent documents</u>

In a letter dated October 30, 2007, defense counsel requested to "personally inspect all the documents [he is] entitled to see pursuant to Rule 16." Rule 16(a)(1)(E) requires the government to permit the defendant and her attorney "to inspect . . . books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items . . . ." By providing the defendant and her attorney with scanned copies of items material to the preparation of the defendant's defense, items seized from the defendant, and items the government intends to use in its case-in-chief at trial, the government has fulfilled its Rule 16

---

counsel, see Dkt. No. 93, and October 11, 2007, when the Court ruled on defendant's motion for replacement of counsel, see Dkt. No. 129. The government was also reluctant to turn over discovery until a protective order was in place. A stipulated protective order was signed on May 22, 2007. *Two days* later the government provided defendant's then-attorney, Preston Burton, with a significant volume of discovery, including a disc containing thousands of pages of documents. See Dkt. No. 166 at 22-23.

[7] Lest the Court be swayed by defendant's implication that the government is maliciously withholding documents, the government notes that in its *first* disclosure of documents on May 24, 2007, the government provided the defense with over 500 pages of law enforcement-created spreadsheets. These spreadsheets document, *inter alia*, the employees of Pamela Martin and Associates, checks paid to the defendant, postal money orders deposited by the defendant, express mailings sent to the defendant, and accounts and investments held by the defendant. The government was under no obligation to disclose these spreadsheets.

6

obligations with respect to "documents" in the government's possession and "documents" seized from the defendant. For those items which cannot be scanned, the government has offered defense counsel the opportunity to view these items. As such, the government has complied with and will continue to comply, with Rule 16.

Despite the fact that the government's actions fall <u>squarely</u> within the language and requirements of Fed. R. Crim. P. 16(a)(1)(E), defendant claims that the government should be sanctioned. Once again though, defendant provides not a shred of caselaw supporting this request. Neither of current defense counsel's predecessors, A.J. Kramer and Preston Burton, asked to photograph or copy the documents they viewed. This is relevant because the documents provided to the defense have been redacted. Mr. Sibley has stated that he plans to make "copies of [the] documents . . . with a digital camera," <u>see</u> Dkt. No. 166 at 27, i.e. to photograph the unredacted documents that have already been turned over in redacted form. The redacted information consists primarily of addresses, telephone numbers, social security numbers, driver's license numbers, and other personal information regarding the employees of Pamela Martin & Associates.[8] Furthermore, neither Mr. Kramer nor Mr. Burton have the history of harassing witnesses that Mr. Sibley has established. <u>See</u> Dkt. No. 108 at 12 - 15.

    3.    <u>There has been no improper redaction of documents</u>

Defendant next claims that the government improperly redacted personal information from the discovery provided, and thus should be sanctioned. Once again, defendant offers no

---

[8] Moreover, if, as defendant claims, "information is blocked from view due to the presence of 'sticky notes' on the documents," defendant need only provide the government with the bates numbers associated with these documents, and the government will scan in copies without said "sticky notes."

support for this request for sanctions.

As noted above, the information redacted from the discovery provided consists primarily of addresses, telephone numbers, social security numbers, driver's license numbers, and other personal non-material information regarding the employees of Pamela Martin & Associates, and potentially protected by the Privacy Act, 5 U.S.C. § 552a. The government did not redact the names of the employees, and as the Court is well aware, the defendant has phone records documenting all incoming and outgoing calls to her business, thus making it relatively simple for her to contact her former employees. As such, it is difficult to see how the defendant is in any way prejudiced by these redactions, nor has the defendant provided any legitimate reason for needing access to this personal information.

