### UNITED STATES DISTRICT COURT FOR THE
### DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

                  PLAINTIFF,

VS.

DEBORAH JEANE PALFREY,

                  DEFENDANT.

_____/

**CRIMINAL CASE NUMBER: 07-046-GK**

**DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO MODIFY THE STIPULATED PROTECTIVE ORDER**

Defendant Deborah Jeane Palfrey, by and through her undersigned counsel, hereby replies to Government's Opposition to Defendant's Motion to Modify the Stipulated Protective Order and states:

### I.    THE GOVERNMENT "SHIFTS POSITIONS" ONCE AGAIN

Once again, the government "shifts positions" in order to avoid the consequences of its legal and factual positions taken before this Court.[1]

Faced with the plain fact that the §552a(a)(4) limits the scope of its restrictions to documents

---

[1] First, as this Court noted in removing the Temporary Restraining Order which restrained Defendant's release of her telephone records: "The Government's legal position has shifted several times during the course of these proceedings. . . .At oral argument, the government conceded that it cannot rely upon Section 1512 and 1514 because at this time it cannot identify any specific witnesses as required by each of those sections of the statute. " (July 5, 2007, Order, p. 3 and f/n #1, D.E. #74). Second, the government is "shifting Positions" before this Court. On March 16, 2007, apparently without consulting a single potential witness – let alone the singularly named Ms. Neble – the government rushed before this Court representing that the *Palfrey v. Neble* lawsuit was **solely** for the purposes of "witness intimidation and harassment", "retaliating against witnesses" and "done to harass and to attempt to have witnesses in a federal criminal prosecution recant testimony." Notably, this representation was made under 18 U.S.C. §1514(a)(2)(A). Now, when ordered by this Court to produce those so-called "harassed" witnesses, the government filed a witness list that does not contain a *single* "harassed" witness.

**"maintained by an agency"**, the government now asks the Court for the first time to replace the legal basis for keeping records secret from §552 to Fed. R. Crim P. 16(d)[2] or, failing that, Local Rule 57.7. This of course begs the question that the present order was entered as "agreed" by prior counsel without consultation with Defendant and has no legal basis and is therefore void as a matter of law upon its face.

## II. THE COURT SHOULD NOT LIMIT DISCLOSURE

As the Defendant expressly recognized, this Court under Federal Rules of Criminal Procedure, Rule 16(d)[3] has the authority to limit discovery. The Defendant petitions the Court to excercise that authority to permit her to publically release information concerning former escorts or customers of the Escort Service contained in Defendant's own records.

The government opposes such on the following grounds:

1. *"Defendant fails to explain why public dissemination of witnesses's names and addresses is necessary to enable her to serve them with trial subpoenas."* (Gov. Opposition, D.E.#184, p. 1).

In response, Defendant represents that without the kindness of strangers in helping locate a widely-dispersed former escort and customer list – and given the government's **six (6) year** head start in preparing its case – Defendant will not be able to adequately and timely prepare for a trial which is potentially eighty-seven (87) days away.

2. *"Nor does she explain how she might compel their testimony, assuming they broke*

---

[2]    Gratuitously stating: "Of defendant prefers that a protective order issue under the authority provided by the Federal Rules, the government does not object to a Rule 16(d) protective order. . ." (Gov. Opposition, D.E.#184, p. 3).

[3]    "Regulating Discovery. (1) Protective and Modifying Orders. At any time the court may, **for good cause**, deny, restrict, or defer discovery or inspection, or grant other appropriate relief. . . ." (Emphasis added).

*the law, or how their testimony would be relevant to her defense, assuming they did not.*"  (Gov. Opposition, D.E.#184, p. 1).

As to the first point, the Court in *United States v. Bailey*, 675 F.2d 1292, 1297 (D.C.Cir.) stated: "The Sixth Amendment guarantees a defendant the right 'to have compulsory process for obtaining witnesses in his favor.' U.S. Const.amend. VI. 'Few rights are more fundamental' than this one, *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973), for it is 'in plain terms the right to present a defense,' *Washington v. Texas*, 388 U.S. 14, 19 (1967).  In practice, however, this right is subject to several limitations. See, e.g., *United States v. Thornton*, 733 F.2d 121, 125 (D.C.Cir.1984) (right to compulsory process does not compel witness to waive Fifth Amendment privilege)."

However, as recognized in *United States v. Alessio* ,528 F.2d 1079, 1080 (9th Cir. 1976):

> Appellant's most interesting argument on appeal is that he was denied important Fifth and Sixth Amendment rights by the government's refusal to seek immunity for prospective defense witnesses pursuant to 18 U.S.C. § 6001 *et seq.* At trial appellant unsuccessfully asked the government to invoke the immunity statute, *supra*, to compel the testimony of three witnesses whose testimony he claimed was crucial for his defense: Maurice Friedman, Daniel Morgan, a Camp correctional officer, and Roy Goddard, formerly a Camp case worker. It has repeatedly been held by this Court that the government may not be compelled to seek a grant of immunity for a prospective defense witness. . . . It was noted in *Earl v. United States*, 124 U.S.App.D.C. 77, 361 F.2d 531 (1966), however, that **a defendant might be denied due process if the government uses its authority to seek immunity for its own witnesses, but declines to do so on behalf of the defendant**. 361 F.2d at 534 n. 1.

