UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,                    CRIMINAL CASE NUMBER: 07-046-GK

PLAINTIFF,                   DEFENDANT'S MOTION TO RECONSIDER
                                             ORDER CANCELLING NOVEMBER 28
VS.                                          HEARING, OR ALTERNATIVELY, TO
                                             CERTIFY FOR INTERLOCUTORY APPEAL
DEBORAH JEANE PALFREY,                       AND FOR LEAVE TO PROCEED IN *FORMA
                                             PAUPERIS*
DEFENDANT.
_____/

Defendant, Deborah Jeane Palfrey, by and through her undersigned counsel and pursuant to

the anomalous jurisdiction of this Court[1], moves the Court to reconsider its November 21, 2007,

[D.E. #191] Order ("the Order") or Alternatively, to Certify for Interlocutory Appeal and for Leave

to Proceed in Forma Pauperis, and for grounds in support thereof state:

I.      THE MIS-STATED RECORD

        A.      DEFENDANT WAS DENIED DUE PROCESS

        At ¶4 of the Order, the Court states: "The Court's order granting the TRO and Protective

Order relied on 18 U.S.C. §1514.  They did not reach the government's arguments based upon the

inherent authority of the Court to manage its own affairs.  Given that there is now substantial doubt

as to whether the Government can satisfy the requirements of §1514 the Court will turn to the issue

of whether it possesses inherent authority to enter and maintain the Protective Order."

        Simply put, the government did **not** in either its: (i) "*Ex-Parte* Application for Temporary

Restraining Orders, and a  Protective Order and Request for Hearing" [D.E. # 14] or (ii)  Opposition

---

[1]      "It is a well established rule that a district judge always has the power to modify or
to overturn an interlocutory order or decision while it remains interlocutory." *Hodgson v. United
Mine Workers of America*, 473 F.2d 118, f/n #38 (D.C. Cir. 1972).

to Defendant's Pro Se First Omnibus Motion  [D.E. # 117], raise the "inherent authority" of the Court to premise its application to enjoin the *Palfrey v. Neble* suit, instead relying <u>exclusively</u> upon the Congressionally-established witness protection scheme laid out in 18 U.S.C. §1512 and §1514. As such, Defendant was <u>denied</u> the opportunity to present legal and factual arguments to the Court in opposition to this Court's *sua sponte* decision to cancel the hearing set for November 28, 2007, before that order was entered.  Clearly, this behavior violates basic tenets of due process.

**B.    DEFENDANT WAS REQUIRED TO PROVE HER SUIT SERVED A LEGITIMATE PURPOSE**

Moreover, in footnote #5 of the Order, this Court concluded: "Obviously this witness list demonstrates that Defendant has no intention of adhering to the specific limited purpose of for which the hearing was set – whether the Protective Order should be dissolved – but to plan to use the hearing as an alternative (and improper means) of obtaining discovery."

The "limited purpose of the hearing" was to determine whether Defendant's civil suit was "harassment" as that term was defined by §1514.  Plainly, a collateral effect of the Court ordered hearing would be the revelation of evidence that might not otherwise be available until trial. However, the primary – **and proper** – purpose of each witness sought by the Defendant at the hearing was to persuade this Court that the government could <u>not</u> meets its burden of establishing "harassment" under §1514.

As this Court has repeatedly noted, "harassment" has a specific statutory meaning in this context of the government's application to stay the *Palfrey v. Neble* suit: "the term "harassment" means a course of conduct directed at a specific person that . . .(B) serves no legitimate purpose." 18 U.S.C. §1514(c)(1).

2

Hence, Defendant intended to establish that her breach of contract lawsuit against Paula Neble had a "legitimate purpose". In other words, that the law suit was a non-frivolous attempt to seek redress for the wrong of Paula Neble breaching her contract not to engage in illegal behavior.

Defendant's proof would have taken two forms. First, that such a contract existed, a fact conceded by all involved. Second, that the escorts breached that contract by in fact engaging in illegal behavior. Practically, the only people who know what actually happened in the privacy of a customer's home or hotel room – the only locations Defendant's escorts visited – are (i) the escort and (ii) the customer.

Here, the government has repeatedly refused to bring forward Paula Neble to testify as to whether she breached her contract not to engage in illegal behavior, though it is reasonable to believe that Ms. Neble testify to that end at the grand jury given her prior public statements. (See: July 31, 2007, WTOP news report attached hereto.) Moreover, both the government and Ms. Neble's counsel has refused to reveal Ms. Neble's location so that she can be subpoenaed to testify as to whether she breached her contract. Accordingly, Defendant was left with no choice but to subpoena Ms. Neble's counsel in order to obtain the location of Ms. Neble so she could be subpoenaed to testify of the truth of AUSA Cowden's representations to the Court that the lawsuit was causing her substantial emotional distress.[2]

That left to Defendant only the customers to testify as to whether there was a breach of contract by Ms. Neble or not. Given that the government has seized all of Defendant's records and refused to reveal un-redacted copies of those records, Defendant is unable to identify her customer

---

[2]    Notably, in her motion to quash that subpoena, Ms. Neble's attorney did not cite a single case for the proposition that the location of a client is attorney-client privileged information.

save through the kindness of strangers combing her publically released telephone records.

That "combing" has resulted in the identification of only two customers visited by Ms. Neble. First, Harlan Ullman who successfully dodged attempts to serve him with a subpoena for the hearing.

That left Senator Vitter as the only presently identifiable customer of Ms. Neble. This assertion is based upon the following three facts which establish by syllogism the relevance of Senator Vitter's testimony:

- During 1999, 2000 and 2001, Senator Vitter's telephone number was (202) 548-4736;

- During 1999, 2000 and 2001, Paula Neble's telephone number was (202) 251-5678;

- The telephone records of the Defendant's Escort Service for October 12, 1999, September 18, 2000, and February 11, 2001, copies of which are attached, demonstrate unequivocally that within thirty (30) minutes after Vitter called the service, Paula Neble was called. Accordingly, given the practice of booking utilized by the Defendant's escort service, Ms. Neble was the escort dispatched to Vitter on these three dates.

