**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

PLAINTIFF,

VS.

DEBORAH JEANE PALFREY,

DEFENDANT.
_______________________________________/

**CRIMINAL CASE NUMBER: 07-046-GK**

**APPENDIX TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION – *Pages 41 - 80***

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the above was served pursuant to LcvR 5.4(d) upon Daniel Butler, William Cowden, and Catherine Connelly, Assistant United States Attorneys, Criminal Division, 555 4th St., N.W., Room 4818, Washington, D.C. 20530 this November 29, 2007.

**MONTGOMERY BLAIR SIBLEY**
Counsel for Defendant
1629 K Street, Suite 300
Washington, D.C. 20006
202-508-3699
202-478-0371 Fax

By: /s/ Montgomery Blair Sibley
Montgomery Blair Sibley
D.C. Bar #464488

commodities to meet domestic needs and foreign commitment.

The Senate proceeded to consider the said amendments; and,

On motion by Mr. AIKEN,

*Resolved*, That the Senate agree thereto.

*Ordered*, That the Secretary notify the House of Representatives thereof.

PRODUCTION OF STRATEGIC AND CRITICAL MATERIALS

The Senate resumed the consideration of the bill (S. 2756) to stimulate the production and conservation of strategic and critical ores, metals, and minerals the interest of national defense and for the establishment within the Department of the Interior of a Mine Incentive Payments Division, and for other purposes.

The question being, Shall the bill pass?

Pending debate,

DEVELOPMENT OF CIVIL TRANSPORT AIRCRAFT

On motion by Mr. BREWSTER,

The Senate proceeded to consider the bill (S. 2644) to provide for the development of civil transport aircraft adaptable for auxiliary military service, and for other purposes.

On the question of agreeing to the reported amendment, striking out all after the enacting clause and inserting in lieu thereof other words,

Pending debate,

ISSUANCE OF STAMP COMMEMORATIVE OF JULIETTE LOW

On motion by Mr. JOHNSTON of South Carolina, and by unanimous consent,

The Senate proceeded to consider the joint resolution (H. J. Res. 327) to authorize the issuance of a special series of stamps commemorative of Juliette Low, founded and organizer of Girl Scouting in the United States of America; and no amendment being made,

*Ordered*, That it pass to a third reading.

The said joint resolution was read the third time.

*Resolved*, That it pass.

*Ordered*, That the Secretary notify the House of Representatives thereof.

ISSUANCE OF STAMP COMMEMORATIVE OF ROUGH RIDERS

On motion by Mr. JOHNSTON of South Carolina, and by unanimous consent,

The Senate proceeded to consider the joint resolution (H. J. Res. 305) to authorize the issuance o fa special series of stamps commemorative of the fiftieth anniversary of the organization of the Rough Riders (First Volunteer United States Cavalry) of the Spanish-American War; and no amendment being made,

*Ordered*, That it pass to a third reading.

The said joint resolution was read the third time.

*Resolved*, That it pass.

*Ordered*, That the Secretary notify the House of Representatives thereof.

EXECUTIVE BUSINESS

During legislative session, certain executive business was transacted as in executive session, by unanimous consent,

CONSTRUCTION OF RAILROADS IN ALASKA

On motion by Mr. MAGNUSON, and by unanimous consent,

The Senate proceeded to consider the concurrent resolution (S. Con. Res. 59) relative to negotiations with the Canadian Government concerning the construction of railroads in Alaska and the establishment of reciprocal tariff and immigration arrangements; and the reported amendments having been agreed to,

The concurrent resolution, as amended, together with the accompanying preamble, was agreed to, as follows:

Whereas the defense of the Territory of Alaska is essential to the national security of the United States; and

Whereas further development of mineral, timber, and other resources of Alaska is necessary to the defense of that Territory and to the welfare and security of the United States; and

Whereas adequate transportation facilities within the Territory of Alaska and between the Territory of Alaska and the United States are essential to the development of the resources and the defense of Alaska; and

Whereas existing transportation facilities within the Territory of Alaska and between the Territory of Alaska and the United States are inadequate for the development of the resources and the defense of Alaska: Therefore be it

*Resolved by the Senate (the House of Representatives concurring)*, That the President is requested to commence negotiations with the Canadian Government with a view toward determining the desirability of extending the existing railroad system now terminating at Prince George, British Columbia, Canada, to the Territory of Alaska, and to cause surveys to be made and plans, specifications, and cost estimates be prepared covering the construction of a railroad connecting the existing railroad system terminating at Fairbanks, Alaska, with a railroad system extended from Prince George, British Columbia, Canada, to the Territory of Alaska; also including studies with the Canadian Government for reciprocal tariff and immigration arrangements in connection with this project.

ADJOURNMENT

On motion by Mr. WHERRY, at 7 o'clock and 14 minutes a. m. (Sunday, June 20, 1948),

The Senate, pursuant to House Concurrent Resolution 218, adjourned.

ENROLLED BILLS AND JOINT RESOLUTIONS SIGNED

Subsequent to the adjournment of the Senate on June 20, 1948, the President pro tempore, under the authority of House Concurrent Resolution 219, signed the following enrolled bills and joint resolutions, which had been previously signed by the Speaker of the House of Representatives, and examined and found truly enrolled by the Secretary of the Senate:

S. 165. An act for the relief of Doris E. Snyder;

S. 418. An act to provide for water-pollution-control activities in the Public Health Service of the Federal Security Agency and in the Federal Works Agency, and for other purposes;

S. 595. An act to provide that the rates of compensation for disabilities incurred in active military or naval service other than in a period of war service shall be equal to 80 percent of the rates payable for similar disabilities incurred during active service in time of war;

S. 1243. An act to provide for the payment of revenues from certain lands into the tribal funds of the Confederated Tribes of the Warm Springs Reservation of Oregon, and for other purposes;

S. 1260. An act to create a commission to hear and determine the claims of certain motor carriers;

S. 1322. An act to provide a Federal charter for the Commodity Credit Corporation;

S. 1683. An act to confer jurisdiction on the State of New York with respect to offenses committed on Indian reservations within such State;

S. 1715. An act for the relief of Archie Hamilton and Delbert Hamilton;

S. 1717. An act for the relief of the estate of William R. Stigall, deceased;

S. 1969. An act to amend the Philippine Rehabilitation Act of 1946 in connection with the training of Filipinos as provided for in title III;

S. 2217. An act conferring jurisdiction upon the Court of Claims of the United States to hear, determine, and render judgment upon the joint claims of Silas Mason Co., Inc.; Walsh Construction Co.; and Atkinson-Kier Co.;

S. 2242. An act to authorize for a limited period of time the admission into the United States of certain European displaced persons for permanent residence, and for other purposes;

S. 2281. An act to provide for an air parcel-post service, and for other purposes;

S. 2371. An act validating certain conveyances of the Oregon Short Line Railroad Co. and the Union Pacific Railroad Co .and waiving, relinquishing, and disclaiming all title and all right of reverter and forfeiture of the United States of America to the lands described in said conveyance;

S. 2376. An act to provide a revolving fund for the purchase of agricultural commodities and raw materials to be processed in occupied areas and sold;

S. 2440. An act for the relief of Charles Duncan Montrieth;

S. 2554. An act to promote the common defense by providing for the retention and maintenance of a national reserve of industrial productive capacity, and for other purposes;

S. 2621. An act authorizin gthe extension of the functions and duties of Fed-

eral Prison Industries, Inc., to military disciplinary barracks;

S. 2655. An act to provide for the common defense by increasing the strength of the armed forces of the United States, including the Reserve components thereof, and for other purposes;

S. 2676. An act to authorize the Secretary of the Interior to convey a certain parcel of land in St. Louis County, Minn., to the University of Minnesota;

S. 2692. An act to terminate the retirement system of the Office of the Comptroller of the Currency, and to transfer that retirement fund to the Civil Service Retirement and Disability Fund;

S. 2698. An act to authorize the transfer of horses and equipment owned by the United States Army to the New Mexico Military Institution, a State institution, and for other purposes;

S. 2705. An act to reimburse the James & Phelps Construction Co.;

S. 2709. An act for the relief of Stefan Magura and Michal Magura;

S. 2730. An act to include as allowable service under the act of July 6, 1945, service performed in the military forces and on war transfer by employees in the field service of the Post Office Department;

S. 2743. An act providing for the more expeditious determination of certain claims filed by Ute Indians;

S. 2747. An act to amend the Canal Zone Code for the purpose of incorporating the Panama Railroad Company;

S. 2767. An act to provide assistance in the recruitment and distribution of farm labor for the increased production, harvesting, and preparation for market of agricultural commodities to meet domestic needs and foreign commitment;

S. 2790. An act to amend the Servicemen's Readjustment Act of 1944, as amended, and for other purposes;

S. 2794. An act to authorize the Administrator of Veterans' Affairs to prescribe the rates of pay for certain positions at field installations;

S. 2830. An act to extend for 2 years the authority to provide for the maintenance of a domestic tin-smelting industry;

S. 2849. An act to authorize the Administrator of Veterans' Affairs to convey a certain tract of land in the State of Arkansas to Washington County, Ark.;

S. 2861. An act to assist by grants-in-aid the Republic of the Philippines in providing medical care and treatment for certain veterans;

S. 2877. An act to amend the Reconstruction Finance Corporation Act, as amended;

H. R. 333. An act for the relief of sundry residents of Alaska, the veterans of World War II;

H. R. 2009. An act for the relief of the estate of Vito Abarno;

H. R. 2269. An act for the relief of Frank A. Constable;

H. R. 2798. An act to amend section 5, Home Owners' Loan Act of 1933, and for other purposes;

H. R. 3190. An act to revise, codify, and enact into positive law title 18 of the United States Code, entitled "Crimes and Criminal Procedure";

H. R. 3416. An act to provide for the establishment of the Pensacola National Monument;

H. R. 4044. An act to amend the Trading With the Enemy Act, as amended; to create a commission to make an inquiry and report with respect to war claims; and to provide for relief for internees in certain cases;

H. R. 4917. An act to provide further benefits for certain employees of the United States who are veterans of World War II and lost opportunity for probational civil-service appointments by reason of their service in the armed forces of the United States, and who, due to service-connected disabilities, are unable to perform the duties of the positions for which examinations were taken;

H. R. 5416. An act to promote the interests of the Fort Hall Indian irrigation project, Idaho; and for other purposes;

H. R. 5882. An act to authorize the Secretary of the Army, the Secretary of the Navy, and the Secretary of the Air Force to donate excess and surplus property for educational purposes;

H. R. 5904. An act to continue the Virgin Islands Company as an agency of the United States;

H. R. 6248. An act to authorize the Secretary of Agriculture to stabilize prices of agricultural commodities; to amend section 22 of the Agricultural Adjustment Act, reenacted by the Agricultural Marketing Agreement Act of 1937; and for other purposes;

H. R. 6402. An act to provide for extension of the terms of office of the present members of the Atomic Energy Commission;

H. R. 6448. An act to authorize the Administrator of Veterans' Affairs to convey certain land in Tennessee to the city of Johnson City.

H. R. 6465. An act to amend and supplement section 2 of the act approved August 30, 1935, relating to the construction and financing of toll bridges over the Delaware River by the Delaware River Joint Toll Bridge Commission of the Commonwealth of Pennsylvania and the State of New Jersey;

H. R. 6481. An act making appropriations for Government corporations and independent executive agencies for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 6527. An act to provide assistance to certain local school agencies overburdened with war-incurred or post-war national-defense-incurred enrollments;

H. R. 6641. An act to amend the Civil Service Retirement Act of May 29, 1930, to provide annuities for certain surviving spouses of annuitants retired prior to April 1, 1948;

H. R. 6771. An act making appropriations for military functions administered by the National Military Establishment for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 6801. An act making appropriations for foreign aid, and for other purposes;

H. R. 6808. An act to permit refund or credit to brewers of taxes paid on beer lost in bottling operations;

H. R. 6829. An act making supplemental appropriations for the Executive Office and sundry independent executive bureaus, boards, commissions, and offices for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 6916. An act to provide for permanent postal rates and to provide pay increases for Government employees;

H. R. 6935. An act making appropriations to supply deficiencies in certain appropriations for the fiscal year ending June 30, 1948, and for other purposes;

S. J. Res. 177. Joint resolution providing for participation by the Government of the United States in the Pan American Railway Congress, and authorizing an appropriation therefor;

S. J. Res. 219. Joint resolution to continue until March 1, 1949, the authority of the United States Maritime Commission to make provision for certain ocean transportation service to, from, and within Alaska.

H. J. Res. 190. Joint resolution authorizing the printing and binding of Cannon's Procedure in the House of Representatives and providing that the same shall be subject to copyright by the author.

H. J. Res. 305. Joint resolution authorizing the issuance of a special series of stamps commemorative of the fiftieth anniversary of the organization of the Rough Riders (First Volunteer U. S. Cavalry) of the Spanish-American War;

H. J. Res. 327. Joint resolution to authorize the issuance of a special series of stamps commemorative of Juliette Low, founder and organizer of Girl Scouting in the United States of America; and

H. J. Res. 433. Joint resolution permitting the free entry of certain articles imported to promote international good will, and for other purposes.

#### ENROLLED BILLS AND JOINT RESOLUTIONS PRESENTED

Subsequent to the adjournment of the Senate on June 20, 1948, the following enrolled bills and joint resolutions, heretofore duly signed by the Presiding Officers of the two Houses, were presented to the President of the United States by the Secretary of the Senate:

On June 21, 1948:

S. 83. An act authorizing the naturalization of Elizabeth Pickering Winn;

S. 1107. An act relating to the arming of American vessels;

S. 1639. An act authorizing the repair and rehabilitation of irrigation works damaged by flood and the prevention of flood damage in the Fort Sumner irrigation district, and for other purposes;

S. 1730. An act for the relief of Mrs. Anna V. Reyer, Alexander A. Reyer, and Vitaly A. Reyer;

S. 1820. An act to confer jurisdiction on the State of Iowa over offenses committed by or against Indians on the Sac and Fox Indian Reservation;

S. 2186. An act to amend section 5 of the act entitled "An act to amend the laws relating to navigation, and for other purposes";

S. 2192. An act to amend the Interstate Commerce Act so as to permit the issuance of free passes to time inspectors of carriers subject to part I of such act;

S. 2341. An act to authorize an increase in the annual appropriation for the maintenance and operation of the Gorgas Memorial Laboratory;

S. 2510. An act to provide for certain administrative expenses in the Post Office Department, including retainment of penumatic-tube systems, and for other purposes;

S. 2706. An act to authorize the Federal Works Administrator to lease for commercial purposes certain space in the building located at 811 Vermont Avenue NW., Washington, D. C., commonly known as the Lafayette Building;

S. 2739. An act to authorize the issuance of a stamp commemorative of the two hundredth anniversary of the founding of the city of Alexandria, Va.;

S. 2821. An act to provide increases of compensation for certain veterans with service-connected disabilities who have dependents; and

S. 2825. An act to increase the rates of service-connected-death compensation payable to certain widows, children, and dependent parents of persons who served in the active or naval service, and for other purposes.

On June 23, 1948:

S. 418. An act to provide for water-pollution-control activities in the Public Health Service of the Federal Security Agency and in the Federal Works Agency, and for other purposes;

S. 595. An act to provide that the rates of compensation for disabilities incurred in active military or naval service other than in a period of war service shall be equal to 80 percent of the rates payable for similar disabilities incurred during active service in time of war;

S. 1243. An act to provide for the payment of revenues from certain lands into the tribal funds of the Confederated Tribes of the Warm Springs Reservation of Oregon, and for other purposes;

S. 1260. An act to create a commission to hear and determine the claims of certain motor carriers;

S. 1322. An act to provide a Federal charter for the Commodity Credit Corporation;

S. 1683. An act to confer jurisdiction on the State of New York with respect to offenses committed on Indian reservations within such State;

S. 1715. An act for the relief of Archie Hamilton and Delbert Hamilton;

S. 1717. An act for the relief of the estate of William R. Stigall, deceased;

S. 1969. An act to amend the Philippine Rehabilitation Act of 1946 in connection with the training of Filipinos as provided for in title III;

S. 2217. An act conferring jurisdiction upon the Court of Claims of the United States to hear, determine, and render judgment upon the joint claims of Silas Mason Co., Inc., Walsh Construction Co., and Atkinson-Kier Co.;

S. 2242. An act to authorize for a limited period time the admission into the United States of certain European displaced persons for permanent residence, and for other purposes;

S. 2281. An act to provide for an air parcel-post service, and for other purposes;

S. 2371. An act validating certain conveyances of the Oregon Short Line Railroad Co. and the Union Pacific Railroad Co. and waiving, relinquishing, and disclaiming all title and all right of reverter and forfeiture of the United States of America to the lands described in said conveyance;

S. 2376. An act to provide a revolving fund for the purchase of agricultural commodities and raw materials to be processed in occupied areas and sold;

S. 2440. An act for the relief of Charles Duncan Montrieth;

S. 2554. An act to promote the common defense by providing for the retention and maintenance of a national reserve of industrial productive capacity, and for other purposes;

S. 2621. An act authorizing the extension of the functions and duties of Federal Prison Industries, Inc., to military disciplinary barracks;

S. 2655. An act to provide for the common defense by increasing the strength of the armed forces of the United States, including the Reserve components thereof, and for other purposes;

S. 2676. An act to authorize the Secretary of the Interior to convey a certain parcel of land in St. Louis County, Minn., to the University of Minnesota;

S. 2692. An act to terminate the retirement system of the Office of the Comptroller of the Currency, and to transfer that retirement fund to the Civil Service Retirement and Disability Fund;

S. 2698. An act to authorize the transfer of horses and equipment owned by the United States Army to the New Mexico Military Institute, a State institution, and for other purposes;

S. 2705. An act to reimburse the James & Phelps Construction Co.;

S. 2709. An act for the relief of Stefan Magura and Michal Magura;

S. 2730. An act to include as allowable service under the act of July 6, 1945, service performed in the military forces and on war transfer by employees in the field service of the Post Office Department;

S. 2743. An act providing for the more expeditious determination of certain claims filed by Ute Indians;

S. 2747. An act to amend the Canal Zone Code for the purpose of incorporating the Panama Railroad Company;

S. 2767. An act to provide assistance in the recruitment and distribution of farm labor for the increased production, harvesting, and preparation for market agricultural commodities to meet domestic needs and foreign commitment;

S. 2794. An act to authorize the Administrator of Veterans' Affairs to prescribe the rates of pay for certain positions at field installations;

S. 2830. An act to extend for 2 years the authority to provide for the maintenance of a domestic tin-smelting industry;

S. 2849. An act to authorize the Administrator of Veterans' Affairs to convey a certain tract of land in the State of Arkansas to Washington County, Ark.;

S. 2861. An act to assist by grants-in-aid the Republic of the Philippines in providing medical care and treatment for certain veterans;

S. J. Res. 177. Joint resolution providing for participation by the Government of the United States in the Pan American Railway Congress, and authorizing an appropriation therefor; and

S. J. Res. 219. Joint resolution to continue until March 1, 1949, the authority of the United States Maritime Commission to make provision for certain ocean transportation service to, from, and within Alaska.

On June 24, 1948:

S. 165. An act for the relief of Doris E. Snyder;

S. 2790. An act to amend the Servicemen's Readjustment Act of 1944, as amended, and for other purposes; and

S. 2877. An act to amend the Reconstruction Finance Corporation Act, as amended.

APPROVALS OF BILLS AND JOINT RESOLUTIONS

The President of the United States, subsequent to the adjournment of the Senate on June 20, 1948, notified the Secretary of the Senate that he had approved acts and joint resolutions as follows:

On June 19, 1948:

S. 263. An act to provide for the carrying of mail on star routes, and for other purposes;

S. 295. An act to further amend the thirteenth paragraph of section 127a of the National Defense Act, as amended;

S. 424. An act conferring jurisdiction upon the United States District Court for the District of Nebraska to hear, determine, and render judgment upon the claims of John J. Higgins, and others;

S. 554. An act to provide for the collection and publication of statistical information by the Bureau of the Census;

S. 612. An act to amend section 35 of chapter III of the act of June 19, 1934, entitled "An act to regulate the business of life insurance in the District of Columbia," as amended, and to repeal section 36 of said chapter III of said act, as amended, so as to permit certain additional investments;

S. 692. An act to authorize a mileage allowance of 7 cents per mile for United States marshals and their deputies for travel on official business;

and the Railroad Unemployment Insurance Act, as amended, and for other purposes.

On June 24, 1948:

S. 1266. An act to amend section 1064 of the act entitled "An act to establish a Code of Law for the District of Columbia," approved March 3, 1901, relating to admissibility of testimony by a party to a transaction when the other party is incapable of testifying;

S. 1274. An act conveying all right, title, and interest of the United States in and to certain lands in Wilkinson County, Miss., to the heirs, assigns, and successors in title of William Collins;

S. 1275. An act conveying all right, title, and interest of the United States in and to certain lands in Warren County, Miss., to the heirs, assigns, and successors in title of Moses Evans;

S. 2192. An act to amend the Interstate Commerce Act so as to permit the issuance of free passes to time inspectors of carriers subject to part I of such act;

S. 2223. An act to authorize the promotion of Lt. Gen. Leslie Richard Groves to the permanent grade of major general, United States Army, and for other purposes;

S. 2237. An act to increase certain benefits payable under the Longshoremen's and Harbor Workers' Compensation Act;

S. 2505. An act to amend the act of August 1, 1947, to clarify the position of the Secretary of the Air Force with respect to such act, and to authorize the Secretary of Defense to establish six additional positions in the reserve components thereof, and for other purposes;

S. 2508. An act relating to salaries of certain officers and employees of the United States and certain officers and employees of Puerto Rico;

S. 2655. An act to provide for the common defense by increasing the strength of the armed forces of the United States, including the reserve components thereof, and for other purposes;

S. 2706. An act to authorize the Federal Works Administrator to lease for commercial purposes certain space in the building located at 811 Vermont Avenue NW., Washington, D. C., commonly known as the Lafayette Building;

H. R. 239. An act to further perfect the consolidation of the Lighthouse Service with the Coast Guard;

H. R. 2867. An act to permit, subject to certain conditions, mining locations under the mining laws of the United States within that portion of the Harney National Forest, designated as a game sanctuary, and for other purposes;

H. R. 3889. An act to amend Veterans Regulation No. 1 (a), parts I and II, as amended, to establish a presumption of service connection for chronic and tropical diseases;

H. R. 4047. An act for the relief of Edmund Huppler;

H. R. 4071. An act to amend sections 301 (k) and 304 (a) of the Federal Food, Drug, and Cosmetic Act, as amended;

H. R. 4516. An act for the relief of the Moore Dry Dock Co., of Oakland, Calif.;

H. R. 4962. An act to provide pensions for certain widows of veterans of the Spanish-American War, including the Boxer Rebellion and the Philippine Insurrection;

H. R. 5036. An act to authorize the attendance of the United States Marine Corps Band at the national assembly of the Marine Corps League to be held at Milwaukee, Wis., September 22 to September 25, inclusive, 1948;

H. R. 5275. An act to amend the Tariff Act of 1930 to provide for the free importation of limestone to be used in the manufacture of fertilizer;

H. R. 5936. An act to provide for the addition of certain surplus Government lands to the Chickamauga and Chattanooga National Military Park, in the States of Georgia and Tennessee, and for other purposes;

H. R. 6188. An act to confer jurisdiction over the Fort Des Moines Veterans' Village upon the State of Iowa;

H. R. 6318. An act to amend section 3 of the Standard Time Act of March 19, 1918, as amended, relating to the placing of a certain portion of the State of Idaho in the third time zone;

H. R. 6698. An act to authorize the course of instruction at the United States Naval Academy to be given to not exceeding four persons at a time from the Republic of the Philippines;

H. R. 6771. An act making appropriations for military functions administered by the National Military Establishment for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 6822. An act to continue the authorization for the appointment of two additional Assistant Secretaries of State;

H. R. 6726. An act to amend the Public Health Service Act to provide for, foster, and aid in coordinating research relating to dental diseases and conditions, and for other purposes;

H. R. 6772. An act making appropriations for the Department of the Navy and the naval service for the fiscal year ending June 30, 1949, and for other purposes; and

S. J. Res. 203. Joint resolution providing for the ratification by Congress of a contract for the purchase of certain lands and mineral deposits by the United States from the Choctaw and Chickasaw Nations of Indians.

On June 25, 1948:

S. 1409. An act for the relief of Markoto Iwamatsu, Atsushi Jun Imamatsu, and Tomoe Iwamatsu;

S. 2242. An act to authorize for a limited period of time the admission into the United States of certain European displaced persons for permanent residence, and for other purposes;

S. 2401. An act to provide for the administration of military justice within the United States Air Force, and for other purposes;

S. 2675. An act to amend the Organic Act of Puerto Rico;

S. 2770. An act to fix the rank of the Assistant to the Chief of Engineers in charge of river and harbor and flood-control improvements.

H. R. 564. An act for the relief of Sarah Lee Cregg;

H. R. 700. An act for the relief of Anthony Arancio;

H. R. 912. An act for the relief of Hiro Higa and Kana Higa;

H. R. 945. An act relating to the payment of fees, expenses, and costs of jurors;

H. R. 1409. An act for the relief of Frantisek Jiri Pavlik or Georg Pavlik;

H. R. 1642. An act for the relief of Miss Rosella M. Kostenbader;

H. R. 2009. An act for the relief of the estate of Vito Abarno;

H. R. 2193. An act for the relief of Robert E. Graham;

H. R. 2431. An act for the relief of the estate of David Jefferson Janow, deceased;

H. R. 2734. An act for the relief of Joseph M. Henry;

H. R. 2766. An act to amend section 2 of an act, entitled, "An act to provide for the establishment of a probation system in the United States courts, except in the District of Columbia," approved March 4, 1925, as amended (18 U. S. C. 725);

H. R. 3190. An act to revise, codify, and enact into positive law, title 18 of the United States Code, entitled "Crimes and Criminal Procedure";

H. R. 3214. An act to revise, codify, and enact into law title 28 of the United States Code entitled "Judicial Code and Judiciary";

H. R. 3427. An act for the relief of Mrs. Mary H. Overall and Thomas I. Baker;

H. R. 4114. An act to amend the Public Health Service Act to permit certain expenditures, and for other purposes;

H. R. 4298. An act for the relief of Henry Hill;

H. R. 4452. An act for the relief of Douglas L. Craig;

H. R. 4566. An act for the relief of William Nally;

H. R. 4587. An act for the relief of Mrs. Harry A. Light (formerly Mrs. Elsie Purvey);

H. R. 4518. An act for the relief of Gerald S. Furman;

H. R. 4659. An act to ratify and confirm amendments to certain contracts for the furnishing of petroleum products to the United States;

H. R. 4881. An act for the relief of Dimitri Petrou;

H. R. 5524. An act making appropriations for civil functions administered by the Department of the Army for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 5886. An act to amend section 332 (a) of the Nationality Act of 1940;

H. R. 6293. An act to amend the act of June 19, 1934, providing for the establishment of the National Archives, so as to provide that certain fees collected by the Archivist shall be available for dis-

MONDAY, JULY 26, 1948

CONVENING THE CONGRESS BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

## A PROCLAMATION

Whereas the public interest requires that the Congress of the United States should be convened at 12 o'clock noon on Monday, the 26th day of July 1948, to receive such communication as may be made by the Executive:

Now, therefore, I, Harry S. Truman, President of the United States of America, do hereby proclaim and declare that an extraordinary occasion requires the Congress of the United States to convene at the Capitol in the city of Washington on Monday, the 26th day of July 1948, at 12 o'clock noon, of which all persons who shall at that time be entitled to act as Members thereof are hereby required to take notice.

In witness whereof, I have hereunto set my hand and caused to be affixed the great seal of the United States.

Done at the city of Washington this 15th day of July, in the year of our Lord nineteen hundred and forty-eight, and of the independence of the United States of America the one hundred and seventy-third.

[SEAL] HARRY S. TRUMAN.

