UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

PLAINTIFF,

vs.

DEBORAH JEANE PALFREY,

DEFENDANT.

_____/

CRIMINAL CASE NUMBER: 07-046-GK

APPENDIX TO DEFENDANT'S MOTION TO
DISMISS FOR LACK OF SUBJECT MATTER
JURISDICTION – *Pages 81 - 118*

CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the above was served pursuant to LcvR 5.4(d) upon Daniel Butler, William Cowden, and Catherine Connelly, Assistant United States Attorneys, Criminal Division, 555 4th St., N.W., Room 4818, Washington, D.C. 20530 this November 29, 2007.

MONTGOMERY BLAIR SIBLEY
Counsel for Defendant
1629 K Street, Suite 300
Washington, D.C. 20006
202-508-3699
202-478-0371 Fax

By:  /s/ Montgomery Blair Sibley
Montgomery Blair Sibley
D.C. Bar #464488

1

**BILLS**

§ 983:

## 17. Signing by the Speaker and President of the Senate:

The enrolled bill is first laid before the House of Representatives and signed by the Speaker, whether it be a House or Senate bill, after which it is transmitted to the Senate and signed by the president of that body.

## 18. Transmittal to the President of the United States:

The Chairman of the Committee on House Administration or the Chairman of the Senate Committee on Rules and Administration as the case may be carries the bills from his House to the President. In the House of Representatives a report of the bills taken to the President each day is made to the House and entered on its Journal.

## 19. Approval by the President:

If the President approve he does so with his signature.

## 20. Disapproval by the President:

When the President disapproves a bill he returns it to the House in which it originated, with a message stating that he disapproves, and giving his reasons therefor,

## 21. Action on, when returned disapproved:

The House to which a disapproved bill is returned has the message read and spread on its Journal. It may then consider at once the question of passing the bill notwithstanding the President's objections, or may postpone to a day certain, or refer to a committee for examination. The vote on passing the bill, notwithstanding the President's objections, must be carried by two-thirds. If the bill fails to pass in the House to which it is returned it remains there; but if it passes it is sent to the other House for action.

## 22. Filing with the Secretary of State:

When approved by the President a bill is deposited in the office of the Secretary of State; and when the two Houses have passed a bill, notwithstanding the President's objections, the presiding officer of the House which acts on it last transmits it to the Secretary of State.

[484]

THE STATE LIBRARY
AUSTIN, TEXAS

59TH CONGRESS }
2d Session }
HOUSE OF REPRESENTATIVES
{ DOCUMENT
No. 355

# HINDS' PRECEDENTS

OF THE

# HOUSE OF REPRESENTATIVES

OF THE

## UNITED STATES

INCLUDING REFERENCES TO PROVISIONS
OF THE CONSTITUTION, THE LAWS, AND DECISIONS
OF THE UNITED STATES SENATE

By
ASHER C. HINDS, LL. D.
Clerk at the Speaker's Table

## VOLUME IV

PUBLISHED BY AUTHORITY OF THE ACT OF CONGRESS
APPROVED MARCH 4, 1907

WASHINGTON
GOVERNMENT PRINTING OFFICE
1907

CONTENTS.

Chapter  72.  The impeachment and trial of Samuel Chase.
Chapter  73.  The impeachment and trial of James H. Peck.
Chapter  74.  The impeachment and trial of West H. Humphreys.
Chapter  75.  The first attempts to impeach the President.
Chapter  76.  The impeachment and trial of the President.
Chapter  77.  The impeachment and trial of William W. Belknap.
Chapter  78.  The impeachment and trial of Charles Swayne.
Chapter  79.  Impeachment proceedings not resulting in trial.
Chapter  80.  Questions of privilege and their precedence.
Chapter  81.  Privilege of the House.
Chapter  82.  Privilege of the Member.

## VOLUME IV.

Chapter  83.  The Journal and its approval.
Chapter  84.  The making of the Journal.
Chapter  85.  The quorum.
Chapter  86.  The call of the House.
Chapter  87.  The order of business.
Chapter  88.  Special orders.
Chapter  89.  Private and District of Columbia business.
Chapter  90.  Petitions and memorials.
Chapter  91.  Bills, resolutions, and orders.
Chapter  92.  Approval of bills by the President.
Chapter  93.  Bills returned without the President's approval.
Chapter  94.  General appropriation bills.
Chapter  95.  Authorization of appropriations on general appropriation bills.
Chapter  96.  Appropriations in continuation of a public work.
Chapter  97.  Legislation in general appropriation bills.
Chapter  98.  Limitations in general appropriation bills.
Chapter  99.  History and jurisdiction of the standing committees.
Chapter 100.  History and jurisdiction of the standing committees.   (Continued.)
Chapter 101.  History and jurisdiction of the standing committees.   (Continued.)
Chapter 102.  General principles of jurisdiction of committees.
Chapter 103.  Select and joint committees.
Chapter 104.  Appointment of committees.
Chapter 105.  Organization and procedure of committees.
Chapter 106.  Reports of committees.
Chapter 107.  The Committee of the Whole.
Chapter 108.  Subjects requiring consideration in Committee of the Whole.
Chapter 109.  Reports from the Committee of the Whole.
Chapter 110.  Consideration "In the House as in Committee of the Whole."

## VOLUME V.

Chapter 111.  The question of consideration.
Chapter 112.  Conduct of debate in the House.
Chapter 113.  References in debate to committees, the President, or the other House.
Chapter 114.  Disorder in debate.
Chapter 115.  Debate in Committee of the Whole.
Chapter 116.  Reading of papers.
Chapter 117.  Motions in general.
Chapter 118.  The motion to adjourn.
Chapter 119.  The motion to lay on the table.
Chapter 120.  The previous question.
Chapter 121.  The ordinary motion to refer.

Chapter 122. The motion to refer as related to the previous question
Chapter 123. The motion to reconsider.
Chapter 124. Dilatory motions.
Chapter 125. Amendments.
Chapter 126. The House rule that amendments must be germane.
Chapter 127. General principles as to voting.
Chapter 128. Voting by tellers and by ballot.
Chapter 129. The vote by yeas and nays.
Chapter 130. Division of the question for voting.
Chapter 131. Amendments between the Houses.
Chapter 132. General principles of conferences.
Chapter 133. Appointment of managers of a conference.
Chapter 134. Instruction of managers of a conference.
Chapter 135. Managers to consider only matters in disagreement.
Chapter 136. Privilege and form of conference reports.
Chapter 137. Consideration of conference reports.
Chapter 138. Messages and communications.
Chapter 139. Recess.
Chapter 140. Sessions and adjournments.
Chapter 141. The rules.
Chapter 142. Suspension of the rules.
Chapter 143. Questions of order and appeals.
Chapter 144. The Congressional Record.
Chapter 145. Amendments to the Constitution.
Chapter 146. Ceremonies.
Chapter 147. Service of the House.
Chapter 148. Miscellaneous.

# VOLUME VI.

### INDEX-DIGEST.

[A to G.]

# VOLUME VII.

### INDEX-DIGEST.

[H to P.]

# VOLUME VIII.

### INDEX-DIGEST.

[Q to Z.]

# Chapter LXXXIII.*

## THE JOURNAL AND ITS APPROVAL.

1. Provisions of the Constitution.  Section 2726.
2. The official record.  Section 2727.[1]
3. Title and copy.  Sections 2728–2730.
4. Reading and approval.  Sections 2731–2750.[2]
5. Business not transacted before approval.  Sections 2751–2759.[3]
6. Motions to amend, especially as to record of votes.  Sections 2760–2770.
7. Delay in approval.  Sections 2771–2774.
8. As to record of amendments and approval.  Sections 2775–2782.
9. Changes in as related to actual facts.  Sections 2783–2789.[4]
10. Changes after approval.  Sections 2790–2797.
11. As to entry of protests and declarations.  Sections 2798–2808.[5]
12. In general.  Sections 2809, 2810.

**2726. The Constitution requires the House to keep and publish a Journal, excepting from publication such parts as require secrecy.**

**Votes by yeas and nays and veto messages of the President are required by the Constitution to be spread on the Journal.**

The Constitution of the United States, in section 5 of Article I, provides:

Each House shall keep a Journal of its proceedings, and from time to time publish the same, excepting such parts as may in their judgment require secrecy; and the yeas and nays of the Members of either House on any question shall, at the desire of one-fifth of those present, be entered on the Journal.[6]

Also in section 7 of Article I:

Every bill which shall have passed the House of Representatives and the Senate shall, before it become a law, be presented to the President of the United States.  If he approve he shall sign it, but if not he shall return it, with his objections, to that House in which it shall have originated, who shall enter the objections at large on their Journal and proceed to reconsider it.

---

* See Volume VI, Chapter CCVI.

[1] Printed and distributed by the Clerk.  Section 251 of Volume I.

  Office of journal clerk and its requirements.  Section 2644 of Volume III.

[2] Preparation and reading is not prevented by death of Clerk.  Section 237 of Volume I.

  Amendment of Congressional Record secondary to.  Section 6989 of Volume V.

[3] Administration of oath to Member-elect before.  Sections 171, 172 of Volume I.

[4] See also section 3091 of this volume.

[5] Clerk declines to entertain a protest at organization.  Section 80 of Volume I.

  Summary of precedents as to entry of protests.  Sections 2597, 2783 of this volume.

[6] Field v. Clark, 143 U. S., 649.

1

being in secret session, had passed the "act declaring war between Great Britain and her dependencies," whereupon Mr. George Poindexter moved to have inserted in the Journal a declaration in the following words:

> George Poindexter, Delegate from the Mississippi Territory, not having a constitutional right to record his suffrage on the Journal of the House on the important question under consideration, and being penetrated with a firm conviction of the propriety of the measure, asks the indulgence of the House to express his own and the sense of his constituents,[1] in support of the honorable and dignified attitude which the Government of his country has assumed in vindication of its rights against the lawless violence and unprecedented usurpations of the Government of Great Britain.

This paper was read, and appeared in the Journal of the next day, whereupon Mr. Nathaniel Macon, of North Carolina, moved that it be expunged from the Journal. This motion was disagreed to—yeas 44, nays 62. A motion that the House proceed to consider the declaration was decided in the negative.

**2809. The Parliamentary method of raising a committee to investigate an alleged error in the Journal has not been utilized.**—On February 10, 1885,[2] a question being raised as to the correctness of the Journal, a motion was made that a committee be appointed to ascertain the facts in regard to the matter over which the error was alleged to occur. This motion was made in accordance with the parliamentary principle laid down in Jefferson's Manual. The motion was not agreed to.

