**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

                PLAINTIFF,

VS.

DEBORAH JEANE PALFREY,

                DEFENDANT.

_____/

CRIMINAL CASE NUMBER: 07-046-JR

**DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S APPLICATION FOR ISSUANCE OF SUBPOENAS AND PAYMENT OF COSTS AND FEES, OR, ALTERNATIVELY, FOR DEPOSITIONS FOR SUPPRESSION HEARING**

Defendant, Deborah Jeane Palfrey, by and through her undersigned counsel replies to the government's opposition to her Application for Issuance of Subpoenas and Payment of Costs and Fees, or, Alternatively, For Depositions for Suppression Hearing, and states:

**I.    DEFENDANT'S REQUEST IS NECESSARY, APPROPRIATE AND NOT BURDENSOME**

Proffering the "trust me" argument, the government asks this Court to rely upon its representations as gospel to justify denying Defendant's request. For the reasons detailed below, this Court should reject those arguments and grant Defendant's request.

**A.    MAGISTRATE JUDGE MUELLER**

The government maintains that "in addition to failing to provide any legitimate basis for Magistrate Judge Mueller's testimony, defendant fails to provide any caselaw supporting her extraordinary request." (Gov. Opposition, p. 3).

Noteworthy, is that the government ignores its preceding paragraph wherein they recognize that Defendant expressly detailed her need for this testimony. In her motion Defendant clearly states: "by including the handwritten note on the affidavit, a significant legal issue has been raised as to (i) who's handwriting that is, (ii) when it was added, and (iii) upon what stimulus is was written." (Def.

Motion, D.E. #199 p. 2-3).   Tellingly, the government fails to answer any <u>one</u> of these relevant requests instead stating "trust me", nothing untoward occurred before the Magistrate Judge.

Moreover, Defendant <u>did</u> explain the caselaw behind the request and the need by citing *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 326-327 (1979).   Indeed, in that case, the search warrant issuing magistrate <u>was</u> called to testify at the suppression hearing:

> We need not question the subjective belief of the Town Justice in the propriety of his actions [in issuing the search warrant], but the objective facts of record manifest an erosion of whatever neutral and detached posture existed at the outset. He allowed himself to become a member, if not the leader, of the search party which was essentially a police operation. . ..Though it would not have validated the warrant in any event, **the Town Justice admitted at the hearing to suppress evidence that he could not verify that the inventory prepared by the police and presented to him late that evening accurately reflected what he had ordered seized.**  (Emphasis added).

Second, while Defendant maintains that she has complied through counsel with the Judicial Counsel's putative regulation entitled, "*Testimony of Judiciary Personnel and Production of Judiciary Records in Legal Proceedings, March 2003*", by her proffer.

Defendant maintains that it is *putative* as the Judicial Counsel has <u>no</u> such authority to issue "regulations".  The Judicial Conference was <u>only</u> empowered by Congress at 28 U.S.C.  §331 to:

- Make a comprehensive survey of the conditions of business in the courts of the United States;

- Prepare plans for the assignment of judges to or from courts of appeals or district courts, where necessary;

- Submit suggestions to the various courts in the interest of promoting uniformity of management procedures and the expeditious conduct of court business;

- Exercise authority provided in chapter 16[1] of title 28 United States Codes for the review of circuit council conduct and disability orders filed under that chapter; and

- Carry on a continuous study of the operation and effect of the general rules of practice and procedure in use within the federal courts, as prescribed by the Supreme Court pursuant to law.

Notably <u>absent</u> is the authority to establish "regulations" concerning the testimony of judges in violation of the Sixth Amendment and Federal Rules of Criminal Procedure, Rules 15 and 17(b). Moreover, even if such were authorized, the Rules Enabling Act[2] would void such an attempt as conflicting with the Defendant's right under the Sixth Amendment to compel witnesses in her defense. Here, Magistrate Judge Mueller is such a witness given the peculiar handwritten note on the search warrant which implicates the validity of the search warrant based upon the holding in *Lo-Ji Sales, Inc. v. New York* at 327:("Deference to the magistrate is not boundless. . . . A magistrate failing to manifest that neutrality and detachment demanded of a judicial officer when presented with a warrant application and who acts instead as 'an adjunct law enforcement officer' cannot provide valid authorization for an otherwise unconstitutional search").

