UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

        PLAINTIFF,

VS.

DEBORAH JEANE PALFREY,

        DEFENDANT.
_____/

CRIMINAL CASE NUMBER: 07-046-JR

DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Defendant, Deborah Jeane Palfrey, by and through her undersigned counsel, replies to the government's opposition to Defendant's motion to dismiss the indictment upon this Court's lack of subject matter jurisdiction and states:

**I.     THE GOVERNMENT IGNORES AN INCONVENIENT FACT**

Adopting the "ostrich" style of argument to avoid the consequences of Defendant's argument, the government states: "The 1948 amendment to that statute passed both houses of Congress and was signed into law by President Harry S. Truman on June 25, 1948. Therefore, the amendments and statutes relied upon for jurisdiction in this case were properly enacted and are binding. Defendant has offered no legitimate evidence or caselaw to the contrary." (Gov. Opp., D.E. #214, p. 3).

The fallacy here is that the statute H.R. 3190 – which contained what is now 28 U.S.C. §3231 from which this Court's subject matter jurisdiction in this criminal case solely arises – "passed both house of Congress". A review of the indisputable record establishes the opposite:

- H.R. 3190 passed" the House on May 12, 1947, *id.*; *Journal of the House of Representatives* ("House Journal"), May 12, 1947, pp. 343-344 (App. 4-5, a copy of which is attached)

- H.R. 3190 was then significantly amended by the Senate which then "[o]rdered that the Secretary request the concurrence of the House of Representatives in the amendments." *Senate Journal*, *supra*, p. 506; *House Journal*, June 18, 1948, p. 688 (App. 16, a copy of which is attached.)

- Thereafter, the House "concurred" but never "passed" H.R. 3190 *as amended* by the Senate. (The "said Senate amendments were concurred in") (App. 17, a copy of which is attached).

This failure to "pass" H.R. 3190 is the fatal blow to the legitimate passage of H.R. 3190 so that it could be signed into law by the President as the Senate and House passed <u>different</u> versions of H.R. 3190 that were <u>never</u> reconciled.

This point is made clear by the *Guide to Legislative Process in the House*, XV, Final Action on Amended Bill[1] which states:

> On their return to the House the official papers relating to the amended measure are placed on the Speaker's table to await House action on the Senate amendments. If the amendments are of a minor or noncontroversial nature the Chairman of the committee that originally reported the bill--or any Member--may, at the direction of the committee, **ask unanimous consent to take the bill with the amendments from the Speaker's table and agree to the Senate amendments**. At this point the Clerk reads the title of the bill and the Senate amendments. If there is no objection, the amendments are then declared to be agreed to, and the bill is ready to be enrolled for presentation to the President.

In the case of H.R. 3190, the record is <u>devoid</u> of the action of asking for unanimous consent to the Senate amendments and inquiring whether there is "any objection". Hence, the process of enacting H.R. 3190 failed to pass this requisite bar to enactment of a valid law.

---

[1] http://www.rules.house.gov/archives/lph-final.htm.

**II.    *UNITED STATES V. LAWRENCE, NO. 02-CR-200* IS INTELLECTUALLY VOID**

Recognizing that Defendant's arguments regarding H.R. 3190 are valid, the government then cites the unpublished opinion of *United States v. Lawrence*, No. 02-CR-200, 2006 WL 250702, at *1 (N.D. Ill. Jan.27, 2006) for the proposition that even if H.R. 3190 is void, the "this Court would retain jurisdiction over this case because the predecessor statute to §3231 to which Mr. Lawrence offers no challenge, provides for such jurisdiction as well." A copy of *Lawrence* is attached.

However, <u>neither</u> the court in *Lawrence* <u>nor</u> the government cites the "predecessor statute to §3231" because there was <u>no</u> predecessor statute conferring jurisdiction for criminal offenses upon the United States District Courts prior to the putative enactment of §3231.

