### UNITED STATES DISTRICT COURT FOR THE
### DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

                PLAINTIFF,

VS.

DEBORAH JEANE PALFREY,

                DEFENDANT.

_____/

**CRIMINAL CASE NUMBER: 07-046-JR**

**DEFENDANT'S MOTION TO RECONSIDER**

Defendant Deborah Jeane Palfrey, by and through her undersigned counsel, moves this Court to reconsider (i) its order denying Defendant access to her own documents seized by the government and (ii) the predecessor judge's order denying an evidentiary hearing upon the government's 18 U.S.C. §1514 "*Ex-Parte* Application for Temporary Restraining Orders, and a Protective Order and Request for Hearing" [D.E. # 14], and for grounds in support states:

### I.  DEFENDANT IS ENTITLED TO ACCESS TO DOCUMENTS SEIZED FROM HER

In response to Defendant's Motion to Compel Disclosure [D.E. #166], this Court simply stated that the motion was "denied" without further elaboration.  Such a ruling which trespasses upon clearly stated statutory rights and upon which the government offered <u>no</u> authority must be re-visited by this Court and, if only to create an appellate record which can be meaningfully reviewed, the *ratio decidendi* detailed.

Plainly, Rule 16(a)(1)(E) provides in pertinent part: "Upon a defendant's request, the government **must** permit the defendant to inspect and to copy or photograph . . . documents . . . if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense . . . or, (iii) the item was obtained from or belongs to the defendant."  Here,

1

Defendant has requested such an opportunity to "inspect" and the government has <u>denied</u> that opportunity. Instead, the government has provided poorly photocopied and heavily redacted copies to Defendant. A few samples are attached which demonstrate the redaction and impossible-to-read photocopies of Defendant's own documents seized from her.

Is Defense counsel required to go blind trying to read the 2000+ pages of seized documents? This is the sort of gamesmanship this Court must not invite by ignoring. *Accord*: *United States v. Marshall*, 132 F.3d 63, 69 (D.C. Cir. 1998)("To the contrary, a prosecutor may not sandbag a defendant by "the simple expedient of leaving relevant evidence to repose in the hands of another agency while utilizing his access to it in preparing his case for trial." *Braze*l, 102 F.3d at 1150 (quoting *United States v. Trevino*, 556 F.2d 1265, 1272 (5th Cir.1977)).

In support of this defalcation of Rule 16(a)(1)(E)'s clear injunction, the government simply and *ex cathedra* states: "By providing the defendant and her attorney with scanned copies of items material to the preparation of the defendants defense, items seized from the defendant, and items the government intends to use in its case-in-chief at trial, the government has fulfilled its Rule 16 obligations with respect to "documents" in the governments possession and "documents" seized from the defendant." (Gov. Opp. to Defendant's Motion to Compel Disclosure, [D.E. #189]. pp. 6-7). This conclusory statement cites no authority for the proposition that "to inspect and to copy" can be changed to "inspect redacted and poorly reproduced" copies, which is what the government has done here.

Moreover, this Court has now sanctioned a material breach from the express terms of Rule 16(a)(1)(E)'s mandate to allow a Defendant access to the documents seized from her <u>without</u> any explanation for such a radical departure from the Rules of Criminal Procedure. Such a ruling

violates the spirit if not the letter of Federal Rules of Civil Procedure, Rule 52(a).[1]

Finally, the denial of access to Defendant to the original and unredacted documents seized from Defendant is delaying this matter and creating substantial harm to Defendant in the preparation of her defense. First, as the identifying information of the former escorts in Defendant's records has been redacted, Defendant is precluded from using that information to locate and contact potential witnesses in her defense as is her inalienable right under the Sixth Amendment. Moreover, there is likely a trove of exculpatory materials in the documents seized from Defendant, but she can't find and utilize such given the poor quality and redaction of that material. Last, this Court should not discount the intangible benefit of reviewing original documents as opposed to the mind-numbing experience of staring at a two-dimensional computer screen for hours on end to review thousands of documents. Singularly and collectively, these points force the conclusion that to deny Defendant access to her own original, unredacted documents is a denial of a fundamental right which is causing fundamental harm to her in the preparation of her defense.

Accordingly, this Court must act by reconsidering and stating[2] the basis for its order and in

---

[1]    As we have stressed repeatedly in the past, the Rule 52(a) requirements that facts be stated specially, and conclusions of law separately, **impose on the trial court an obligation to ensure that its *ratio decidendi* is set forth with enough clarity to enable a reviewing court reliably to perform its function; namely, to review the conclusions of law *de novo* and the essential findings of fact for clear error**." *Touch v. Master Unit Die Prods., Inc.,* 43 F.3d 754, 759 (1st Cir. 1995)(Emphasis added).

[2]    In *Black v. Romano* 471 U.S. 606 (1985), Justice Marshall in his concurrence wrote: "he theme unifying these cases is that whether due process requires written reasons for a decision, or for a particular step in the decision making process, is, like all due process questions, to be analyzed under the three-factor standard set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). When written reasons would contribute significantly to the "fairness and reliability" of the process by which an individual is deprived of liberty or property, *id*., at 343, reasons must be given in this form unless the balance between the individual interest affected and the burden to the government tilts against the individual. *Id*., at 335. Whether written reasons would make such a contribution in

particular why sanctions have not been imposed upon the government for its obfuscatory behavior.[3]

As such, this Court must re-consider its order <u>denying</u> to Defendant access to her own documents in original and un-redacted form.

---

any particular case depends on a variety of factors, including the nature of the decision making tribunal, the extent to which other procedural protections already assure adequately the fairness and accuracy of the proceedings, and the nature of the question being decided."(Footnotes omitted.)

[3]    Rule 16(d)(2) further states that if a party fails to comply with the requirements of Rule 16, the district court may "order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions; grant a continuance; prohibit that party from introducing the undisclosed evidence; or enter any other order that is just under the circumstances." Fed.R.Crim.P. 16(d)(2). In selecting a proper sanction, a court should consider the reasons the government delayed producing the requested materials, including (1) whether the government acted in bad faith; (2) the extent of prejudice to the defendant as a result of the delay; and (3) the feasibility of curing the prejudice with a continuance. *United States v. Gonzales*,164 F.3d 1285, 1292 (10th Cir. 1999).

## II.  THIS COURT SHOULD RECONSIDER THE DENIAL OF A HEARING ON THE §1514 "*EX-PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDERS"

Plainly, this Court has the authority to reconsider [4] the orders of a pre-transfer judge.[5]  In this instance, the curious rulings of Judge Kessler in regards to the government's 28 U.S.C. §1514 "Ex-Parte Application for Temporary Restraining Orders" deserves such reconsideration if only to avoid the appearance of unfairness and bias by Judge Kessler which issue has now been denied adjudication through a 28 U.S.C. §144[6] and/or 28 U.S.C. §455(a)[7] motion by reason of the

---

[4]        "It is a well established rule that a district judge always has the power to modify or to overturn an interlocutory order or decision while it remains interlocutory." *Hodgson v. United Mine Workers of America*, 473 F.2d 118, f/n #38 (D.C. Cir. 1972).

