UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 07-046 (JR) |
| | : | |
| v. | : | |
| | : | |
| DEBORAH JEANE PALFREY, | : | |
| | : | |
| Defendant. | : | |

GOVERNMENT'S OPPOSITION TO DEFENDANT'S
FOURTH MOTION TO DISMISS (DKT. NO. 225)

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this opposition to defendant's Fourth Motion to Dismiss the Indictment. In her motion, defendant claims that this Court improperly publicly disclosed defendant's *ex parte* subpoena requests, thereby irreparably prejudicing the defendant. As discussed below, defendant's motion is completely without merit and should be denied.

A. **Background**

1. In June of 2004, the United States Postal Inspection Service ("USPIS") and the Internal Revenue Service Criminal Investigation Division ("IRS - CID") began a joint investigation into Pamela Martin and Associates. The defendant owned and operated Pamela Martin and Associates.

2. On March 1, 2007, a federal grand jury in the District of Columbia returned an indictment against defendant charging her with numerous federal violations, including RICO, interstate transportation in aid of racketeering, and conspiracy to commit money laundering, along with related forfeiture allegations. These charges relate, as the Court is aware, to defendant's alleged operation of an interstate prostitution business, Pamela Martin and Associates, the proceeds of which were sent to defendant through the U.S. mail.

3. On November 13, 2007, the Court issued a Memorandum Opinion and Order under seal in response to Defendant's *Ex Parte* Application for Issuance of Subpoenas and Payment of Costs and Fees.[1] The Court's Memorandum Opinion granted defendant's request in part, authorizing issuance of the subpoenas to a long list of federal, state, and local law enforcement and other agencies, several phone companies, ABC News, Larry Flynt Productions, Inc, H&R Block, Senator David Vitter, Randall Tobias, and Harlan Ullman. The Court also ordered that a copy of its Memorandum Opinion accompany each subpoena served.

4. On December 18, 2007, defendant filed the instant Fourth Motion to Dismiss the Indictment.[2]

## B. Discussion

Defendant's primary argument for dismissal is that the issuance of the Court's Memorandum Opinion and Order were somehow wrongful and created improper and undue prejudice to the defendant. See Dkt. No. 225 at 7. Both prongs of defendant's argument are fatally flawed and do not support the remedy she seeks. Moreover, any theory of alleged prejudice would be premised on the theory that the information sought by the four categories of

---

[1] The government was not provided with a copy of this Memorandum Opinion by either the Court or defense counsel. Instead, the government first learned of the Memorandum Opinion on November 20, 2007, when a federal agency was served with the Memorandum Opinion and an accompanying subpoena. The government has not seen the defendant's *ex parte* application that resulted in the issuance of the Memorandum Opinion and Order.

[2] This is not the first unsupported motion to dismiss the indictment filed by the defendant. See Dkt. No. 106 at 8 (Motion to Dismiss the Indictment for Outrageous Government Conduct); Dkt. No. 106 at 15 (Motion to Dismiss the Indictment Under the Tenth Amendment); Dkt. No. 154 (Motion to Dismiss the Indictment with Prejudice Because the Government Failed to Fulfill its Obligation to Present "Substantial Exculpatory Evidence" to the Grand Jury); Dkt. No. 155 (Motion to Dismiss the Indictment with Prejudice for *Brady* Violations); Dkt. No. 202 (Motion to Dismiss for Lack of Subject Matter Jurisdiction.). Each of defendant's other attempts to dismiss the indictment have been summarily denied. See Dkt. No. 136 at 4 and 5; Dkt. No. 208 at 2 and 3; Dkt. No. 230.

subpoenas would be admissible at trial. This premise is false, and thus each of defendant's arguments fails. Furthermore, as the government noted in a prior pleading, the defendant's *ex parte* request for issuance of the subpoenas in question was inappropriate and not supported by caselaw. See Government's Omnibus Motion to Quash Subpoenas Issued Pursuant to Defendant's *Ex Parte* Application and Motion for Reconsideration of the Court's November 13, 2007 Memorandum Order at 7 – 10, filed under seal December 13, 2007. Because her application should not have been made *ex parte*, but with a copy to the government, a copy which the government still does not have, she cannot complain that the government improperly received copies of the Court's Memorandum Opinion and Order which references that *ex parte* application.

