**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

            PLAINTIFF,

vs.

DEBORAH JEANE PALFREY,

            DEFENDANT.
_____/

CRIMINAL CASE NUMBER: 07-046-JR

DEFENDANT'S REPLY TO THE GOVERNMENT'S OPPOSITION TO DEFENDANT'S FOURTH MOTION TO DISMISS THE INDICTMENT

Defendant, Deborah Jeane Palfrey, by and through her undersigned counsel, replies to the government's opposition to Defendant's forth motion to dismiss the indictment for violation of her fundamental right to a fair trial by this Court, and states:

**I.  THE GOVERNMENT IGNORES JUDGE KESSLER'S SEALING ORDER**

The government's first point is that: "Because her application should not have been made *ex parte*, but with a copy to the government, a copy which the government still does not have, she cannot complain that the government improperly received copies of the Courts Memorandum Opinion and Order which references that *ex parte* application." (Gov. Opp., p. 3).

In essence, the government is arguing that Judge Kessler was in error to (i) accept an *ex parte* application by Defendant and (ii) thereafter "seal" that application and her order[1]. Notably, speaking in its traditional *ex cathedra* voice, the government feels <u>no</u> need to cite to this Court <u>any</u> authority for the proposition that the Defendant <u>not</u> may seek – and Judge Kessler may <u>not</u> grant – the issuance of *ex parte,* pre-trial subpoenas *duces tecum*.[2]

---

[1] "The Court grants Defendant's request to keep these subpoena applications confidential and is therefore sealing this Opinion and its accompanying Order."

[2] Defendant has more fully briefed this point in her "Opposition to Government's Omnibus Motion to Quash Subpoenas and Motion for Reconsideration", D.E. #234. See: *United*

## II.   DEFENDANT'S CASE IS UNIQUE AMONG REPORTED DECISIONS

The government's next salient point is that "the defendant has not cited a single case in support of her assertion that the proper remedy for the prejudice she claims to have suffered is the dismissal of the indictment." (Gov. Opp., p. 3).

Simply stated, among none of the reported decisions that either the government or the Defendant has located, has a situation of a significant revealing of the Defendant's "theory of her defense from the prosecutor's scrutiny" been reported.

Thus, in *United States v. Meriwether*, 486 F.2d 498, 506 (5th Cir. 1973), *cert. denied*, 417 U.S. 948 (1974): "since in order to obtain a reversal of the conviction, defendant is required to show that he was prejudiced by the failure to comply with the rule. Here he has failed to make such a showing." Similarly, in *United States v. Brinkman*, 739 F.2d 977, 980 (4th Cir. 1984), the court concluded that "the difficulty with Brinkman's position is that he has failed to show that he suffered any prejudice." And again in *United States v. Brown,* 535 F.2d 424, 429 (8th Cir. 1976), the court found that: " The evidence of defendant's guilt was strong. He was arrested in unexplained possession of a stolen automobile. He tendered false identification to police and made several inconsistent custodial statements. Under these circumstances, defendant Brown was not prejudiced by the pretrial disclosure of his witnesses."

Finally, in *United States v Scott*, 223 F.3d 208, 210 (3rd Cir. 2000), the issue was not the court's negligence which resulted in harm to the Defendant, but the prosecutor's misconduct: "Scott's motion to dismiss the indictment is premised on his claim of prosecutorial misconduct."

---

*States v. Hang*, 75 F.3d 1275, 1282 (8th Cir. 1996)("Consequently, we conclude that an indigent defendant may, pursuant to Rule 17(c), make an *ex parte* request to the district court for issuance of a subpoena *duces tecum*.")

However, if the power to dismiss an indictment resides in this Court for prosecutorial misconduct, then it should likewise reside for a court's misconduct. *See*: *United States v. Simpson*, 813 F.2d 1462, 1464-65 (9th Cir. 1987)("Dismissal of an indictment is warranted where outrageous law enforcement conduct violates due process.")

