**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 07-046 (JR)** |
| | : | |
| **v.** | : | |
| | : | |
| **DEBORAH JEANE PALFREY,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MOTION FOR AN ON-THE-RECORD**
**INQUIRY OF DEFENDANT'S REQUEST FOR SELF-REPRESENTATION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this motion for the Court to conduct an on-the-record inquiry of defendant as to her request to represent herself.

**A.  Factual Background**

1.  On September 7, 2007, the Court conducted an on-the-record inquiry of defendant of her then-apparent desire to represent herself.  (Copy of transcript attached).  At the conclusion of that inquiry, defendant stated:

> No.  I do not want to represent myself totally in pro se.  Absolutely not.  I do not want to represent myself in pro se.  A hybrid representation perhaps, but certainly in a secondary capacity.  I would never, ever come forward, for all of the reasons you have so clearly make known this morning, I would never come forward and represent myself.  I would simply be a fool to do so.

Tr. at 39.

2.  Thereafter, defendant's counsel at that time, Preston Burton, was allowed to withdraw and defendant retained her counsel of choice, Montgomery Blair Sibley.  Dkt. No. 129.

3.  In court on January 16, 2008, defendant orally moved to remove Mr. Sibley as her counsel and to proceed *pro se*.  Following an *ex parte* discussion on the record in chambers with defendant and Mr. Sibley, the Court granted defendant's request.

4.  Because of defendant's prior comments on the record about whether she wanted to proceed *pro se*, as well as the fact that the inquiry on January 16, 2008, was done *ex parte*, the government is filing this motion as a cautionary matter to insure that the record is sufficient to support defendant's request to proceed *pro se*.  If further inquiry is in fact needed, it perhaps could be done on January 28, 2008, when defendant will be before the Court for the suppression hearing.

## B.  <u>Discussion</u>

Defendant has stated that she wishes to represent herself.  Although she indisputably has the constitutional right to do so under the Sixth Amendment and the Supreme Court's decision in <u>Faretta v. California</u>, 422 U.S. 806 (1975), proceeding to trial without an attorney is fraught with danger for a criminal defendant.  Quoting a prior decision authored by Justice Sutherland, the <u>Faretta</u> court stated:

> Even the intelligent and educated layman has small and sometime no skill in the science of law.  If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad.  He is unfamiliar with the rules of evidence.  Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible.  He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one.  He requires the guiding hand of counsel at every step of the proceeding against him.

422 U.S. 833, n.43 (internal quotation marks omitted).

In light of the dangers inherent in self-representation, the <u>Faretta</u> decision held that a defendant should be warned of such dangers and should enter a knowing and intelligent waiver of the right to counsel on the record:

> When an accused manages his own defense, he relinquishes as a purely factual matter, many of the traditional benefits associated with the right to counsel.  For this reason, in order to represent himself, the accused must "knowingly and

intelligently" forgo those relinquished benefits. . . .   Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open."

422 U.S. at 835 (citations omitted); see United States v. Leggett, 81 F.3d 220, 223-24 (D.C. Cir. 1996) (quoting Faretta).   "The district court must make clear on the record the defendant's awareness of the dangers and disadvantages of self-representation."   Leggett, 81 F.3d at 224 (citing United States v. Bailey, 675 F.2d 1292, 1300 (D.C. Cir.), cert. denied, 459 U.S. 852 (1982)).

In addition, the government requests that the Court advise defendant that she will be expected to comply with all applicable legal rules and procedures, e.g., Federal Rules of Criminal Procedure, Federal Rules of Evidence, Local Criminal Rules, and that irrelevant, prejudicial, and/or inflammatory remarks and/or questions will not be permitted simply because she is not an attorney.[1]   In other words, defendant should be advised that she will not be accorded special leeway or other advantages because she is not an attorney.   Furthermore, the government requests that the Court, to the extent it has not already done so, warn defendant that it cannot predict all possible disadvantages that defendant may encounter as a result of her decision to proceed *pro se* and that the Court obtain on the record defendant's express acknowledgments that she knowingly and intelligently assumes all risk of such unforseen disadvantages.

---

[1]  The government intends to file a separate motion *in limine* regarding the conduct of a *pro se* defendant at trial.

**C.  Conclusion**

For the reasons given above, the United States respectfully requests that the Court conduct an inquiry on the record into defendant's decision to represent herself.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY
DC Bar No. 498610

/ s / *Daniel P. Butler/Catherine K. Connelly*
Daniel P. Butler
DC  Bar No. 417178
Catherine K. Connelly
Mass.  Bar No. 649430
Assistant United States Attorneys
555 4th Street, NW
(202) 353-9431, 616-3384
Washington, D.C.  20530
Daniel.Butler@usdoj.gov
Catherine.Connelly2@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing Government's Motion has been served by electronic mail upon defendant Deborah Jeane Palfrey at jeanepalfrey@sprynet.co, this  17th  day of January, 2008.

/ s / *Daniel P. Butler/Catherine K. Connelly*
Daniel P. Butler
Catherine K. Connelly
Assistant United States Attorneys

4

1

<pre>
 1                 UNITED STATES DISTRICT COURT
 2                FOR THE DISTRICT OF COLUMBIA
 3
 4
 5
 6  UNITED STATES OF AMERICA  .   DOCKET NUMBER:  CR 07-46
 7                            .
 8      vs.                   .   Washington, D.C.
 9                            .   September 7, 2007
10  DEBORAH JEANE PALFREY     .   10:00 A.M.
11                            .
12          Defendant.        .
13  . . . . . . . . . . . . . .
14
15
16
17              TRANSCRIPT OF MOTIONS HEARING
18          BEFORE THE HONORABLE GLADYS KESSLER
19            A UNITED STATES DISTRICT JUDGE
20
21
22  APPEARANCES:
23
24  FOR THE GOVERNMENT:      DANIEL BUTLER, ESQUIRE
25                          CATHERINE  K. CONNELLY, ESQUIRE
26                          UNITED STATES ATTORNEY'S OFFICE
27                          Narcotics Section
28                          555 4th Street
29                          Suite 4844
30                          Washington, D.C.  20001
31                          (202) 616-3384
32                          catherine.connelly2@usdoj.gov
33
34
35  FOR THE DEFENDANT:      PRESTON BURTON, ESQUIRE
36                          ORRICK, HERRINGTON & SUTCLIFFE, LLP
37                          3050 K Street, NW
38                          Second Floor
39                          Washington, D.C.  20007
40                          (202) 339-8456
41                          (202) 339-8500 (fax)
42                          pburton@orrick.com
43                          r Info 5
44
</pre>

2

```
 1
 2   THE COURT REPORTER:        SUSAN PAGE TYNER, CVR-CM
 3                              Official Court Reporter
 4                              United States District Court
 5                              333 Constitution Avenue, N.W.
 6                              Room 6429
 7                              Washington, D.C.  20001
 8                              (202) 371-2230
 9                              susantyner@verizon.net
10
11
12
13   Computer aided transcript prepared with the aid of
14   SpeechCAT.
```

3

## P R O C E E D I N G S

1

2          THE COURT:  Good morning, everybody.

3          This is United States of America versus Deborah

4    Jeane Palfrey, CR 07-46.  Would counsel please identify

5    themselves for the record.

