## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CRIMINAL NO. 07-046 (JR)** |
| | ) | |
| **DEBORAH JEANE PALFREY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### DEFENDANT'S NOTICE REGARDING THE STATUS OF THE DISCLOSURE OF JENCKS, *BRADY* AND *GIGLIO* MATERIAL, MOTION TO STRIKE EXPERT AND RESERVATION OF A CONTINUANCE

In anticipation of the Status Hearing set for Wednesday, March 19, 2008, Defendant Deborah Jeane Palfrey respectfully provides this Notice to the Court regarding the status of the disclosure of Jencks, *Brady* and *Giglio* materials to the defense. Ms. Palfrey also requests that the Court preclude the government from presenting the proposed expert testimony of Detective Keith Haight for its failure to comply with Fed. R. Crim. P. 16(a)(1)(G) in a timely manner. The defense also respectfully reserves the opportunity to seek, if necessary, a continuance commensurate with a reasonable amount of time to review and investigate the as-yet undisclosed information and address certain issues related to the expert.

Respectfully submitted,


_____/s/_____

Preston Burton, Esq., D.C. Bar No. 426378
Orrick, Herrington & Sutcliffe LLP
Columbia Center
1152 15th Street, N.W.
Washington, D.C.  20005
(202) 339-8400

Dated: March 18, 2008                    *Counsel for Deborah Jeane Palfrey*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CRIMINAL NO. 07-046 (JR)** |
| | ) | |
| **DEBORAH JEANE PALFREY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS NOTICE REGARDING THE STATUS OF THE DISCLOSURE OF JENCKS, *BRADY* AND *GIGLIO* MATERIAL, MOTION TO STRIKE EXPERT AND/OR REQUEST FOR CONTINUANCE**

In anticipation of the Status Hearing set for Wednesday, March 19, 2008, Defendant Deborah Jeane Palfrey respectfully provides this Notice to the Court regarding the status of the government's disclosure of the remaining Jencks, *Brady* and *Giglio* materials, and moves to strike the government's intended expert for failure to provide satisfactory notice. Depending on the content of the remaining disclosures and the Court's decision on the motion to strike the expert, the defense may be forced to request a continuance commensurate with a reasonable amount of time to review and investigate this information and secure the assistance of an expert to test the opinion offered by the government's expert.

**I. Discovery**

During the first week of March 2008, the government provided un-redacted hard copies of the documents seized from Ms. Palfrey's home and other materials and, in compliance with Judge Kessler's prior Order concerning a Bill of Particulars, also

provided the names of the fourteen escorts described generally in Count One of the Indictment along with the names of several other individuals. The United States had previously provided several computer disks containing redacted documents and other materials as well as having provided counsel with access to un-redacted originals of the documents seized from Ms. Palfrey's home.

On March 10, 2008, the government provided un-redacted Jencks material regarding Postal Inspector Maria Couvillon and the five confidential informants described in the search warrant (informants who are also five of the fourteen escorts described in Count One of the Indictment).[1] Yesterday, the government also provided Jencks material for several law enforcement agents involved in this matter. The government has stated that it will provide copies of the exhibits referenced in that grand jury testimony at tomorrow's hearing.

In response to previous requests from the defense to produce all of this material well before trial, the United States has committed only to producing this material a week before trial but has also stated that it was considering producing some additional subset or subsets prior to that time—which it has done for the law enforcement agents and five of the former escorts. While counsel does not have concerns about the government's ultimate compliance with its obligations in this regard, the defense is concerned that the timing for the remaining disclosures will jeopardize its ability to prepare adequately for trial.

---

[1] Redacted copies of this same material had been provided previously to the defense in connection with the Suppression Motion in this case. Based on the testimony during the suppression proceeding, we know that at least one of the government's informants has a criminal conviction, though which informant and which actual conviction remains undisclosed.