    4.    <u>The government is under no obligation to respond to discovery requests in the manner demanded by defense counsel</u>

Defendant seeks further Court intervention because the government has not responded to a discovery request in the exact format demanded by the defense. In his letter of October 30, 2007, defense counsel demanded that the government respond to each category and sub-category defined in Mr. Burton's May 8, 2007 letter. In fact, the government has addressed many of these requests through discovery. <u>See</u>, <u>e.g</u>. Dkt. No. 166 at 22 - 24 (Government's May 24, 2007 response to Mr. Burton's letter, which addresses the defendant's statements, prior conviction, and expert testimony.) The government is not obligated to direct defense counsel to the answers and information that has already been provided. Furthermore, many of the items requested in Mr. Burton's May 8, 2007 letter are not subject to disclosure at this time. <u>See</u> e.g. Dkt. No. 166 at 16, §§V1 - V19; §§VI1 - VI3. And finally, Mr. Burton's letter requests items to which the

8

Court has already ruled that the defendant is not entitled.  See Dkt. No. 166 at 20, §VI6; Dkt. No. 136 at 9.

     5.     <u>The government has met its Jencks obligations and will continue to do so</u>

Defense counsel alleges that the government failed to make a "full and complete Jen[c]ks Act disclosure as required by the Rule and Jen[c]ks on September 7th." Dkt. No. 166 at 7.  In response to this allegation, the government respectfully refers defense counsel to the Jencks Act itself.  As this Court is well aware, by statute, <u>Jencks</u> material need not be produced before the witness has testified on direct examination.  18 U.S.C. § 3500(A); Fed. R. Crim. P. 26.2(a), <u>see also</u> Court's Memorandum Opinion, Dkt. No. 136 at 10, citing <u>United States v. Algie</u>, 667 F.2d 569, 571 (6th Cir. 1982) (rejecting defense request for early production of Jencks material). Defense counsel claims that the government's failure to provide Postal Inspector Mark Hines' reports and appendices prior to the suppression hearing scheduled for September 7, 2007, constituted a <u>Jencks</u> violation.  It is difficult to understand how this is possible, as the only witness the government planned to call at that hearing was Postal Inspector Maria Couvillon. Furthermore, both the Court and defense counsel were well aware of this fact, as the government disclosed this information in open court and in a pleading filed prior to September 7, 2007.  See Dkt. No. 106 at 21 ("The government intends to call one witness at the suppression hearing: United States Postal Inspection Service Inspector Maria Couvillon.")  As such, the Jencks Act was not triggered as it relates to Inspector Hines.  In fact, at this point, the government is under no obligation to turn over any <u>Jencks</u> material for Inspector Hines.  The government has provided some <u>Jencks</u> materials during discovery simply as a courtesy, but this courtesy should not be construed as an obligation on the government's part or a privilege for the defendant.

      6.      <u>The government will comply with the Court's August 16, 2007 Order</u>

Defendant also requests that the Court direct the government to comply with the Court's August 16, 2007 Order as it pertains to pre-trial disclosure of witnesses. Such a request is unnecessary, as the government has already indicated that it has every intention of complying with the Court's order. The Court has indicated on more than one occasion that trial in this matter is set for April 8, 2008. The Court indicated that it might try to hear this matter on February 19, 2008, but thus far has given no indication that the February 19, 2008 trial date is now the applicable date. As such, until the April 8, 2008 trial date is modified by the Court, that is the date the government is using for its pre-trial disclosure obligations.

## C. Conclusion

For the foregoing reasons, the United States respectfully submits that defendant's Motion to Reconsider Court's Ruling on Defendant's Motion to Bar AUSAs should be denied.

         Respectfully submitted,

         JEFFREY A. TAYLOR
         UNITED STATES ATTORNEY
         DC Bar No. 498610

/ s / *Daniel P. Butler/Catherine K. Connelly*
_____
Daniel P. Butler
DC Bar No. 417178
Catherine K. Connelly
Mass. Bar No. 649430
Assistant United States Attorneys
555 4th Street, NW
(202) 353-9431, 616-3384
Washington, D.C. 20530
Daniel.Butler@usdoj.gov
Catherine.Connelly2@usdoj.gov