As such, Defendant would request pursuant to 18 U.S.C. §6003 that the government request this Court to grant immunity to such witnesses, a particularly relevant request as here, unlike in *Alessio*, government witnesses have been granted *de facto* and *de jure* immunity in order to secure their testimony at the grand jury.

As to the second point, if witnesses testify that they did <u>not</u> engage in illegal sexual behavior confirming Defendant's position that she operated a legal escort business, reasonable doubt could be created in the minds of the jury on this issue upon whether Defendant was in an "unlawful" activity.

### III.    LOCAL CRIMINAL RULE 57.7(B)(3) IS A VOID PRIOR RESTRAINT ON FREE SPEECH

Defendant once again contents – as this Court failed to address this issue in its Order granting the Government's Motion for a Court Order Requiring Compliance with Local Criminal Rule 57.7(b)(3) [D.E. #192] – that Local Criminal Rule 57.7(b)(3) is an unconstitutional prior restraint on Defendant and her counsel's right to free speech and thus violates the Rules Enabling Act.[4]

"At the very least, our cases recognize that disciplinary rules governing the legal profession cannot punish activity protected by the First Amendment, and that First Amendment protection survives even when the attorney violates a disciplinary rule he swore to obey when admitted to the practice of law. See, e.g., *In re Primus*, 436 U.S. 412 (1978); *Bates v. State Bar of Arizona*, 433 U.S. 350 (1977)". *Gentile* at 501 U.S. at 1054.

Importantly, the Court in *Gentile*, then went on to conclude:

> Only the occasional case presents a danger of prejudice from pretrial publicity. Empirical research suggests that, in the few instances when jurors have been exposed to extensive and prejudicial publicity, they are able to disregard it and base their verdict upon the evidence presented in court. . . . Voir dire can play an important role in reminding jurors to set aside out-of-court information and to decide the case upon the evidence presented at trial. All of these factors weigh in favor of affording an attorney's speech about ongoing proceedings our traditional First Amendment protections. Our colleagues' historical survey notwithstanding, respondent has not

---

[4]     The Rules Enabling Act, 28 U.S.C. §2072(b) states: " Such rules shall not abridge, enlarge or modify any substantive right."

> demonstrated any sufficient state interest in restricting the speech of
> attorneys to justify a lower standard of First Amendment scrutiny.

*Gentile* at 1055.

As such, Local Criminal Rule 57.7(b)(3), on its face and as applied is an unconstitutional prior restraint on freedom of expression prohibiting without prior consideration, the "disseminated by means of public communication" the "The identity, testimony, or credibility of prospective witnesses, except that the lawyer or law firm may announce the identity of the victim if the announcement is not otherwise prohibited by the law; Any opinion as to the accused's guilt or innocence or as to the merits of the case or the evidence in the case."

"For many years it has been clearly established that a 'prior restraint on expression comes to this Court with a 'heavy presumption' against its constitutional validity.' *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971), quoting *Carroll v. President and Comm'rs of Princess Anne*, 393 U.S. 175, 181 (1968). 'Where . . . a direct prior restraint is imposed upon the reporting of news by the media, each passing day may constitute a separate and cognizable infringement of the First Amendment.' *Nebraska Press Assn. v. Stuart*, 423 U.S. 1319, 1329 (1975) (Blackmun, J., in chambers)." *CBS Inc. v. Davis,* 510 U.S. 1315, 1317 (1994). Notably, the First Amendment equally protects freedom of speech as well as the Press. "Congress shall make no law . . . abridging the freedom of speech, or of the press . . ."

Accordingly, Local Criminal Rule 57.7(b)(3) violates the First Amendment as a prior restraint without even the attempt at finding an extraordinary compelling reason for such a restraint. "Although the prohibition against prior restraints is by no means absolute, the gagging of publication has been considered acceptable only in "exceptional cases." *Near v. Minnesota ex rel. Olson*, 283

U.S. 697, 716 (1931). Even where questions of allegedly urgent national security, see *New York Times Co. v. United States*,  403 U.S. 713 (1971), or competing constitutional interests,  *Nebraska Press Assn., 427 U.S., at 559*, are concerned, we have imposed this "most extraordinary remed[y]" only where the evil that would result from the reportage is both great and certain and cannot be mitigated by less intrusive measures."

## IV.    CONCLUSION

WHEREFORE, Defendant requests that this Court *promptly* enter its order removing any limitation on Defendant publically releasing information concerning former escorts or customers of the Escort Service contained in Defendant's own records.

### CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the served pursuant to LcvR 5.4(d) upon Daniel Butler, William Cowden, and Catherine Connelly, Assistant United States Attorneys, Criminal Division, 555 4th St., N.W., Room 4818, Washington, D.C. 20530 this November 24, 2007.

MONTGOMERY BLAIR SIBLEY
Counsel for Defendant
1629 K Street, Suite 300
Washington, D.C. 20006
202-508-3699
202-478-0371 Fax

By:   /s/ Montgomery Blair Sibley
        Montgomery Blair Sibley
        D.C. Bar #464488