∴ Vitter was a customer of Defendant's escort service who had appointments on three occasions with Paula Neble.

As such, the subpoena of Senator Vitter was justified for the hearing.

Finally, the subpoena of AUSA Cowden was likewise necessary and reasonable. This Court entered its *ex parte* order pursuant to 18 U.S.C. §1512 and §1514 restraining the pursuit of the suit against Paula Neble *solely* upon the representations of AUSA William Cowden contained in his "*Ex-Parte* Application for Temporary Restraining Orders, and a Protective Order and Request for Hearing." ("*Ex Parte* Application"). [D.E. #14]. Significantly, that *Ex Parte* Application was made

4

by AUSA Cowden: (i) pursuant to the certification requirement of 18 U.S.C. §1514(a)(2)(A)[3] and

18 U.S.C. §1001.

In that The *Ex Parte* Application, AUSA Cowden represented to the Court that:

●       "The actions of Palfrey and attributable to the attorney representing her in her civil proceedings constitute witness intimidation and harassment. (*Ex Parte* Application, p. 1);

●       "The facts show that Ms. Palfrey's pursuit of the lawsuit she has filed in this Court against some witnesses to the operation of her criminal enterprise, as well as her threats to expose the identities of other potential witnesses, are for the purpose of retaliating against witnesses for possibility providing information to law enforcement officers or for testifying before the Grand Jury, and an effort to obstruct or impede the Government's effort to prosecute Palfrey." (*Ex Parte* Application, p. 10).;

●       "The context in which Palfrey filed her most recent lawsuit shows that it, too, was done to harass and to attempt to have witnesses in a federal criminal prosecution recant testimony rather than as a legitimate effort to collect damages against individuals who have breached contracts Palfrey never intended to enforce.  As Mr. Sibley must know from his unsuccessful efforts to file similar suits in Florida, there is no legal basis for imposing liability against witness, let alone witnesses who disclose criminal activity." (*Ex Parte* Application, p. 11).

Hence, AUSA Cowden was an appropriate witness as it was he <u>alone</u> who made the certified

representations to the Court <u>solely</u> under §1514 of "harassment" which he knew meant only two

things under the statute: "(A) causes substantial emotional distress in such person; and (B) serves

no legitimate purpose."  18 U.S.C. §1514(c)(1).

_____

[3]       "A temporary restraining order may be issued under this section without written or oral notice to the adverse party or such party's attorney in a civil action under this section if the court finds, upon written certification of facts by the attorney for the Government, that such notice should not be required and that there is a reasonable probability that the Government will prevail on the merits."

Accordingly, for this Court to conclude that "Defendant has no intention of adhering to the specific limited purpose of for which the hearing was set", simply <u>ignores</u> the factual and legal underpinnings of the record before it.

## II.    THE COURT'S DISINGENUOUS REASONING

Here, Congress commanded this Court to hold a hearing under §1514 but this Court has circumvented that hearing for the apparent reasoning of (i) avoiding the public embarrassment of a United States Senator properly subpoenaed for that hearing and (ii) avoiding the devastating cross-examination of an assistant United States Attorney who made material misrepresentations to the Court in order to obtain an *ex parte* temporary restraining order.  Compounding the latter, when faced with being called to undergo the engine of truth which is cross-examination that AUSA not only refused to appear, but refused to even accept a subpoena, hiding instead behind the *praetorian* guard at his office door.

By such action, this inferior Court has subverted that Congressional scheme and thereby denied to Defendant her right to access court.  This, the Court is without power to do.

"It is axiomatic that Congress can limit the jurisdiction of the lower federal courts. *E.g.*, *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993) ("Congress has the constitutional authority to define the jurisdiction of the lower federal courts. . . .")."   Additionally, Congress can – and has– preempted the field of delaying access to Court by enacting the Victim and Witness Protection Act of 1982, Pubic Law 97-291 thereby removing this Court's discretion in this matter.  *Accord*: *Empacadora de Carnes de Fresnillo, S.A. de C.V. v. Curry,* 476 F.3d 326, 333(5th Cir. 2007)("Field preemption requires a clear congressional intent. *Cal. Fed. Sav. & Loan v. Guerra*, 479 U.S. 272, 281 (1987).  It occurs when a federal statute's scope "indicates that Congress intended federal law

6

to occupy a field exclusively." *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995)"). Here, Congress has analogously preempted the field of denying access to Court by establishing the burden of proof necessary – no legitimate purpose – before a suit maybe enjoined by this Court under §1514.

Moreover, under the Rules Enabling Act, this Court <u>cannot</u> establish a "rule" which violates a fundamental right. The Rules Enabling Act, 28 U.S.C. §2072(b) states: "Such rules [of court] shall not abridge, enlarge or modify any substantive right."

Unquestionably, Defendant has a fundamental right to access Court.[4] Accordingly, this Court <u>cannot</u> by its own "rule" delay and thus deny that "access" without doing violence to the Rules Enabling Act.