By the President:

G. C. MARSHALL,

*Secretary of State.*

In conformity with the foregoing proclamation of the President of the United States, the Senate reassembled in its Chamber in the city of Washington.

---

The PRESIDENT pro tempore called the Senate to order and Rev. Bernard Braskamp, D. D., of Washington, D. C. offered prayer.

READING OF PROCLAMATION OF THE PRESIDENT

The proclamation of the President convening the Senate in session was read.

QUESTION OF QUORUM

Mr. WHERRY raised a question as to the presence of a quorum;

Whereupon

The PRESIDENT pro tempore directed the roll to be called;

When

Seventy-eight Senators answered to their names, as follows:

| | | |
|---|---|---|
| Aiken | Hickenlooper | O'Daniel |
| Baldwin | Hill | O'Mahoney |
| Barkley | Hoey | Pepper |
| Brewster | Holland | Reed |
| Brooks | Jenner | Revercomb |
| Butler | Johnson, Colo. | Robertson, Va. |
| Byrd | Johnston, S. C. | Robertson, Wyo. |
| Cain | Kem | Russell |
| Capehart | Kilgore | Saltonstall |
| Capper | Knowland | Smith |
| Connally | Langer | Sparkman |
| Cooper | Lodge | Stennis |
| Cordon | Lucas | Stewart |
| Donnell | McCarthy | Taft |
| Downey | McClellan | Taylor |
| Eastland | McFarland | Thomas, Okla. |
| Ecton | McGrath | Thomas, Utah |
| Ellender | McMahon | Thye |
| Feazel | Magnuson | Tobey |
| Ferguson | Martin | Umstead |
| George | Maybank | Vandenberg |
| Green | Millikin | Watkins |
| Gurney | Moore | Wherry |
| Hatch | Murray | Wiley |
| Hawkes | Myers | Williams |
| Hayden | O'Conor | Young |

A quorum being present,

THE JOURNAL

On motion by Mr. WHERRY, and by unanimous consent,

The Journal of the proceedings of Friday, June 18, Saturday, June 19, and Sunday, June 20, 1948, was approved.

NOTIFICATION TO THE PRESIDENT

Mr. WHERRY submitted the following resolution (S. Res. 266), which was considered by unanimous consent and agreed to:

*Resolved,* That a committee of two Senators be appointed to join such committee as may be appointed by the House of Representatives to wait upon the President of the United States and inform him that a quorum of each House is reassembled and that the Congress is ready to receive any communication he may be pleased to make.

The PRESIDENT pro tempore appointed Mr. WHERRY and Mr. BARKLEY as the members of the committee on the part of the Senate.

*Ordered,* That the Secretary notify the House of Representatives thereof.

ADJOURNMENT

On motion by Mr. WHERRY, at 12 o'clock and 11 minutes p. m.,

The Senate adjourned.

### TUESDAY, JULY 27, 1948

The PRESIDENT pro tempore called the Senate to order, and Rev. Bernard Braskamp, D. D., of Washington, D. C., offered prayer.

THE JOURNAL

On motion by Mr. WHERRY, and by unanimous consent,

The Journal of the proceedings of Monday, July 26, 1948, was approved.

MESSAGE FROM THE HOUSE

A message from the House of Representatives, by Mr. Swanson, one of its clerks:

*Mr. President:* The House of Representatives has passed the following resolution, which I am directed to communicate to the Senate:

*Resolved,* That a committee of three members be appointed by the Speaker on the part of the House of Representatives to join with the committee on the part of the Senate to notify the President of the United States that a quorum of each House is assembled and that Congress is ready to receive any communications that he may be pleased to make.

The Speaker of the House has appointed Mr. HALLECK, Mr. ARENDS, and Mr. MCCORMACK as the members of the said committee on the part of the House.

The House has passed the following concurrent resolution (H. Con. Res. 220), in which it requests the concurrence of the Senate:

*Resolved by the House of Representatives (the Senate concurring),* That the two Houses of Congress assemble in the Hall of the House of Representatives on Tuesday, July 27, 1948, at 12:30 o'clock in the afternoon, for the purpose of receiving such communication as the President of the United States may be pleased to make to them.

REPORT OF NOTIFICATION COMMITTEE

Mr. WHERRY, from the committee appointed to join a similar committee appointed by the House of Representatives to wait upon the President of the United States and inform him that a quorum of each House is reassembled

amount each year for the development of farm-to-market roads. The Commissioner of Public Roads, Mr. Thomas H. MacDonald, spoke in favor of the bill. General Fleming, Commissioner of Public Works, favored the bill. No one appeared in opposition to the bill. It was reported unanimously by the Public Works Committee. Three identical bills have been introduced in the other body by three different Senators. The President recommended the passage of such measure in his message to the Congress on January 3 of this year. This bill will not require a single dollar of appropriations from the Federal Treasury.

Mr. CASE of South Dakota. Mr. Speaker, will the gentleman yield?

Mr. CUNNINGHAM. I yield.

Mr. CASE of South Dakota. Does the extension apply to the farm-to-market roads as well as to the primary system?

Mr. CUNNINGHAM. It certainly does, as well as the development of the highways in the urban areas.

Mr. CASE of South Dakota. The bill is very much in order for two reasons. One is that the time when the Japanese war expired, creating the resolution which the gentleman has referred to before, came along in the fall, which gave the States a short year the first year.

Mr. CUNNINGHAM. Yes. No States started building highways prior to October of 1945. They lost 4 months to start with. Then, there was a lack of material and shortage of labor and high prices, which caused the program to be held up. The whole program will be retarded and the States will lose some of this appropriation and there will be tremendous waste if this bill is not enacted. Possibly 12 months' grace period is not sufficient, but if it is not sufficient we can bring up another bill later.

Mr. CASE of South Dakota. If I remember correctly prior to this authorization the old Federal-aid authorization gave the States 2 years in which to act.

Mr. CUNNINGHAM. I think the gentleman is right.

Mr. H. CARL ANDERSEN. Mr. Speaker, will the gentleman yield?

Mr. CUNNINGHAM. I yield.

Mr. H. CARL ANDERSEN. I wish to state at this time that in my opinion this is very necessary legislation. As a previous member of the Committee on Roads, I would like to compliment the gentleman for bringing this bill up at this time.

Mr. CUNNINGHAM. I thank the gentleman.

Mr. DONDERO. Mr. Speaker, will the gentleman yield?

Mr. CUNNINGHAM. I yield to the chairman of the committee.

Mr. DONDERO. I think the gentleman has already covered the ground, but is it not a fact that because of the conditions enumerated by the gentleman, many of the States have been unable to comply with the provisions of this act, which makes this bill mandatory in order to protect the States?

Mr. CUNNINGHAM. That is absolutely true. In addition, there would be tremendous waste, because the highway program would be stopped, and highways partly completed would be left in status quo until the Congress took some additional action.

Mr. COLE of New York. Mr. Speaker, I withdraw my reservation of objection.

Mr. ANGELL. Mr. Speaker, reserving the right to object, as one of the members of this committee, I had an opportunity to study this bill very carefully. The people in my particular area in the Northwest are very, very much in sympathy with this bill. I think what the chairman has said and what the gentleman from Iowa [Mr. CUNNINGHAM] has said is absolutely true, that this bill is essential for our road-building program.

The SPEAKER. Is there objection to the present consideration of the bill?

There was no objection.

The Clerk read the bill, as follows:

*Be it enacted, etc.*, That paragraph (d) of section 4 of the Federal-Aid Highway Act of 1944, Public Law 521, Seventy-eighth Congress, approved December 20, 1944, is hereby amended by striking out the term "one year" where it appears in said paragraph and inserting in lieu thereof the term "two years."

The bill was ordered to be engrossed and read a third time, was read the third time, and passed, and a motion to reconsider was laid on the table.

### TO CODIFY TITLE 18 OF THE UNITED STATES CODE, CRIMES AND CRIMINAL PROCEDURE

The Clerk called the bill (H. R. 3190) to revise, codify, and enact into positive law, title 18 of the United States Code entitled "Crimes and Criminal Procedure."

The SPEAKER. Is there objection to the present consideration of the bill?

There was no objection.

The Clerk read the bill the second time.

Mr. WALTER. Mr. Speaker, I offer an amendment.

The Clerk read as follows:

Amendment offered by Mr. WALTER: On page 434, line 11, after the word "of", strike out "three" and insert "five."

Mr. WALTER. Mr. Speaker, the amendment you have just heard reported would have the effect, if adopted, of increasing the membership of the parole board from three to five.

At the last session of the Congress one of the subcommittees of the Committee on the Judiciary, in studying the legislation which we hoped might have the effect of cutting down the criminal rate in this country, found a perfectly appalling situation in the parole board. That board of three members actually interviews upward of 10,000 prisoners each year. That is, personal interviews. In addition to that, they have to review the cases acted on after personal interviews.

There are 21 criminal institutions in the United States that must be visited by this Board at regular intervals. So they have a perfectly impossible job with the result that men are paroled according to formula who should be compelled to serve their full sentence. I am not thinking about those men who are eligible for parole and in whose cases no action can be taken because the Board has not the time to reach their cases; that is bad enough, but, significantly enough, over 50 percent of the criminals in the Federal institutions are repeaters. It seems to me that the least we can do is to make it possible or probable for a Board intelligently to pass on applications for parole in order to determine whether or not men should be released from their incarceration.

Mr. CARROLL. Mr. Speaker, will the gentleman yield?

Mr. WALTER. I yield.

Mr. CARROLL. Would the gentleman's amendment change existing law?

Mr. WALTER. It does not change existing law at all.

Mr. COLE of New York. Mr. Speaker, will the gentleman yield?

Mr. WALTER. I yield.

Mr. COLE of New York. If it does not change existing law, and this bill is designed to codify existing law, what is the necessity of offering the amendment?

Mr. WALTER. It changes existing law in that it changes the number of members on the Board. It does not, however, in any way affect the purpose of the law establishing the parole system; it merely changes the number of members of the Board. This is not different from what has been done by this committee in this very bill. The period of sentence has been changed in order to make different crimes fit the sentences that have been fixed by Congress from time to time. That is done throughout this entire title 28.

Mr. GRAHAM. Mr. Speaker, will the gentleman yield?

Mr. WALTER. I yield.

Mr. GRAHAM. As I understand the gentleman's amendment it increases the number of members from three to five.

Mr. WALTER. That is right.

Mr. GRAHAM. But it does not increase the rate of compensation of the members.

Mr. WALTER. That is right, exactly.

Mr. ROBSION. Mr. Speaker, will the gentleman yield?

Mr. WALTER. I yield.

Mr. ROBSION. I may say this to the gentleman, this matter came up before our Judiciary Committee and former Senator George Wharton Pepper, who is tremendously interested in this subject, and others felt they had to have additional authorization to increase the number from three to five. Otherwise we are not amending the law. I think there is no objection to it. We have a bill which can be called up to do this thing.

Mr. WALTER. The gentleman is correct, but we are this far. I do not think there is any doubt but that the Judiciary Committee would unanimously approve a separate bill, but we have gotten this far with this legislation and it certainly seems to me the situation is so critical that we ought to act as quickly as we possibly can. That is the reason I have offered this amendment at this time.

The SPEAKER. The time of the gentleman from Pennsylvania has expired.

Mr. ROBSION. Mr. Speaker, this bill differs from the five codification bills which have preceded it on this calendar in that it constitutes a revision, as well as a codification, of the Federal laws

relating to crimes and criminal procedure.

A bill similar to this passed the House unanimously in the closing days of the Seventy-ninth Congress but was not acted upon in the other body. I believe that I should make a brief statement explaining the method of drafting the bill and its scope.

The work on this revision was commenced under the supervision of the former Committee on Revision of the Laws in 1944. That committee engaged the services of the West Publishing Co. and the Edward Thompson Co., two law-publishing companies that have assisted in the preparation of the original United States Code and every supplement and new edition of that code. These companies have worked continuously and closely with the Committee on Revision of the Laws and, since the beginning of this Congress, with the Committee on the Judiciary, and counsel for the committees. In turn, the companies supplemented their regular editorial staffs by engaging the services of a reviser who was long familiar with the operation and administration of these laws. In addition they assembled an outstanding group of men as an advisory committee who labored unselfishly toward achieving the best revision of the criminal laws. A number of these men—members of the bench and bar of the country—appeared before the Committee on the Judiciary and testified that in their opinion this bill is eminently worthy of favorable action by the Congress. The Department of Justice also designated a representative of the Criminal Division to cooperate in the preparation of this revision.

Several preliminary drafts of the revision were studied most carefully, word for word and line for line, by these various groups, culminating in the bill now up for consideration.

At the last Congress the Committee on the Revision of the Laws, through its chairman, appeared before a subcommittee of the Judiciary Committee and, in a number of sessions, pointed out and explained every change in substantive law made by the bill which had been reported by that committee. After full discussion the Committee on the Judiciary unanimously endorsed the then pending bill, which is similar to the bill before us today, and that bill was passed unanimously by the House on July 16, 1946, in the closing days of the session. The bill had received the endorsement of the Department of Justice and the Section on Criminal Law of the American Bar Association. I believe that I am not engaging in overstatement when I say that no bill of this magnitude ever came to the House with such a background of careful and painstaking preparation and critical appraisal by so many leaders in this branch of the law.

So much for the method of preparation—and I want to express our appreciation to the learned members of the bench and bar who contributed so much of their talent and time toward this work.

Now as to the scope of the bill.



This bill is a restatement of the Federal laws relating to crimes and criminal procedure in effect on April 15, 1947. Most of these laws are now set forth in title 18 of the United States Code and are based upon the 1909 Criminal Code—which was the last revision of criminal laws enacted by the Congress—and subsequent laws on the subject. Of course, title 18 of the United States Code is only prima facie evidence of the law which is contained in numerous volumes of the Statutes at Large. Upon the enactment of this bill it will no longer be necessary to have recourse to those numerous volumes. All the law will be set out in one place and amendments in the future will be facilitated because of the orderly arrangement of the laws within one title.

Just a year ago with the adoption of the Federal Rules of Criminal Procedure many statutes became obsolete or superseded, but, of course, were not specifically repealed. These together with other obsolete, superseded, redundant, and repetitious statutes are repealed by this bill, and the effect of the rules is clearly set forth in the revision.

The law is restated in simple, clear, and concise language. Many sections of existing statutes are consolidated to facilitate finding the law. The advantages of codes are too well known to require any lengthy exposition on my part at this time.

You will find no radical changes in the philosophy of our criminal law in this bill. There is no attempt made here to coddle criminals and wrongdoers. Nor is this bill a subject of partisanship. Its predecessor which passed the House unanimously in the Seventy-ninth Congress had been reported unanimously by the Committee on the Revision of the Laws and had received the unanimous endorsement of the Committee on the Judiciary. This bill has also been reported unanimously by the Committee on the Judiciary.

Favorable action by the House today will constitute a big step toward an orderly and systematic code of laws and will prove a boon to the bench and bar and the public generally.

Mr. COLE of New York. Mr. Speaker, I rise in opposition to the amendment only for the purpose of suggesting that to some extent the gentleman's amendment is in violation of the understanding on which these bills were submitted to the House for passage today. It was understood that they were simply codifications of existing law and undertook to make no changes in existing law.

I understand that probably the gentleman's amendment has considerable merit, and I see several members of the Committee on the Judiciary on the floor. I certainly am not in a position and have no desire to raise any criticism of procedure or objection to it, but it does seem to be a violation of the understanding under which these bills were submitted.

Mr. ROBSION. Mr. Speaker, will the gentleman yield?

Mr. COLE of New York. I yield.

Mr. ROBSION. I pointed out when I made my statement with reference to the first five bills that we considered, that they were purely a codification. But there are some changes in this bill (H. R. 3198), I mean, for instance, when we were considering this bill the Philippine Islands were a part of the United States. We had many laws applicable to the Philippine Islands when she was a part of the United States that are no longer in force because the Philippines are no longer a part of the United States. Those laws we cut out.

We also found going through criminal law with the Department of Justice, the bar association, and the representatives of the Federal courts that Congress has passed many acts almost identical. In some of them the penalty was fixed at 5 years and in others, fixed at 6 months. We thought it wise to clarify and harmonize these.

Mr. COLE of New York. Mr. Speaker, so long as these distinguished gentlemen of the Judiciary Committee are satisfied with this procedure and with this bill, I shall not use the time of the House further.

Mr. MICHENER. Mr. Speaker, will the gentleman yield?

Mr. COLE of New York. I yield to the gentleman from Michigan.

Mr. MICHENER. Mr. Speaker, I hold in my hand a copy of the committee report which I wish the Members would look at carefully. Where there is any indication of change every one of these questions is fully explained in the report. If we start to amend now we are liable to get into trouble. I favor the bill suggested by the gentleman from Pennsylvania but I hope it will not be interjected here because it will upset the procedure which must be followed if we ever hope to accomplish this purpose.

Mr. COLE of New York. Is the amendment offered by the gentleman from Pennsylvania in the report accompanying this bill to which he has referred?

Mr. MICHENER. No; it is not.

The SPEAKER. The question is on the amendment offered by the gentleman from Pennsylvania [Mr. WALTER].

The question was taken; and the Speaker being in doubt, the House divided, and there were—ayes 38, noes 6.

So the amendment was agreed to.

The bill was ordered to be engrossed and read a third time, was read the third time, and passed, and a motion to reconsider was laid on the table.

EXTENSION OF REMARKS

Mr. STEVENSON asked and was given permission to extend his remarks in the Appendix of the RECORD and include a report to his constituents.

REVISION OF TITLE 28, UNITED STATES CODE

The Clerk called the bill (H. R. 3214) to revise, codify, and enact into law title 28 of the United States Code entitled "Judicial Code and Judiciary."

The SPEAKER. Is there objection to the present consideration of the bill?

Mr. CURTIS. Mr. Speaker, reserving the right to object, this bill H. R. 3214 deals with the judiciary and judicial procedure and I wish to call attention merely to one part of it. That is the part

those employees who have not left the Federal Government, and who do not do so by the time this pending legislation is enacted. The violation of a covenant does not become either moral or ethical simply because it is done by legislation.

The major purpose of the bill S. 637 is to liberalize retirement benefits. It is incompatible with that purpose to break a covenant already made with employees now working, and take away from them retirement rights which they now have. It would be far more logical to provide for the commencement of retirement benefits at the age of 60, irrespective of whether a person is voluntarily or involuntarily separated from Government service.

I have prepared two proposed amendments to the bill S. 637, which have been printed. The first of these two amendments would do what I have just proposed: It would substitute the age of 60 years, throughout the bill, as the age at which retirement benefits are to begin. It would also cover the case of an employee who is forced to retire voluntarily at an earlier age than the retirement age, by permitting him to begin drawing a reduced annuity at the age of 55, or thereafter, computed on an actuarial basis.

I think this amendment is entirely equitable, and I should be glad to see it adopted. However, I do not intend to press it. Speaking frankly, I have been told that the offering of any amendments to this bill would result in defeating the bill, and I should not wish to be responsible for such an eventuation.

The second amendment which I sent to the desk, and which has been printed, was not intended to be offered unless the first amendment should have been defeated. Since I have decided not to press the first amendment, neither shall I press the second.

This second amendment treats only with the discrimination and equity between voluntary and involuntary retirement; and its sole effect would be to provide that an employee who has served the number of years entitling him to receive retirement benefits can begin to receive those benefits at the age of 62, regardless of whether his retirement is voluntary or involuntary.

Employees who left their jobs with old-line Government agencies, during the time when OPA and other war agency staffs were being recruited, and took positions with the newer agencies at salary increases ranging from one-third to 40 or even 50 percent above the salaries they were previously receiving, and who now face involuntary separation from the service as the wartime agencies are liquidated, are actually getting a special bonus when their agency ceases to exist, by being allowed the full deferred annuity at the age of 62, while those who stayed on the job in the old-line agencies are told they cannot receive a deferred annuity until they reach the age of 65. The migrant workers got higher salaries all during the war years, and they will get higher retirement benefits because of those higher salaries.

Both voluntary and involuntary separation, except for cause, should receive the same treatment in the Government's retirement system. No logical argument to the contrary can be offered, and no such argument was offered at the hearings on the bill S. 637.

I have made this statement to the Senate because I had already sent forward these two amendments, and they had been printed at my request; and I felt the Senate was entitled to an explanation of why I had prepared these amendments and what they were designed to accomplish. I felt, also, that the Senate was entitled to notice that I have decided not to press these amendments.

HOUSE BILLS REFERRED

The following bills were severally read twice by their titles, and referred, as indicated:

H. R. 84. An act to amend the Nationality Act of 1940, as amended;

H. R. 1467. An act to amend the act entitled "An act to punish acts of interference with the foreign relations, the neutrality, and the foreign commerce of the United States, to punish espionage, and better to enforce the criminal laws of the United States, and for other purposes," of June 15, 1917, as amended, and the Alien Registration Act, 1940, to increase the penalties for violation of such acts;

H. R. 1565. An act to codify and enact into positive law, title 1 of the United States Code, entitled "General Provisions";

H. R. 1566. An act to codify and enact into positive law, title 4 of the United States Code, entitled "Flag and Seal, Seat of Government, and the States";

H. R. 1567. An act to codify and enact into positive law, title 6 of the United States Code, entitled "Official and Penal Bonds";

H. R. 2083. An act to codify and enact into positive law, title 17 of the United States Code, entitled "Copyrights";

H. R. 2084. An act to codify and enact into positive law, title 9 of the United States Code, entitled "Arbitration";

H. R. 2237. An act to correct an error in section 342 (b) (8) of the Nationality Act of 1940, as amended; and

H. R. 3190. An act to revise, codify, and enact into positive law, title 18 of the United States Code, entitled "Crimes and Criminal Procedure"; to the Committee on the Judiciary.

H. R. 239. An act to further perfect the consolidation of the Lighthouse Service with the Coast Guard;

H. R. 2054. An act to amend the act of April 14, 1930, to provide increased retired pay for certain members of the former Life Saving Service;

H. R. 2331. An act to amend section 20a of the Interstate Commerce Act; and

H. R. 2654. An act to authorize the Secretary of the Treasury to grant to the mayor and City Council of Baltimore, State of Maryland, a permanent easement for the purpose of installing, maintaining, and servicing a subterranean water main in, on, and across the land of the United States Coast Guard station called Lazaretto depot, Baltimore, Md.; to the Committee on Interstate and Foreign Commerce.

H. R. 1179. An act to aid in defraying the expenses of the Seventeenth Triennial Convention of the World's Woman's Christian Temperance Union to be held in this country in June 1947; to the Committee on Foreign Relations.

H. R. 1203. An act to provide compensation to persons performing the duties of postmasters at post offices of the fourth class during annual and sick leave of the postmasters; to the Committee on Civil Service.

H. R. 1287. An act to regulate the marketing of economic poisons and devices, and for other purposes; to the Committee on Agriculture and Forestry.

H. R. 1362. An act to permit certain naval personnel to count all active service rendered under temporary appointment as warrant or commissioned officers in the United States Navy and the United States Naval Reserve, or in the United States Marine Corps and the United States Marine Corps Reserve, for purposes of promotion to commissioned warrant officer in the United States Navy or the United States Marine Corps, respectively; and

H. R. 1371. An act to authorize the Secretary of the Navy to appoint, for supply duty only, officers of the line of the Marine Corps, and for other purposes; to the Committee on Armed Services.

H. R. 1412. An act to grant to the Arthur Alexander Post, No. 68, the American Legion, of Belzoni, Miss., all of the reversionary interest reserved to the United States in lands conveyed to said post pursuant to act of Congress approved June 29, 1938;

H. R. 1874. An act to amend the act entitled "An act to provide that the United States shall aid the States in the construction of rural post roads, and for other purposes," approved July 11, 1916, as amended and supplemented, and for other purposes; and

H. R. 3029. An act to provide for the acquisition of a site and for preparation of plans and specifications for a courthouse to accommodate the United States Court of Appeals for the District of Columbia and the District Court of the United States for the District of Columbia; to the Committee on Public Works.

H. R. 2181. An act relating to institutional on-farm training for veterans; and

H. R. 2368. An act to amend paragraph 8 of part VII, Veterans Regulation No. 1 (a), as amended, to authorize an appropriation of $3,000,000 as a revolving fund in lieu of $1,500,000 now authorized, and for other purposes; to the Committee on Labor and Public Welfare.

H. R. 2353. An act to authorize the patenting of certain public lands to the State of Montana or to the Board of County Commissioners of Hill County, Mont., for public-park purposes; and

H. R. 2573. An act to authorize the Director of the United States Geological Survey to produce and sell copies of aerial or other photographs and mosaics, and photographic or photostatic reproductions of records, on a reimbursement of appropriations basis; to the Committee on Public Lands.

LABOR LEGISLATION—ADDRESS BY SENATOR BALL

[Mr. BALL asked and obtained leave to have printed in the RECORD a radio address on the subject of labor legislation delivered by him on May 12, 1947, which appears in the Appendix.]

THE PLACE OF THE UNITED STATES IN INTERNATIONAL AFFAIRS—ADDRESS BY SENATOR HATCH

[Mr. HOEY asked and obtained leave to have printed in the RECORD an address on the place of the United States in international relations, delivered by Senator HATCH, at the University of North Carolina, May 8, 1947, under the auspices of the International Relations Club of the University, which appears in the Appendix.]

PROHIBITION OF ALCOHOLIC-BEVERAGE ADVERTISEMENTS—STATEMENT OF DR. CLINTON N. HOWARD

[Mr. CAPPER asked and obtained leave to have printed in the RECORD a statement relative to Senate bill 265, prohibiting the transportation in interstate commerce of advertisements of alcoholic beverages, made by Dr. Clinton N. Howard before the Committee on Interstate and Foreign Commerce on May 13, 1947, which appears in the Appendix.]

UNIVERSAL MILITARY TRAINING—EDITORIAL FROM THE CHICAGO HERALD-AMERICAN

[Mr. BREWSTER asked and obtained leave to have printed in the RECORD an editorial entitled "For the Sake of Peace and Safety," published in the Chicago Herald-American of May 5, 1947, which appears in the Appendix.]

IS CONGRESS ANTILABOR?—EDITORIAL FROM MAGAZINE AMERICA

[Mr. MYERS asked and obtained leave to have printed in the RECORD an editorial entitled "Is Congress Antilabor?" from the magazine America, for April 19, 1947, which appears in the Appendix.]

THE STATE DEPARTMENT'S BROADCAST TO RUSSIA—ARTICLE FROM THE NEW YORK HERALD TRIBUNE

[Mr. LODGE asked and obtained leave to have printed in the RECORD an article entitled "The Henry Wallace Affair," by John Crosby, published in the New York Herald Tribune of May 9, 1947, which appears in the Appendix.]

BUREAU OF MINES

The legislative clerk read the nomination of James Boyd, of Colorado, to be Director of the Bureau of Mines.

Mr. TAFT. Mr. President, I ask that the nomination be passed over.

The PRESIDING OFFICER. Without objection, the nomination will be passed over.

Mr. REVERCOMB. Mr. President, I join in the request that the nomination of James Boyd to be Director of the Bureau of Mines be passed over. I do that not for any personal reason whatsoever, but solely on the ground of doubt as to whether this nominee is fitted for the position and whether he has had the training and experience to fill the position.

The position of Director of Mines is becoming an increasingly important one. More and more he is a director of safety in the mines of this country.

At this session we passed a law with respect to continuing mine inspection in the Bureau of Mines. That law did not contain all that I wanted it to contain, but it indicates that there is a continued interest by the Federal Bureau of Mines in mine inspection. There are approximately 820,000 miners in the Nation, and of that number approximately 400,000 are engaged in coal mining. The preservation of safety has become one of the foremost duties of the Bureau of Mines. I find that Mr. Boyd is absolutely devoid of any experience in the coal-mining industry.

I want to read two questions which he very frankly and fairly answered when he was before the committee. This question was asked by the Senator from Montana [Mr. MURRAY]:

Senator MURRAY. Mr. Boyd, what study have you given to the coal-mining industry?