**2810. Certified extracts of the Journal are admitted as evidence in the courts of the United States.**—The Statutes of the United States provide:

> Extracts from the Journals of the Senate, or of the House of Representatives, and of the Executive Journal of the Senate when the injunction of secrecy is removed, certified by the Secretary of the Senate or by the Clerk of the House of Representatives, shall be admitted as evidence in the courts of the United States, and shall have the same force and effect as the originals would have if produced and authenticated in court.[3]

---

[1] Mr. Poindexter must have wished to enter this expression in the Journal, for he had the right of debate and frequently exercised it. (For an instance see Annals, March 12, 1812, pp. 1201–1204.)

[2] Second session Forty-eighth Congress, Record, pp. 1497–1500; Journal, p. 508.

[3] See Revised Statutes, sec. 895.

# Chapter LXXXV.[*]

## THE QUORUM.[1]

1. Provision of the Constitution.  Section 2884.
2. Interpretation of the Constitutional provision.  Sections 2885–2894.
3. Ruling of Mr. Speaker Reed as to quorum present.  Sections 2895–2904.
4. Rule for counting a quorum and its interpretation.  Sections 2905–2908.[2]
5. Reestablishment of the Speaker's count.  Section 2909.[3]
6. Review of Senate practice.  Sections 2910–2915.[4]
7. Speaker's count final.  Section 2916.
8. Making the point of no quorum.  Sections 2917–2931.
9. All business, including debate, suspended by failure of quorum.  Sections 2932–2965.[5]
10. Failure of quorum in Committee of the Whole.  Sections 2966–2979.

**2884. A majority of the House constitutes a quorum to do business.—** The Constitution of the United States provides in Article 1, section 5, that—

A majority of each [House] shall constitute a quorum to do business.

**2885. Out of conditions arising between 1861 and 1891 the rule was established that a majority of the Members chosen and living constitutes the quorum required by the Constitution.—**On July 19, 1861,[6] Mr. Charles B. Sedgwick, of New York, moved the previous question on the engrossment of a joint resolution to provide for the selection of a site for the Naval Academy. Fifty-two Members having voted in favor of and 41 Members having voted against seconding the same, the Speaker[7] declared that the previous question was seconded.[8]

---

[*] See Volume VI, Chapter CCVIII.
[1] A majority of a committee is a quorum.  Section 4540 of this volume.
Quorum of Senate sitting for impeachment trial.  Section 2063 of Volume III.
Senate counted during impeachment trial.  Section 2105 of Volume III.
As to quorum of managers in impeachment trial.  Section 2035 of Volume III.
[2] Principle that legislator detained by force may be counted.  Section 356 of Volume I.
[3] See also section 1653 of Volume III.
Illustration of former practice of ascertaining presence of.  Section 2733 of this volume.
[4] Elaborate Senate discussion.  Section 630 of Volume I.
[5] Oath administered to Members in absence of.  Sections 174–178 of Volume I.
Must be present before reading of Journal.  Section 2733 of this volume.
Motion to reconsider in absence of.  Sections 5606–5608 of Volume V.
Point of no quorum held dilatory.  Sections 5724–5730 of Volume V.
[6] First session Thirty-seventh Congress, Journal, p. 117; Globe, p. 210.
[7] Galusha A. Grow, of Pennsylvania, Speaker.
[8] The previous question no longer requires a second.  (See sec. 5443 of Vol. V of this work.)

2937. On March 7, 1838,[1] during the debate in Committee of the Whole on an appropriation bill, Mr. John Reed, of Massachusetts, said he had some remarks to make, but there was no House to make them to. The Chair then appointed tellers to count the House, when it was found that there were but 72 Members in their seats—not a quorum. So the committee rose and reported the fact to the House.

2938. On February 24, 1875,[2] the Speaker,[3] in the course of a decision, said:

If any gentleman raises the question that business is proceeding without the presence of a quorum, it is within the competence of the Chair to decide that a quorum is present; and he will not allow the business of the House to be interrupted by any dilatory proceeding. He assumes the responsibility for that purpose of declaring that a quorum is present, because no business can proceed without a quorum. Even a gentleman speaking is entitled to have a quorum present. If the point be raised, a gentleman addressing the Chair may be taken off the floor by any Member raising the point that no quorum is present.

2939. On February 12, 1877,[4] a question of order was raised that debate could not proceed without a quorum.

In the course of the discussion of the question Mr. Nathaniel P. Banks, of Massachusetts, a former Speaker, said:

If any Member states that a quorum is not present, the Speaker counts the House, as he is bound to do, and if a quorum is found not to be present, business is suspended and a motion for a call of the House may be made.

The Speaker[5] said: "The House is not a House without a quorum," and the debate was not permitted to proceed.

2940. On Wednesday, January 21, 1891,[6] the Journal of the proceedings of yesterday's sitting having been read, and the question being on its approval,

Mr. William McKinley, jr., of Ohio, demanded the previous question, when Mr. W. C. P. Breckinridge, of Kentucky, made the point of order that no quorum was present.

The Speaker[7] ruled that the point of order that no quorum was present could only be raised when that fact was established by a division.[8]

------

[1] Second session Twenty-fifth Congress, Globe, p. 224.
[2] Second session Forty-third Congress, Record, p. 1733.
[3] James G. Blaine, of Maine, Speaker.
[4] Second session Forty-fourth Congress, Record, pp. 1488, 1489.
[5] Samuel J. Randall, of Pennsylvania, Speaker.
[6] Second session Fifty-first Congress, Journal, p. 162; Record, p. 1630.
[7] Thomas B. Reed, of Maine, Speaker.
[8] The actual transaction is recorded as follows in the Record:
Mr. McKINLEY. Mr. Speaker——
The SPEAKER. The gentleman from Ohio [Mr. McKinley] is recognized.
Mr. BRECKINRIDGE, of Kentucky. I raise the question of order——
Mr. McKINLEY. I move the previous question.
Mr. BRECKINRIDGE, of Kentucky (continuing). That there is no quorum in the House to do business.
The SPEAKER. The gentleman from Ohio [Mr. McKinley] moves the previous question.
Mr. BRECKINRIDGE, of Kentucky. I raise the question of order that there is no quorum present.
The SPEAKER. That will be determined by the vote. As many as are in favor of ordering the previous question will say "aye."

Mr. J. Warren Keifer, of Ohio, said:

Mr. Chairman, I make the point of order that the gentleman from Illinois in charge of the bill has the floor, making a speech, and the distinguished gentleman from Mississippi is not entitled to take him off the floor.

After debate the Chairman [1] held:

The Chair is of opinion that a question of order involving the presence of a quorum may be raised, and the Chair will count to ascertain whether a quorum is present.

**2950. A quorum not being present, no motion is in order but for a call of the House or to adjourn.**—On February 5, 1846,[2] the House was in Committee of the Whole House on the state of the Union, considering joint resolution (No. 5) of notice to Great Britain to "annul and abrogate" the convention between Great Britain and the United States of the 6th of August, 1827, relative to the country "on the northwest coast of America, westward of the Stony Mountains," commonly called Oregon. Finding itself without a quorum, the committee rose. A motion to adjourn having been decided in the negative, on motion of Mr. George W. Jones, of Tennessee, a call of the House was ordered; and the roll having been called as far as the name of Stephen Adams, of Mississippi, a motion was made by Mr. Robert B. Rhett, of South Carolina, that further proceedings in the call be dispensed with. And the question being put, it was decided in the affirmative.

A motion was made by Mr. Howell Cobb, of Georgia, that the House take a recess until 7.30 o'clock.

Mr. Robert C. Winthrop, of Massachusetts, raised the question of order that, a quorum of Members not being present, it was not competent for the Chair to entertain a motion for a recess.

The Speaker [3] decided that, it appearing from the record that there was not a quorum present, no motion was in order except for a call of the House or to adjourn.

In this decision the House acquiesced.

**2951. The absence of a quorum having been disclosed, the only proceedings in order are the motions to adjourn or for a call of the House; and not even by unanimous consent may business proceed.**—On May 24, 1872,[4] the House, while considering the bill of the Senate (No. 569) for the relief of Thomas B. Wallace, of Lexington, Mo., found itself without a quorum on the vote on the passage of the bill. A call of the House was ordered, and then a motion to adjourn was defeated, a yea and nay vote being had on each of these motions.

At this point Mr. James A. Garfield, of Ohio, proposed that by unanimous consent further proceedings under the call be dispensed with, and that the bill be acted on by a rising vote, on the assumption that a quorum was present.

The Speaker pro tempore [5] said:

The vote upon the passage of this bill by yeas and nays has disclosed the fact that there is not a quorum in the House. The House thereby becomes constitutionally disqualified to do further business,

---

[1] Edgar D. Crumpacker, of Indiana, Chairman.
[2] First session Twenty-ninth Congress, Journal, p. 355.
[3] John W. Davis, of Indiana, Speaker.
[4] Second session Forty-second Congress, Globe, p. 3855.
[5] Clarkson N. Potter, of New York, Speaker pro tempore.

except that business which the Constitution authorizes the House to do when a quorum is not present, to adjourn, or to order a call of the House, and the proceedings in respect to that bill fell, and the bill, should there be a quorum in the House, must again come before the House for its passage.

**2952. The absence of a quorum having been disclosed, there must be a quorum of record before the House may proceed to business.**—On February 28, 1849,[1] at an evening session, Mr. Caleb B. Smith, of Indiana, moved a resolution to close debate in Committee of the Whole on a bill to establish the Territorial government of New Mexico.

On this motion the question stood, ayes 41, noes 64, no quorum voting. On a motion for a call of the House no quorum voted.

Mr. Samuel F. Vinton, of Ohio, proposed that by common consent they go into committee and take up the amendments of the Senate to the Indian appropriation bill.

The Speaker[2] said the Chair was obliged to state to the gentleman from Ohio that the last two votes showed that there was no quorum present. There must be a quorum of record before the House could proceed to business.

**2953.** On February 11, 1901,[3] Mr. James D. Richardson, of Tennessee, moved that the House adjourn. The yeas and nays being demanded and ordered, there appeared, yeas 59, nays 6, answering present, 6.

The result being announced, Mr. William S. Knox, of Massachusetts, announced his purpose to call up a report of the Committee of the Whole House on the state of the Union, in relation to an occurrence in the committee.

The Speaker said:

The Chair, however, is compelled to take cognizance of the fact that the House is without a quorum and not in a position to do business.

**2954. The absence of a quorum being disclosed, a motion to fix the day to which the House shall adjourn may not be entertained.**

**A motion which was by the rules more highly privileged than the motion to adjourn was not entertained after an affirmative vote on a motion to adjourn.**

On February 21, 1894[4] no quorum appearing, Mr. Richard P. Bland, of Missouri, moved that the House do now adjourn, pending which motion, Mr. J. Fred C. Talbott, of Maryland, moved that when the House adjourn to-day it be to meet on Friday next.

The Speaker[5] declined to entertain the motion of Mr. Talbott, for the reason that a quorum was required to decide it, the roll of the last preceding vote not having disclosed a quorum.