Finally, the Supreme Court has already conclusively determined this issue in *United States v. Morgan*, 313 U.S. 409 (1941) holding that judges can be deposed as to the factual basis upon which they proceeded.

---

[1]    Chapter 16. Complaints Against Judges and Judicial Discipline.

[2]    28 U.S.C. §2072(b)  "Rules of Procedure and Evidence; Power to Prescribe" states in pertinent part: "(a) The Supreme Court shall have the power to prescribe general rules of practice and procedure and rules of evidence for cases in the United States district courts (including proceedings before magistrate judges thereof) and courts of appeals. (b) Such rules shall not abridge, enlarge or modify any substantive right."

The *Morgan* line of cases arose from the validity of an order of the Secretary of Agriculture

fixing maximum rates to be charged by market agencies at the Kansas City Stockyards. *Packers and*

*Stockyards Act 1921*, 7 U.S.C. §§ 181 – 229.  In the first case,  *Morgan v. United States*, 298 U.S.

468 (1936), the contention that the plaintiffs had not been accorded the hearing which the statute

made a prerequisite to a valid order was at issue. The district court had struck from plaintiffs'

complaints the allegations that the Secretary had made the order without having heard or read the

evidence and without having heard or considered the arguments submitted, and that his sole

information with respect to the proceeding was derived from consultation with employees in the

Department of Agriculture.  *United States v. Morgan*, 304 U.S. 1, 14 (1938).

The Supreme Court  concluded that first case by stating "that it was error to strike these

allegations, that the **defendant should be required to answer them**, and that the question whether

plaintiffs had a proper hearing should be determined."  *Id.*  (Emphasis added).

Hence, finding that the Secretary of Agriculture sat in a similar position to that of a judge

required fundamental due process[3], the Supreme Court went on to <u>order</u> that the Secretary answer

---

[3]      "That duty is widely different from ordinary executive action. It is a duty which carries with
it fundamental procedural requirements. There must be a full hearing. There must be evidence
adequate to support pertinent and necessary findings of fact. **Nothing can be treated as evidence
which is not introduced as such**. *United States v. Abilene & Southern Railway Co., supra.* Facts
and circumstances which ought to be considered must not be excluded. **Facts and circumstances
must not be considered which should not legally influence the conclusion.** Findings based on the
evidence must embrace the basic facts which are needed to sustain the order. . . A proceeding of this
sort requiring the taking and weighing of evidence, determinations of fact based upon the
consideration of the evidence, and the making of an order supported by such findings, has a quality
resembling that of a judicial proceeding. Hence it is frequently described as a proceeding of a **quasi
judicial** character. The requirement of a 'full hearing' has obvious reference to the tradition of
judicial proceedings in which evidence is received and weighed by the trier of the facts. The 'hearing'
is designed to afford the safeguard that the one who decides shall be bound in good conscience to
consider the evidence, to be guided by that alone, and to reach his conclusion uninfluenced by
extraneous considerations which in other fields might have play in determining purely executive

question under oath concerning the nature of the actions he took in his judicial capacity so that the plaintiffs' allegations could be properly considered. "The defendants should be required to answer these allegations, and the question whether plaintiffs had a proper hearing should be determined." *Morgan v. United States*, 298 U.S. 468, 482.[4]

Subsequently, "after the remand, the bills were amended and interrogatories were directed to the Secretary which he answered. The court received the evidence which had been introduced at its previous hearing, together with additional testimony bearing upon the nature of the hearing accorded by the Secretary. **This evidence embraced the testimony of the Secretary and of several of his assistants**. The district court rendered an opinion, with findings of fact and conclusions of law, holding that the hearing before the Secretary was adequate and, on the merits, that his order was lawful. On this appeal, plaintiffs again contend (1) that the Secretary's order was made without the hearing required by the statute; and (2) that the order was arbitrary and unsupported by substantial evidence." *United States v. Morgan*, 304 U.S. 1, 14. (Emphasis added).

---

action. The 'hearing' is the hearing of evidence and argument. If the one who determines the facts which underlie the order has not considered evidence or argument, it is manifest that the hearing has not been given. " *Morgan v. United States*, 298 U.S. 468, 480-481. (Emphasis added).