**III.    THE HOUSE ADJOURNED *SINE DIE***

The government seeks to avoid the consequences of the *sine die* adjournment by the House "on December 19, 1947," without the Senate passing H.R. 3190 as noted by this circuit's own case law; *Kennedy v. Sampson*, 511 F.2d 430, 444 Appendix n. 4 (D.C. Cir. 1974)(" The Senate and the House of Representatives adjourned on July 27, 1947 under a 'conditional final adjournment' resolution, S.Con.Res. 33; 93 Cong.Rec. 10400. Pursuant to the resolution, the two Houses were to stand in adjournment until January 2, 1948, unless recalled into session earlier by specified Senate and House leaders. **In effect, the adjournment was a *sine die* adjournment, not an intrasession adjournment**. On November 17, 1947, Congress convened pursuant to proclamation of President Truman, and adjourned *sine die* on December 19, 1947.")(Emphasis added).

Hence, this Court is bound by this determination and the government's citation to a district court slip opinion in *United States v. Felipe*, 2007 WL 2207804, slip op. at 2 (E.D. Pa. July 30, 2007) is of no moment.

### IV. *PUBLIC CITIZEN V. UNITED STATES DISTRICT COURT* VIOLATES THE RULES ENABLING ACT

The government's last argument is that the holding in *Public Citizen v. United States District Court for the District of Columbia*, 486 F.3d 1342, 1343 (D.C. Cir.2007) which cites to *Marshall Field & Co. v. Clark*, 143 U.S. 649,672-73 (1892) permits this Court to <u>ignore</u> the failure of Congress to properly pass a bill as long as the "enrolled act attested to by declaration of the two houses, through their presiding officers that a bill is an "enrolled bill" is conclusive evidence that it was passed by Congress. *Public Citizen* at 1350.

This "rule" of the Supreme Court violates the Rules Enabling Act[2] which prohibits the creation of a rule of evidence which violates a "substantive right". Here, that "substantive right" is that no bill shall become law unless passed by a majority of <u>both</u> the Senate and the House in *identical* forms.

As such, *Public Citizen* cannot be relied upon to ignore the established defect in H.R. 3190.

### V. CONCLUSION

Wherefore, as this Court lacks subject matter jurisdiction, the indictment must be dismissed. Accordingly, *fiat justitia ruat caelum.*

---

[2] 28 U.S.C. §2072(b) "Rules of Procedure and Evidence; Power to Prescribe" states in pertinent part: "(a) The Supreme Court shall have the power to prescribe general rules of practice and procedure and rules of evidence for cases in the United States district courts (including proceedings before magistrate judges thereof) and courts of appeals. (b) Such rules shall not abridge, enlarge or modify any substantive right.

CERTIFICATE OF SERVICE

      I hereby certify that a true and accurate copy of the foregoing was served pursuant to LcvR 5.4(d) upon Daniel Butler, William Cowden, and Catherine Connelly, Assistant United States Attorneys, Criminal Division, 555 4th St., N.W., Room 4818, Washington, D.C. 20530 this December 7, 2007.

                              **MONTGOMERY BLAIR SIBLEY**
                              Counsel for Defendant
                              1629 K Street, Suite 300
                              Washington, D.C. 20006
                              202-508-3699
                              202-478-0371 Fax

                              By:  /s/ Montgomery Blair Sibley
                                      Montgomery Blair Sibley
                                      D.C. Bar #464488

*United States or of any State or any subdivision thereof, for such copies or information furnished for official use in connection with the official duties of such officers or agencies.*

H. R. 2353. A bill to authorize the patenting of certain public lands to the State of Montana or to the Board of County Commissioners of Hill County, Mont., for public-park purposes.

Page 3, lines 12 and 13, strike out " (1) that the lands shall be used for park and recreational purposes; (2) ".

Page 3, line 11, strike out all following "provide", and all of line 12 before "that".

Page 3, line 3, after "Interior", strike out the semicolon, insert a period and strike out balance of bill.

*Ordered,* That the Clerk request the concurrence of the Senate in said bills, severally.

---

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill of the Senate (S. 64) granting the consent of Congress for the construction of a dam across Dan River in North Carolina, when said bill was considered and read twice, ordered to be read a third time, was read a third time by title, and passed.

*Ordered,* That the Clerk notify the Senate thereof.

---

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill (H. R. 1465) to relieve collectors of customs of liability for failure to collect certain special tonnage duties and light money, and for other purposes.

When said bill was read by title.