[5]        *See: Gillig v. Advanced Cardiovascular Systems, Inc.,* 67 F.3d 586 (6th Cir. 1995)("However, pre-transfer orders 'should not be treated as a special breed.' MOORE, ET AL., supra, at p 0.404[4.-2]. Indeed, "transfer should no more freeze prior rulings than it should require their routine reexamination." *Id.* Accordingly, judges should have, and do have, the discretion to determine when to reconsider pre-transfer orders in light of the interests that have been advanced by the doctrine of the law of the case."); *Hill v. Pitt & Greene Elec. Membership Corp.,* 161 F.3d 2 (4th Cir. 1998)("While courts generally adhere to this principle and decline to revisit previously decided issues, the law of the case is only matter of practice and as such does not limit the power of the court to reopen matters already decided."); *CNF Constructors, Inc. v. Donohoe Constr. Co.*, 57 F.3d 395, 398 n. 1 (4th Cir.1995)(stating that the law of the case doctrine is "discretionary and not mandatory"); *Capital Investors Co. v. Executors of Morrison's Estate*, 584 F.2d 652, 654 (4th Cir.1978) ("The principle [of law of the case] is not absolute nor inflexible.").

[6]        § 144. Bias or Prejudice of Judge. Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding. The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith

[7]        § 455. Disqualification of Justice, Judge, or Magistrate Judge. (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his

singularly-timed transfer of this matter to this Court.  *Accord*: *Peters v. Kiff*,  407 U.S. 493, 502 (1972)("Moreover, even if there is no showing of actual bias in the tribunal, this Court has held that due process is denied by circumstances that create the likelihood or the appearance of bias.")

### A.    BACKGROUND

On March 16, 2007, the government filed a motion for an *ex parte* temporary restraining order seeking to restrain further proceedings in the *Palfrey v. Neble et al.*, breach of contract case.  The Court granted that *ex parte* request and entered its order staying the *Palfrey v. Neble* suit.  [D.E. #s 12 and 17].  Defendant subsequently moved to dissolve those order.  [D.E. #106].

The Court then set an evidentiary hearing as required by §1514 upon such motion for November 28, 2007.  [D.E. #153].  However, upon reconsideration, the Court then cancelled the hearing and instead continued the stay upon entirely different ground of inherent authority of the Court to manage its own affairs.  [D.E. #191, p. 5].

Defendant promptly moved to reconsider the order cancelling the hearing which Judge Kessler denied without addressing the merits of Defendant's arguments.  [D.E. #201].

Defendant now unabashedly is seeking a second bite at the apple as (i) Judge Kessler simply summarily denied Defendant's motion to reconsider and (ii) the "appearance of bias" here demands a *de novo* review by this Court.  Simply stated, Congress set the standard for staying parallel civil proceedings which the government can not now meet.  As such, a court should not be able to (i) *ex parte* invoke §1514 and then deny to Defendant the right to an adversarial evidentiary hearing by invoking its "inherent authority".

--------

impartiality might reasonably be questioned.

## B.    DEFENDANT WAS DENIED DUE PROCESS

In the Order cancelling the November 28, 2007, hearing [D.E. #191, p. 4], the Court states: "The Court's order granting the TRO and Protective Order relied on 18 U.S.C. §1514. They did not reach the government's arguments based upon the inherent authority of the Court to manage its own affairs. Given that there is now substantial doubt as to whether the Government can satisfy the requirements of §1514 the Court will turn to the issue of whether it possesses inherent authority to enter and maintain the Protective Order."

Simply put, the government did **not** in either its: (i) "*Ex-Parte* Application for Temporary Restraining Orders, and a Protective Order and Request for Hearing" [D.E. # 14] or (ii) Opposition to Defendant's Pro Se First Omnibus Motion [D.E. # 117], raise the "inherent authority" of the Court *argument* to premise its application to enjoin the *Palfrey v. Neble* suit, instead relying underline exclusively upon the Congressionally-established witness protection scheme laid out in 18 U.S.C. §1512 and §1514.

As such, Defendant was underline denied the opportunity to present legal and factual arguments to the Court in opposition to the Court's *sua sponte* decision to cancel the hearing set for November 28, 2007, before that order was entered. Clearly, this behavior violates basic tenets of due process.

## C.    DEFENDANT WAS REQUIRED TO PROVE HER SUIT SERVED A LEGITIMATE PURPOSE

Moreover, in footnote #5 of the Order, this Court concluded: "Obviously this witness list demonstrates that Defendant has no intention of adhering to the specific limited purpose of for which the hearing was set – whether the Protective Order should be dissolved – but to plan to use the hearing as an alternative (and improper means) of obtaining discovery."

7

The "limited purpose of the hearing" was to determine whether Defendant's civil suit was "harassment" as that term was defined by §1514. Plainly, a collateral effect of the Court ordered hearing would be the revelation of evidence that might not otherwise be available until trial. However, the primary – **and proper** – purpose of each witness sought by the Defendant at the hearing was to persuade this Court that the government could not meets its burden of establishing "harassment" under §1514.

As this Court has repeatedly noted, "harassment" has a specific statutory meaning in this context of the government's application to stay the *Palfrey v. Neble* suit: "the term "harassment" means a course of conduct directed at a specific person that . . .(B) serves no legitimate purpose." 18 U.S.C. §1514(c)(1).

Hence, Defendant intended to establish that her breach of contract lawsuit against Paula Neble had a "legitimate purpose". In other words, that the law suit was a non-frivolous attempt to seek redress for the wrong of Paula Neble breaching her contract not to engage in illegal behavior.

Defendant's proof would have taken two forms. First, that such a contract existed, a fact conceded by all involved. Second, that the escorts breached that contract by in fact engaging in illegal behavior. Practically, the only people who know what actually happened in the privacy of a customer's home or hotel room – the only locations Defendant's escorts visited – are (i) the escort and (ii) the customer.

Here, the government has repeatedly refused to bring forward Paula Neble to testify as to whether she breached her contract not to engage in illegal behavior, though it is reasonable to believe that Ms. Neble testify to that end at the grand jury given her prior public statements. (See: July 31, 2007, WTOP news report attached hereto.) Moreover, both the government and Ms. Neble's counsel

has <u>refused</u> to reveal Ms. Neble's location so that she can be subpoenaed to testify as to whether she breached her contract. Accordingly, Defendant was left with no choice but to subpoena Ms. Neble's counsel in order to obtain the location of Ms. Neble so she could be subpoenaed to testify of the truth of AUSA Cowden's representations to the Court that the lawsuit was causing her substantial emotional distress.[8]

That left to Defendant only the customers to testify as to whether there was a breach of contract by Ms. Neble or not. Given that the government has seized all of Defendant's records and refused to reveal un-redacted copies of those records, Defendant is unable to identify her customer <u>save</u> through the kindness of strangers combing her publically released telephone records.