As a preliminary matter, the government notes that the defendant has not cited a single case in support of her assertion that the proper remedy for the prejudice she claims to have suffered is the dismissal of the indictment. There are cases from several circuits, some of which defendant cites, that have explained that the purpose of the *ex parte* provision of Rule 17(b) is to put an indigent defendant – who must rely on the court's resources to obtain the presence of her witnesses – on the same footing as a non-indigent defendant and the government, neither of whom need to disclose their subpoenas to the opposing party.[3] Those courts have explained that Rule 17(b), by permitting *ex parte* subpoena applications by indigent defendants, prevents the

---

[3] Unlike the cases cited by the defendant, which pertain to Rule 17(b) and subpoenas for witnesses, this case involves subpoenas for documents pursuant to Rule 17(c). Rule 17(b) has an *ex parte* provision, which provides for secrecy, while 17(c) does not. Arguably, these cases do not even apply since they are 17(b) cases and defendant does not cite any 17(c) cases applicable to these subpoenas. Moreover, the cases cited by defendant involve alleged prosecutorial misconduct, which theoretically could support a motion to dismiss, while defendant's present motion does not make that allegation. Finally, as the Court is aware, a question has been raised as to whether defendant is entitled to invoke the resources of the Court since her indigency status is not clearly established.

government from ascertaining defense strategies or theories of the case through the discovery of the identity of defense witnesses.  United States v. Scott, 223 F.3d 208, 211 (3rd Cir. 2000); United States v. Brinkman, 739 F.2d 977, 980 (4th Cir. 1984); United States v. Brown, 535 F.2d 424, 429 (8th Cir. 1976); United States v. Meriwether, 486 F.2d 498, 506 (5th Cir. 1973), reh'g denied, 487 F.2d 1491 (5th Cir. 1973), cert. denied, 417 U.S. 948 (1974).

Each of these cases, however, upheld a district court's decision refusing to dismiss the indictment.  In fact, each held that, even when the government discovers the identities of proposed defense witnesses who were subpoenaed pursuant to Rule 17(b), dismissal is unwarranted absent a showing by the defense that it was affirmatively prejudiced.  See Scott, 223 F.3d at 211 ("[defendant] was not prejudiced by any violation of Rule 17(b).  We therefore reject [defendant's] contention that the court erred in denying his motion to dismiss the indictment."); Brinkman, 739 F.2d at 980 (district court properly denied dismissal of indictment for disclosure of identities of defense witness subpoenaed through Rule 17(b), even though disclosure permitted the government to obtain an order quashing a subpoena for one of those witnesses, where appellant failed to show that his defense strategy was compromised by the disclosure); Brown, 535 F.2d at 429 (no relief even though district court's local rule, in violation of Rule 17(b), required notice to government of all subpoenas issued under Rule 17(b), where appellant failed to show prejudice); Meriwether, 486 F.2d at 506-07 (no relief for violation of *ex parte* provision of Rule 17(b) where appellant failed to show that the violation permitted the government to discover the identity of any witnesses it did not already know about).

In this case, as discussed below, defendant has claimed no real prejudice and it is hard to imagine how the Court's actions could have created any such prejudice.  Despite defendant's

allegation that the Court's November 13, 2007 Order was "remarkable" in that it listed each agency and individual to whom document subpoenas were to be issued, see Dkt. No. 225 at 2, defendant raised no objection to the order at that time. Instead, defendant waited an entire month before raising this objection. Furthermore, given defendant and her attorney's proclivity for speaking to the press and outlining their trial strategies in that forum, see, e.g. Sue Anne Pressley Montes, "'I Abhor Injustice,' Alleged DC Madam Says," Washington Post at A01, April 29, 2007, ("Palfrey's legal strategy is to aver she had no idea that the women working for her ever engaged in prostitution."); Eric Lipton, "Woman in Escort Case Plans to Name Names in Defense," The New York Times, April 29, 2007, ("It is Ms. Palfrey's defense strategy that is now causing the biggest stir. She not only intends to identify more of her high-profile clients, but has also threatened to call them as witnesses at trial to back up her claim that the services provided never crossed the line to prostitution."), it is difficult to take seriously their current claims about prejudice. See also Dkt. No. 136 at 3 (Court found that "Defendant and her counsel have made extensive use of the media to inform the public about what they believe to be the merits of this case."). Finally, it was not the release of the Order or Memorandum Opinion that set forth the alleged defense strategies, but defendant's voluntary statements in her own pleading. Dkt. No. 225 at 3-5 ("defense will be arguing"; "Defendant will rely heavily in her defense"). Defendant's specific contentions of alleged prejudice, and the lack of merit of each, are addressed below:

    1. <u>Local law enforcement agency subpoenas</u>

Defendant first states that the subpoenas issued upon the local law enforcement agencies revealed to the government her intent to argue that during the 13 year tenure of Pamela Martin

and Associates, the agency was "never investigated by any of the twenty (20) police agencies in the Metro-DC area." Dkt. No. 225 at 4. In addition to being false (as evidenced by defendant's own documents), this argument is completely irrelevant and would be inadmissible at trial. The fact that certain law enforcement agencies investigated the defendant's agency and certain did not is of no moment, and is certainly not a defense to the crimes charged. See United States v. McVeigh, 153 F.3d 1166, 1192 (10th Cir. 1998), cert. denied, 526 U.S. 1007 (1999) ("Under our system of criminal justice, the issue submitted to the jury is whether the accused is guilty or not guilty. The jury is not asked to render judgment about non-parties, nor is it normally asked to render a verdict on the government's investigation.").