Thus, while apparently no court to date has found that the showing made by a defendant reached a level that required recognition of the harm to a defendant by the prohibited disclosure of her trial theories warranting dismissal of the indictment, such a result is clearly <u>not</u> foreclosed by these cases.

Plainly, even in the absence of express statutory grounds for dismissal a trial court may still have legal discretion to dismiss an indictment "to do justice". *See*: *The Palmyra*, 12 Wheat. 1, 10, 25 U.S. 1, 10, 6 L.Ed. 531 (1827)("Every court must be presumed to exercise those powers belonging to it, which are necessary for the promotion of public justice . . ."); *United States v. Heath*, 260 F.2d 623, 632 (9th Cir. 1958)("It is established principle that all the authority of courts to do justice is not encompassed either by rules or by statutes. Nor is the power of a court to prevent injustice circumscribed by their language.").

Likewise, under a Due Process analysis, this Court is authorized to dismiss the indictment when a fundamental right has been violated. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988)("To be distinguished from the cases before us are a class of cases in which indictments are dismissed, without a particular assessment of the prejudicial impact of the errors in each case, because the errors are deemed fundamental.").

In this singular case, Defendant has shown the requisite prejudice which has compromised her ability to receive a fair trial in any forum at any time. As such, the indictment must be dismissed.

### III. THE DEFENDANT HAS BEEN PREJUDICED

Finally, the government argues that even if there was a violation of Rule 17, that the lack of prejudice to Defendant forecloses granting the instant motion. "Furthermore, given defendant and her attorneys proclivity for speaking to the press and outlining their trial strategies in that forum . . . it is difficult to take seriously their current claims about prejudice." (Gov. Opp., p. 5).

This argument fails. A review of what was improperly released to the government by Judge Kessler's revealing of all of the Defendant's requested pre-trial and trial subpoenas in her November 14, 2007, order, clearly demonstrates that theretofore un-revealed defense theories were laid open to "the prosecutor's scrutiny." Moreover, and just as damaging to Defendant, the precise method of presenting those defenses were revealed.

Stated another way, the Defendant – who has been without other resources – has of necessity employed the media to assist her in (i) identifying customers of her escort service, and (ii) revealing significant facts concerning the veracity of her for escorts. Additionally, as part of a carefully laid plan of mis-direction to the government, Defendant has released publically defense strategies that she does not intend to employ. Hence, as detailed below, while the government correctly cites the various media accounts concerning this case, neither singularly nor collectively do those reports reveal what the "sealed from the government" November 14, 2007, order revealed to the government.

#### A. TELEPHONE COMPANY SUBPOENAS

In ¶1 of the November 13, 2007, order, Judge Kessler granted Defendant's request for subpoenas for: "telephone records of customers and other escort agencies operating in the District of Columbia." Significantly, attached to the subpoena was the list of eighty three (83) escort

agencies operating in the Metro-DC area.

By revealing that Defendant was seeking subpoenas of "other escort agencies operating in the District of Columbia", the government was apprised for the <u>first</u> time, that among Defendant's strategies was to call representatives of each of the eight three (83) escort agencies operating in the District of Columbia as witnesses to (i) the legal operation of the escort business and (ii) the selective prosecution of Defendant by the federal government. Moreover, and likewise <u>theretofore</u> unknown to the government, was that Defendant by calling these witnesses, would establish federal intelligence-agency use of these services in order to support her "honey-pot" defense and thus equitable estoppel of the prosecution of her.

Clearly, the government did <u>not</u> know the precise manner Defendant intended to employ to establish her defense. Now, because of Judge Kessler's action, they do.

### B. LOCAL LAW ENFORCEMENT AGENCIES

Again, the government misses the point in stating: "The fact that certain law enforcement agencies investigated the defendants agency and certain did not is of no moment, and is certainly not a defense to the crimes charged." (Gov. Opp., p. 5).