6          MR. BUTLER:  Good morning, Your Honor.  Daniel

7    Butler and Catherine Connelly for the United States.

8          MR. BURTON:  Good morning, Your Honor.  Preston

9    Burton on behalf of Ms. Palfrey, who is here.

10         THE COURT:  Right.  Let me make just a couple of

11   preliminary comments.

12         Several of the lawyers have informed chambers that

13   they have on again off again medical conditions that

14   occasionally, or sometimes all at the time, require them to

15   be seated during court proceedings.

16         Neither counsel has any objection to that

17   procedure, and of course I don't as well.  I just want to

18   make that clear for the record and for -- actually for

19   observers who might not understand why some counsel stand

20   and some council sit, et cetera.  So I just want to make

21   that clear, everyone.

22         Second of all, I think that I may have said we

23   would get to something today that it is fairly clear to me

24   that I don't think we are going to get to.  I think I said

25   last time that counsel should be ready to proceed with the

4

1    motion for suppression of evidence.

2            Many filings have been made since our last status

3    in this case.  Certainly my major focus today is going to be

4    a long colloquy with Ms. Palfrey about where she stands and

5    what final decision she wants to make on the issue of self-

6    representation.

7            So I think, and I am just sort of warning counsel

8    now and possibly apologizing if people are here who should

9    not be here, but I think we will not get to the substantive

10   issue of the motion for suppression.

11           At this point unless counsel have something they

12   need to say or inform me of, I would want to proceed with

13   what I consider to be the most pressing issue, which is the

14   motion that the defendant has filed for either hybrid

15   representation or self representation, and the motion filed

16   by counsel for withdrawal.

17           Does the government need to add anything at this

18   time or say anything?

19           MR. BUTLER:  No, Your Honor.

20           THE COURT:  Mr. Burton, at this time do you need

21   to?

22           MR. BURTON:  I don't believe so, Your Honor.

23           THE COURT:  And one other preliminary matter.  As

24   you know, I always worry about the record and that it is

25   complete and adequate.  There have been many filings.  Some

5

1   have been ex parte.  Some have been -- there have been

2   requests to seal them, and then some have just been ordinary

3   filings.

4          I want to make it clear for everybody.  Of course,

5   ordinary filings are just put on ECF, and they are there for

6   the public to know.  In terms of anything that is filed with

7   a request for sealing, the way that I have treated those

8   filings is to grant the request for sealing, and that means,

9   of course, that those documents and filings are in the

10  official record, although certainly not available to the

11  public.

12         I have had docket entries made saying that a

13  request for sealing that particular document has been

14  granted, and I almost always make sure that that docket

15  entry at least will let the public know the subject matter

16  of the particular document, although of course without

17  revealing anything that -- the substance of anything in the

18  document.

19         So again, the public is on notice that a sealed

20  document was filed.  And of course, all of that is available

21  for appellate review.

22         And finally, there is a category of filings that

23  are ex parte with the request for sealing.  When those are

24  sealed, because they are ex parte, and because even a

25  mention of the subject matter could, in certain instances,

6

1    reveal too much -- too much a substantively about the

2    subject matter, in those instances I have obviously

3    exercised some discretion and may not have indicated the

4    subject matter.

5         Those instances are few and far between, by the

6    way, but occasionally it would be, as I say, it would break

7    the confidentiality of a document to even say what the

8    subject matter is.

9         So hopefully I have made all of that clear for the

10   record everybody.

11        Ms. Palfrey, as I told you last time, we are going

12   to have a long talk this morning about what you want to do.

13   I'm going to ask you to come forward, please, and you need

14   to be sworn. Come right up here.  And our acoustics are not

15   always the best, so be sure to talk into the mike and to

16   talk loudly, please.

17        THE COURTROOM CLERK:  Do you solemnly swear or

18   affirm that you will well and truly answer all questions

19   propounded to you?

20        THE DEFENDANT:  I do.

21             **THE DEFENDANT WAS SWORN**

22        MR. BURTON:  Your Honor, I was just going to

23   inquire.

24        I thought that when we talked the last time that

25   your colloquy with Ms. Palfrey was going to be in a closed

7

1    court, and I don't know --

2            THE COURT:  I am glad you raised that point.

3    Actually, I was going to get to it first thing.

4            I did say that the last time.  In going over the

5    matters that we have to discuss today, and going over the

6    filings, Ms. Palfrey, I concluded that we probably do not

7    have to go into a closed session, which I am always opposed

8    to.  But I want to go over one or two things with you in

9    particular.

10            You filed a statement on September 5, and that was

11    delivered to my chambers.  I do not believe -- I'm virtually

12    positive that that was not given to the government, and I'm

13    virtually positive -- I think this is correct, that was not

14    given to Mr. Burton.

15            Ms. Palfrey, are both of those statements correct?

16            THE DEFENDANT:  Correct.

17            THE COURT:  Now that statement -- well actually, I

18    am looking at a cover letter for the statement that does CC

19    Mr. Burton, but maybe Mr. Burton only got the cover letter.

20            MR. BUTLER:  I received the cover letter but not

21    the attached to statement by Ms. Palfrey.

22            THE COURT:  Fine.  That statement sets out in

23    substantial detail what the nature of the differences were

24    and are between you and Mr. Burton, and that is what I

25    wanted to have information about, and certainly that is

8

1  what I was going to question you about in a closed

2  statement.

3          Your letter or your statement is very clear.  I

4  don't have any questions to ask you about that.  So

5  therefore, it would be my view that all of the other things

6  that I have to talk to you about can be discussed in open

7  court.

8          Mr. Burton, you are still, as of this moment,

9  counsel of record.  Do you have any objection, given what I

10 have just said about my having read the statement, which you

11 have not read, but that the statement itself covers the

12 issue of irreconcilable differences?

13         MR. BURTON:  I think we will just have to go on a

14 question by question basis.  If I think there is something

15 that is going to elicit responses from Ms. Palfrey that I

16 don't think are in her interest to make, although I'm in

17 somewhat of an awkward position because of the very process

18 we are here for --

19         THE COURT:  I understand that.

20         MR. BURTON:  Well, Your Honor, I will note an

21 objection and advise her that she needs to either not answer

22 in my judgment or --

23         THE COURT:  That is fine.

24         MR. BURTON:  Or to confine her answers

25 appropriately.  Or I doubt, given my sense of the court's

9

1    care in this issue that we will have those problems, but I

2    think there may be an occasion where I would want to advise

3    Ms. Palfrey as we go through this.

4         THE COURT:  That's fine.  I don't think so, but I

5    might have missed something.

6         My final question on this issue is, Ms. Palfrey,

7    you submitted this as a statement to chambers.  It is

8    not clear to me whether you want this statement sealed or

9    not.

10        It must be made a part of the record, because it

11   will be part of my consideration of the whole issue, and in

12   any event it has to be there for appellate review.  So I

13   want you to know that.

14        What is your position as to whether you want this

15   particular statement sealed or not?

16        THE DEFENDANT:  I made it with the impression that

17   would be sealed.

18        THE COURT:  Say that again, please?

19        THE DEFENDANT:  Sealed, please.  Sealed, under

20   sealed.

21        THE COURT:  That is fine.  I understand that,

22   and that is appropriate given the contents of the

23   statement.

24        Ms. Palfrey, this morning I'm going to explain to

25   you at great length the difficulties, the dangers and the

10

1  disadvantages of representing herself.  You have to

2  understand those difficulties, and dangers, and

3  disadvantages.