Under the standard articulated in *Brady v. Maryland*, 373 U.S. 83 (1963), the government must disclose any evidence in its possession that is favorable to the accused and material either to a defendant's guilt or punishment.   "Favorable evidence" for purposes of *Brady* constitutes both exculpatory evidence and evidence that could be used to impeach a government witness.  *United States v. Hsia*, 24 F. Supp. 2d 14, 29 (D.D.C. 1998).   Information that goes to the credibility or reliability of a government witness must also be disclosed under *Giglio*, which occupies a subset, but not some lesser form of *Brady* material.  *See Giglio v. United States*, 405 U.S. 150 (1972).   None of the disclosures to date have been characterized by the government as a *Brady* disclosure but the Jencks material the government has disclosed refers to immunity orders or promises of non-prosecution which have not yet been disclosed beyond testimonial references to these understandings or orders.

The government's disclosure of *Brady* material must be "made at such a time as to allow the defense to use the favorable material effectively in the preparation and presentation of its cases, even if satisfaction of this criterion requires pre-trial disclosure." *United States v. Pollack*, 534 F.2d 964, 973 (D.C. Cir. 1976).   Trial judges have a wide measure of discretion to ensure satisfaction of this standard.  *Id*.   Thus, in determining the proper timing for disclosure of *Brady* materials, the Court must "balance in each case the potential dangers of early discovery against the need that *Brady* purports to serve of avoiding wrongful convictions."  *Id*. at 974.[2]

---

[2] Notably, it is primarily the government's responsibility to determine whether information in its possession is *Brady* material.  *Hsia*, 24 F. Supp. 2d  at 30.  The government should not take a narrow view of what constitutes *Brady* material.  Rather, it has the "affirmative duty to resolve doubtful questions in favor of disclosure."  *United States v. Blackley*, 986 F. Supp. 600, 607 (D.D.C. 1997).  Thus, courts have deemed it "insufficient for the government to offer 'niggling excuses' for its failure to provide potentially exculpatory evidence to the defendant, and it does so at its peril."  *Hsia*, 24 F. Supp. 2d at 30 ("courts in this jurisdiction

The defense of this case depends heavily on an ability to review this material thoroughly in advance of trial so that cross-examinations are focused and so the defense has an opportunity to investigate meaningfully the potential witnesses and evidence. As this matter is on the virtual eve of trial, we respectfully reserve the ability to seek a continuance or other remedies and sanctions should the government's tactical decisions on the timing of its release of the remaining Jencks, *Brady* and *Giglio* material impair the ability of the defense to analyze and investigate this information meaningfully.[3]  *See United States v. Holmes*, 722 F.2d 37, 40 (4th Cir. 1983).

## II. <u>Expert Notice</u>

On Sunday, March 2, 2008, the United States provided Notice concerning its intention to present expert testimony by Detective Keith Haight of the Los Angeles, California, Police Department. A copy of that Notice is attached hereto as Exhibit 1. Counsel informed the United States in writing on March 5, 2008, Exhibit 2, that the defense believed the Notice failed to comply with Fed. R. Crim. P. 16 and requested additional information. In response, the government supplemented its Notice on March 12, 2008, a copy of which is attached as Exhibit 3.

That supplement by its own acknowledgment remains incomplete. It also remains inadequate under Rule 16(a)(1)(G) as the government has yet to provide a written summary detailing specifically what Detective Haight would offer an opinion about, what

---

look with disfavor on narrow readings of the government's *Brady* obligations"); *see also United States v. Paxson*, 861 F.2d 730, 737 (D.C. Cir. 1988).

[3] That the Jencks statute, 18 U.S.C. § 3500 (b), sets a deadline for providing this material only after a relevant witness testifies on direct examination does not preclude this Court from setting earlier deadlines to facilitate the trial and certainly does not preclude the government from providing it earlier than the literal terms of the Act. Trial judges routinely "fashion discovery procedures that entail production of Jencks material before trial or prior to direct examination, in order to facilitate the defense's preparation for cross-

that opinion would be, and the bases and reasons for his opinion. Fed. R. Crim. P. 16(a)(1)(G) ("At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703 or 705 of the Federal Rules of Evidence during its case-in-chief at trial.").