## III.    THE COURT USURPS POWER <u>NOT</u> GRANTED TO IT

The Court's citation to *Chambers v. Nasco,* 501 U.S. 32 (1991) for the proposition that it may

---

[4]    The U.S. Supreme Court has left no doubt that access to the courts is a fundamental right guaranteed by the U.S. Constitution in five different areas:

(i)    The Article IV Privileges and Immunities Clause - *Chambers v. Baltimore & Ohio R. Co.*, 207 U.S. 142, 148, 52 L. Ed. 143, 28 S. Ct. 34 (1907); *Blake v. McClung*, 172 U.S. 239, 249, 43 L. Ed. 432, 19 S. Ct. 165 (1898); *Slaughter-House Cases*, 16 Wall. 36, 79 (1873);

(ii)    The First Amendment Petition Clause - *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741, 76 L. Ed. 2d 277, 103 S. Ct. 2161 (1983); *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 513, 30 L. Ed. 2d 642, 92 S. Ct. 609 (1972);

(iii)    The Fifth Amendment Due Process Clause - *Murray v. Giarratano*, 492 U.S. 1, 11, 106 L. Ed. 2d 1, 109 S. Ct. 2765, n. 6 (1989) (plurality opinion); *Walters v. National Assn. of Radiation Survivors*, 473 U.S. 305, 335, 87 L. Ed. 2d 220, 105 S. Ct. 3180 (1985);

(iv)    The Fourteenth Amendment Equal Protection Clause - *Pennsylvania v. Finley*, 481 U.S. 551, 557, 95 L. Ed. 2d 539, 107 S. Ct. 1990 (1987), and

(v)    The Fourteenth Amendment Due Process Clause - *Wolff v. McDonnell*, 418 U.S. 539, 576, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974); *Boddie v. Connecticut*, 401 U.S. 371, 380-381 (1971).

delay access to Court is simple sophistry. *Chambers* was limited to recognizing the inherent power

of a court to manage its own proceedings and to control the conduct of those who appear before them

and to punish conduct which abuses the judicial process. *Id*. at 44. Nothing in *Chambers* can be

read to justify, as this Court did, maintaining a Protective Order entered under a completely unrelated

statutory scheme.

Moreover, the Court's citation to *Landis v. North American Co.*, 299 U.S. 248 (1936) is

intellectually dishonest. What this Court omitted from its quotation from *Landis* was the concluding

statement that: "True, the suppliant for a stay must make out a clear case of hardship or inequity in

being required to go forward, if there is even a fair possibility that the stay for which he prays will

work damage to some one else. Only in rare circumstances will a litigant in one cause be compelled

to stand aside while a litigant in another settles the rule of law that will define the rights of both."

*Id*. at 255. Here, the government could <u>not</u>  make such a showing under §1514, nor has the

Defendant been given an opportunity to respond to such by this Court.

Finally, Defendant must comment on this Court's citations to *United States v. Lewis*, 411

F.3d 838, 843 (7th Cir. 2005) and *United States v. Tison*, 780 F.2d 1569. 1573 (11th Cir. 1986).

The sole issue in *Tison* was " whether the district court, in which a criminal prosecution is

pending, has the authority under 18 U.S.C.A. Sec. 1514 to enjoin defendants and their counsel from

bringing a state civil action for slander against a prospective Government witness involved in a

federal criminal trial." Plainly, the government here <u>cannot</u> meet its burden under §1514. Moreover,

the Court's citation in its Order to a quote in *Tison* is actually *Tison*'s citation a quote from

*Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir.1962), *cert. denied*, 371 U.S. 955 (1963) which

was a case decided **prior** to the enactment of §1514 making it <u>inapposite</u> to post-§1514 matters

where Congress has expressly defined the term "harassment". Notably, that definition did <u>not</u> include any lawsuit against a potential government witness.

Likewise, in *Lewis*, the finding that a §1514 order was appropriate was made upon proof that "**it appears that the filing of the state court actions was <u>not</u> done for a legitimate purpose** (such as to vindicate a specific right) **but more likely than not was a tactical decision to intimidate and harass prospective witness Bolden**. This is something which this Court cannot countenance and for which section 1514 provides a remedy in the form of a protective order." *Lewis* at 843. (Emphasis added).

Here, of course, Defendant <u>could</u> establish that her civil suit was filed for a "legitimate purpose" and thus, under §1514, must be permitted to proceed to comply with Congressional standards in this area of civil suits against potential witnesses in a criminal matter.

## IV. DEFENDANT'S MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL AND FOR LEAVE TO PROCEED IN FORMA PAUPERIS

Though this Court has entered – and conducted the entire briefing – in the criminal side of its court, the order staying the civil case of *Palfrey v. Neble* is in fact a civil injunction of a civil lawsuit, and hence appealable pursuant to 28 U.S.C. §1292(a)(1) "Interlocutory Decisions"[5]. Indeed, the order staying *Palfery v. Neble* should be properly entered in that case from which it would then be clearly appealable.

---

[5]    "Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court."

Moreover, Defendant requests that the Court pursuant to 28 U.S.C.§ 1292(b)[6], respectfully certify for interlocutory appeal the Court's Order. Given the complete dearth of cases cited by the Court for the proposition that when the government can't meet its §1514 burden, this Court can step in and *ex cathedra* achieve the same end and thereby delay for over one year a legitimate civil suit clearly raises an issue upon "which there is substantial ground for difference of opinion" and in all events is a novel question deserving of immediate appellate review.

Additionally, pursuant to Federal Rules of Appellate Procedure, Rule 24(a)[7] "Leave to Proceed in Forma Pauperis", Defendant requests that this Court not "certify that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed *in forma pauperis*."

## V.    CONCLUSION

This Court has denied due process to Defendant by invoking its putative "inherent authority" to stay a valid civil action. Moreover, the exercise of this putative authority has been done in a manner which violates a carefully crafted Congressional scheme. Last, this invocation of authority is unprecedented and is without prior precedent.

---

[6]    "When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order."

[7]    "Prior Approval. A party who was permitted to proceed in *forma pauperis* in the district-court action, or who was determined to be financially unable to obtain an adequate defense in a criminal case, may proceed on appeal in *forma pauperis* without further authorization, unless: (A) the district court-before or after the notice of appeal is filed - certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in *forma pauperis* and states in writing its reasons for the certification or finding; or (B) a statute provides otherwise."

In sum, this Court has gratuitously concluded that the government will be prejudiced if Defendant's civil suit is allowed to go forward as it would make an "end run" around the more restrictive discovery provisions in the Rules of Criminal Procedure. Assuming *arguendo* that to be true, why would that be wrong? Plainly:

> Society wins not only when the guilty are convicted, but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly. An inscription on the walls of the Department of Justice states the proposition candidly for the federal domain: The United States wins its point whenever justice is done its citizens in the courts. A prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty helps shape a trial that bears heavily on the defendant. That casts the prosecutor in the role of an architect of a proceeding that does not comport with standards of justice. . .