Mr. BOYD. Senator, I have never worked in the coal-mining industry directly. I have, as a member of the faculty of the Colorado School of Mines, been instrumental in training men who have gone into the coal-mining industry. I have been on inspection trips myself to various coal mines in the West. As I have said, we had direction of coal operations in Europe, and I know something of the operations there. I have never myself been engaged in the coal-mining industry.

And then this question was asked by the Senator from Montana:

Senator MURRAY. You admit that you are not familiar with the conditions in the coal mines in the country, especially here in the eastern section of the country.

Mr. BOYD. Senator, I admit that I have never been employed in coal mines. I have studied the situation for many years, and I know the basic problems in the coal-mining industry.

Mr. President, in view of the fact that more than half of the miners in this country are engaged in the mining of coal, and in view of the fact that the safety of those miners has become the primary duty and interest of the Federal Bureau of Mines, I feel that it is entirely fair to raise the question of the training and competency of Mr. Boyd to fill this position; and I join in the request that the nomination go over.

The PRESIDING OFFICER. The nomination will be passed over.

The clerk will state the next nomination on the calendar.

NATIONAL LABOR RELATIONS BOARD

The legislative clerk proceeded to read the nominations of two members and the general counsel of the National Labor Relations Board.

Mr. TAFT. Mr. President, I ask that the Labor Relations Board nominations go over.

The PRESIDING OFFICER. Without objection, it is so ordered.

UNITED STATES PUBLIC HEALTH SERVICE

The legislative clerk proceeded to read sundry nominations in the United States Public Health Service.

Mr. TAFT. Mr. President, I ask that the nominations in the Public Health Service be confirmed en bloc.

The PRESIDING OFFICER. Without objection, the nominations are confirmed en bloc.

THE ARMY

The legislative clerk proceeded to read sundry nominations in the Army.

Mr. TAFT. Mr. President, I ask that the nominations in the Army be confirmed en bloc.

The PRESIDING OFFICER. Without objection, the nominations are confirmed en bloc.

Mr. TAFT. The Senator from South Dakota [Mr. GURNEY] has additional nominations.

Mr. GURNEY. Mr. President, I submit the nominations of 120 captains, 307 first lieutenants, 128 lieutenant colonels, and also certain nominations in the Navy, and ask that they be confirmed en bloc.

The PRESIDING OFFICER. Without objection, the nominations are confirmed en bloc.

POSTMASTERS

The legislative clerk proceeded to read sundry nominations of postmasters.

Mr. TAFT. Mr. President, I ask that the postmaster nominations be confirmed en bloc.

The PRESIDING OFFICER. Without objection, the postmaster nominations are confirmed en bloc.

Mr. TAFT. I ask that the President be notified of the confirmations in all of these instances.

The PRESIDING OFFICER. Without objection, the President will be notified forthwith.

CONDITIONAL ADJOURNMENT JANUARY 2, 1948

Mr. TAFT. Mr. President, in accordance with the terms of Senate Concurrent Resolution 33, adopted earlier today, I move that the Senate do now adjourn.

The motion was agreed to; and (at 2 o'clock and 50 minutes a. m., Sunday, July 27, 1947) the Senate adjourned, the adjournment being, under the provision of Senate Concurrent Resolution 33, to January 2, 1948, at 12 o'clock meridian.

NOMINATIONS

Executive nominations received by the Senate July 26 (legislative day of July 16), 1947:

SECRETARY OF DEFENSE

James V. Forrestal, of New York, to be Secretary of Defense.

COLLECTOR OF INTERNAL REVENUE

John T. Jarecki, of Chicago, Ill., to be collector of internal revenue for the first district of Illinois, in place of Nigel D. Campbell, resigned.

---

CONFIRMATIONS

Executive nominations confirmed by the Senate July 26 (legislative day of July 16), 1947:

SECRETARY OF DEFENSE

James V. Forrestal, to be Secretary of Defense.

DEPARTMENT OF JUSTICE

Philip B. Perlman, to be Solicitor General of the United States.

DIPLOMATIC AND FOREIGN SERVICE

TO BE ENVOY EXTRAORDINARY AND MINISTER PLENIPOTENTIARY OF THE UNITED STATES OF AMERICA TO RUMANIA

Rudolf E. Schoenfeld

TO BE FOREIGN SERVICE OFFICERS OF CLASS 8, VICE CONSULS OF CAREER, AND SECRETARIES IN THE DIPLOMATIC SERVICE OF THE UNITED STATES OF AMERICA

John A. Bovey, Jr.
James R. Ruchti
Ernest E. Ramsaur, Jr.
Ralph S. Saul
Miss Louise Schaffner
Robert M. Winfree
Richard W. Sterling
Robert W. Zimmermann

TO BE FOREIGN SERVICE OFFICERS OF CLASS 2, CONSULS, AND SECRETARIES IN THE DIPLOMATIC SERVICE OF THE UNITED STATES OF AMERICA

Charles F. Baldwin
John Lammey Stewart
Ben H. Thibodeaux

TO BE FOREIGN SERVICE OFFICERS OF CLASS 3, CONSULS, AND SECRETARIES IN THE DIPLOMATIC SERVICE OF THE UNITED STATES OF AMERICA

Ralph B. Curren
Oscar E. Heskin
Jerome T. Gaspard
Philip W. Ireland

TO BE FOREIGN SERVICE OFFICERS OF CLASS 4, CONSULS, AND SECRETARIES IN THE DIPLOMATIC SERVICE OF THE UNITED STATES OF AMERICA

Turner C. Cameron, Jr.
Eric Kocher
Harry Conover
William Henry Lawrence
Robert C. Creel
Frank G. Siscoe
Ridgway B. Knight

TO BE A FOREIGN SERVICE OFFICER OF CLASS 5, A VICE CONSUL OF CAREER, AND SECRETARY IN THE DIPLOMATIC SERVICE OF THE UNITED STATES OF AMERICA

James R. Gustin.

TO BE FOREIGN SERVICE OFFICERS OF CLASS 6, VICE CONSULS OF CAREER, AND SECRETARIES IN THE DIPLOMATIC SERVICE OF THE UNITED STATES OF AMERICA

Robert A. Aylward
Francis N. Magliozzi
Howard L. Boorman
Parke D. Massey, Jr.
William D. Brewer
Everett K. Melby
Edward West Burgess
Alfred E. Moon
Stephen A. Comiskey
Curtis W. Prendergast
William B. Dunn
Herbert F. Propps
Seymour M. Finger
Lowell G. Richardson
Walter P. Houk
Jordan T. Rogers
Vernon V. Hukee
Howard Rand Stephenson
Joseph E. Jacques
Robert L. James
Kenneth P. T. Sullivan
Edward J. Krache, Jr.
Edward J. Trost
Edward T. Long
Wayland B. Waters

of those which duplicate or conflict with each other or with activities carried on by the Government of Puerto Rico. He shall report through the Secretary of the Interior to the President and to Congress concerning the administration of all Federal civilian functions and activities in Puerto Rico, specifying the recommendations made by him to the Federal agencies and the results of such recommendations. He shall advise the Secretary of the Interior, who shall advise the Bureau of the Budget and the Congress with respect to all appropriation estimates submitted by any civilian department or agency of the Federal Government to be expended in or for the benefit of Puerto Rico. He shall confer with the Governor of Puerto Rico with respect to the correlation of activities of Federal and insular agencies and all plans and programs and other matters of mutual interest.

"'(3) The President of the United States may, from time to time, after hearing, promulgate Executive orders expressly excepting Puerto Rico from the application of any Federal law, not expressly declared by Congress to be applicable to Puerto Rico, which as contemplated by section 9 of this act is inapplicable by reason of local conditions. The Coordinator of Federal Agencies may, from time to time, make recommendations to the President for such purpose. Any such recommendation shall show the concurrence or dissent of the Governor of Puerto Rico.

"'(4) The Coordinator of Federal Agencies, in the name of the President of the United States, shall have authority to request from the Governor of Puerto Rico, and the Governor shall furnish to him all such reports pertaining to the affairs, conditions, and government of Puerto Rico as the Coordinator of Federal Agencies shall from time to time request for transmission to the President through the Secretary of the Interior.

"'(5) The President of the United States shall prescribe such rules and regulations as may be necessary to carry out the provisions of this section.'

"SEC. 7. Section 2 of said Organic Act (48 U. S. C., sec. 737) is amended by adding at the end thereof the following new paragraph:

"'The rights, privileges, and immunities of citizens of the United States shall be respected in Puerto Rico to the same extent as though Puerto Rico were a State of the Union and subject to the provisions of paragraph 1 of section 2 of article IV of the Constitution of the United States.'"

The SPEAKER. Is there objection to the request of the gentleman from Michigan?

There was no objection.

The Senate amendments were concurred in.

A motion to reconsider was laid on the table.

RECESS

The SPEAKER. The Chair declares the House in recess at this time subject to the call of the Chair.

Accordingly (at 12 o'clock and 10 minutes a. m.), the House stood in recess, subject to the call of the Chair.

AFTER RECESS

The recess having expired, the House was called to order by the Speaker at 12 o'clock and 31 minutes a. m.

FURTHER MESSAGE FROM SENATE

A further message from the Senate, by Mr. Carrell, one of its clerks, announced that the Senate agrees to the amendment of the House to a concurrent resolution of the Senate of the following title:

S. Con. Res. 33. Concurrent resolution providing for the adjournment of the two Houses of Congress until January 2, 1948.

SENATE ENROLLED BILLS AND JOINT RESOLUTIONS SIGNED

The SPEAKER announced his signature to enrolled bills and joint resolutions of the Senate of the following titles:

S. 609. An act conferring jurisdiction upon the United States District Court for the Western District of Arkansas to hear, determine, and render judgment upon any claims arising out of the deaths of Norman Ray Pedron and Carl Franklin Morris;

S. 758. An act to promote the national security by providing for a Secretary of Defense; for a National Military Establishment; for a Department of the Army, a Department of the Navy, and a Department of the Air Force; and for the coordination of the activities of the National Military Establishment with other departments of the Government concerned with the national security;

S. 794. An act to authorize the sale of a small tract of land on the Cherokee Indian Reservation, N. C.;

S. 892. An act for the payment of claims of one Fidelity Trust Co., of Baltimore, Md., and others, covered by findings of fact made by the United States Court of Claims, dated June 5, 1944, and contained in Senate Document No. 229, Seventy-eighth Congress, second session;

S. 907. An act to provide for the orderly transaction of the public business in the event of the death, resignation, or separation from office of regional disbursing officers of the Treasury Department;

S. 1070. An act to provide for the cancellation of the capital stock of the Federal Deposit Insurance Corporation and the refund of moneys received for such stock, and for other purposes;

S. 1181. An act for the relief of Robert F. Parks;

S. 1350. An act to authorize relief of accountable officers of the Government, and for other purposes;

S. 1361. An act to amend the United States Housing Act of 1937 so as to permit loans, capital grants, or annual contributions for low-rent housing and slum-clearance projects where construction costs exceed present cost limitations upon condition that local housing agencies pay the difference between cost limitations and the actual construction costs;

S. 1463. An act to amend section 12 of the Immigration Act of 1917;

S. 1480. An act authorizing the conveyance to the State of Delaware of a portion of Pea Patch Island;

S. 1494. An act to amend section 14 of the Veterans' Preference Act of June 27, 1944;

S. 1505. An act authorizing the Secretary of Agriculture to convey certain lands in Boise, Idaho, to the Boise Chamber of Commerce;

S. 1582. An act relating to the sale of Paxon Field, Duval County, Fla.;

S. 1590. An act to amend the District of Columbia rent-control law so as to provide that schools and universities may recover possession of housing accommodations in certain cases;

S. 1633. An act to authorize the attendance of the Marine Band at the National Convention of the American Legion to be held in New York, N. Y., August 28 to 31, 1947, and the National Convention of the Veterans of Foreign Wars of the United States to be held in Cleveland, Ohio, September 4 to 9, 1947;

S. 1661. An act to provide additional inducements to physicians, surgeons, and dentists to make a career of the United States military, naval, and public-health services, and for other purposes;

S. J. Res. 112. Joint resolution to establish a commission to formulate plans for the erection, in Grant Park, Chicago, Ill., of a Marine Corps memorial.

S. J. Res. 130. Joint resolution relating to safety in bitumious-coal and lignite mines of the United States;

S. J. Res. 138. Joint resolution to provide for return of Italian property in the United States, and for other purposes; and

S. J. Res. 148. Joint resolution to authorize the temporary continuation of regulation of consumer credit.

ADJOURNMENT

Mr. HALLECK. Mr. Speaker, I move that the House do now adjourn.

The motion was agreed to; accordingly (at 12 o'clock and 32 minutes a. m.), pursuant to Senate Concurrent Resolution 33, the House adjourned until Friday, January 2, 1948, at 12 o'clock noon.

---

EXECUTIVE COMMUNICATIONS, ETC.

Under clause 2 of rule XXIV, executive communications were taken from the Speaker's table and referred as follows:

993. A letter from the Attorney General, transmitting request for withdrawal of the case of Juan Hernandez Ayala from those 139 cases involving suspension of deportation referred to in letter of June 16, 1947; to the Committee on the Judiciary.

994. A letter from the Clerk, House of Representatives, transmitting the motion to dismiss of the contestee in the contested election case of Lawrence Michael against Howard W. Smith for a seat in the House of Representatives from the Eighth Congressional District of the State of Virginia (H. Doc. No. 418); to the Committee on House Administration and ordered to be printed.

995. A letter from the Executive Secretary, Air Coordinating Committee, transmitting a draft of a proposed bill to encourage the development of a safe United States flag international air transportation system properly adapted to the present and future needs of foreign commerce of the United States, of the postal service, and of the national defense, and to meet certain of the obligations incumbent upon the United States by virtue of its membership in the International Civil Aviation Organization, by providing for the transfer, establishment, operation, administration, and maintenance of airport and airway property located outside the continental United States, for the training of foreign nationals in aviation activities, and for other purposes; to the Committee on Interstate and Foreign Commerce.

996. A letter from the Acting Secretary of Commerce, transmitting a draft of a proposed bill to provide basic authority for the performance of certain functions and activities of the Department of Commerce, and for other purposes; to the Committee on Interstate and Foreign Commerce.

997. A letter from the Acting Secretary of Commerce, transmitting a draft of a proposed bill to provide basic authority for certain functions and activities of the Weather Bureau, and for other purposes; to the Committee on Interstate and Foreign Commerce.

998. A letter from the Secretary of the Interior, transmitting interim report on the status of investigations of potential water resource developments in the Colorado River Basin in Arizona, California, Colorado, Nevada, New Mexico, Utah, and Wyoming (H. Doc. No. 419); to the Committee on Public Lands and ordered to be printed, with illustrations.

be established by legislation now pending in the Congress (with an accompanying paper); to the Committee on Appropriations and ordered to be printed.

SUPPLEMENTAL ESTIMATE, FEDERAL WORKS AGENCY (S. Doc. No. 176)

A communication from the President of the United States, transmitting a supplemental estimate of appropriation for the Federal Works Agency, amounting to $15,000,000, fiscal year 1949, and a proposed contract authorization in the amount of $10,000,000 (with an accompanying paper); to the Committee on Appropriations and ordered to be printed.

SUPPLEMENTAL ESTIMATE, SEVERAL EXECUTIVE DEPARTMENTS AND INDEPENDENT OFFICES (S. Doc. No. 177)

A communication from the President of the United States, transmitting an estimate of appropriation for the several executive departments and independent offices to pay claims for damages, audited claims, and judgments rendered, against the United States, as provided by various laws, in the amount of $2,302,458.55, together with an indefinite amount as may be necessary to pay interest and costs (with accompanying papers); to the Committee on Appropriations and ordered to be printed.

PETITIONS AND MEMORIALS

Petitions, etc., were laid before the Senate and referred as indicated:

By the PRESIDENT pro tempore:

A letter in the nature of a petition from Laura B. Prisk, of New York, N. Y., relating to Flag Day; to the Committee on the Judiciary.

A telegram in the nature of a petition from Walter I. M. Hodge, chairman, Municipal Committee, St. Croix, V. I., praying for the enactment of House bill 5904, to incorporate the Virgin Islands Corporation; ordered to lie on the table.

A resolution adopted by the forty-second annual convention of the Maryland State and District of Columbia Federation of Labor, at Washington, D. C., protesting against the enactment of the Mundt-Nixon un-American activities bill; to the Committee on the Judiciary.

A memorial of sundry citizens of the State of Washington, remonstrating against the enactment of the so-called Mundt-Nixon un-American activities bill; to the Committee on the Judiciary.

REPORTS OF COMMITTEES

The following reports of committees were submitted:

By Mr. BUTLER, from the Committee on Interior and Insular Affairs:

S. 2080. A bill to provide for the establishment of the Philadelphia National Historical Park, and for other purposes; with amendments (Rept. No. 1622); and

H. R. 6090. A bill authorizing the Secretary of the Interior to issue patents for lands held under color of title; without amendment (Rept. No. 1618).

By Mr. WILEY, from the Committee on the Judiciary:

H. R. 3190. A bill to revise, codify, and enact into positive law, title 18 of the United States Code, entitled "Crimes and Criminal Procedure;" with amendments (Rept. No. 1620); and

H. R. 6412. A bill to codify and enact into law title 3 of the United States Code, entitled "The President"; without amendment (Rept. No. 1623).

By Mr. COOPER, from the Committee on the Judiciary:

S. 2764. A bill to amend the Trading With the Enemy Act; without amendment (Rept. No. 1619).

By Mr. SALTONSTALL, from the Committee on Appropriations:

H. R. 6772. A bill making appropriations for the Department of the Navy and the naval service for the fiscal year ending June 30, 1949, and for other purposes; with amendments (Rept. No. 1621).

By Mr. BYRD, from the Committee on Armed Services:

S. 2698. A bill to authorize the transfer of horses and equipment owned by the United States Army to the New Mexico Military Institute, a State institution; with amendments (Rept. No. 1624).

PROTECTION AGAINST LYNCHING—REPORT OF A COMMITTEE

Mr. FERGUSON. Mr. President, from the Committee on the Judiciary, I ask unanimous consent to report an original bill, to provide for the better assurance of the protection of persons within the several States from lynching, and for other purposes, and I submit a report (No. 1625) thereon. The report is short, and I request that it be printed in the RECORD.

The PRESIDENT pro tempore. Without objection, the bill and the report will be received, and the bill will be placed on the calendar; and, without objection, the report will be printed in the RECORD.

The bill (S. 2860) to provide for the better assurance of the protection of persons within the several States from lynching, and for other purposes, was received, read twice by its title, and ordered to be placed on the calendar.

The report was ordered to be printed in the RECORD, as follows:

The Committee on the Judiciary, which has had under consideration various bills relating to the protection of persons within the several States from lynching, report favorably a bill to provide for the better assurance of the protection of persons within the several States from lynching, and for other purposes, with the recommendation that the bill do pass.

The purpose of the bill is self-explanatory in the title statement in that it is designed to provide for the better assurance of the protection of persons from lynching.

STATEMENT

Section 1 of the bill is self-explanatory.

Section 2 of the bill, which contains the definitions, might be considered one of the most important parts of the measure.

The bill defines lynching as an exercise or an attempt to exercise by an assembly of two or more persons, without authority of law, by action of physical force against person or property, of any power of correction or punishment over any persons in the custody of any peace officer, or suspected of, charged with, or convicted of the commission of any criminal offense with the purpose or consequence of preventing the apprehension or trial or punishment by law of such person, or of imposing a punishment. The essence of the offense is the depriving of the person accused or suspected of crime of a trial in the manner provided by law and, if such person is convicted, of punishment in the manner provided by law.

Section 3 of the bill makes it a crime punishable by imprisonment and/or a fine for Federal or State officers to conspire with members of a lynching mob in the prosecution of a lynching. The constitutionality of the imposition of Federal sanctions against Federal or State officers for their participation in a lynching will not be discussed in this section. In a later paragraph it is pointed out that such sanctions are valid. The question here involves the validity of Federal sanctions imposed against members of the lynch mob when they conspire with the Federal or State officers. It seems to be well-settled law that any Federal sanctions against the individual lynchers (aiders, abettors, etc.) are invalid.

It appears well settled that under the fourteenth amendment to the Constitution, Congress does not have the authority to enact sanctions against private individuals or individual actions. (*The Civil Rights cases* (109 U. S. 3); *U. S. v. Harris* (106 U. S. 629); *Slaughterhouses cases* (83 U. S. 36); *U. S. v. Cruikshank* (92 U. S. 542); *Strauder v. West Virginia* (100 U. S. 303); *Virginia v. Rives* (100 U. S. 313); *Hodges v. U. S.* (203 U. S. 1); *Corrigan v. Buckley* (271 U. S. 327).)

It is the opinion of this committee that those individuals who conspire with Federal or State officers for the purposes of lynching may be held guilty of the crime or conspiracy when, in effect, they could not be held guilty of lynching. It is sufficient if one of the parties to a conspiracy is legally capable of committing the offense, while the other party may not have that capacity (*Chadwick v. U. S.* (141 F. 225); *Olsen v. U. S.* (157 F. 651, 85 C. C. A. 113, certiorari denied, 207 U. S. 598)). A person may be guilty of conspiring although incapable of committing the objective offense (*Farnsworth v. Zerbst* (98 F. 2d 541); *U. S. v. Rabinowick* (238 U. S. 78, 86); *U. S. v. Holte* (236 U. S. 140, 144); *Jelke v. U. S.* (255 F. 265); *Israel v. U. S.* (3 F. 2d 743); *U. S. v. Lyman* (190 F. 414); *U. S. v. Socony Vacuum Oil Company* (310 U. S. 150)).

Section 4 punishes State officers and employees for their failure to prevent a lynching. The fourteenth amendment is directed toward the action of the States, including the action of State officers. Any action by the officers of the State which violates the prohibition upon State action contained in the fourteenth amendment is subject to penalty imposed by the United States (*Ex Parte Virginia* (100 U. S. 339); *Screws v. U. S.* (325 U. S. 91)). The right not to be deprived by a State (or State officers) of a trial by the State, or of the punishment prescribed by law, is inherent in due process of law (*Screws v. U. S.*, supra; *Crews v. U. S.* (160 F. 2d. 746); *U. S. v. Classic* (313 U. S. 299)).

Section 5 of the bill penalizes Federal officers and employees for their willful failure to prevent a lynching. Congress has, many times, created penalties upon Federal officers for a violation of their duties. The creation of the sanction in itself creates a duty on a Federal officer not to commit acts which would invoke the imposition of the penalty. (See the offenses defined and punished in U. S. Code, title 18, secs. 171 et seq.)

Section 6 defines the duty of the Attorney General of the United States under this act. It imposes a duty upon him to cause an investigation to be made to determine whether there has been a violation of the bill, whenever a lynching occurs, and information on oath is submitted to him that any officer or employee of the United States or of a State, or any governmental subdivision thereof, is guilty of a criminal offense under section 4 or section 5 of the bill. This section merely spells out a duty which normally rests with the Attorney General, the chief law enforcement officer of the United States, to enforce, and prosecute violations of, all criminal laws of the United States. It is not intended to restrict the Attorney General in the enforcement of the act but to make it mandatory upon him to cause the investigation prescribed if the information on oath is submitted to him.

Section 7 provides for civil actions for damages by an individual who is lynched (or his next of kin) against any person violating section 3, section 4, or section 5 of the act with respect to that lynching.

The validity of this section rests upon the same constitutional bases and cases cited under the foregoing sections 3, 4, or 5. Obviously, if Congress has the authority to make certain acts a crime, punishable by fines and/or imprisonment, it also has the

ter, east half of the northwest quarter, the east half of the east half of the west half of the northwest quarter, section 17, lots 1, 2, and 3, section 18, township 7 south, range 28 east, Montana principal meridian, containing approximately 628 acres.

The amendments were agreed to.

The bill was ordered to be engrossed for a third reading, read the third time, and passed.

IMPROVEMENT OF POST OFFICE, LOS ANGELES, CALIF.

The bill (H. R. 5750) to provide for the extension and improvement of post-office facilities at Los Angeles, Calif., and for other purposes, was considered, ordered to a third reading, read the third time, and passed.

LEASE OF LAFAYETTE BUILDING, WASHINGTON, D. C.

The bill (S. 2706) to authorize the Federal Works Administrator to lease for commercial purposes certain space in the building located at 811 Vermont Avenue NW., Washington, D. C., commonly known as the Lafayette Building, was considered, ordered to be engrossed for a third reading, read the third time, and passed, as follows:

*Be it enacted, etc.*, That the Federal Works Administrator is hereby authorized to lease for commercial purposes for periods not exceeding 10 years and upon such terms and conditions as he may deem to be in the public interest, such space in the building located at 811 Vermont Avenue NW., Washington, D. C., commonly known as the Lafayette Building, as was leased by the Reconstruction Finance Corporation for commercial purposes on July 30, 1947, the date title to such building was transferred from the Reconstruction Finance Corporation to the United States of America by section 306, title III, Public Law 268, Eightieth Congress. The rentals received pursuant to this act may be deposited into a common fund account or accounts in the Treasury, and notwithstanding the provisions of the act of June 30, 1932 (40 U. S. C. 303b), shall be available to pay the cost of maintenance, upkeep, and repair of the space so leased and for the establishment of necessary reserves therefor: *Provided*, That except for such necessary reserves, the unobligated balances of rentals so deposited into the Treasury shall be covered at the end of each fiscal year into miscellaneous receipts.

ISSUANCE OF PATENTS FOR CERTAIN LANDS

The bill (H. R. 6090) authorizing the Secretary of the Interior to issue patents for lands held under color of title was considered, ordered to a third reading, read the third time, and passed.

REVISION AND CODIFICATION OF TITLE 18, UNITED STATES CODE

The Senate proceeded to consider the bill (H. R. 3190) to revise, codify, and enact into positive law title 18 of the United States Code, entitled "Crimes and Criminal Procedure," which had been reported from the Committee on the Judiciary with amendments.

The PRESIDENT pro tempore. Is there objection to present consideration of the bill?

There being no objection, the Senate proceeded to consider the bill.

The PRESIDENT pro tempore. The bill contains a large volume of amendments. Is there objection to the consideration of the amendments en bloc?

Mr. TAFT. Mr. President, may we have an explanation of the bill? This is a long bill, containing 475 pages.

Mr. WILEY. Mr. President, I assure the distinguished Senator I shall not take much time, and that we shall not spend much time on the bill.

The House has sent to the Senate the revision of title 18. It was my privilege and duty to appoint a very distinguished subcommittee to go over the matter. The subcommittee was headed by the Senator from Missouri [Mr. DONNELL].

The purpose of the bill is to codify and revise the laws relating to Federal crimes and criminal procedure.

With the amendments proposed by the committee the bill includes all pertinent laws to January 5, 1948, and is made effective September 1, 1948.

The bill makes it easy to find the criminal statutes because of the arrangement, numbering, and classification. The original intent of Congress is preserved. A uniform style of statutory expression is adopted. The new Federal Rules of Criminal Procedure are keyed to the bill and are reflected in part II of title 18.

Obsolete and executed provisions are eliminated. Uncertainty will be ended and there will no longer be any need to examine the many volumes of the Statutes at Large as the bill, upon enactment, will itself embody the substantive law which will thus appear in full in the United States Code.

It is one of the constructive things we have been endeavoring to accomplish, and I think the bill accomplishes it. I should like to see the amendments adopted en bloc. If any further specific information is desired, I shall ask the distinguished senior Senator from Missouri to explain it, but I think, in view of the fact that the work has been gone into by some of the best experts in codification in America, in conjunction with the House committee, the committee has proposed a number of amendments, most of which are insubstantial, some of which are substantial. They will necessitate, I assume, if we pass the bill, a conference with the House. I hope the measure can be disposed of without a great deal of debate. As I said, it is along the line of bringing together the Federal criminal statutes into one place, so as to avoid the necessity of going from one volume to another in order to ascertain what the criminal law of the Nation is.

The PRESIDENT pro tempore. The Senator's time has expired. Is there objection to the consideration of the amendments en bloc?