The question being put, Will the House adjourn? it was decided in the affirmative, yeas 141, nays 107.

Before the result of the foregoing vote was announced, Mr. Julius C. Burrows, of Michigan, moved that when the House adjourn to-day it be to meet on Friday next.

---

[1] Second session Thirtieth Congress, Globe, p. 624.
[2] Robert C. Winthrop, of Massachusetts, Speaker.
[3] Second session Fifty-sixth Congress, Record, pp. 2286, 2287.
[4] Second session Fifty-third Congress, Journal, p. 188.
[5] Charles F. Crisp, of Georgia, Speaker.

The Speaker [1] overruled the point of order on the ground that when the order was made the absence of a quorum was not disclosed by any proceeding in the House and did not appear in the Journal of the House, and that the statements of Members on the subject were merely expressions of their individual opinions.

**2962. The absence of a quorum should appear from the Journal if a legislative act is to be vacated for such reason.**—On June 9, 1856,[2] Mr. George W. Jones, of Tennessee, moved that the Journal of the preceding legislative day be amended by striking out the notice of a bill filed by Mr. Edwards, there being no quorum present on that day.[3]

It was objected in opposition to this motion that the Journal of that day did not show the absence of a quorum; but Mr. Jones urged that it was a matter of common knowledge that there was no quorum present. This was not denied.

Various attempts to dispose of the motion were made, but failed for lack of a quorum until June 20, when Mr. Jones's motion was laid on the table, yeas 89, nays 38.

**2963. When a vote taken by yeas and nays shows that no quorum has voted it is the duty of the Chair to take notice of that fact.**—On June 5, 1884,[4] the House having under consideration a bill forfeiting certain land grants, the yeas and nays were ordered and taken on the passage of the bill. After the vote had been taken the Speaker [5] announced that no quorum had voted and that the bill had not passed.

Upon the question being made by Mr. Poindexter Dunn, of Arkansas, that no Member had made the point that a quorum had not voted, the Speaker decided that when a vote was taken by yeas and nays it would be entered on the Journal of the House, and it was the duty of the Chair to take notice of the fact that a quorum had not voted and that the bill had not passed by a constitutional vote.

**2964. The previous question having been ordered on a bill by unanimous consent in the absence of a quorum, the Speaker on the next day ruled that the action was null and void.**—On February 19, 1873,[6] pending the demand for the previous question on the bill of the House (No. 2354) to provide for the recomputation of the accounts between the United States and the several States growing out of moneys expended by the States in the war of 1812, a quorum failed to vote and a call of the House was ordered. After the roll had been called, the doors closed, and excuses offered, on motion of Mr. Leonard Myers, of Pennsylvania, by unanimous consent, this order was agreed to.

*Ordered,* That all further proceedings under the call be dispensed with, that the previous question shall be considered as seconded, and the main question ordered, upon the bill of the House (H. R. 2354) to provide for the recomputation of the accounts between the United States and the several States growing out of moneys expended by said States in the war of 1812, and that the House shall now adjourn.

The House accordingly, at 12 o'clock m., adjourned.

On the next day, the Journal having been read, Mr. Nathaniel P. Banks, of Massachusetts, made the point of order that the main question on the bill of the

---

[1] Charles F. Crisp, of Georgia, Speaker.
[2] First session Thirty-fourth Congress, Journal, pp. 1079, 1095; Globe, pp. 1379, 1427.
[3] Formerly bills were introduced by leave, and a previous notice was required.
[4] First session Forty-eighth Congress, Journal, p. 1385.
[5] John G. Carlisle, of Kentucky, Speaker.
[6] Third session Forty-second Congress, Journal, p. 447; Globe, p. 1518.

# Chapter XCI.*

## BILLS, RESOLUTIONS, AND ORDERS.

---

1. Rules for introduction and reference of bills, petitions, etc.   Sections 3364–3366.
2. Forms and practice in relation to bills and resolutions.   Sections 3367–3382.
3. Practice as to consideration of.   Sections 3383–3390.
4. Reading, amendment, and passage.   Sections 3391–3428.
5. Enrolling and signing of.   Sections 3429–3459.
6. Recall of bills from other House for correction of errors.   Sections 3460–3481.

---

3364. **Petitions, memorials, and bills are introduced by the Member delivering them to the Clerk.**

The reference of a private bill is indorsed on it by the Member introducing it, while the reference of a public bill is made by the Speaker.

Any petition or memorial of an obscene or insulting nature may be returned by the Speaker to the Member presenting it for reference.

Rules for correction of erroneous reference of private and public bills.

Petitions, memorials, and bills referred by delivery to the Clerk are entered on the Journal and Record.

The erroneous reference of a petition or private bill referred by the Member under the rule does not confer jurisdiction on the committee receiving it.

Sections 1, 2, and 3 of Rule XXII provide for the introduction, reference to committees, and change of reference of petitions, memorials, bills, and resolutions:

1. Members having petitions or memorials or bills of a private nature to present may deliver them to the Clerk, indorsing their names and the reference or disposition to be made thereof; and said petitions and memorials and bills of a private nature, except such as, in the judgment of the Speaker, are of an obscene or insulting character, shall be entered on the Journal with the names of the Members presenting them, and the Clerk shall furnish a transcript of such entry to the official reporters of debates, for publication in the Record.

2. Any petition or memorial or private bill excluded under this rule shall be returned to the Member from whom it was received; and petitions and private bills which have been inappropriately referred may, by direction of the committee having possession of the same, be properly referred in the manner originally presented; and an erroneous reference of a petition or private bill under this clause shall not confer jurisdiction upon the committee to consider or report the same.

3. All other bills, memorials, and resolutions may, in like manner, be delivered, indorsed with the names of Members introducing them, to the Speaker, to be by him referred, and the titles and references thereof and of all bills, resolutions, and documents referred under the rules shall be entered on

---

* See Volume VII, Chapter CCXVII.

282

**Enrolled bills are presented to the President by the committee of enrollment.**

**Notice of the signature of a bill by the President is sent by message to the House in which it originated, and that House informs the other.**

**An enrolled bill, when signed by the President, is deposited in the office of Secretary of State.**

Jefferson's Manual, in Section LXVIII, provides:

When a bill has passed both Houses of Congress the House last acting on it notifies its passage to the other, and delivers the bill to the Joint Committee of Enrollment,[1] who see that it is truly enrolled in parchment. When the bill is enrolled it is not to be written in paragraphs, but solidly, and all of a piece, that the blanks between the paragraphs may not give room for forgery.[2] (9 Grey, 143.) It is then put into the hands of the Clerk[3] of the House of Representatives to have it signed by the Speaker.[4] The Clerk then brings it by way of message to the Senate[5] to be signed by their President. The Secretary of the Senate return it to the Committee of Enrollment, who presents it to the President of the United States. If he approve, he signs, and deposits it among the rolls in the office of the Secretary of State, and notifies by message the House in which it originated that he has approved and signed it; of which that House informs the other by message.

**3430.  The printing, enrolling, signing, and certification of bills on their passage between the two Houses are governed by usages founded on former joint rules.**

**The certification and presentation of enrolled bills to the President is governed by usage founded on former joint rules.**

**The Committee on Enrolled Bills reports, for entry on the Journal, the date of presentation of bills to the President.**

**History of certain of the joint rules and their abrogation in 1876.**

From a very early date[6] the House and Senate had joint rules, a large portion of which related to the handling of bills; and although they have since been allowed to lapse, the usages instituted by them remain. These rules relating to bills are:

---

[1] A bill passed before the appointment of the Committee on Enrolled Bills is enrolled by the Clerk and presented directly to the Speaker for his signature. (See Journal, p. 17, first session, Fifty-second Congress, December 23, 1891.)

[2] Under the law as to enrolling bills by printing this regulation as to paragraphs is not observed. Bills which originate in the House are enrolled by the enrolling clerk of the House, while those originating in the Senate are enrolled under direction of that body.

[3] The chairman of the Committee on Enrolled Bills certifies the bills as correctly enrolled. Formerly he made this report from his place on the floor (see Globe, p. 375, first session Thirty-third Congress), but now he lays the bills, each with his certificate as to its correctness, on the Speaker's table, to be placed before the House and signed by the Speaker.

[4] The signing by the Speaker of the House of Representatives and by the President of the Senate in open session of an enrolled bill is an official attestation by the two Houses of such bill as one that has passed Congress. When approved by the President and deposited in the State Department according to law, its authentication is completed and unimpeachable. (Field *v.* Clark, April 15, 1892, 143 United States Supreme Court Reports, p. 649.)

[5] In the early days of the House the chairman of the Committee on Enrolled Bills took the message to the Senate (see first session Twelfth Congress, Annals, p. 203); but under the present practice the Clerk, or one of his assistants, takes all enrolled bills signed by the Speaker (whether House or Senate bills) and conveys them to the Senate as a message from the House. As all enrolled bills are signed first by the Speaker, the Senate Committee on Enrolled Bills send their bills to the House Committee on Enrolled Bills, who report them to the House for signature as they report House bills. These Senate bills bear a certificate from the chairman of the Senate Committee on Enrolled Bills.

[6] The joint rules were agreed to November 13, 1794, but many of them antedated even that time. (First session Third Congress, Journal, pp. 230, 231.)

Objection having been made, the following resolution was offered by Mr. John Dalzell, of Pennsylvania, and agreed to by the House:

*Ordered,* That the clerk be directed to return to the Senate the enrolled bill (S. 5718) providing for the sale of sites for manufacturing or industrial plants in the Indian Territory, with the information that the House has considered the request of the Senate that the House vacate the action of the Speaker in signing said enrolled bill, and that the unanimous consent necessary to enable such action to be taken was refused.

**3458. The Speaker may not sign an enrolled bill in the absence of a quorum.**—On May 20, 1826,[1] Mr. Jacob Isacks, of Tennessee, from the Joint Committee for Enrolled Bills, reported that the committee had examined an enrolled bill entitled "An act making appropriations for the public buildings in Washington, and for other purposes," and had found the same to be duly enrolled.

When, a quorum not being present, objection was made by a Member to signing the said bill by the Speaker.[2]

And thereupon the House adjourned.

**3459. Proceedings in correcting an error where the Speaker had signed the enrolled copy of a bill that had not passed.**—On March 14, 1864,[3] the Speaker stated to the House that—

the Secretary of the Senate having inadvertently, on Friday last, announced the passage by the Senate of the Court of Claims bill No. 116, instead of the bill of the House (H. R. 116), and having since corrected said error by certifying to the bill which actually did pass, the Speaker, with the consent of the House, will cause the Journal of that day to be amended by the insertion of the title of the bill which actually passed, in lieu of the one originally announced; and when reported by the committee he will sign the proper enrolled bill, canceling his signature of H. R. C. C. 116.