[4] In fact, "The part taken by the Secretary himself in the departmental proceedings is shown by his full and candid testimony. The evidence had been received before he took office. He did not hear the oral argument. The bulky record was placed upon his desk and he dipped into it from time to time to get its drift. He decided that probably the essence of the evidence was contained in appellants' briefs. These, together with the transcript of the oral argument, he took home with him and read. He had several conferences with the Solicitor of the Department and with the officials in the Bureau of Animal Industry, and discussed the proposed findings. He testified that he considered the evidence before signing the order. The substance of his action is stated in his answer to the question whether the order represented his independent conclusion, as follows: 'My answer to the question would be that that very definitely was my independent conclusion as based on the findings of the men in the Bureau of Animal Industry. I would say, I will try to put it as accurately as possible, that it represented my own independent reactions to the findings of the men in the Bureau of Animal Industry.'" *United States v. Morgan*, 304 U.S. 1, 18.

After reviewing the testimony of the Secretary, the Supreme Court found that there was a <u>failure</u> to accord due process holding:

> The maintenance of proper standards on the part of administrative agencies in the performance of their quasi judicial functions is of the highest importance and in no way cripples or embarrasses the exercise of their appropriate authority. On the contrary, it is in their manifest interest. For, as we said at the outset, if these multiplying agencies deemed to be necessary in our complex society are to serve the purposes for which they are created and endowed with vast powers, **they must accredit themselves by acting in accordance with the cherished judicial tradition embodying the basic concepts of fair play**. **As the hearing was fatally defective, the order of the Secretary was invalid.**

*United States v. Morgan*, 304 U.S. 1, 22.   (Emphasis added).

Here, Defendant has raised the very real issue of whether the Magistrate Judge acted impartially in issuing the search warrant given the handwritten note on the search warrant. As such, Magistrate Judge Mueller's testimony is relevant to the (i) who's handwriting that is, (ii) when it was added, and (iii) upon what stimulus is was written and Defendant is entitled to have such testimony at the suppression hearing.

### B.    THE GOVERNMENT'S QUESTIONABLE REPRESENTATIONS

First, and significantly, the government again proffers its interpretation of the handwritten note which Defendant is asked to believe is true as if Moses himself delivered to her. A review of the only filed copy of that handwritten note – attached hereto – reveals that it is inscrutable and the Defendant properly demanded the original be produced so Defendant and the Court can satisfy itself as to it meaning.

Second, the government maintains that USPS Inspector Joe Clark is not necessary as he was not present when the search warrant affidavit was presented. However, the search warrant

application by Inspector Couvillon states:

> The information contained in this affidavit is based on my personal knowledge and observations made by me during the course of my investigation, on information conveyed to me by other individuals and law enforcement officials and on my examination and review of records, documents and physical evidence obtained during the course of the course of the investigation.

(Couvillon Affidavit, ¶3 attached hereto). Hence, the testimony of the "other individuals and law enforcement officials" is relevant and necessary given that Inspector Couvillon only was assigned to the investigation of Defendant two months before the search warrant affidavit was executed and hence, her knowledge of the six (6) year old investigation was necessarily largely dependant upon "other individuals and law enforcement officials". Inspector Joe Clark was such an individual.

Finally, even if the recitation of the wording of the handwritten note on the search warrant application is to believed, it contains information regarding confidential informants and postal money orders of which Inspector Couvillon could not have had first hand knowledge. As such, though her hearsay testimony is regrettably admissible, the automatic veracity of what she states is not a given and Defendant properly challenges such by calling witnesses with first hand knowledge.

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the served pursuant to LcvR 5.4(d) upon Daniel Butler, William Cowden, and Catherine Connelly, Assistant United States Attorneys, Criminal Division, 555 4th St., N.W., Room 4818, Washington, D.C. 20530 this December 6, 2007.