On motion of Mr. TRIMBLE, by unanimous consent, the Committee on the Judiciary was discharged from further consideration of the bill of the Senate (S. 132) to relieve collectors of customs of liability for failure to collect certain special tonnage duties and light money, and for other purposes, when said bill was considered and read twice, ordered to be read a third time, was read a third time by title, and passed.

*Ordered,* That the Clerk notify the Senate thereof.

By unanimous consent, the bill H. R. 1465, a similar House bill, was laid on the table.

---

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill (H. R. 2076) to limit the time within which the General Accounting Office shall make final settlement of the monthly or quarterly accounts of fiscal officers, and for other purposes.

When said bill was read by title.

On motion of Mr. TRIMBLE, by unanimous consent, the bill of the Senate (S. 273) to limit the time within which the General Accounting Office shall make final settlement of the monthly or quarterly accounts of fiscal officers, and for other purposes, was taken from the Speaker's table, considered and read twice, ordered to be read a third time, was read a third time by title, and passed.

*Ordered,* That the Clerk notify the Senate thereof.

By unanimous consent, the bill H. R. 2076, a similar House bill, was laid on the table.

---

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill (H. R. 2238) to amend section 327 (h) of the Nationality Act of 1940.

When said bill was read by title.

On motion of Mr. TRIMBLE, by unanimous consent, the bill of the Senate (S. 460) to amend section 327 (h) of the Nationality Act of 1940, was taken from the Speaker's table, considered and read twice, ordered to be read a third time, was read a third time by title, and passed.

*Ordered,* That the Clerk notify the Senate thereof.

By unanimous consent, the bill H. R. 2238, a similar House bill, was laid on the table.

---

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill (H. R. 1999) to authorize additional allowances of good time and the payment of compensation to prison inmates performing exceptionally meritorious or outstanding services.

When said bill was read by title.

On motion of Mr. TRIMBLE, by unanimous consent, the bill of the Senate (S. 534) to authorize additional allowances of good time and the payment of compensation to prison inmates performing exceptionally meritorious or outstanding services, was taken from the Speaker's table, considered and read twice, ordered to be read a third time, was read a third time by title, and passed.

*Ordered,* That the Clerk notify the Senate thereof.

By unanimous consent the bill H. R. 1999, a similar House bill, was laid on the table.

The bill (H. R. 797) to change the name of the Lugert-Altus irrigation project in the State of Oklahoma to the W. C. Austin project was read by title.

On motion of Mr. TRIMBLE, by unanimous consent, the bill of the Senate (S. 214) to change the name of the Lugert-Altus irrigation project in the State of Oklahoma to the W. C. Austin project, was taken from the Speaker's table, considered and read twice, ordered to be read a third time, was read a third time by title, and passed.

*Ordered,* That the Clerk notify the Senate thereof.

By unanimous consent, the bill H. R. 797, a similar House bill, was laid on the table.

---

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill (H. R. 1467) to amend the act entitled "An act to punish acts of interference with the foreign relations, the neutrality, and the foreign commerce of the United States, to punish espionage, and better to enforce the criminal laws of the United States, and for other purposes," of June 15, 1917, as amended, and the Alien Registration Act, 1940, to increase the penalties for violation of such acts.

When said bill was considered and read twice.

Mr. SPRINGER submitted the following amendments, which were agreed to:

Page 1, line 4, after "follows:", insert *Strike the word "six" where it appears in section 1 (a) and substitute in lieu thereof the word "seven;".*

Page 1, line 4, strike out "Renumber" and insert *renumber.*

The bill, as amended, was ordered to be engrossed and read a third time, was read a third time by title and passed.

*Ordered,* That the Clerk request the concurrence of the Senate in said bill.

---

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill (H. R. 2083) to codify and enact into positive law, title 17 of the United States Code, entitled "Copyrights."

When said bill was considered and read twice.

The following amendments, recommended by the Committee on the Judiciary, were agreed to:

Page 21, line 19, strike out "June 3" and insert *June 18.*

Page 34, line 9, strike out comma after "Puerto Rico" and "and the courts of first instance of the Philippine Islands".