That "combing" has resulted in the identification of <u>only</u> two customers visited by Ms. Neble. First, Harlan Ullman who successfully dodged attempts to serve him with a subpoena for the hearing.

That left Senator Vitter as the only presently identifiable customer of Ms. Neble. This assertion is based upon the following three facts which establish by syllogism the relevance of Senator Vitter's testimony:

- During 1999, 2000 and 2001, Senator Vitter's telephone number was (202) 548-4736;

- During 1999, 2000 and 2001, Paula Neble's telephone number was (202) 251-5678;

- The telephone records of the Defendant's Escort Service for October 12, 1999, September 18, 2000, and February 11, 2001, copies of which are attached, demonstrate unequivocally that within thirty (30) minutes after Vitter called the service, Paula Neble was called. Accordingly, given the practice of

---

[8]    Notably, in her motion to quash that subpoena, Ms. Neble's attorney did <u>not</u> cite a single case for the proposition that the location of a client is attorney-client privileged information.

> booking utilized by the Defendant's escort service, Ms. Neble was the escort dispatched to Vitter on these three dates.
>
> ∴  Vitter <u>was</u> a customer of Defendant's escort service who had appointments on three occasions with Paula Neble.

As such, the subpoena of Senator Vitter was justified for the hearing.

Finally, the subpoena of AUSA Cowden was likewise necessary and reasonable. This Court entered its *ex parte* order pursuant to 18 U.S.C. §1512 and §1514 restraining the pursuit of the suit against Paula Neble *solely* upon the representations of AUSA William Cowden contained in his "*Ex-Parte* Application for Temporary Restraining Orders, and a Protective Order and Request for Hearing." ("*Ex Parte* Application"). [D.E. #14]. Significantly, that *Ex Parte* Application was made by AUSA Cowden: (i) pursuant to the certification requirement of 18 U.S.C. §1514(a)(2)(A)[9] and 18 U.S.C. §1001.

In that The *Ex Parte* Application, AUSA Cowden represented to the Court that:

- "The actions of Palfrey and attributable to the attorney representing her in her civil proceedings constitute witness intimidation and harassment. (*Ex Parte* Application, p. 1);

- "The facts show that Ms. Palfrey's pursuit of the lawsuit she has filed in this Court against some witnesses to the operation of her criminal enterprise, as well as her threats to expose the identities of other potential witnesses, are for the purpose of retaliating against witnesses for possibility providing information to law enforcement officers or for testifying before the Grand Jury, and an effort to

---

[9]    "A temporary restraining order may be issued under this section without written or oral notice to the adverse party or such party's attorney in a civil action under this section if the court finds, upon written certification of facts by the attorney for the Government, that such notice should not be required and that there is a reasonable probability that the Government will prevail on the merits."

obstruct or impede the Government's effort to prosecute Palfrey."
(*Ex Parte* Application, p. 10).;

● "The context in which Palfrey filed her most recent lawsuit shows that it, too, was done to harass and to attempt to have witnesses in a federal criminal prosecution recant testimony rather than as a legitimate effort to collect damages against individuals who have breached contracts Palfrey never intended to enforce. As Mr. Sibley must know from his unsuccessful efforts to file similar suits in Florida, there is no legal basis for imposing liability against witness, let alone witnesses who disclose criminal activity." (*Ex Parte* Application, p. 11).

Hence, AUSA Cowden was an appropriate witness as it was he <u>alone</u> who made the certified representations to the Court <u>solely</u> under §1514 of "harassment" which he knew meant only two things under the statute: "(A) causes substantial emotional distress in such person; and (B) serves no legitimate purpose." 18 U.S.C. §1514(c)(1).

Accordingly, for this Court to conclude that "Defendant has no intention of adhering to the specific limited purpose of for which the hearing was set", simply <u>ignores</u> the factual and legal underpinnings of the record before it.

### D.    THE COURT'S DISINGENUOUS REASONING

Here, Congress commanded this Court to hold a hearing under §1514 but this Court has circumvented that hearing for the apparent reasoning of (i) avoiding the public embarrassment of a United States Senator properly subpoenaed for that hearing and (ii) avoiding the devastating cross-examination of an assistant United States Attorney who made material misrepresentations to the Court in order to obtain an *ex parte* temporary restraining order. Compounding the latter, when faced with being called to undergo the engine of truth which is cross-examination that AUSA not only refused to appear, but refused to even accept a subpoena, hiding instead behind the *praetorian*

guard at his office door.

By such action, this inferior Court has subverted that Congressional scheme and thereby denied to Defendant her right to access court. This, the Court is without power to do.

"It is axiomatic that Congress can limit the jurisdiction of the lower federal courts. *E.g., Keene Corp. v. United States*, 508 U.S. 200, 207 (1993) ("Congress has the constitutional authority to define the jurisdiction of the lower federal courts. . . .")." Additionally, Congress can – and has– preempted the field of delaying access to Court by enacting the Victim and Witness Protection Act of 1982, Pubic Law 97-291 thereby removing this Court's discretion in this matter. *Accord*: *Empacadora de Carnes de Fresnillo, S.A. de C.V. v. Curry,* 476 F.3d 326, 333(5th Cir. 2007)("Field preemption requires a clear congressional intent. *Cal. Fed. Sav. & Loan v. Guerra*, 479 U.S. 272, 281 (1987). It occurs when a federal statute's scope "indicates that Congress intended federal law to occupy a field exclusively." *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995)"). Here, Congress has analogously preempted the field of denying access to Court by establishing the burden of proof necessary – no legitimate purpose – before a suit maybe enjoined by this Court under §1514.

Moreover, under the Rules Enabling Act, this Court <u>cannot</u> establish a "rule" which violates a fundamental right. The Rules Enabling Act, 28 U.S.C. §2072(b) states: "Such rules [of court] shall not abridge, enlarge or modify any substantive right."

Unquestionably, Defendant has a fundamental right to access Court.[10] Accordingly, this

---

[10]     The U.S. Supreme Court has left no doubt that access to the courts is a fundamental right guaranteed by the U.S. Constitution in five different areas:

(i)     The Article IV Privileges and Immunities Clause - *Chambers v. Baltimore & Ohio R. Co.*, 207 U.S. 142, 148, 52 L. Ed. 143, 28 S. Ct. 34 (1907); *Blake v. McClung*, 172 U.S. 239, 249, 43 L. Ed. 432, 19 S. Ct. 165 (1898); *Slaughter-House Cases*, 16 Wall. 36, 79 (1873);

Court <u>cannot</u> by its own "rule" delay and thus deny that "access" without doing violence to the Rules Enabling Act.