    2. H&R Block subpoenas

Defendant then argues that the subpoenas issued upon H&R Block and "Mr. Rofkahr" alerted the government that the defendant intends to "rely heavily in her defense upon the fact that [the defendant] reported her income properly and paid taxes on that income." Dkt. No. 225 at 4. Defendant is not charged with tax evasion. As such, any assertion that she paid taxes during the relevant time period is not a defense to the charges, and is both irrelevant and inadmissible. A defendant's prior "good acts" are not admissible to prove that she behaved in a similar manner. See Fed. R. Evid. 404(a) ("[e]vidence of a person's character or a trait of character is not admissible for the **purpose** of proving action in conformity therewith on a particular occasion, except" evidence concerning the accused, a victim, or a witness in certain limited circumstances.) (emphasis added).

3.  <u>Senator David Vitter, Harlan Ullman, and Randall Tobias subpoenas</u>

Putting aside defendant's inflammatory, unsupported, and false allegation that the government has somehow coerced witnesses into "adopting the government's party line," the government is hard pressed to take seriously defendant's claim that the Court is responsible for giving the government notice of the defendant's intent to call certain witnesses as a result of notice of these document subpoenas. As has been their habit throughout the pendency of these proceedings, defendant and her counsel have revealed to members of the press on more than one occasion their intent to call certain witnesses in this case. <u>See</u> Bill Walsh, "Senator receives subpoena to testify about escort case," <u>The Times Picayune</u>, November 14, 2007, http://www.nola.com/timespic/stories/index.ssf?/base/news-2/1195021839260630.xml& coll=1; ("Palfrey's attorney, Montgomery Sibley, said Vitter is being summoned to testify about what transpired during his sessions with the escorts. Sibley said he thinks Vitter might have been a client . . . and the subpoena also requires him to show up with any records relating to . . . the service."); Maureen Groppe, "Lawyer: Tobias may testify for alleged madam," <u>USA Today</u>, April 30, 2007, http://www.usatoday.com/news/washington/2007-04-30-madam-tobias_N.htm; ("Ex-State Department official and Indiana native Randall Tobias may be called to testify in the defense of the woman at the center of a Washington sex scandal, her attorney said Monday. Montgomery Blair Sibley, an attorney for Deborah Jeane Palfrey who is accused of running a prostitution service, said Palfrey has the obligation and the right to compel witnesses like Tobias to testify on her behalf."); "Alleged DC Madam Names a Name," <u>CBS News</u>, April 13, 2007, <u>http://www.cbsnews.com/stories/2007/04/13/politics/main2680325.shtml?source=search_story</u>;

("Deborah Jeane Palfrey, who is acting as her own attorney, said Harlan K. Ullman, a senior associate with the Center for Strategic and International Studies, 'is only one of dozens of such officials' who will be exposed as she prepares her defense."). Furthermore, defendant has provided this same information in public court filings. See Dkt. Nos. 28, 176, 185, and 187. Obviously the government (and anyone else who was paying attention to this matter) was on notice, long before learning of the Court's November 13, 2007 Order, that defendant intended to subpoena Senator Vitter, Harlan Ullman, and Randall Tobias at some point during these proceedings.

    4.   Subpoenas issued to ABC News and Larry Flynt

Finally, the defendant alleges that disclosure of the subpoenas issued upon ABC News and Larry Flynt alerted the government to the fact that defendant "has good reason to believe that these new agencies have obtained significant information concerning relevant witnesses and government malfeasance . . . ." Dkt. No. 225 at 5. Once again, this argument is without merit. Defense counsel previously revealed to the press his intent to subpoena ABC News. See Justin Rood and Maddy Sauer "DC Madam Seeking Subpoenas for ABC News' Brian Ross and Others," September 12, 2007; http://blogs.abcnews.com/theblotter/2007/09/abc-news-brian-.html; ("In an e-mail to reporters Wednesday, Sibley explained he believes Palfrey is the victim of a politically motivated prosecution. He would like Ross to testify, he wrote, because 'the very real specter exists that political pressure was placed on ABC News to bury' names of prominent individuals it found among her phone records.") Again, the government was on notice long before learning of the Court's November 13, 2007 Order, that defendant intended to subpoena ABC News.

## C. **Conclusion**

For the foregoing reasons, the United States respectfully requests that the Court summarily deny defendant's Fourth Motion to Dismiss.

        Respectfully submitted,

        JEFFREY A. TAYLOR
        UNITED STATES ATTORNEY
        DC Bar No. 498610

        / s / *Daniel P. Butler/Catherine K. Connelly*
        Daniel P. Butler
        DC Bar No. 417178
        Catherine K. Connelly
        Mass. Bar No. 649430
        Assistant United States Attorneys
        555 4th Street, NW
        (202) 353-9431, 616-3384
        Washington, D.C.  20530
        Daniel.Butler@usdoj.gov
        Catherine.Connelly2@usdoj.gov