The point the government misses is that by obtaining the records from these law enforcement agencies, Defendant was <u>not</u> attempting to prove that she was investigated, <u>but</u> that the investigations revealed that Defendant was operating her agency within the law. Such evidence of legal conduct clearly would be admissible at trial under Federal Rules of Evidence, Rule 406.[3] Having notice of

---

[3] Rule 406 states: "Habit; Routine Practice. Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice."

this fact, the government can now tailor its case to minimize the effectiveness of such evidence.

Moreover, as to the law enforcement agencies, in her order Judge Kessler stated:

> As to Defendant's request that the subpoenaed police agencies produce all records relating to the investigation of escort services from 2000 to 2007, the Court finds that granting this request would be unduly burdensome to the various police agencies. Even if such evidence proved to be admissible, its probative value would be outweighed by the likelihood that it would confuse and distract the jury. Therefore, Defendant's request for the issuance of subpoenas to local police agencies is denied in part and granted in part.

Hence, the government is now given notice that at trial, Defendant will be issuing subpoenas to the law enforcement agencies concerning the "investigation of escort services from 2000 to 2007" as part of her defense of selective prosecution. While as a pre-trial matter, Judge Kessler may have *ex parte* considered it burdensome on the law enforcement agencies to comply, at trial that issue will be raised anew based upon (i) the information received by Defendant from those law enforcement agencies through the issued subpoenas which demonstrates a complete lack of burden and (ii) the ability of Defendant to force motions to quash from these agencies by serving them with subpoenas without prior Court approval[4] to demonstrate such lack of "burden" that Judge Kessler wrongly surmised and implied.

Thus, now apprised of the direction that Defendant intends to take, the government has access to the Defendant's trial strategy and can prepare a rebuttal accordingly.

C. **KENNETH ROFKAHR**

Prior to the government seeing Judge Kessler's order, the government had no knowledge of

---

[4] "The clerk must issue a blank subpoena-signed and sealed-to the party requesting it, and that party must fill in the blanks before the subpoena is served." Federal Rules of Criminal Procedure, Rule 17(a).

the existence of Kenneth Rofkahr, Defendant's H&R Block tax preparer or that Defendant intended to call him as a witness. The government then proceeds to argue that: "As such, any assertion that she paid taxes during the relevant time period is not a defense to the charges, and is both irrelevant and inadmissible. A defendants prior 'good acts' are not admissible to prove that she behaved in a similar manner. See Fed. R. Evid. 404(a)". (Gov. Opp., p. 6).

However, it is <u>not</u> to establish Defendant's "good acts" that Defendant intends to call Mr. Rofkahr. Instead, along with other evidence, Defendant will use Mr. Rofkahr's testimony to establish that the Defendant at all times believed she was operating a legitimate, law-abiding, escort agency which belief will be confirmed by the fact that she disclosed to Mr. Rofkahr the exact details of her escort service and complied with IRS regulations.

Plainly, "ignorance of the law is no excuse." *Cheek v. United States*, 498 U.S. 192, 200 (1991). However, Defendant can claim that she was not acting with the *mens rea* required for a criminal conviction. *See United States v. United States Gypsum Co.*, 438 U.S. 422, 437 (1978)("Although Blackstone's requisite 'vicious will' has been replaced by more sophisticated and less colorful characterizations of the mental state required to support criminality, see ALI, *Model Penal Code* § 2.02 (Prop.Off.Draft 1962), intent generally remains an indispensable element of a criminal offense. This is as true in a sophisticated criminal antitrust case as in one involving any other criminal offense."); *United States v. Stagman*, 446 F.2d 489, 493 (6th Cir. 1971)("The general rule in criminal cases is that the prosecution must prove, beyond a reasonable doubt, both act and intent. Of course intent may be inferred from the totality of circumstances surrounding the commission of the prohibited act. **And when, as here, a defendant introduces evidence of good faith attempts to comply with the law, a court has a clear obligation to submit the issue of**

**specific intent with explicit instructions to the jury**. It is then for the jurors to decide whether this evidence has raised a reasonable doubt of the defendant's guilt. Our system of justice assumes that jurors can make the kinds of judgments required here and can determine whether a defendant's asserted belief in the legality of his conduct is implausible.")(Emphasis added).