4       If at any time you don't understand what I'm

5  saying, or if I am using technical language that you are not

6  familiar with, it is essential that you say so.  And do not

7  hesitate to say so.

8       My whole emphasis this morning will be on making

9  sure that you understand the significance of what you are

10 doing today, and the significance of whatever decision you

11 make today, whether that decision -- well whatever the

12 decision is.

13      Do you understand that much so far?

14      THE DEFENDANT:  Yes, I do.

15      THE COURT:  I also want to tell you several things

16 in advance so that you understand clearly what the

17 background is, and so you don't think that you are making a

18 decision without full knowledge of all of the things that

19 are going to affect your decision.

20      You asked in your motion for hybrid

21 representation.  The Supreme Court is very clear about that.

22 You do not have a right to hybrid representation.  That is a

23 matter within my discretion.  I am not going to grant the

24 request.

25      In my view, hybrid representation is extremely

11

1   confusing for a jury.  They cannot tell who is saying what

2   and who is representing who at any given time.  It is a very

3   inefficient and uneconomical way to proceed, and it is a

4   procedure which makes it very easy for mistakes to be made

5   of all sorts of kinds, and I certainly do not wish to do

6   jeopardize this trial in any manner at all.  So there is not

7   going to be any hybrid representation.  You have to

8   understand that.

9          Second of all, it is essential for you to

10  understand that the person who has been advising you and

11  writing your papers, Mr. Sibley, is in no event going to be

12  appointed to either represent you or to serve as standby

13  counsel.

14         As you also know, because I've told you this

15  before, you don't have a right to choose your counsel.  That

16  right simply does not exist.  And of course, as you know,

17  I've already appointed two counsel, and there are two of the

18  leading counsel in the city.

19         Mr. Sibley is not going to be appointed for a

20  number of different reasons.  He may be -- he may have had

21  some experience handling criminal cases, but there is

22  nothing to suggest that he is equipped to handle a case as

23  complex as this one or a case in which a defendant is

24  facing, and I will go over this with you in a lot of detail,

25  but is facing a maximum sentence of 55 years in jail.

12

1          In addition, Mr. Sibley has a serious disciplinary

2    problems of his own in the state of Florida.  Very recently,

3    about two months ago, I think in May, that's a little more

4    than two months ago, a referee appointed by the Florida

5    Supreme Court recommended a three-year suspension of Mr.

6    Sibley to the Florida Supreme Court -- made that

7    recommendation to the Florida Supreme Court because of

8    various charges brought against Mr. Sibley.

9          On April 27, 2006, the Florida Supreme Court

10   itself sanctioned Mr. Sibley in language, that in my view is

11   extremely strong, and I think it should be clear on the

12   record the court said:

13            "We concluded that Sibley

14            has a abuse the processes

15            of the court and has hindered

16            the ability of this court to

17            properly resolve those matters

18            which are properly before the

19            court.  We conclude that

20            sanctions are merited on this

21            record.  Accordingly, in order

22            to preserve the right of access

23            for all litigants and promote

24            the interests of justice, the

25            court --"

13

1  The clerk of the court was instructed to follow certain

2  procedures regarding the filing of any future pleadings.

3      For all of those reasons it would be most

4  inappropriate and dangerous, just plain dangerous for you,

5  Ms. Palfrey, to have Mr. Sibley as your counsel, or as

6  standby counsel in this case.

7      Now you have the right to counsel, and of course

8  I think you know that at this point.  You have the right

9  to have a lawyer represent you in all aspects of this

10  criminal case.  But the Supreme Court has also ruled that

11  you may give up that right.  I'm going to use the technical

12  term right now, you may waive that right to counsel, and

13  she may represent yourself.  That is your constitutional

14  right.

15      If you are clear and unequivocal that you want to

16  do that, if it is not being done for purposes of delay or

17  manipulation, and most significantly, and this will have to

18  be the determination that I make, that if you decide to do

19  that that your decision is knowing, intelligent and

20  voluntary.  And that is why I'm going to go over things in a

21  great deal of detail with you, because you have to

22  understand the ramifications of what you are doing.

23      I think I said this to you last time, I cannot

24  stay strong enough to you how important it is for you to be

25  represented by a lawyer who is competent to try criminal

14

1  cases.

2      But I do want you to be clear that I don't want

3  any of my warnings to you or anything I'm going to say to

4  you this morning to be viewed by you as any kind of a

5  threat, or a suggestion that I will not be fair and

6  unbiased in your case.  I have to tell you this morning the

7  worst that can happen to you.  I always have to focus on

8  that.

9      The choice, I emphasize, is entirely yours.  But I

10 do have an obligation under the law and under all of the

11 case law to make sure that you act with full knowledge of

12 the dangers that you face.

13     First I'm going to ask you some question about

14 your background so I know a little bit more about you so I

15 can make an appropriate decision about whether you are

16 competent to make your decision.

17     Ms. Palfrey, how old are you?

18     THE DEFENDANT:  51.

19     THE COURT:  Are you an American citizen?

20     THE DEFENDANT:  Yes.

21     THE COURT:  Tell me how far you went in school in

22 terms of high school, college, or post college?

23     THE DEFENDANT:  I have a four-year degree in

24 prelaw for all intents and purposes.  I have a three-year

25 MBA degree in -- with an emphasis in international business,

15

1    and I have a little less than a year of law school.

2            THE COURT:  Where did you have your year of law

3    school?

4            THE DEFENDANT:  At a school by the name of Thomas

5    Jefferson Law School in San Diego, California.

6            THE COURT:  Have you ever worked as a paralegal in

7    a law office?

8            THE DEFENDANT:  No.

9            THE COURT:  And I think you have answered my

10   question about the fact that you have studied law certainly

11   at the law school level, and to some degree at the college

12   level, is that right?

13           THE DEFENDANT:  Correct.

14           THE COURT:  I want to ask you a little bit about

15   your health.

16           Are you taking any prescription medications?  Go

17   ahead, please.

18           THE DEFENDANT:  No.

19           THE COURT:  Have you had any kind of emotional or

20   mental health problems over the years?

21           THE DEFENDANT:  No.

22           THE COURT:  Have you ever taken any medications

23   for mental health problems?

24           THE DEFENDANT:  No.

25           THE COURT:  Over the years have you ever had any

16

1    kind of substance abuse problems, either alcohol or drugs?

2            THE DEFENDANT:  No.

3            THE COURT:  I need to go over with you experience

4    in the criminal justice system.

5            First of all, how many times have you been

6    arrested, if at all?

7            THE DEFENDANT:  In San Diego, California, many

8    years ago.

9            THE COURT:  And, of course, you were arrested in

10    this case?

11            THE DEFENDANT:  Of course.

12            THE COURT:  So twice, would that be accurate?

13            THE DEFENDANT:  I guess that is fair.

14            THE COURT:  How many times have you been

15    convicted, if at all, of a criminal offense?

16            THE DEFENDANT:  Once.

17            THE COURT:  That was back when?

18            THE DEFENDANT:  In San Diego, California in 1991

19    or 1992.

20            THE COURT:  Did you have counsel representing you

21    in that matter?

22            THE DEFENDANT:  Yes.

23            THE COURT:  Was that appointed or retained

24    counsel?