It is unreasonable for the United States to disclose its intended expert at this late date and also for it to fail to provide adequate notice regarding Detective Haight's specific opinion and the bases for that opinion in compliance with Rule 16. Given the tardy and insufficient disclosure, the defense cannot assess Detective Haight's expertise, his basis for his opinions, secure and review his prior testimony and expert opinions, nor have the opportunity to locate its own expert to test potentially his actual opinions. Indeed, under the present record, neither the defense nor the Court can assess whether Detective Haight would even be qualified to deliver an opinion in this case under Fed. R. Evid. 702, 703 or 705. Accordingly, the government should not be permitted to call Detective Haight or any other expert as a witness in this trial.

Should the Court be inclined to permit the government to cure these deficiencies and call Detective Haight, the defense, as discussed below, may well require a brief continuance to attempt to secure an expert of its own to counter his anticipated testimony.

### III. <u>Continuance</u>

This matter has been pending for some time now and, to be clear, the defense does not wish to seek a continuance; however, the timing of the disclosures for the remaining Jencks, *Brady* and *Giglio* information and issues associated with the proposed expert may leave it little choice. Should these matters require additional investigation

---

examination." *United States v. Tarantino*, 846 F.2d 1384, 1415 n.12 (D.C. Cir. 1988). Moreover, the Jencks deadline does not apply to *Brady* or *Giglio* material.

and should the Court permit the government to cure its deficient expert notice, the defense may be forced reluctantly to request a continuance commensurate with a reasonable amount of time to review that material, assess the expert witness's likely testimony and locate an appropriate defense expert to respond..

Respectfully submitted,

_____/s/_____

Preston Burton, Esq., D.C. Bar No. 426378
Orrick, Herrington & Sutcliffe LLP
Columbia Center
1152 15th Street, N.W.
Washington, D.C.  20005
(202) 339-8400
Dated: March 18, 2008                *Counsel for Deborah Jeane Palfrey*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CRIMINAL NO. 07-046 (JR)** |
| | ) | |
| **DEBORAH JEANE PALFREY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>ORDER</u>

For the reasons set forth in Defendant Deborah Jeane Palfrey's Notice Regarding the Status of the Disclosure of Jencks, Brady, and Giglio Materials, Motion to Strike Expert Witness and Reservation of Ability to Request a Continuance, it is hereby **ORDERED** that the Motion is **GRANTED** and hereby further **ORDERED** that:

1. The United States will not be permitted to present expert testimony in this matter for its failure to comply with Fed. R. Crim. P. 16(a)(1)(G) in a timely manner.

2. To afford the defense an adequate time to review and investigate the information to be disclosed under this Order, the trial date in this matter is continued to _____, ___, 2008.

So **ORDERED** this ___ day of March, 2008.

_____
Hon. James Robertson
United States District Judge

Copies to Counsel of Record

# EXHIBIT 1



U.S. Department of Justice

Jeffrey A. Taylor
United States Attorney

*District of Columbia*

---

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

March 2, 2008

**DELIVERED VIA E-MAIL**

Preston Burton, Esquire
Orrick, Herring, and Sutcliffe, LLP
Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005-1706

     Re:    <u>United States v. Deborah Jeane Palfrey</u>,
                Criminal Case No. 07-046 (GK)

Dear Mr. Burton:

       As we indicated in our May 24, 2007 letter, and pursuant to the government's continuing obligation to provide discovery, we are writing to inform you that the government intends to present expert testimony in the above-referenced case through Detective Keith Haight. Detective Haight is a 34 year veteran of the Los Angeles Police Department. Throughout his career Detective Haight has specialized in investigating prostitution related offenses, including escort services and out-call prostitution rings. He will testify as to how escort services and out-call prostitution rings are run, including the tactics and language used by individuals involved in the business to hide its true nature. Detective Haight's *curriculum vitae* is attached to this letter. He has testified as an expert on escort services/outcall prostitution rings approximately 20 times in state court. Furthermore, although not directly relevant to his proposed testimony in this case, Detective Haight has also testified as an expert in federal court on street prostitution.