*Brady* at 87. Hence, *fiat justitia ruat caelum* and do <u>not</u> block Defendant from obtaining evidence that can insure that "justice is done" in this case.

### CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the served pursuant to LcvR 5.4(d) upon Daniel Butler, William Cowden, and Catherine Connelly, Assistant United States Attorneys, Criminal Division, 555 4th St., N.W., Room 4818, Washington, D.C. 20530 this November 25, 2007.

**MONTGOMERY BLAIR SIBLEY**
Counsel for Defendant
1629 K Street, Suite 300
Washington, D.C. 20006
202-508-3699
202-478-0371 Fax

By:  /s/ Montgomery Blair Sibley
　　　Montgomery Blair Sibley
　　　D.C. Bar #464488



Home Page > News > Local > Local Stories

# Vitter Escort: Palfrey Ran Prostitution Ring

July 31, 2007 - 12:01pm
Neal Augenstein, WTOP Radio

WASHINGTON - WTOP Radio has learned a former escort, linked to a member of Congress, is set to testify alleged D.C. madam Deborah Jeane Palfrey's escort service provided illegal prostitution.

Paula Neble, who worked for Palfrey between 1999 and 2006, told a federal grand jury in D.C. she considered her work for Palfrey prostitution, according to sources familiar with her testimony. The sources say Neble's testimony made no mention of then-Rep. David Vitter, who is now a U.S.Senator representing Louisiana.

Palfrey has maintained Pamela Martin & Associates provided legal escort services.

Immediately after Palfrey was indicted in March on federal racketeering and money laundering charges, she filed a civil lawsuit against Neble, claiming breach of contract. That civil suit is on hold, pending Palfrey's criminal trial.

In both her criminal and civil cases, Palfrey maintains she hired "independent contractors to provide solely legal sexual services." Palfrey says her company catered to adult fantasy in the nation's capital, without legal entanglement, for 13 years.

In e-mails, Palfrey tells WTOP she believes Neble "was a favorite of Mr. Vitter's," but says any sex-for-payment arrangement would have been outside the structure of her legal escort business.

"I had each and every gal sign a contract with me at the onset of her association with me that while 'on my watch,' she would NOT cross the line into illegality. I simply could not control what any of the women did on their own time," Palfrey writes.

Palfrey says Neble and other escorts used her company as a referral service, "to find steady clients who saw them on a regular, ongoing basis sans my involvement once the initial introduction was made."

Neble declined to be interviewed, according to her attorney Kathleen Voelker, who would not comment on whether Vitter was a former customer of Neble's.

WTOP has learned that Neble's AT&T cell phone number appeared 1,590 times in Palfrey's records, including in conjunction with calls to Vitter.

Palfrey has said when a customer requested an escort she would call the woman to check availability. She would then call the customer to confirm the location of the encounter and call the escort back to say where to meet the customer.

On Oct. 12, 1999 Palfrey's outgoing phone records indicate she called Neble at 5:54 p.m., immediately called Vitter at 5:57 p.m. then called Neble back at 5:59 p.m.

Vitter's spokesman Joel DiGrado did not respond to several phone requests for comment.

Neble has not been charged in connection with Palfrey's case, and will testify for the prosecution, in return for immunity, sources say. Palfrey has repeatedly argued she is the victim of selective prosecution, and that her former employees and customers should also face charges.

Now 36, Neble has gone to some lengths to protect her anonymity. Court records show she applied to legally change her name in 2001, and was granted the change in 2002. At the time she listed her job title as "consultant."

In her civil lawsuit, Palfrey accuses "Dr. Paula Neble" and 15 Jane Does of breach of contract, "by engaging in illegal sexual activities with customers of the escort service." Research by WTOP indicates Neble does not have a doctorate.

Channing Phillips, spokesman for D.C.'s United States Attorney Jeffrey Taylor, refused to comment on Neble, citing grand jury secrecy rules.

(Copyright 2007 by WTOP. All Rights Reserved.)

< Back



## (202) 251-5678 -- Washington, DC

Oct 12, 1999 - 5:54pm -- 0.70 min

This record should match a listing in the scanned image below.
Please help us make sure that the information on dcphonelist.com
is as accurate as possible by verifying or reporting the data.