There being no objection, the amendments were considered and agreed to en bloc.

The amendments agreed to en bloc are as follows:

Page 3, following "13. Laws of States adopted for areas within Federal jurisdiction." insert: "14. Applicability to Canal Zone."

Page 5, line 4, after "States" insert: ", except the Canal Zone."

Page 8, after line 15, insert:

"§ 14. Applicability to Canal Zone.

"In addition to the sections of this title which by their terms apply to and within the Canal Zone, the following sections of this title shall likewise apply to and within the Canal Zone: 6, 8, 11, 331, 371, 472, 474, 478, 479, 480, 481, 482, 483, 485, 488, 489, 490, 499, 502, 506, 594, 595, 598, 600, 601, 604, 605, 608, 611, 612, 703, 756, 791, 792, 793, 794, 795, 796, 797, 915, 917, 951, 953, 954, 956, 957, 958, 959, 960, 961, 962, 963, 964, 965, 966, 967, 1017, 1073, 1301, 1364, 1382, 1542, 1543, 1544, 1546, 1584, 1621, 1622, 1761, 1821, 1914, 2151, 2152, 2153, 2154, 2155, 2156, 2199, 2231, 2234, 2235, 2274, 2275, 2277, 2384, 2385, 2388, 2389, 2390, 2421, 2422, 2423, 2424, 3059, 3105, 3109."

Page 91, strike out "610. Contributions by national banks or corporations." and insert: "610. Contributions or expenditures by national banks, corporations, or labor organizations."

Page 104, strike out lines 4 to 21, inclusive, and insert:

"§ 610. Contributions by national banks, corporations, or labor organizations.

"It is unlawful for any national bank, or any corporation organized by authority of any law of Congress, to make a contribution or expenditure in connection with any election to any political office, or in connection with any primary election or political convention or caucus held to select candidates for any political office, or for any corporation whatever, or any labor organization to make a contribution or expenditure in connection with any election at which Presidential and Vice Presidential electors or a Senator or Representative in, or a Delegate or Resident Commissioner to Congress are to be voted for, or in connection with any primary election or political convention or caucus held to select candidates for any of the foregoing offices, or for any candidate, political committee, or other person to accept or receive any contribution prohibited by this section.

"Every corporation or labor organization which makes any contribution or expenditure in violation of this section shall be fined not more than $5,000; and every officer or director of any corporation, or officer of any labor organization, who consents to any contribution or expenditure by the corporation or labor organization, as the case may be, in violation of this section shall be fined not more than $1,000 or imprisoned not more than 1 year, or both.

"For the purposes of this section 'Labor organizaiton' means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exist for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work."

Page 117, line 8, strike out all after "receiver," down to and including "System," in line 15.

Page 118, line 18, strike out all after "care," down to and including "institution," in line 23.

Page 134, line 19, after "both" insert:"; or if he negligently suffers such person to escape, he shall be fined not more than $500 or imprisoned not more than 1 year, or both."

Page 158, after line 12, insert: "While any foreign government is a member both of the International Monetary Fund and of the International Bank for Reconstruction and Development, this section shall not apply to the sale or purchase of bonds, securities, or other obligations of such government or any political subdivision thereof or of any organization or association acting for or on behalf of such government or political subdivision, or to making of any loan to such government, political subdivision, organization, or association."

Page 367, strike out lines 15 to 18, inclusive, and insert: "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.

Case 1:07-cr-00046-JR Document 204 Filed 11/29/2007 Page 14 of 41

"Nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof."

Page 415, line 10, after "Zone," insert "District of Columbia."

Page 415, after line 17, insert:

"Nothing in this title, anything therein to the contrary notwithstanding, shall in any way limit, supersede, or repeal any such rules heretofore prescribed by the Supreme Court."

Page 416, after line 21, insert:

"Nothing in this title, anything therein to the contrary notwithstanding, shall in any way limit, supersede, or repeal any such rules heretofore prescribed by the Supreme Court."

Page 448, lines 24 and 25, strike out "the Revised Statutes (1 U. S. C., sec. 1)" and insert: "Title 1 of the United States Code."

Page 456, strike out lines 3 to 21, inclusive.

Page 456, line 22, strike out "19" and insert "18."

Page 457, line 3, strike out "20" and insert "19."

Page 457, strike out lines 8 to 15, inclusive, and insert:

"Sec. 20. This act shall take effect September 1, 1948."

Page 457, line 16, strike out "22" and insert "21."

Page 463, about middle of page, strike out:

| | | | | | | |
|---|---|---|---|---|---|---|
| "July 3 | 128 | 4, 5 | 40 | 755, 756 | 16 | 705, 706" |

Page 467, below middle of page, strike out:

| | | | | | | |
|---|---|---|---|---|---|---|
| "June 20 | 634 | 4 | 49 | 1556 | 16 | 705 |
| Do | 635 | 1, 2 | 49 | 1557 | 22 | 248" |

And insert:

| | | | | | | |
|---|---|---|---|---|---|---|
| "June 20 | 635 | 1, 2 | 49 | 1557 | 22 | 248" |

Page 470, after

| | | | | | | |
|---|---|---|---|---|---|---|
| "June 8 | 178 | 1, 2, 3 | 59 | 234, 235 | 18 | 241, 241a, 242" |

insert:

| | | | | | | |
|---|---|---|---|---|---|---|
| "July 31 | 339 | 9 | 59 | 51 | 6 31 | 804b" |

Page 471, at the end of the schedule of repeals on this page, insert:

| | | | | | | |
|---|---|---|---|---|---|---|
| "1947— | | | | | | |
| Apr. 16 | 39 | ...... | 01 | 52 | 18 | 411 |
| May 10 | 73 | ...... | 61 | 97 | 18 | 744h-1 |
| June 21 | 111 | ...... | 61 | 134 | 18 | 244 |
| June 23 | 120 | 304 | 61 | 159 | 2 | 251" |

The amendments were ordered to be engrossed and the bill to be read a third time.

The bill was read the third time and passed.

Mr. WILEY. Mr. President, I move that the Senate insist upon its amendments, request a conference with the House thereon, and that the Chair appoint the conferees on the part of the Senate.

The motion was agreed to.

The PRESIDENT pro tempore. The Chair will presently name the conferees.

Mr. WILEY subsequently said: Mr. President, I have been credibly informed that the House will accept our amendments. In view of that information, I ask that the action taken to rescind on my motion to appoint conferees in respect to the bill (H. R. 3190) be rescinded.

The PRESIDENT pro tempore. Without objection, it is so ordered.

## AMENDMENT OF TRADING WITH THE ENEMY ACT

The bill (S. 2764) to amend the Trading With the Enemy Act was announced as next in order.

The PRESIDENT pro tempore. Is there objection to the present consideration of the bill?

There being no objection, the Senate proceeded to consider the bill.

Mr. COOPER. Mr. President, I offer an amendment.

Mr. PEPPER. I should like an explanation of the bill.

The PRESIDENT pro tempore. The Senator from Kentucky offers an amendment which the clerk will state.

The Chief Clerk. On page 3, line 14, after the word "buy", it is proposed to strike out "July 31, 1949", and insert "April 30, 1949."

The PRESIDENT pro tempore. The question is on agreeing to the amendment submitted by the Senator from Kentucky.

Mr. PEPPER. Mr. President, I request an explanation of the bill.

Mr. COOPER. Mr. President, the bill proposes to amend section 32 of the Trading With the Enemy Act. That section, among other things, authorizes the Alien Property Custodian to return property to an alien if he deems that the alien was a persecutee. It has developed that some of these persons to whom property would be returned are dead, and there are no known heirs. In such case I assume the property would escheat to this country.

The bill provides that the President may designate approved organizations under certain limitations and conditions, and that such organizations may receive the property of a deceased persecutee alien and use it for the benefit of the group to which the persecutee belonged. I think it is a very humane measure. It was introduced by the Senator from Ohio [Mr. Taft].

The PRESIDENT pro tempore. The question is on agreeing to the amendment offered by the Senator from Kentucky.

The amendment was agreed to.

The bill was ordered to be engrossed for a third reading, read the third time, and passed, as follows:

*Be it enacted, etc.*, That section 32 of the Trading With the Enemy Act of October 6, 1917 (40 Stat. 411), as amended, is hereby further amended by adding at the end thereof the following subsection:

"(h) The President may designate one or more organizations as successors in interest to deceased persons, who, if alive, would be eligible to receive returns under the provisos of subdivision (C) or (D) of subsection (a) (2) hereof. An organization so designated shall be deemed a successor in interest by operation of law for the purposes of subsection (a) (1) hereof. Return may be made to an organization so designated (a) prior to July 31, 1949, or 2 years from the vesting of the property or interest in question, whichever is later, if the President or such officer or agency as he may designate determines from all relevant facts of which he is then advised that it is probable that the former owner is dead and is survived by no person eligible under section 32 to claim as successor in interest by inheritance, devise, or bequest; and (b) after such later date, if no claim for the return of the property or interest is pending.

"No return may be made to an organization so designated unless it files a claim on or before January 1, 1952, and unless it gives assurances satisfactory to the President that (i) it will use the property or interest returned to it for the rehabilitation and resettlement of persons who suffered substantial deprivation of liberty or failed to enjoy the full rights of citizenship within the meaning of subdivisions (C) and (D) of subsection (a) (2) hereof, by reason of their membership in the political, racial, or religious group of which the former owner was a member; (ii) it will transfer, at any time within 2 years from the time that return is made, such property or interest or the equivalent value thereof to any person designated as entitled thereto pursuant to this act by the President or such officer or agency; and (iii) it will make such reports and permit such examination of its books as the President or such officer or agency may from time to time require.

"The filing of a claim by an organization so designated shall not bar the payment of debt claims under section 34 of this act."

Sec. 2. The first sentence of section 33 of the Trading With the Enemy Act of October 6, 1917 (40 Stat. 411), as amended, is hereby further amended to read as follows:

"Sec. 33. No return may be made pursuant to section 9 or 32 unless notice of claim has been filed, (a) in the case of any property or interest acquired by the United States prior to December 18, 1941, by August 9, 1948, or (b) in the case of any property or interest acquired by the United States on or after December 18, 1941, by April 30, 1949, or 2 years from the vesting of the property or interest in respect of which the claim is made, whichever is later: *Provided*, That return may be made to successor organizations designated pursuant to section 32 (h) hereof if notice of claim is filed by January 1, 1952."

## PHILADELPHIA NATIONAL HISTORICAL PARK

The bill (S. 2080) to provide for the establishment of the Philadelphia National Historical Park, and for other purposes, was announced as next in order.

The PRESIDENT pro tempore. This bill is identical with Calendar No. 1764, House bill 5053.

Mr. BUTLER. Mr. President, I ask that the House bill be substituted for Senate bill S. 2080, and that the Senate proceed to the consideration of the House bill.

The PRESIDENT pro tempore. Is there objection to the substitution of the House bill for the Senate bill and its present consideration?

There being no objection, the bill (H. R. 5053) to provide for the establishment of the Independence National Historical Park, and for other purposes, was considered, ordered to a third reading, read the third time, and passed.

The PRESIDENT pro tempore. Without objection, Senate bill 2080 is indefinitely postponed.

## CODIFICATION OF TITLE 3 OF THE UNITED STATES CODE

The bill (H. R. 6412) to codify and enact into law title 3 of the United States Code, entitled "The President," was considered, ordered to a third reading, read the third time, and passed.

## TRANSFER OF CERTAIN ARMY EQUIPMENT TO NEW MEXICO MILITARY INSTITUTE

The Senate proceeded to consider the bill (S. 2698) to authorize the transfer of horses and equipment owned by the United States Army to the New Mexico Military Institute, a State institution, which had been reported from the Committee on Armed Services, with amendments, on page 1, line 4, after the word "authorized", to insert "upon the request of the institution"; in line 7, after the word "institution", to insert "to Cornell University, Ithaca, N. Y., to Norwich University, Norwich, Vt., and to Virginia Military Institute, Lexington, Va."; on page 2, line 1, before the word

BROOKS] may be excused as a conferee on the bill, S. 2655.

The SPEAKER. Is there objection to the request of the gentleman from New York?

There was no objection.

The SPEAKER. The Chair appoints the gentleman from North Carolina [Mr. DURHAM] to fill the vacancy.

The Clerk will notify the Senate of the action of the House.

## PROVIDING FOR WATER POLLUTION CONTROL ACTIVITIES

Mr. DONDERO. Mr. Speaker, I call up the conference report on the bill (S. 418) to provide for water pollution control activities in the Public Health Service of the Federal Security Agency and in the Federal Works Agency, and for other purposes, and ask unanimous consent that the statement of the managers on the part of the House be read in lieu of the report.

The Clerk read the title of the bill.

The SPEAKER. Is there objection to the request of the gentleman from Michigan?

There was no objection.

The Clerk read the statement.

The conference report and statement are as follows:

### CONFERENCE REPORT

The committee of conference on the disagreeing votes of the two Houses on the amendment of the House to the bill (S. 418) "An Act to provide for water pollution control activities in the Public Health Service of the Federal Security Agency and in the Federal Works Agency, and for other purposes", having met, after full and free conference, have agreed to recommend and do recommend to their respective Houses as follows:

That the Senate recede from its disagreement to the amendment of the House, and agree to the same with amendments, as follows:

Page 2, line 12, of the amendment of the House, strike out the words "hereinafter declared to be a public nuisance".

Page 2, lines 13 and 14, of the amendment of the House, strike out the words "such interstate water and tributaries thereof", and insert the following words "surface and underground waters".

Page 9, line 11, of the amendment of the House, strike out the figure "$200,000" and insert the figure "$250,000".

Page 11, line 25, of the amendment of the House, strike out the figure "$20,000,000" and insert the figure "$22,500,000".

Page 12, line 25 of the amendment of the House, after the words "study of" insert the word "water", and strike out the word "of" after the word "pollution".

Page 13, line 1, of the amendment of the House, strike out the words "interstate waters".

Page 13, line 2, of the amendment of the House, before the word "pollution" insert the word "water", and after the word "pollution" strike out the words "of interstate waters".

Page 14, line 17 through line 23, of the amendment of the House, strike out all after the words "SEC. 9. (a)" and insert the following: "Five officers may be appointed to grades in the Regular Corps of the Public Health Service above that of senior assistant, but not to a grade above that of director, to assist in carrying out the purposes of this Act. Officers appointed pursuant to this subsection in any fiscal year shall not be counted as part of the 10 per centum of the original appointments authorized to be made in such year under section 207 (b) of the Public Health Service Act; but they shall for all other purposes be treated as though appointed pursuant to such section 207 (b)."

And the House agree to the same.

GEO. A. DONDERO,
J. HARRY MCGREGOR,
PAUL CUNNINGHAM,
JAMES C. AUCHINCLOSS,
WILL M. WHITTINGTON,
JOHN A. BLATNIK,
TOM PICKETT,
*Managers on the Part of the House.*

GEO. W. MALONE,
CHAPMAN REVERCOMB,
JOHN L. MCCLELLAN,
*Managers on the Part of the Senate.*

### STATEMENT

The managers on the part of the House at the conference on the disagreeing votes of the two Houses on the amendment of the House to the bill (S. 418) submit the following statement in explanation of the effect of the action agreed upon and recommended in the accompanying conference report as to each of such amendments, namely:

The first two amendments apply to Sec. 2 (a), lines 4, 5, and 6, on page 18 of the bill. The language substituted more clearly defines the authority of the Surgeon General with respect to the preparation and adoption of comprehensive programs for eliminating or reducing the pollution of surface and underground waters.

The amendment to Sec. 5 (line 3, page 25), increases by $50,000 the maximum individual loan which may be made under the Act.

The amendment to Sec. 7 (line 16, page 27), increases by $2,500,000 the maximum authorized to be appropriated to the Federal Security Agency for each of the five fiscal years during the period beginning July 1, 1948, and ending June 30, 1953, for the purpose of making loans under Section 5 of the Act.

The purpose of the amendments to Sec. 8 (b) (lines 16, 17, and 18, page 28), is to expand the service of the Public Health Service station authorized to be erected at Cincinnati, Ohio, in connection with research and study of water pollution and the training of personnel in work related to control of water pollution.

The amendment with reference to Sec. 9 (a), (lines 10 to 16, page 30), substitutes a new Sec. 9 (a), which is required for the purpose set forth in the following letter:

FEDERAL SECURITY AGENCY,
*Washington, Zone 25, May 14, 1948.*

DEAR MR. CHAIRMAN: This is in reference to S. 418, which your Committee reported out, with amendments, on April 28, 1948.

Section 9 (a) of S. 418 as reported authorizes additional appointments to be made at higher grades in the Regular Corps of the Public Health Service pursuant to section 208 (b) of the Public Health Service Act to assist the Service in carrying out its new or expanded activities under S. 418. Since our letter of January 19, 1948, to you on this bill, however, the Congress has enacted Public Law 425, which amends the provisions of the Public Health Service Act in several respects, primarily in the matter of appointment and promotion of commissioned officers of the Public Health Service. As a result of Public Law 425, the authority to make additional appointments at higher grades in the Regular Corps of the Public Health Service, formerly contained in section 208 (b) of the Public Health Service Act, is now contained in section 207 (b) of that Act, in a somewhat revised form. In order, therefore, to accomplish the purposes for which section 9 (a) of S. 418 was intended, the following is suggested in lieu of such section 9 (a):

(a) Five officers may be appointed to grades in the Regular Corps of the Service above that of senior assistant, but not to a grade above that of director, to assist in carrying out the purposes of this Act. Officers appointed pursuant to this subsection in any fiscal year shall not be counted as part of the 10 per centum of the original appointments authorized to be made in such year under section 207 (b) of the Public Health Service Act; but they shall for all other purposes be treated as though appointed pursuant to such section 207 (b).

The short time available for necessary action on the amendment suggested by this letter has not permitted us to obtain advice from the Bureau of the Budget as to the relationship of this amendment to the program of the President.

Sincerely yours.

J. DONALD KINGSLEY,
*Acting Administrator.*

Hon. GEORGE A. DONDERO,
*Chairman, Committee on Public Works,*
*House of Representatives,*
*Washington 25, D. C.*

GEO. A. DONDERO,
J. HARRY MCGREGOR,
JAMES C. AUCHINCLOSS,
PAUL CUNNINGHAM,
WILL M. WHITTINGTON,
JOHN A. BLATNIK,
TOM PICKETT,
*Managers on the Part of the House.*

The conference report was agreed to.

A motion to reconsider was laid on the table.

## UNITED STATES CODE, TITLE 18

Mr. REED of Illinois. Mr. Speaker, I ask unanimous consent to take from the Speaker's desk the bill (H. R. 3190) to revise, codify, and enact into positive law, title 18 of the United States Code, entitled "Crimes and Criminal Procedure," with Senate amendments thereto, and concur in the Senate amendments.

The Clerk read the title of the bill.

The Clerk read the Senate amendments, as follows:

Page 3, following:

"13. Laws of States adopted for areas within Federal jurisdiction."

Insert:

"14. Applicability to Canal Zone."

Page 5, line 4, after "States" insert, ", except the Canal Zone."

Page 8, after line 15, insert:

"§ 14. Applicability to Canal Zone."

"In addition to the sections of this title which by their terms apply to and within the Canal Zone, the following sections of this title shall likewise apply to and within the Canal Zone: 6, 8, 11, 331, 371, 472, 474, 478, 479, 480, 481, 482, 483, 485, 488, 489, 490, 499, 502, 500, 594, 595, 598, 600, 601, 604, 605, 608, 611, 612, 703, 756, 791, 792, 793, 794, 795, 796, 797, 916, 917, 951, 953, 954, 956, 957, 958, 959, 960, 961, 962, 963, 964, 965, 966, 967, 1017, 1073, 1301, 1364, 1382, 1542, 1543, 1544, 1546, 1584, 1621, 1622, 1761, 1821, 1914, 2151, 2152, 2153, 2154, 2155, 2156, 2190, 2231, 2234, 2235, 2274, 2275, 2277, 2384, 2385, 2388, 2389, 2390, 2421, 2422, 2423, 2424, 3059, 3105, 3109."

Page 91, strike out

"610. Contributions by national banks or corporations."

And insert:

"610. Contributions or expenditures by national banks, corporations, or labor organizations."

Page 104, strike out lines 4 to 21, inclusive, and insert:

"§ 610. Contributions by national banks, corporations, or labor organizations

"It is unlawful for any national bank, or any corporation organized by authority of any law of Congress, to make a contribution or expenditure in connection with any election to any political office, or in connection with any primary election or political con-

vention or caucus held to select candidates for any political office, or for any corporation whatever, or any labor organization to make a contribution or expenditure in connection with any election at which Presidential and Vice Presidential electors or a Senator or Representative in, or a Delegate or Resident Commissioner to Congress are to be voted for, or in connection with any primary election or political convention or caucus held to select candidates for any of the foregoing offices, or for any candidate, political committee, or other person to accept or receive any contribution prohibited by this section.

"Every corporation or labor organization which makes any contribution or expenditure in violation of this section shall be fined not more than $5,000; and every officer or director of any corporation, or officer or any labor organization, who consents to any contribution or expenditure by the corporation or labor organization, as the case may be, in violation of this section shall be fined not more than $1,000 or imprisoned not more than 1 year, or both.

"For the purposes of this section 'labor organization' means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exist for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work."

Page 117, line 8, strike out all after "receiver," down to and including "System," in line 15.

Page 118, line 18, strike out all after "care," down to and including "institution," in line 23.

Page 134, line 19, after "both" insert "; or if he negligently suffers such person to escape, he shall be fined not more than $500 or imprisoned not more than 1 year, or both."

Page 168, after line 12, insert "While any foreign government is a member both of the International Monetary Fund and of the International Bank for Reconstruction and Development, this section shall not apply to the sale or purchase of bonds, securities, or other obligations of such government or any political subdivision thereof or of any organization or association acting for or on behalf of such government or political subdivision, or to making of any loan to such government, political subdivision, organization, or association."

Page 867, strike out lines 15 to 18, inclusive, and insert "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.

"Nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof."

Page 415, line 10, after "Zone," insert "District of Columbia."

Page 415, after line 17, insert:

"Nothing in this title, anything therein to the contrary notwithstanding, shall in any way limit, supersede, or repeal any such rules heretofore prescribed by the Supreme Court."

Page 416, after line 21, insert:

"Nothing in this title, anything therein to the contrary notwithstanding, shall in any way limit, supersede, or repeal any such rules heretofore prescribed by the Supreme Court."

Page 445, lines 24 and 25, strike out "the Revised Statutes (1 U. S. C., sec. 1)" and insert "Title 1 of the United States Code."

Page 456, strike out lines 3 to 21, inclusive.

Page 456, line 22, strike out "19" and insert "18."

Page 457, line 8, strike out "20" and insert "19."

Page 457, strike out lines 8 to 16, inclusive, and insert:

"SEC. 20. This act shall take effect September 1, 1948."

Page 467, line 16, strike out "22" and insert "21."

Page 463, about middle of page, strike out

| | | | | | | |
|---|---|---|---|---|---|---|
| [July 3 ...... | 120 | 4, 5 | 40 | 735, 758 | 18 | 705, 706] |

Page 467, below middle of page, strike out

| | | | | | | |
|---|---|---|---|---|---|---|
| [June 20 ...... | 634 | 4 | 49 | 1656 | 16 | 705 |
| Do ...... | 635 | 1, 2 | 49 | 1657 | 22 | 243] |

and insert:

| | | | | | | |
|---|---|---|---|---|---|---|
| "June 20 ...... | 632 | 1, 2 | 49 | 1657 | 22 | 243" |

Page 470, after

| | | | | | | |
|---|---|---|---|---|---|---|
| "June 8 ...... | 176 | 1, 2, 3 | 59 | 224, 225 | 18 | 241, 241a, 242" |

insert:

| | | | | | | |
|---|---|---|---|---|---|---|
| "July 31 ...... | 332 | 5 | 59 | 816 | 31 | 804h" |

Page 471, at the end of the schedule of repeals on this page, insert:

| "1947— | | | | | | |
|---|---|---|---|---|---|---|
| Apr. 16. | 39 | ...... | 61 | 52 | 18 | 411 |
| May 16. | 73 | ...... | 61 | 07 | 18 | 744h-1 |
| June 21. | 111 | ...... | 61 | 134 | 18 | 244 |
| June 23. | 134 | 304 | 61 | 159 | 2 | 251" |

The SPEAKER. Is there objection to the request of the gentleman from Illinois?

There was no objection.

The Senate amendments were concurred in.

A motion to reconsider was laid on the table.

NATIONAL FREEDOM DAY

Mr. REED of Illinois. Mr. Speaker, I ask unanimous consent to take from the Speaker's desk the joint resolution (S. J. Res. 37) requesting the President to proclaim February 1 as National Freedom Day, and ask for its immediate consideration. I have consulted with the leaders on both sides.

The Clerk read the title of the joint resolution.

The SPEAKER. Is there objection to the request of the gentleman from Illinois?

There was no objection.

The Clerk read, as follows:

*Resolved, etc.,* That the President of the United States is authorized to issue a proclamation designating the 1st day of February of each year as National Freedom Day for the purpose of commemorating the signing by President Abraham Lincoln, on February 1, 1865, of the joint resolution adopted by the Senate and the House of Representatives of the United States, proposing the thirteenth amendment to the Constitution of the United States of America.

The joint resolution was ordered to be read a third time, was read the third time, and passed, and a motion to reconsider was laid on the table.

PERMISSION TO EXTEND REMARKS AT THIS POINT

Mr. McGARVEY. Mr. Speaker, I ask unanimous consent to extend my remarks at this point in the RECORD.

The SPEAKER. Is there objection to the request of the gentleman from Pennsylvania?

There was no objection.

Mr. McGARVEY. Mr. Speaker, the bill which has been reached on the Consent Calendar today will authorize and request the President to proclaim February 1 as National Freedom Day and invite the people of the United States to observe the day with appropriate ceremonies and thanksgiving. As you all know, on February 1, 1865, President Abraham Lincoln signed the joint resolution, which had previously been adopted by the Congress, proposing the thirteenth amendment to the Constitution.

I should like to repeat for you at this time the immortal words of that amendment: "Neither slavery nor involuntary servitude, except as a punishment for crime, whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." These words are the foundation of our form of government with its emphasis on the freedom of the individual and the human liberties which belong to every citizen of the United States. It is therefore with pride in our free Nation that I introduced this resolution at the first session of the Eightieth Congress. Since that time I have been striving to obtain approval of the legislation.

I wish to thank the members of the Judiciary Committee and, in particular, the members of the subcommittee which handled the resolution, headed by the gentleman from Illinois [Mr. REED], for the interest and cooperation they have displayed in reporting the legislation, also the gentleman from Pennsylvania [Mr. CHADWICK].

I should like to pause here to pay tribute to the founder of National Freedom Day, Maj. R. R. Wright. It is regrettable that Major Wright is not with us today to realize the fulfillment of his long years of hard work and inspiring efforts. Born in slavery, Major Wright rose to prominence as a great American and occupied an unequalled position in the hearts of his fellow Americans. The story of Major Wright is truly the story of America, for in no other country today is it possible for a citizen to achieve such outstanding success. His success, however, would not have occurred had the thirteenth amendment to the Constitution not been approved. Since its signing is one of the cornerstones in the foundation of our American traditions, I am proud that we have today passed the resolution commemorating its inception.

PROCUREMENT AND SUPPLY OF GOVERNMENT HEADSTONES

Mr. WELCH. Mr. Speaker, I ask unanimous consent to take from the Speaker's desk the bill (H. R. 4272) to provide for the procurement and supply of Government headstones or markers for unmarked graves of members of the armed forces dying in the service or after honorable discharge therefrom, and other persons, and for other purposes, with a Senate amendment thereto, and concur in the Senate amendment.

The Clerk read the title of the bill.