The unanimous consent of the House was given to the course indicated by the Speaker.[4]

**3460. It is a common occurrence for one House to ask of the other the return of a bill, for the correction of errors or otherwise.**—On April 11, 1810,[5] the House proceeded to consider the amendments of the Senate to the bill entitled "An act regulating the Post-Office Establishment."

Mr. Ezekiel Bacon, of Massachusetts, moved that the following words, "Section 25, lines 2 and 3, strike out the words 'each postmaster, provided each of his letters or packets shall not exceed half an ounce in weight,'" appearing to have been an interpolation in the amendments sent from the Senate after the same were received by this House, be expunged therefrom.

Pending consideration a message was received from the Senate requesting the return of the bill and amendments,

it having been discovered that an inaccuracy had taken place in stating the amendments of the Senate.

The House ordered the bill returned, and the same day a message from the Senate returned to the House the corrected amendments.

---

[1] First session Nineteenth Congress, Journal, p. 639.
[2] John W. Taylor, of New York, Speaker.
[3] First session Thirty-eighth Congress, Journal, p. 377; Globe, p. 1096.
[4] Schuyler Colfax, of Indiana, Speaker.
[5] Second session Eleventh Congress, Journal, pp. 355, 356 (Gales and Seaton ed.); Annals, pp. 650 (Vol. I) and 1769 (Vol. II).

# Chapter XCII.[*]

## APPROVAL OF BILLS BY THE PRESIDENT.

1. Provision of the Constitution.  Section 3482.
2. As to resolutions requiring approval.  Sections 3483, 3484.
3. Bills approved are deposited with the Secretary of State.  Section 3485.
4. Delay in presenting bills to President.  Sections 3486–3488.[1]
5. Practice of the President in approving.  Sections 3489–3492.
6. Approval after adjournment for a recess.  Sections 3493–3496.
7. Exceptional instance of approval after final adjournment.  Section 3497.
8. Error in approval.  Section 3498.
9. Notification of the Houses as to approvals.  Sections 3499–3504.
10. Return of bills by President for correction of errors.  Sections 3505–3519.

**3482. Every bill which has passed the two Houses is presented to the President for his signature if he approve.**

In general, orders, resolutions, and votes in which the concurrence of the two Houses is necessary must be presented to the President on the same condition as bills.

A concurrent resolution providing for final adjournment of the two Houses is not presented to the President for approval.

The Constitution of the United States, in section 7 of Article I, provides:

Every bill which shall have passed the House of Representatives and the Senate shall, before it become a law, be presented to the President of the United States; if he approve, he shall sign it, etc.

Every order, resolution, or vote to which the concurrence of the Senate and House of Representatives may be necessary (except on a question of adjournment) shall be presented to the President of the United States, and before the same shall take effect shall be approved by him, or, being disapproved by him, shall be repassed by two-thirds of the Senate and House of Representatives, according to the rules and limitations prescribed in the case of a bill.

**3483. Although the requirement of the Constitution seems specific, the practice of Congress has been to present to the President for approval only such concurrent resolutions as are legislative in effect.**—On January 27, 1897, Mr. David B. Hill, of New York, from the Committee on the Judiciary, submitted to the Senate a report[2] which that committee had been directed to make on the subject of joint and concurrent resolutions and their approval by the President. The subject involved the construction of a portion of section 7 of Article I of the

---

[*] See Volume VII, Chapter CCXVIII.
[1] Method of taking enrolled bills to the President.  Section 2601 of Volume III.
[2] Senate Report No. 1335, second session Fifty-fourth Congress.

Within the experience of the Chair in the Senate no concurrent resolution has ever been sent to the President of the United States, nor has he ever signed one. The Chair has endeavored faithfully to find out how concurrent resolutions escape the provision of the Constitution. He has not been able to succeed.

This led to debate in the course of which the report of the Judiciary Committee in a former Congress was quoted with approval.[1]

**3485. A statute requires that bills signed by the President shall be received by the Secretary of State from the President.**

**When a bill returned without the President's approval is passed by the two Houses, the Secretary of State receives the bill from the presiding officer of the House in which it last was passed.**

The act approved December 28, 1874,[2] provides:

Whenever a bill, order, resolution, or vote of the Senate and House of Representatives, having been approved by the President, or not having been returned by him with his objections, becomes a law or takes effect, it shall forthwith be received by the Secretary of State from the President; and whenever a bill, order, resolution, or vote is returned by the President with his objections, and on being reconsidered is agreed to be passed and is approved by two-thirds of both Houses of Congress, and thereby becomes a law or takes effect, it shall be received by the Secretary of State from the President of the Senate or Speaker of the House of Representatives, in whichsoever House it shall last have been so approved, and he shall carefully preserve the originals.

**3486. Instance wherein a bill enrolled and signed by the presiding officers of the two Houses of one session was sent to the President and approved at the next session.**—On December 8, 1904,[3] Mr. Frank C. Wachter, of Maryland, chairman of the Committee on Enrolled Bills, offered the following:

Whereas the bill (H. R. 10516) for the relief of Edward J. Farrell passed both Houses at the second session of this Congress, but was enrolled too late to receive the signatures of the presiding officers of the two Houses and be presented to the President of the United States before the adjournment of the said second session; and

Whereas the bill (H. R. 11444) to grant certain lands to the State of Ohio passed both Houses and was signed by the presiding officers thereof, but failed to be presented to the President of the United States before the adjournment of the said second session: Therefore,

*Resolved by the House of Representatives (the Senate concurring),* That the said bills be, and are hereby, ordered to be reenrolled for the signatures of the presiding officers of the two Houses and for presentation to the President of the United States.

The resolution was agreed to by the House.

On December 12,[4] in the Senate, the resolution was referred to the Committee on Rules and was not reported therefrom.

The Senate having taken no action on the resolution, the bill (H. R. 10516) was reenrolled as of the third session, signed by the presiding officers, and transmitted to the President, who signed it.[5]

[1] See section 3483 of this chapter.
[2] 18 Stat. L., p. 294. A law on this subject had existed from 1789 and had been amended in 1838. (See sec. 204 of Revised Statutes.)
[3] Third session Fifty-eighth Congress, Record, p. 66.
[4] Record, p. 125.
[5] See history of bill (H. R. 10516) in indexes of Journal and Record.

The bill (H. R. 11444) relating to Ohio lands, was transmitted to the President without reenrollment, appearing as a bill of the second session.[1]  After receiving an opinion from the Attorney-General the President signed the bill.[2]

**3487. Enrolled bills pending at the close of a session were at the next session of the same Congress ordered to be treated as if no adjournment had taken place.**—On August 21, 1856,[3] Mr. James Pike, of New Hampshire, by unanimous consent, presented the following resolution:

*Resolved (the Senate concurring)*, That such bills as passed both Houses at the last session and for want of time were either not presented to the two Houses for the signatures of their presiding officers, or, having been thus signed were not presented to the President for approval, be now reported or presented to the President as if no adjournment had taken place.

---

[1] The chairman of the Committee on Enrolled Bills took this action after he had considered the following precedents furnished to him by Mr. William Tyler Page, for many years clerk of the Committee on Accounts:

"Touching the matter of the right of the chairman of the Committee on Enrolled Bills to present to the President of the United States a bill passed at the last session of Congress too late to be presented to the President before adjournment, I beg to state that I have had my memory as to a precedent for such action confirmed by the Journals of the Fiftieth Congress.  In the first session of that Congress there were passed by both Houses of Congress bills of the following numbers and titles, to wit:

"H. R. 11139, an act to authorize the building of a bridge or bridges across the Mississippi River at La Crosse, Wis.

"H. R. 11262, an act to authorize the construction of bridges across the Kentucky River and its tributaries, by the Richmond, Irvine and Beattyville Railroad Company.

"H. R. 1152, an act for the relief of the legal representatives of Eliza M. Ferris.

"These several acts, as stated, were passed by both Houses and, on October 17, 1888, first session Fiftieth Congress, page 2932 of the Journal of the House, they were reported by the chairman of the Committee on Enrolled Bills as having been examined by said committee and found duly enrolled, whereupon, said bills were signed by the Speaker of the House.

"These acts were not presented to the President of the United States until the succeeding session of Congress, when, on December 7, 1888, there appears this entry in the Journal:

"'Mr. Kilgore, from the Committee on Enrolled Bills, reported that he did on yesterday present to the President of the United States bills of the House numbered H. R. 11262, H. R. 11139, H. R. 1152.' (House Journal, p. 57, second session Fiftieth Congress.)

"In the Journal of the same session, on page 115, there appears the following entry:

"'A message in writing was received from the President of the United States * * * informing the House that he did at the dates named approve bills of the House of the following titles, namely:

"'On the 10th, H. R. 11139, an act to authorize the building of a bridge or bridges across the Mississippi River at La Crosse, Wis.

"'H. R. 11262, an act to authorize the construction of bridge or bridges across the Kentucky River and its tributaries, by the Richmond, Irvine and Beattyville Railroad Company.

"'H. R. 1152, an act for the relief of the legal representatives of Eliza M. Ferris.'"

[2] See history of bill (H. R. 11444) in the indexes.

[3] Second session Thirty-fourth Congress, Journal, p. 1352; Globe, p. 4.

In this case Congress was immediately convened to pass an army appropriation bill, which had failed at the regular session.  Several bills were left enrolled but not signed at the adjournment.  At that time a joint rule presented the resumption of business from a former session immediately.

Formerly the joint rules provided that no bill from one House should be sent for concurrence to the other on either of the last three days of the session, and also that no bill should be sent to the President for his approval on the last day of the session.  On June 20, 1874, a proposition to suspend these rules caused some debate as to the useful purpose they were intended to serve, and upon the fact, then alleged, that they had uniformly been suspended since 1822.  They were suspended on this occasion.  (First session Forty-third Congress, Record, p. 5309.)

tion upon it, or else, Congress taking a recess under such circumstances and thus preventing him from communicating with them, the bill does not become a law because by their own act of adjournment they have prevented him from having the time for consideration which is intended by the Constitution. [Here follows a brief reference to the clause of the Constitution providing for the return of a vetoed bill.] * * * All these provisions indicate that in order to enable the President to return a bill the House should be in session; and if by their own act they see fit to adjourn and deprive him of the opportunity to return the bill, with his objections, and are not present themselves to receive and record these objections and to act thereon, the bill can not become a law unless ten days shall have expired during which the President will have had the opportunity thus to return it.[1] There is no suggestion that he may return it to the Speaker, or Clerk, or any officer of the House; but the return must be made to the House as an organized body."