MONTGOMERY BLAIR SIBLEY
Counsel for Defendant
1629 K Street, Suite 300
Washington, D.C. 20006
202-508-3699
202-478-0371 Fax

By: _/s/ Montgomery Blair Sibley_
        Montgomery Blair Sibley
        D.C. Bar #464488

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Maria E. Couvillon, being duly sworn, depose and state the following:

     1. I have been a Postal Inspector with the United States Postal Inspection Service since February 2004 and I am currently assigned to the Washington Division. Upon entering the United States Postal Inspection Service, I completed twelve weeks of training. This training covered various aspects of federal law enforcement. Prior to serving as a United States Postal Inspector I was a Police Officer with the Arlington County Police Department for six and one half years. In that capacity, I attended the Northern Virginia Regional Criminal Justice Academy in Ashburn, Virginia for twenty weeks. My law enforcement training and experience include the preparation, presentation, and service of criminal complaints, arrest and search warrants.

     2. This affidavit is made in support of an application for a warrant to search the premises located at 803 Capitol Street, Vallejo, California, 94590, in the county of Solano, which is more particularly described in Attachment A. The purpose of this application is to seize evidence of violations of Title 18 United States Code, Section 1956 (a)(1)(A)(i), Laundering of Monetary Instruments, and Title 18 United States Code, Section 1952, Interstate and Foreign Travel or Transportation in Aid of Racketeering Enterprises.

     3. The information contained in this affidavit is based on my personal knowledge and observations made by me during the course of this investigation, on information conveyed to me by other individuals and law enforcement officials, and on my

examination and review of records, documents and physical evidence obtained during the course of the investigation.

4. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe establish a violation of Title 18 United States Code, Section 1956 (a)(1)(A)(I), Laundering of Monetary Instruments, and Title 18 United States Code, Section 1952, Interstate and Foreign Travel or Transportation in Aid of Racketeering Enterprises , and Title 18 United States Code, Section 2422 inducing interstate travel to engage in prostitution and that evidence of these crimes is presently at the location to be searched. Section 1952 makes it a crime for anyone to use the mail or any interstate facility with the intent to distribute the proceeds of any buisness enterprise involving prostitution, or otherwise promote, manage, establish, carry on, or faciliate any such enterprise. Section 1956 (a)(1)(A)(i) makes it a crime for anyone to conduct a financial transaction knowing that the property involved in that financial transaction represents the proceeds of some form of criminal activity and with the intent to promote the carrying on of specified unlawful activity.

5. Your affiant knows that criminals who violate laws against Title 18 United States Code, Section 1956 (a)(1)(A)(i) and 1952, operate front businesses which may appear to be legitimate, but which in fact are vehicles used to conduct prostitution businesses while avoiding detection or apprehension by law enforcement officers. A majority of these fronts are outcall type businesses, usually referring to or purporting to involve models or modeling, escorts, or massage services. These services advertise in news publications, local magazines, the internet and in the Yellow Pages, usually listing

2

94510 and lists (707) 648-1000 as the phone number and (707) 648-1500 as the facsimile number.

17. Your affiant obtained and reviewed two Uniform Residential Loan Applications for 803 Capitol Street, Vallejo, California dated March 19, 1999 and November 2, 2001. Both documents indicate Deborah J. Palfrey is the sole owner of this property. Her employment is listed as owner of Pamela Martin and Associates, P.O. Box 1211, Benicia, California 94510. The type of business is described as "personal services" and the business and home phone numbers listed on both documents is (707) 648-1000.

18. Your affiant also obtained and reviewed the Uniform Residential Loan Application for 1441 Vaquero Glen, Escondido, California 92026, which is dated January 9, 2002. The document indicates Deborah J. Palfrey is the sole owner of this property. Her employment is listed as owner of Pamela Martin and Associates, P.O. Box 1211, Benicia, California 94510. The type of business is described as "personal services" and the business and home phone number is listed as (707) 648-1000.

19. Your affiant also obtained and reviewed the Charles Schwab SEP-IRA Participant Account Application for Deborah Jean Palfrey, which is dated February 24, 2003. The record reflects a home address of 803 Capitol Street, Vallejo, California 94510 and a mailing address of P.O. Box 1211, Benicia, California. Both the home and business phone number listed on the application is (707) 648-1000.

Informants

20. Beginning in December, 2005, interviews were conducted with several informants regarding PM&A. These informants had first hand knowledge of its operations and their respective roles. The informants revealed that Deborah Jean Palfrey



The reliability of the informants knowledge of the operation of PM&A was verified by USPS money order databases. Original and/or postal money order images of the money orders purchased by the informants were retrieved. In addition the Express Mail labels used by them to send the money orders also were retrieved and reviewed