Page 34, line 18, strike out "bill in equity" and insert *complaint.*

Page 39, line 22, strike out "March 2, 1913" and insert *July 1, 1909.*

Mr. ROBSION submitted the following amendment, which was agreed to:

Page 41, lines 8 and 9, strike out "and not exceeding $1 per annum for the catalogs issued during the year for any one class of subjects".

The bill, as amended, was ordered to be engrossed and read a third time, was read a third time by title and passed.

*Ordered,* That the Clerk request the concurrence of the Senate in said bill.

---

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill (H. R. 3190) to revise, codify, and enact into positive law title 18 of the United States Code, entitled "Crimes and Criminal Procedure."

When said bill was considered and read twice.

Mr. WALTER submitted the following amendment, which was agreed to:

Page 434, line 11, after "of", strike out "three" and insert *five.*

The bill, as amended, was ordered to be engrossed and read a third time, was read a third time by title, and passed.

*Ordered,* That the Clerk request the concurrence of the Senate in said bill.

### BILLS PASSED OVER

By unanimous consent, bills of the following titles were severally passed over without prejudice and retain their places on the Consent Calendar:

S. 26. An act to make criminally liable persons who negligently allow prisoners in their custody to escape.

S. 321. An act to amend section 17 of the Pay Readjustment Act of 1942, so as to increase the pay of cadets and midshipmen at the service academies, and for other purposes.

H. R. 174. A bill to amend section 26, title I, chapter 1, of the act entitled "An act making further provision for a civil government for Alaska, and for other purposes," approved June 6, 1900 (31 Stat. 321), as amended by the act of May 31, 1938 (52 Stat. 588).

H. R. 673. A bill to repeal certain provisions authorizing the establishing of priorities in transportation by merchant vessels.

H. R. 966. A bill to amend section 14 of the Veterans' Preference Act of June 27, 1944 (58 Stat. 387).

H. R. 2229. A bill to amend the act of June 25, 1938, relating to the appointment of postmasters under civil service.

H. R. 2759. A bill to amend the Interstate Commerce Act, as amended, so as to provide limitations on the time within which actions may be brought for the recovery of undercharges and overcharges by or against common carriers by motor vehicle, common carriers by water, and freight forwarders.

H. R. 3214. A bill to revise, codify, and enact into law title 28 of the United States Code entitled "Judicial Code and Judiciary."

### BILLS OBJECTED TO

One objection being made to the consideration of the bill (H. R. 1556) to provide basic authority for the performance of certain functions and activities of the Bureau of Reclamation, said bill was passed over on the Consent Calendar, under the rule.

Three objections being made to the consideration of the joint resolution (H. J. Res. 152) relating to the marketing of Virginia sun-cured tobacco under the Agricultural Adjustment Act of 1938, as amended, said bill was stricken from the Consent Calendar.

---

Motions severally made to reconsider the votes whereby each bill and joint resolution on the Consent Calendar was disposed of today were, by unanimous consent, severally laid on the table.

### COMMITTEE ON ARMED SERVICES

Mr. ALLEN of Illinois, from the Committee on Rules, called up the following resolution (H. Res. 141):

*Resolved,* That the Committee on Armed Services, acting as a whole or by subcommittee, is authorized and directed to conduct thorough studies and investigations relating to matters coming within the jurisdiction of such committee under rule XI (1) (c) of the Rules of the House of Representatives, and for such purposes the said committee or any subcommittee thereof is authorized to sit and act during the present session of Congress at such times and places, whether the House is in session, has recessed, or has adjourned, to hold such hearings, and to require by subpena or otherwise the attendance and testimony of such witnesses and the production of such books, records, papers, and documents, as it deems necessary. Subpenas may be issued over the signature of the chairman of the committee, or by any member designated by such chairman, and may be served by any person designated by such chairman or member. The chairman of the committee or any member thereof may administer oaths to witnesses.

The committee shall report to the House of Representatives during the present session of Congress the results of its studies and investigations with such recommendations for legislation or otherwise as the committee deems desirable.

When said resolution was considered.

After debate,

On motion of Mr. ALLEN of Illinois, the previous question was ordered on the resolution to its adoption or rejection, and under the operation thereof, the resolution was agreed to.

A motion to reconsider the vote whereby said resolution was agred to was, by unanimous consent, laid on the table.