### E.    THE COURT USURPS POWER <u>NOT</u> GRANTED TO IT

The Court's citation to *Chambers v. Nasco,* 501 U.S. 32 (1991) for the proposition that it may delay access to Court is simple sophistry. *Chambers* was limited to recognizing the inherent power of a court to manage its own proceedings and to control the conduct of those who appear before them and to punish conduct which abuses the judicial process. *Id.* at 44. Nothing in *Chambers* can be read to justify, as this Court did, maintaining a Protective Order entered under a completely unrelated statutory scheme.

Moreover, the Court's citation to *Landis v. North American Co.*, 299 U.S. 248 (1936) is intellectually dishonest. What this Court omitted from its quotation from *Landis* was the concluding statement that: "True, the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else. Only in rare circumstances will a litigant in one cause be compelled

---

(ii)    The First Amendment Petition Clause - *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741, 76 L. Ed. 2d 277, 103 S. Ct. 2161 (1983); *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 513, 30 L. Ed. 2d 642, 92 S. Ct. 609 (1972);

(iii)    The Fifth Amendment Due Process Clause - *Murray v. Giarratano*, 492 U.S. 1, 11, 106 L. Ed. 2d 1, 109 S. Ct. 2765, n. 6 (1989) (plurality opinion); *Walters v. National Assn. of Radiation Survivors*, 473 U.S. 305, 335, 87 L. Ed. 2d 220, 105 S. Ct. 3180 (1985);

(iv)    The Fourteenth Amendment Equal Protection Clause - *Pennsylvania v. Finley*, 481 U.S. 551, 557, 95 L. Ed. 2d 539, 107 S. Ct. 1990 (1987), and

(v)    The Fourteenth Amendment Due Process Clause - *Wolff v. McDonnell*, 418 U.S. 539, 576, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974); *Boddie v. Connecticut*, 401 U.S. 371, 380-381 (1971).

to stand aside while a litigant in another settles the rule of law that will define the rights of both."
*Id.* at 255.  Here, the government could <u>not</u> make such a showing under §1514, nor has the Defendant been given an opportunity to respond to such by this Court.

Finally, Defendant must comment on this Court's citations to *United States v. Lewis*, 411 F.3d 838, 843 (7th Cir. 2005) and *United States v. Tison*, 780 F.2d 1569. 1573 (11th Cir. 1986).

The sole issue in *Tison* was " whether the district court, in which a criminal prosecution is pending, has the authority under 18 U.S.C.A. Sec. 1514 to enjoin defendants and their counsel from bringing a state civil action for slander against a prospective Government witness involved in a federal criminal trial." Plainly, the government here <u>cannot</u> meet its burden under §1514.  Moreover, the Court's citation in its Order to a quote in *Tison* is actually *Tison*'s citation a quote from *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir.1962), *cert. denied*, 371 U.S. 955 (1963) which was a case decided **<u>prior</u>** to the enactment of §1514 making it <u>inapposite</u> to post-§1514 matters where Congress has expressly defined the term "harassment".  Notably, that definition did <u>not</u> include any lawsuit against a potential government witness.

Likewise, in *Lewis*, the finding that a §1514 order was appropriate was made upon proof that "**it appears that the filing of the state court actions was <u>not</u> done for a legitimate purpose** (such as to vindicate a specific right) **but more likely than not was a tactical decision to intimidate and harass prospective witness Bolden**. This is something which this Court cannot countenance and for which section 1514 provides a remedy in the form of a protective order."  *Lewis* at 843. (Emphasis added).

Here, of course, Defendant <u>could</u> establish that her civil suit was filed for a "legitimate purpose" and thus, under §1514, must be permitted to proceed to comply with Congressional

14

standards in this area of civil suits against potential witnesses in a criminal matter.

F.    CONCLUSION

This Court has denied due process to Defendant by invoking its putative "inherent authority" to stay a valid civil action. Moreover, the exercise of this putative authority has been done in a manner which violates a carefully crafted Congressional scheme. Last, this invocation of authority is unprecedented and is without prior precedent.

In sum, this Court has gratuitously concluded that the government will be prejudiced if Defendant's civil suit is allowed to go forward as it would make an "end run" around the more restrictive discovery provisions in the Rules of Criminal Procedure. Assuming *arguendo* that to be true, why would that be wrong? Plainly:

> Society wins not only when the guilty are convicted, but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly. An inscription on the walls of the Department of Justice states the proposition candidly for the federal domain: The United States wins its point whenever justice is done its citizens in the courts. A prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty helps shape a trial that bears heavily on the defendant. That casts the prosecutor in the role of an architect of a proceeding that does not comport with standards of justice. . .

*Brady* at 87. Hence, *fiat justitia ruat caelum* and this Court must re-consider the order cancelling the November 28, 2007, hearing and <u>not</u> block Defendant from obtaining evidence that can insure that "justice is done" in this case.

15

### CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served pursuant to CM/ECF upon Daniel Pearce Butler, Catherine K. Connelly and William Rakestraw Cowden, Assistant United States Attorneys, Criminal Division, 555 4th St., N.W., Room 4818, Washington, D.C. 20530 this December 8, 2007.

MONTGOMERY BLAIR SIBLEY
Counsel for Defendant
1629 K Street, Suite 300
Washington, D.C. 20006
202-508-3699
202-478-0371 Fax

By:  /s/ Montgomery Blair Sibley
     Montgomery Blair Sibley
     D.C. Bar #464488



Neighbors for: 1█████████

Neighbors for: ████████

*** End Of Report ***

ESCRTS1000019



ESCRTS3000137



...I'm sure you can
...at I did not have
...me understanding
... according to this
...t. Also, it would
... been impossible
...me to zero out my
...unt in the way you
...ested. I hope this
...all thoughts on
...art of "burning
..."

love,
Anna

ESCRTS1000028



# Vitter Escort: Palfrey Ran Prostitution Ring

July 31, 2007 - 12:01pm
Neal Augenstein, WTOP Radio

WASHINGTON - WTOP Radio has learned a former escort, linked to a member of Congress, is set to testify alleged D.C. madam Deborah Jeane Palfrey's escort service provided illegal prostitution.

Paula Neble, who worked for Palfrey between 1999 and 2006, told a federal grand jury in D.C. she considered her work for Palfrey prostitution, according to sources familiar with her testimony. The sources say Neble's testimony made no mention of then-Rep. David Vitter, who is now a U.S.Senator representing Louisiana.

Palfrey has maintained Pamela Martin & Associates provided legal escort services.

Immediately after Palfrey was indicted in March on federal racketeering and money laundering charges, she filed a civil lawsuit against Neble, claiming breach of contract. That civil suit is on hold, pending Palfrey's criminal trial.