Now, having been apprised not only of this defense, but of the precise witness Defendant intends to call, the result is plain. Defendant's trial strategy has been laid bare to the government to Defendant's irreparable harm.

### IV.   THE DEFENDANT'S FUNDAMENTAL RIGHTS HAVE BEEN VIOLATED BY THIS COURT

In *Weatherford v. Bursey*, 429 U.S. 545 (1977) the Supreme Court held that a threat of significant harm to the defendant was a necessary component of a *nondeliberate* violation of the Sixth Amendment.[5]

The nature of the "threat of significant harm" to a defendant has been defined in this Circuit in *Briggs v. Goodwin*, 698 F.2d 486, 494-95 (D.C. Cir. 1983) and, when applied to the facts of this case, mandates dismissal of the indictment.

In *Briggs*, the court in a 42 U.S.C. §1983 case, stated:

> The threat of significant harm required by *Weatherford* does not, however, have to amount to "prejudice" in the sense of altering the actual outcome of the trial. Although the Sixth Amendment is concerned primarily with fairness at trial, it is not limited to that function. The right to counsel protects the whole range of the accused's interests implicated by a criminal prosecution. These interests may extend beyond the wish for exoneration to include, for example, the possibilities of a lesser charge, a lighter sentence, or the

---

[5] ". . .when conversations with counsel have been overheard, the constitutionality of the conviction depends on whether the overheard conversations have produced, directly or indirectly, any of the evidence offered at trial." *Weatherford* at 552.

> alleviation of "the practical burdens of a trial." . . . Moreover, the appellants need not prove that the prosecution actually used the information obtained. The prosecution makes a host of discretionary and judgmental decisions in preparing its case. It would be virtually impossible for an appellant or a court to sort out how any particular piece of information in the possession of the prosecution was consciously or subconsciously factored into each of those decisions. **Mere possession by the prosecution of otherwise confidential knowledge about the defense's strategy or position is sufficient in itself to establish detriment to the criminal defendant**. Such information is "inherently detrimental, ... unfairly advantage[s] the prosecution, and threaten[s] to subvert the adversary system of criminal justice." . . .**Thus, the record suggests a realistic possibility that appellants suffered injury as a result of governmental intrusions in violation of the Sixth Amendment.** (Emphasis added, footnotes omitted).

*Briggs* at 494-495.

That same "presumption" applies here. Judge Kessler deemed it appropriate – and Rule 17 demanded – that the Defendant's motion for and the Court's order granting the *ex parte* subpoenas be sealed.

However, due to the simple negligence of Judge Kessler, the contents of that "sealed order" were *de facto* revealed to the government thereby putting the government in possession of "confidential knowledge about the defense's strategy or position" which is <u>in</u> <u>of</u> <u>itself</u> sufficient "to establish detriment to the criminal defendant."

Finally, by Judge Kessler's action, Defendant has been forced to make this motion and reply which necessarily details her defense strategy – to the benefit of the government – in order to establish the harm to her. As such, the Defendant has been prejudiced

Accordingly, as <u>no</u> remedy short of dismissal of the indictment can repair the damage to the Defendant's Sixth Amendment rights, this Court – regardless of the natural distaste it must feel to

sit in judgment of a co-ordinate jurisdiction jurist – must dismiss the indictment.

WHEREFORE, for the reasons afore-said, this instant indictment must be dismissed.

### CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served pursuant to CM/ECF upon Daniel Butler, William Cowden, and Catherine Connelly, Assistant United States Attorneys, Criminal Division, 555 4th St., N.W., Room 4818, Washington, D.C. 20530 this January 1, 2008.

**MONTGOMERY BLAIR SIBLEY**
Counsel for Defendant
1629 K Street, Suite 300
Washington, D.C. 20006
202-508-3699
202-478-0371 Fax

By:  /s/ Montgomery Blair Sibley
Montgomery Blair Sibley
D.C. Bar #464488