25            THE DEFENDANT:  Appointed -- well both.  But

17

1   eventually appointed.

2          THE COURT:  Retained first?

3          THE DEFENDANT:  Retained first.

4          THE COURT:  Did you go to a jury trial or a judge

5   trial in that case?

6          THE DEFENDANT:  Ultimately it was pled out.

7          THE COURT:  I see.  So there was no trial?

8          THE DEFENDANT:  There was no trial.

9          THE COURT:  Did you take an appeal from your

10  sentence in that case?

11         THE DEFENDANT:  No.

12         THE COURT:  What was your sentence in that case?

13         THE DEFENDANT:  18 months, and I served a little

14  less than one year.

15         THE COURT:  In that case did you ever ask at all

16  to represent yourself?

17         THE DEFENDANT:  There probably were times when I

18  certainly considered it, yes, but I don't recall.  It has

19  been so many years ago.

20         THE COURT:  All right, Ms. Palfrey, the first

21  thing to keep in mind is if you choose to represent

22  yourself I cannot treat you any differently than I would

23  treat any other defendant if you have co-defendants, which

24  you don't, or more importantly than I would treat the

25  government.

18

1          In other words, and you have to be clear about
2    this, I cannot help you in your defense.  I cannot be
3    sympathetic to you because you are choosing to represent
4    yourself.  I cannot give you legal advice during the course
5    of the trial.  I have to treat you the same way I would
6    treat the government.  And certainly the government has been
7    known to think that at times I was pretty hard on it.  So
8    the rules apply equally in my court.
9          Do you understand that?
10         THE DEFENDANT:  Oh, absolutely.
11         THE COURT:  And are you really clear that I cannot
12   help you out during the course of the trial?
13         THE DEFENDANT:  No.  I understand that.
14         THE COURT:  If you choose to represent yourself
15   you're going to have to abide by the general rules that are
16   followed in my courtroom.  You will have to maintain proper
17   decorum.  You will have to obey my rulings during the trial
18   even if you disagree with them.
19         However, and again I want to be clear about this,
20   whatever you disagree with you have the right to make an
21   objection to, and then your objection would be preserved,
22   and the Court of Appeals, of course, would decide whether
23   or not your objection had merit.  But during the course of
24   the trial you have to accept and abide by any rulings I
25   make.

19

1          Do you understand that?

2          THE DEFENDANT:  Yes.

3          THE COURT:  If you choose to represent yourself

4    and you are convicted by a jury, and this is particularly

5    important, you cannot argue to the Court of Appeals that you

6    were denied your constitutional right to effective

7    assistance of counsel.

8          I will tell you this.  Many, many times, and I

9    cannot begin to estimate the percentages, but many times

10   when criminal defendants -- when defendants in a criminal

11   case are convicted, they of course take an appeal, and one

12   of the arguments that is most often used is a charge that

13   their trial counsel was ineffective.

14         If you choose to represent yourself, you cannot

15   make that argument if you are convicted and you go before

16   the court of appeals.

17         Do you understand that?

18         THE DEFENDANT:  Yes, I do.

19         THE COURT:  You are facing very serious charges,

20   and complicated once.  The government has brought five

21   counts against you in the indictment, and I'm going to go

22   over them with you carefully, because again, you have to

23   really appreciate the complexity of things.

24         I know from one of your filings that you read my

25   opinion, and my opinion was pretty long and pretty detailed.

20

1    Count one is a violation of RICO, which is the Racketeer

2    Influence and Corrupt Organization Act.  Counts two, three

3    and four charge violations of the Travel Act.  And count

4    five charges conspiracy, and that is conspiracy to launder

5    money.

6           As I have indicated, the charges are complicated

7    both legally in terms of the many different elements that

8    have to be proven for each charge, and I'm going to go over

9    those elements with you.  But they are also very complicated

10   factually.

11          And again, you have indicated in your filings,

12   and certainly the government has indicated that we are

13   covering a substantial period of time here, and there are

14   probably, and I'm only going to by what I know from the

15   filings, many different instances that could be the subject

16   of the trial.

17          I want to go over with you the elements of the

18   charges so that you realize what the government must prove

19   and what you will be required to be knowledgeable about if

20   this case goes to trial.

21          RICO, I think it is fair to say, is one of our

22   most complicated statutes, federal status.  There is an

23   enormous amount of case law on the subject, and I do

24   consider myself somewhat of an expert having had a nine-

25   month RICO trial a couple of years ago.

21

1          The elements of a RICO charge, which the

2   government has to prove beyond a reasonable doubt always,

3   they have to prove that an enterprise existed, and the

4   definition of enterprise is complicated, and there is a lot

5   of case law on that subject.

6          They had to prove that the enterprise affected

7   interstate commerce.  That might not be so difficult

8   ordinary for the government to prove, and it may not be

9   complex.  But I'm not saying for a moment that it is not

10  complicated in your case, because they may be defenses that

11  I obviously do not know about as to whether or not the

12  government can prove that.

13         The government also has to prove that you, the

14  defendant, were employed by or associated with the

15  enterprise.  Again, those are all words of art in the

16  statute.  A lot of case law, not all of it as clear as it

17  might be, defining those terms.

18         The government has to prove that you participated

19  in the affairs of the enterprise.  That may not be legally

20  so complex, but it's certainly, given what I know so far,

21  may be very factually complex.  And again, when I say may

22  not be, I am not making any rulings now, and I'm certainly

23  not excluding any possibilities.

24         Also, the government has to prove, and this is a

25  very important piece of a RICO charge, that you participated

22

1   through a pattern of racketeering activity.  And the

2   government spells out in the indictment what it believes the

3   pattern of racketeering activity is.

4          The maximum sentence on a RICO charge, and again,

5   I'm talking maximums now, because I have to tell you the

6   worst that you face, is 20 years imprisonment.  And then, of

7   course, I could impose a fine.  I could impose forfeiture of

8   your property.  But obviously, it is to prison sentence that

9   has to be of greatest concern to you.

10         There are three counts, two, three and four of

11   violation of the Travel Act.  And the government is charging

12   both violation of the Travel Act and aiding and abetting

13   violation of the Travel Act.

14         First let me talk to you about the Travel Act

15   charge and what its elements are.  Again, the government

16   always has to prove them beyond a reasonable doubt.

17         The government has to prove that there was

18   interstate travel or use of a facility in commerce.  And my

19   understanding of the indictment is that that facility will

20   be the U.S. mails.

21         The government has to prove that you had the

22   intent to promote an unlawful activity, and that you

23   performed, or attempted to perform, or facilitated the

24   performance of an overt act in furtherance of that unlawful

25   activity.

23

1        Now to most people that would sound like legalese.

2  I would never used quite those words with a jury, or if I

3  used them I would then go on to explain them in much greater

4  detail.  But the bottom line is, you are going to have to

5  know what those terms mean.

6        You are going to have to be familiar with the case

7  law defining and explaining those terms, and then, of

8  course, you will have to be focused on countering the

9  government's charges that you did, in fact, either perform,

10  or tried to perform, or helped somebody else perform an act

11  which would further your unlawful activity, the unlawful

12  activity being, of course, spelled out in the indictment.

13        Now the government is also charging aiding and

14  abetting.  That is a more amorphous term, and if I should

15  clarify that word amorphous for you, I will.  Do you need me

16  to?