                     Sincerely,

                     Jeffrey A. Taylor
                     United States Attorney

                     *Catherine K. Connelly*
                     Daniel P. Butler
                     Catherine K. Connelly
                     Assistant United States Attorneys

Attachments

**DETECTIVE III  KEITH R. HAIGHT**

| | |
|---|---|
| **SERIAL #:** | **20205** |
| **ENTRY DATE:** | **8/6/73** |
| **YEARS OF SERVICE:** | **34 ½ YEARS** |
| **YEARS OF VICE ENFORCEMENT:** | **22** |
| **North Hollywood Vice:** | **2** |
| **Administrative Vice/ OCVD/ Vice Div/ DSVD** | **20** |

**OTHER ASSIGNMENTS:**
> **North Hollywood Patrol**
> **77[th] Street Patrol**
> **Rampart Patrol**
> **77[th] Street Detectives**
> **Hollywood Detectives**
> **Organized Crime Intelligence Division**
>> **LCN**
>> **White Collar Crime**
>> **Prostitution/ Pimping & Pandering**
> **Internal Affairs Division (5 month loan)**

**EDUCATION:**
> **Los Angeles Valley College**
> **California State University Northridge**
> **University of Redlands**
> **Bachelor of Science Degree, Public Management**

**TRAINING:**
> **Los Angeles Police Department Police Academy**
> **Los Angeles Police Department Vice School**
> **Western States Vice Investigators Association**
> **Law Enforcement Intelligence Unit**
> **Administrative Vice/ OCVD Training Days**

**Courses Taught:**
> **Los Angeles Police Department Vice School**
>> **Prostitution Investigations**
>> **Pimping & Pandering Investigations**
>> **Lewd Conduct Investigations**
>> **Undercover Operations**
>> **Human Trafficking**
> **LAPD Area and Bureau Training Days**
> **Children of the Night (in-service training)**
> **Children's Institute International**

California DOJ Vice Enforcement/ Organized Crime/ Human
Trafficking Conferences (Sacramento, San Diego, Oakland, Long
Beach, CA)
Los Angeles County Vice Officers Association
Orange County Vice Officers Association
Vancouver, BC, Canada Police Department
Royal Canadian Mounted Police
Law Enforcement Instructors Alliance (Las Vegas, NV & Irving,
& Dallas TX)
Instructor for 19 years teaching over 5,000 LAPD, Local and
State, and Federal officers.

BOOKS READ:
The Lively Commerce
        By Charles Winick and Paul Kinsie
Sisterhood of the Night
        By Becky Usry
Joining Forces Against Child Sexual Exploitation
        By Debra Whitcomb
Men Who Sell Sex: International Perspectives on Male
Prostitution and HIV/ AIDS
        By Peter Aggleton
Drugs, Runaways & Teen Prostitution
        By Clare Tattersal

References
Michael Hoff, Judge Superior Court
Maureen Duffy Lewis, Judge Superior Court
William Sterling, Judge Superior Court
Marsha Liss, US Attorney (Washington DC)
Ed Kubo, US Attorney (Hawaii)
Terry Bork, Los Angeles County Deputy District Attorney
Greg Dohi, Los Angeles County Deputy District Attorney
Dr. Lois Lee, Children of the Night
Anthony Brooklier, Defense Attorney

ADDITIONAL:
Received North Hollywood Area Officer of the Year award
in 1982 for closing down 41 houses of prostitution through red
light abatement.
Received LA American Legion Detective of the Year award in
2002 for work in prostitution and human trafficking enforcement.

# EXHIBIT 2



**ORRICK**

ORRICK, HERRINGTON & SUTCLIFFE LLP
COLUMBIA CENTER
1152 15TH STREET, NW
WASHINGTON, D.C. 20005-1706

tel +1-202-339-8400
fax +1-202-339-8500

WWW.ORRICK.COM

March 5, 2008

Preston Burton
(202) 339-8456
pburton@orrick.com

*VIA ELECTRONIC DELIVERY*

Daniel P. Butler, Esquire
Catherine K. Connelly, Esquire
Assistant United States Attorneys
Office of the United States Attorney
    for the District of Columbia
555 Fourth Street, N.W.
Washington, D.C. 20001