☑ Verify listing    ☒ Report Error

---

**PAMELA MARTIN & ASSOCIATES**
SPRINT BUSINESS FLEX(SM)
Account #: 197847525

Page: 33
Billing Period Ending: 10/22/99
Customer Number: 842144766

### Itemization of Calls

ORIGINATING NUMBER: 707 648-1500

| Nbr | Date | Time | * | Called Location | | Called Nbr | Minutes | Charges |
|---|---|---|---|---|---|---|---|---|
| 1 | 10/12/99 | 5:53 PM | E | WASHINGTON | DC | 202 667-8047 | .4 | $.04 |
| 2 | 10/12/99 | 5:54 PM | E | WASHINGTON | DC | 202 251-5678 | .7 | .07 |
| 3 | 10/12/99 | 5:57 PM | E | WASHINGTON | DC | 202 548-4736 | .4 | .04 |
| 4 | 10/12/99 | 5:59 PM | E | WASHINGTON | DC | 202 463-6336 | 8.5 | .88 |
| 5 | 10/12/99 | 7:14 PM | E | SILVER SPG | MD | 301 332-0141 | .8 | .08 |
| 6 | 10/12/99 | 7:32 PM | E | SILVER SPG | MD | 301 332-0141 | .3 | .03 |
| 7 | 10/12/99 | 7:57 PM | E | WASHINGTON | DC | 202 251-5678 | .3 | .03 |
| 8 | 10/12/99 | 7:56 PM | E | WASHINGTON | DC | 202 667-8047 | .3 | .03 |
| 9 | 10/12/99 | 8:00 PM | E | WASHINGTON | DC | 202 251-5678 | .3 | .03 |
| 10 | 10/12/99 | 8:02 PM | E | WASHINGTON | DC | 202 251-5678 | .3 | .03 |
| 11 | 10/12/99 | 8:02 PM | E | WASHINGTON | DC | 202 667-8047 | .3 | .03 |
| 12 | 10/12/99 | 8:03 PM | E | WASHINGTON | DC | 202 251-5678 | .3 | .03 |
| 13 | 10/12/99 | 8:04 PM | E | WASHINGTON | DC | 202 463-6336 | 2.5 | .26 |
| 14 | 10/12/99 | 8:07 PM | E | WASHINGTON | DC | 202 251-5678 | .3 | .03 |
| 15 | 10/12/99 | 8:10 PM | E | WASHINGTON | DC | 202 667-8047 | .3 | .03 |
| 16 | 10/12/99 | 8:10 PM | E | WASHINGTON | DC | 202 251-5678 | .6 | .06 |
| 17 | 10/12/99 | 8:11 PM | E | WASHINGTON | DC | 202 251-5678 | .3 | .03 |
| 18 | 10/12/99 | 8:34 PM | E | WASHINGTON | DC | 202 251-8272 | .5 | .05 |
| 19 | 10/13/99 | 8:39 AM | D | WASHINGTON | DC | 202 822-1350 | 1.2 | .12 |
| 20 | 10/13/99 | 8:41 AM | D | CARLSBAD | CA | 760 438-1242 | 3.2 | .31 |
| 21 | 10/13/99 | 1:48 PM | D | SILVER SPG | MD | 301 928-0710 | 2.8 | .29 |
| 22 | 10/13/99 | 2:25 PM | D | SILVER SPG | MD | 301 928-0710 | 1.7 | .18 |
| 23 | 10/13/99 | 3:02 PM | D | LAUREL | MD | 301 776-9074 | 1.7 | .18 |
| 24 | 10/13/99 | 3:22 PM | D | SILVER SPG | MD | 301 332-0141 | 1.9 | .20 |
| 25 | 10/13/99 | 3:49 PM | D | WASHINGTON | DC | 202 265-7536 | .8 | .08 |
| 26 | 10/13/99 | 4:01 PM | D | WASHINGTON | DC | 202 251-5678 | .4 | .04 |
| 27 | 10/13/99 | 4:11 PM | D | SILVER SPG | MD | 240 432-7440 | 1.2 | .12 |
| 28 | 10/13/99 | 4:13 PM | D | FAIRFAX | VA | 703 713-1234 | 1.1 | .11 |
| 29 | 10/13/99 | 4:19 PM | D | SILVER SPG | MD | 301 332-0141 | 1.0 | .10 |
| 30 | 10/13/99 | 4:20 PM | D | SILVER SPG | MD | 301 332-0141 | .3 | .03 |
| 31 | 10/13/99 | 4:23 PM | D | SILVER SPG | MD | 301 332-0141 | .3 | .03 |
| 32 | 10/13/99 | 5:50 PM | D | SILVER SPG | MD | 301 928-0710 | .3 | .03 |
| 33 | 10/13/99 | 5:51 PM | E | FLS CHURCH | VA | 703 761-1522 | .4 | .04 |
| 34 | 10/13/99 | 6:05 PM | E | WASHINGTON | DC | 202 251-5678 | 1.4 | .15 |
| 35 | 10/13/99 | 6:48 PM | E | SILVER SPG | MD | 240 432-7440 | .3 | .03 |
| 36 | 10/13/99 | 6:46 PM | E | SILVER SPG | MD | 240 432-7440 | .5 | .05 |
| 37 | 10/13/99 | 6:47 PM | E | SILVER SPG | MD | 240 432-7440 | .3 | .03 |
| 38 | 10/13/99 | 6:48 PM | E | SILVER SPG | MD | 240 432-7440 | .3 | .03 |
| 39 | 10/13/99 | 7:16 PM | E | SILVER SPG | MD | 301 332-0141 | .3 | .03 |
| 40 | 10/13/99 | 8:07 PM | E | SILVER SPG | MD | 240 432-7440 | .3 | .03 |
| 41 | 10/14/99 | 1:49 PM | D | WASHINGTON | DC | 202 822-1350 | 5.6 | .58 |
| 42 | 10/14/99 | 2:29 PM | D | WASHINGTON | DC | 202 251-8272 | .3 | .03 |
| 43 | 10/14/99 | 2:29 PM | D | WASHINGTON | DC | 202 463-6336 | 2.3 | .24 |
| 44 | 10/14/99 | 3:00 PM | D | LAUREL | MD | 301 776-9074 | 1.0 | .10 |
| 45 | 10/14/99 | 3:02 PM | D | BETHESDA | MD | 301 897-9400 | 2.3 | .24 |
| 46 | 10/14/99 | 3:05 PM | D | SILVER SPG | MD | 301 928-0710 | 1.4 | .15 |
| 47 | 10/14/99 | 3:11 PM | D | SILVER SPG | MD | 240 432-7440 | .4 | .04 |
| 48 | 10/14/99 | 3:12 PM | D | WASHINGTON | DC | 202 965-0344 | .4 | .04 |
| 49 | 10/14/99 | 3:16 PM | D | SILVER SPG | MD | 240 432-7440 | 2.7 | .28 |
| 50 | 10/14/99 | 3:22 PM | E | WASHINGTON | DC | 202 251-8272 | .3 | .03 |
| 51 | 10/14/99 | 3:26 PM | D | WASHINGTON | DC | 202 251-8272 | .9 | .09 |



## (202) 251-5678 -- Washington, DC

Sep 18, 2000 - 5:02pm -- 1.50 min

This record should match a listing in the scanned image below.
Please help us make sure that the information on dcphonelist.com
is as accurate as possible by verifying or reporting the data.