The Clerk read the Senate amendment, as follows:

Page 2, line 2, strike out all after "cemeteries," down to and including "costs." in line 14 and insert "The Secretary of the Army, the Secretary of the Navy, and the Secretary of the Air Force are authorized and directed to compile a list of the names of all members of the armed forces of the United States who died while serving in such forces in the overseas theaters of operations on or after September 8, 1939, and whose bodies have not been recovered or identified or have been buried at sea. Upon the compilation of such list of names and other appropriate data, the American Battle Monuments Commission and the Secretary of the Army are authorized and directed to provide for the inscribing of each such name and pertinent

:e Federal Communications Commis-

.

he PRESIDING OFFICER. Is there ction?

r. YOUNG. I object.

r. WHERRY. Then, Mr. President, ove that the nomination of Frieda B. nnock, of New York, be confirmed.

he PRESIDING OFFICER. The stion is on agreeing to the motion of Senator from Nebraska.

Ir. BALL. Mr. President, what kind procedure is this?—We are not in cutive session.

Ir. WHERRY. I asked for unanimus consent.

Ir. BALL. I did not hear any motion.

Ir. WHERRY. I understand that I :ed for unanimous consent.

The PRESIDING OFFICER. The nator asked unanimous consent, and animous consent was granted.

Mr. BALL. I am sorry.

The PRESIDING OFFICER. The air did not understand that that is at it was for.

Mr. WHERRY. If there is any doubt out it——

The PRESIDING OFFICER. Consent was granted.

Mr. WHERRY. Very well.

Mr. BALL. Are we in executive session, then?

The PRESIDING OFFICER. We are.

Mr. WHERRY. We are, for the consideration of the nomination of Miss rieda B. Hennock.

Mr. BALL. May we proceed in the egular order, then, and have the nomination stated, so that we will know what re are doing? I do not like to have he Senate doing things by unanimous onsent. I am not going to hold up the Senate——

Mr. WHERRY. That is the very thing hat is done after the Executive Calendar is taken up, and I ask that the nomination be stated.

The PRESIDING OFFICER. The clerk will state the nomination.

The LEGISLATIVE CLERK. Nomination passed over. Frieda B. Hennock, of New York, to be a member of the Federal Communications Commission.

The PRESIDING OFFICER. The question is, Will the Senate advise and consent to the nomination?

Mr. BALL. Mr. President, I do not intend to make a lengthy speech about this nomination. I am opposed to it, and I want the RECORD to show that. So far as I can discover, the only investigation, the only hearing, regarding this nomination, was a brief executive session, of the subcommittee of the Committee on Interstate and Foreign Commerce. For several weeks the reports were that the nomination would never get out of committee. Then all of a sudden it was reported, with, I may say, somewhat suspicious haste. It is for a 7-year term on the Federal Communications Commission. In my opinion that is a tremendously important Commission. I think it is up to the Senate to satisfy itself—and frankly I am not satisfied; I do not know about the wisdom of the nomination one way or the other—that appointments to this Commission will really serve the best interests of the Nation.

I myself have observed some rather disturbing things about the Federal Communications Commission. I have heard more disturbing reports since this nomination was reported. I have heard a report, on what I consider reliable authority—and obviously in the past few days I have not had any opportunity to investigate it, I do not know whether it is true or not—which indicates that certain interests, groups, who are greatly interested in this nomination, have a direct pipe line to the Federal Communications Commission, which we certainly would not want to have occur. What the score is I do not know. So far as I can determine, Miss Hennock is a lawyer from New York, and I might point out that the late President Roosevelt never appointed a member of the Federal Communications Commission from New York City, for the simple reason that New York City is the center of the radio industry, and he wanted to avoid any possibility of the industry itself having too much influence on the Commission. So far as I can discover, she has had no experience in radio matters, and from what I can learn of her background, frankly I do not think she is qualified for the job, and I want to be on record as opposed to her confirmation.

Mr. BREWSTER. Mr. President, I think the Senator from Minnesota has been very fair in his statement. As chairman of the subcommittee which investigated this nomination for the Senate Committee on Interstate and Foreign Commerce, which reported it by a vote of 8 to 0, with another member voting "present," I think the Senate should know what we have learned as to the circumstances.

Miss Hennock has been a member of the New York bar for 20 or 25 years. I hesitate to estimate the age of a lady, but I should say she is between 40 and 50 years old, so she is reasonably mature. She has had quite a brilliant record at the bar. She is a member now, which is somewhat unusual for a woman, of the third largest law firm in New York City, one of the most highly respected and distinguished, one composed almost exclusively of Republicans. She has had no experience in radio, as the Senator from Minnesota has said, which, it seemed to many of us, was perhaps most fortunate, because one who had been active in radio work, representing radio clients, would by that very fact come in under somewhat of a cloud. The committee took into consideration her breadth of experience and training and recognized abilities.

I may say that one of her most earnest sponsors was John W. Davis, of New York, who certainly is a leader of the New York bar, and who vouched most earnestly for her capacity and character. And from many other quarters there have come most earnest testimonials as to the character and competency of this woman.

Obviously only the future can tell how well she can fulfill these responsibilities. I can say that we in our committee, share the concern which the Senator from Minnesota has experienced concerning the functioning of the Federal Communications Commission. We think it needs new blood, and it was the consensus of those of us who became familiar with this matter through contact with many who were acquainted with her and through various representations, that she would be well qualified to fit into this position, and we believed her confirmation was warranted and wise.

The PRESIDING OFFICER. The question is, Will the Senate advise and consent to this nomination?

The nomination was confirmed.

POSTMASTERS

EXECUTIVE REPORT OF A COMMITTEE

The following favorable report of a committee was submitted:

By Mr. LANGER, from the Committee on Post Office and Civil Service:

The nomination of Jack Bostwick to be postmaster at Eastrop, in the State of Louisiana.

On motion by Mr. LANGER, and by unanimous consent, it was

*Ordered*, That the said nomination be considered with those postmasters appearing on today's calendar.

Mr. BARKLEY. Does the Senator intend that the nominations of postmasters shall be considered?

Mr. WHERRY. Yes.

The PRESIDING OFFICER. The clerk will state the nominations of postmasters on the calendar.

The legislative clerk proceeded to read the nominations of postmasters on the calendar.

The PRESIDING OFFICER. Without objection, the nominations of postmasters will be confirmed en bloc.

Without objection the President will be notified of all nominations this day confirmed on the Executive Calendar.

Mr. WHERRY. Mr. President, are there any measures any Senator desires to bring up at this time, or is there any other matter that is desired to be considered?

Mr. O'MAHONEY. Mr. President, may I ask the m[illegible]rity leader whether there is any int[illegible]n to proceed with Calendar No. 125, [illegible]ate Joint Resolution 76?

Mr. WHERRY. [illegible]at is the equal-rights amendment?

Mr. O'MAHONEY. Yes.

Mr. WHERRY. I believe the Senator who was particularly interested in the legislation stated that it would not be taken up at this time. I would not undertake to take it up.

Mr. O'MAHONEY. Very well.

CONDITIONAL ADJOURNMENT TO DECEMBER 31, 1948

Mr. WHERRY. I move that the Senate do now adjourn.

The motion was agreed to; and (at 7 o'clock and 14 minutes a. m., Sunday, June 20, 1948) the Senate adjourned, the adjournment being under the provision of House Concurrent Resolution 218, to Friday, December 31, 1948, at 12 o'clock meridian.

such fund to such extent and in such manner and under such terms and conditions as the Secretary of Labor may by regulation or otherwise prescribe.

Mr. HOPE. Mr. Speaker, I ask unanimous consent to withdraw the committee amendments.

The SPEAKER. Is there objection to the request of the gentleman from Kansas?

There was no objection.

Mr. HOPE. Mr. Speaker, I offer two amendments, which I send to the Clerk's desk.

The Clerk read as follows:

Amendments offered by Mr. HOPE:

On page 1, line 3, strike out "the Secretary of Labor" and insert "the Administrator of the Federal Security Agency."

On page 2, line 21, strike out "the Secretary of Labor" and insert "the Administrator of the Federal Security Agency."

Mr. FOGARTY. The first amendment was to strike out "the Secretary of Labor" and insert "the Federal Security Administrator"; is that correct?

Mr. HOPE. Yes. That is made necessary by reason of the act that was passed, the appropriation bill, which transferred the Federal Employment Service to the Federal Security Agency.

The SPEAKER. The question is on agreeing to the amendments.

The amendments were agreed to.

The bill was ordered to be read a third time, was read the third time, and passed, and a motion to reconsider was laid on the table.

ISSUING PATENTS IN ALASKA

Mr. D'EWART. Mr. Speaker, I ask unanimous consent for the immediate consideration of House Joint Resolution 162, a joint resolution to repeal section 2 of the act of May 1, 1936, and for other purposes.

The Clerk read the title of the resolution.

The SPEAKER. Is there objection to the request of the gentleman from Montana [Mr. D'EWART]?

Mr. RICH. Mr. Speaker, reserving the right to object, what does this bill do?

Mr. D'EWART. The bill repeals section 2 of the act of May 1, 1936, having to do with the issuing of certain patents in Alaska. Second, it permits the Secretary of the Interior to issue patents in Alaska to individual tribes, villages, or individuals, with the approval of the Secretary of the Interior.

Mr. RICH. Mr. Speaker, it is now 15 minutes after 6 in the morning. It is almost time to go to church. It seems to me this legislation should be deferred until some other time. I object.

ADJOURNMENT RESOLUTION

Mr. HALLECK. Mr Speaker, I offer a concurrent resolution (H. Con. Res. 218) and ask for its immediate consideration.

The Clerk read as follows:

*Resolved*, That when the two Houses adjourn on Sunday, June 20, 1948, they stand adjourned until 12 o'clock meridian on Friday, December 31, 1948, or until 12 o'clock meridian on the third day after the respective Members are notified to reassemble in accordance with section 2 of this resolution, whichever event first occurs.

SEC. 2. The President pro tempore of the Senate, the Speaker of the House of Representatives, the acting majority leader of the Senate, and the majority leader of the House of Representatives, all acting jointly, shall notify the Members of the Senate and the House, respectively, to reassemble whenever, in their opinion, the public interest shall warrant it.

The SPEAKER. The question is on agreeing to the resolution.

The resolution was agreed to.

AUTHORIZING THE SPEAKER AND THE PRESIDENT PRO TEMPORE TO SIGN ENROLLED BILLS AND JOINT RESOLUTIONS

Mr. HALLECK. Mr. Speaker, I offer a concurrent resolution (H. Con. Res. 219) and ask for its immediate consideration.

The Clerk read the resolution, as follows:

*Resolved*, That notwithstanding the adjournment of the two Houses until December 31, 1948, the Speaker of the House of Representatives and the President pro tempore of the Senate be, and they are hereby, authorized to sign enrolled bills and joint resolutions duly passed by the two Houses and found truly enrolled.

The SPEAKER. The question is on agreeing to the resolution.

The resolution was agreed to.

A motion to reconsider was laid on the table.

AUTHORIZING THE CLERK TO RECEIVE MESSAGES

Mr. HALLECK. Mr. Speaker, I ask unanimous consent that notwithstanding the adjournment of the House until December 31, 1948, the Clerk be authorized to receive messages from the Senate.

The SPEAKER. Without objection, it is so ordered.

There was no objection.

AUTHORIZING THE SPEAKER TO APPOINT COMMISSIONS, BOARDS, AND COMMITTEES

Mr. HALLECK. Mr. Speaker, I ask unanimous consent that notwithstanding the adjournment of the House until December 31, 1948, the Speaker be authorized to appoint commissions, boards, and committees authorized by law or by the House.

The SPEAKER. Without objection, it is so ordered.

There was no objection.

GENERAL LEAVE TO EXTEND REMARKS

Mr. HALLECK. Mr. Speaker, I ask unanimous consent that all Members of the House shall have the privilege until the last edition authorized by the Joint Committee on Printing is published to extend and revise their own remarks in the CONGRESSIONAL RECORD on more than one subject, if they so desire, and also to include therein such short quotations as may be necessary to explain or complete such extension of remarks, but this order shall not apply to any subject matter which may have occurred or to any speech delivered subsequent to the adjournment of Congress until Friday, December 31, 1948.

The SPEAKER. Is there objection to the request of the gentleman from Indiana?

There was no objection.

REPORTS OF INVESTIGATING COMMISSIONS TO BE DOCUMENTS OF EIGHTIETH CONGRESS

Mr. HALLECK. Mr. Speaker, I ask unanimous consent that reports filed with the Clerk following the adjournment of the House until Friday, December 31, 1948, by committees authorized by the House to conduct investigations may be printed by the Clerk as reports of the Eightieth Congress.

The SPEAKER. Is there objection to the request of the gentleman from Indiana?

There was no objection.

CERTAIN REPORTS OF COMPTROLLER GENERAL'S OFFICE TO BE PRINTED AS HOUSE DOCUMENTS

Mr. HALLECK. Mr. Speaker, I offer a resolution (H. Res. 700) and ask for its immediate consideration.

The Clerk read as follows:

*Resolved*, That the reports of the Comptroller General of the United States made to Congress, pursuant to section 5 of the act of February 24, 1945 (56 Stat. 6), and the Government Corporation Control Act (59 Stat. 597), after the adjournment of the House until December 31, 1948, shall be printed as House documents of the second session of the Eightieth Congress.

The resolution was agreed to.

A motion to reconsider was laid on the table.

DESIGNATION OF ASSISTANT CLERK OF THE HOUSE OF REPRESENTATIVES

Mr. HALLECK. Mr. Speaker, I offer a resolution (H. Res. 701) and ask for its immediate consideration.

The Clerk read as follows:

*Resolved*, That in order that the duties of his office may be discharged in case of his absence or disability or in case his office should become vacant, the Clerk of the House of Representatives on or before June 19, 1948, shall designate a subordinate in his office to perform the duties thereof in any such contingencies until the commencement of the first session of the Eighty-first Congress. Such designee when acting under this authorization, shall subscribe himself as Acting Clerk of the House of Representatives.

The Clerk of the House shall promptly communicate to the Speaker the name of the employee designated hereunder for the information of the House.

The resolution was agreed to.

A motion to reconsider was laid on the table.

The SPEAKER laid before the House the following communication, which was read by the Clerk:

OFFICE OF THE CLERK,
HOUSE OF REPRESENTATIVES,
*Washington, D. C., June 20, 1948.*

The Honorable the SPEAKER,
*House of Representatives.*

SIR: Pursuant to the provisions of House Resolution 701 adopted by the House today, I have designated Mr. Harry Newlin Megill, an official in my office, to discharge the duties contemplated by said resolution.

Respectfully yours,
JOHN ANDREWS,
*Clerk of the House of Representatives.*

EXTENSION OF REMARKS

Mr. WIGGLESWORTH asked and was given permission to extend his remarks in two instances and in each to include tabular material.

Mr. KERSTEN of Wisconsin asked and was given permission to extend his remarks in the Appendix of the RECORD in two instances.

The SPEAKER. The gentleman from Vermont [Mr. PLUMLEY].

Mr. PLUMLEY. I just wish to call attention to the fact that this is Father's Day, and, therefore, I say: Good night, good morning, good luck.

The SPEAKER. The gentleman from Illinois [Mr. BUSBEY].

Mr. BUSBEY. Mr. Speaker, I do not know how many have ever attended a sunrise service before, but you have today.

RECESS

The SPEAKER. The Chair declares a recess subject to the call of the Chair.

Thereupon (at 6 o'clock and 23 minutes a. m.) the House stood in recess subject to the call of the Chair.

AFTER RECESS

The recess having expired, the House was called to order by the Speaker at 6 o'clock and 55 minutes a. m.

FURTHER MESSAGE FROM THE SENATE

A further message from the Senate by Mr. Latta, its enrolling clerk, announced that the Senate had passed without amendment concurrent resolutions of the House of the following titles:

H. Con. Res. 218. Concurrent resolution providing for adjournment of the two Houses of Congress until December 31, 1948; and

H. Con. Res. 219. Concurrent resolution authorizing the signing of enrolled bills following adjournment.

The message also announced that the Senate agrees to the report of the committee of conference on the disagreeing votes of the two Houses on the amendment of the House to the bill (H. R. 6248) entitled "An act to authorize the Secretary of Agriculture to stabilize prices of agricultural commodities; to amend section 22 of the Agricultural Adjustment Act, reenacted by the Agricultural Marketing Agreement Act of 1937; and for other purposes."

The message also announced that the Senate had passed without amendment joint resolutions of the House of the following titles:

H. J. Res. 305. Joint resolution authorizing the issuance of a special series of stamps commemorative of the fiftieth anniversary of the organization of the Rough Riders (First Volunteer United States Cavalry) of the Spanish-American War; and

H. J. Res. 327. Joint resolution to authorize the issuance of a special series of stamps commemorative of Juliette Low, founder and organizer of Girl Scouting in the United States of America.

The message also announced that the Senate agrees to the amendments of the House to bills of the Senate of the following title:

S. 2767. An act to provide assistance in the recruitment and distribution of farm labor for the increased production, harvesting, and preparation for market of agricultural commodities to meet domestic needs and foreign commitments; and

S. 2790. An act to amend the Servicemen's Readjustment Act of 1944, as amended, and for other purposes.

ENROLLED BILLS AND JOINT RESOLUTIONS SIGNED

Mr. LECOMPTE, from the Committee on House Administration, reported that that committee had examined and found truly enrolled bills and joint resolutions of the House of the following titles, which were thereupon signed by the Speaker:

H. R. 371. An act for the relief of Jenneas C. Thomas;

H. R. 564. An act for the relief of Sarah Lee Cregg;

H. R. 700. An act for the relief of Anthony Arancio;

H. R. 703. An act for the relief of Leon Nikolaivich Volkov;

H. R. 851. An act for the relief of Adney W. Gray;

H. R. 911. An act for the relief of Kam Fong Chun, Mr. and Mrs. Jose Dias, Joseph De Souza, Mr. and Mrs. Kenneth Ayres, and Jose Oducado;

H. R. 912. An act for the relief of Hiro Higa and Kana Higa;

H. R. 915. An act to confer jurisdiction upon the District Court of the United States for the Territory of Hawaii to hear, determine, and render judgment on the claims of the executors and trustees of the estate of L. L. McCandless, deceased, as their interests may appear, against the United States of America;

H. R. 1076. An act for the relief of Chester O. Glenn;

H. R. 1220. An act for the relief of James D. Sigler and Frederick P. Vogelsand III;

H. R. 1409. An act for the relief of Frantisek Jiri Pavlik or Georg Pavlik;

H. R. 1490. An act for the relief of the United States Radiator Corp. of Detroit, Mich.;

H. R. 1642. An act for the relief of Miss Rosella M. Kostenbader;

H. R. 1733. An act for the relief of G. C. Hedrick;

H. R. 1734. An act for the relief of Gabel Construction Co.;

H. R. 1779. An act for the relief of the Winona Machine & Foundry Co., a corporation of Winona, Minn.;

H. R. 1780. An act for the relief of the Cannon Valley Milling Co.;

H. R. 1910. An act for the relief of the legal guardian of Robert Lee Threatt, a minor;

H. R. 1930. An act for the relief of the Growers Fertilizer Co., a Florida corporation;

H. R. 2006. An act to amend section 11 of the act approved June 5, 1942 (56 Stat. 317), relating to Mammoth Cave National Park in the State of Kentucky, and for other purposes;

H. R. 2192. An act for the relief of the Massman Construction Co.;

H. R. 2193. An act for the relief of Robert E. Graham;

H. R. 2362. An act to provide for sale to the Crow Tribe of interests in the estates of deceased Crow Indian allottees;

H. R. 2372. An act for the relief of George Cleve Williams;

H. R. 2395. An act for the relief of the Cypress Creek drainage district of the State of Arkansas;

H. R. 2431. An act for the relief of the estate of David Jefferson Janow, deceased;

H. R. 2469. An act for the relief of James W. Adkins and Mary Clark Adkins;

H. R. 2551. An act for the relief of William R. Ramsey;

H. R. 2552. An act for the relief of Thomas A. Hanley;

H. R. 2696. An act for the relief of Otto Kraus, receiver of the Neafie & Levy Ship & Engine Building Co.;

H. R. 2729. An act for the relief of the legal guardian of Rose Mary Aminirato, a minor;

H. R. 2732. An act for the relief of Dennis Stanton;

H. R. 2734. An act for the relief of Joseph M. Henry;

H. R. 2878. An act to amend the act approved May 18, 1928 (45 Stat. 602), as amended, to revise the roll of the Indians of California provided therein;

H. R. 2889. An act for the relief of Aubrey F. Houston;

H. R. 2918. An act for the relief of the Sumner County Colored Fair Association;

H. R. 3022. An act for the relief of the estate of Rudolph Maximilian Goepp, Jr.;

H. R. 3218. An act to authorize an emergency fund for the Bureau of Reclamation to assure the continuous operation of its irrigation and power systems;

H. R. 3261. An act for the relief of Capt. Carroll C. Garretson;

H. R. 3427. An act for the relief of Mrs. Mary H. Overall and Thomas I. Baker;

H. R. 3499. An act for the relief of Petrol Corp.;

H. R. 3566. An act to amend subsection (c) of section 19 of the Immigration Act of 1917, as amended, and for other purposes;

H. R. 3735. An act to authorize and direct the Secretary of the Army to donate and convey to Okaloosa County, State of Florida, all the right, title, and interest of the United States in and to a portion of Santa Rosa Island, Fla., and for other purposes;

H. R. 3937. An act for the relief of William C. Reese;

H. R. 3999. An act to authorize the Attorney General to adjudicate certain claims resulting from evacuation of certain persons of Japanese ancestry under military orders;

H. R. 4047. An act for the relief of Edmund Huppler;

H. R. 4103. An act for the relief of Charles M. Davis;

H. R. 4199. An act for the relief of George Haniotis;

H. R. 4272. An act to provide for the procurement and supply of Government headstones or markers for unmarked graves of members of the armed forces dying in the service or after honorable discharge therefrom, and other persons, and for other purposes;

H. R. 4320. An act to authorize the Secretary of State to perform certain consular-type functions within the United States and its Territories and possessions;

H. R. 4367. An act authorizing the Hidalgo Bridge Co., its heirs, legal representatives, and assigns, to construct, maintain, and operate a railroad toll bridge across the Rio Grande, at or near Hidalgo, Tex.;

H. R. 4436. An act to amend the Civil Aeronautics Act of 1938 by redefining certain powers of the Administrator, by authorizing delegation of certain powers by the Civil Aeronautics Board to the Administrator, and for other purposes;

H. R. 4441. An act for the relief of the William J. Burns International Detective Agency;

H. R. 4452. An act for the relief of Douglas L. Craig;

H. R. 4462. An act authorizing the conveyance of certain lands in Park County, Wyo., to the State of Wyoming;

H. R. 4516. An act for the relief of the Moore Dry Dock Co., of Oakland, Calif.;

H. R. 4518. An act for the relief of Gerald S. Furman;

H. R. 4587. An act for the relief of Mrs. Barry A. Light (formerly Mrs. Elsie Purvey);

H. R. 4590. An act for the relief of Mrs. Loraine Thomsen;

H. R. 4635. An act to amend section 11 of an act entitled "An act to regulate barbers in the District of Columbia, and for other purposes";

H. R. 4644. An act for the relief of E. Brevard Walker, trading as E. B. Walker Lumber Co.;

H. R. 4690. An act to amend the act of July 30, 1947, permitting vessels of Canadian registry to transport [illegible]

# Congressional Record

United States of America

PROCEEDINGS AND DEBATES OF THE 80th CONGRESS, SECOND SESSION


## SENATE

MONDAY, JULY 26, 1948

The Senate reassembled this day in its Chamber at the Capitol, in the city of Washington, in pursuance of the proclamation of the President of the United States of the 15th day of July 1948.

ARTHUR VANDENBERG, President pro tempore, called the Senate to order at 12 o'clock noon.

Rev. Bernard Braskamp, D. D., pastor of the Gunton-Temple Memorial Presbyterian Church, Washington, D. C., offered the following prayer:

O Thou God of infallible wisdom, we have entered upon days which are fraught with perplexing problems and heavy responsibilities, but also with glorious opportunities and possibilities.

We pray that we may have the interpreting light and the clear and confident leading of Thy spirit in all our deliberations and decisions.

May the ideals and principles of our blessed Lord not only stir our emotions but our wills, and may every lofty God-inspired sentiment be translated into action and achievement.

Grant that it may be the goal of all our aspirations to glorify Thy great and holy name and to build Thy kingdom of peace and good will among men and nations.

Hear us for the sake of the Christ. Amen.

The PRESIDENT pro tempore. The proclamation of the President reconvening the Congress will be read by the clerk.

The Chief Clerk (Edward E. Mansur, Jr.) read the proclamation, as follows:

CONVENING THE CONGRESS BY THE PRESIDENT OF THE UNITED STATES OF AMERICA—A PROCLAMATION

Whereas the public interest requires that the Congress of the United States should be convened at 12 o'clock noon on Monday, the 26th day of July 1948, to receive such communication as may be made by the Executive;

Now, therefore, I, Harry S. Truman, President of the United States of America, do hereby proclaim and declare that an extraordinary occasion requires the Congress of the United States to convene at the Capitol in the city of Washington on Monday, the 26th day of July 1948, at 12 o'clock noon, of which all persons who shall at that time be entitled to act as Members thereof are hereby required to take notice.

In witness whereof, I have hereunto set my hand and caused to be affixed the great seal of the United States.

Done at the city of Washington this 15th day of July, in the year of our Lord 1948, and of the independence of the United States of America the one hundred and seventy-third.

HARRY S. TRUMAN.

By the President:

G. C. MARSHALL,
*Secretary of State.*

CALL OF THE ROLL

Mr. WHERRY. I suggest the absence of a quorum.

The PRESIDENT pro tempore. The clerk will call the roll.

The Chief Clerk called the roll, and the following Senators answered to their names:

| | | |
|---|---|---|
| Aiken | Hickenlooper | O'Daniel |
| Baldwin | Hill | O'Mahoney |
| Barkley | Hoey | Pepper |
| Brewster | Holland | Reed |
| Brooks | Jenner | Revercomb |
| Butler | Johnson, Colo. | Robertson, Va. |
| Byrd | Johnston, S. C. | Robertson, Wyo. |
| Cain | Kem | Russell |
| Capehart | Kilgore | Saltonstall |
| Capper | Knowland | Smith |
| Connally | Langer | Sparkman |
| Cooper | Lodge | Stennis |
| Cordon | Lucas | Stewart |
| Donnell | McCarthy | Taft |
| Downey | McClellan | Taylor |
| Eastland | McFarland | Thomas, Okla. |
| Ecton | McGrath | Thomas, Utah |
| Ellender | McMahon | Thye |
| Feazel | Magnuson | Tobey |
| Ferguson | Martin | Umstead |
| George | Maybank | Vandenberg |
| Green | Millikin | Watkins |
| Gurney | Moore | Wherry |
| Hatch | Murray | Wiley |
| Hawkes | Myers | Williams |
| Hayden | O'Conor | Young |

Mr. WHERRY. I announce that the Senator from Minnesota [Mr. BALL], the Senator from Ohio [Mr. BRICKER], the Senator from Delaware [Mr. BUCK], the Senator from South Dakota [Mr. BUSHFIELD], the Senator from Vermont [Mr. FLANDERS], the Senator from Oregon [Mr. MORSE], and the Senator from Iowa [Mr. WILSON] are necessarily absent.

The Senator from New Hampshire [Mr. BRIDGES] is detained on official business.

The Senator from Idaho [Mr. DWORSHAK] is absent on official state business.

The Senator from New York [Mr. IVES] is absent because of illness in his family.

The Senator from Nevada [Mr. MALONE] is absent on official committee business of the Committee on Public Works.

Mr. LUCAS. I announce that the Senator from New Mexico [Mr. CHAVEZ] is unavoidably detained.

The Senator from Arkansas [Mr. FULBRIGHT], the Senator from Nevada [Mr. MCCARRAN], the Senator from Tennessee [Mr. MCKELLAR], the Senator from Maryland [Mr. TYDINGS], and the Senator from New York [Mr. WAGNER] are necessarily absent.