Hon. George F. Edmunds, President pro tempore of the Senate, in a note to President Arthur under date of December 24, 1884, expressing a like opinion, says:

"A bill * * * has passed both Houses of Congress and was presented for my signature after both Houses had adjourned until 5th of January. This is more than ten days, and, if it were now presented to you, you could not return it with your objections. I do not know what the practice has been, but it would seem to me as if the bill could not become a law constitutionally; but if you think it can I will send it to you."

This note was probably not carefully considered, but it is of value as the impression of a lawyer and legislator of great ability and experience.

The Attorney-General, after discussing the nature of the recess in question, concludes that it is not an adjournment within the meaning of the clause of the Constitution under discussion. As the approval or disapproval of a bill by the President has been sometimes held to be a legislative act, required to be done while the Congress is in session, the Attorney-General finds difficulties in giving a definite opinion, and concludes upon the whole that the course indicated in the syllabus should be pursued.

On January 4, 1893,[2] on the reassembling of Congress after the recess, the President communicated to the Senate notice that he had approved sundry bills on December 22 and December 28, during the recess, but there appears no message of disapproval of any bill.

**3497. An instance where the President signed a bill after the adjournment of Congress.**—On May 16, 1864,[3] the House ordered—

that the Committee on the Judiciary be instructed to inquire and report to the House by what warrant or authority the act[4] entitled "An act to provide for the collection of abandoned property and for the prevention of frauds in insurrectionary districts within the United States" was approved on the 12th day of March, 1863, and whether said act is still in force.

On June 11, 1864, Mr. James F. Wilson, of Iowa, from the committee, made this report:[5]

On the reception of this resolution the committee caused a note to be addressed to the Secretary of State, asking to be informed whether, "as a matter of fact, it appeared on the original files in the State Department that the act referred to was approved on the 12th day of March, 1863."

In reply to this note, the Secretary of State responded that "the original act is, to all appearances, regular in every respect of form; as to the date of its approval—that of 12th of March, 1863—the words

[1] This question was subject of a decision in Connecticut about 1904.
[2] Second session Fifty-second Congress, Record, p. 301.
[3] First session Thirty-eighth Congress, Globe, p. 2290.
[4] See 12 Stat. L., p. 820.
[5] House Report No. 108, first session Thirty-eighth Congress.

and figures 'approved March 12, 1863,' are in the handwriting of the President, and followed by his signature.''

Thus it appears, from the original files in the State Department, that said act was approved March 12, 1863, and this is true, in fact, as to the date of approval.

The section of the Constitution of the United States bearing upon this question reads as follows:

''If any bill shall not be returned by the President within ten days (Sundays excepted) after it shall have been presented to him, the same shall be a law, in like manner as if he had signed it, unless the Congress, by their adjournment, prevent its return, in which case it shall not be a law.''

The committee are informed that in the great press of business immediately preceding the adjournment of Congress on the 4th of March, 1863, the act which is made the subject-matter of inquiry by the resolution of the House was passed to the Secretary of the Treasury for examination, as it related particularly to his Department. It did not reach the President again until after the adjournment of Congress, when it was approved by him under the belief that the last clause of the section of the Constitution, above quoted, was designed more especially to prevent Congress from enacting laws without the approval of the Executive, which might be done by the passage of bills by the two Houses, followed by an adjournment, before the President could examine and return them, were it not for the declaration that in such cases the bills shall not be laws; and did not relate to cases wherein the Executive should approve bills sent to him by Congress within ten days, even though an adjournment should occur before the 9th turn of the bills.

That there is force and plausibility in this position, a little reflection will discover to any mind; but the committee can not receive it as a correct interpretation of the Constitution.

The ten days' limitation contained in the section above quoted refers to the time during which Congress remains in session, and has no application after adjournment. Hence, if the Executive can hold a bill ten days after adjournment, and then approve it, he can as well hold it ten months before approval. This would render the laws of the country too uncertain, and could not have been intended by the framers of the Constitution.

The spirit of the Constitution evidently requires the performance of every act necessary to the enactment and approval of laws to be perfect before the adjournment of Congress.

The committee, therefore, conclude that the act referred to, approved March 12, 1863, is not in force; and in this conclusion the committee are unanimous.[1]

**3498. A bill that had not actually passed, having been enrolled and signed by the President of the United States, was disregarded by the Executive, and Congress passed another bill.**—On March 11, 1836,[2] the House considered a joint resolution (No. 2) to place the name of Benedict Alford on the pension roll. The Debates of March 18,[3] give the following explanation of the presentation of this resolution:

At the first session of the Twenty-third Congress a bill passed the House of Representatives granting pensions to Benedict Alford and Robert Brush, soldiers of the Revolutionary war. By the Journals of the Senate it appears that this bill was indefinitely postponed in that body, and the House of Representatives was so notified. And it is also so entered on the Journal of the House. The postponement of the bill in the Senate in the last hour of the session was inadvertently overlooked by the enrolling clerk, as well as by the Committee on Enrolled Bills in the House, and it was enrolled and signed by the officers of the two Houses, and presented to, and approved by, the President. A few days after the adjournment of Congress the error was discovered in the Clerk's office in the House of Representatives, and notice of the fact was immediately given to the War Department. The Secretary of War thereupon declined complying with the provisions of the bill, under the conviction that it was not a valid statute. At the last session of Congress the President communicated the fact to the Senate by message. No

---

[1] The act of July 2, 1864 (13 Stat. L., p. 375), was amendatory of the act "approved March 12, 1863," thereby indicating that the latter act was still considered a law. (See Globe, first session, thirty-eighth Congress, p. 2820, for debate on the bill S. 232.)

[2] First session Twenty-fourth Congress, Journal, pp. 470, 498, 525, 526; Debates, pp. 2747, 2881.

[3] Debates, p. 2881.

# Chapter  CVII.*

## THE COMMITTEE OF THE WHOLE.[1]

1. Rule for forming committee.  Section 4704.
2. Origin and development of.  Section 4705.
3. Nature and powers of.  Sections 4706–4715.[2]
4. Certain motions not in order.  Sections 4716–4721.
5. Yeas and nays not taken in.  Sections 4722–4724.
6. After voting to go into committee no motions in order.  Sections 4725–4728.
7. Order of business in.  Sections 4729–4734.
8. Unfinished business in.  Sections 4735, 4736.
9. Rules of proceeding in.  Section 4737.[3]
10. Reading of bills.  Sections 4738–4741.
11. Amendment under five-minute rule.  Sections 4742–4751.
12. Rising and reporting.  Sections 4752–4766.
13. The simple motion to rise.  Sections 4767–4773.
14. Various motions for disposition of a bill.  Sections 4774–4782.
15. Questions of order.  Sections 4783, 4784.[4]
16. Informal rising.  Sections 4785–4791.[5]

4704. In forming a Committee of the Whole, the Speaker leaves the chair, after appointing a Chairman to preside.

The Chairman of the Committee of the Whole may cause the galleries or lobby to be cleared in case of disturbance or disorderly conduct therein.

Present form and history of section 1 of Rule XXIII.

---

* See Volume VIII, Chapter CCXXXVII.
[1] In early practice given power to take testimony.  (Sec. 1804 of Vol. III.)
  Subjects once considered in, irrespective of appropriations or revenue.  (Sec. 1984 of Vol. III.)
  House sometimes attends impeachment trials in.  (Secs. 2027, 2374 of Vol. III.)
  Motions to go into, to consider revenue and appropriation bills.  (Secs. 3072–3085 of this volume.)
  Motions to go into, after call of committees.  (Secs. 3134–3141 of this volume.)
  Relations to special orders.  (Secs. 3214–3230 of this volume.)
  Conference reports not considered in.  (Secs. 6559–6561 of Vol. V.)
  Relations to Congressional Record.  (Secs. 6986–6988 of Vol. V.)
  Rule of admission to floor applies to.  (Sec. 7285 of Vol. V.)
[2] In early years matters originated in.  (Secs. 1507, 1541 of Vol. II.)
  Articles of impeachment considered in.  (Secs. 2415, 2420 of Vol. III.)
[3] As to debate in.  (Chapter CXV, secs. 5203–5211 of Vol. V.)
  Failure of quorum in.  (Secs. 2966–2979 of this volume.)
[4] See also sections 6927–6937 of Vol. V.
  Speaker sometimes takes the chair to restore order.  (Secs. 1348–1351 of Vol. II.)
  Extreme disorder in.  (Secs. 1649–1653, 1657 of Vol. II.)
  Questions of privilege in.  (Secs. 2540–2544 of Vol. III.)
[5] Reception of messages while sitting.  (Sec. 6590 of Vol. V.)

**4787. At an informal rising of the Committee of the Whole a message from the President of the United States may be laid before the House only by unanimous consent.**—On June 13, 1902,[1] the Committee of the Whole House on the state of the Union rose informally to receive messages from the President of the United States.

The messages having been communicated to the House, the Speaker [2] said:

> If there is no objection, the Chair will lay the messages before the House.

Mr. Oscar W. Underwood, of Alabama, objected.

Thereupon the Speaker said:

> Objection being made, the Committee of the Whole will resume its sitting.

**4788. Sometimes on the informal rising of the Committee of the Whole, the House, by unanimous consent, transacts business, such as the presentation of enrolled bills, the swearing in of a Member, or consideration of a message.**—On February 26, 1859,[3] the Committee of the Whole informally rose, and Mr. James Pike, of New Hampshire, from the Committee on Enrolled Bills, reported that they had examined and found truly enrolled certain bills.

Thereupon the Speaker [4] signed the same; and the committee then resumed its session.[5]

**4789.** On May 5, 1880,[6] the Committee of the Whole informally rose to receive a message from the Senate. The message having been read, Mr. Martin Maginnis, of Montana, asked the House to concur in a verbal amendment to one of the bills just received from the Senate.

The Speaker [7] said:

> The rising of the committee is informal. That request can not now be entertained.

**4790.** On May 14, 1896,[8] the Committee of the Whole informally rose to receive a message from the Senate, one of the announcements of which was that the Senate had passed with amendments a bill (H. R. 7977) making appropriations for the construction, repair, and preservation of certain public works on rivers and harbors, and for other purposes, asked a conference with the House of Representatives on the bill and amendments, and had appointed Mr. Frye, Mr. Quay, and Mr. Vest as the conferees on the part of the Senate.

As soon as the reading of the message was concluded, Mr. Binger Hermann, of Oregon, asked unanimous consent that the Senate amendments to this bill be

---

[1] First session Fifty-seventh Congress, Record, p. 6746.

[2] David B. Henderson, of Iowa, Speaker.

[3] Second session Thirty-fifth Congress, Globe, p. 1417.

[4] James L. Orr, of South Carolina, Speaker.

[5] It is quite common for the committee to rise informally for this purpose. (See Record, first session Fifty-first Congress, p. 10350; first session Fifty-fifth Congress, p. 507; and first session Fifty-first Congress, p. 7774. In the latter case conferees also were appointed.)