### COMMITTEE ON PUBLIC LANDS

Mr. ALLEN of Illinois, from the Committee on Rules, called up the following resolution (H. Res. 93):

*Resolved,* That the Committee on Public Lands (now comprised of the six former Committees on Insular Affairs, Territories, Public Lands, Irrigation and Reclamation, Mines and Mining, and Indian Affairs) may make investigations into any matter within its jurisdiction. For the purpose of making such investigations the committee, or any subcommittee thereof, is authorized to sit and act during the present Congress at such times and places within or outside the United States, whether the House is in session, has recessed, or has adjourned, to hold such hearings, and to require, by subpena or otherwise, the attendance and testimony of such witnesses and the production of such books, records, correspondence, memoranda, papers, and documents, as it deems necessary. Subpenas may be issued under the signature of the chairman of the committee or any member of the committee designated by him, and may be served by any person designated by such chairman or member.

When said resolution was considered.

After debate,

On motion of Mr. ALLEN of Illinois, the previous question was ordered on the resolution to its adoption or rejection, and, under the operation thereof, the resolution was agreed to.

A motion to reconsider the vote whereby said resolution was agreed to was, by unanimous consent, laid on the table.

### COMMITTEE ON INTERSTATE AND FOREIGN COMMERCE

Mr. ALLEN of Illinois, from the Committee on Rules, called up the following resolution (H. Res. 153):

*Resolved,* That, effective from January 3, 1947, the Committee on Interstate and Foreign Commerce, or any duly authorized subcommittee thereof, is authorized to continue the investigation begun under authority of House Resolution 318 of the Seventy-ninth Congress, and for such purposes shall have the same power and authority as that conferred by such House Resolution 318. The committee may from time to time make such preliminary reports to the House as it deems advisable; and shall, during the present Congress, report to the House the results of its investigation, together with such recommendations as it deems advisable. Any report submitted when the House is not in session shall be filed with the Clerk of the House.

When said resolution was considered.

After debate,

On motion of Mr. ALLEN of Illinois, the previous question was ordered on the resolution to its adoption or rejection, and, under the operation thereof, the resolution was agreed to.

A motion to reconsider the vote whereby said resolution was agreed to, was, by unanimous consent, laid on the table.

### ENROLLED BILLS SIGNED

Mr. LECOMPTE, from the Committee on House Administration, reported that that committee had examined and found truly enrolled bills of the House of the following titles, which were thereupon signed by the Speaker:

H. R. 450. An act providing for the conveyance to the town of Marblehead, in the State of Massachusetts, of Marblehead Military Reservation for public use.

H. R. 1098. An act to authorize the segregation and expenditure of trust funds held in joint ownership by the Shoshone and Arapaho Tribes of the Wind River Reservation.

### ENROLLED SENATE JOINT RESOLUTION SIGNED

The SPEAKER announced his signature to an enrolled joint resolution of the Senate of the following title:

S. J. Res. 102. Joint resolution to permit United States common comunications carriers to accord free communication privileges to official participants in the world telecommunications conferences to be held in the United States in 1947.

### LEAVE TO ADDRESS THE HOUSE

On motion of Mr. BENNETT of Missouri, by unanimous consent,

thereupon, at my request, the Attorney General on March 19 instituted an action and obtained an injunction in the United States District Court for the Eastern District of Tennessee. This order enjoined both the Corporation and the Council, and all persons in active participation with them, from engaging in any strike or lock-out or from interfering with normal continuance of work, or from making any change in terms or conditions of employment other than by mutual agreement.

On March 24 I reconvened the Board of Inquiry. Negotiations between the parties continued, with the assistance of the Federal Mediation and Conciliation Service. On May 18 the Board of Inquiry submitted to me its second report, stating that the position of the parties remained unaltered and the dispute unsettled.

On June 1 and 2 the National Labor Relations Board conducted a secret ballot of the employees to ascertain whether they wished to accept the final offer of settlement as stated and made by the employer. The employees, by a vote of 771 to 26, rejected the employer's last offer. On June 7 the National Labor Relations Board certified to the Attorney General the results of this election. On June 8 the employees at a union meeting took action looking to a possible stoppage if the injunction were lifted and if the employer unilaterally placed in effect the terms proposed in its final offer.