In both her criminal and civil cases, Palfrey maintains she hired "independent contractors to provide solely legal sexual services." Palfrey says her company catered to adult fantasy in the nation's capital, without legal entanglement, for 13 years.

In e-mails, Palfrey tells WTOP she believes Neble "was a favorite of Mr. Vitter's," but says any sex-for-payment arrangement would have been outside the structure of her legal escort business.

"I had each and every gal sign a contract with me at the onset of her association with me that while 'on my watch,' she would NOT cross the line into illegality. I simply could not control what any of the women did on their own time," Palfrey writes.

Palfrey says Neble and other escorts used her company as a referral service, "to find steady clients who saw them on a regular, ongoing basis sans my involvement once the initial introduction was made."

Neble declined to be interviewed, according to her attorney Kathleen Voelker, who would not comment on whether Vitter was a former customer of Neble's.

WTOP has learned that Neble's AT&T cell phone number appeared 1,590 times in Palfrey's records, including in conjunction with calls to Vitter.

Palfrey has said when a customer requested an escort she would call the woman to check availability. She would then call the customer to confirm the location of the encounter and call the escort back to say where to meet the customer.

On Oct. 12, 1999 Palfrey's outgoing phone records indicate she called Neble at 5:54 p.m., immediately called Vitter at 5:57 p.m. then called Neble back at 5:59 p.m.

Vitter's spokesman Joel DiGrado did not respond to several phone requests for comment.

Neble has not been charged in connection with Palfrey's case, and will testify for the prosecution, in return for immunity, sources say. Palfrey has repeatedly argued she is the victim of selective prosecution, and that her former employees and customers should also face charges.

Now 36, Neble has gone to some lengths to protect her anonymity. Court records show she applied to legally change her name in 2001, and was granted the change in 2002. At the time she listed her job title as "consultant."

In her civil lawsuit, Palfrey accuses "Dr. Paula Neble" and 15 Jane Does of breach of contract, "by engaging in illegal sexual activities with customers of the escort service." Research by WTOP indicates Neble does not have a doctorate.

Channing Phillips, spokesman for D.C.'s United States Attorney Jeffrey Taylor, refused to comment on Neble, citing grand jury secrecy rules.

(Copyright 2007 by WTOP. All Rights Reserved.)

< Back



## (202) 251-5678 -- Washington, DC

Oct 12, 1999 - 5:54pm -- 0.70 min

This record should match a listing in the scanned image below.
Please help us make sure that the information on dcphonelist.com
is as accurate as possible by verifying or reporting the data.

☑ Verify listing    ☒ Report Error

---

**PAMELA MARTIN & ASSOCIATES**
SPRINT BUSINESS FLEX(SM)
Account #: 197847525

Page: 33
Billing Period Ending: 10/22/99
Customer Number: 842144766

### *Itemization of Calls*

**ORIGINATING NUMBER: 707 648-1500**

| Nbr | Date | Time | * | Called Location | | Called Nbr | Minutes | Charges |
|---|---|---|---|---|---|---|---|---|
| 1 | 10/12/99 | 5:53 PM | E | WASHINGTON | DC | 202 667-8047 | .4 | $.04 |
| 2 | 10/12/99 | 5:54 PM | E | WASHINGTON | DC | 202 251-5678 | .7 | .07 |
| 3 | 10/12/99 | 5:57 PM | E | WASHINGTON | DC | 202 548-4736 | .4 | .04 |
| 4 | 10/12/99 | 5:59 PM | E | WASHINGTON | DC | 202 463-6336 | 8.5 | .88 |
| 5 | 10/12/99 | 7:14 PM | E | SILVER SPG | MD | 301 332-0141 | .8 | .08 |
| 6 | 10/12/99 | 7:32 PM | E | SILVER SPG | MD | 301 332-0141 | .3 | .03 |
| 7 | 10/12/99 | 7:57 PM | E | WASHINGTON | DC | 202 251-5678 | .3 | .03 |
| 8 | 10/12/99 | 7:56 PM | E | WASHINGTON | DC | 202 667-8047 | .3 | .03 |
| 9 | 10/12/99 | 8:00 PM | E | WASHINGTON | DC | 202 251-5678 | .3 | .03 |
| 10 | 10/12/99 | 8:02 PM | E | WASHINGTON | DC | 202 251-5678 | .3 | .03 |
| 11 | 10/12/99 | 8:02 PM | E | WASHINGTON | DC | 202 667-8047 | .3 | .03 |
| 12 | 10/12/99 | 8:03 PM | E | WASHINGTON | DC | 202 251-5678 | .3 | .03 |
| 13 | 10/12/99 | 8:04 PM | E | WASHINGTON | DC | 202 463-6336 | 2.5 | .26 |
| 14 | 10/12/99 | 8:07 PM | E | WASHINGTON | DC | 202 251-5678 | .3 | .03 |
| 15 | 10/12/99 | 8:10 PM | E | WASHINGTON | DC | 202 667-8047 | .3 | .03 |
| 16 | 10/12/99 | 8:10 PM | E | WASHINGTON | DC | 202 251-5678 | .6 | .06 |
| 17 | 10/12/99 | 8:11 PM | E | WASHINGTON | DC | 202 251-5678 | .3 | .03 |
| 18 | 10/12/99 | 8:34 PM | E | WASHINGTON | DC | 202 251-8272 | .5 | .05 |
| 19 | 10/13/99 | 8:39 AM | D | WASHINGTON | DC | 202 822-1350 | 1.2 | .12 |
| 20 | 10/13/99 | 8:41 AM | D | CARLSBAD | CA | 760 438-1242 | 3.2 | .31 |
| 21 | 10/13/99 | 1:48 PM | D | SILVER SPG | MD | 301 928-0710 | 2.8 | .29 |
| 22 | 10/13/99 | 2:25 PM | D | SILVER SPG | MD | 301 928-0710 | 1.7 | .18 |
| 23 | 10/13/99 | 3:02 PM | D | LAUREL | MD | 301 776-9074 | 1.7 | .18 |
| 24 | 10/13/99 | 3:22 PM | D | SILVER SPG | MD | 301 332-0141 | 1.9 | .20 |
| 25 | 10/13/99 | 3:49 PM | D | WASHINGTON | DC | 202 265-7536 | .8 | .08 |
| 26 | 10/13/99 | 4:01 PM | D | WASHINGTON | DC | 202 251-5678 | .4 | .04 |
| 27 | 10/13/99 | 4:11 PM | D | SILVER SPG | MD | 240 432-7440 | 1.2 | .12 |
| 28 | 10/13/99 | 4:13 PM | D | FAIRFAX | VA | 703 713-1234 | 1.1 | .11 |
| 29 | 10/13/99 | 4:19 PM | D | SILVER SPG | MD | 301 332-0141 | 1.0 | .10 |
| 30 | 10/13/99 | 4:20 PM | D | SILVER SPG | MD | 301 332-0141 | .3 | .03 |
| 31 | 10/13/99 | 4:23 PM | D | SILVER SPG | MD | 301 332-0141 | .3 | .03 |
| 32 | 10/13/99 | 5:50 PM | E | SILVER SPG | MD | 301 928-0710 | .3 | .03 |
| 33 | 10/13/99 | 5:51 PM | E | FLS CHURCH | VA | 703 761-1522 | .4 | .04 |
| 34 | 10/13/99 | 6:05 PM | E | WASHINGTON | DC | 202 251-5678 | 1.4 | .15 |
| 35 | 10/13/99 | 6:48 PM | E | SILVER SPG | MD | 240 432-7440 | .3 | .03 |
| 36 | 10/13/99 | 6:46 PM | E | SILVER SPG | MD | 240 432-7440 | .5 | .05 |
| 37 | 10/13/99 | 6:47 PM | E | SILVER SPG | MD | 240 432-7440 | .3 | .03 |
| 38 | 10/13/99 | 6:48 PM | E | SILVER SPG | MD | 240 432-7440 | .3 | .03 |
| 39 | 10/13/99 | 7:16 PM | E | SILVER SPG | MD | 301 332-0141 | .3 | .03 |
| 40 | 10/13/99 | 8:07 PM | E | SILVER SPG | MD | 240 432-7440 | .3 | .03 |
| 41 | 10/14/99 | 1:49 PM | D | WASHINGTON | DC | 202 822-1350 | 5.6 | .58 |
| 42 | 10/14/99 | 2:29 PM | D | WASHINGTON | DC | 202 251-8272 | .3 | .03 |
| 43 | 10/14/99 | 2:29 PM | D | WASHINGTON | DC | 202 463-6336 | 2.3 | .24 |
| 44 | 10/14/99 | 3:00 PM | D | LAUREL | MD | 301 776-9074 | 1.0 | .10 |
| 45 | 10/14/99 | 3:02 PM | D | BETHESDA | MD | 301 897-9400 | 2.3 | .24 |
| 46 | 10/14/99 | 3:05 PM | D | SILVER SPG | MD | 301 928-0710 | 1.4 | .15 |
| 47 | 10/14/99 | 3:11 PM | D | SILVER SPG | MD | 240 432-7440 | .4 | .04 |
| 48 | 10/14/99 | 3:12 PM | D | WASHINGTON | DC | 202 965-0344 | .4 | .04 |
| 49 | 10/14/99 | 3:16 PM | D | SILVER SPG | MD | 240 432-7440 | 2.7 | .28 |
| 50 | 10/14/99 | 3:22 PM | D | WASHINGTON | DC | 202 251-8272 | .3 | .03 |
| 51 | 10/14/99 | 3:24 PM | D | WASHINGTON | DC | 202 251-8272 | .9 | .09 |