17              THE DEFENDANT:  (Shaking head.)

18              THE COURT:  Would you answer to the record?

19              THE DEFENDANT:  Complicated.

20              THE COURT:  And let me spell out the elements of

21  it.  It is a -- I'm going to tell you now, aiding and

22  abetting is a very broad theory of criminal liability, and

23  lots of times when the government cannot prove the

24  underlying charge, the government will charge that you, the

25  defendant, in some way helped or aided someone else to

24

1    commit the offense in question.

2            All right, the elements, and I think in a way I've

3    summarized them, but I want to state them very clearly for

4    you.

5            The government has to prove, of course beyond a

6    reasonable doubt, that somebody, not you necessarily, but

7    somebody committed each of the essential elements of the

8    offense charged.

9            The government has to prove that you, the

10   defendant, knew that the crime charged was to be committed

11   or was being committed.

12           The government has to prove that you, the

13   defendant, did something, some action for the purpose of

14   aiding, commanding, or encouraging the commission of that

15   underlying crime, and the government has to prove that you

16   acted with the intention of causing the commission of that

17   crime.

18           As you can see, that language in all of the aiding

19   and abetting elements is very broad.  It covers a wide

20   spectrum of activity.

21           The maximum sentence on each of the counts is five

22   years imprisonment, or a fine, or both.  So for counts two,

23   three, and four, we are talking about a maximum sentence, if

24   convicted, of 15 years.

25           Do you understand all of that?

25

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you understand the elements that I

3    have just outlined to you?

4          THE COURT:  Yes, I do.

5          THE COURT:  Count five is conspiracy to launder

6    monetary instruments.  And again, the government is allowed

7    to make these choices, but conspiracy is also one of the

8    broadest criminal statutes that we have on the books.  It

9    covers an enormous amount of criminal activities.

10         The elements are actually quite simple of

11   conspiracy.  The government has to prove beyond a reasonable

12   doubt that there was an agreement between two or more people

13   to commit money laundering.  The absolute center of any

14   conspiracy charge is that agreement.

15         And second, the government has to prove that you

16   joined -- that you, the defendant, joined that agreement

17   knowing the purpose and the intent was to further an illegal

18   purpose.  In other words, essentially you have to join that

19   agreement knowing that the purpose and intention of that

20   agreement was to affect the money laundering -- the

21   commission of the money laundering offenses.

22         Now I have said that the heart of conspiracy is an

23   agreement, and that is absolutely correct.  But I will tell

24   you that similarly to RICO, there is an enormous amount of

25   case law on the subject of conspiracy.  There is an enormous

26

1    amount of case law in our circuit, and in the Supreme Court,

2    and in other circuits.  And while the concept sounds simple,

3    an agreement in practice, let me put it that way, it is not

4    simple.

5         Now I need to talk to you explain about what the

6    underlying offense of money laundering is about.  Because,

7    of course, the charge is that the conspiracy is an agreement

8    to violate the money laundering statutes.

9         The essential elements, and again the government

10   has to prove them beyond a reasonable doubt, that you, the

11   defendant, knowingly conducted or attempted to conduct a

12   financial transaction.

13        The government has to prove that that financial

14   transaction involved the proceeds of specific unlawful

15   activity, and essentially that is interstate travel or

16   transportation in aid of a racketeering enterprise.  Again,

17   we are talking complex words of art in the criminal law.

18        A racketeering enterprise is language that comes

19   out of the RICO statute.  Again, there is a lot of case law

20   covering that language, both under conspiracy law and under

21   RICO law.

22        The government has to prove that you, the

23   defendant, knew that the property involved in the financial

24   transaction or the attempted financial transaction, that

25   that property represented the proceeds of some form of

27

1   specified unlawful activity.  And I'm sure as you know from

2   reading the indictment, that that specified unlawful

3   activity, according to the indictment, was violation of the

4   prostitution laws in D.C., Maryland, and Virginia.

5           And finally, the government has to prove that you

6   conducted or attempted to conduct that financial

7   transaction with the intent to promote the carrying on of

8   specified unlawful activity.  The maximum sentence is 20

9   years imprisonment, and/or a fine, and/or forfeiture of

10  property.

11          I referred to the fact that the underlying

12  unlawful activity for this count is violation of the

13  prostitution statutes in D.C., Maryland and Virginia.  If

14  you represent yourself you are going to have to be familiar

15  with those three statutes, each of which I believe is

16  different.  I am not sure.  To tell you the truth I have not

17  started looking at the individual prostitution statutes.

18  But I think each one is worded somewhat differently.

19          Each of those statues will have been interpreted

20  by the highest court in that jurisdiction.  The Virginia

21  Supreme Court, the Maryland Court of Appeals, and here in

22  the District of Columbia it is the D.C. Court of Appeals.

23          So there will be three separate statutes, three

24  separate bodies of law, because those are state statutes,

25  with which you will have to be familiar.  And -- and I know

28

1  that I have said this to you already, but it is a figure

2  that I just have to emphasize to you all of the time.  The

3  total amount of prison time you face if convicted on all

4  counts is 55 years.

5      If you don't handle your own defense properly

6  and successfully, there will be enormous consequences in

7  terms of the time that you could receive on each of these

8  counts.

9      Do you understand all of this?

10     THE DEFENDANT:  Oh, I do understand.

11     THE COURT:  I think you understand the 55 years.

12     THE DEFENDANT:  Yes, I do.

13     THE COURT:  And you have mentioned that certainly

14  in your pleadings.

15     Am I being clear as I'm going over things with

16  you?  Do you have questions so far?

17     THE DEFENDANT:  No, I do not.

18     THE COURT:  I have tried to indicate, and now I

19  am going to be more specific, how much substantial

20  knowledge of the law you are going to need in order to

21  defend yourself against these charges.  But I have talked in

22  generalities so far in terms of the law of conspiracy, RICO,

23  et cetera.

24     You are going to be held to the same standard as

25  any lawyer would be held to in defending you.  It is not

29

1    just an issue of helping you procedurally.  I am not going
2    to be able to help you if the government cites some case and
3    you don't know how to find the case, or more importantly, if
4    you don't know how to interpret the case.
5            I'm going to give you some examples.  You are
6    going to have to be familiar with the Federal Rules of
7    Evidence.  That is as basic as we get.  The Federal Rules of
8    Criminal Procedure, also as basic as you get.
9            You're going to have to be familiar with sample
10    jury instructions, and they are contained all over the
11    place.  Many of the individual circuit courts have their own
12    sample jury instructions on these federal statutes.  We do
13    not have sample jury instructions in the District of
14    Columbia on our criminal statutes.  And so there is nothing
15    for you to rely upon in the District of Columbia.
16            There are various textbooks which we, in the legal
17    profession, tend to call horn books that have sample jury
18    instructions.  Again, you are going to have to be aware of
19    them.
20            There is a great deal of case law in our circuit
21    on all of these federal statutes.  And there is a great deal
22    of case law from the Supreme Court as well.  The government
23    is certainly allowed to cite case law from other circuits,
24    not just the D. C. Circuit.  I can consider it.
25            I'm not necessarily bound by it, but if we do not

30

1  have governing case law on a particular point, and let us
2  say the Ninth Circuit has an opinion that seems to me well
3  reasoned, then I certainly am free to accept the reasoning
4  of the ninth circuit.  If our Court of Appeal has something
5  that directly addresses that point then, of course, I'm
6  bound by my Court of Appeals.