Re:    **United States v. Deborah Jeane Palfrey, Crim. No. 07-46 (JR)**

Dear Mr. Butler and Ms. Connelly:

I am writing in regard to your March 2, 2008 notice, which indicates that the government plans to call Detective Keith Haight as an expert witness during Ms. Palfrey's trial. While I appreciate receiving the notice, I do not believe it provides a sufficient written summary of Detective Haight's anticipated testimony under Federal Rule of Criminal Procedure 16(a)(1)(G). Specifically, the written summary "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Simply notifying the defense of the general area of expertise and attaching his resume does not comply with the Rule. In addition, I would like a sufficiently detailed list of the cases in which Detective Haight has testified as an expert as well as more information about the nature of Detective Haight's testimony in those cases and the party who called him as a witness in each case.

If you would like to speak with me about this matter, please do not hesitate to contact me via e-mail or telephone (202) 339-8456.

Best Regards,

*Preston Burton* / S.C.

Preston Burton

# EXHIBIT 3



U.S. Department of Justice

Jeffrey A. Taylor
United States Attorney

*District of Columbia*

---

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

March 12, 2008

**SENT BY ELECTRONIC MAIL**

Preston Burton, Esquire
Orrick, Herring, and Sutcliffe, LLP
Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005-1706

> Re:    United States v. Deborah Jeane Palfrey,
> Criminal Case No. 07-046 (JR)

Dear Mr. Burton:

This responds to your letter of March 5, 2008, regarding the notice we gave to you on March 2, 2008, as to our intent to call Detective Keith Haight as a witness at trial in the above-referenced matter. In your correspondence, you requested additional information as to Det. Haight beyond that provided in our letter to you.

As to Det. Haight's qualifications, we previously provided you with his *curriculum vitae*. As noted in People v. Brandon, 145 Cal. App. 4th 1002, 52 Cal Rptr. 3d 427, 439 (2006), remanded for other reasons, 169 P.3d 96 (2007), "Detective Haight had extensive training and experience as a vice officer. He had worked in that capacity since 1988. Detective Haight had spoken to thousands of prostitutes and hundreds of pimps. He was familiar with . . . escort services . . . ." See also People v. Gibson, 90 Cal. App. 4th 371, 379, 382, 108 Cal. Rptr. 809 (2001) (Det. Haight "testified that manuscripts were consistent with a pimping and pandering operation" and defendant "was acting as a madam"). We are awaiting a declaration prepared by Det. Haight that will more fully set forth his qualifications and we will provide that to you upon our receipt of it.[1]

---

[1]  We have attached an unsigned copy of a declaration that Det. Haight prepared in a federal case, United States v. Juan Rico Doss and Jacquay Quinn Ford, No. Cr. 05-627 (A) - ER, involving sex trafficking of children. Although that case was factually distinct from this case,

As to Det. Haight's opinion, as we stated in our prior letter, he will testify about how escort services and out-call prostitution rings are run, including the tactics and language used by individuals involved in the businesses to hide their true nature. Det. Haight's declaration, discussed above, will elaborate on this, as well as the bases and reasons for his opinion.

Finally, as to other cases in which Det. Haight has testified, in our prior letter we notified you that he has testified as an expert on escort services/outcall prostitution rings approximately 20 times in state court and on occasion in federal court regarding street prostitution. Some of his state and federal court cases are cited above. We will determine what other information we can develop, including what might be provided in the expected declaration.

If you have any questions about the information provided above, please contact us.

Sincerely,

Jeffrey A. Taylor
United States Attorney

*Daniel Butler/Catherine Connelly*

Daniel P. Butler
Catherine K. Connelly
Assistant United States Attorneys

Enclosure

---

the declaration provides Det. Haight's law enforcement background in vice. As stated above, he is preparing a declaration relevant to the circumstances of this case, which we will provide to you.