☑ Verify listing    ☒ Report Error

---



**PAMELA MARTIN & ASSOCIATES**        Page: 46
SPRINT BUSINESS FLEX(SM) DIAL-1     Billing Period Ending: 9/22/00
Account #: 197847525             Customer Number: 842144766

### Itemization of Calls

ORIGINATING NUMBER: 707 648-1500

| Nbr | Date | Time | * | Called Location | | Called Nbr | Minutes | Charges |
|---|---|---|---|---|---|---|---|---|
| 1 | 9/18/00 | 8:39 AM | D | SAN MARCOS | CA | 760 471-2256 | .4 | $.02 |
| 2 | 9/18/00 | 9:10 AM | D | ESCONDIDO | CA | 760 746-7866 | .3 | .02 |
| 3 | 9/18/00 | 9:12 AM | D | ESCONDIDO | CA | 760 738-4550 | 4.1 | .25 |
| 4 | 9/18/00 | 9:21 AM | D | ESCONDIDO | CA | 760 737-0592 | .3 | .02 |
| 5 | 9/18/00 | 9:22 AM | D | ESCONDIDO | CA | 760 746-9127 | 6.8 | .41 |
| 6 | 9/18/00 | 9:30 AM | D | OCEANSIDE | CA | 760 720-5301 | 2.9 | .17 |
| 7 | 9/18/00 | 9:57 AM | D | SAN DIEGO | CA | 619 294-3313 | .9 | .05 |
| 8 | 9/18/00 | 2:06 PM | D | FLS CHURCH | VA | 703 861-0363 | 1.0 | .07 R |
| 9 | 9/18/00 | 2:32 PM | D | WASHINGTON | DC | 202 251-5678 | 1.1 | .08 R |
| 10 | 9/18/00 | 2:39 PM | D | SILVER SPG | MD | 301 257-3622 | 1.2 | .08 R |
| 11 | 9/18/00 | 2:45 PM | D | FLS CHURCH | VA | 703 862-8022 | 2.6 | .18 R |
| 12 | 9/18/00 | 2:49 PM | D | SILVER SPG | MD | 301 257-3622 | 1.8 | .12 R |
| 13 | 9/18/00 | 2:57 PM | D | SILVER SPG | MD | 301 257-3622 | 2.0 | .14 R |
| 14 | 9/18/00 | 3:05 PM | D | FLS CHURCH | VA | 703 862-8022 | 6.7 | .46 R |
| 15 | 9/18/00 | 3:12 PM | D | WASHINGTON | DC | 202 547-4331 | .3 | .02 R |
| 16 | 9/18/00 | 3:13 PM | D | SILVER SPG | MD | 301 257-3622 | 4.3 | .30 R |
| 17 | 9/18/00 | 4:24 PM | D | ARLINGTON | VA | 703 338-6745 | 4.1 | .28 R |
| 18 | 9/18/00 | 4:31 PM | D | WASHINGTON | DC | 202 548-4736 | 2.3 | .16 R |
| 19 | 9/18/00 | 4:33 PM | D | ARLINGTON | VA | 703 338-6745 | 4.7 | .32 R |
| 20 | 9/18/00 | 5:02 PM | E | WASHINGTON | DC | 202 251-5678 | 1.5 | .10 R |
| 21 | 9/18/00 | 5:30 PM | E | WASHINGTON | DC | 202 251-5678 | 1.0 | .07 R |
| 22 | 9/18/00 | 5:32 PM | E | ARLINGTON | VA | 703 243-9800 | .5 | .03 R |
| 23 | 9/18/00 | 6:06 PM | E | FLS CHURCH | VA | 703 862-8022 | 1.5 | .10 R |
| 24 | 9/18/00 | 6:07 PM | E | WASHINGTON | DC | 202 271-9192 | .7 | .05 R |
| 25 | 9/18/00 | 6:08 PM | E | WASHINGTON | DC | 202 789-1234 | .7 | .05 R |
| 26 | 9/18/00 | 6:10 PM | E | RALEIGH | NC | 919 810-3862 | .8 | .06 R |
| 27 | 9/18/00 | 6:25 PM | E | FLS CHURCH | VA | 703 862-8022 | .3 | .02 R |
| 28 | 9/18/00 | 6:26 PM | E | FLS CHURCH | VA | 703 862-8022 | .4 | .03 R |
| 29 | 9/18/00 | 6:30 PM | E | FLS CHURCH | MD | 703 862-8022 | .5 | .03 R |
| 30 | 9/18/00 | 6:33 PM | E | WASHINGTON | DC | 202 271-9192 | .5 | .03 R |
| 31 | 9/18/00 | 6:34 PM | E | FLS CHURCH | VA | 703 862-8022 | .3 | .02 R |
| 32 | 9/18/00 | 6:35 PM | E | FLS CHURCH | VA | 703 862-8022 | .6 | .04 R |
| 33 | 9/18/00 | 6:36 PM | E | WASHINGTON | DC | 202 548-4736 | .3 | .02 R |
| 34 | 9/18/00 | 6:59 PM | E | WASHINGTON | DC | 202 271-9192 | .5 | .03 R |
| 35 | 9/18/00 | 7:03 PM | E | HERNDON | VA | 703 421-1090 | 1.3 | .09 R |
| 36 | 9/18/00 | 7:11 PM | E | ARLINGTON | VA | 703 338-6745 | 9.3 | .64 R |
| 37 | 9/18/00 | 7:50 PM | E | WASHINGTON | DC | 202 271-9192 | .7 | .05 R |
| 38 | 9/18/00 | 8:10 PM | E | SAN MARCOS | CA | 760 471-2256 | .3 | .02 |
| 39 | 9/18/00 | 8:11 PM | E | FLS CHURCH | VA | 703 862-8022 | .3 | .02 R |
| 40 | 9/18/00 | 9:50 PM | E | WASHINGTON | DC | 202 271-9192 | .3 | .02 R |
| 41 | 9/18/00 | 9:51 PM | E | WASHINGTON | DC | 202 479-4000 | .5 | .03 R |
| 42 | 9/18/00 | 9:52 PM | E | WASHINGTON | DC | 202 271-9192 | .3 | .02 R |
| 43 | 9/18/00 | 9:52 PM | E | WASHINGTON | DC | 202 271-9192 | .5 | .03 R |
| 44 | 9/18/00 | 9:53 PM | E | WASHINGTON | DC | 202 271-9192 | .3 | .02 R |
| 45 | 9/18/00 | 8:53 PM | E | WASHINGTON | DC | 202 271-9192 | .3 | .02 R |
| 46 | 9/19/00 | 1:47 PM | D | WASHINGTON | VA | 703 981-1462 | 6.0 | .41 R |
| 47 | 9/19/00 | 2:16 PM | D | WASHINGTON | DC | 202 251-5678 | .7 | .05 R |
| 48 | 9/19/00 | 2:45 PM | D | FLS CHURCH | VA | 703 862-8022 | .4 | .03 R |
| 49 | 9/19/00 | 2:46 PM | D | FLS CHURCH | VA | 703 862-8022 | 1.3 | .09 R |
| 50 | 9/19/00 | 3:23 PM | D | SILVER SPG | MD | 301 257-3622 | 1.4 | .10 R |