The PRESIDENT pro tempore. Seventy-eight Senators having answered to their names, a quorum is present.

THE JOURNAL

Mr. WHERRY. Mr. President, I ask unanimous consent that, without reading, the Journal of the proceedings of the Senate for the calendar days Friday, June 18, Saturday, June 19, and Sunday, June 20, 1948, be approved.

The PRESIDENT pro tempore. Without objection, the order is made.

ENROLLED BILLS AND JOINT RESOLUTIONS SIGNED AFTER ADJOURNMENT

Subsequent to the adjournment of the Senate on June 20, 1948, the President pro tempore, under the authority of House Concurrent Resolution 219, signed the following enrolled bills and joint resolutions, which had previously been signed by the Speaker of the House of Representatives:

S. 165. An act for the relief of Doris E. Snyder;

S. 418. An act to provide for water-pollution-control activities in the Public Health Service of the Federal Security Agency and in the Federal Works Agency, and for other purposes;

S. 595. An act to provide that the rates of compensation for disabilities incurred in active military or naval service other than in a period of war service shall be equal to 80 percent of the rates payable for similar disabilities incurred during active service in time of war;

S. 1243. An act to provide for the payment of revenues from certain lands into the tribal funds of the Confederated Tribes of the Warm Springs Reservation of Oregon, and for other purposes;

S. 1260. An act to create a commission to hear and determine the claims of certain motor carriers;

S. 1322. An act to provide a Federal charter for the Commodity Credit Corporation;

S. 1683. An act to confer jurisdiction on the State of New York with respect to offenses committed on Indian reservations within such State;

S. 1715. An act for the relief of Archie Hamilton and Delbert Hamilton;

S. 1717. An act for the relief of the estate of William R. Stigall, deceased;

S. 1969. An act to amend the Philippine Rehabilitation Act of 1946 in connection with the training of Filipinos as provided for in title III;

S. 2217. An act conferring jurisdiction upon the Court of Claims of the United States to hear, determine, and render judgment upon the joint claims of Silas Mason Co., Inc.; Walsh Construction Co.; and Atkinson-Kier Co.;

S. 2242. An act to authorize for a limited period of time the admission into the United States of certain European displaced persons for permanent residence, and for other purposes;



TEXAS STATE LIBRARY 82177
Austin, Texas

S. 2281. An act to provide for an air parcel-post service, and for other purposes;

S. 2371. An act validating certain conveyances of the Oregon Short Line Railroad Co. and the Union Pacific Railroad Co., and waiving, relinquishing, and disclaiming all title and all right of reverter and forfeiture of the United States of America to the lands described in said conveyance;

S. 2376. An act to provide a revolving fund for the purchase of agricultural commodities and raw materials to be processed in occupied areas and sold;

S. 2440. An act for the relief of Charles Duncan Montieth;

S. 2554. An act to promote the common defense by providing for the retention and maintenance of a national reserve of industrial productive capacity, and for other purposes;

S. 2621. An act authorizing the extension of the functions and duties of Federal Prison Industries, Inc., to military disciplinary barracks;

S. 2655. An act to provide for the common defense by increasing the strength of the armed forces of the United States, including the Reserve components thereof, and for other purposes;

S. 2676. An act to authorize the Secretary of the Interior to convey a certain parcel of land in St. Louis County, Minn., to the University of Minnesota;

S. 2692. An act to terminate the retirement system of the Office of the Comptroller of the Currency, and to transfer that retirement fund to the Civil Service Retirement and Disability Fund;

S. 2698. An act to authorize the transfer of horses and equipment owned by the United States Army to the New Mexico Military Institution, a State institution, and for other purposes;

S. 2705. An act to reimburse the James & Phelps Construction Co.;

S. 2709. An act for the relief of Stefan Magura and Michal Magura;

S. 2730. An act to include as allowable service under the act of July 6, 1945, service performed in the military forces and on war transfer by employees in the field service of the Post Office Department;

S. 2743. An act providing for the more expeditious determination of certain claims filed by Ute Indians;

S. 2747. An act to amend the Canal Zone Code for the purpose of incorporating the Panama Railroad Company;

S. 2767. An act to provide assistance in the recruitment and distribution of farm labor for the increased production, harvesting, and preparation for market of agricultural commodities to meet domestic needs and foreign commitment;

S. 2790. An act to amend the Servicemen's Readjustment Act of 1944, as amended, and for other purposes;

S. 2794. An act to authorize the Administrator of Veterans' Affairs to prescribe the rates of pay for certain positions at field installations;

S. 2830. An act to extend for 2 years the authority to provide for the maintenance of a domestic tin-smelting industry;

S. 2849. An act to authorize the Administrator of Veterans' Affairs to convey a certain tract of land in the State of Arkansas to Washington County, Ark.;

S. 2861. An act to assist by grants-in-aid the Republic of the Philippines in providing medical care and treatment for certain veterans;

S. 2877. An act to amend the Reconstruction Finance Corporation Act, as amended;

H. R. 333. An act for the relief of sundry residents of Alaska, the veterans of World War II;

H. R. 2009. An act for the relief of the estate of Vito Abarno;

H. R. 2269. An act for the relief of Frank A. Constable;

H. R. 2798. An act to amend section 5, Home Owners' Loan Act of 1933, and for other purposes;

H. R. 3190. An act to revise, codify, and enact into positive law title 18 of the United States Code, entitled "Crimes and Criminal Procedure";

H. R. 3416. An act to provide for the establishment of the Pensacola National Monument;

H. R. 4044. An act to amend the Trading With the Enemy Act, as amended; to create a commission to make an inquiry and report with respect to war claims; and to provide for relief for internees in certain cases;

H. R. 4917. An act to provide further benefits for certain employees of the United States who are veterans of World War II and lost opportunity for probational civil-service appointments by reason of their service in the armed forces of the United States, and who, due to service-connected disabilities, are unable to perform the duties of the positions for which examinations were taken;

H. R. 5416. An act to promote the interests of the Fort Hall Indian irrigation project, Idaho; and for other purposes;

H. R. 5882. An act to authorize the Secretary of the Army, the Secretary of the Navy, and the Secretary of the Air Force to donate excess and surplus property for educational purposes;

H. R. 5904. An act to continue the Virgin Islands Company as an agency of the United States;

H. R. 6248. An act to authorize the Secretary of Agriculture to stabilize prices of agricultural commodities; to amend section 22 of the Agricultural Adjustment Act, reenacted by the Agricultural Marketing Agreement Act of 1937; and for other purposes;

H. R. 6402. An act to provide for extension of the terms of office of the present members of the Atomic Energy Commission;

H. R. 6448. An act to authorize the Administrator of Veterans' Affairs to convey certain land in Tennessee to the city of Johnson City;

H. R. 6465. An act to amend and supplement section 2 of the act approved August 30, 1935, relating to the construction and financing of toll bridges over the Delaware River by the Delaware River Joint Toll Bridge Commission of the Commonwealth of Pennsylvania and the State of New Jersey;

H. R. 6481. An act making appropriations for Government corporations and independent executive agencies for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 6527. An act to provide assistance to certain local school agencies overburdened with war-incurred or postwar national-defense-incurred enrollments;

H. R. 6641. An act to amend the Civil Service Retirement Act of May 29, 1930, to provide annuities for certain surviving spouses of annuitants retired prior to April 1, 1948;

H. R. 6771. An act making appropriations for military functions administered by the National Military Establishment for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 6801. An act making appropriations for foreign aid, and for other purposes;

H. R. 6808. An act to permit refund or credit to brewers of taxes paid on beer lost in bottling operations;

H. R. 6829. An act making supplemental appropriations for the Executive Office and sundry independent executive bureaus, boards, commissions, and offices for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 6916. An act to provide for permanent postal rates and to provide pay increases for Government employees;

H. R. 6935. An act making appropriations to supply deficiencies in certain appropriations for the fiscal year ending June 30, 1948, and for other purposes;

S. J. Res. 177. Joint resolution providing for participation by the Government of the United States in the Pan American Railway Congress, and authorizing an appropriation therefor;

S. J. Res. 219. Joint resolution to continue until March 1, 1919, the authority of the United States Maritime Commission to make provision for certain ocean transportation service to, from, and within Alaska;

H. J. Res. 190. Joint resolution authorizing the printing and binding of Cannon's Procedure in the House of Representatives and providing that the same shall be subject to copyright by the author;

H. J. Res. 305. Joint resolution authorizing the issuance of a special series of stamps commemorative of the fiftieth anniversary of the organization of the Rough Riders (First Volunteer U. S. Cavalry) of the Spanish-American War;

H. J. Res. 327. Joint resolution to authorize the issuance of a special series of stamps commemorative of Juliette Low, founder and organizer of Girl Scouting in the United States of America; and

H. J. Res. 433. Joint resolution permitting the free entry of certain articles imported to promote international good will, and for other purposes.

## ENROLLED BILLS AND JOINT RESOLUTIONS PRESENTED AFTER ADJOURNMENT

Subsequent to the adjournment of the Senate on June 20, 1948, the following enrolled bills and joint resolutions, heretofore duly signed by the Presiding Officers of the two Houses, were presented to the President of the United States by the Secretary of the Senate:

On June 21, 1948:

S. 83. An act authorizing the naturalization of Elizabeth Pickering Winn;

S. 1107. An act relating to the arming of American vessels;

S. 1639. An act authorizing the repair and rehabilitation of irrigation works damaged by flood and the prevention of flood damage in the Fort Sumner irrigation district, and for other purposes;

S. 1730. An act for the relief of Mrs. Anna V. Reyer, Alexander A. Reyer, and Vitaly A. Reyer;

S. 1820. An act to confer jurisdiction on the State of Iowa over offenses committed by or against Indians on the Sac and Fox Indian Reservation;

S. 2186. An act to amend section 5 of the act entitled "An act to amend the laws relating to navigation, and for other purposes";

S. 2192. An act to amend the Interstate Commerce Act so as to permit the issuance of free passes to time inspectors of carriers subject to part I of such act;

S. 2341. An act to authorize an increase in the annual appropriation for the maintenance and operation of the Gorgas Memorial Laboratory;

S. 2510. An act to provide for certain administrative expenses in the Post Office Department, including retainment of pneumatic-tube systems, and for other purposes;

S. 2706. An act to authorize the Federal Works Administrator to lease for commercial purposes certain space in the building located at 811 Vermont Avenue NW., Washington, D. C., commonly known as the Lafayette Building;

S. 2739. An act to authorize the issuance of a stamp commemorative of the two hun-

ernment concerning the construction of railroads in Alaska and the establishment of reciprocal tariff and immigration arrangements.

ENROLLED BILLS AND JOINT RESOLUTIONS SIGNED AFTER ADJOURNMENT

Mr. LECOMPTE, from the Committee on House Administration, reported that that committee had examined and found truly enrolled bills and joint resolutions of the House of the following titles:

H. R. 333. An act for the relief of sundry residents of Alaska, the veterans of World War II;

H. R. 2009. An act for the relief of the estate of Vito Abarno;

H. R. 2269. An act for the relief of Frank A. Constable;

H. R. 2798. An act to amend section 5, Home Owners' Loan Act of 1933, and for other purposes;

H. R. 3190. An act to revise, codify, and enact into positive law title 18 of the United States Code, entitled "Crimes and Criminal Procedure";

H. R. 3416. An act to provide for the establishment of the Pensacola National Monument;

H. R. 4044. An act to amend the Trading With the Enemy Act, as amended; to create a commission to make an inquiry and report with respect to war claims; and to provide for relief for internees in certain cases;

H. R. 4917. An act to provide further benefits for certain employees of the United States who are veterans of World War II and lost opportunity for probational civil-service appointments by reason of their service in the armed forces of the United States, and who, due to service-connected disabilities, are unable to perform the duties of the positions for which examinations were taken;

H. R. 5416. An act to promote the interests of the Fort Hall Indian irrigation project, Idaho, and for other purposes;

H. R. 5882. An act to authorize the Secretary of the Army, the Secretary of the Navy, and the Secretary of the Air Force to donate excess and surplus property for educational purposes;

H. R. 5904. An act to continue the Virgin Islands Company as an agency of the United States;

H. R. 6248. An act to authorize the Secretary of Agriculture to stabilize prices of agricultural commodities; to amend section 22 of the Agricultural Adjustment Act, reenacted by the Agricultural Marketing Agreement Act of 1937; and for other purposes;

H. R. 6402. An act to provide for extension of the terms of office of the present members of the Atomic Energy Commission;

H. R. 6448. An act to authorize the Administrator of Veterans' Affairs to convey certain land in Tennessee to the city of Johnson City;

H. R. 6465. An act to amend and supplement section 2 of the act approved August 30, 1935, relating to the construction and financing of toll bridges over the Delaware River by the Delaware River Joint Toll Bridge Commission of the Commonwealth of Pennsylvania and the State of New Jersey;

H. R. 6481. An act making appropriations for Government corporations and independent executive agencies for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 6527. An act to provide assistance to certain local school agencies overburdened with war-incurred or postwar national-defense-incurred enrollments;

H. R. 6641. An act to amend the Civil Service Retirement Act of May 29, 1930, to provide annuities for certain surviving spouses of annuitants retired prior to April 1, 1948;

H. R. 6771. An act making appropriations for military functions administered by the National Military Establishment for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 6801. An act making appropriations for foreign aid, and for other purposes;

H. R. 6829. An act making supplemental appropriations for the Executive Office and sundry independent executive bureaus, boards, commissions, and offices for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 6916. An act to provide for permanent postal rates and to provide pay increases for Government employees;

H. R. 6935. An act making appropriations to supply deficiencies in certain appropriations for the fiscal year ending June 30, 1948, and for other purposes;

H. R. 6808. An act to permit refund or credit to brewers of taxes paid on beer lost in bottling operations;

H. J. Res. 190. Joint resolution authorizing the printing and binding of Cannon's Procedure in the House of Representatives and providing that the same shall be subject to copyright by the author;

H. J. Res. 305. Joint resolution authorizing the issuance of a special series of stamps commemorative of the fiftieth anniversary of the organization of the Rough Riders (First Volunteer U. S. Cavalry) of the Spanish-American War;

H. J. Res. 327. Joint resolution to authorize the issuance of a special series of stamps commemorative of Juliette Low, founder and organizer of Girl Scouting in the United States of America; and

H. J. Res. 433. Joint resolution permitting the free entry of certain articles imported to promote international good will, and for other purposes.

The SPEAKER, pursuant to the provisions of House Concurrent Resolution 219, Eightieth Congress, announced his signature to enrolled bills and joint resolutions of the Senate as follows:

On June 22, 1948:

S. 418. An act to provide for water-pollution-control activities in the Public Health Service of the Federal Security Agency and in the Federal Works Agency, and for other purposes;

S. 595. An act to provide that the rates of compensation for disabilities incurred in active military or naval service other than in a period of war service shall be equal to 80 percent of the rates payable for similar disabilities incurred during active service in time of war;

S. 1243. An act to provide for the payment of revenues from certain lands into the tribal funds of the Confederated Tribes of the Warm Springs Reservation of Oregon, and for other purposes;

S. 1260. An act to create a commission to hear and determine the claims of certain motor carriers;

S. 1322. An act to provide a Federal charter for the Commodity Credit Corporation;

S. 1683. An act to confer jurisdiction on the State of New York with respect to offenses committed on Indian reservations within such State;

S. 1715. An act for the relief of Archie Hamilton and Delbert Hamilton;

S. 1717. An act for the relief of the estate of William R. Stigall, deceased;

S. 1969. An act to amend the Philippine Rehabilitation Act of 1946 in connection with the training of Filipinos as provided for in title III;

S. 2217. An act conferring jurisdiction upon the Court of Claims of the United States to hear, determine, and render judgment upon the joint claims of Silas Mason Co., Inc.; Walsh Construction Co.; and Atkinson-Kier Co.;

S. 2242. An act to authorize for a limited period of time the admission into the United States of certain European displaced persons for permanent residence, and for other purposes;

S. 2281. An act to provide for an air parcel-post service, and for other purposes;

S. 2371. An act validating certain conveyances of the Oregon Short Line Railroad Co. and the Union Pacific Railroad Co. and waiving, relinquishing, and disclaiming all title and all right of reverter and forfeiture of the United States of America to the lands described in said conveyance;

S. 2376. An act to provide a revolving fund for the purchase of agricultural commodities and raw materials to be processed in occupied areas and sold;

S. 2440. An act for the relief of Charles Duncan Montrieth;

S. 2554. An act to promote the common defense by providing for the retention and maintenance of a national reserve of industrial productive capacity, and for other purposes;

S. 2621. An act authorizing the extension of the functions and duties of Federal Prison Industries, Inc., to military disciplinary barracks;

S. 2655. An act to provide for the common defense by increasing the strength of the armed forces of the United States, including the Reserve components thereof, and for other purposes;

S. 2676. An act to authorize the Secretary of the Interior to convey a certain parcel of land in St. Louis County, Minn., to the University of Minnesota;

S. 2692. An act to terminate the retirement system of the Office of the Comptroller of the Currency, and to transfer that retirement fund to the Civil Service Retirement and Disability Fund;

S. 2698. An act to authorize the transfer of horses and equipment owned by the United States Army to the New Mexico Military Institution, a State institution, and for other purposes;

S. 2705. An act to reimburse the James & Phelps Construction Co.;

S. 2709. An act for the relief of Stefan Magura and Michal Magura;

S. 2730. An act to include as allowable service under the act of July 6, 1945, service performed in the military forces and on war transfer by employees in the field service of the Post Office Department;

S. 2743. An act providing for the more expeditious determination of certain claims filed by Ute Indians;

S. 2747. An act to amend the Canal Zone Code for the purpose of incorporating the Panama Railroad Company;

S. 2767. An act to provide assistance in the recruitment and distribution of farm labor for the increased production, harvesting, and preparation for market of agricultural commodities to meet domestic needs and foreign commitment;

S. 2794. An act to authorize the Administrator of Veterans' Affairs to prescribe the rates of pay for certain positions at field installations;

S. 2830. An act to extend for 2 years the authority to provide for the maintenance of a domestic tin-smelting industry;

S. 2849. An act to authorize the Administrator of Veterans' Affairs to convey a certain tract of land in the State of Arkansas to Washington County, Ark.;

S. 2861. An act to assist by grants-in-aid the Republic of the Philippines in providing medical care and treatment for certain veterans;

S. J. Res. 177. Joint resolution providing for participation by the Government of the United States in the Pan American Railway Congress, and authorizing an appropriation therefor; and

S. J. Res. 219. Joint resolution to continue until March 1, 1949, the authority of the United States Maritime Commission to make provision for certain ocean transportation service to, from, and within Alaska.

And on June 23, 1948, enrolled bills of the Senate as follows:

S. 165. An act for the relief of Doris E. Snyder;

S. 2790. An act to amend the Servicemen's Readjustment Act of 1944, as amended, and for other purposes; and

S. 2877. An act to amend the Reconstruction Finance Corporation Act, as amended.

BILLS AND JOINT RESOLUTIONS PRESENTED TO THE PRESIDENT AFTER ADJOURNMENT

Mr. LECOMPTE, from the Committee on House Administration, reported that that committee did on the following dates present to the President, for his approval, bills and joint resolutions of the House of the following titles:

On June 21, 1948:

H. R. 371. An act for the relief of Jenness C. Thomas;

H. R. 564. An act for the relief of Sarah Lee Cregg;

H. R. 700. An act for the relief of Anthony Arancio;

H. R. 703. An act for the relief of Leon Nikolaivich Volkov;

H. R. 851. An act for the relief of Adney W. Gray;

H. R. 911. An act for the relief of Kam Fong Chun, Mr. and Mrs. Jose Dias, Joseph de Souza, Mr. and Mrs. Kenneth Ayres, and Jose Oducado;

H. R. 912. An act for the relief of Hiro Higa and Kana Higa;

H. R. 915. An act to confer jurisdiction upon the District Court of the United States for the Territory of Hawaii to hear, determine, and render judgment on the claims of the executors and trustees of the estate of L. L. McCandless, deceased, as their interests may appear, against the United States of America;

H. R. 1076. An act for the relief of Chester O. Glenn;

H. R. 1409. An act for the relief of Frantisek Jiri Pavlik or Georg Pavlik;

H. R. 1490. An act for the relief of the United States Radiator Corp., of Detroit, Mich.;

H. R. 1642. An act for the relief of Miss Rosella M. Kostenbader;

H. R. 1220. An act for the relief of James D. Sigler and Frederick P. Vogelsand III;

H. R. 1733. An act for the relief of G. C. Hedrick;

H. R. 1734. An act for the relief of Gabel Construction Co.;

H. R. 1779. For the relief of the Winona Machine & Foundry Co., a corporation of Winona, Minn.;

H. R. 1780. An act for the relief of the Cannon Valley Milling Co.;

H. R. 1910. An act for the relief of the legal guardian of Robert Lee Threatt, a minor;

H. R. 1930. An act for the relief of the Growers Fertilizer Co., a Florida corporation;

H. R. 2096. An act to amend section 11 of the act approved June 5, 1942 (56 Stat. 817), relating to Mammoth Cave National Park in the State of Kentucky, and for other purposes;

H. R. 2192. An act for relief of the Massman Construction Co.;

H. R. 2193. An act for the relief of Robert E. Graham;

H. R. 2352. An act to provide for sale to the Crow tribe of interests in the estates of deceased Crow Indian allottees, and to provide for the sale of certain lands to the Board of County Commissioners of Comanche County, Okla., and for other purposes;

H. R. 2372. An act for the relief of George Cleve Williams;

H. R. 2395. An act for the relief of the Cypress Creek drainage district of the State of Arkansas;

H. R. 2431. An act for the relief of the estate of David Jefferson Janow, deceased;

H. R. 2489. An act for the relief of James W. Adkins and Mary Clark Adkins;

H. R. 2551. An act for the relief of William R. Ramsey;

H. R. 2552. An act for the relief of Thomas A. Hanley;

H. R. 2696. An act for the relief of Otto Kraus, receiver of the Neafie and Levy Ship & Engine Building Co.;

H. R. 2729. An act for the relief of the legal guardian of Rose Mary Ammirato, a minor;

H. R. 2732. An act for the relief of Dennis Stanton;

H. R. 2734. An act for the relief of Joseph M. Henry;

H. R. 2878. An act to amend the act approved May 18, 1928 (45 Stat. 602), as amended, to revise the roll of the Indians of California provided therein;

H. R. 2899. An act for the relief of Aubrey F. Houston;

H. R. 2918. An act for the relief of the Sumner County Colored Fair Association;

H. R. 3062. An act for the relief of the estate of Rudolph Maximilian Goepp, Jr.;

H. R. 3218. An act to authorize an emergency fund for the Bureau of Reclamation to assure the continuous operation of its irrigation and power systems;

H. R. 3261. An act for the relief of Capt. Carroll C. Garretson;

H. R. 3427. An act for the relief of Mrs. Mary H. Overall and Thomas I. Baker;

H. R. 3499. An act for the relief of Petrol Corp.;

H. R. 3566. An act to amend subsection (c) of section 19 of the Immigration Act of 1917, as amended, and for other purposes;

H. R. 3735. An act to authorize the Secretary of the Army to sell and convey to Okaloosa County, State of Florida, all the right title, and interest of the United States in and to a portion of Santa Rosa Island, Fla., and for other purposes;

H. R. 3937. An act for the relief of William C. Reese;

H. R. 3999. An act to authorize the Attorney General to adjudicate certain claims resulting from evacuation of certain persons of Japanese ancestry under military orders:

H. R. 4047. An act for the relief of Edmund Huppler;

H. R. 4071. An act to amend sections 301 (k) and 304 (a) of the Federal Food, Drug, and Cosmetic Act, as amended;

H. R. 4103. An act for the relief of Charles M. Davis;

H. R. 4199. An act for the relief of George Haniotis;

H. R. 4272. An act to provide for the procurement and supply of Government headstones or markers for unmarked graves of members of the armed forces dying in the service or after honorable discharge therefrom, and other persons, and for other purposes;

H. R. 4330. An act to authorize the Secretary of State to perform certain consular-type functions within the United States and its Territories and possessions;

H. R. 4367. An act authorizing the Hidalgo Bridge Co., its heirs, legal representatives, and assigns, to construct, maintain, and operate a railroad toll bridge across the Rio Grande, at or near Hidalgo, Tex.;

H. R. 4435. An act to amend the Civil Aeronautics Act of 1938 by redefining certain powers of the Administrator, by authorizing delegation of certain powers by the Civil Aeronautics Board to the Administrator, and for other purposes;

H. R. 4441. An act for the relief of the Williams J. Burns International Detective Agency;

H. R. 4452. An act for the relief of Douglas L. Craig;

H. R. 4462. An act authorizing the conveyance of certain lands in Park County, Wyo., to the State of Wyoming;

H. R. 4516. An act for the relief of the Moore Dry Dock Co., of Oakland, Calif.;

H. R. 4518. An act for the relief of Gerald S. Furman;

H. R. 4587. An act for the relief of Mrs. Harry A. Light (formerly Mrs. Elsie Purvey);

H. R. 4590. An act for the relief of Mrs. Loraine Thomsen;

H. R. 4635. An act to amend section 11 of an act entitled "An act to regulate barbers in the District of Columbia, and for other purposes";

H. R. 4644. An act for the relief of E. Brevard Walker, trading as E. B. Walker Lumber Co.;

H. R. 4690. An act to amend the act of July 30, 1947, permitting vessels of Canadian registry to transport certain merchandise between Hyder, Alaska, and points in the continental United States;

H. R. 4816. An act to amend section 624 of the Public Health Service Act so as to provide a minimum allotment of $100,000 to each State for the construction of hospitals;

H. R. 4856. An act to delay the liquidation of mineral interests reserved to the United States as required by the Farmers' Home Administration Act of 1946, and for other purposes;

H. R. 4881. An act for the relief of Dimitri Petrou;

H. R. 4962. An act to provide pensions for certain widows of veterans of the Spanish-American War, including the Boxer Rebellion and the Philippine Insurrection;

H. R. 5053. An act to provide for the establishment of the Independence National Historical Park, and for other purposes;

H. R. 5252. An act to extend the time for commencing the construction of a toll bridge across the Rio Grande at or near Rio Grande City, Tex.;

H. R. 5355. An act authorizing a per capita payment of $50 each to the members of the Red Lake Band of Chippewa Indians from the proceeds of the sale of timber and lumber on the Red Lake Reservation;

H. R. 5508. An act to amend the Veterans' Preference Act of 1944 to extend the benefits of such act to certain mothers of veterans;

H. R. 5710. An act to amend the act entitled "An act to expedite the provision of housing in connection with national defense, and for other purposes," approved October 14, 1940, as amended;

H. R. 5716. An act to record the lawful admission to the United States for permanent residence of Patricia Schwartz and Beatrice Schwartz;

H. R. 5734. An act to authorize the Administrator of Veterans' Affairs to convey to the city of Cheyenne, Wyo., for public-park and golf-course purposes, certain land situated within the boundaries of the Veterans' Administration center at Cheyenne, Wyo.;

H. R. 5750. An act to provide for the extension and improvement of post-office facilities at Los Angeles, Calif., and for other purposes;

H. R. 5861. An act to direct the Secretary of Agriculture to convey certain land to the State of Oklahoma;

H. H. 5886. An act to amend section 332 (a) of the Nationality Act of 1940;

H. R. 5888. An act to amend and supplement the Federal-Aid Road Act approved July 11, 1916 (39 Stat. 355), as amended and supplemented, to authorize appropriations for continuing the construction of highways, and for other purposes;

H. R. 6039. An act to authorize the permanent appointment in the Regular Army of one officer in the grade of general and to authorize the permanent appointment in the Regular Air Force of one officer in the grade of general, and for other purposes;

H. R. 6089. An act to amend the act of July 6, 1945 (Public Law 134);

H. R. 6090. An act authorizing the Secretary of the Interior to issue patents for lands held under color of title;

H. R. 6096. An act to provide for making available the Government-owned alcohol plants at Muscatine, Iowa; Kansas City, Mo.; and Omaha, Nebr., for the production of products from agricultural commodities in the furtherance of authorized programs of

the Department of Agriculture, and for other purposes;

H. R. 6116. An act to amend the Trading With the Enemy Act:

H. R. 6162. An act to make imported beer and other similar imported fermented liquors subject to the internal-revenue tax on fermented liquor;

H. R. 6184. An act for the relief of the East Coast Ship & Yacht Corp., of Noank, Conn.;

H. R. 6186. An act for reimbursement of the Hawaiian Dredging Co., Ltd.;

H. R. 6224. An act for the relief of John Watkins;

H. R. 6293. An act to amend the act of June 19, 1934, providing for the establishment of the National Archives, so as to provide that certain fees collected by the Archivist shall be available for disbursement in the interest of the National Archives;

H. R. 6318. An act to amend section 3 of the Standard Time Act of March 19, 1918, as amended, relating to the placing of a certain portion of the State of Idaho in the third time zone;

H. R. 6327. An act to provide for the issuance of a license to practice chiropractic in the District of Columbia to Samuel O. Burdette;

H. R. 6428. An act to reimburse the Luther Bros. Construction Co.;

H. R. 6452. An act to amend section 7 of the act entitled "An act making appropriations to provide for the government of the District of Columbia for the fiscal year ending June 30, 1903, and for other purposes," approved July 1, 1902, as amended;

H. R. 6454. An act to amend the Civil Service Retirement Act of May 29, 1930, as amended, to provide annuities for certain Federal employees who have rendered at least 20 years' service in the investigation, apprehension, or detention of persons suspected or convicted of offenses against the United States;

H. R. 6507. An act to amend subsection 602 (f) of the National Service Life Insurance Act of 1940, as amended, to authorize renewal of level premium term insurance for a second 5-year period, and for other purposes;

H. R. 6598. To amend section 2 of the act entitled "An act to provide for insanity proceedings in the District of Columbia," approved August 9, 1939;

H. R. 6633. An act to authorize an exchange of lands and interests therein between the city of San Diego, Calif., and the United States, and for other purposes;

H. R. 6634. An act to authorize the issuance of a special series of stamps in honor and commemoration of Moina Michael, originator of Flanders Field memorial poppy idea;

H. R. 6698. An act to authorize the course of instruction at the United States Naval Academy to be given to not exceeding four persons at a time from the Republic of the Philippines;

H. R. 6707. An act to amend the Office Personnel Act of 1947 (Public Law 381), 80th Cong.), and for other purposes;

H. R. 6818. An act to amend title X of the Social Security Act (relating to aid to the blind) so as to provide greater encouragement to blind recipients thereunder to become self-supporting;

H. R. 6822. An act to continue the authorization for the appointment of two additional Assistant Secretaries of State;

H. R. 6860. An act to amend the Federal Airport Act;

H. R. 6412. An act to codify and enact into law title 3 of the United States Code, entitled "The President";

H. R. 6419. An act authorizing the construction, repair, and preservation of certain public works on rivers and harbors for navigation, flood control, and for other purposes;

H. R. 6705. An act making appropriations for the Department of the Interior for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 6772. An act making appropriations for the Department of the Navy and the naval service for the fiscal year ending June 30, 1949, and for other purposes;

H. J. Res. 297. Joint resolution to increase the sum authorized to be appropriated for the presentation to Eire of a statute of Commodore John Barry;

H. J. Res. 421. Joint resolution to authorize and direct the Commissioners of the District of Columbia to investigate and study certain matters relating to parking lots in the District of Columbia;

H. J. Res. 427. Joint resolution correcting act establishing the Theodore Roosevelt National Memorial Park, as amended;

H. J. Res. 428. Joint resolution providing an extension of time for claiming credit or refund with respect to war losses; and

H. J. Res. 429. Joint resolution relating to the marital deduction, for estate-tax purposes, in the case of life insurance or annuity payments.