[6] Second session Forty-sixth Congress, Record, p. 3028.

[7] Samuel J. Randall, of Pennsylvania, Speaker.

[8] First session Fifty-fourth Congress, Record, pp. 5249, 5270, 5532.

# Chapter CXL.

## SESSIONS AND ADJOURNMENTS.[1]

1. Provision of the Constitution. Section 6672.
2. The three-day period and its conditions. Sections 6673–6675.[2]
3. The holiday recess. Sections 6676–6685.
4. Instance of a session prolonged by recess. Section 6686.
5. A recess a real, not imaginary time. Section 6687.
6. Adjournment of Congress not fixed by law. Section 6688.
7. Sine die adjournment. Section 6689.[3]
8. Special session ends with day of meeting of next regular session of a Congress. Sections 6690–6693.
9. End of last session of a Congress. Sections 6694–6697.
10. Privilege of concurrent resolutions of adjournment. Sections 6698–6706.
11. Adjournment of House at time of sine die adjournment of Congress. Sections 6707–6721.[4]
12. Forms and ceremonies at adjournment sine die. Sections 6722–6726.
13. Business undisposed of at end of a session. Section 6727.
14. Sessions on Sunday. Sections 6728–6733.[5]
15. Adjournment of the legislative day. Sections 6734–6740.[6]

**6672. Neither House during a session of Congress may, without the consent of the other, adjourn for more than three days, or to another place.**

**When the two Houses disagree as to adjournment, the President may adjourn them.**

Section 5 of Article I of the Constitution provides:

Neither House during the session of Congress shall, without the consent of the other,[7] adjourn for more than three days, nor to any other place than that in which the two Houses shall be sitting.

---

[1] See also Chapter I of Volume I, sections 1–13, for precedents as to the meeting of Congress.

[2] The Senate sitting for an impeachment trial may adjourn for more than three days. (Sec. 2423 of Vol. III.)

[3] Forms of resolutions providing for adjournment sine die or for a recess, and then privileged nature. (Sec. 4031 of Vol. IV.)

[4] Adjournment in the midst of a roll call. (Sec. 6325 of this volume.)

[5] As to Sunday, 7245, 7246 of this volume.

[6] Distinction between the legislative and calendar day. (Sec. 3192 of Vol. IV.)

Fixing the hour of daily meetings. (Sections 104–117 of Vol. I.)

[7] December 21, 1882 (second session Forty-seventh Congress, Record, p. 490), when the concurrent resolution of the House proposing a holiday recess of the Congress was received in the Senate, an amendment was offered to permit the House alone to take such recess, leaving the Senate in session. The Senate declined to agree to the amendment. Procedure like this has never been taken, the two Houses always having continued in session together except in instances wherein the President has convened the Senate alone in extraordinary session.

App. 101

The Speaker then said:

The first part of that clause declares that "each House shall be the judge of the election, returns, and qualifications of its own Members, and a majority of each shall constitute a quorum to do business." This is the broad charter given in the Constitution by which the two Houses transact all their legislative business. It includes, of course, within its range of power the authority to lay down an order of business, to decide when they shall meet, and what business they shall or shall not take up when they do meet. This is the power conferred by the Constitution upon a quorum of each House.

The clause then concludes by giving certain powers to less than a quorum. "A smaller number may adjourn from day to day, and may be authorized to compel the attendance of absent Members, but in such manner and under such penalties as each house may provide." They must, therefore, compel the attendance of absent Members in such Manner as each House (which means a quorum thereof) shall have provided anterior to that time. It follows, the Chair thinks, by the plain reading of the Constitution, that a minority of each House, less than a quorum, can not have, as the gentleman from Ohio (Mr. Schenck) argues, larger power than a majority of each House sitting as a legislative body. If the point of order made is correct, less than a quorum has more power than more than a quorum, an anomaly never recognized by parliamentary law nor conferred by the Constitution, in the opinion of the Chair. The limitation of the power of less than a quorum is absolute. They may do certain things in such manner and form and under such penalties as each House (which means a majority thereof) shall have previously provided.

The Chair, therefore, overrules the point of order on three grounds: First, that both Houses of Congress, at the opening meeting of the first session of this Congress, considered this provision of the Constitution, when it declared for exactly such an adjournment as is provided for in the pending resolution. That is a parliamentary precedent not questioned at that time, as the Chair understands, by any Member in either branch—certainly not appealed from in either branch—but spoken of latterly, when it was supposed there might not be a quorum present on the 3d day of July.

The Chair overrules it for a second reason, which is, that a majority of each House, when there was a quorum present, have determined that when Congress assembled on the 3d of July, if there was not a quorum present the absent Members should not be coerced, but that the presiding officers of both branches, who were simply the organs and servants of the two Houses to execute their orders, should then adjourn Congress without day, with full notice to every Senator and Representative of what would be the specific order of business on the 3d day of July, and what would be the result if a majority of either House failed to appear on that day.

The Chair overrules it on the third ground, that at the conclusion of long sessions the two Houses have sometimes provided for an adjournment at a specified day and hour, but that after a certain date only formal business, such as the signing of bills, shall be transacted, and at the final adjournment of such first session less than a quorum has been present.

If the point of order made by the gentleman from Ohio be correct, then if there were no quorum present at such a time the absence of a quorum would render null the concurrent resolutions of quorum of both the House and the Senate.

Mr. Schenck having appealed, the Chair was sustained, yeas 125, nays 14.

On July 20,[1] the Congress took another recess until November 21. When it reassembled the roll of the House was not called, and no notice of the presence of a, quorum was sent to either Senate or House. The Speaker (Mr. Colfax) also assumed that the first business in order was the reading of the Journal of the last day before the recess.

**6687. A recess of Congress is a real, not imaginary time, when it is not sitting in regular or extraordinary session.**

[1] First session Fortieth Congress, Journal, p. 253; Globe, p. 768. The resolution providing for this recess was in the ordinary form, providing simply that the presiding officers adjourn their respective Houses to meet on November 21. (Journal, p. 250.)

Calendar No. 1675

| 80TH CONGRESS | SENATE | REPORT |
|---|---|---|
| 2d Session | | No. 1620 |

## REVISION OF TITLE 18, UNITED STATES CODE

---

JUNE 14 (legislative day, JUNE 1), 1948.—Ordered to be printed

---

Mr. WILEY, from the Committee on the Judiciary, submitted the following

# REPORT

(To accompany H. R. 3190)

The Committee on the Judiciary, to whom was referred the bill (H. R. 3190) to revise, codify, and enact into positive law, title 18 of the United States Code, entitled "Crimes and Criminal Procedure," having considered the same, do now report the bill to the Senate favorably, with amendments, and recommend that the bill, as amended do pass.

The purpose of the bill is to codify and revise the laws relating to Federal crimes and criminal procedure.

With the amendments proposed by the committee the bill includes all pertinent laws to January 5, 1948, and is made effective September 1, 1948.

The bill makes it easy to find the criminal statutes because of the arrangement, numbering, and classification. The original intent of Congress is preserved. A uniform style of statutory expression is adopted. The new Federal Rules of Criminal Procedure are keyed to the bill and are reflected in part II of title 18.

Obsolete and executed provisions are eliminated. Uncertainty will be ended and there will no longer be any need to examine the many volumes of the Statutes at Large as the bill, upon enactment, will itself embody the substantive law which will thus appear in full in the United States Code.

Codification and revision of the criminal statutes was undertaken in October 1943 by the House Committee on Revision of the Laws. A bill prepared by that committee passed the House on July 16, 1946, Seventy-ninth Congress, was reintroduced in the present Congress as H. R. 3190, and passed the House again on May 12, 1947.

The care with which the bill has been prepared and brought to date in the present Congress under the supervision of the House Committee on the Judiciary is reflected by that committee's report, House Report No. 304 of the Eightieth Congress. For a detailed

4                REVISION OF TITLE 18, UNITED STATES CODE

On page 118, line 23, before "shall be fined", strike out "amine into the affairs of such institution,".

### EXPLANATION

Amendments Nos. 6 and 7 involve no change in existing law. The stricken words are unnecessary and inconsistent with other sections of this revision defining embezzlement but are necessary and appropriate in defining the offense of false entries in sections 1005 and 1006. See sections 641, 645, and 659 of this title.

8.    On page 134, line 19, after "both", strike out the period at the end of this line and insert—

; or if he negligently suffers such person to escape, he shall be fined not more than $500 or imprisoned not more than one year, or both.

### EXPLANATION

This amendment gives effect to the act of June 21, 1947 (ch. 111, 61 Stat. 134). amending section 138 of the Criminal Code of 1909 (35 Stat. 1113; 18 U. S. C. sec. 244), the latter being section 755 of revised title 18 as set out in this bill.

9.    On page 158, insert new matter after line 12, as follows:

While any foreign government is a member both of the International Monetary Fund and of the International Bank for Reconstruction and Development, this section shall not apply to the sale or purchase of bonds, securities, or other obligations of such government or any political subdivision thereof or of any organization or association acting for or on behalf of such government or political subdivision, or to making of any loan to such government, political subdivision, organization, or association.

### EXPLANATION

This amendment incorporates in section 955 of title 18 the exception made to the Johnson Act by act of July 31, 1945 (ch. 339, sec. 9, 59 Stat. 516; 31 U. S. C., sec. 804b).

10.    On page 367, lines 15 to 18, inclusive, strike out all of lines 15 to 18, inclusive, and insert in lieu thereof the following two paragraphs:

The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.
Nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof.

### EXPLANATION

This amendment is necessary to preserve the provisions of section 371 (1) of title 28 United States Code, 1940 edition, giving the district court of the United States original jurisdiction of all offenses against the laws of the United States, exclusive of State courts.

11.    On page 415, line 10, after "Canal Zone," insert "District of Columbia,".

App. 104

Case 1:07-cr-00046-JR     Document 205     Filed 11/29/2007     Page 27 of 39

the protection of their civil rights, all with due regard to the established customs of such peoples.

SEC. 4. For the purposes of this concurrent resolution, the committee, or any duly authorized subcommittee thereof, is authorized to hold such hearings, to sit and act at such times and places during the sessions, recesses, and adjourned periods of the Eightieth Congress, to employ such consultants, specialists, clerks, and other assistants, to travel, and authorize its assistants to travel, freely through such areas and such other places, to utilize such transportation, housing, and other facilities as the Army, Navy, Marine Corps, Coast Guard, and Air Force may make available, to require by subpena or otherwise the attendance of such witnesses and the production of such correspondence, books, papers, and documents, to administer such oaths, to take such testimony, and to make such expenditures, as it deems advisable. The cost of stenographic services to report such hearings shall not be in excess of 25 cents per hundred words. The expenses of the committee, which shall not exceed $50,000, shall be paid one-half from the contingent fund of the Senate and one-half from the contingent fund of the House of Representatives, upon vouchers approved by the chairman or vice chairman. Disbursements to pay such expenses shall be made by the Secretary of the Senate out of the contingent fund of the Senate, such contingent fund to be reimbursed from the contingent fund of the House of Representatives in the amount of one-half of disbursements so made.