On June 10, pursuant to section 210 of the Labor Management Relations Act, the Attorney General moved the court to discharge the injunction. The injunction was discharged on June 11.

During this period, the parties continued negotiations, with the assistance of the Federal Mediation and Conciliation Service. On June 15 the parties reached agreement on the terms of a new contract.

All parties to this dispute and the Government agencies concerned complied with all legal and procedural requirements of title II of the Labor Management Relations Act, 1947.

A number of additional facts concerning this dispute are set forth in the first and second reports of the board of inquiry. Copies of these reports are transmitted to the Congress with this message.

Both parties are to be commended for achieving settlement of this dispute without an interruption of work.

The dispute at Oak Ridge has raised some question, nevertheless, as to the sufficiency of present collective-bargaining methods in atomic-energy installations.

This question is somewhat different from others which have arisen in the past. On the one hand, it is clear that the national security and the development of the beneficial arts and sciences are bound up with the progress of our atomic-energy program. Thus, every dispute which threatens to seriously impair that program imperils the national health and safety.

On the other hand, it is equally clear that the progress of our atomic-energy program requires the support and drive of broad sectors of the American economy. In order to encourage such support, the Atomic Energy Commission has lodged in its contractors a large measure of responsibility and authority. The progress of the program is equally dependent upon the full and willing support of the men and women who work in atomic-energy plants and laboratories.

Under these circumstances, it is imperative that the most successful techniques of the collective-bargaining process should be adopted for the atomic-energy program.

The objective should be twofold: The parties should continue to enjoy the maximum of voluntary action and freedom of choice; secondly, the public interest must be protected at all times.

I believe that special study should be given to the problem of peaceful and orderly settlement of labor disputes in Government-owned, privately operated atomic-energy installations, such as those at Richland, Wash.; Oak Ridge, Tenn.; Los Alamos, N. Mex.; the Argonne National Laboratory, Chicago, Ill.; and others.

I propose, therefore, to establish a commission composed of men having expert knowldege in the field of labor relations, to study this problem and to make such recommendations as they may find necessary. The commission should explore the question whether any special legislation should be enacted to protect the national interest without depriving management or labor organizations of the initiative and freedom necessary for the progress of our atomic-energy program. The commission should study ways and means of adapting to the atomic-energy program the best of our experience in the complex field of labor relations. The commission should concern itself also with special aspects of the problem, such as questions of bargaining representation, uniformity of working conditions and wages, and procedures for grievance handling.

The commission should concern itself, in short, with the broad code of conduct which should be observed by management and labor in their relations with each other in this vital program.

In appointing this commission I shall request the advice of the Atomic Energy Commission and the Joint Committee on Atomic Energy both as to the membership of the commission and the specific questions to be studied.

I believe that the report of this commission, which should be submitted as soon as possible, will be of great value in guiding contractors, labor organizations, and the Government in this new and vital field. I am confident that this is the best avenue to follow to achieve and maintain that proper balance between freedom and responsibility which is the tradition in all our economic relations, including those between management and labor.

HARRY S. TRUMAN.
THE WHITE HOUSE, *June 18, 1948.*

The message was referred to the Committee on Education and Labor and ordered to be printed.

### MESSAGE FROM THE SENATE

A further message from the Senate by Mr. Carrell, one of its clerks, announced that the Senate had passed, with amendments in which the concurrence of the House is requested, bills of the House of the following titles:

H. R. 3190. An act to revise, codify, and enact into positive law, title 18 of the United States Code, entitled "Crimes and Criminal Procedure."

H. R. 5710. An act to amend the Act entitled "An act to expedite the provision of housing in connection with national defense, and for other purposes," approved October 14, 1940, as amended.

The message also announced that the Senate insists upon its amendment to the foregoing bill, requests a conference with the House on the disagreeing votes of the two Houses thereon, and appoints Mr. CAIN, Mr. BUCK, and Mr. FULBRIGHT to be the conferees on the part of the Senate.

The message also announced that the Senate agrees to the report of the committee of conference on the disagreeing votes of the two Houses on the amendment of the Senate to the bill (H. R. 2192) entitled "An act for the relief of the Massman Construction Company."