## (202) 251-5678 -- Washington, DC

Sep 18, 2000 - 5:02pm -- 1.50 min

This record should match a listing in the scanned image below.
Please help us make sure that the information on dcphonelist.com
is as accurate as possible by verifying or reporting the data.

☑ Verify listing     ☒ Report Error



**PAMELA MARTIN & ASSOCIATES**
SPRINT BUSINESS FLEX(SM) DIAL-1
Account #: 197847525

Page: 46
Billing Period Ending: 9/22/00
Customer Number: 842144766

### Itemization of Calls

ORIGINATING NUMBER: 707 648-1500

| Nbr | Date | Time | * | Called Location | | Called Nbr | Minutes | Charges |
|-----|------|------|---|-----------------|---|-----------|---------|---------|
| 1 | 9/18/00 | 8:39 AM | D | SAN MARCOS | CA | 760 471-2256 | .4 | $.02 |
| 2 | 9/18/00 | 9:10 AM | D | ESCONDIDO | CA | 760 746-7866 | .3 | .02 |
| 3 | 9/18/00 | 9:12 AM | D | ESCONDIDO | CA | 760 738-4550 | 4.1 | .25 |
| 4 | 9/18/00 | 9:21 AM | D | ESCONDIDO | CA | 760 737-0592 | .3 | .02 |
| 5 | 9/18/00 | 9:22 AM | D | ESCONDIDO | CA | 760 746-9127 | 6.8 | .41 |
| 6 | 9/18/00 | 9:30 AM | D | OCEANSIDE | CA | 760 720-5301 | 2.9 | .17 |
| 7 | 9/18/00 | 9:57 AM | D | SAN DIEGO | CA | 619 294-3313 | .9 | .05 |
| 8 | 9/18/00 | 2:06 PM | D | FLS CHURCH | VA | 703 861-0363 | 1.0 | .07 R |
| 9 | 9/18/00 | 2:32 PM | D | WASHINGTON | DC | 202 251-5678 | 1.1 | .08 R |
| 10 | 9/18/00 | 2:39 PM | D | SILVER SPG | MD | 301 257-3622 | 1.2 | .08 R |
| 11 | 9/18/00 | 2:45 PM | D | FLS CHURCH | VA | 703 862-8022 | 2.6 | .18 R |
| 12 | 9/18/00 | 2:49 PM | D | SILVER SPG | MD | 301 257-3622 | 1.8 | .12 R |
| 13 | 9/18/00 | 2:57 PM | D | SILVER SPG | MD | 301 257-3622 | 2.0 | .14 R |
| 14 | 9/18/00 | 3:05 PM | D | FLS CHURCH | VA | 703 862-8022 | 6.7 | .46 R |
| 15 | 9/18/00 | 3:12 PM | D | WASHINGTON | DC | 202 547-4331 | .3 | .02 R |
| 16 | 9/18/00 | 3:13 PM | D | SILVER SPG | MD | 301 257-3622 | 4.3 | .30 R |
| 17 | 9/18/00 | 4:24 PM | D | ARLINGTON | VA | 703 338-6745 | 4.1 | .28 R |
| 18 | 9/18/00 | 4:31 PM | D | WASHINGTON | DC | 202 548-4736 | 2.3 | .16 R |
| 19 | 9/18/00 | 4:33 PM | D | ARLINGTON | VA | 703 338-6745 | 4.7 | .32 R |
| 20 | 9/18/00 | 5:02 PM | E | WASHINGTON | DC | 202 251-5678 | 1.5 | .10 R |
| 21 | 9/18/00 | 5:30 PM | E | WASHINGTON | DC | 202 251-5678 | 1.0 | .07 R |
| 22 | 9/18/00 | 5:32 PM | E | ARLINGTON | VA | 703 243-9800 | .5 | .03 R |
| 23 | 9/18/00 | 6:06 PM | E | FLS CHURCH | VA | 703 862-8022 | 1.5 | .10 R |
| 24 | 9/18/00 | 6:07 PM | E | WASHINGTON | DC | 202 271-9192 | .7 | .05 R |
| 25 | 9/18/00 | 6:08 PM | E | WASHINGTON | DC | 202 789-1234 | .7 | .05 R |
| 26 | 9/18/00 | 6:10 PM | E | RALEIGH | NC | 919 810-3862 | .8 | .06 R |
| 27 | 9/18/00 | 6:25 PM | E | FLS CHURCH | VA | 703 862-8022 | .3 | .02 R |
| 28 | 9/18/00 | 6:26 PM | E | FLS CHURCH | VA | 703 862-8022 | .4 | .03 R |
| 29 | 9/18/00 | 6:30 PM | E | FLS CHURCH | VA | 703 862-8022 | .5 | .03 R |
| 30 | 9/18/00 | 6:33 PM | E | WASHINGTON | DC | 202 271-9192 | .5 | .03 R |
| 31 | 9/18/00 | 6:34 PM | E | FLS CHURCH | VA | 703 862-8022 | .3 | .02 R |
| 32 | 9/18/00 | 6:35 PM | E | FLS CHURCH | VA | 703 862-8022 | .6 | .04 R |
| 33 | 9/18/00 | 6:36 PM | E | WASHINGTON | DC | 202 548-4736 | .3 | .02 R |
| 34 | 9/18/00 | 6:59 PM | E | WASHINGTON | DC | 202 271-9192 | .5 | .03 R |
| 35 | 9/18/00 | 7:03 PM | E | HERNDON | VA | 703 421-1090 | 1.3 | .09 R |
| 36 | 9/18/00 | 7:11 PM | E | ARLINGTON | VA | 703 338-6745 | 9.3 | .64 R |
| 37 | 9/18/00 | 7:50 PM | E | WASHINGTON | DC | 202 271-9192 | .7 | .05 R |
| 38 | 9/18/00 | 8:10 PM | E | SAN MARCOS | CA | 760 471-2256 | .3 | .02 |
| 39 | 9/18/00 | 8:11 PM | E | FLS CHURCH | VA | 703 862-8022 | .3 | .02 R |
| 40 | 9/18/00 | 9:50 PM | E | WASHINGTON | DC | 202 271-9192 | .3 | .02 R |
| 41 | 9/18/00 | 9:51 PM | E | WASHINGTON | DC | 202 479-4000 | .5 | .03 R |
| 42 | 9/18/00 | 9:52 PM | E | WASHINGTON | DC | 202 271-9192 | .3 | .02 R |
| 43 | 9/18/00 | 9:52 PM | E | WASHINGTON | DC | 202 271-9192 | .5 | .03 R |
| 44 | 9/18/00 | 9:53 PM | E | WASHINGTON | DC | 202 271-9192 | .3 | .02 R |
| 45 | 9/18/00 | 9:53 PM | E | WASHINGTON | DC | 202 271-9192 | .3 | .02 R |
| 46 | 9/19/00 | 1:47 PM | D | WASHINGTON | VA | 703 981-1462 | 6.0 | .41 R |
| 47 | 9/19/00 | 2:16 PM | D | WASHINGTON | DC | 202 251-5678 | .7 | .05 R |
| 48 | 9/19/00 | 2:45 PM | D | FLS CHURCH | VA | 703 862-8022 | .4 | .03 R |
| 49 | 9/19/00 | 2:46 PM | D | FLS CHURCH | VA | 703 862-8022 | 1.3 | .09 R |
| 50 | 9/19/00 | 3:23 PM | D | SILVER SPG | MD | 301 257-3622 | 1.4 | .10 R |