7         But from your perspective, you have to be aware of
8  the case law from all of the circuits on the many issues I
9  pointed out to you.  And as I have indicated, you're going
10 to be expected to know as much about these subjects as a
11 lawyer who goes through three years of law school, passes
12 the bar, practices law, and above all practices criminal
13 law.

14        Do you understand that?

15        THE DEFENDANT:  Yes.

16        THE COURT:  You also have a constitutional right
17 to testify, and a constitutional right not to testify.

18        The jury will be fully instructed by me that it
19 cannot hold it against you in any way if you choose not to
20 testify.  The decision a defendant makes, and it is the
21 defendant's decision, whether to testify or not in a
22 criminal case is one of the very most important decisions to
23 be made in that trial.

24        And while there is no question that it is the
25 defendant's decision, I cannot emphasize enough that the

31

1    advice of counsel, the disinterested objective advice of
2    counsel is enormously significant and important.  Sometimes
3    defendants do not follow what.  I do not want to generalize.
4    All I want to say to you is that it is a vitally important
5    decision.
6              And if you do testify and you have counsel, then
7    it is up to your counsel to help you to prepare and organize
8    your testimony.  And all of that is appropriate and
9    perfectly okay.
10             I'm going to refer to one thing that you put in
11   your letter.  You admitted that sometimes you can get a bit
12   verbose at times, although certainly not in front of me in
13   open court.  Well, one of the jobs of the defense counsel,
14   if the client is going to testify, is to keep that defendant
15   on track, organized, succinct, and not wandering around
16   telling much more than is appropriate.
17             If you do choose to represent yourself and if you
18   make the very important decision to testify, then you have
19   to present your testimony in an awkward way, but an awkward
20   way that is similar to the way in which we present all other
21   testimony.
22             You have to pose questions, concrete, specific,
23   non-leading questions to yourself, and then you answer the
24   questions.  You don't just get up there and spend an hour or
25   two hours telling the jury your story.  It is not done in

32

1    that fashion.

2            If you do choose to testify and represent

3    yourself, you will be subject to cross-examination by the

4    government just like any other witness, and there will not

5    be a defense lawyer there to protect you in any way.  And

6    when I say to protect you, I mean that there may be

7    legitimate objections to be made by a defense lawyer.  And

8    that individual will not be there to object.

9            What is more, and again nothing I say to you today

10   should be viewed as a ruling by me on any subject.  I am

11   just giving you generalities now.  But if you testify, I am

12   fairly sure that the government will be allowed to bring out

13   to the jury that you have a prior conviction and what that

14   conviction is four.  So you have to be aware of that, and of

15   course that would be very significant.

16           You are going to have to conduct voir dire, and

17   that is the very lengthy questioning that we go through

18   with a jury panel prior to selection of jurors.  Jury

19   selection is again one of the most important portions of the

20   trial.

21           I know from talking with many defense lawyers, and

22   I'm not sure about the government, but for many defense

23   lawyers they consider that the most important part of the

24   trial.  I'm not sure that I agree with that, but that is

25   neither here nor there.  But everyone agrees that jury

33

1    selection is very important.

2            So you have to know how to ask questions, what

3    questions should be asked of them, and most importantly, you

4    and you alone would be making the decision as to which

5    people should be chosen to sit on that jury and which people

6    you want to exclude.

7            You would also have to know how to make the

8    arguments that certain members of the jury panel should be

9    excluded for cause, which is a whole different issue than

10   excluding people just because you don't like them.  You do

11   have the right to exclude people because you do not like

12   their looks.  That's part of your peremptory challenges.

13           But I'm telling you more now than I should be

14   telling you, because that is the kind of advice I cannot

15   give you once we start the trial.

16           You will have to cross-examine government

17   witnesses.  You will have to consider whether to make

18   various motions and objections, both pretrial where I sense

19   there is still a lot of pretrial work to be done, and then

20   of course during the trial.

21           You will have to help to draft legally accurate

22   and precise instructions for the jury.  Because we don't

23   have form instructions -- we have some form instructions.  I

24   don't want to mislead you about that, but they are the very

25   easy ones.  We do not have standard form instructions on

34

1   each and every one of the charges that you are charged

2   with.

3           So my standard procedure is to get proposed jury

4   instructions from each side.  So you would have to submit

5   proposed jury instructions.  They would have to be both

6   legally accurate, and this is the really hard part, a

7   comprehensible by the jury.  And that is very difficult.

8           I don't need to tell you that all of this requires

9   experience and judgment.  It is not just the factual

10  knowledge of the law, although obviously that is

11  significant.  There is a lot of judgment involved in

12  representing either oneself or a client in a criminal trial.

13          I do want to tell you that if you decide to

14  represent yourself I will probably appoint standby counsel

15  to assist you.  I want to make it clear that that individual

16  will be assisting you in procedural matters.

17          Even with standby counsel you will control the

18  presentation of your case, and you will be held responsible

19  for that.  You will make the strategy decisions, and you

20  will be held responsible for that.  You cannot blame it on

21  standby counsel if things go wrong.

22          Standby counsel will be there to answer questions

23  you may have.  That is fine.  You can ask them anything you

24  want, and they are supposed to respond.  They can certainly

25  help you with procedural technicalities that may arise.  I'm

35

1    sure they will rise.  I will give you an example.

2          You may have a document that you want to get into

3    evidence.  You don't know how mark it, you don't know what

4    exhibit number to give it, you don't know any of the rules -

5    - I think you don't know any of the rules of evidence.  And

6    certainly standby counsel can explain those kinds of things

7    to you.

8          But standby counsel does not do opening

9    statements.  Does not do closing arguments.  Does not

10   examine or cross-examine any witness at all.  All of that is

11   up to you to do.

12         And standby counsel cannot interfere with your

13   control of the case, nor can standby counsel act in any kind

14   of a way that would appear to the jury that you don't

15   control your case.

16         If you choose to represent yourself, that jury

17   will understand that you are in charge of your

18   representation, and that you are in charge of all of the

19   decisions, and above all the strategy issues, of which there

20   are many about which you are going to have to make

21   decisions.

22         I know I have gone on for quite a while.  But as

23   you can see, there are so many different elements to a

24   trial.

25         I have tried to cover the most significant ones.

36

```
 1    I have tried to outline for you the maximum punishment; the
 2    essential elements of the trial and of the charges; some of
 3    the most difficult areas of the trial that you will have to
 4    know about and be responsible for; and I have tried to give
 5    you some idea, although in great generality I admit, about
 6    the enormous amount of case law on RICO and conspiracy in
 7    particular, as well as those three local prostitution
 8    statutes, that you're going to have to be familiar with.
 9             Do you understand the things I have tried to
10    explain to you this morning?
11             THE COURT:  Yes, I have.
12             THE COURT:  Any questions you want to ask me?
13             THE DEFENDANT:  No, I don't.
14             THE COURT:  Well, at this point are you ready to
15    make a decision about whether you want to represent yourself
16    or whether you don't?  And while it would be good for the
17    movement of this case, because I am worried about it getting
18    old, for you to make a decision today, I have to tell you
19    that this decision is so important that if you wanted a
20    short period of time to really mull this over, I would allow
21    you that.  Because once it is made, it is made.
22             That does not mean that you can never change you
23    mind, but it certainly means that you cannot willy-wally
24    back and forth.  You know, once it is made then we need to
25    go forward.  There is a suppression hearing to be had.
```

37

1          You have requested a pretrial conference under

2     this CIPA statute, which for our court reporter is CIPA.