DECLARATION OF DETECTIVE KEITH R. HAIGHT

I, KEITH R. HAIGHT, declare as follows::

1.      I am a 32 year veteran with the Los Angeles Police Department ("LAPD").

2.      I have been a Detective with the LAPD for 23 years.

3.      Prior to being a Detective, I was employed as a Police Officer with the LAPD for 9 years.

4.      I have been a Detective with the LAPD, North Hollywood Vice Division for approximately 2 years.

5.      My duties and responsibilities as a Detective include investigating all types of general crimes, including prostitution related offenses.

6.      During the course of my career, I have been involved in approximately 2000 prostitution related investigations.  Approximately 200 of these investigations involved minor prostitutes, meaning persons under the age of 18.

7.      I have been involved in all phases of investigating prostitution related offenses including numerous undercover operations, street surveillance of pimps and prostitutes, and the execution of search warrants related to prostitution offenses.  I have acted as the lead Detective in approximately 500 prostitution related investigations.  I have been involved in approximately 200 successful prosecutions of pimps.

8.      During the course of these investigations, I have interviewed approximately 250 minor prostitute victims.

9.      During the course of these investigations, I have interviewed approximately 1, 000 adult prostitutes.

10.    During the course of these investigations, I have interviewed or taken voluntary statements from approximately 40 pimps.

11.    During the course of these investigations, I have interviewed or taken voluntary statements from approximately 500 "customers" or individuals who have purchased the services of a prostitute.

12.    I have been investigating prostitution related offenses for approximately 20 years.

13.    Based on the information I have gathered from these interviews, as well as other information I have gathered during the 20 years I have been investigating these offenses, I have learned the following specifics regarding prostitution including, but not limited to:

A.    The complex and voluminous street terminology both pimps and prostitutes use in connection with street prostitution to explain, among other things, information regarding how the business of street prostitution is conducted.  Based on my training and experience, and despite common misperceptions among average citizens, I have learned the following about street prostitution:

• While pimps are ultimately in control of the street prostitution business, they are rarely found on the streets where the prostitutes work for long periods of time, for fear of being arrested.

• While a pimp will generally be responsible for transporting his prostitutes from one "track" to another, as well as being involved in all day-to-day management of his prostitutes, he will often leave the daily training and interaction with his prostitutes to his "bottom-bitch," or "bottom-lady" or "bottom-girl" or "bottom." (as defined below).

• When pimps recognize a new prostitute on the scene or hear reports from "their" prostitutes that a person is working as a "renegade," (meaning a prostitute attempting to work the streets without working for a pimp) a pimp will recruit this prostitute either by manipulation or

2

force.

   • It is not uncommon for a pimp to use force, including assault or kidnaping, to recruit a "renegade."

   • I have been involved in approximately 100 investigations where pimps have resorted to these methods to recruit a "renegade."

   • For these reasons, and based on my observations in the city of Los Angeles, fewer than 5 - 10% percent of street prostitutes successfully work as "renegades."

   • Pimps do not ask prostitutes for money, they take it all.

   • Pimps will often subject their prostitutes to strip searches or other methods of degradation to detect whether the prostitutes have turned over all of the money they earn to their pimps.

   • The responsibility of a pimp is not to protect his prostitutes from customers or other individuals on the street, but rather to ensure that his prostitutes generate money to be provided to the pimp.

   • In general, pimps are more concerned with "protecting" his prostitutes from being recruited by another pimp, than with his prostitutes personal safety or well-being.

   • Pimps generally set a dollar amount quota that his prostitutes must earn for him each day. Depending on the pimp, his prostitutes may face severe consequences, including assault or other degradation rituals, if they do not meet the quota.

   • A "circuit" refers to all of the "tracks" in the country or particular region of the country. When a prostitute works the "circuit," her pimp takes her from city to city, or "track" to "track."

   • It is not uncommon for a pimp to instruct his prostitutes to lie to the police if they are

3

arrested. In the case of child prostitutes, pimps will generally instruct these individuals to lie about their age and identity. Pimps may also supply his prostitutes with false identification.