# (202) 251-5678 -- Rockville, DC

Feb 11, 2001 - 5:53pm -- 3.00 min

This record should match a listing in the scanned image below.
Please help us make sure that the information on dcphonelist.com
is as accurate as possible by verifying or reporting the data.

☑ Verify listing   ☒ Report Error

| Account Name | Date of Invoice | Page |
|---|---|---|
| DEBORAH J PALFREY | '21/01 | 10 |

| Account Number | Telephone Number | Service User |
|---|---|---|
| 662565605 | 202-258-7248 | DEBORAH J PALFREY |

## HOME AIRTIME AND LONG DISTANCE CHARGES (CONTINUED)

| Ref | Date | Time | Number Called | Calls To | Calls From | Minutes | Air | Long Distance | Total |
|---|---|---|---|---|---|---|---|---|---|
| 0240 | 2/09 | 3:55P | 707-648-1000 | VALLEJO CA | CA | 2 | | | .00 |
| 0241 | 2/09 | 3:57P | 301-694-2604 | FREDERICK MD | CA | 1 | | | .00 |
| 0242 | 2/09 | 4:10P | | INCOMING | CA | 5 | | | .00 |
| 0243 | 2/09 | 4:19P | | INCOMING | CA | 2 | | | .00 |
| 0244 | 2/09 | 4:23P | 707-648-1000 | VALLEJO CA | CA | 1 | | | .00 |
| 0245 | 2/09 | 4:37P | | INCOMING | CA | 1 | | | .00 |
| 0246 | 2/09 | 5:50P | | INCOMING | CA | 1 | | | .00 |
| 0247 | 2/09 | 6:00P | | INCOMING | CA | 2 | | | .00 |
| 0248 | 2/09 | 6:05P | | INCOMING | CA | 2 | | | .00 |
| 0249 | 2/09 | 6:15P | | INCOMING | CA | 1 | | | .00 |
| 0250 | 2/09 | 6:34P | 707-648-1000 | VALLEJO CA | CA | 1 | | | .00 |
| 0251 | 2/09 | 7:11P | 707-556-0099 | VALLEJO CA | CA | 1 | | | .00 |
| 0252 | 2/11 | 1:50P | 707-648-1000 | VALLEJO CA | CA | 1 | | | .00 |
| 0253 | 2/11 | 1:51P | 707-556-0099 | VALLEJO CA | CA | 1 | | | .00 |
| 0254 | 2/11 | 1:55P | 619-384-4607 | SANDIEGCEL CA | CA | 2 | | | .00 |
| 0255 | 2/11 | 1:58P | | INCOMING | CA | 5 | | | .00 |
| 0256 | 2/11 | 1:58P W | | INCOMING | CA | 2 | | | .00 |
| 0257 | 2/11 | 2:01P W | | INCOMING | CA | 1 | | | .00 |
| 0258 | 2/11 | 2:03P | | INCOMING | CA | 21 | | | .00 |
| 0259 | 2/11 | 2:06P W | | INCOMING | CA | 2 | | | .00 |
| 0260 | 2/11 | 2:24P | 202-262-1406 | BOWIGLNNDL DC | CA | 2 | | | .00 |
| 0261 | 2/11 | 2:33P | 727-934-6196 | TARPON SPG FL | CA | 16 | | | .00 |
| 0262 | 2/11 | 2:39P W | | INCOMING | CA | 1 | | | .00 |
| 0263 | 2/11 | 2:46P W | | INCOMING | CA | 1 | | | .00 |
| 0264 | 2/11 | 2:50P | 727-934-6196 | TARPON SPG FL | CA | 2 | | | .00 |
| 0265 | 2/11 | 3:02P | | INCOMING | CA | 1 | | | .00 |
| 0266 | 2/11 | 3:08P | 408-409-8847 | SAN JOSE N CA | CA | 1 | | | .00 |
| 0267 | 2/11 | 3:09P | | INCOMING | CA | 1 | | | .00 |
| 0268 | 2/11 | 3:33P | | INCOMING | CA | 4 | | | .00 |
| 0269 | 2/11 | 3:55P | 707-648-1000 | VALLEJO CA | CA | 1 | | | .00 |
| 0270 | 2/11 | 4:35P | | INCOMING | CA | 5 | | | .00 |
| 0271 | 2/11 | 4:35P W | | INCOMING | CA | 1 | | | .00 |
| 0272 | 2/11 | 4:39P | 202-548-4736 | ALEXANDRIA DC | CA | 2 | | | .00 |
| 0273 | 2/11 | 4:55P | | INCOMING | CA | 1 | | | .00 |
| 0274 | 2/11 | 5:04P | | INCOMING | CA | 49 | 5.60 | | 5.60 |
| 0275 | 2/11 | 5:15P W | | INCOMING | CA | 1 | .35 | | .35 |