On June 23, 1948:

H. R. 333. An act for the relief of sundry residents of Alaska, veterans of World War II;

H. R. 2009. An act for the relief of the estate of Vito Abarno;

H. R. 2269. An act for the relief of Frank A. Constable;

H. R. 2798. An act to amend section 5, Home Owners' Loan Act of 1933, and for other purposes;

H. R. 3190. An act to revise, codify, and enact into positive law, title 18 of the United States Code, entitled "Crimes and Criminal Procedure";

H. R. 3416. An act to provide for the establishment of the Pensacola National Monument;

H. R. 4044. An act to amend the Trading With the Enemy Act, as amended; to create a commission to make an inquiry and report with respect to war claims; and to provide for relief of internees in certain cases;

H. R. 4917. An act to provide further benefits for certain employees of the United States who are veterans of World War II and lost opportunity for probational civil-service appointments by reason of their service in the armed forces of the United States, and who, due to service-connected disabilities, are unable to perform the duties of the positions for which examinations were taken;

H. R. 5416. An act to promote the interests of the Fort Hall Indian irrigation project, Idaho, and for other purposes;

H. R. 5882. An act to authorize the Secretary of the Army, the Secretary of the Navy, and the Secretary of the Air Force to donate excess and surplus property for educational purposes;

H. R. 5904. An act to continue the Virgin Islands Company as an agency of the United States;

H. R. 6248. An act to authorize the Secretary of Agriculture to stabilize prices of agricultural commodities; to amend section 22 of the Agricultural Adjustment Act, reenacted by the Agricultural Marketing Agreement Act of 1937; and for other purposes;

H. R. 6402. An act to provide for extension of the terms of office of the present members of the Atomic Energy Commission;

H. R. 6448. An act to authorize the Administrator of Veterans' Affairs to convey certain land in Tennessee to the city of Johnson City;

H. R. 6465. An act to amend and supplement section 2 of the act approved August 30, 1935, relating to the construction and financing of toll bridges over the Delaware River by the Delaware River Joint Toll Bridge Commission of the Commonwealth of Pennsylvania and the State of New Jersey;

H. R. 6481. An act making appropriations for Government corporations and independent executive agencies for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 6527. An act to provide assistance to certain local school agencies overburdened with war-incurred, or postwar national-defense-incurred enrollments;

H. R. 6641. An act to amend the Civil Service Retirement Act of May 29, 1930, to provide annuities for certain surviving spouses of annuitants retired prior to April 1, 1948;

H. R. 6771. An act making appropriations for military functions administered by the National Military Establishment for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 6801. An act making appropriations for foreign aid, and for other purposes;

H. R. 5808. An act to permit refund or credit to brewers of taxes paid on beer lost in bottling operations;

H. R. 6829. An act making supplemental appropriations for the Executive Office and sundry independent executive bureaus, boards, commissions, and offices, for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 6916. An act to provide for permanent postal rates and to provide pay increases for Government employees;

H. R. 6935. An act making appropriations to supply deficiencies in certain appropriations for the fiscal year ending June 30, 1948, and for other purposes;

H. J. Res. 190. Joint resolution authorizing the printing and binding of Cannon's Procedure in the House of Representatives and providing that the same shall be subject to copyright by the author;

H. J. Res. 305. Joint resolution authorizing the issuance of a special series of stamps commemorative of the fiftieth anniversary of the organization of the Rough Riders (First Volunteer United States Cavalry) of the Spanish-American War;

H. J. Res. 327. Joint resolution to authorize the issuance of a special series of stamps commemorative of Juliette Low, founder and organizer of Girl Scouting in the United States of America; and

H. J. Res. 433. Joint resolution permitting the free entry of certain articles imported to promote international good will, and for other purposes.

APPROVAL OF BILLS AND JOINT RESOLUTIONS AFTER ADJOURNMENT

A message from the President of the United States, received by the Clerk of the House, reported that on the following dates the President had approved and signed bills and joint resolutions of the House of the following titles:

On June 19, 1948:

H. R. 238. An act for the extension of admiralty jurisdiction;

H. R. 636. An act for the relief of W. A. Knox, W. L. M. Knox, and Frank C. Morris, operating as Knox Lumber Sales Co., of Thomson, Ga.;

H. R. 1222. An act for the relief of Mr. and Mrs. M. C. Lewis;

H. R. 1726. An act for the relief of Elsie L. Rosenow;

H. R. 1781. An act for the relief of Annie L. Taylor, and William Benjamin Taylor;

H. R. 1855. An act for the relief of Elbert Spivey;

H. R. 2062. An act for the relief of Mrs. Carrie M. Lee;

H. R. 2273. An act to amend the act of May 29, 1944, providing for the recognition of the services of the civilian officials and employees, citizens of the United States, engaged in and about the construction of the Panama Canal;

H. R. 2479. An act for the relief of Hardy H. Bryant;

H. R. 2684. An act for the relief of sundry fruit growers of the State of Delaware who sustained losses as the result of the fumigation of apples with methyl bromide in order to comply with the requirements of the

United States Department of Agriculture relating to the Japanese beetle quarantine;

H. R. 2721. An act to amend the act of March 10, 1934, entitled "an act to promote the conservation of wildlife, fish, and game, and for other purposes," as amended by the act approved August 14, 1946;

H. R. 2916. An act for the relief of Walter Vandahl and Esther S. Vandahl, Allabrada Adams, Mrs. Lucile L. Rrice Talbot, Mrs. Gladys Webb, and John E. Webb;

H. R. 2922. An act for the relief of Charles B. Featherstone;

H. R. 3007. An act for the relief of Ernest F. Lutzken;

H. R. 3114. An act for the relief of the estate of John Deiman;

H. R. 3159. An act for the relief of Mrs. Mae H. Fitzgerald;

H. R. 3260. An act for the relief of Clarence S. Osika;

H. R. 3352. An act for the relief of Emeline Latigue;

H. R. 3402. An act to extend the authorized maturity date of certain bridge revenue bonds to be issued in connection with the refunding of the acquisition cost of the bridge across the Missouri River at Rulo, Nebr.;

H. R. 3433. An act to amend the act entitled "An act to classify the officers and members of the Fire Department of the District of Columbia, and for other purposes," approved June 20, 1906, and for other purposes;

H. R. 3500. An act for the relief of Lester L. Elder and Mrs. Esther E. Elder;

H. R. 3641. An act for the relief of Mrs. Helen E. Scofield;

H. R. 3883. An act to authorize and direct the Secretary of the Army to transfer to the Territory of Alaska the title to the Army vessel *Hygiene;*

H. R. 3915. An act to increase the size of the Arkansas-Mississippi Bridge Commission, and for other purposes;

H. R. 4244. An act to authorize assistance to certain veterans in acquiring specially adapted housing which they require by reason of the nature of their service-connected disabilities;

H. R. 4455. An act to authorize the conveyance by the Secretary of the Interior to the Richmond, Fredericksburg & Potomac Railroad Co., of certain lands lying in the bed of Roaches Run, Arlington County, Va., and for other purposes;

H. R. 4663. An act to confer jurisdiction upon the District Court of the United States for the Middle District of Georgia to hear, determine, and render judgment on the claims of the owners of the fee-simple titles and leasehold interests in lands leased to the United States by the city of Macon, Ga., for use as a part of the site of Camp Wheeler, Ga.;

H. R. 4688. An act to enlarge the Gettysburg National Cemetery;

H. R. 4830. An act for the relief of Cooperative for American Remittances to Europe, Inc.;

H. R. 4874. An act to transfer Pelican Rock in Crescent City Harbor, Del Norte County, Calif., to that county;

H. R. 5065. An act to amend section 1700 (a) (1) of the Internal Revenue Code so as to exempt hospitalized servicemen and veterans from the admissions tax when admitted free;

H. R. 5112. An act to amend the Civil Service Retirement Act of May 29, 1930, as amended;

H. R. 5147. An act authorizing the Secretary of the Interior to issue a patent in fee to Florence A. W. Arens;

H. R. 5174. An act to authorize Commodity Credit Corporation to make adjustment payments to certain producers of raw cane sugar in Puerto Rico and Hawaii;

H. R. 5344. An act to prevent retroactive checkage of retired pay in the cases of certain enlisted men and warrant officers appointed or advanced to commissioned rank or grade under the act of July 24, 1941 (55 Stat. 603), as amended, and for other purposes;

H. R. 5330. An act for the relief of W. W. DeLoach;

H. R. 5655. An act confirming the claim of Juan Berrar to certain lands in the State of Louisiana, county of Attakapas, now parish of St. Martin, said claim being listed as No. B-690 in the report of the commissioners dated June 1811, so as to include section 2, township 11 south, range 6 east, Louisiana meridian, containing one hundred and thirty-nine and sixty-two one-hundredths acres;

H. R. 5758. An act to amend further the Armed Forces Leave Act of 1946, as amended, to permit certain payments to be made to surviving brothers and sisters, and nieces and nephews, of deceased members and former members of the armed forces;

H. R. 5808. An act to continue a system of nurseries and nursery schools for the day care of school-age and under-school-age children of the District of Columbia;

H. R. 5820. An act to aid in the development of improved prosthetic appliances, and for other purposes;

H. R. 5883. An act making appropriations for the Department of Agriculture (exclusive of the Farm Credit Administration) for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 5889. An act to extend the provisions of title VI of the Public Health Service Act to the Virgin Islands;

H. R. 5891. An act to repeal an act approved August 24, 1894, entitled "An act to authorize the purchasers of the property and franchises of the Choctaw Coal & Railway Co. to organize a corporation, and to confer upon the same all the powers, privileges, and franchises vested in that company," and all acts amendatory thereof and supplemental thereto;

H. R. 5957. An act to provide for the establishment of the Fort Vancouver National Monument, in the State of Washington, to include the site of the old Hudson's Bay Co. stockade, and for other purposes;

H. R. 5983. An act to amend section 202 of title II of the Army-Navy Medical Services Corps Act of 1947, as amended, to remove the present restriction on appointments to the Navy Medical Service Corps;

H. R. 6073. An act to provide for the acquisition of lands for grazing and related purposes;

H. R. 6110. An act to permit the landing of halibut by Canadian fishing vessels to Alaskan ports, and for other purposes;

H. R. 6113. An act to transfer certain land in Langlade County, Wis., to the United States Forest Service;

H. R. 6114. An act to amend title I of the Bankhead-Jones Farm Tenant Act, as amended, so as to increase the interest rate on title I loans, to provide for the redemption of nondelinquent insured mortgages, to authorize advances for the preservation and protection of the insured loan security, and for other purposes;

H. R. 6229. An act to authorize the extension of leases of certain land in the Territory of Hawaii;

H. R. 6234. An act to authorize the establishment of internships in the Department of Medicine and Surgery of the Veterans' Administration;

H. R. 6252. An act to authorize the issuance of a land patent to certain public lands, situated in the county of Kauai, Territory of Hawaii, for school purposes;

H. R. 6339. An act to amend the provisions of title VI of the Public Health Service Act relating to standards of maintenance and operation for hospitals receiving aid under that title;

H. R. 6430. An act making appropriations for the government of the District of Columbia and other activities chargeable in whole or in part against the revenues of such District for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 6489. An act to provide for the temporary free importation of lead;

H. R. 6716. An act to authorize the Administrator of Veterans' Affairs to transfer a portion of the Veterans' Administration center at Los Angeles, Calif., to the State of California for the use of the University of California; and

H. R. 6758. An act making supplemental appropriations for the Treasury and Post Office Departments for the fiscal year ending June 30, 1949, and for other purposes.

On June 21, 1948:

H. R. 633. An act for the relief of Mrs. Myrtle Hovde;

H. R. 6368. An act to provide for the issuance of a special postage stamp in commemoration of the dedication of the Palomar Mountain Observatory.

On June 22, 1948:

H. R. 929. An act for the relief of Ernest L. Godfrey;

H. R. 4964. An act to preserve seniority rights of 10-point preference eligibles in the postal service transferring from the position of letter carrier to clerk or from the position of clerk to letter carrier;

H. R. 5071. An act to extend the public land laws of the United States to certain lands, consisting of islands, situated in the Red River in Oklahoma; and

H. R. 5272. An act relating to the compensation of certain railway postal clerks;

H. R. 5822. An act to establish the Saratoga National Historical Park, in the State of New York, from the lands that have been acquired by the Federal Government for that purpose pursuant to the act of June 1, 1938 (52 Stat. 608), and for other purposes;

H. R. 6239. An act to provide for the suspension of annual assessment work on mining claims held by location in the Territory of Alaska;

H. R. 6246. An act to authorize the transfer of certain Federal lands within the Chopawamsic Park to the Secretary of the Navy, the addition of lands surplus to the Department of the Army to this park, the acquisition of additional lands needed to round out the boundaries of this park, to change the name of said park to Prince William Forest Park, and for other purposes; and

H. R. 6289. An act to provide for the voluntary admission and treatment of mental patients at St. Elizabeths Hospital.

On June 23, 1948:

H. R. 2588. An act requiring all mails consigned to an airport from a post office or branch, or from an airport to a post office or branch, within a radius of 35 miles of a city in which there has been established a Government-owned vehicle service to be delivered by Government-owned motor vehicles; and

H. R. 6766. An act to amend the Railroad Retirement Act of 1937, as amended, and the Railroad Unemployment Insurance Act, as amended, and for other purposes.

On June 24, 1948:

H. R. 239. An act to further perfect the consolidation of the Lighthouse Service with the Coast Guard;

H. R. 2867. An act to permit, subject to certain conditions, mining locations under the mining laws of the United States within that portion of the Harney National Forest, designated as a game sanctuary, and for other purposes;

H. R. 3889. An act to amend Veterans Regulation No. 1 (a), parts I and II, as amended, to establish a presumption of service connection for chronic and tropical diseases;

H. R. 4071. An act to amend sections 301 (k) and 304 (a) of the Federal Food, Drug, and Cosmetic Act, as amended;

H. R. 4047. An act for the relief of Edmund Huppler;

H. R. 4516. An act for the relief of the Moore Dry Dock Co., of Oakland, Calif.;

H. R. 4962. An act to provide pensions for certain widows of veterans of the Spanish-American War, including the Boxer Rebellion and the Philippine Insurrection;

H. R. 5036. An act to authorize the attendance of the United States Marine Corps Band at the national assembly of the Marine Corps League to be held at Milwaukee, Wis., September 22 to September 25, inclusive, 1948;

H. R. 5275. An act to amend the Tariff Act of 1930 to provide for the free importation of limestone to be used in the manufacture of fertilizer;

H. R. 5936. An act to provide for the addition of certain surplus Government lands to the Chickamauga and Chattanooga National Military Park, in the States of Georgia and Tennessee, and for other purposes;

H. R. 6318. An act to amend section 3 of the Standard Time Act of March 19, 1918, as amended, relating to the placing of a certain portion of the State of Idaho in the third time zone;

H. R. 6771. An act making appropriations for military functions administered by the National Military Establishment for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 6822. An act to continue the authorization for the appointment of two additional Assistant Secretaries of State;

H. R. 6188. An act to confer jurisdiction over the Fort Des Moines Veterans' Village upon the State of Iowa;

H. R. 6698. An act to authorize the course of instruction at the United States Naval Academy to be given to not exceeding four persons at a time from the Republic of the Philippines;

H. R. 6726. An act to amend the Public Health Service Act to provide for, foster, and aid in coordinating research relating to dental diseases and conditions, and for other purposes; and

H. R. 6772. An act making appropriations for the Department of the Navy and the naval service for the fiscal year ending June 30, 1949, and for other purposes.

On June 25, 1948:

H. R. 564. An act for the relief of Sarah Lee Cregg;

H. R. 700. An act for the relief of Anthony Arancio;

H. R. 912. An act for the relief of Hiro Higa and Kana Higa;

H. R. 945. An act relating to the payment of fees, expenses, and costs of jurors;

H. R. 1409. An act for the relief of Frantisek Jiri Pavlik or Georg Pavlik;

H. R. 1642. An act for the relief of Miss Rosella M. Kostenbader;

H. R. 2009. An act for the relief of the estate of Vito Abarno;

H. R. 2193. An act for the relief of Robert E. Graham;

H. R. 2431. An act for the relief of the estate of David Jefferson Janow, deceased;

H. R. 2734. An act for the relief of Joseph M. Henry;

H. R. 2766. An act to amend section 2 of an act, entitled, "An act to provide for the establishment of a probation system in the United States courts, except in the District of Columbia," approved March 4, 1925, as amended (18 U. S. C. 725);

H. R. 3190. An act to revise, codify, and enact into positive law, title 18 of the United States Code, entitled "Crimes and Criminal Procedure";

H. R. 3214. An act to revise, codify, and enact into law title 28 of the United States Code entitled "Judicial Code and Judiciary";

H. R. 3427. An act for the relief of Mrs. Mary H. Overall and Thomas I. Baker;

H. R. 4114. An act to amend the Public Health Service Act to permit certain expenditures, and for other purposes;

H. R. 4298. An act for the relief of Henry Hill;

H. R. 4452. An act for the relief of Douglas L. Craig;

H. R. 4566. An act for the relief of William Nally;

H. R. 4587. An act for the relief of Mrs. Harry A. Light (formerly Mrs. Elsie Purvey);

H. R. 4518. An act for the relief of Gerald S. Furman;

H. R. 4659. An act to ratify and confirm amendments to certain contracts for the furnishing of petroleum products to the United States;

H. R. 4881. An act for the relief of Dimitri Petrou;

H. R. 5524. An act making appropriations for civil functions administered by the Department of the Army for the fiscal year ending June 30, 1949, and for other purposes;

H. R. 5886. An act to amend section 332 (a) of the Nationality Act of 1940;

H. R. 6293. An act to amend the act of June 19, 1934, providing for the establishment of the National Archives, so as to provide that certain fees collected by the Archivist shall be available for disbursement in the interest of the National Archives;

H. R. 6327. An act to provide for the issuance of a license to practice chiropractic in the District of Columbia to Samuel O. Burdette;

H. R. 6412. A act to codify and enact into law title 3 of the United States Code, entitled "The President";

H. R. 6641. An act to amend the Civil Service Retirement Act of May 29, 1930, to provide annuities for certain surviving spouses of annuitants retired prior to April 1, 1948;

H. R. 6935. An act making appropriations to supply deficiencies in certain appropriations for the fiscal year ending June 30, 1948, and for other purposes;

H. J. Res. 297. Joint resolution to increase the sum authorized to be appropriated for the presentation to Eire of a statue of Commodore John Barry; and

H. J. Res. 433. Joint resolution permitting the free entry of certain articles imported to promote international good will, and for other purposes.

On June 26, 1948:

H. R. 2551. An act for the relief of William R. Ramsey;

H. R. 2732. An act for the relief of Dennis Stanton;

H. R. 3218. An act to authorize an emergency fund for the Bureau of Reclamation to assure the continuous operation of its irrigation and power systems;

H. R. 3937. An act for the relief of William C. Reese;

H. R. 6039. An act to authorize the permanent appointment in the Regular Army of one officer in the grade of general and to authorize the permanent appointment in the Regular Air Force of one officer in the grade of general, and for other purposes;

H. R. 6224. An act for the relief of John Watkins;

H. R. 6556. An act to extend the authority of the President under section 350 of the Tariff Act of 1930, as amended, and for other purposes; and

H. J. Res. 190. Joint resolution authorizing the printing and binding of Cannon's Procedure in the House of Representatives and providing that the same shall be subject to copyright by the author.

On June 28, 1948:

H. R. 371. An act for the relief of Jenness C. Thomas;

H. R. 1076. An act for the relief of Chester O. Glenn;

H. R. 1220. An act for the relief of James D. Sigler and Frederick P. Vogelsand III;

H. R. 2269. An act for the relief of Frank A. Constable;

H. R. 4330. An act to authorize the Secretary of State to perform certain consular-type functions within the United States and its Territories and possessions;

H. R. 4367. An act authorizing the Hidalgo Bridge Co., its heirs, legal representatives, and assigns, to construct, maintain, and operate a railroad toll bridge across the Rio Grande, at or near Hidalgo, Tex.;

H. R. 4635. An act to amend section 11 of an act entitled "An act to regulate barbers in the District of Columbia, and for other purposes";

H. R. 4690. An act to amend the act of July 30, 1947, permitting vessels of Canadian registry to transport certain merchandise between Hyder, Alaska, and points in the continental United States;

H. R. 4917. An act to provide further benefits for certain employees of the United States who are veterans of World War II and lost opportunity for probational civil-service appointments by reason of their service in the armed forces of the United States, and who, due to service-connected disabilities, are unable to perform the duties of the positions for which examinations were taken;

H. R. 5053. An act to provide for the establishment of the Independence National Historical Park, and for other purposes;

H. R. 5710. An act to amend the act entitled "An act to expedite the provision of housing in connection with national defense, and for other purposes," approved October 14, 1940, as amended;

H. R. 5716. An act to record the lawful admission to the United States for permanent residence of Patricia Schwartz and Beatrice Schwartz;

H. R. 6448. An act to authorize the Administrator of Veterans' Affairs to convey certain land in Tennessee to the city of Johnson City;

H. R. 6707. An act to amend the Officer Personnel Act of 1947 (Public Law 381, 80th Cong.), and for other purposes; and

H. R. 6801. An act making appropriations for foreign aid, and for other purposes.

On June 29, 1948:

H. R. 333. An act for the relief of sundry residents of Alaska, veterans of World War II;

H. R. 703. An act for the relief of Leon Nikolaivich Volkov;

H. R. 911. An act for the relief of Kam Fong Chun, Mr. and Mrs. Jose Dias, Joseph De Souza, Mr. and Mrs. Kenneth Ayres, and Jose Oducado;

H. R. 915. An act to confer jurisdiction upon the District Court of the United States for the Territory of Hawaii to hear, determine, and render judgment on the claims of the executors and trustees of the estate of L. L. McCandless, deceased, as their interests may appear, against the United States of America;

H. R. 1930. An act for the relief of the Growers Fertilizer Co., a Florida corporation;

H. R. 2239. An act to amend section 13 (a) of the Surplus Property Act of 1944, as amended;

H. R. 2372. An act for the relief of George Cleve Williams;

H. R. 2395. An act for the relief of the Cypress Creek Drainage District of the State of Arkansas;

H. R. 2744. An act to provide for the elimination of Regular Army and Regular Air Force officers and for the retirement of officers, warrant officers, and enlisted men of the Regular Army and the Regular Air Forces, and to provide retirement benefits for members of the Reserve components of the Army of the United States, the Air Force of the United States, United States Navy and Marine Corps, and Coast Guard;

H. R. 2918. An act for the relief of the Sumner County Colored Fair Association;

H. R. 4103. An act for the relief of Charles M. Davis;

H. R. 4816. An act to amend section 624 of the Public Health Service Act so as to provide a minimum allotment of $100,000 to each State for the construction of hospitals;

H. R. 5734. An act to authorize the Administrator of Veterans' Affairs to convey to the city of Cheyenne, Wyo., for public-park and