Passed June 18, 1948.

— 

## COMMUNIST PARTY OF THE UNITED STATES

*Resolved by the House of Representatives (the Senate concurring),* That there be printed six thousand additional copies of the report (House Report Numbered 1920) on the Communist Party of the United States as an Advocate of Overthrow of Government by Force and Violence, of which five thousand copies shall be for the use of the Committee on Un-American Activities of the House of Representatives and one thousand copies shall be for the House document room.

Passed June 19, 1948.

—

## UNITED STATES BOARD OF PAROLE

*Resolved by the House of Representatives (the Senate concurring),* That, in accordance with paragraph 3 of section 2 of the Printing Act, approved March 1, 1907, the Committee on Expenditures in the Executive Departments, House of Representatives, be, and is hereby, authorized and empowered to have printed for its use two thousand five hundred copies of the hearings held before a special subcommittee of said committee during current Congress, relative to investigation as to the manner in which the United States Board of Parole is operating and as to whether there is a necessity for a change in either the procedure or basic law.

Passed June 19, 1948.

—

## ADJOURNMENT

*Resolved by the House of Representatives (the Senate concurring),* That when the two Houses adjourn on Sunday, June 20, 1948, they

Hearings.

Employment of consultants, etc.

Witnesses.

Expenses.

June 19, 1948
[H. Con. Res. 199]

Printing of additional copies of House report.

June 19, 1948
[H. Con. Res. 213]

Printing of hearings of special subcommittee.
34 Stat. 1012.
44 U. S. C. § 154.

June 20, 1948
[H. Con. Res. 218]

stand adjourned until 12 o'clock meridian on Friday, December 31, 1948, or until 12 o'clock meridian on the third day after the respective Members are notified to reassemble in accordance with section 2 of this resolution, whichever event first occurs.

Reassembly.

Sec. 2. The President pro tempore of the Senate, the Speaker of the House of Representatives, the acting majority leader of the Senate, and the majority leader of the House of Representatives, all acting jointly, shall notify the Members of the Senate and the House respectively, to reassemble whenever, in their opinion, the public interest shall warrant it.

**Passed June 20, 1948.**

---

June 20, 1948
[H. Con. Res. 219]

### SIGNING OF ENROLLED BILLS, ETC.

*Resolved by the House of Representatives (the Senate concurring),* That notwithstanding the adjournment of the two Houses until December 31, 1948, the Speaker of the House of Representatives and the President pro tempore of the Senate be, and they are hereby, authorized to sign enrolled bills and joint resolutions duly passed by the two Houses and found truly enrolled.

**Passed June 20, 1948.**

---

July 27, 1948
[H. Con. Res. 220]

### JOINT MEETING

Communication from the President.

*Resolved by the House of Representatives (the Senate concurring),* That the two Houses of Congress assemble in the Hall of the House of Representatives on Tuesday, July 27, 1948, at 12:30 o'clock in the afternoon, for the purpose of receiving such communication as the President of the United States may be pleased to make to them.

**Passed July 27, 1948.**

---

August 7, 1948
[H. Con. Res. 222]

### ADJOURNMENT

*Resolved by the House of Representatives (the Senate concurring),* That when the two Houses adjourn on Saturday, August 7, 1948, they stand adjourned until 12 o'clock meridian on Friday, December 31, 1948, or until 12 o'clock meridian on the third day after the respective Members are notified to reassemble in accordance with section 2 of this resolution, whichever event first occurs.

Reassembly.

Sec. 2. The President pro tempore of the Senate, the Speaker of the House of Representatives, the acting majority leader of the Senate, and the majority leader of the House of Representatives, all acting jointly, shall notify the Members of the Senate and the House, respectively, to reassemble whenever, in their opinion, the public interest shall warrant it.

**Passed August 7, 1948.**

---

August 7, 1948
[H. Con. Res. 223]

### SIGNING OF ENROLLED BILLS, ETC.

*Resolved by the House of Representatives (the Senate concurring),* That notwithstanding the adjournment of the two Houses until December 31, 1948, the Speaker of the House of Representatives and the President pro tempore of the Senate be, and they are hereby, authorized to sign enrolled bills and joint resolutions duly passed by the two Houses and found truly enrolled.

**Passed August 7, 1948.**

## NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

𝕿𝖔 𝖆𝖑𝖑 𝖙𝖔 𝖜𝖍𝖔𝖒 𝖙𝖍𝖊𝖘𝖊 𝖕𝖗𝖊𝖘𝖊𝖓𝖙𝖘 𝖘𝖍𝖆𝖑𝖑 𝖈𝖔𝖒𝖊. 𝕲𝖗𝖊𝖊𝖙𝖎𝖓𝖌:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf,

der the seal of the National Archives of the United States, that the attached reproduction(s) is a true and

t copy of documents in his custody.

| SIGNATURE | |
|---|---|
| R H Ht | |
| NAME | DATE |
| Richard H. Hunt | 05/11/07 |
| TITLE Director | |
| Center for Legislative Archives | |
| NAME AND ADDRESS OF DEPOSITORY | |
| The National Archives Washington, D.C. 20408 | |

NA FORM APR 85 1407·A

H. R.          An Act

3190          to revise, codify, and enact into positive

law, Title 18 of the United States Code, entitled "Crimes

and Criminal Procedure."

Examined and found truly enrolled.

-------------------------- June 19 19 48          *K M LeCompte*

GPO   69793                                          *Chairman.*

80th CONGRESS
1st Session

# H. R. 3190

---

# AN ACT

To revise, codify, and enact into positive law, Title 18 of the
United States Code, entitled "Crimes and Criminal Pro-
cedure".

1    *Be it enacted by the Senate and House of Representa-*

2    *tives of the United States of America in Congress assembled,*

3    That Title 18 of the United States Code, entitled "Crimes

4    and Criminal Procedure", is hereby revised, codified, and

5    enacted into positive law, and may be cited as "Title 18,

6    U. S. C., §—", as follows:

1  international extradition, including the fees of the com-

2  missioner, shall be certified by the judge or commissioner

3  before whom the hearing shall take place to the Secretary

4  of State of the United States, and the same shall be paid

5  out of appropriations to defray the expenses of the judiciary

6  or the Department of Justice as the case may be.

7    The Attorney General shall certify to the Secretary

8  of State the amounts to be paid to the United States on

9  account of said fees and costs in extradition cases by the

10  foreign government requesting the extradition, and the

11  Secretary of State shall cause said amounts to be collected

12  and transmitted to the Attorney General for deposit in the

13  Treasury of the United States.

CHAPTER 211.—JURISDICTION AND VENUE

Sec.
3231. District courts.
3232. District of offense—Rule.
3233. Transfer within District—Rule.
3234. Change of venue to another district—Rule.
3235. Venue in capital cases.
3236. Murder or manslaughter.
3237. Offenses begun in one district and completed in another.
3238. Offenses not committed in any district.
3239. Threatening communications.
3240. Creation of new district or division.
3241. Jurisdiction of offenses under certain sections.
3242. Indians committing certain offenses; acts on reservations.
3243. Jurisdiction of State of Kansas over offenses committed by or
    against Indians on Indian reservations.

14  § 3231.  DISTRICT COURTS

15    Offenses against the United States shall be cognizable

16  in the district courts of the United States, but nothing in

17  this title shall be held to take away or impair the jurisdiction

18  of the courts of the several states under the laws thereof.

471

| Date | Statutes at Large | | | | U. S. Code | |
| | Chap-ter | Section | Vol-ume | Page | Title | Section |
|---|---|---|---|---|---|---|
| 1946—July 10 | 547 | ---------- | 60 | 524, 525 | 18 | 641 |
| July 24 | 606 | ---------- | 60 | 656 | 18 | 409–411 |
| Aug. 2 | 735 | ---------- | 60 | 789 | 18 | 408e |
| Aug. 14 | 964 | [66] 3 | 60 | 1064 | 7 | 1026 |

[66] Only the provisions amending section 52 of Act July 22, 1937, ch. 517, title IV, 50 Stat. 531, 532.

Passed the House of Representatives May 12, 1947.

Attest:

*John Andrews*

*Clerk.*

80TH CONGRESS
1ST SESSION

# H. R. 3190

# AN ACT

To revise, codify, and enact into positive law,
Title 18 of the United States Code, entitled
"Crimes and Criminal Procedure".

JUN 17 1948

(CALENDAR DAY
JUN 18 1948)

House agrees to Senate amendments.

In the Senate of the United States,

JUN 18   LEG. DAY JUN 15 '48

Resolved, That this bill pass with
amendments.
Attest:

*Carl A. Loeffler*

Secretary



COPY

From

THE NATIONAL ARCHIVE

Records of the U.S.
House of
Representatives
Record Group 233

HR 80A-B9
HR 3190

# NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

## To all to whom these presents shall come, Greeting:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf,
r the seal of the National Archives of the United States, that the attached reproduction(s) is a true and
copy of documents in his custody.



| SIGNATURE | |
|---|---|
| *Aloha South* | |
| NAME | DATE |
| ALOHA SOUTH | July 27, 2007 |
| TITLE | |
| ASST. BRANCH CHIEF, OLD MILITARY & CIVIL RECORDS | |
| NAME AND ADDRESS OF DEPOSITORY | |
| NATIONAL ARCHIVES & RECORDS ADMINISTRATION 700 PENNSYLVANIA AVENUE, NW WASHINGTON, DC 20408 | |

NA FORM 14007 (10-86)

App. 114

[PUBLIC LAW _772_]
[CHAPTER _645_]

H. R. 3190



Eightieth Congress of the United States of America

At the Second Session

Begun and held at the City of Washington on Tuesday, the sixth
day of January, one thousand nine hundred and forty-eight

## AN ACT

To revise, codify, and enact into positive law, Title 18 of the United
States Code, entitled "Crimes and Criminal Procedure".