The message also announced that the Senate had passed without amendment bills and joint resolutions of the House of the following titles:

H. R. 333. An act for the relief of sundry residents of Alaska, veterans of World War II.

H. R. 371. An act for the relief of Jenness C. Thomas.

H. R. 564. An act for the relief of Sarah Lee Cregg.

H. R. 700. An act for the relief of Anthony Arancio.

H. R. 851. An act for the relief of Adney W. Gray.

H. R. 911. An act for the relief of Kam Fong Chun, Mr. and Mrs. Jose Dias, Joseph De Souza, Mr. and Mrs. Kenneth Ayres, and Jose Oducado.

H. R. 912. An act for the relief of Hiro Higa and Kana Higa.

H. R. 1220. An act for the relief of James Sigler and Frederick P. Vogelsland III.

H. R. 1409. An act for the relief of Frantisek Jiri Pavlik or Georg Pavlik.

H. R. 1490. An act for the relief of the United States Radiator Corp. of Detroit, Mich.

H. R. 1642. An act for the relief of Miss Rosella M. Kostenbader.

H. R. 1779. An act for the relief of the Winona Machine & Foundry Co., a corporation of Winona, Minn.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,      )<br>                              )<br>            Plaintiff,        )<br>                              )     No. 02 CR 200<br>      v.                      )<br>                              )     Judge Wayne R. Andersen<br>TROY LAWRENCE,                )<br>                              )<br>            Defendant.        ) | |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on Troy Lawrence's Motion to Suppress Title III Recordings and Motion Regarding Jurisdiction. For the following reasons, the motions are denied.

## BACKGROUND

On December 18, 2003, after a three and a half month jury trial, Defendant Troy Lawrence was found guilty on sixteen counts of a drug conspiracy indictment and related charges. Mr. Lawrence currently is awaiting sentencing and has filed two motions which are now before the Court. We will address each of these motions in turn.

### I. Motion To Suppress Title III Recordings

A. Background

During the course of the investigation that led to the current indictment, pursuant to 18 U.S.C. §§ 2510 *et seq.*, the Drug Enforcement Administration (DEA) intercepted wire communications over defendants Troy Lawrence's and Levert Griffin's cellular phones for a total of three thirty-day periods from November 2001 to February 2002. Specifically, from November 2, 2001 through January 2, 2002, the DEA intercepted conversations concerning the

conspiracy on a cellular phone used by Levert Griffin and from January 7, 2002 through February 5, 2002, the DEA intercepted conversations concerning the conspiracy on a cellular phone used by Troy Lawrence. During the wiretaps, thousands of calls were intercepted between Lawrence and Griffin and various individuals, including many pertinent calls with their co-defendants discussing all aspects of the drug-trafficking operation and other aspects of the conspiracy.

The computer system used by the DEA's Chicago office to intercept wire communications is manufactured by Verint Systems, Inc. and is designed to handle the interceptions of numerous phone lines at the same time. When a call first enters the system from the service provider, the audio portion of the call is first directed to a hard drive that acts as a buffer, or temporary holding site, for the audio portion of the call. The hard drive acts as the buffer for all of the intercepted phone lines that are ongoing in the DEA's Chicago office. The audio is then automatically written from the buffer to a MO disk that is given the label "master." The audio portion of the call is also automatically written to at least one other MO disk that is labeled "duplicate," though it contains the same data as the "master" and is otherwise indistinguishable from the "master." When the audio portion of the call is directed to the hard drive buffer and to the MO disk, the interception system encodes the audio pursuant to proprietary encoding methods maintained by Verint. The encoding methods both lock the audio itself as well as spreads the audio onto segments all over the MO disk such that the decoding formula owned by Verint must be used to put the audio back together into a coherent, understandable communication.

In addition, as the audio portion of the call is being received by the hard drive, the interception system also generates session data for the call comprised of a session number, date, start time, and at the end of the call, an end time and call duration. The session data is first stored on a hard drive separate from the audio portion. The system then writes the session data, along with the audio portion, to the MO disk.