## (202) 251-5678 -- Rockville, DC

Feb 11, 2001 - 5:53pm -- 3.00 min

This record should match a listing in the scanned image below.
Please help us make sure that the information on dcphonelist.com
is as accurate as possible by verifying or reporting the data.

☑ Verify listing    ☒ Report Error

| Account Name | Date of Invoice | | Page |
| --- | --- | --- | --- |
| DEBORAH J PALFREY | '21/01 | | 10 |

| Account Number | Telephone Number | Service User |
| --- | --- | --- |
| 662565605 | 202-258-7248 | DEBORAH J PALFREY |

### HOME AIRTIME AND LONG DISTANCE CHARGES (CONTINUED)

| Ref | Date | Time | Number Called | Calls To | Calls From | Minutes | Air | Long Distance | Total |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 0240 | 2/09 | 3:55P | 707-648-1000 | VALLEJO CA | CA | 2 | | | .00 |
| 0241 | 2/09 | 3:57P | 301-694-2604 | FREDERICK MD | CA | 1 | | | .00 |
| 0242 | 2/09 | 4:10P | | INCOMING | CA | 5 | | | .00 |
| 0243 | 2/09 | 4:19P | | INCOMING | CA | 2 | | | .00 |
| 0244 | 2/09 | 4:23P | 707-648-1000 | VALLEJO CA | CA | 1 | | | .00 |
| 0245 | 2/09 | 4:37P | | INCOMING | CA | 1 | | | .00 |
| 0246 | 2/09 | 5:50P | | INCOMING | CA | 1 | | | .00 |
| 0247 | 2/09 | 6:00P | | INCOMING | CA | 2 | | | .00 |
| 0248 | 2/09 | 6:05P | | INCOMING | CA | 2 | | | .00 |
| 0249 | 2/09 | 6:15P | | INCOMING | CA | 1 | | | .00 |
| 0250 | 2/09 | 6:34P | 707-648-1000 | VALLEJO CA | CA | 1 | | | .00 |
| 0251 | 2/09 | 7:11P | 707-556-0099 | VALLEJO CA | CA | 1 | | | .00 |
| 0252 | 2/11 | 1:50P | 707-648-1000 | VALLEJO CA | CA | 1 | | | .00 |
| 0253 | 2/11 | 1:51P | 707-556-0099 | VALLEJO CA | CA | 1 | | | .00 |
| 0254 | 2/11 | 1:55P | 619-384-4607 | SANDIEGCEL CA | CA | 2 | | | .00 |
| 0255 | 2/11 | 1:58P | | INCOMING | CA | 5 | | | .00 |
| 0256 | 2/11 | 1:58P W | | INCOMING | CA | 2 | | | .00 |
| 0257 | 2/11 | 2:01P W | | INCOMING | CA | 1 | | | .00 |
| 0258 | 2/11 | 2:03P | | INCOMING | CA | 21 | | | .00 |
| 0259 | 2/11 | 2:06P W | | INCOMING | CA | 2 | | | .00 |
| 0260 | 2/11 | 2:24P | 202-262-1406 | BOWIGLNNDL DC | CA | 2 | | | .00 |
| 0261 | 2/11 | 2:33P | 727-934-6196 | TARPON SPG FL | CA | 16 | | | .00 |
| 0262 | 2/11 | 2:39P W | | INCOMING | CA | 1 | | | .00 |
| 0263 | 2/11 | 2:46P W | | INCOMING | CA | 1 | | | .00 |
| 0264 | 2/11 | 2:50P | 727-934-6196 | TARPON SPG FL | CA | 2 | | | .00 |
| 0265 | 2/11 | 3:02P | | INCOMING | CA | 1 | | | .00 |
| 0266 | 2/11 | 3:08P | 408-409-8847 | SAN JOSE N CA | CA | 1 | | | .00 |
| 0267 | 2/11 | 3:09P | | INCOMING | CA | 1 | | | .00 |
| 0268 | 2/11 | 3:33P | | INCOMING | CA | 4 | | | .00 |
| 0269 | 2/11 | 3:55P | 707-648-1000 | VALLEJO CA | CA | 1 | | | .00 |
| 0270 | 2/11 | 4:35P | | INCOMING | CA | 5 | | | .00 |
| 0271 | 2/11 | 4:35P W | | INCOMING | CA | 1 | | | .00 |
| 0272 | 2/11 | 4:39P | 202-548-4736 | ALEXANDRIA DC | CA | 2 | | | .00 |
| 0273 | 2/11 | 4:55P | | INCOMING | CA | 1 | | | .00 |
| 0274 | 2/11 | 5:04P | | INCOMING | CA | 49 | 5.60 | | 5.60 |
| 0275 | 2/11 | 5:15P W | | INCOMING | CA | 1 | .35 | | .35 |