3     There are many things that have to be done.  This case is

4     moving slowly for all of the reasons that I know, but the

5     bottom line is it is moving slowly.

6          So my first question is, do you want to make a

7     decision today?  If so, we will talk about your decision.

8     If you need a short amount of time, again not too long, but

9     a reasonable amount of time, I understand how serious this

10    is.

11              THE DEFENDANT:  No.  I do want to make a decision

12    today.

13              THE COURT:  I think the record has to reflect, Ms.

14    Palfrey, that when I asked you the last question that you

15    turned to the individual, who is not your counsel in this

16    case,

17              THE DEFENDANT:  Right.  I understand.

18              THE COURT:  Who has been writing all of your

19    papers, Mr. Sibley, and you certainly turned to him for an

20    answer.

21          Is that right?

22              THE DEFENDANT:  I did not turn to him for an

23    answer.  I believe he is going to ask that the court -- that

24    he be -- well, I guess not appointed counsel in this case.

25              THE COURT:  No, he is not.

38

1          THE DEFENDANT:  He is not appointed counsel, but
2     he is going to ask -- well, he is going to --
3          MR. SIBLEY SPEAKING FROM THE SPECTATOR SECTION OF
4     THE COURTROOM:  Enter an appearance.
5          THE DEFENDANT:  Enter an appearance.  Thank you.
6          THE COURT:  You have to make your decision at this
7     time without any assumptions whatsoever about what I'm going
8     to do.  That is why I have told you at the very beginning,
9     because I did not want to sandbag you in any way, and
10    forgive my using informal terms.  Sometimes they are
11    clearer.
12          I told you what I would do about hybrid
13    representation, and I told you what I would do about
14    appointment.
15          THE DEFENDANT:  Yes, ma'am.
16          THE COURT:  So you just have to make your decision
17    independently, and without any assumptions as to anything
18    else that I will do in the trial.
19          THE DEFENDANT:  I had hoped that perhaps you would
20    give me hybrid representation.  I did not expect it, but I
21    had hoped.  I had equally hoped, or perhaps more so hoped,
22    that you would appoint Mr. Sibley is counsel.
23          Since you are not going to do that, I suppose at
24    this point we are going to enter him as counsel into this
25    case.

39

1          THE COURT:  That is a separate question as to

2    whether I will do that or not.  You have to decide whether

3    you want to represent yourself.

4          THE DEFENDANT:  Okay.

5          THE COURT:  Even if I turn you down in whatever

6    other requests you may make regarding Mr. Sibley.

7          THE DEFENDANT:  No.  I do not want to represent

8    myself totally in pro se.  Absolutely not.  I do not want to

9    represent myself in pro se.  A hybrid representation

10   perhaps, but certainly in a secondary capacity.  I would

11   never, ever come forward, for all of the reasons you have so

12   clearly made known this morning, I would never come forward

13   and represent myself.  I would simply be a fool to do so.

14         THE COURT:  Well, that is a pretty unequivocal

15   statement in my view.

16         Any disagreement from counsel about the

17   unequivocalness of that statement?

18         MR. BUTLER:  If we could have a moment, Your

19   Honor.

20      **(Whereupon, counsel conferred.)**

21         MR. BUTLER:  No, Your Honor.

22         MR. BURTON:  Not from my prospective.

23         THE COURT:  Well, the first issue is clear in my

24   view that Ms. Palfrey does not wish to represent herself.

25         You do understand that you cannot bargain with me,

40

1    Ms. Palfrey.

2         THE DEFENDANT:  That's not what I'm trying to do,

3    no.

4         THE COURT:  I just want you to be clear about

5    that.

6         THE DEFENDANT:  Now.  When I came into the

7    courtroom this morning I initially thought that perhaps

8    hybrid representation was a possibility.  I never walked

9    into this courtroom thinking that I would be totally in pro

10   se.  Again, I would be an absolute fool to walk in here

11   believing that I would be capable of handling my own

12   defense.

13        I had hoped for hybrid representation.  In the

14   alternative I had hoped that perhaps you would appoint Mr.

15   Sibley as my CJA attorney.  The last possibility then would

16   be for him to enter an appearance as my attorney.

17        THE COURT:  Well certainly that was not the

18   impression I had from your papers.

19        THE DEFENDANT:  I apologize.  I did not mean to

20   imply that.

21        THE COURT:  But that's all right.  The record is

22   now clear that you don't want to represent yourself under

23   any circumstances -- that you don't want to be solely

24   representing yourself.

25        THE DEFENDANT:  So would be the correct way to put

41

1    it.

2            THE COURT:  I understand that.  You may have a

3    seat at this time.

4        **(Whereupon, the defendant returned to the defense**

5    **table.)**

6            THE COURT:  I'm sorry Ms. Palfrey.  Would you come

7    back.  I need to ask you a couple of other questions.

8        **(Whereupon, the defendant returned to the podium.)**

9            THE COURT:  Given the fact that you have

10   indicated that you -- well, let me say one thing on the

11   record.

12           The statement that Ms. Palfrey submitted certainly

13   set forth the nature of the irreconcilable differences with

14   counsel.  That is one of the issues that the case law

15   requires me to look into.  And I just want to make it clear

16   for the record that I have read that statement, and the

17   substance of it certainly sets forth, as I said clearly,

18   what the nature of those differences were.

19           Now let me understand something.  In what

20   capacity are you requesting that Mr. Sibley enter an

21   appearance?

22           THE DEFENDANT:  As my attorney.  As my attorney.

23           THE COURT:  And you are not requesting that he be

24   appointed as a CJA attorney, is that right?

25           THE DEFENDANT:  Oh, no.  I would like for him to

42

1  be appointed as a CJA attorney.

2         THE COURT:  I should not have stated it that way.

3  I'm sure you would prefer that, but that request has been

4  denied as I indicated.

5         So are you asking that he be retained as -- that

6  he enter his appearance as your private counsel?

7         THE DEFENDANT:  Yes.

8         THE COURT:  To carry the full weight of this

9  trial?

10        THE DEFENDANT:  Yes.

11        THE COURT:  All right.  You may have a seat for a

12 minute then.

13        **(Whereupon, the defendant returned to the defense**

14 **table.)**

15        THE COURT:  Let me hear from the government at

16 this point, and then from Mr. Burkett as well, although I'm

17 not sure how much Mr. Burton can say at this point.

18        MR. BUTLER:  Two points come to mind very **quickly**,

19 Your Honor.

20        One is that as we have stated in our pleadings

21 previously, as well as the court has stated already, Mr.

22 Sibley has represented to the court that he is not qualified

23 to appear in a criminal proceeding in this jurisdiction.

24 He has stated in pleadings that he cannot make the

25 certificate that he is qualified to represent a defendant in

43

 1   this case.

 2          THE COURT:  Mr. Butler, you have not done your

 3   homework.  He has filed that certificate with the Clerk's

 4   Office.

 5          MR. BUTLER:  Well, he has never brought it to our

 6   attention, although we have put it in pleadings in response

 7   to his pleadings.