B.    The roles assigned to different individuals involved in this criminal enterprise of prostitution.

• A "bottom-bitch," or "bottom-lady," or "bottom-girl," or "bottom," is defined as a prostitute, usually an adult prostitute, who has been working the longest for the pimp and who is assigned the role of both recruiting other prostitutes and teaching and training other prostitutes the rules to follow in this enterprise.

• A "stable" is made up of those prostitutes working for a particular pimp.

• A "wife-in-law" or "sister-in-law" is the term each prostitute in a pimp's "stable" uses to refer to the pimp's other prostitutes.

• A "gorilla" pimp is known on the streets as a pimp who resorts to serious brutality to keep his prostitutes working for him.

• "Automatic" refers to when a pimp is out of town in another city and his prostitute or prostitutes continue working while he is gone. When a pimp's prostitutes are on "automatic," the "bottom-bitch" will often be trusted with the day-to-day management responsibilities of the enterprise, including collecting the money on behalf of her pimp.

• It is not uncommon for one pimp to purchase a prostitute or give something of value to another pimp in exchange for the second pimp's prostitute or prostitutes.

• Because of the fear that one pimp may steal another pimp's prostitutes, prostitutes are generally instructed not to look or make eye contact with any other pimp, unless they are "choosing" to work for the new pimp.

4

      • "Out-of-pocket" refers to when a prostitute looks or makes eye contact with another pimp.

      • "Reckless eyeballing" refers to when a prostitute looks at another pimp or suspected pimp.

C.    <u>The dynamics that often exist between the pimp and his prostitutes, and the various methods pimps use to recruit women and girls into prostitution.</u>

      • Pimps will resort to anything from emotional manipulation and "sweet talk," to force, including rape, assault, and other degradation rituals, to maintain control over his prostitutes and to ensure that his prostitutes continue working for him.

      • In almost all cases, a prostitute's sole source of financial support including food, clothing, and shelter come from her pimp.  At the same time, other than money for these most basic necessities, a prostitute does not keep any of the money she earns for herself.

      • It is not uncommon for prostitutes to stay with a violent or controlling pimp. Additionally, I have routinely witnessed prostitutes return to their pimp after deciding she no longer wants to work as a prostitute, and even after being sexually and physically abused by the pimp.

D.    <u>Common factors in the backgrounds of child prostitutes I have encountered, which help explain how a pimp successfully recruits and controls his victims.</u>

      • Pimps will generally prey on those individuals on the street who are particularly susceptible to recruitment techniques.  These individuals very often  include children and runaways.

      • Approximately 90 percent of all of the prostitutes I have interviewed during the course of my career have been either runaways or have reported to me that they are prior victims of

5

physical or sexual abuse.

      • It is not uncommon for pimps to try to recruit young children from runaway shelters, hostels, bus stations, shopping malls, or any other public place where potential recruits exist.

14.     During my tenure as a Detective, I have taught numerous courses on prostitution related offenses. Since 1989, I have taught at the LAPD Police Academy and Vice School on how to successfully investigate prostitution related offenses. This training included a discussion of prostitution and pimping and pandering investigations, human trafficking and undercover operations.

15.     Since 2000, I have taught courses on prostitution related offenses to the Law Enforcement Ingelligence Unit and the Western States Vice Investigators Association. This training generally includes a discussion of the topics listed above.

16.     I have also provided in-service training to the support staff at Children of the Night, a non-profit organization based in Los Angeles, California, committed to assisting child prostitutes reconstruct their lives by providing living arrangements, education, and a support system of other prostitute victims. This training included a discussion of how to successfully interview victims of child prostitution and an explanation to the staff and victims on what to expect if they are asked to testify in court.

17.     I have testified in both federal and state court approximately 100 times in cases involving prostitution related offenses.

18.     I have been qualified as an expert in state court approximately 48 times on the issues of prostitution and "pimping" and "pandering." I have been qualified as an expert 2 times in federal court as an expert on the same topics.

6

19.    I have not discussed the facts, or any of the specifics of the instant investigation, with the Government.

20.    The information I have outlined in this declaration is based on my personal training and experience and is not based on any case information provided to me by the Government or any other individual.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


_____

Detective Keith R. Haight


_____

Date


7