**Account Name**
DEBORAH J PALFREY

**Date of Invoice**
'21/01

**Page**
10

**Account Number**
662565605

**Telephone Number**
202-258-7248

**Service User**
DEBORAH J PALFREY

## HOME AIRTIME AND LONG DISTANCE CHARGES (CONTINUED)

| Ref | Date | Time | Number Called | Calls To | | Calls From | Minutes | Air | Long Distance | Total |
|------|------|-------|---------------|-------------|----|------|------|-------|------|------|
| 0240 | 2/09 | 3:55P | 707-648-1000 | VALLEJO | CA | CA | 2 | | | .00 |
| 0241 | 2/09 | 3:57P | 301-694-2604 | FREDERICK | MD | CA | 1 | | | .00 |
| 0242 | 2/09 | 4:10P | | INCOMING | | CA | 5 | | | .00 |
| 0243 | 2/09 | 4:19P | | INCOMING | | CA | 2 | | | .00 |
| 0244 | 2/09 | 4:23P | 707-648-1000 | VALLEJO | CA | CA | 1 | | | .00 |
| 0245 | 2/09 | 4:37P | | INCOMING | | CA | 1 | | | .00 |
| 0246 | 2/09 | 5:50P | | INCOMING | | CA | 1 | | | .00 |
| 0247 | 2/09 | 6:00P | | INCOMING | | CA | 2 | | | .00 |
| 0248 | 2/09 | 6:05P | | INCOMING | | CA | 2 | | | .00 |
| 0249 | 2/09 | 6:15P | | INCOMING | | CA | 1 | | | .00 |
| 0250 | 2/09 | 6:34P | 707-648-1000 | VALLEJO | CA | CA | 1 | | | .00 |
| 0251 | 2/09 | 7:11P | 707-556-0099 | VALLEJO | CA | CA | 1 | | | .00 |
| 0252 | 2/11 | 1:50P | 707-648-1000 | VALLEJO | CA | CA | 1 | | | .00 |
| 0253 | 2/11 | 1:51P | 707-556-0099 | VALLEJO | CA | CA | 1 | | | .00 |
| 0254 | 2/11 | 1:55P | 619-384-4607 | SANDIEGCEL | CA | CA | 2 | | | .00 |
| 0255 | 2/11 | 1:58P | | INCOMING | | CA | 5 | | | .00 |
| 0256 | 2/11 | 1:58P W | | INCOMING | | CA | 2 | | | .00 |
| 0257 | 2/11 | 2:01P W | | INCOMING | | CA | 1 | | | .00 |
| 0258 | 2/11 | 2:03P | | INCOMING | | CA | 21 | | | .00 |
| 0259 | 2/11 | 2:06P W | | INCOMING | | CA | 2 | | | .00 |
| 0260 | 2/11 | 2:24P | 202-262-1406 | BOWIGLNNDL | DC | CA | 2 | | | .00 |
| 0261 | 2/11 | 2:33P | 727-934-6196 | TARPON SPG | FL | CA | 16 | | | .00 |
| 0262 | 2/11 | 2:39P W | | INCOMING | | CA | 1 | | | .00 |
| 0263 | 2/11 | 2:46P W | | INCOMING | | CA | 1 | | | .00 |
| 0264 | 2/11 | 2:50P | 727-934-6196 | TARPON SPG | FL | CA | 2 | | | .00 |
| 0265 | 2/11 | 3:02P | | INCOMING | | CA | 1 | | | .00 |
| 0266 | 2/11 | 3:08P | 408-409-8847 | SAN JOSE N | CA | CA | 1 | | | .00 |
| 0267 | 2/11 | 3:09P | | INCOMING | | CA | 1 | | | .00 |
| 0268 | 2/11 | 3:33P | | INCOMING | | CA | 4 | | | .00 |
| 0269 | 2/11 | 3:55P | 707-648-1000 | VALLEJO | CA | CA | 1 | | | .00 |
| 0270 | 2/11 | 4:35P | | INCOMING | | CA | 5 | | | .00 |
| 0271 | 2/11 | 4:35P W | | INCOMING | | CA | 1 | | | .00 |
| 0272 | 2/11 | 4:39P | 202-548-4736 | ALEXANDRIA | DC | CA | 2 | | | .00 |
| 0273 | 2/11 | 4:55P | | INCOMING | | CA | 1 | | | .00 |
| 0274 | 2/11 | 5:04P | | INCOMING | | CA | 49 | 5.60 | | 5.60 |
| 0275 | 2/11 | 5:15P W | | INCOMING | | CA | 1 | .35 | | .35 |
| 0276 | 2/11 | 5:19P W | | INCOMING | | CA | 34 | 11.90 | | 11.90 |
| 0277 | 2/11 | 5:53P W | | INCOMING | | CA | 1 | .35 | | .35 |
| 0278 | 2/11 | 5:53P | 202-251-5678 | ROCKVILLE | DC | CA | 3 | 1.05 | | 1.05 |
| 0279 | 2/11 | 5:53P W | | INCOMING | | CA | 1 | .35 | | .35 |
| 0280 | 2/11 | 6:28P | 202-251-5678 | ROCKVILLE | DC | CA | 1 | .35 | | .35 |
| 0281 | 2/11 | 6:28P | 707-648-1000 | VALLEJO | CA | CA | 1 | .35 | | .35 |
| 0282 | 2/11 | 6:31P | | INCOMING | | CA | 2 | .70 | | .70 |
| 0283 | 2/11 | 6:37P | | INCOMING | | CA | 1 | .35 | | .35 |
| 0284 | 2/11 | 6:38P | | INCOMING | | CA | 4 | 1.40 | | 1.40 |