## HISTORY OF BILLS ENACTED INTO PUBLIC LAW (80TH CONG., 2D SESS.)—Continued

| Title | Bill No. | Date introduced | Committees—hearings | | Date reported | | Report No. | | Page of Congressional Record of passage | | Date of passage | | Public law | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | House | Senate | House | Senate | House | Senate | House | Senate | House | Senate | Date approved | No. |
| To amend the Railroad Retirement Act of 1937, to increase certain annuities, and the Railroad Unemployment Insurance Act with respect to taxes levied thereunder. | H. R. 6766 (S. 2782) | June 1 | IFC* | LPW | June 2 | June 9 | 2154 | 1574 | 7436 | 7933 | June 8 | June 12 | June 23 | 744 |
| Amending District of Columbia Code, relative to admissibility of testimony. | S. 1266 | May 12, 1947 | DC | DC | June 3 | May 29, 1947 | 2188 | 212 | 7455 | 7010 | June 8 | June 16, 1947 | June 24 | 745 |
| To increase salary of Coordinator of Federal Agencies in Puerto Rico. | S. 2508 | Apr. 15 | PL | IIA | June 4 | May 12 | 2208 | 1279 | 8484 | 6294 | June 16 | May 24 | June 24 | 746 |
| Permitting mining locations under United States mining laws within the game sanctuary of the Harney National Forest. | H. R. 2867 | Mar. 31, 1947 | PL | IIA | July 14, 1947 | June 11 | 912 | 1597 | 9596 | 7944 | July 21, 1947 | June 12 | June 24 | 747 |
| To amend Veterans Regulation No. 1 (a), pts. I and II, to establish a presumption of service connection for chronic and tropical diseases. | H. R. 3889 | June 18, 1947 | VA | Fin* | July 8, 1947 | June 7 | 808 | 1536 | 9609 | 7924 | July 21, 1947 | June 12 | June 24 | 748 |
| To amend the Food and Drug Act, to authorize seizure of adulterated or misbranded products. | H. R. 4071 | July 2, 1947 | IFC | IFC* | July 8, 1947 | Apr. 30 | 807 | 1221 | 134 | 8239 | Jan. 13 | June 15 | June 24 | 749 |
| To permit free entry of crude or broken limestone to be used in manufacture of fertilizer. | H. R. 5275 | Feb. 4 | WM | Fin | Feb. 23 | Apr. 15 | 1415 | 1129 | 1610 | 8238 | Feb. 24 | June 15 | June 24 | 750 |
| Conferring jurisdiction over Fort Des Moines Veterans' Village upon the State of Iowa. | H. R. 6188 | Apr. 12 | PW* | PW | Apr. 15 | June 10 | 1747 | 1585 | 5199 | 7941 | May 3 | June 12 | June 24 | 751 |
| Relative to admission of Filipinos to the U. S. Naval Academy. | H. R. 6698 | May 25 | AS* | AS | June 8 | June 17 | 2258 | 1766 | 8489 | 8755 | June 16 | June 18 | June 24 | 752 |
| Navy appropriations for 1949 | H. R. 6772 | June 2 | App* | App* | June 2 | June 14 | 2135 | 1621 | 7073 | 8301 | June 3 | June 15 | June 24 | 753 |
| To ratify contract for purchase of certain mineral land from the Choctaw and Chickasaw Indians. | S. J. Res. 203 (H. J. Res. 363) | Apr. 2 | PL | IIA | May 5 | May 10 | 1868 | 1266 | 8214 | 6290 | June 14 | May 24 | June 24 | 754 |
| Providing for a National Institute of Dental Research. | H. R. 6726 (S. 176) | May 27 | IFC* | LPW | June 2 | July 7, 1947 | 2158 | 436 | 7415 | 7934 | June 8 | June 12 | June 24 | 755 |
| To provide for the issuance of free passes on railroads to official watch inspectors. | S. 2192 | Feb. 20 | IFC | IFC | June 17 | June 8 | 2394 | 1538 | 8954 | 7924 | June 18 | June 12 | June 24 | 756 |
| To increase certain benefits payable under the Longshoremen's and Harbor Workers' Compensation Act. | S. 2237 (H. R. 6647) | Feb. 27 | EdL | LPW* | June 1 | May 17 | 2095 | 1315 | 7397 | 6302 | June 8 | May 24 | June 24 | 757 |
| To clarify the position of Air Force Secretary and to authorize Secretaries of Army, Navy, Air Force, and Secretary of Defense to establish certain positions in professional and scientific service. | S. 2505 | Apr. 15 | POCS | AS | June 11 | May 26 | 2306 | 1408 | 8494 | 6778 | June 16 | June 1 | June 24 | 758 |
| Selective Service Act of 1948 | S. 2655 (H. R. 6401) | May 12 | AS | AS* | May 7 | May 12 | 1881 | 1268 | 8828 | 7681 | June 18 | June 10 | June 24 | 759 |
| To authorize lease of certain space in Lafayette Building in the District of Columbia by FWA. | S. 2706 | May 19 | ........ | PW | ........ | June 12 | ........ | 1614 | 8947 | 8721 | June 18 | June 18 | June 24 | 760 |
| Relative to consolidation of the Lighthouse Service with the Coast Guard. | H. R. 239 | Jan. 3, 1947 | MMF | IFC | Apr. 23, 1947 | June 11 | 294 | 1594 | 5055 | 7942 | May 12, 1947 | June 12 | June 24 | 761 |
| Providing pensions for certain widows of Spanish-American War veterans. | H. R. 4962 | Jan. 14 | VA | Fin | June 11 | June 17 | 2316 | 1747 | 8495 | 8754 | June 16 | June 18 | June 24 | 762 |
| To authorize Marine Band attendance at 1948 national assembly of the Marine Corps League. | H. R. 5036 (S. 2064) | Jan. 20 | AS* | AS | June 2 | June 8 | 2150 | 1541 | 7414 | 7926 | June 8 | June 12 | June 24 | 763 |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Addition of certain surplus Federal lands to the Chickamauga and Chattanooga Military Park, Ga., and Tenn. | H. R. 5936 | Mar. 22 | PL | IIA | May 5 | June 11 | 1862 | 1600 | 5995 | 7944 | May 18 | June 12 | June 24 | 764 |
| To amend the Standard Time Act relative to placing a certain portion of the State of Idaho in the third time zone. | H. R. 6318 (S. 2547) | Apr. 22 | IFC* | IFC | May 12 | May 13 | 1948 | 1287 | 6010 | 8239 | May 18 | June 15 | June 24 | 765 |
| National military appropriations for 1949 | H. R. 6771 | June 2 | App* | App* | June 2 | June 17 | 2135 | 1763 | 6957 | 8618 | June 2 | June 17 | June 24 | 766 |
| To extend for 1 year the terms of two additional Assistant Secretaries of State. | H. R. 6822 (S. 2869) | June 7 | FA | FR | June 8 | June 15 | 2257 | 1683 | 8489 | 8727 | June 16 | June 18 | June 24 | 767 |
| To provide annuities for certain surviving spouses of annuitants retired prior to Apr. 1, 1948. | H. R. 6641 (S. 2740) | May 20 | POCS | POCS | June 11 | June 15 | 2309 | 1685 | 8494 | 8728 | June 16 | June 18 | June 25 | 768 |
| To authorize free entry of certain railroad equipment under certain conditions from France. | H. J. Res. 433 | June 18 | WM | | | | | | 9222 | 9098 | June 19 | June 19 | June 25 | 769 |
| Confirming certain oil contracts negotiated by Treasury. | H. R. 4659 (S. 1857) | Dec. 8, 1947 | Jud | BC | May 28 | June 9 | 2077 | 1560 | 7390 | 7930 | June 8 | June 12 | June 25 | 770 |
| To codify Title 3 of the United States Code, entitled "The President." | H. R. 6412 | Apr. 30 | Jud | Jud | May 10 | June 14 | 1898 | 1623 | 6000 | 8722 | May 18 | June 18 | June 25 | 771 |
| To codify Title 18 of the United States Code entitled "Crimes and Criminal Procedure." | H. R. 3190 | Apr. 24, 1947 | Jud | Jud | Apr. 24, 1947 | June 14 | 304 | 1620 | 5048 | 8722 | May 12, 1947 | June 18 | June 25 | 772 |
| To codify Title 28 of the United States Code, entitled "Judicial Code and Judiciary." | H. R. 3214 | Apr. 25, 1947 | Jud | Jud | Apr. 25, 1947 | June 9 | 308 | 1559 | 8392 | 7930 | July 7, 1947 | June 12 | June 25 | 773 |
| To authorize admission of displaced persons | S. 2242 (H. R. 6396) | Mar. 2 | Jud* | Jud | May 4 | Mar. 2 | 1854 | 950 | 7888 | 6916 | June 11 | June 2 | June 25 | 774 |
| To provide for military justice within the Air Force. | S. 2401 (H. R. 5937) | Mar. 29 | AS | AS | June 8 | June 8 | 2263 | 1542 | 8492 | 7925 | June 16 | June 12 | June 25 | 775 |
| To amend the Organic Act of Puerto Rico | S. 2675 | May 17 | PL | IIA | June 4 | May 27 | 2210 | 1418 | 8484 | 6782 | June 16 | June 1 | June 25 | 776 |
| Fixing the rank of the assistant to the Chief of Engineers in charge of river and harbor and flood-control improvements. | S. 2770 (H. R. 6751) | May 28 | AS | AS | June 8 | June 2 | 2256 | 1451 | 8498 | 7696 | June 16 | June 10 | June 25 | 777 |
| Increasing the sum to $30,000 for statue of Commodore John Barry for presentation to Eire. | H. J. Res. 297 | Jan. 15 | FA | FR | May 18 | June 17 | 1972 | 1760 | 7381 | 8754 | June 8 | June 18 | June 25 | 778 |
| Relative to pay of jurors in the United States courts. | H. R. 945 (S. 19) | Jan. 14, 1947 | Jud | Jud* | June 2 | June 7 | 2162 | 1510 | 7418 | 7945 | June 8 | June 12 | June 25 | 779 |
| Relative to probation system in United States courts. | H. R. 2766 | Mar. 25, 1947 | Jud | Jud | May 11 | June 8 | 1923 | 1544 | 6007 | 7926 | May 18 | June 12 | June 25 | 780 |
| Authorizing certain expenditures from appropriations of the Public Health Service. | H. R. 4114 | July 8, 1947 | IFC | LPW | May 11 | June 9 | 1927 | 1578 | 6008 | 7933 | May 18 | June 12 | June 25 | 781 |
| Army-civil functions appropriations for 1949 | H. R. 5524 | Feb. 24 | App* | App* | Feb. 24 | Apr. 23 | 1420 | 1167 | 1772 | 6096 | Feb. 26 | May 19 | June 25 | 782 |
| To amend the Nationality Act of 1940 relative to petition for citizenship. | H. R. 5886 | Mar. 17 | Jud | Jud | Apr. 6 | June 15 | 1661 | 1641 | 6012 | 8723 | May 18 | June 18 | June 25 | 783 |
| Providing that certain fees collected by the Archivist shall be available for disbursement in the interest of the National Archives. | H. R. 6293 | Apr. 21 | POCS | POCS | May 11 | June 15 | 1938 | 1687 | 7380 | 8727 | June 8 | June 18 | June 25 | 784 |
| Second deficiency appropriations for 1948 | H. R. 6935 | June 15 | App* | App* | June 15 | June 19 | 2348 | 1769 | 8461 | 9054 | June 16 | June 19 | June 25 | 785 |
| Authorizing the Coast Guard to maintain aids to navigation. | S. 1853 | Dec. 10, 1947 | MMF | IFC* | May 7 | Mar. 31 | 1878 | 1043 | 5996 | 4288 | May 18 | Apr. 12 | June 26 | 786 |
| Relating to yachts belonging to yacht clubs | S. 2186 | Feb. 20 | MMF | IFC | June 17 | May 27 | 2397 | 1415 | 8957 | 6781 | June 18 | June 1 | June 26 | 787 |
| Acceptance of statue of Gen. Jose Gervasio Artigas from Uruguay. | S. 2591 | Apr. 30 | HA | PW | June 18 | June 2 | 2402 | 1439 | 8837 | 7693 | June 18 | June 10 | June 26 | 788 |
| Authorizing the printing and binding of Cannon's House Procedure. | H. J. Res. 190 | May 6, 1947 | HA | RAdm | May 14, 1947 | June 19 | 382 | 1770 | 5279 | 9056 | May 14, 1947 | June 19 | June 26 | 789 |
| To authorize an emergency fund for the Bureau of Reclamation to assure the continuous operation of its irrigation and power systems. | H. R. 3218 | Apr. 25, 1947 | PL | IIA | July 10, 1947 | June 4 | 860 | 1493 | 317 | 7701 | Jan. 19 | June 10 | June 26 | 790 |
| Authorizing permanent appointment in each the Regular Army and Regular Air Force of one officer in the grade of general. | H. R. 6039 | Mar. 30 | AS | AS | Apr. 14 | June 17 | 1734 | 1764 | 4644 | 8755 | Apr. 20 | June 18 | June 26 | 791 |

*Printed hearings.

80TH CONGRESS 1st Session } HOUSE OF REPRESENTATIVES { REPORT No. 304

# REVISION OF TITLE 18, UNITED STATES CODE

APRIL 24, 1947.—Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

Mr. ROBSION, from the Committee on the Judiciary, submitted the following

## REPORT

[To accompany H. R. 3190]

The Committee on the Judiciary submits the following report in explanation of the accompanying bill entitled "A bill to revise, codify, and enact into positive law, title 18 of the United States Code, entitled 'Crimes and Criminal Procedure.'" The present bill has been substituted for an earlier bill [H. R. 1600] on which hearings were held, and contains changes recommended by the subcommittee.

### PRELIMINARY STATEMENT

#### SCOPE OF REVISION

The starting point in this revision was the Criminal Code of 1909. To that were added those criminal provisions in other titles of the United States Code which could be transferred without injury to the text of such titles, and with due regard to maintaining the framework of the official United States Code prepared for Congress in 1926 by the former Committee on Revision of Laws of the House and enacted by Congress June 30, 1926.

This revision includes all applicable criminal laws in effect April 15, 1947.

Before actual revision was begun a scientific plant was assembled. This included:

1. The complete text of title 18, United States Code, 1940 edition.
2. Criminal provisions from other titles of the code pertinent to this revision.
3. Applicable constructions of the courts.
4. Notes based upon a careful examination of the Code of Federal Regulations and law review articles.
5. Exhaustive historical notes.

79th Congress, 2d Session - - - - - - - House Document No. 769

# CONSTITUTION
# JEFFERSON'S MANUAL
AND
# RULES OF THE HOUSE OF REPRESENTATIVES
OF THE UNITED STATES
EIGHTIETH CONGRESS

By
LEWIS DESCHLER
PARLIAMENTARIAN



[illegible] LIBRARY
Austin, Texas

UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1947

## HOUSE RESOLUTION NO. 674

IN THE HOUSE OF REPRESENTATIVES

*July 12, 1946.*

*Resolved*, That a revised edition of the Rules and Manual of the House of Representatives for the Eightieth Congress be printed as a House document, and that one thousand six hundred additional copies shall be printed and bound for the use of the House of Representatives, of which seven hundred copies shall be bound in leather with thumb index and delivered as may be directed by the Parliamentarian of the House for distribution to officers and Members of Congress.

Attest:

SOUTH TRIMBLE,
*Clerk.*

# PREFACE

The parliamentary practice of the House of Representatives emanates from four sources: First, the Constitution of the United States; second, from Jefferson's Manual; third, from the rules adopted by the House itself from the beginning of its existence; and, fourth, from the decisions of the Speakers of the House and from decisions of the Chairmen of the Committee of the Whole.

In the early history of the House the membership of that body frequently found it difficult to accomplish the purposes upon which they had determined. The Constitution directed the House to do certain things in a specified manner, and to do things not set forth specifically it gave the House carte blanche to make such rules as it thought necessary to carry out the purposes of a legislative body. The early Congresses, therefore, naturally borrowed from the English Parliament many of its practices. In the years following, these practices were adapted to meet the needs of our then youthful House. Special needs of the House have caused some of the motions adopted from the English system to lose their original form and purpose. They have evolved into a distinctly American system of procedure.

In the years from 1797 to 1801 Thomas Jefferson, then Vice President of the United States and President of the Senate, prepared the notable work which has come to be known as Jefferson's Manual. This work contributed greatly to the procedure of the House, although it was not

until 1837 that the House finally adopted a rule, which is still in existence, permitting the provisions of the Manual "to govern the House in all cases to which they are applicable."

From the beginning of the First Congress the House has formulated rules for its procedure. Some of them have since gone out of existence. More of them have been amplified and broadened to meet the exigencies that have arisen from time to time. To-day they are perhaps the most finely adjusted, scientifically balanced, and highly technical rules of any parliamentary body in the world. Under them a majority may work its will at all times in the face of the most determined and vigorous opposition of a minority.

The rulings of the Speakers of the House and of the Chairmen of the Committee of the Whole are to the rules of the House what the decisions of the courts are to the statutes. It is rare, indeed, for a question to arise that has not been decided at some prior time. All of these decisions have been embodied in the monumental work of the Hon. Asher C. Hinds and the Hon. Clarence Cannon, former Parliamentarians of the House. These rulings, which aggregate more than 11,000 in number, cover practically every situation that may arise.

I believe that I am not making too broad a statement when I say that the parliamentary practice of the House is a system of procedure that ranks second to none. It has proven adequate to meet all the emergencies that have arisen in the past. It will meet the emergencies and problems of the future with the same degree of success.

In this edition of the House Rules and Manual there is included in the manner hereinafter described the text of the Legislative Reorganization Act of 1946. The provisions of that act specifically amending Rules X, XI, XII, and XXI have been placed within the standing rule structure. Part 3 of Title I of the act, containing the provisions

applicable to both Houses, has been inserted at the end of the standing rules. Titles II through VI of the act, containing the statutory provisions relating to congressional personnel, lobbying regulations, Federal tort claims, bridges, compensation and retirement of Members of Congress have been inserted where "Important Decisions" have heretofore been found. "Important Decisions" have been eliminated in this edition as they are now set out in full in Cannon's Precedents of the House of Representatives.

Rulings of the Speakers and Chairmen of the Committee of the Whole which are of significance have been inserted under the rule which governed the decision of the Chair.

References are to Hinds' and Cannon's Precedents, the Congressional Record, and the United States Reports.

LEWIS DESCHLER.

JANUARY 3, 1947.

**§ 51. Laws of Congress not binding on the House in its function of judging its elections.**

The statutes of the United States provide specific methods for institution of a contest as to the title to a seat in the House (I, 678, 697–706); but the House regards this law as not of absolute binding force, but rather a wholesome rule not to be departed from except for cause (I, 597, 719, 825, 833), and it sometimes by resolution modifies the procedure prescribed by the law (I, 449, 600).

Decisions of the Supreme Court of the United States:

Reed *v.* County Commissioners, 277 U. S., 376; Barry *v.* U. S. ex. rel. Cunningham, 279 U. S., 597.

**§ 52. The quorum.**

* * * and a Majority of each [House] shall constitute a Quorum to do Business; but a smaller Number may adjourn from day to day, and may be authorized to compel the Attendance of absent Members, in such Manner, and under such Penalties as each House may provide.

**§ 53. Interpretation of the Constitution as to number constituting a quorum.**

Out of conditions arising between 1861 and 1891 the rule was established that a majority of the Members chosen and living constituted the quorum required by the Constitution (IV, 2885–2888); but later examination has resulted in a decision confirming in the House of Representatives the construction established in the Senate that a quorum consists of a majority of Senators duly chosen and sworn (I, 630; IV, 2891–2894). So the decision of the House now is that after the House is once organized the quorum consists of a majority of those Members chosen, sworn, and living whose membership has not been terminated by resignation or by the action of the House (IV, 2889, 2890). (Speaker Clark, May 9, 1913, Record, p. 1457, 63d Cong., 1st sess.)

**§ 54. The theory of the quorum present; and the count by the Speaker.**

For many years the quorum was determined only by noting the numbers of Members voting (IV, 2896, 2897), with the result that Members by refusing to vote could often break a quorum and obstruct the public business (II, 1034; IV, 2895, footnote; V, 5744). But in 1890 Mr. Speaker Reed directed the Clerk to enter on the Journal as part of the record of a yea-and-nay vote names of Members present but not voting, thereby establishing a quorum of record (IV, 2895). This decision, afterwards sustained by the Supreme Court (IV, 2904),

established the principle that a quorum present made valid any action by the House, although an actual quorum might not vote (I, 216, footnote; IV, 2932). And thenceforth the point of order as to a quorum was required to be that no quorum was present and not that no quorum had voted (IV, 2917). At the time of the establishment of this principle the Speaker revived the count by the Chair as a method of determining the presence of a quorum at a time when no record vote was ordered (IV, 2909). The Speaker has permitted his count of a quorum to be verified by tellers (IV, 2888), but did not concede it as a right of the House to have tellers under the circumstances (IV, 2916), claiming that the Chair might determine the presence of a quorum in such manner as he should deem accurate and suitable (IV, 2932). The Chair counts all members in sight, whether in the cloak rooms or within the bar (IV, 2970). Later, as the complement to the new view of the quorum, the early theory that the presence of a quorum is as necessary during debate or other business as on a vote was revived (IV, 2935–2949); also, a line of rulings made under the old theory were overruled, and it was established that the point of no quorum might be made after the House had declined to verify a division by tellers or the yeas and nays (IV, 2918–2926).

**§ 55. Relations of the quorum to acts of the House.**

The absence of a quorum having been disclosed, there must be a quorum of record before the House may proceed to business (IV, 2952, 2953), and the point of no quorum may not be withdrawn after the absence of a quorum has been ascertained and announced by the Chair (IV, 2928–2931). But when an action has been completed, it is too late to make the point of order that a quorum was not present when it was done (IV, 2927). But where action requiring a quorum was taken in the ascertained absence of a quorum by ruling of a Speaker pro tempore, the Speaker on the next day ruled that the action was null and void (IV, 2964). But such absence of a quorum should appear from the Journal if a legislative act is to be vacated for such reason (IV, 2962), and where the assumption that a quorum was present when the House acted was uncontradicted by the Journal, it was held that this assumption might not be overthrown by expressions of opinion by Members individually (IV, 2961 . A point of no quorum may prevent the report of the Chairman of a Committee of the Whole. (Speaker Gillett, Dec. 13, 1924, p. 624, 68th Cong., 2d sess.) If a question as to a quorum is raised before the reading of the Journal, a quorum must be ascertained before the reading may begin (IV, 2732, 2733). While messages are received in the absence of a quorum they are not read (IV, 3522; V, 6600, 6650). No motion is in order on the failure of a quorum but the motions to

has allowed to fail (IV, 3499–3502). In one instance he communicated his omission to sign a bill through the committee appointed to notify him that Congress was about to adjourn (IV, 3504). A bill that had not actually passed having been signed by the President, he disregarded it and a new bill was passed (IV, 3498). Messages of the President giving notice of bills approved are entered in the Journal and published in the Congressional Record (V, 6593).

**§ 104. Disapproval (or veto) of bills.**

A message withholding approval of a bill, called a veto message, is sent to the House in which the bill originated; but it has been held that such a message may not be returned to the President on his request (IV, 3521). A vetoed bill received in the House by way of the Senate is considered as if received directly from the President and supersedes the regular order of business (IV, 3537). A veto message may not be read in the absence of a quorum, even though the House be about to adjourn sine die (IV, 3522); but the message may be read and acted on at the next session of the same Congress (IV, 3522). When the President has been prevented by adjournment from returning a bill with his objections he has sometimes at the next session communicated his reasons for not approving (V, 6618–6620).

**§ 105. Consideration of a vetoed bill in the House.**

It is the usual but not invariable rule that a bill returned with the objections of the President shall be voted on at once (IV, 3534–3536), but it has been held that the constitutional mandate that "the House shall proceed to consider" means that the House shall immediately proceed to consider it under the rules of the House, and that the ordinary motions under the rules of the House—to refer, to commit, or to postpone to a day certain—are in order. (Speaker Gillett, May 15, 1924, 68th Cong., 1st sess., p. 8663; IV, 3542–3550.) A motion to refer a vetoed bill, either with or without the message, has been held allowable within the constitutional mandate that the House "shall proceed to reconsider" (IV, 3550). But while the ordinary motion to refer may be applied to a vetoed bill, it is not in order to move to recommit it pending the demand for the previous question or after it is ordered (IV, 3551). (Speaker Gillett, Aug. 19, 1919, p. 3983.) A vetoed bill having been rejected by the House, the message was referred (IV, 3552). Committees to which vetoed bills have been referred have sometimes neglected to report (IV, 3523, 3550, footnotes). A vetoed bill may be laid on the table (IV, 3549), but it is still highly privileged and a motion to take it from the table is in order at any time (IV, 3549). Also a motion to discharge a committee from the consideration of such a bill is privileged (IV, 3532). While

# BILLS

## STAGES OF A BILL OF THE HOUSE.



### 1. Introduction:

By a Member by laying the bill on the Clerk's table informally.

§ 983. Introduction of a bill and its progress to final passage.

A Member sometimes introduces a petition only, leaving to the committee the drawing of a bill, such a petition referred to a committee having jurisdiction of the subject giving authority to report a bill. Sometimes communications addressed to the House from the executive departments or from other sources are referred to committees by the Speaker and give authority for the committees to originate bills. Messages from the President also are referred by the Speaker or the House and give jurisdiction to the committees receiving them to originate bills.

### 2. Reference to a standing or select committee:

Public bills are referred under direction of the Speaker; private bills are indorsed with the names of the committees to which they go under the rule by the Members introducing them. Senate bills are referred under direction of the Speaker. A bill is numbered and printed when referred.

### 3. Reported from the committee:

Committees having leave to report at any time make their reports from the floor; other committees make their reports by laying them on the Clerk's table informally. The bill and the report are printed when reported.

### 4. Placed on the Calendar:

Occasionally a privileged bill is considered when reported; but usually it is placed with the unprivileged bills on the Calendar where it belongs under the rule by direction of the Speaker.

### 5. Consideration in Committee of the Whole:

Public bills which do not raise revenue or make or authorize appropriations of money or property do not go through this stage. All other bills are considered in Committee of the Whole. The stages of consideration in Committee of the Whole are: General debate; reading for amendment under the five-minute rule; order to lay aside with a favorable recommendation, or to rise and report; reporting of to the House.

### 6. Reading a second time in the House:

Bills not requiring consideration in Committee of the Whole are read a second time in full, after which they are open to debate and amendment in any part. Bills considered in Committee of the Whole are read a second time in full in that committee and when reported out, with or without amendments, are not read in full again, but are subject to further debate or amendment in the House unless the previous question is ordered at once.

### 7. Engrossment and third reading:

The question on House bills is taken on ordering the engrossment and third reading at one vote. If decided in the affirmative, the reading a third time usually takes place at once, by title. But any Member may demand the reading in full of the engrossed copy, in which case the bill is laid aside until it can be engrossed. Senate bills come to the House in engrossed form, and the question is put on third reading alone. When the question on engrossment and third reading of a House bill or third reading of a Senate bill is decided in the negative the bill is lost as much as if defeated on the final passage. The question on engrossment and third reading is not made from the floor, but is put by the Speaker as a matter of course.

### 8. Passage:

The question on the passage of a bill is put by the Speaker as a matter of course, without awaiting a motion from the floor.

### 9. Transmission to the Senate by message.

### 10. Consideration by the Senate:

In the Senate House bills are usually referred to committees for consideration and report, after which they have their several readings, with opportunities for debate and amendment. The same procedure takes place in the House as to bills sent from the Senate.

### 11. Return of, from the Senate without amendments:

If the Senate passes a House bill without amendment it returns it to the House, where it is at once enrolled on parchment for signature. A bill thus passed without amendment goes into

possession of the clerk, and is not laid before the House prior to enrollment. If the Senate rejects a House bill the House is informed. Similar procedure occurs when the House passes a Senate bill without amendment.

12. Return of, from the Senate with amendments:

House bills returned with Senate amendments go to the Speaker's table. If any Senate amendment requires consideration in Committee of the Whole the bill is referred by the Speaker informally to the standing committee having jurisdiction, and when that committee reports the bill with recommendations it is referred to Committee of the Whole House on the state of the Union, to be there considered and reported to the House itself. When no Senate amendment requires consideration in Committee of the Whole the bills come before the House directly from the Speaker's table.

13. Consideration of Senate amendments by the House:

When a bill with Senate amendments comes before the House, the House takes up each amendment by itself and may vote to agree to it, agree to it with an amendment, or disagree to it. If it disagrees it may ask a conference with the Senate or may send notice of its disagreement, leaving it to the Senate to recede or insist and ask the conference.

14. Settlement of differences by conference:

When disagreements are referred to conference, the managers embody their settlement in a report, which is acted on by each House as a whole. When this report is agreed to the bill is finally passed, and is at once enrolled for signature.

15. Enrollment on parchment:

The House in which a bill originates enrolls it.

16. Examination by the Committee on House Administration:

The chairman of the Committee on House Administration or Senate Committee on Rules and Administration as the case may be affixes to the bills examined a certificate that the bill has been found truly enrolled.