*Be it enacted by the Senate and House of Representatives of the
United States of America in Congress assembled,* That Title 18 of the
United States Code, entitled "Crimes and Criminal Procedure", is
hereby revised, codified, and enacted into positive law, and may be
cited as "Title 18, U. S. C., § ——", as follows:

### TITLE 18—CRIMES AND CRIMINAL PROCEDURE

| Part | | Sec. |
|---|---|---|
| I. | Crimes | 1 |
| II. | Criminal Procedure | 3001 |
| III. | Prisons and Prisoners | 4001 |
| IV. | Correction of Youthful Offenders | 5001 |

### PART I—CRIMES

| Chapter | | Sec. |
|---|---|---|
| 1. | General provisions | 1 |
| 3. | Animals, birds and fish | 41 |
| 5. | Arson | 81 |
| 7. | Assault | 111 |
| 9. | Bankruptcy | 151 |
| 11. | Bribery and graft | 201 |
| 13. | Civil rights | 241 |
| 15. | Claims and services in matters affecting government | 281 |
| 17. | Coins and currency | 331 |
| 19. | Conspiracy | 371 |
| 21. | Contempts constituting crimes | 401 |
| 23. | Contracts | 431 |
| 25. | Counterfeiting and forgery | 471 |
| 27. | Customs | 541 |
| 29. | Elections and political activities | 591 |
| 31. | Embezzlement and theft | 641 |
| 33. | Emblems, insignia, and names | 701 |
| 35. | Escape and rescue | 751 |
| 37. | Espionage and censorship | 791 |
| 39. | Explosives and combustibles | 831 |
| 41. | Extortion and threats | 871 |
| 43. | False personation | 911 |
| 45. | Foreign relations | 951 |
| 47. | Fraud and false statements | 1001 |
| 49. | Fugitives from justice | 1071 |
| 51. | Homicide | 1111 |
| 53. | Indians | 1151 |
| 55. | Kidnaping | 1201 |
| 57. | Labor | 1231 |
| 59. | Liquor traffic | 1261 |
| 61. | Lotteries | 1301 |
| 63. | Mail fraud | 1341 |
| 65. | Malicious mischief | 1361 |
| 67. | Military and Navy | 1381 |
| 69. | Nationality and citizenship | 1421 |
| 71. | Obscenity | 1461 |
| 73. | Obstruction of justice | 1501 |

H. R. 3190—187

in the several districts through which it may be necessary for him to pass with such prisoner, so far as such power is requisite for the prisoner's safe-keeping.

§ 3194. Transportation of fugitive by receiving agent

Any agent appointed as provided in section 3182 of this title who receives the fugitive into his custody is empowered to transport him to the State or Territory from which he has fled.

§ 3195. Payment of fees and costs

All costs or expenses incurred in any extradition proceeding in apprehending, securing, and transmitting a fugitive shall be paid by the demanding authority.

All witness fees and costs of every nature in cases of international extradition, including the fees of the commissioner, shall be certified by the judge or commissioner before whom the hearing shall take place to the Secretary of State of the United States, and the same shall be paid out of appropriations to defray the expenses of the judiciary or the Department of Justice as the case may be.

The Attorney General shall certify to the Secretary of State the amounts to be paid to the United States on account of said fees and costs in extradition cases by the foreign government requesting the extradition, and the Secretary of State shall cause said amounts to be collected and transmitted to the Attorney General for deposit in the Treasury of the United States.

CHAPTER 211.—JURISDICTION AND VENUE

Sec.
3231. District courts.
3232. District of offense—Rule.
3233. Transfer within District—Rule.
3234. Change of venue to another district—Rule.
3235. Venue in capital cases.
3236. Murder or manslaughter.
3237. Offenses begun in one district and completed in another.
3238. Offenses not committed in any district.
3239. Threatening communications.
3240. Creation of new district or division.
3241. Jurisdiction of offenses under certain sections.
3242. Indians committing certain offenses; acts on reservations.
3243. Jurisdiction of State of Kansas over offenses committed by or against Indians on Indian reservations.

§ 3231. District courts

The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.

Nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof.

§ 3232. District of offense—(Rule)

SEE FEDERAL RULES OF CRIMINAL PROCEDURE

Proceedings to be in district and division in which offense committed, Rule 18.

| Date | Statutes at Large | | | | U. S. Code | |
| | Chapter | Section | Volume | Page | Title | Section |
|---|---|---|---|---|---|---|
| **1940—Continued** | | | | | | |
| Mar. 29 | 73 | | 54 | 80 | 18 | 97 |
| Apr. 17 | 101 | | 54 | 110 | 18 | 421 |
| Apr. 30 | 164 | | 54 | 171 | 18 | 56 |
| Do | 175 | 1–3 | 54 | 175, 176 | 18 | 733, 733a, 733b |
| June 6 | 241 | | 54 | 234 | 18 | 453 |
| June 8 | 276 | | 54 | 249 | 28 | 217a |
| Do | 295 | | 54 | 255, 256 | 18 | 412a |
| June 11 | 323 | | 54 | 304 | 18 | 451 |
| Do | 325 | 1–2 | 54 | 306 | 18 | 469–471 |
| June 13 | 350 | | 54 | 391 | 18 | 252 |
| June 25 | 426 | | 54 | 571, 572 | 18 | 76e |
| June 28 | 439 | 1–5 | 54 | 670, 671 | 18 | 9–13 |
| June 29 | 445 | | 54 | 688 | 18 | 687 |
| Do | 449 | 1–5 | 54 | 692, 693 | 18 | 641, 715, 719, 723e, 753k, 753h |
| Do | 455 | | 54 | 695 | 12 | 588b |
| July 10 | 567 | | 54 | 747 | 18 | 587 |
| July 19 | 640 | 1, 3, 5, 6 | 54 | 767, 772 | 18 | 61a, 61l, 61m–1, 61t |
| Oct 8 | 762 | | 54 | 1021 | 18 | 203 |
| Oct. 9 | 777 | 6 | 54 | 1028 | 18 | 382–385 |
| Do | 785 | 1–5 | 54 | 1058, 1059 | 18 | 576, 576a–576d |
| Oct. 14 | 872 | | 54 | 1154 | 18 | 396a |
| Do | 876 | 346 (a–h), (l), 347 | 54 | 1153–1160 | 8 | 745 (a–h), (l), 747 |
| Oct. 17 | 897 | 1–5 | 54 | 1201–1204 | 18 | 14, 14 note 16–17 |
| Nov. 30 | 926 | | 54 | 1220, 1221 | 50 | 101, 104–105 |
| 1941—May 31 | 155 | 1 (part) | 55 | 220 | 18 | 647 |
| June 14 | 204 | | 55 | 252 | 18 | 733f |
| June 21 | 212 | | 55 | 264, 265 | 18 | 746a, 746b |
| June 28 | 261 | 10 | 55 | 368 | 12 | 1731 (d) |
| July 9 | 288 | | 55 | 581 | 18 | 390a |
| July 11 | 287 | | 55 | 583 | 18 | 518a |
| Aug. 18 | 306 | 1–6 | 55 | 631, 632 | 18 | 419a, 419b, 419c, 419d |
| Aug. 21 | 388 | | 55 | 655 | 50 | 104 |
| Oct. 21 | 453 | | 55 | 743, 744 | 18 | 733f |
| Nov. 15 | 473 | 1, 2 | 55 | 763, 764 | 18 | 106, 107 |
| Nov. 21 | 492 | | 55 | 779 | 18 | 689 |
| Dec. 22 | 618 | | 55 | 853 | 18 | 521 |
| Dec. 31 | 642 | 1–3 | 55 | 876, 877 | 18 | 503, 503, note, 504 |
| **1942—Mar. 7** | 160 | | 56 | 141 | 18 | 561 |
| Mar. 7 | 178 | 1 (part) | 56 | 158 | 18 | 547 |
| Mar. 21 | 191 | | 56 | 173 | 18 | 97a |
| Mar. 27 | 199 | 1106 | 56 | 184 | 50 App. | 641e |
| May 9 | 306 | 1 | 56 | 271, 272 | 18 | 582 |
| Aug. 24 | 555 | | 56 | 747, 748 | 18 | 560a |
| Sept. 16 | 561 | 314 | 56 | | 50 | 944 |
| Dec. 24 | 828 | 1, 2, 3 | 56 | 1067 | 18 | 420, 420g, 420h |
| Do | 834 | | 56 | 1087, 1088 | 50 | 101 |
| **1943—June 30** | 179 | 1 (part) | 57 | 268 | 18 | 647 |
| Nov. 20 | 303 | | 57 | 591 | 18 | 87 |
| **1944—Mar. 4** | 53 | 1, 2, 3, 4 | 58 | 111 | 18 | 472, 473, 474 |
| Apr. 1 | 151 | | 58 | 149, 150 | 18 | 262a |
| Apr. 4 | 162 | | 58 | 188 | 18 | 469 |
| July 1 | 358 | 10 (a), (d), (e), | 58 | 657, 658 | 41 | 119 |
| Do | 358 | 10 (b) | 58 | 667 | 18 | 590a |
| Sept. 27 | 425 | | 58 | 752 | 18 | 294 |
| Oct. 3 | 479 | 28 | 58 | 781 | 18 | 292a |
| Dec. 20 | 623 | 4 | 58 | 837 | 12 | 1100c |
| Dec. 23 | 708 | 1, 2, 3 | 58 | 944, 945 | 18 | 52, 52a, 52b |
| **1945—Apr. 30** | 102 | | 59 | 101 | 18 | 97b |
| May 16 | 126 | | 59 | 166 | 18 | 518a |
| June 8 | 178 | 1, 2, 3 | 59 | 234, 235 | 18 | 241, 241a, 242 |
| July 31 | 339 | 9 | 59 | 516 | 31 | 804b |
| Sept. 24 | 383 | 1, 2, 3 | 59 | 536 | 18 | 408 |
| **1946—May 16** | 256 | | 60 | 182 | 18 | 518a |
| July 3 | 537 | | 60 | 420 | 10 | 17 note |
| | | | | | 18 | 420a–420a–1 note, 151 note |
| | | | | | 32 notes, 101 | |
| July 10 | 547 | | 60 | 524, 525 | 18 | 641 |
| July 24 | 605 | | 60 | 556 | 18 | 409–411 |
| Aug. 2 | 736 | | 60 | 789 | 18 | 608a |
| Aug. 14 | 954 | 3 | 60 | 1,054 | 7 | 1,026 |
| **1947—Apr. 16** | 39 | | 61 | 52 | 18 | 411 |
| May 19 | 73 | | 61 | 97 | 18 | 744b–1 |
| June 27 | 111 | | 61 | 134 | 18 | 244 |
| June 23 | 120 | 304 | 61 | 150 | 2 | 251 |

46 First proviso, only, appearing on this page.
47 First proviso, only, appearing on this page.
48 As added by Act, Apr. 1, 1944, ch. 150 (part), 58 Stat. 146.
49 Second proviso, only, appearing on this page.
50 First, second, third, and sixth paragraphs, only, of this section of title 41 of the United States Code, 1940 edition.
51 Only the provisions amending section 53 of Act, July 22, 1937, ch. 517, title IV, 50 Stat. 531, 532.

*Approved  
June 25 1948*

*Harry S. Truman*

*12:23 P. M. E. D. T.*

*Joseph W. Martin Jr.*

*Speaker of the House of Representatives.*

*President of the Senate pro tempore.*