On October 29, 2003, the government moved to unseal the previously sealed MO disks containing the recordings that were the subject of defendant's motion in order to compare the sealed disks to the duplicate originals of the disks and, on October 30, 2003, this Court granted the government's motion to re-seal the disks after the comparisons were made and showed that the previously-sealed disks had the same data as the duplicate originals.

Troy Lawrence has filed a motion seeking to suppress the Title III recordings on the grounds that the government did not present to the Court for sealing the hard drives of the computer equipment used in conducting the intercepts, but rather presented for sealing the magneto optical disks ("MO disks"), which were prepared from information gathered in the first instance on the hard drive.

Mr. Lawrence argues that the government was under an obligation to seal the "original"recording of the intercepted calls and that the government failed to do so because it sealed MO disks rather than the hard drive that is part of the computer system that accomplishes the interception. For the reasons detailed below, Mr. Lawrence's argument is without merit because there is no statutory obligation to seal the "original" recording of intercepted calls; rather, the MO disk is the "device" onto which the recordings are made, and it is only the recordings on the "device" that must be sealed. 18 U.S.C. §2158 (8)(a). Moreover, sealing the

3

hard drive is impractical and senseless given the way in which the computer system conducts the interception.

B. Discussion

The primary purpose of §2158 (8)(a) "is to ensure the reliability and integrity of evidence obtained by means of electronic surveillance." *United States v. Ojeda-Rios*, 495 U.S. 257, 263 (1990). The statute does not require the sealing of an "original" recording. Rather, with regard to recordings, the statute requires that the intercepted communications be: (1) recorded on tape or wire or "other comparable device"; and (2) recorded "in such a way as will protect the recording from editing or other alterations."

As applied to the technology used by the DEA, the MO disk meets those requirements: (1) it is a "comparable device" on which the communications are recorded; and (2) the calls are recorded in a way that protects against editing and alteration. The MO disk is the first single storage "device" that contains all of the information necessary to play the intercepted communications. The hard drive buffer containing the audio portion of the call has neither the session data (to identify the call) nor the data necessary de-code the audio of the call and reassociate the separate portions of the call, both of which initially are stored on a separate hard drive. In other words, the MO disk is the first single device from which a comprehensible call can be played.

With regard to the second feature of recordings to be sealed, the calls on the MO disk are protected against editing and alteration. Only the Verint system can read (de-code) the MO disk. There is no editing or alteration function in the system. Moreover, access to the system itself is

4

limited both physically (the rooms in which the system is located have restricted access) and through the use of password protection on the system.

In sum, we find that the statute does not require the sealing of an "original," but rather that the statute requires that the government seal a "device" "so as to ensure an inability to manipulate or edit or change what has been captured." We find that the government's sealing of the MO disk in this case ensures the reliability and integrity of the evidence.

For these reasons, Troy Lawrence's motion to suppress the Title III recordings are denied.

## II. Motion Regarding Jurisdiction

Troy Lawrence next argues that his conviction is invalid because the statute relied upon for subject-matter jurisdiction, 18 U.S.C. § 3231, never passed both houses of Congress in 1948 and is thus void. Mr. Lawrence argues that, because of a defect in the 1948 passage of Public Law No. 80-772, § 3231 as well as all subsequently enacted statutes which rely on § 3231 for district court jurisdiction are similarly invalid.

We find that this Court does have jurisdiction over Mr. Lawrence pursuant to 18 U.S.C. § 3231. The 1948 amendment to that statute passed both houses of Congress and was signed into law by President Truman on June 25, 1948. Therefore, the amendments and statutes relied upon for jurisdiction in this case were properly enacted and are binding. Mr. Lawrence has offered no legitimate evidence or case law to the contrary. Of course, even if the 1948 amendment to § 3231 were somehow questionable, this Court would retain jurisdiction over this case because the predecessor statute to § 3231, to which Mr. Lawrence offers no challenge, provides for such jurisdiction as well.

For these reasons, Mr. Lawrence's Motion Regarding Jurisdiction is denied.

## CONCLUSION

For the foregoing reasons, Troy Lawrence's Motion to Suppress the Title III Recordings and Motion Regarding Jurisdiction are denied.

It is so ordered.

                                                              Wayne R. Andersen
                                                              United States District Judge

Dated: January 27, 2006