Account Name
DEBORAH J PALFREY

Date of Invoice
'21/01

Page
10

Account Number
662565605

Telephone Number
202-258-7248

Service User
DEBORAH J PALFREY

## HOME AIRTIME AND LONG DISTANCE CHARGES (CONTINUED)

| Ref | Date | Time | Number Called | Calls To | Calls From | Minutes | Air | Long Distance | Total |
|-----|------|------|---------------|----------|------------|---------|-----|---------------|-------|
| 0240 | 2/09 | 3:55P | 707-648-1000 | VALLEJO CA | CA | 2 | | | .00 |
| 0241 | 2/09 | 3:57P | 301-694-2604 | FREDERICK MD | CA | 1 | | | .00 |
| 0242 | 2/09 | 4:10P | | INCOMING | CA | 5 | | | .00 |
| 0243 | 2/09 | 4:19P | | INCOMING | CA | 2 | | | .00 |
| 0244 | 2/09 | 4:23P | 707-648-1000 | VALLEJO CA | CA | 1 | | | .00 |
| 0245 | 2/09 | 4:37P | | INCOMING | CA | 1 | | | .00 |
| 0246 | 2/09 | 5:50P | | INCOMING | CA | 1 | | | .00 |
| 0247 | 2/09 | 6:00P | | INCOMING | CA | 2 | | | .00 |
| 0248 | 2/09 | 6:05P | | INCOMING | CA | 2 | | | .00 |
| 0249 | 2/09 | 6:15P | | INCOMING | CA | 1 | | | .00 |
| 0250 | 2/09 | 6:34P | 707-648-1000 | VALLEJO CA | CA | 1 | | | .00 |
| 0251 | 2/09 | 7:11P | 707-556-0099 | VALLEJO CA | CA | 1 | | | .00 |
| 0252 | 2/11 | 1:50P | 707-648-1000 | VALLEJO CA | CA | 1 | | | .00 |
| 0253 | 2/11 | 1:51P | 707-556-0099 | VALLEJO CA | CA | 1 | | | .00 |
| 0254 | 2/11 | 1:55P | 619-384-4607 | SANDIEGCEL CA | CA | 2 | | | .00 |
| 0255 | 2/11 | 1:58P | | INCOMING | CA | 5 | | | .00 |
| 0256 | 2/11 | 1:58P W | | INCOMING | CA | 2 | | | .00 |
| 0257 | 2/11 | 2:01P W | | INCOMING | CA | 1 | | | .00 |
| 0258 | 2/11 | 2:03P | | INCOMING | CA | 21 | | | .00 |
| 0259 | 2/11 | 2:06P W | | INCOMING | CA | 2 | | | .00 |
| 0260 | 2/11 | 2:24P | 202-262-1406 | BOWIGLNNDL DC | CA | 2 | | | .00 |
| 0261 | 2/11 | 2:33P | 727-934-6196 | TARPON SPG FL | CA | 16 | | | .00 |
| 0262 | 2/11 | 2:39P W | | INCOMING | CA | 1 | | | .00 |
| 0263 | 2/11 | 2:46P W | | INCOMING | CA | 1 | | | .00 |
| 0264 | 2/11 | 2:50P | 727-934-6196 | TARPON SPG FL | CA | 2 | | | .00 |
| 0265 | 2/11 | 3:02P | | INCOMING | CA | 1 | | | .00 |
| 0266 | 2/11 | 3:08P | 408-409-8847 | SAN JOSE N CA | CA | 1 | | | .00 |
| 0267 | 2/11 | 3:09P | | INCOMING | CA | 1 | | | .00 |
| 0268 | 2/11 | 3:33P | | INCOMING | CA | 4 | | | .00 |
| 0269 | 2/11 | 3:55P | 707-648-1000 | VALLEJO CA | CA | 1 | | | .00 |
| 0270 | 2/11 | 4:35P | | INCOMING | CA | 5 | | | .00 |
| 0271 | 2/11 | 4:35P W | | INCOMING | CA | 1 | | | .00 |
| 0272 | 2/11 | 4:39P | 202-548-4736 | ALEXANDRIA DC | CA | 2 | | | .00 |
| 0273 | 2/11 | 4:55P | | INCOMING | CA | 1 | | | .00 |
| 0274 | 2/11 | 5:04P | | INCOMING | CA | 49 | 5.60 | | 5.60 |
| 0275 | 2/11 | 5:15P W | | INCOMING | CA | 1 | .35 | | .35 |
| 0276 | 2/11 | 5:19P W | | INCOMING | CA | 34 | 11.90 | | 11.90 |
| 0277 | 2/11 | 5:53P W | | INCOMING | CA | 1 | .35 | | .35 |
| 0278 | 2/11 | 5:53P | 202-251-5678 | ROCKVILLE DC | CA | 3 | 1.05 | | 1.05 |
| 0279 | 2/11 | 5:53P W | | INCOMING | CA | 1 | .35 | | .35 |
| 0280 | 2/11 | 6:28P | 202-251-5678 | ROCKVILLE DC | CA | 1 | .35 | | .35 |
| 0281 | 2/11 | 6:28P | 707-648-1000 | VALLEJO CA | CA | 1 | .35 | | .35 |
| 0282 | 2/11 | 6:31P | | INCOMING | CA | 2 | .70 | | .70 |
| 0283 | 2/11 | 6:37P | | INCOMING | CA | 1 | .35 | | .35 |
| 0284 | 2/11 | 6:38P | | INCOMING | CA | 4 | 1.40 | | 1.40 |