 8          THE COURT:  Well, I cannot honestly remember the

 9   date.  We certainly have checked on it, and I know my law

10   clerk probably knows the date.  It may have been relatively

11   -- it was relatively recently, but certainly not yesterday

12   or the day before.

13          And by the way, our court certification under the

14   local criminal rules is simply a certification, if you will

15   check the rules, that the person is familiar with the

16   sentencing guidelines.

17          It is, of course, not CJA certification, where we

18   have a committee that does a very thorough job of vetting

19   people for their competency.  I guess -- well not I guess.

20   I chair that committee right now.  And it is not a

21   certification that says anything at all, unfortunately,

22   about one's experience or qualifications.  It simply refers

23   to knowledge of the guidelines.

24          MR. BUTLER:  I have read it, Your Honor, before.

25          In terms of Ms. Palfrey now having funds where she

44

1   previously had represented that she did not have funds to
2   hire an attorney and obtained CJA representation in this
3   case, it does raise questions regarding that, Your Honor.
4           But putting that aside, she clearly has the right
5   to retain whomever she would want to retain as long as that
6   person is qualified in this jurisdiction to present a
7   criminal case.
8           I guess the hesitation I have at this moment is I
9   was not aware that he, Mr. Sibley, had filed a
10  certification, and I am not aware of what other issues might
11  be involved, simply because I have been relying upon his
12  representation that he was not qualified to represent a
13  defendant in this case.
14          So what I'm asking the court is to at least at
15  some time give that some thought as to what position it
16  would take.  I would also have some concerns, the same
17  concerns that the court has already raised about Mr.
18  Sibley's actions in Florida and how that would impact his
19  ability to proceed in this case.
20          THE COURT:  Mr. Burton, are you in a position to
21  say anything at this point?
22          MR. BURTON:  I think I am rendered on a rare
23  occasion somewhat speechless.
24          THE COURT:  I'm glad to hear that a trial lawyer
25  can, at times, admit that they are speechless.  But go

45

1    ahead.

2              MR. BURTON:  What I sense is that this is

3    effectively right now an oral motion, although I guess Mr.

4    Sibley has not formally made that motion to substitute

5    himself as Ms. Palfrey's counsel -- as retained counsel

6    under whatever arrangements they have made.

7              I really do not have -- I don't think they have

8    filed anything formal, and I really don't have anything to

9    add to that.

10             Now if the court wants to -- I think that would

11   moot out the issues that have been raised both by Ms.

12   Palfrey and -- well, perhaps not by Ms. Palfrey because she

13   has made some requests which the court has denied, but I

14   think that that would effectively moot out anything that I

15   have raised ex parte and under sealed with the court.

16             THE COURT:  I was just checking one of the prior

17   motions, everyone.  You are right that there has not been

18   any motion for Mr. Sibley to -- not be appointed, excuse me,

19   but to enter his appearance.

20             I think in that sense the record is clearly

21   lacking.  That does not mean it cannot be corrected -- not

22   corrected, but supplemented.

23             I don't know whether, when the papers were filed

24   on Ms. Palfrey's behalf, whether there was an assumption

25   that the request for hybrid representation would be

46

1    granted, or whether there was simply a failure on the part

2    of the person advising her to think ahead and to make sure

3    that we could get as much accomplished in one hearing as

4    possible by filing a motion to enter an appearance.  But

5    in any event, I'm going to require that, and I'm certainly

6    not happy about the fact that we are not moving forward

7    today.

8            A motion to enter appearance, if it is going to be

9    filed, must be filed by the fifteenth of September.

10   Obviously that is a little over a week.  And the fifteenth,

11   I think, is a Saturday, so it must be filed by the

12   fourteenth of September.

13           MR. SIBLEY SPEAKING FROM THE SPECTATOR PORTION OF

14   THE COURTROOM:  Your Honor, may I be heard briefly?

15           THE COURT:  Yes, Mr. Sibley, very briefly.

16           MR. SIBLEY SPEAKING FROM THE SPECTATOR PORTION OF

17   THE COURTROOM:  I am prohibited from filing matters in this

18   court, and as such I have not been able to file the

19   requisite motions.

20           THE COURT:  Well, you are orally given permission

21   at this point to file such motion.  It will be due on the

22   fourteenth.

23           Any government opposition or actually any response

24   at all from Mr. Burton would be due on the 21st, and a reply

25   would be due on the 26h September.

47

1          Such motion should contain a presentation or a

2    recitation, perhaps more accurately, of the moving party's

3    experience in handling criminal cases so that I can be

4    assured that there will be competent counsel handling a

5    matter where so much is at stake.

6          Just so the record is clear, permission is given

7    now for the filing of a reply, if necessary, to any

8    opposition filed -- if it is filed by the government.  And I

9    have already indicated the date on which that reply would

10   have to be filed.

11         I will rule, of course, expeditiously on that

12   motion.  I am well aware of the time passing, and I want

13   counsel to put the following dates, which are far away, I'm

14   sorry to say, on their calendars.

15         MR. BURTON:  May I get my calendar, Your Honor?

16         THE COURT:  Yes.

17         My trial calendar for the next months has been and

18   continues to be extremely full.  This is why I want to give

19   these dates now so that everybody marks them in.

20         I'm going to give you a backup trial date of

21   February 19.  When I say a backup, that is because I am

22   being overly optimistic that a civil trial I have scheduled

23   a long, long time in advance may be resolved.

24         The absolute final and firm trial date will be

25   April 8th, and again I will do my very best to get this to

48

1    trial before then.  But I have thought long and hard about

2    the commitments I have made in other trials, and that is the

3    best I can do everybody.

4          So I want all of you who either are on this case

5    now or hope to be to put those trial dates in your

6    calendars.  It is far enough away that you ought to be able

7    to do that.

8          I just see no possibility of getting it to trial

9    this year.  I have all criminal trials scheduled this year

10   with lock up defendants everybody.  And that's just the

11   situation.  I'm anxious to get this resolved as well.

12         Is there anything else that people want to raise

13   at this time?  I will be ruling on the motion, and that will

14   determine so many other things in the case.

15         Mr. Butler, anything further?

16         MR. BUTLER:  Could I have just a moment, Your

17   Honor?

18         THE COURT:  Yes.

19         MR. SIBLEY SPEAKING FROM THE SPECTATOR PORTION OF

20   THE COURTROOM:  Judge, am I allowed to have my ECF

21   privileges back?

22         THE COURT:  At this point, no.  Just file your two

23   pleadings.  Everything will turn on what the decision is on

24   those two pleadings.

25         MR. BUTLER:  Nothing further on the issues raised

49

1   by the court.  We will be filing a response to the two

2   pleadings entered yesterday.  We will address it, Your

3   Honor.

4              THE COURT:  That is fine.  Mr. Burton, anything

5   further?

6              MR. BURTON:  I don't believe I have anything to

7   report.

8              THE COURT:  All right.  Parties may be excused at

9   this time.  Thank you.   (Whereupon, the proceedings were

10   adjourned.)

11                      -  -  -  -  -

12              CERTIFICATE OF COURT REPORTER

13      I certify that the foregoing is a correct transcript of

14   the proceedings in the above-captioned case.

15

16

17              SUSAN PAGE TYNER, CVR-CM

18              OFFICIAL COURT REPORTER

19

20

21

22

23

24

25